# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

## DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO (1) MAINTAIN EXISTING BANK ACCOUNTS; (2) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEMS; (3) CONTINUE USING EXISTING BUSINESS FORMS; (4) MODIFY DEPOSIT REQUIREMENTS PURSUANT TO 11 U.S.C. § 345(b); AND FOR (5) OTHER RELATED RELIEF

Wisconsin & Hotel Milwaukee LLC ("**Debtor**" or "**WMH**"), by its proposed attorneys, Richman & Richman LLC, by Attorneys Michael P. Richman and Claire Ann Richman, hereby submit this emergency motion ("**Motion**") seeking interim and final orders authorizing the Debtor to (1) continue using its prepetition cash management system subject to modifications as set forth in this Motion; (2) maintain its existing bank accounts; (3) continue using its existing business forms; (4) modify certain deposit requirements required for 11 U.S.C. § 345(b) for cause; and (5) granting such other related relief as is just and proper. In support of the Motion, the Debtor states as follows below. This Motion is further supported by the Declaration of Mark Flaherty in Support of the Debtor's Requests for First Day Relief ("**Flaherty Declaration**"), filed contemporaneously with this Motion.

## JURISDICTION & VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the order of reference in this District entered pursuant to §

157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) as a matter concerning the administration of the Debtor's bankruptcy estates. Venue is proper in this district pursuant to §§ 1404 and 1408.

2.     The statutory predicates for relief sought in the Motion are 11 U.S.C. §§ 105, 345, 363, 1194 and Federal Rules of Bankruptcy Procedure 6003 and 6004.

## BACKGROUND

3.     On April 9, 2024  (the "**Petition Date**"), the Debtor filed a voluntary petition for relief electing to proceed under Chapter 11 of the United States Bankruptcy Code (the "**Case**").

4.     The Debtor continues to manage its financial affairs as a debtor in possession pursuant to Sections 1107, 1108, and 1184 of the United States Bankruptcy Code ("**Bankruptcy Code**").

5.     The Debtor owns and operates the Milwaukee Marriott Downtown, a 205-room full-service, high-end hotel located at 625 N. Milwaukee Street, Milwaukee, Wisconsin (the "**Hotel**").

6.     A more complete description of the Debtor's business and history is set forth in the Flaherty Declaration.

### A.  The Debtor's Cash Management System

7.     Under the Debtor's corporate structure, the Debtor is a party to a Management Agreement dated June 14, 2011 ("**Management Agreement**") with White Lodging Services Corporation, a hotel management company, as Manager ("**Admin Manager**" or "**White Lodging**").

2

8.      White Lodging has authority to use the Debtor's operating account to pay all the operating expenses of the Hotel from revenues deposited in the operating account, including paying payroll and employee benefit obligations, paying post-petition trade payables incurred in the ordinary course of their business, paying for utility services, paying for post-petition utility services (the "**Cash Management System**").

9.      The Cash Management System is used by White Lodging to collect funds from the Hotel to fund operations and pay various operating and administrative expenses. White Lodging uses the Cash Management System in the ordinary course of the Debtor's business to collect, transfer, and distribute funds generated from the Debtor's operations and to facilitate cash monitoring, forecasting and reporting.

**B. The Debtor's Existing Bank Accounts and Business Forms**

10.      The Debtor maintains commercial bank accounts, held at the financial institutions described as follows below (collectively, the "**Bank Accounts**"):

| | Financial Institution | Account Type/Number | Address |
|---|---|---|---|
| | Town Bank N.A. | Checking Account, with account number ending in 5721 | 9801 W. Higgins, Box 32, Rosemont, IL 60018 |
| | Town Bank N.A. | Checking Account, with account number ending in 9799 | 9801 W. Higgins, Box 32, Rosemont, IL 60018 |
| | Town Bank N.A. | Tax Escrow Account, with account number ending in 1411 | 9801 W. Higgins, Box 32, Rosemont, IL 60018 |

| | | Fee Reserve Account, with account number ending in 2012 | 9801 W. Higgins, Box 32, Rosemont, IL 60018 |
| | Town Bank N.A. | | |

11.     The Debtor also regularly uses company-specific business and banking forms, including checks; invoices; envelopes; purchase orders; guest receipts; and other common forms in its day-to-day business operations (collectively, the "**Business Forms**").

C.  **The Debtor's Need to Maintain the Cash Management System and Facilitate Postpetition Operations**

12.     The Cash Management System affects all aspects of the Debtor's business operations, and is critical to the integrated management of the Debtor's financial affairs. The majority of the Debtors' business transactions are conducted electronically and tied directly to the Bank Accounts. Requiring changes to the existing system would likely be complex, time-consuming, and expensive, and could also disrupt regular business activities at a time when continuing operations is so critical to the Debtor's ability to reorganize.

13.     Additionally, given the nature of the Debtor's business, any disruption to the Cash Management System would have an immediate adverse effect on its business and operations to the detriment of its estate and numerous stakeholders. Accordingly, to minimize the disruption caused by this Case and to maximize the value of the Debtor's estate, the Debtor requests authority to continue to utilize its existing Cash Management System during the pendency of this Case, subject to the terms described in this Motion.

**RELIEF REQUESTED**

14.     By this Motion, the Debtor seeks interim and final orders granting the Debtors authority to, among other things: (1) maintain the Cash Management System as described in this Motion; (2) maintain the Bank Accounts; (3) continue using their existing Business Forms; and (4) modify certain investment & deposit requirements imposed by 11 U.S.C. § 345(b). The Debtor also requests that the Court schedule a final hearing on this Motion.

15.     Courts in this and other districts have waived certain UST Guidelines and allowed for the implementation of alternative procedures such as those proposed by this Motion. See, e.g., *In re Arrowhead Sys. LLC*, Case No. 02-20147-mdm (MDM) (Bankr. E.D. Wis. Jan. 7, 2002); *In re Urgent Care Physicians, Ltd.*, Case No. 21-2400-beh (BEH) (Bankr. E.D. Wis. Aug. 10, 2021); *In re HealthMyne, Inc.*, Case No. 22-10780-cjf (CJF) (Bankr. W.D. Wis. May 20, 2022); *In re ITR Concession Co.*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. May 15, 2013); *In re GEI-RP (f/k/a Giordano's Enters., Inc.)*, No. 11-06098 (ERW) (Bankr. N.D. Ill. Feb. 17, 2011).

**A. The Court Should Authorize the Debtor's Continued Use of the Bank Accounts & Cash Management System**

16.     The Debtor seeks authority from this Court to maintain its existing Bank Accounts and continue using the Cash Management System under Bankruptcy Code §§ 105(a) and 363(c).

5

17.     Unless otherwise ordered by the Court, the United States Trustee ("**UST**"), through its *Operating Guidelines for Chapter 11 Cases* (the "**UST Guidelines**"), requires that the Debtor, as a debtor in possession: (a) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor in possession accounts; (c) maintain separate debtor in possession accounts for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and the type of account on such checks. *See* UST Guidelines at ¶ 2.

18.     These requirements are designed to provide a clear line of separation between prepetition and postpetition transactions, and help protect against the inadvertent postpetition payment of prepetition claims. The Debtor submits that in this Case, strict enforcement of the UST Guidelines would severely disrupt the ordinary financial operations of the Debtor by reducing efficiencies and causing unnecessary expense and confusion.

19.     The Debtor's Bank Accounts are held at a financially stable banking institution. To protect against the unauthorized payment of prepetition obligations, the Debtor represents that, if it is authorized to use the Bank Accounts, they will not pay any debts incurred before the Petition Date other than as authorized by this Court. Moreover, any new account that the Debtor opens will (a) be with a bank that (i) is organized under the laws of the United States or any state therein, (ii) is insured by the FDIC, and (iii) has executed, or is willing to immediately

6

execute, a Uniform Depository Agreement with the Office of the United States Trustee ("UST"); (b) be designated a "debtor in possession" account by the relevant Bank; and (c) comply with applicable provisions of any financing order entered in this Case. Additionally, the Debtor will provide the UST with notice before opening any new bank accounts.

20.     Enforcing the UST's requirements without modification could significantly disrupt the Debtor's business. Indeed, as explained in more detail above, the Bank Accounts are integral components of the Cash Management System that allow the Debtor to centrally manage cash collection and disbursements in the Hotel.

21.     The Debtor's current Cash Management System also enables the Debtor to trace funds and ensure that all transactions are adequately documented and readily ascertainable. The Debtor submits that parties in interest will not be harmed by the Debtor's maintenance of the Cash Management System, including the Bank Accounts, because the Debtor will implement appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date. Requiring the Debtor to open new bank accounts at this critical juncture would increase operating costs and cause delays that would negatively impact the Debtor's ability to operate its business.

22.     The seamless operation of the Debtor's business will maximize the value of the Debtor's estate, and the Debtor should therefore (a) be permitted to continue maintaining the Bank Accounts and open new or close existing accounts

as needed; and (b) have the relief sought in this Motion extend to any new accounts, by providing that such accounts are deemed Bank Accounts of the Debtor subject to the provisions of any interim or final order entered by the Court granting this Motion.

23. Despite the requirements set forth in the UST Guidelines, Bankruptcy Code Section 363(c)(1) nevertheless permits the Debtor's continued use of the Bank Accounts and Cash Management System, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

24. To the extent that using the existing Cash Management System falls outside the ordinary course of business, such use is permitted by Bankruptcy Code Sections 363(b)(1) and 105(a). Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Additionally, Section 105(a) further provides that this Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id* at § 105(a).

25. Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system allows a debtor ""to administer more efficiently and

8

effectively its financial operations and assets." *In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all bank accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061.

26.     Here, requiring the Debtor to adopt new, segmented cash management systems would be expensive, create unnecessary administrative burdens, and be unnecessarily disruptive to the operation of the Debtor's business. Moreover, implementing any such new systems will necessarily take a significant amount of both time and expense, as well las itself cause disruptions in the business of the Debtor that will likely cause the loss of employees and the ability to efficiently book new business critical to the Debtor's reorganization efforts. The existing Cash Management System, including use of the Bank Accounts, allows the Debtor to efficiently handle receivables, pay vendors, fund payroll, maintain insurance, pay taxing authorities and regulatory entities, and maintain appropriate reserves for taxes and other business-related obligations. A disruption of this system could have a severe and adverse effect on the Debtor's operations and needlessly harm the value of its business enterprise. By contrast, maintaining the current Cash Management System would greatly facilitate the Debtor's transition into chapter 11

9

by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.

27.     As previously discussed herein, the Debtor submits that parties in interest will not be harmed by maintaining the Cash Management System, including the Bank Accounts, because the Debtor will implement appropriate mechanisms to ensure that payments will not be made on account of obligations incurred before the Petition Date, other than those authorized by the Court. With the assistance of its professional advisors, the Debtor will implement internal protocols that prohibit payments on account of prepetition debts. The Debtor will continue to work closely with the Bank to issue stop payment orders on any checks that were issued prepetition so they will not be honored without the Court's approval. In light of such protective measures, the Debtor submits that maintaining the Cash Management System is in the best interests of their estates and creditors.

28.     The Debtor therefore requests that the Court authorize its continued use of the existing Cash Management System. The Debtor specifically requests that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as bank accounts of the Debtor as a debtor in possession, without interruption and in the ordinary course of business. The Debtor further requests that the Court authorize and direct the Banks to receive, process, honor, and pay any and all checks, wire transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed

10

on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that the Debtor will issue a stop payment order on any check or draft drawn, issued, or otherwise presented prior to the Petition Date on prepetition debt so they will not be honored by the Bank except to the extent authorized by order of the Court.

29.     Finally, the Debtors request that the Court authorize t h e m  to continue to pay the Banks' ordinary course banking fees, and authorize the Banks (including any additional banks at which the Debtor may open new accounts under the terms of an order granting this Motion) to chargeback returned items to the appropriate Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.

### B. The Court Should Authorize the Debtor to Continue Using its Existing Business Forms

30.     To avoid disruption of the Debtor's Cash Management System and unnecessary expenses to the estate, the Debtor also seeks authority to continue using their existing Business Forms, which do not include checks, substantially in the form existing immediately before the Petition Date, without reference to its status as debtors in possession. Moreover, the Debtors submit that the continued use of their current Business Forms will not prejudice parties in interest because parties doing business with the Debtor will undoubtedly know of the

11

Debtor's status as a debtor-in-possession. Thus, modifying the Debtor's existing Business Forms is unnecessary and would be unduly burdensome to the Debtors.

## C. The Court Should Authorize the Debtors to Continue Using Debit & Wire Transfers

31.     The Debtor requests that the Court grant further relief from the UST Guidelines requirement that all disbursements of estate funds be done by check and include a notation representing the reason for the disbursement. Considering the nature of the Debtor's operations, the Debtor needs to conduct transactions by debit or wire transfers and other similar electronic methods. If the Debtor is denied the opportunity to conduct transactions by debit, wire transfers, or other such methods used in the ordinary course of business, the Debtor's business operations would be disrupted unnecessarily, burdening the Debtor and its creditors with additional expenses. Thus, the Debtor requests authority from this Court to continue using debit, wire transfers, or other electronic methods in the ordinary course of its business to avoid disruption of the Debtor's Cash Management System.

## D. Cause Exists to Modify Section 345(b)'s Deposit Requirements

32.     Bankruptcy Code Section 345 governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the

12

United States," Section 345(b) requires the estate to obtain, from the entity with which the money is deposited, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, or "the deposit of securities of the kind specified in section 9303 of title 31," unless the Court "for cause" orders otherwise. 11 U.S.C. § 345(b).

33.     In evaluating whether "cause" for modification or waiver of these requirements exists, courts have considered a number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver or modification of the Section 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver or modification under the circumstances. *See In re Serv. Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Here, these factors warrant a modification of the requirements of Section 345 to the extent the Cash Management System does not already strictly comply with its requirements.

34.     As shown above, the Bank Accounts are maintained at Town Bank N.A. ("Town Bank"), which is insured by the FDIC. To the extent that the accounts at Town Bank Accounts do not strictly comply with Section 345, the Debtor submits that cause exists to suspend any such noncompliance on an interim basis as set forth in this Motion, given that all funds are deposited

13

safely and prudently at Town Bank, which is a financially-stable banking institution.

## BANKRUPTCY RULE 6003 IS SATISFIED

35.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed in the Flaherty Declaration and above, (a) authorizing the Debtor to (i) continue using its existing Cash Management System, Bank Accounts, and Business Forms, and (ii) honor prepetition obligations related to the use thereof; and (c) waiving deposit requirements of Section 345 is integral to the Debtor's ability to transition its operations into this Case.

36.     Failure to receive such authorization and other relief during the first 21 days of this Case would disrupt the Debtor's ability to operate at this critical juncture. Thus, the relief requested here is necessary for the Debtor to operate its business in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

## WAIVER OF BANKRUPTCY RULES 6004(a) & (h)

37.     To implement the relief sought here successfully, the Debtor also requests that the Court enter an order providing that notice of the relief requested

14

herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE AND NO PRIOR REQUEST

38.     The Debtor is providing notice of this emergency Motion to the following parties or their respective counsel: (a) the United States Trustee for the Northern District of Illinois; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) Town Bank; (d) the Debtors' prepetition lenders, and (e) any other party as ordered by the Court. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given. The Debtor will provide such additional notice as may be required and appropriate in advance of the final hearing on this matter.

39.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor requests that the Court enter interim and final orders, substantially in the same form attached to this Motion: (a) granting the relief requested in this Motion; and (b) any other further relief the Court deems appropriate under the circumstances.

15

Dated: April 12, 2024.

**RICHMAN & RICHMAN LLC**
**Proposed Attorneys for Wisconsin**
**& Milwaukee Hotel LLC**

By:

_____
/s/ *Michael P. Richman*

Michael P. Richman
Claire Ann Richman
122 West Washington Avenue,
Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law

16