UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING THE USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, AND (3) SCHEDULING A FINAL HEARING ON FINAL AUTHORIZATION OF USE OF CASH COLLATERAL**

Wisconsin & Milwaukee Hotel LLC ("**Debtor**" or "**WMH**"), by and through its proposed counsel, Richman & Richman LLC, by Attorneys Michael P. Richman and Claire Ann Richman, submit this emergency motion ("**Motion**") for entry of an interim order (1) authorizing the use of cash collateral, (2) granting adequate protection, and (3) scheduling a final hearing to consider the entry of an order granting the relief requested in this Motion on a final basis and approving the form of notice with respect to a final hearing. This Motion is further supported by the Declaration of Mark Flaherty in Support of the Debtor's Requests for First Day Relief ("**Flaherty Declaration**"), filed contemporaneously with this Motion.

**RULE 4001(b)(1)(B) PRELIMINARY STATEMENT**

1. The Debtor operates the 205-room Milwaukee Marriott Downtown hotel (the "**Hotel**"). The Debtor has an immediate and urgent need to use its cash to fund its ordinary course business expenses. The Debtor holds cash on hand of approximately $450,000. This cash, along with anticipated revenues generated from

the Debtor's business operations, is necessary to maintain the Debtor's Hotel business and the administration of its Chapter 11 case ("**Cash Collateral**"). Accordingly, the Debtor seeks entry of an interim order (attached hereto) and a final order authorizing its use of Cash Collateral as proposed below.

| Name of each entity with an interest in Cash Collateral. | Wisconsin Housing and Economic Development Authority. |
|---|---|
| Purpose of the use of Cash Collateral. | The Debtor requests permission to use cash collateral to continue operating its business in this chapter 11 case. The Debtor will use the funds to pay ordinary and necessary expenses relating to payroll, utilities, professional services, ordinary course franchise fees, insurance, and maintenance and repairs, as well as the administrative expenses of this case. |
| Material terms, including duration, of the use of Cash Collateral. | The Debtor seeks permission to use cash collateral to continue operating as a going concern for the duration of these bankruptcy proceedings. |
| Terms of Adequate Protection | The Debtor shall provide WHEDA with an interest in cash collateral with replacement liens to the extent of any diminution in its net cash collateral. |

**JURISDICTION & VENUE**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the order of reference in this District entered pursuant to § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) as a matter concerning the administration of the Debtors' bankruptcy estates. Venue is proper in this district pursuant to §§ 1404 and 1408.

3. The statutory predicates for relief sought in the Motion are 11 U.S.C. § 363(c)(2)(B), and Fed. R. Bankr. P. 4001(b) and 9014.

# BACKGROUND

4. On April 9, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case.

5. The Debtor remains in possession of its property and is operating its business as a debtor in possession, pursuant to §§ 1181 and 1184 of the Bankruptcy Code.

6. The Debtor has a management agreement with White Lodging Services Corp. (the "**Admin Manager**"), pursuant to which the Admin Manager is responsible for Hotel operations, and pays all the operating expenses of the Hotel from revenues deposited in the Hotel bank account.

7. The Admin Manager uses cash on hand and cash flow from the Debtor's operations to fund the Debtor's working capital needs, capital expenditures as necessary, and for other business purposes. In some cases, for administrative convenience, the Admin Manager pays such expenses from its own accounts, and then immediately reimburses itself from the Debtor's accounts. The Admin Manager also employs, and pays from its accounts, and immediately reimburses from the Debtor's accounts, the persons who act as the Hotel's employees. The Debtor's ability to reorganize and continue its operations depends on its and the Admin Manager's ability to have full and immediate access to the Debtor's cash, including access to such cash for payment to and for the benefit of the business's employees and vendors. Without immediate access to such cash, the Debtor and the

Admin Manager will be unable to pay payroll and employee benefit obligations, pay post-petition trade payables incurred in the ordinary course of their business, pay for post-petition utility services, and otherwise preserve and maximize the value of its estate and fund the administration of this Chapter 11 Case. If the Debtor is not authorized to use Cash Collateral, including its cash on hand in the approximate amount of $450,000, the Debtor's estate would suffer immediate and irreparable harm to the detriment of the Debtor, its creditors, estate, and stakeholders. Quite simply, an inability to use cash would in all likelihood put the Debtor out of business and result in a liquidation of the Hotel to the extreme detriment of all the Debtor's stakeholders, as well as guests and patrons who are depending on the Hotel for upcoming reservations and events, including a Presidential nomination convention this summer.

8. The Debtor believes that its cash on hand and income generated from its business operations are encumbered by the secured lender identified below (the "**Lender**").

**Computershare Trust Company, N.A. ("Trustee") and Wisconsin Housing and Economic Development Authority ("WHEDA")**

9. WHEDA is the lender and Debtor the borrower, under that certain Loan Agreement between WHEDA and the Debtor dated August 31, 2012 (as amended, the "**Loan Agreement**") and WHEDA is the issuer of certain bonds pursuant to that certain Indenture of Trust dated August 1, 2012 entered into by WHEDA and Trustee (as amended, the "**Indenture**"), pursuant to which $42,500,000 of bonds were issued for the benefit of Borrower (collectively, the "WHEDA Loans"). Pursuant to the Loan

Agreement and Indenture, the Debtor pledged as collateral to secure its obligations under the WHEDA Loans, substantially all of its assets, including its accounts and the proceeds of such accounts, which constitute Cash Collateral under Bankruptcy Code § 363(a). Wisconsin & Milwaukee Hotel Funding, LLC (the "**Bondholder**") is the sole bondholder of the bonds issued pursuant to the Indenture.

10. Debtor executed a Continuing Guaranty (Unlimited) dated January 3, 2022 (the "**Guaranty**") in favor of Bondholder to secure a loan from Bondholder to Jackson Street Management LLC in the principal amount of $2,104,633.90. Debtor secured its obligations under the Guaranty by executing and delivering a Real Estate Mortgage dated January 3, 2022 in favor of Bondholder which encumbers the Hotel.

## The Debtors' Need for Cash Collateral

11. As discussed herein, the Debtor has an immediate need to use its cash to pay all its ordinary and necessary operating expenses, including payment of payroll and employee benefit obligations, post-petition trade and vendor payables, post-petition utility payments, insurance premiums, ordinary course franchise fees, and other necessary expenses, as well as the administrative expenses of its Chapter 11 case. Payment of these obligations is necessary to protect and maximize the value of the Debtor's estates and prevent irreparable harm to the value of the Debtor's business.

12. The Debtor does not believe that it has unencumbered cash, or other assets from which it can continue to provide ongoing Hotel services or meet ongoing business obligations. Traditional debtor-in-possession financing ("**DIP Financing**")

could be sought, but is an undesirable and ineffective alternative to the use of Cash Collateral. Obtaining such DIP Financing would be time-consuming and enormously expensive (with high fees and likely double-digit interest rates) under current market conditions. It simply makes no sense to pursue DIP Financing where, as here, the Debtor has substantial and sufficient cash resources that it can use without paying fees or interest.

13. The Debtor and the Admin Manager prepared an estimated four-month cash flow forecast, with a schedule of detailed ordinary and necessary expenditures (the "**Operating Budget**"). The Operating Budget is annexed hereto as **Exhibit A**. In addition, the Debtor prepared an estimated Bankruptcy Budget ("**Budget B**") which reflects projections of professional and United States Trustee fees anticipated during the first four months of this case. Budget B is annexed hereto as **Exhibit B**. The Operating Budget shows estimated substantial and material increases in net cash during this initial four-month period, and demonstrates that substantial and material net cash will remain and increase during this time after the payment of all ordinary and necessary expenditures, including the anticipated expenses under Budget B. The Operating Budget projections shown under column P04 correspond to April 2024, which also corresponds to the anticipated receipts and expenditures required during the first 21 days of this Chapter 11 case.

## BASIS FOR RELIEF REQUESTED

14. The Debtor's use of property of its estate, including Cash Collateral, is governed by 11 U.S.C. § 363. Section 363(c)(3)(A) allows debtors in possession to use cash collateral with the consent of "each entity that has an interest in such cash collateral." 11 U.S.C. § 363(c)(3)(A). Prior to the date hereof, the Lender consented to the use of up to $40,000 for certain emergency expenses that the parties agreed should be able to be made prior to this hearing if necessary.[1] The Lender may yet consent to the further use of the Cash Collateral sought herein, prior to the time of the hearing. This Motion is filed out of an abundance of caution to assure that the Debtor may seek such authority from the Court in the event an agreement is not reached with the Lender.

15. Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral "only…as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." *See* F.R.B.P. 4001(b)(2). When examining requests for interim relief under Bankruptcy Rule 4001(b), courts apply the same business judgment standard applicable to other business decisions. *See In re Simasko Production Co.,* 47 B.R. 444, 449 (Bankr. D.

---

[1] By an exchange of counsel emails on April 12, 2024, the Lender agreed to the use of cash collateral up to $40,000 in the following categories (with estimated totals): Guest Supplies - $3,000, Cleaning Supplies (Rooms and Kitchen) - $2500, Laundry Supplies - $1000, Kitchen Supplies - $1500, Linen Rental (Banquets) - $750, Food- $14,500, Beverage - $5,000, Office Supplies - $250, Maintenance Supplies - $3,000. On April 13, 2024, the Debtor also requested consent to the use of up to $25,000 to effect emergency elevator repairs to all three elevators at the Hotel. The Lender consented on April 14, 2024 with a reservation of rights.

Co. 1985); *In re Ames Dep't Stores Inc.*, 115 B.R 34, 38 (Bankr. S.D.N.Y.1990). A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See Simasko,* 47 B.R. at 449; *Ames Dep't Stores*, 115 B.R. at 36.

16. Section 363(c)(2)(B) also permits debtors in possession to use cash collateral if "the court, after notice and hearing, authorizes such use…in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e). Courts have observed that "[t]here is an inherent tension between a debtor's need to use its cash to continue operating and a secured creditor's right to preserve its security interest in the debtor's cash proceeds." *In re ProAlert LLC*, 314 B.R. 436, 441 (9th Cir. B.A.P. 2004). To resolve the tension, the Bankruptcy Code permits a debtor in possession to use cash collateral where the Court, "after notice and a hearing, authorizes such use" and the creditor's security interest is adequately protected. *Id.*

17. The purpose of adequate protection is to prevent the diminution of value of the secured creditor's collateral and to preserve the secured creditor's position upon the commencement of a bankruptcy case. *See Resolution Trust Corp. v. Swedeland Dev. Grp., Inc.,* 16 F.3d 552, 564 (3rd Cir. 1994). Section 363's requirement of adequate protection protects the Lender and the Debtor by providing that the Debtor may use cash collateral while ensuring that the creditor will ultimately receive the full value of the collateral that existed as of the Petition Date. Pursuant to Section 361, the Debtor may provide adequate protection through a number of means, including replacement liens on postpetition accounts and cash proceeds.

18. In this case, because the Operating Budget so clearly demonstrates that Cash Collateral is estimated to increase substantially in the next four months over the value as it existed at the Petition Date, it is clear that the granting of replacement liens to the extent of any completely unanticipated decline in the Cash Collateral is well more than adequate to protect the Lender. Accordingly, the Debtor proposes and requests that the Court approve the granting to the Lender of first position post-petition replacement liens (the "Post-petition Lien") on all of the post-petition accounts and the proceeds thereof, to the extent of any decline in their value from the Petition Date.

19. The Debtor requests that the Post-petition Lien be deemed perfected as of the Petition Date upon the entry of an order granting this Motion. The Lender may, but is not required to, file financing statements to perfect the Post-petition Lien.

20. Based on the foregoing, the Debtor believes that the Lender will be adequately protected as required by 11 U.S.C. § 363(e) such that this Court may and should authorize the Debtor to use Cash Collateral. Accordingly, the Debtor respectfully requests that the Court authorize the Debtor's use of Cash Collateral as set forth in their Operating Budget pending a Final Hearing herein without further order of the Court.

**COMPLIANCE WITH BANKRUPTCY RULE 6003**

21. Bankruptcy Rule 6003 empowers the Court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid

immediate and irreparable harm." For the reasons discussed in this Motion, the Debtor cannot operate without use of Cash Collateral, and if the relief sought in this Motion is not granted during the first 21 days of this Case, the Debtor's operations will be significantly disrupted and may be required to cease completely, causing irreparable harm to the Debtor. The relief requested is necessary in order for the Debtor to operate its business in the ordinary course, preserve the ongoing value of its operations, and maximize the value of its estate for the benefit of all stakeholders. The Debtor requires cash to pay expenses necessary to continue operating its business in the ordinary course, as outlined in the Debtor's Operating Budget. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

## NOTICE AND NO PRIOR REQUEST

22. The Debtor will service notice of this Motion to the following parties or their respective counsel: (a) the United States Trustee for the Eastern District of Wisconsin; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) the Debtor's Lender; and (d) other interested parties by email, telephone, and/or overnight delivery. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

23. Following the entry of an interim order, the Debtor shall serve a copy of such interim order and notice of a hearing to consider the entry of a final order on the following parties, in lieu thereof, to their counsel, if known: (a) the United

States Trustee for the Eastern District of Wisconsin; (b) the holders of the twenty largest unsecured claims against the Debtor; (c) the Debtor's Lender; and (d) any party as ordered by the Court.

## RESERVATION OF RIGHTS

24. The Debtor does not waive any rights, including, without limitation, the right to object to, challenge, or contest the extent, validity, or priority of any pre-petition liens and/or security interests, the amount of claims, or to value any or all of the collateral securing claims in this case.

## CONCLUSION

**WHEREFORE,** Wisconsin & Milwaukee Hotel LLC respectfully requests that the Court (1) enter interim and final orders: (a) authorizing the use of cash collateral and (b) approving adequate protection; (2) set a hearing to consider final authorization while the case is pending; and (3) grant such other relief the Court deems just and equitable under the circumstances.

Dated: April 14, 2024.

**RICHMAN & RICHMAN LLC**
**Proposed Attorneys for Wisconsin & Milwaukee Hotel LLC**

By: _/s/ Michael P. Richman_
Michael P. Richman
Claire Ann Richman
122 West Washington Avenue, Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law