UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

**DEBRTOR'S EMERGENCY MOTION FOR AUTHORITY TO HONOR PREPETITION RESERVATIONS AND DEPOSITS, AND TO PAY PREPETITION CREDIT CARD COMMISSIONS**

Wisconsin & Milwaukee Hotel LLC ("**Debtor**" or "**WMH**"), the debtor and debtor in possession in the above-captioned chapter 11 case, hereby moves this Court for entry of an order authorizing the Debtor to (a) honor prepetition reservations and the application of deposits thereto, and (b) credit card commissions that accrued immediately before April 9, 2024 (the "**Petition Date**"). In support of this Motion, the Debtor respectfully states as follows below. This Motion is further supported by the Declaration of Mark Flaherty in Support of the Debtor's Request for First Day Relief ("**Flaherty Declaration**").

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) as a matter concerning the administration of the Debtor's bankruptcy estate.

2. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the United States Bankruptcy Code (the "**Bankruptcy Code**").

## BACKGROUND

3. On April 9, 2024, the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtor operates the hotel known as the Milwaukee Marriott Downtown, a 205-room full-service, high end hotel located at 625 N Milwaukee Ave, Milwaukee, WI 53202 (the "**Hotel**").

5. A more complete description of the Debtor's business and history is set forth in the Flaherty Declaration.

6. Under the Debtor's corporate structure, the Debtor is a party to a Management Agreement dated June 14, 2011 ("Management Agreement") with White Lodging Services Corporation, a hotel management company, as Manager ("**Admin Manager**" or "**White Lodging**").

7. White Lodging has authority to use the Debtor's operating account to pay all the operating expenses of the Hotel from revenues deposited in the operating account.

8. In the ordinary course of business, the Debtor routinely accepts reservations for future stays and events at the Hotel. Those reservations represent claims of guests and patrons. Guests and patrons are also frequently required to make advance payment deposits to secure their reservations. In a substantial number of cases, guests and patrons are informed at the time they make the

reservation that their advance payment deposits are non-refundable. The deposits are taken into the general operating account, and are not treated as segregated or trust funds, but instead also represent claims of such guests and patrons to be honored at the time of their Hotel stay or event. As of the Petition Date, the Debtor had received into its general operating account reservation deposits (*i.e.* advance payments for rooms and events) on bookings made prepetition in the approximate amount of $1,109,065.

9. If the Debtor were unable to honor such advance payment deposits at the time of the applicable stays and events, it would have an immediate, disastrous and irreparable impact on the business and the estate. Guests and patrons would likely cancel their reserved stays and events, and the reputational damage would discourage other bookings from the public, resulting in the irreparable loss of millions of dollars of revenue.

10. In addition, in the ordinary course of business, guests and patrons of the Hotel use credit cards in order to make advance payment deposits on reservations for rooms and events, and to pay for stays, food and beverage and Hotel services.

11. The Debtor's ability to accept credit cards for payment for reservations and Hotel services are governed by contracts with the credit card issuers ("**Issuers**").

12. To settle credit card transactions, at the end of each day ("**Daily Batching**"), the Hotel submits the batch of all approved credit card transactions to

the respective Issuers' "**Network**," which are companies that process credit card transactions. The Networks used by the Hotel are Chase PaymentTech, FreedomPay, American Express, and Discover. American Express and Discover are both networks and issuers.

13. The Debtor receives funds for the Daily Batching in its operating account within three to four business days after submitting each daily batch to the Networks. Thus, Daily Batching that was submitted in the several days before the Petition Date results in the receipt by the Debtor of the applicable revenues on and for several days after the Petition Date. Contemporaneously with the deposit of the settled funds into the Debtor's account, the Issuers charge and automatically debit the Debtor their respective commissions. These commissions are typically a fee equal to the percentage of a credit card transaction.

14. As of the Petition Date, prepetition commissions that were due for the Daily Batching submitted in the few days just prior to the Petition Date were approximately $3,936.59. For the reasons stated below, the Debtor did not interrupt the processing of credit card transactions on the Petition Date. Thus, some of these commissions may have been paid in the usual process after the Petition Date, and all are likely to have been fully paid by April 15 or 16.

15. The Debtor and the Admin Manager did not interrupt the processing of prepetition credit card transactions on the Petition Date by blocking the Issuers' authority to debit the Debtor's account for prepetition commissions out of concern that the Issuers could cease accepting credit cards at the Hotel from guests and

4

patrons, and otherwise processing credit card transactions, which could have a disastrous impact on the Debtor's business and business reputation, including irreparable harm to the revenue stream that comes to the Debtor on a near-daily basis from credit card processing, and to the Debtor's business reputation.

16. It is not clear at this writing whether the applicable agreements with the Issuers are executory contracts (which could make such unilateral interruption by the Issuers legally unenforceable) or financial accommodations. But even if they are executory contracts and even if their interruption of the batching, payment and commission system were actionable, damages could not recompense the Debtor for the impairment to its business, reputation and future bookings if patrons and guests were unable to use credit cards at the Hotel, even for a short time. Thus, in an abundance of caution, given the relatively *de minimis* amounts of commissions involved, and to avoid the administrative expense of contested motions practice, the Debtor therefore requests authority retroactive to the Petition Date for the Debtor to continue to pay these limited amount of prepetition commissions.

**RELIEF REQUESTED**

15. By this Motion, the Debtor seeks authority, in its sole discretion, to honor prepetition reservations and advance payment deposits, and to pay Issuers prepetition commissions. The Debtor submits that the relief is necessary to maintain the confidence and goodwill of guests and patrons and to avoid immediate and irreparable harm to the Debtor's business operations.

16. If the Debtor is not permitted to honor prepetition reservations and deposits, or continue the ability of guests and patrons to use credit cards to pay for services at the Hotel, it risks alienating customers and suffering corresponding losses to its reputation, goodwill, and revenue. Such losses could severely impair the Debtor's ability to maximize the value of its estate.

17. The Debtor further submits that the relief requested represents a sound exercise of its business judgment and is in the best interests of its estate and creditors. Pursuant to section 363(b) of the Bankruptcy Code, a debtor may use property of the estate outside of the ordinary course of business after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). This provision grants courts the flexibility to authorize a debtor to pay prepetition claims where a sound business reason exists. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Here, the proposed use of estate assets to honor prepetition reservations and deposits will provide substantial benefit to the estate by preserving the Debtor's revenue streams and goodwill, and avoiding the irreparable harm to future business that would likely result from the consequences of dishonoring the reservations and deposits.

18. Once a debtor has articulated a valid business justification, courts have consistently and appropriately been reluctant to interfere with corporate decisions "unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985). Therefore, if a debtor's actions satisfy the business judgment rule, those actions will

6

generally be approved. *In re Dura Auto. Sys. Inc.*, 2007 WL 7728109, at *5 (Bankr. D. Del. Aug. 15, 2007); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

19. Courts in various circuits have approved similar relief in chapter 11 cases involving hotels and other hospitality businesses. *See*, e.g., *In re Rider Hotel, LLC*, Case No. 22-10522 (JTD) (Bankr. D. Del. July 6, 2022). The Debtor submits that the circumstances warrant similar relief here.

20. Based on the foregoing, the Debtor submits that the relief requested represents a reasonable exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's operations, and is in the best interests of its estate and creditors.

## COMPLIANCE WITH BANKRUPTCY RULE 6003

21. Bankruptcy Rule 6003 empowers the Court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed in this Motion, authorizing the Debtor to honor prepetition reservations and advance payment deposits, and to pay prepetition credit card commissions is essential for its continued operations in this Case, and if the relief sought in this Motion is not granted during the first 21 days of this Case, the Debtor's operations will be significantly disrupted, causing irreparable harm to the Debtor. The relief requested is necessary in order for the Debtor to operate its business in the ordinary course, preserve the ongoing value of its operations, and maximize the

value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submit that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

## NOTICE AND NO PRIOR REQUEST

22. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Wisconsin; (b) the Debtor's twenty (20) largest unsecured creditors; (c) counsel to the Debtor's prepetition secured lenders; and (d) all parties in interest who have filed a notice of appearance. The Debtor submits that no other or further notice need be provided. The Debtor will provide such additional notice as may be required and appropriate in advance of the final hearing on this matter.

23. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

**[Signatures appear on the following page.]**

8

Case 24-21743-gmh    Doc 20    Filed 04/14/24    Page 8 of 9

Dated: April 14, 2024.

**RICHMAN & RICHMAN LLC**
**Proposed Attorneys for Debtors**

By:     /s/ *Michael P. Richman*
Michael P. Richman
Claire Ann Richman
Eliza M. Reyes
122 West Washington Avenue, Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law
ereyes@RandR.law