## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

　　　　　　　　　　Debtor.

Case No. 24-21743-gmh

Chapter 11

## NOTICE AND APPLICATION OF THE DEBTOR
## FOR AUTHORITY TO RETAIN AND EMPLOY
## EISNER ADVISORY GROUP LLC AS FINANCIAL ADVISOR

Wisconsin & Milwaukee Hotel LLC, ("**Debtor**" or "**WMH**"), by and through its counsel, Richman & Richman LLC, submits the Notice and Application of the Debtor to Employ Eisner Advisory Group LLC as Financial Advisor ("**Application**") pursuant to Section 327 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2014 of the United States Bankruptcy Court for the Eastern District of Wisconsin (the "**Local Rules**"), authorizing the Debtor to retain and employ Eisner Advisory Group LLC as its financial advisor, effective as of May 31, 2024, the filing date of this Application ("**Effective Date**"). In support of the Application, the Debtor submits the Declaration of Deborah Friedland ("**Friedland Declaration**") attached hereto as **Exhibit A** and incorporated herein.

### JURSIDCTION AND VENUE

1.　　　The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the district court's order of reference entered in the Eastern

District of Wisconsin. As a matter concerning the administration of the bankruptcy estate, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 327 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014.

## BACKGROUND

2.     On April 9, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**"), commencing the above-captioned bankruptcy case [Doc 1] (the "**Chapter 11 Case**"). The Debtor is authorized to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.     The Debtor owns and operates the Milwaukee Marriott Downtown (the "**Hotel**"), a full-service, high-end hotel located in the heart of downtown Milwaukee.

## RELIEF REQUESTED

4.     The Debtor desires to hire the accounting and advisory firm of Eisner Advisory Group LLC ("**EA Advisory Group**") as its financial advisor in this Chapter 11 Case. As set forth herein, EA Group has considerable experience with the hotel and hospitality industry, chapter 11 cases, and general corporate and commercial matters, and is well qualified to serve as financial advisor for the Debtor in this Chapter 11 Case.

2

## BASIS FOR RELIEF REQUESTED

5. The Debtor seeks approval of the retention and employment of EA Group under Section 327(a) of the Bankruptcy Code, which provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

6. Subject to the Court's approval of its retention, EA Group, under the leadership of Ms. Deborah Friedland ("**Friedland**"), will provide the Debtor with hospitality financial analyses and operational expertise in connection with the Debtor's efforts to assess its existing operations; pursue, review, or help implement possible alternatives and improvements to such operations; and ultimately to negotiate with the Debtor's stakeholders, including the Debtor's primary secured lender, in connection with the Debtor's reorganization efforts. The Debtor does not have employees with the expertise provided by EA Group that is needed in connection with this Chapter 11 Case and the Debtor's reorganization efforts.

## SCOPE OF EMPLOYMENT

7. Local Rule 2014 requires that a retention application "include a specific recitation of the anticipated services to be rendered, together with the proposed method of calculating the compensation." Bankr. E.D. Wis. Local R. 2014(a).

8. Specifically, the professional services that the Debtor expects that EA Group will provide in connection with the Chapter 11 Case are generally as follows:

3

a. Assist the Debtor in negotiations with various stakeholders;

b. Assist the Debtor with its liquidity, financial, operational and strategic planning, with preparation of related financial information and reports;

c. Assist the Debtor with financial administrative matters in the Chapter 11 Case;

d. Assist counsel, as may be requested, with the preparation of Court motions in the Chapter 11 Case;

e. Assist with compliance with the reporting requirements of the Bankruptcy Code, Bankruptcy Rules and local rules, including but not limited to preparation of the monthly operating reports, Schedules of Assets and Liabilities, and Statements of Financial Affairs;

f. Participate in Court hearings in the Chapter 11 Case and, if requested, provide testimony in connection with any hearings before the Court, such as cash collateral/DIP financing, and confirmation of a proposed plan of reorganization;

g. Assist counsel, as may be requested, with the analysis and reconciliation of claims against the company and the determination and prosecution of bankruptcy avoidance actions; and

h. Prepare cash flow budgeting and management, support development of projections and financial data, and provide such other oversight of the Hotel's management as may be requested by counsel in relation to the Debtor's ongoing operations and efforts to confirm a proposed plan of reorganization.

## COMPENSATION

9.      EA Group will seek Court approval of its compensation and reimbursement of its actual, necessary, and reasonable expenses upon the filing of applications for compensation pursuant to Sections 330 and 331 of the Bankruptcy Code. EA Group  intends to seek compensation based on the work performed, billed at hourly rates, plus reimbursement of the actual and necessary expenses EA Group

4

incurs, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered by EA Group, including, but not limited to, photocopies, postage, mileage (charged at the IRS rate in effect on the date of travel), and any other incidental costs advanced by EA Group specifically for these matters, at the rates commonly charged for such costs to other EA Group clients.

10.     The Debtor anticipates that Friedland, Mr. Robert Katz ("**Katz**"), Mr. William Pederson ("**Pederson**"), and Mr. Shaquan Williams ("**Williams**") (each an "**Advisor**", and collectively, "**Advisors**") of EA Group will be the primary working Advisors on this matter, and submits that the Advisors have significant experience and knowledge of hotel operations and finances.

11.     The current hourly rates to be charged by the Advisors are as follows:

| | |
|---|---|
| Deborah Friedland | $650/hr. |
| Other Partners / Directors | $560/hr. - $650/hr. |
| Managers/Senior Managers | $360/ hr. - $520/hr. |
| Paraprofessionals /Staff | $195/hr. - $330/hr. |

12.     EA Group, as part of its ordinary business practice, periodically reviews and adjusts the hourly rates it charges for professional services. Those adjustments typically occur at the beginning of each calendar year.

13.     The Engagement Letter retaining EA Group specifically anticipates that EA Group would be employed under section 327 of the Bankruptcy Code and that EA Group's fees and expenses are subject to approval of the Bankruptcy Court. Accordingly, the Debtor believes that employment of EA Group under the terms of

the Engagement Letter will provide a material benefit to the Debtor and is in the best interests of the Debtor's estate.

## DISINTERESTEDNESS

14. Bankruptcy Rule 2014(a) requires an applicant seeking an order approving employment to disclose, to the best of the applicant's knowledge, all connections with the debtor, the debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed by the United States Trustee.

15. To the best of the Debtor's knowledge, EA Group has no connection with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed by the United States Trustee, except as may be expressly set forth herein or in the Friedland Declaration.

## NOTICE

16. Pursuant to Local Rule 2014, notice of this Application shall be served upon the following or their respective counsel, (a) the United States Trustee for the Eastern District of Wisconsin; (b) Computershare Trust Company, N.A., the Debtor's primary secured lender; and (c) any other persons or parties designated by the Court.

17. The Debtor asserts that notice has been provided to all required parties through the filing of this application via the Court's CM/ECF system, and requests that if no objection or request for hearing is filed within **14 days of the filing of this Application**, that the Court grant the relief requested.

6

18. Subject to this Court's approval of this application, EA Group has indicated that it is willing to serve as the Debtor's financial advisor in this Chapter 11 Case, and perform the services described herein.

WHEREFORE, Wisconsin & Milwaukee Hotel, LLC respectfully requests the entry of an order (a) granting this Application; (b) authorizing it to retain and employ Eisner Advisory Group LLC as its financial advisor in this Chapter 11 Case effective as of May 31, 2024; and (c) granting such other and further relief as this Court may deem just and proper.

Dated: May 31, 2024.

**RICHMAN & RICHMAN LLC**
**Attorneys for Wisconsin &**
**Milwaukee Hotel LLC**

By: _____ /s/ *Michael P. Richman* _____
Michael P. Richman
Claire Ann Richman
Eliza M. Reyes
122 West Washington Avenue,
Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law
ereyes@RandR.law

7

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Case No. 24-21743-gmh
Chapter 11

Debtor.

## DECLARATION OF DEBORAH FRIEDLAND IN SUPPORT OF
## NOTICE AND APPLICATION OF THE DEBTOR
## FOR AUTHORITY TO RETAIN AND EMPLOY
## EISNER ADVISORY GROUP LLC AS FINANCIAL ADVISOR

I, Deborah Friedland, hereby declare as follows:

1.      I am a Managing Director in Eisner Advisory Group LLC's Financial Advisory Services and Real Estate Group, and I am also Practice Leader of the Hospitality Advisory Services Group. I submit this declaration pursuant to Fed. R. Bankr. P. 2014(a) in support of the Notice and Application of the Debtor for Authority to Retain and Employ Eisner Advisory Group LLC as Financial Advisor (the "**Application**"), of Wisconsin & Milwaukee Hotel LLC, the debtor herein ("Debtor" or "**WMH**").

2.      EisnerAmper LLP is a licensed independent CPA firm that provides attest services to its clients, and Eisner Advisory Group LLC ("**EA Group**") and its subsidiary entities provide tax and business consulting services to their clients.  EA Group has several locations throughout the United States, including its office at One Logan Square, 130 North 18th Street, Suite 3100, Philadelphia, PA 19103.

3. Unless otherwise stated, the facts set forth herein are based on my personal knowledge, upon records maintained by EA Group in the ordinary course of business, and which have been reviewed by me or other EA Group employees at my direction, or upon information provided to me by other EA Group employees. To the extent any information disclosed in this declaration requires amendment or modification as additional information becomes available, a supplemental declaration will be submitted to the court.

## The Debtor's Retention of EA Group

4. Subject to the approval of the Application, the Debtor retained EA Group on May 31, 2024, as memorialized by the proposed engagement letter and attached Eisner Advisory Group LLC Standard Terms and Conditions of Engagement between the Debtor and EA Group ("**Engagement Agreement**"). A true and correct copy of the Engagement Agreement is attached hereto and incorporated herein as **Exhibit I**.

5. The Debtor desires to retain and employ EA Group to provide financial advisory services to the Debtor in connection with the Debtor's pending chapter 11 case (the "**Chapter 11 Case**").

6. Specifically, the professional services that the Debtor expects that EA Group will provide in connection with the Chapter 11 Case are generally as follows:

a. Assist the Debtor in negotiations with various stakeholders;

b. Assist the Debtor with its liquidity, financial, operational and strategic planning, with preparation of related financial information and reports;

c.  Assist the Debtor with financial administrative matters in the Chapter 11 Case;

d.  Assist counsel, as may be requested, with the preparation of Court motions in the Chapter 11 Case, as requested by counsel;

e.  Assist with compliance with the reporting requirements of the Bankruptcy Code, Bankruptcy Rules and local rules, including but not limited to preparation of the monthly operating reports, Schedules of Assets and Liabilities, and Statements of Financial Affairs;

f.  Participate in Court hearings in the Chapter 11 Case and, if requested, provide expert testimony in connection with any hearings before the Court, such as cash collateral/DIP financing, confirmation of a proposed plan of reorganization;

g.  Assist counsel, as may be requested, with the analysis and reconciliation of claims against the company and the determination and prosecution of bankruptcy avoidance actions; and

h.  Prepare cash flow budgeting and management, support development of projections and financial data, and provide such other oversight of the Hotel's management as may be requested by counsel in relation to the Debtor's ongoing operations and efforts to confirm a proposed plan of reorganization.

**EA Group is a Disinterested Person**
**Pursuant to 11 U.S.C. § 101(14)**

7.      To the best of my knowledge, information, and belief, EA Group, including all members and staff thereof, is a disinterested person within the meaning of 11 U.S.C. § 101(14) and is eligible to serve as financial advisors for the Debtors pursuant to 11 U.S.C. § 327.

8.      As far as I have been able to ascertain, other than as may be disclosed in this Declaration, EA Group does not have connections with the Debtor, its

3

creditors, or any other party in interest in this Case, or the United States Trustee or any person employed in the Office of the United States Trustee.

9.    EA Group employees, under my supervision, conducted a search of EA Group's database for each of the following entities (collectively, the "**Search Parties**").

- the Debtor;

- the Debtor's equity holders;

- the Debtor's management;

- the Debtor's secured and unsecured creditors; and

- other parties in interest.

10.    Each of the Search Parties are identified in **Addendum A** of the Engagement Agreement.

11.    After reviewing the conflicts search, I have determined that neither EA Group, its partners, associates, nor I (a) hold or represent any interest adverse to the Debtor or its estate, its creditors or equity holders; or (b) represent any other entity having an interest adverse to the Debtor in connection with this Chapter 11 Case.

12.    In addition, to the best of my knowledge, information, and belief, and in accordance with Bankruptcy Rule 5002, neither I, nor any member or employee of EA Group is a relative of any of the United States Bankruptcy Judges who may be assigned to this Chapter 11 Case, and EA Group does not have a connection with any of the United States Bankruptcy Judges who would render EA Group's retention in this Case improper.

13. Based upon my review as of this date, I have determined that EA Group does not represent any party who has a material adverse interest with respect to the Debtor.

14. In sum, I believe EA Group: (a) does not hold or represent any interest adverse to the Debtor in connection with the matters for which EA Group will be engaged; and (b) is disinterested.

### EA Group's Professional Compensation

15. EA Group will seek Court approval of its compensation and reimbursement of its actual, necessary, and reasonable expenses upon the filing of applications for compensation pursuant to Sections 330 and 331 of the Bankruptcy Code. EA Group intends to seek compensation based on the work performed, billed at hourly rates, plus reimbursement of the actual and necessary expenses EA Group incurs, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered by EA Group, including, but not limited to, photocopies, postage, mileage (charged at the IRS rate in effect on the date of travel), and any other incidental costs advanced by EA Group specifically for these matters, at the rates commonly charged for such costs to other EA Group clients.

16. The Debtor anticipates that Mr. Robert Katz ("**Katz**"), Mr. William Pederson ("**Pederson**"), Mr. Shaquan Williams ("**Williams**"), and I (each an "**Advisor**", and collectively, "**Advisors**") will be the primary working Advisors on this matter.

5

17.     The current hourly rates to be charged by the Advisors are as follows:

| | |
|---|---|
| Deborah Friedland | $650/hr. |
| Other Partners / Directors | $560/hr. - $650/hr. |
| Managers/Senior Managers | $360/ hr. - $520/hr. |
| Paraprofessionals /Staff | $195/hr. - $330/hr. |

18.     EA Group , as part of its ordinary business practice, periodically reviews and adjusts the hourly rates it charges for professional services. Those adjustments typically occur at the beginning of each calendar year.

19.     The Engagement Letter retaining EA Group specifically anticipates that EA Group would be employed under section 327 of the Bankruptcy Code and that EA Group's fees and expenses are subject to approval of the Bankruptcy Court. Accordingly, the Debtor believes that employment of EA Group under the terms of the Engagement Letter will provide a material benefit to the Debtor and is in the best interest of the Debtor's estate.

20.     EA Group has not shared or agreed to share any compensation received in connection with this proceeding with any entity other than its members, or associates in accordance with 11 U.S.C. § 504(b).

I declare under penalty of perjury under the laws of the United States that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct to the best of my knowledge.

Executed in Philadelphia, PA this 31st day of May, 2024.

_____
Deborah Friedland

6

# EXHIBIT I



**Eisner Advisory Group LLC**
One Logan Square
130 North 18th Street, Suite 3000
Philadelphia, PA 19103
**T** 215.881.8800
**F** 215.881.8801
www.eisneramper.com

May 31, 2024

Mark Flaherty
Wisconsin & Milwaukee Hotel, LLC
731 North Jackson Street, Suite 420
Milwaukee, WI 53202

Re: Wisconsin & Milwaukee Hotel, LLC

Dear Mr. Flaherty:

This letter and the attached Eisner Advisory Group LLC Standard Terms and Conditions of Engagement confirm the agreement between Wisconsin & Milwaukee Hotel, LLC (the "Client"), and Eisner Advisory Group LLC ("EA Group[1]") whereby the Client has engaged EA Group, subject to the approval of the Bankruptcy Court, to provide the financial advisor services described herein. This letter and the attached terms and conditions constitute the entire agreement between Client and EA Group

**Scope of Services**

The services to be performed by EA Group will be as consultants on issues concerning financial advisors ("Services").

Our services will consist of financial advisor services and, therefore, will not contemplate the audit, review or compilation of financial statements in accordance with Generally Accepted Auditing Standards ("GAAS") or with attest standards established by the American Institute of Certified Public Accountants ("AICPA"). We will perform the Services in accordance with applicable professional standards, including the Statements on Standards for Forensic Services issued by the AICPA.

The professional services that will be required of EisnerAmper in the Chapter 11 Case are generally as follows:

    a.   Assist the Debtor in negotiations with various stakeholders;

    b.   Assist the Debtor with its liquidity, financial, operational and strategic planning, with preparation of related financial information and reports;

    c.   Assist the Debtor with administrative matters in the Chapter 11 Case;

    d.   Assist with the preparation of Court motions in the Chapter 11 Case, as requested by counsel;

---

[1] EisnerAmper LLP ("EisnerAmper") and Eisner Advisory Group LLC ("EA Group") practice as an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper provides attest services to its clients. EA Group is not a licensed CPA firm and does not provide audit or attest services.

e.  Assist with compliance with the reporting requirements of the Bankruptcy Code, Bankruptcy Rules and local rules, including but not limited to preparation of the monthly operating reports, Schedules of Assets and Liabilities, and Statements of Financial Affairs;

f.  Participate in Court hearings in the Chapter 11 Case and, if requested, provide expert testimony in connection with any hearings before the Court, such as cash collateral/DIP financing, confirmation of a Plan of Reorganization, etc.;

g.  Assist with the analysis and reconciliation of claims against the company and the determination and prosecution of bankruptcy avoidance actions; and

h.  Guide the Debtor with the preparation of, among other things, cash flow budgeting and management, support development of projections and financial data needed in connection with confirming the Plan, and through the efforts of Ms. Friedland, taking on certain needed tasks previously performed by the Asset Manager relating to oversight services concerning the operations and providing any recommendations concerning same to the Debtor relative to the ongoing performance of the Hotel.

The services to be provided by EA Group are intended for use only in connection with the above-captioned matter.  It is expressly understood that any reports or other documents produced by EA Group will not be provided to any third parties, with the exception of the parties to this matter, their respective Counsel, and appropriate judicial representatives or as otherwise agreed to in writing by all parties or by judicial process.

**Conflicts of Interest**

We have performed an internal search for any potential client conflicts based upon the name of the following parties you have provided:

- Wisconsin & Milwaukee Hotel, LLC (*See Addendum A*)
- FORE Investments LLC
- Jackson Street Management LLC

Based upon this search, we are not aware of any conflicts of interest or relationships that would, in our opinion, preclude us from performing the services in an objective manner. We will notify you immediately if any such relationships subsequently come to our attention.  If additional parties to the matter are named, you are obligated to inform us as to the identity of those parties.  We reserve the right to resign from this engagement if we believe that any of the additional parties create a conflict that would prevent us from performing the services in an objective manner. You have confirmed that you are not aware of any potential client conflicts.

**Engagement Team**

Deborah Friedland will be the engagement lead for the services specified in this letter.  The engagement team that will assist you will include Robert Katz and William Pederson. who will be assisted by supporting staff experienced in performing the types of services described herein.  We can also support certain technical and industry expertise requirements of the engagement with other professionals who will be identified during the course of the engagement, with your approval.

**Fees, Expenses and Invoicing**

The fee for the Services will be on a time and expenses basis with our fee determined by the tasks required, the related time spent, and the hourly rates prevailing at the time of the service. The engagement lead's billing rate is $650.00 per hour. Our rates are adjusted periodically and we will notify you in advance of any future rate increases. In addition, you shall reimburse us for direct expenses and allocated expenses incurred in connection with the performance of the Services. Direct expenses include reasonable and customary out-of-pocket expenses such as travel, meals, accommodations, investigative reports, and other expenses specifically related to this engagement.

| Hourly Fees: | |
|---|---|
| Partners / Directors: | $560 - $650 |
| Managers / Senior Managers: | $360 - $520 |
| Paraprofessionals / Staff: | $195 - $330 |

All fees and expenses are subject to the approval of the United States Bankruptcy Court and shall not be deemed earned or collectible until such time as the United States Bankruptcy Court approves such fees and expenses.

All fees and expenses are not contingent upon the results obtained in the bankruptcy case or the Client in this matter, and we do not guarantee any specific outcome or results.

Invoices for services rendered and expenses incurred will be rendered to the Client. EA Group's invoices will be paid directly by the Client upon approval by the United States Bankruptcy Court and that there is no liability on the part of the Law Firm for the fee for any services to be rendered by EA Group pursuant to this engagement letter.

**Termination of Engagement:**

EA Group's engagement ends upon the later of delivery of the final work product, or, if applicable, expert testimony for which EA Group has been engaged. In the event no final work product is delivered or expert testimony provided, or EA Group's services continue subsequent to the date on which the final work product is delivered or expert testimony occurs (e.g. in connection with any appeal of a trial verdict), EA Group's engagement ends on the later of (i) the last date on which the services were provided, or (ii) the date on which the last invoice for the services was issued, not including any subsequent account payable reminder, revised bill, or other communications concerning completed services. However, in the event that the litigation for which EA Group has been retained is settled or a final order is entered in the matter, this engagement shall be deemed to have terminated upon the date of such settlement or final order.

EA Group has the right to resign, subject to United States Bankruptcy Court approval and/or for failure to pay fees and expenses as awarded by the United States Bankruptcy Court. ion. In the event EA Group exercises the right to terminate EA Group's services, such termination shall be in writing and shall be effective upon delivery by mail, overnight mail or email transmission and as necessary, upon approval of the United States Bankruptcy Court. Each of the termination events in this paragraph shall each be referred to as an "Engagement Termination Event."

Wisconsin & Milwaukee Hotel, LLC
May 31, 2024
Page 4

\*       \*       \*

Please indicate acceptance of the above terms and attached Eisner Advisory Group LLC Standard Terms and Conditions of Engagement by signing and returning this letter by mail, facsimile, pdf/email or DocuSign.

This engagement letter may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart's signature page of this engagement letter by facsimile, email in portable document format (.pdf), or by any other electronic means (including DocuSign) has the same effect as delivery of an executed original of this engagement letter.

Very truly yours,

EISNER ADVISORY GROUP LLC


By: _____

                  Allen Wilen, Partner


Accepted:

This letter and the attached Eisner Advisory Group LLC Standard Terms and Conditions of Engagement correctly set forth the understanding of Wisconsin & Milwaukee Hotel, LLC.


By: _____         _____
              Signature                                                    Title


_____         _____
              Print Name                                                   Date

***Addendum A***

- Access One Inc.
- Airgas USA LLC
- Akrit Sales & Service, Inc.
- Alliance Laundry Systems Distribution
- Amadeus Hospitality Americas, Inc.
- American Airlines, Inc.
- ALSCO Inc.
- ASCAP
- ASSA Abloy Global Solutions
- Averus Inc.
- Boelter Companies
- BOSS Beer Line Cleaning
- Canon Solutions America, Inc.
- Carisolo Inc.
- Cintas Corporation
- City of Milwaukee
- Computershare Trust Company, N.A.
- Courtesy Products, Inc.
- Coyle Hospitality Services, Inc.
- CVENT
- Deluxe Branded Marketing
- Ecolab Institutional
- Ecolab Pest Elimination Division
- Edward Don and Company
- Elite Protection Specialist, LLC
- FAXPIPE
- Fitzgerald Consultancy
- FORE Investments LLC
- Fortune Fish Company
- Four Peas Consulting
- Grainger
- Granite Telecommunications
- Guest Supply
- Guest Tek Interactive

***Addendum A (Cont.)***

- J.M. Brennan Inc.
- Jackson Street Management LLC
- Jones Lang LaSalle
- JS Asset Management LLC
- Knot Worldwide Inc.
- Knowland Group, LLC
- Marriott International, Inc.
- Martin Sourcing & Logistics LLC
- Meats by Linz, Inc.
- Milwaukee Pretzel Company
- Milwaukee World Festival
- OpenTable, Inc.
- Playback Prodigy
- Prescriptive Music, LLC
- Relay Inc.
- Restaurant Technologies, Inc.
- RR Donnelley
- SESAC
- State Chemical Solutions
- Tambourine
- Testa Produce, Inc.
- Town Bank
- Towne Park LLC
- Trip Advisor LLC
- Turano Baking Company
- UMF Corporation
- Urban Elevator Service, LLC
- US Foodservice Inc.
- V&J Hospitality Services, LLC
- Valentine Coffee
- Vistar Corporation
- Wave Renovations LLC
- Wedding Pages LLC
- White Lodging Management Corp.

## *Addendum A (Cont.)*

Winter Services LLC

Wisconsin & Milwaukee Hotel Funding, LLC

Wisconsin & Milwaukee Hotel, LLC

Wisconsin Hotel & Lodging

Wolf's Dry Cleaners

Zone Mechanical North LLC

# EISNER ADVISORY GROUP LLC
## STANDARD TERMS AND CONDITIONS OF ENGAGEMENT

**Client:** Wisconsin & Milwaukee Hotel, LLC ("Client")
**Engagement Letter Date:** May 31, 2024 (together with these Standard Terms and Conditions of Engagement, the "Engagement Letter")

1. **Alternative Practice Structure:** Eisner Advisory Group LLC ("EA Group") and EisnerAmper LLP practice as an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper LLP is a licensed CPA firm and EA Group is not a licensed CPA firm. EA Group has a contractual arrangement with EisnerAmper LLP, whereby EA Group provides EisnerAmper LLP with professional and support personnel and other support services to allow EisnerAmper LLP to perform its professional services. From time to time, EA Group may consult with EisnerAmper LLP in the provision of services pursuant to this Engagement Letter. Client hereby consents to EA Group sharing confidential client information with EisnerAmper LLP in support of the services to be provided by EA Group.

2. **Client Information, Privilege and Confidentiality:**
   a. As part of an alternative practice structure, EA Group agrees to comply with the AICPA Code of Professional Conduct and applicable federal, state and local rules with respect to the confidentiality of client information. EA Group will not disclose confidential client information without Client[2] consent, except that EA Group shall be permitted to disclose confidential client information (i) to any government agency or regulatory body to the extent and in the form or manner necessary or required to comply with any rule, regulation or order of such government agency or regulatory order, or (ii) pursuant to subpoena or other legal process. EA Group utilizes appropriate safeguards, policies and procedures to maintain the confidentiality of confidential client information.
   b. In the event EA Group uses third-party service providers to assist in providing professional services, EA Group may share confidential client information with those service providers. EA Group requires that such third-party service providers utilize appropriate safeguards and procedures to protect confidential client information. Client hereby consents to disclosure of its confidential client information to third-party service providers for the purpose of the third-party service provider assisting with the services provided pursuant to this Engagement Letter.
   c. EA Group may transmit or receive information or documents through electronic means, including through the firm's secure portal ("EA Group's Portal"). If Client will be using EA Group's Portal to transmit or receive information or documents, Client agrees that it shall at all times comply with the terms of use of EA Group's Portal and shall only permit authorized users to access or transmit information or documents through the portal. In the event that Client creates one or more user accounts to access information or documents transmitted through EA Group's Portal, Client shall notify EA Group to disable any user account for which an individual(s) is no longer authorized to access Client information transmitted through EA Group's Portal. Client is solely responsible for maintaining their books and records and should not rely on EA Group as their record-keeper or repository for any final

---

[2] For purposes of these Standard Terms and Conditions of Engagement, the term "Client" shall mean the entity or individual identified in the Engagement Letter above which engaged Eisner Advisory Group LLC for the services subject to the attached Engagement Letter, and shall include any subsidiary or related entity for which the services are provided.

work product for which EA Group has been engaged. Client agrees to retrieve final work product from EA Group's Portal within a reasonable period of time after the conclusion of the engagement.

d. If Client's technology, including but not limited to collaboration sites, file transfer servers and requested remote access protocols including VPN, is utilized for the Services ("Client Technology"), EA Group shall have no responsibility for the confidentiality, security, integrity, or availability of documents, applications and information stored, transmitted, modified or accessed via Client Technology. EA Group shall have no liability to Client or to any third party for any expenses, costs, losses, inoperability or damages incurred as a result of the use of Client Technology ("Technology Losses"), and Client shall defend, indemnify, and hold harmless EA Group for any Technology Losses incurred in connection with EA Group's use of Client Technology. EA Group shall not have any administrative rights or auditing capability with respect to Client Technology, and shall not utilize Client Technology or have the right to access Client Technology for any purpose other than to provide the Services. EA Group reserves the right to decline to use Client Technology in its sole discretion.

e. EA Group is committed to protecting the confidential and personal information entrusted to it and to ensuring that its vendors comply with applicable privacy laws. By entering into this Engagement Letter, you consent to the terms and conditions of EA Group's privacy law notices and contract terms located at https://www.eisneramper.com/privacy-law-resource-center.

3. **Representations and Warranties:** It is common for litigants to challenge the basis, experience and credentials of opposition experts. The admissibility of testimony is a legal matter, and EA Group makes no warranties that its testimony or work product will be admitted into evidence by the court or trier of fact. If EA Group's expert report and/or expert witness testimony, or any part thereof, is excluded, any and all professional fees and expenses are still due and owed upon presentation of EA Group invoice(s), and Client is not relieved of liability of such fees and expenses.

4. **Work Product**: All documents, including but not limited to work papers, written reports, memoranda, financial analysis and summaries that EA Group prepares in connection with this engagement will be maintained in accordance with EA Group's retention procedures. EA Group's document retention period for litigation and valuation services engagements is seven (7) years, subject to any Confidentiality Agreements in this matter. Client authorizes EA Group to destroy all files and documents seven (7) years after completion of this engagement or earlier if it is done so pursuant to a Confidentiality Agreement. Please note that it is not EA Group's practice to retain email correspondence, drafts, superseded work papers, schedules, reports or data files that have been updated.

5. **EA Group Foreign Employees and Subsidiaries:** EA Group may assign employees or employees of EA Group's subsidiaries and affiliates located outside the United States to work on Client's engagement, and to provide operational support services to EA Group. Client hereby consents to EA Group assigning employees and affiliated entities located outside the United States to this engagement, and to EA Group transmitting Client information to such employees and affiliated entities as needed to perform the services for Client and to perform operational services.

6. **No Third-Party Beneficiary:** The engagement is being undertaken solely for Client's benefit and the parties do not intend to benefit or provide contractual equitable or other rights to any other person or entity.

7. **Out-of-Scope Services**:  Any services outside the services set forth in this Engagement Letter will be a separate, new engagement.  The terms and conditions of that new engagement will be governed by a new, specific Engagement Letter for that service.    In the event an Engagement Letter for the out-of-scope services is not issued, each such out-of-scope service shall be a separate and new engagement performed pursuant to these Standard Terms and Conditions of Engagement and billed at our standard hourly rates.

8. **Limitations of Liability and Indemnification:**
   a. **Limitation of Liability**: EA Group's maximum liability for damages relating to the services provided pursuant to this Engagement Letter, whether the liability is based upon EA Group's negligence or otherwise, shall be limited to the fees paid for the service or work product giving rise to liability, provided that such limitation shall not apply where damages are judicially determined to have been caused by EA Group's gross negligence or willful misconduct.
   b. **Special Damages:** In no event shall EA Group or its personnel be liable to Client for any consequential, incidental, indirect, exemplary, punitive or special damages in connection with claims arising out of or related to this Engagement Letter or the services described herein, including any amount for loss of profit, data or goodwill, whether or not the likelihood of such loss or damage was contemplated.
   c. **Indemnification:**  The services, work product, deliverables, advice and/or recommendations provided under this Engagement Letter are for the use and benefit of Client only.  Client shall indemnify and hold harmless EA Group for any time expended, expenses (including reasonable legal fees and costs), costs and/or losses incurred in connection with any lawsuit or other legal or regulatory action or proceeding brought by a third party (including Client's affiliates, members and/or partners) involving or relating to the services under this letter, whether or not such costs and/or losses are due to the negligence of EA Group, provided that such indemnification shall not apply where such expenses or losses are judicially determined to have been caused by EA Group's gross negligence or willful misconduct.
   d. **Client Representations:**  Because of the importance of Client's representations to the services, Client agrees to release and indemnify EA Group and its personnel from and against any liability and costs relating to EA Group's services under this letter attributable to any misrepresentations by Client.

9. **Reimbursement of Expenses Related to Compliance with Subpoenas:** In the event that EA Group or EisnerAmper LLP receive a subpoena or other legal process in an action or proceeding in which neither EA Group nor EisnerAmper LLP are a party (other than the litigation for which the services are rendered) that seeks testimony, documents or information related to the services provided pursuant to this Engagement Letter, Client shall reimburse EA Group for all costs and expenses (including reasonable legal fees and costs) associated with providing such testimony, documents or information, including any time expended at EA Group's  then standard rates.

10. **Employment of EA Group Staff:** In the event Client hires a member of EA Group's professional staff, Client shall pay a fee equal to the annual compensation being paid to the individual by EA Group.  Such fee is payable when the employee accepts the position.

11. **Statute of Limitations:**  Any legal action or proceeding asserting a claim against EA Group arising out of or relating to this Engagement Letter or the services provided under this Engagement Letter shall be asserted within one (1) year from the Engagement Termination Event, as defined in the Engagement Letter.

12. **Jurisdiction, Choice of Law and Jury Waiver:**
   a. **New York Law and Jurisdiction:** The terms of this Engagement Letter and all related matters, including any dispute or claim that may arise between us related to the services provided hereunder, shall be governed by the laws of the State of New York without giving effect to choice of law principles and any legal action or proceeding related to this Engagement Letter or the services performed or to be performed pursuant hereto shall be brought in any appropriate court in the State of New York, County of New York.
   b. **Jury Waiver:** EA Group and Client, to the extent permitted by law, each knowingly, voluntarily and intentionally waive the right to a trial by jury in any action arising out of or relating to this Engagement Letter or the services to be performed by EA Group pursuant hereto. This waiver applies to any legal action or proceeding whether sounding in contract, tort, negligence or otherwise.

13. **Miscellaneous:**
   a. The Engagement Letter and these Standard Terms and Conditions of Engagement shall not be amended, unless in writing and signed by authorized representatives of all parties.
   b. The Engagement Letter and these Standard Terms and Conditions of Engagement contain the full and complete understanding of EA Group and Client with respect to the subject matter and services described in the Engagement Letter and supersede all prior representations, agreements, contracts, and understandings concerning such subject matter and services, whether they be oral or written, including but not limited to any prior non-disclosure agreements.
   c. The signatories to the Engagement Letter represent and warrant that such person is lawfully authorized and empowered to execute the Engagement Letter on behalf of the party on whose behalf such person is signing, and that upon execution, the Engagement Letter will be binding upon such party, without any further approval, ratification, or other action.
   d. Any provision of this Engagement Letter and these Standard Terms and Conditions of Engagement which is prohibited or unenforceable in any jurisdiction shall be so only as to such jurisdiction and only to the extent of such prohibition or unenforceability, but all the remaining provisions of this Engagement Letter shall remain valid and enforceable.

14. **Allinial Global and EisnerAmper Global Ltd:** EA Group is a member firm of EisnerAmper Global Ltd., a network of legally independent firms. EA Group is also a member firm of Allinial Global, an association of legally independent accounting and consulting firms. EisnerAmper Global Ltd., Allinial Global, and their respective member firms and correspondent firms are not responsible for and do not accept liability for the work or advice which EA Group provides to its clients and do not owe any duty in relation to the work or advice which EA Group provides.