# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | |
| Wisconsin & Milwaukee Hotel LLC, | Case No. 24-21743-gmh |
| | Chapter 11 |
| Debtor. | |

## APPLICATION PURSUANT TO 11 U.S.C. § 503(b)(1)(A) FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM OF MALLERY S.C.

Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"), by its attorneys Richman & Richman LLC, by Michael P. Richman and Claire Ann Richman, hereby submits the Application Pursuant to 11 U.S.C. § 503(b)(1)(A) for Allowance of Administrative Claim of Mallery s.c. ("**Application**"), seeking entry of an order granting Mallery s.c. ("**Mallery**"), and authorizing the immediate payment of, a priority administrative expense claim for services performed for Debtor's counsel for a relatively brief time after the Petition Date (defined below) in the amount of $18,406.20 (the "**Administrative Claim**"). In support of the Application, the Debtor submits the Declaration of Michael P. Richman in Support of the Application ("**Richman Declaration**"), attached hereto as **Exhibit A**, the invoice from Mallery detailing the fees incurred ("**Mallery Invoice**"), attached hereto as **Exhibit B**, and further states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, and the order of reference in this District entered pursuant to § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to §§ 1408 and 1409.

2. The statutory predicates for relief sought in the Application are Section 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

## BACKGROUND

3. On April 9, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "**Case**"). The petition was filed in urgent circumstances in order to avoid damage to the value of the estate threatened by the imminent appointment of a receiver. Consequently, most of the work preparatory to a chapter 11 filing, including the preparation of first day motions and schedules, was performed urgently after the Petition Date, rather than prior thereto (where it would have been compensated in the ordinary course).

4. The Debtor remains in possession of its property and is operating its business as a debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. The Debtor owns and operates the Milwaukee Marriott Downtown, a 205-room full-service, high-end hotel located at 625 N. Milwaukee Street, Milwaukee (the "**Hotel**").

2

6. Prior to the Petition Date, Mallery (and partner Jon S. Herreman in particular) was long-time counsel to the Debtor in connection with its formation and its development, financing and operation. On the basis of this history and deep knowledge of the complexity of the financing and contractual relationships relating to the Hotel, Debtor requested in connection with all the immediate post-petition motions, related filings, and schedules, that Mallery (and specifically Mr. Herreman) provide urgent assistance to its bankruptcy counsel, Richman & Richman LLC ("**R&R**"), to help them get "up to speed" after the Petition Date. Mr. Herreman was the only Mallery lawyer involved, and provided invaluable assistance to R&R on the Petition Date, and on an intensive basis for the ensuing three weeks, through the completion of first day hearings and the entry of the Court's order on the final use of cash collateral on May 2, 2024 [Doc 93].

7. While a modest amount of additional assistance was provided by Mr. Herreman after May 2, nearly all the urgent assistance to the Debtor was provided by Mr. Herreman in the initial three weeks of the case. As the Debtor did not contemplate further assistance from the Mallery firm (except for its role as tax litigation counsel, as to which an application was filed on June 6, 2024 [Doc 146] and approved by this Court on June 26, 2024 [Doc 175]), it did not make sense for the Debtor, on a cost/benefit basis, to incur the time and fees that would be required to prepare an application to employ Mallery in respect to the urgent assistance already rendered at the beginning of the case. A minor amount of additional work was performed thereafter in relation to the Debtor's schedules, and a discovery dispute

with the Lenders.

8. In all respects, Mallery provided critical information and insights to R&R, which benefitted the estate by saving the time and expense that would have been required by R&R to learn important facts and details from scratch. Therefore, the Debtor believes the Mallery Invoice reflects a limited amount of professional services which were necessary to preserve the estate, provided substantial benefit to the estate, and are appropriate to be compensated as a valid administrative claim.

## BASIS FOR RELIEF

9. 11 U.S.C. § 503(b)(1)(A) allows a party to recover the "actual, necessary costs of preserving the estate" and such costs are entitled to administrative priority under 11 U.S.C. § 507(a)(2).

10. To be entitled to administrative priority, a claim must have (i) arisen post-petition and (ii) been created because of actions taken at the instigation of the trustee (or debtor-in-possession) which benefited the estate. See *Nabors Offshore Corp. v. Whistler Energy II, LLC* (*In re Whistler Energy II, LLC*), 931 F.3d 432, 441 (5th Cir. 2019).

11. The burden of proving the entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence. *In re Midway Airlines, Inc.*, 221 B.R. 441 (Bankr. N.D. Ill. 1998). Expenditures must benefit the estate as a whole and not just the creditor claimant to qualify as actual and necessary expenses under § 503(b). *Fruehauf Corp. v. Jartran, Inc.* (*In re Jartran, Inc.*), 886 F.2d 859, 871 (7th Cir. 1989).

4

12. Expenses are attributable to the actions of the bankruptcy estate when the debtor-in-possession "knowingly and voluntarily" accepts goods or services. *Whistler Energy II*, 931 F.3d at 443. Debtor continued on the basis of necessity to utilize the professional services of Mallery and Mr. Herreman for a relatively brief period after the case was filed. Those services were vital in facilitating the administration of the Case and preserving the assets of the bankruptcy estate. *See* Richman Declaration ¶7. In general, a post-petition obligation benefits the estate if the goods or services in question "enhanced the ability of the debtor-in-possession's business to function as a going concern." *Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp* (*In re TransAmerican Natural Gas Corp.*), 978 F.2d 1409, 1416 (5th Cir. 1992).

13. Debtor acknowledges that it is ordinary practice to move under Bankruptcy Code § 327 for the engagement of attorneys representing the Debtor, and for compensation to be sought pursuant to § 330. However, by the plain meaning of § 503(b)(1), attorney compensation is not restricted to those employed under chapter 3. Debtor submits that in a special circumstance, as presented here, where the petition filing was urgent and the early stage of the case required Debtor's counsel to master the complexities of a multi-layered financial structure, background and other relevant facts, the savings to the estate in fees foregone were significantly greater than the fees incurred by Mallery, and which preserved and protected the value of the estate.

14. Furthermore, Mr. Herreman's work for the Debtor essentially ended

5

Case 24-21743-gmh    Doc 278    Filed 10/23/24    Page 5 of 18

after this early urgent phase, with only a small amount of time and effort thereafter. In a sense, Mr. Herreman functioned as a member of the Debtor's client team, where he was uniquely well-suited to provide significant value based upon his background and experience with the Debtor.

15. There is precedent in this circuit and district for applying section 503, as herein urged, as a "safety valve to relieve the rigidity of section 330." *In re Grabill Corp.*, 983 F.2d 773, 777 (7th Cir. 1993). The Court of Appeals wrote that this might be appropriate "in cases in which it would be highly inequitable to deny a lawyer all compensation for services that had conferred a benefit on the debtor's estate." *Id*. Referring to section 503(b)(1)(A), the Court of Appeals continued: "[t]his subsection might, in the context of a Chapter 11 proceeding such as this, authorize the payment of a claim that arose from a transaction with the debtor in possession . . . and was beneficial to the debtor in possession." *Id*.

16. In *In re Tirado*, 329 B.R. 244 (E.D. Wis. 2005) (Kelley, J.), citing *Grabill*, among other authorities, the Court awarded a § 503 administrative expense claim for attorneys' fees to an attorney for a chapter 13 debtor, holding that §§ 327 and 330 were not exclusive bases for awarding attorney's fees under the Bankruptcy Code, especially where such section did not even appear to apply to the engagement of an attorney for a chapter 13 debtor.

17. *Grabill* was followed by *Milwaukee Engraving Co., Inc.*, 230 B.R. 370 (Bankr. E.D. Wis. 1998) (McGarity, J.), and in turn, by *In re Milwaukee Boiler Mfg. Co.*, 232 B.R. 122 (Bankr. E.D. Wis. 1999) (Shapiro, J.) in awarding attorneys' fees as

6

administrative expenses under § 503. However, *Milwaukee Engraving* was subsequently reversed, 219 F.3d 635 (7th Cir. 2000) on the basis that where counsel is already employed under § 327, and has compensation denied under § 330, it may not relitigate its claim under § 503.[1]

18. The holding in *Milwaukee Engraving* was consistent with an earlier decision, *In re Singson*, 41 F.3d 316 (7th Cir. 1994), in which the Court of Appeals held that counsel whose compensation is denied under §§ 327 and 330, may not relitigate under § 503. In *Singson*, counsel seeking fees had been engaged under § 327 as special counsel for a particular issue, but billed 71 hours for work that was beyond that scope. The additional fees were denied under § 330, and the Court held that in that circumstance counsel could not resort to § 503(b).

19. This Application is distinguishable from the foregoing 7th Circuit decisions, and much closer in facts to the allowance of an administrative claim in *Tirado*. Like the lawyer for the chapter 13 debtor in *Tirado*, Mallery was not engaged under § 327, and did not act as bankruptcy counsel. It did not apply for compensation under § 330 and is not seeking to relitigate any prior determination. While an argument may be made that it could have sought engagement under § 327, such an engagement is not clearly required where counsel's legal work was urgent and brief assistance to main bankruptcy counsel. Section 327 provides that debtors "may" employ counsel thereunder. Section 330 states that the Court "may" provide

---

[1] At the end of its opinion, the Court asks whether it should overrule *Grabill*. It declined to do so on the basis that *Grabill* court's comments on the potential use of § 503(b) as a "safety valve to relieve the rigidity of § 330" was speculation.

7

compensation to attorneys employed under § 327. Neither section says "only" or uses any words of exclusivity. Nor does section § 503 restrict attorney compensation to those employed under § 327.[2]

20. This Application is precisely within the contemplation of *Grabill*, it is not inconsistent with *Singson* or *Milwaukee Engraving*, and it is not inconsistent with the express language of any of the applicable Bankruptcy Code provisions. It is exactly the type of Application that is deserving of a limited exception to the usual practice in chapter 11 cases. Mallery's work was urgent and relatively brief, and provided substantial benefit to the estate. The fees detailed in the Mallery Invoice, as sought in this Application, represent the reasonable value of those services, and the charges are consistent with industry norms and represent reasonable charges for the services provided. *See* Richman Declaration ¶8. Mallery provided an itemization of the fees and expenses to the Debtor, and the Debtor approved such fees and expenses.

21. Given the foregoing, the Debtor submits that Mallery should be entitled to allowance and immediate payment of an administrative expense claim in the amount of $18,406.20 for the post-petition administrative services provided to Debtor as "actual, necessary costs" under § 503(b)(1)(A).

WHEREFORE, the Debtor respectfully requests that the Court grant Mallery

---

[2] In *Milwaukee Engraving*, the Court suggested that despite the precatory "may" language in §§ 327 and 330, those provisions should be construed as exclusive in relation to an award of attorneys' fees because "[s]tatutes directly addressing a subject prevail over silences and implications of other provisions." *Id*. at 636. However, no citation or source was provided for this assertion; the Court instead characterized this as the holding in *Singson*. *Id.* That is questionable. No such discussion appears in *Singson*, which as stated above, held that a fee claim by attorneys engaged under § 327 and denied under § 330 could not be relitigated under § 503.

s.c. a priority administrative expense claim for services provided to Debtor, provide that such administrative expense claim may be paid immediately upon approval by the Court, and grant any such other and further relief as is just and appropriate in the circumstances.

Dated: October 23, 2024.

**RICHMAN & RICHMAN LLC**
**Attorneys for Wisconsin &**
**Milwaukee Hotel LLC**

By: /s/ *Michael P. Richman*
Michael P. Richman
Claire Ann Richman
Eliza M. Reyes
122 West Washington Avenue, Ste 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law
ereyes@RandR.law

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

# DECLARATION OF MICHAEL P. RICHMAN IN SUPPORT OF APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. § 503(b) BY MALLERY S.C.

I, Michael P. Richman, hereby declare as follows:

1. I am a member of the law firm of Richman & Richman LLC ("**R&R**" or the "**Firm**"), whose offices are located at 122 W. Washington Avenue, Suite 850, Madison, Wisconsin, 53703. I submit this declaration in support of the Application for Allowance of Administrative Claim Pursuant to 11 U.S.C. § 503(b) by Mallery s.c. (the "**Application**"), of Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**").

2. Unless otherwise stated, the facts set forth herein are based on my personal knowledge, upon records maintained by R&R in the ordinary course of business, and which have been reviewed by me or other R&R attorneys or employees at my direction, or upon information provided to me by other R&R attorneys or employees. To the extent any information disclosed in this declaration requires amendment or modification as additional information becomes available, an additional supplemental declaration will be submitted to the court.

3. On April 9, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "**Case**").

4. The Debtor remains in possession of its property and is operating its business as a debtor in possession, pursuant to §§1107, 1108, and 1184 of the Bankruptcy Code. The Debtor owns and operates the Milwaukee Marriott Downtown, a 205-room full-service, high-end hotel located at 625 N. Milwaukee Street, Milwaukee (the "**Hotel**").

5. Prior to the Petition Date, Mallery represented the Debtor in connection with its formation and the development, financing and operation of the Hotel.

6. Given the long history and complexity of the financing and contractual relationships relating to the Hotel, Debtor requested that Mallery assist its bankruptcy counsel, R&R, on and after the Petition Date in connection with first day motions, including the cash collateral motion and other related issues and filings in the first few weeks of the bankruptcy case.

7. From April 9, 2024 (the "**Petition Date**") through July 29, 2024 (the "**Covered Period**"), Mallery s.c. ("**Mallery**") performed services for the Debtor, giving rise to an administrative claim in the amount of $18,406.20. *See* Mallery Invoice, attached as Exhibit B to the Application. Mallery rendered valuable professional services to, for, and on behalf of the Debtor, providing critical information and insight to bring R&R quickly and efficiently up to speed on the current status of various legal and financial issues relating to the Hotel, which

2

preserved the assets of the bankruptcy estate and resulted in substantial benefit to the Debtor, its estate, and its creditors. Had Mallery not assisted R&R, as requested, it is highly likely that the time and associated fees that would have been incurred by R&R would have been substantially in excess of the fees incurred by Mallery. In the circumstances, considering the urgency and Mallery's deep knowledge, had R&R done this work from scratch it would have been a wasteful use of the Debtor's resources.

8. Mallery is experienced and familiar with the Debtor's finances, operations, and corporate affairs. Mallery's hourly rates are reasonable and in conformity with the rates charged by similarly situated counsel.

I declare under penalty of perjury under the laws of the United States that, based upon my knowledge, information and belief as set forth in this First Supplemental Declaration, the foregoing is true and correct to the best of my knowledge.

Executed in Madison, Wisconsin this 23rd day of October, 2024.

Michael P. Richman

3

Case 24-21743-gmh    Doc 278    Filed 10/23/24    Page 13 of 18

# EXHIBIT B

# MALLERY sc

## INVOICE

**BILL TO:**
Wisconsin & Milwaukee Hotel LLC
731 North Jackson Street
Suite 420
Milwaukee, WI 53202

**Mallery s.c.**
731 N Jackson St Ste 900
Milwaukee, WI 53202
jdemet@mallerysc.com

| | |
|---|---|
| INVOICE: | 83203 |
| DATE: | 09/17/2024 |
| DUE DATE: | 09/17/2024 |
| MATTER: | 001- Marriott Hotel |

| Account Summary | Amount |
|---|---|
| Balance Forward | $0.00 |
| Payments and credits to this invoice | $0.00 |
| New Charges (detail below) | $18,406.20 |
| Amount Due | $18,406.20 |

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| **Services** | | | | | |
| 04/09/2024 | JSH | Multiple telephone calls and conferences with client and M. Richman regarding bankruptcy filing and related issues. Review and provide comments to filings and related documents. Review of bond and loan document and related information to provid needed information to M. Richman. Meet with client to sign Petition. Draft multiple emails to client and M. Richman regarding various issues. | 4.9 | $450.00 | $2,205.00 |
| 04/10/2024 | JSH | Multiple telephone conferences with client, M. Richman and counsel for White Lodging regarding bankruptcy filings and related issues. Review of existing bond, loan and management agreements to respond to requests for information from M. Richman. Complete Corporate Ownership Certification. Draft correspondence to client and M. Richman regarding various issues. Meet with client to sign motion. Draft correspondence to M. Richman regarding same. | 7.1 | $450.00 | $3,195.00 |
| 04/11/2024 | JSH | Review of file for information to draft Declaration. Review of correspondence from M. Richman regarding various issues. Draft correspondence to M. Richman. Telephone call from M. Flaherty regarding first day motions and related issues. Review of correspondence and financial budget from White Lodging. Draft correspondence to group regarding same. Participate in | 4.2 | $450.00 | $1,890.00 |

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| | | telephone conference with White Lodging and counsel regarding budget, first day motions and on-going operations. Telephone call to M. Flaherty regarding same. | | | |
| 04/12/2024 | JSH | Review and respond to numerous questions and email from M. Richman and team regarding various issues. Draft and revise Declaration language. Telephone calls to and from M. Richman and M. Flaherty regarding various issues. Review of various draft filings and motions and provide comments as to factual accuracy. | 3.8 | $450.00 | $1,710.00 |
| 04/14/2024 | JSH | Review and respond to M. Richman's questions regarding financing and bond structure. Review and provide comments to first day motions. | 1.9 | $450.00 | $855.00 |
| 04/15/2024 | JSH | Respond to multiple emails and questions from M. Richman and client regarding loans, bonds, management agreement, franchise agreement and related issues.. Telephone calls to and from client regarding various issues. | 2.4 | $450.00 | $1,080.00 |
| 04/16/2024 | JSH | Multiple telephone calls and emails to and from M. Flaherty and M. Richman regarding various issues relating to cash collateral order. Review of Account Pledge Agreement relating to FF&E Reserve. | 2.2 | $450.00 | $990.00 |
| 04/17/2024 | JSH | Review of Interim Cash Collateral Order and related correspondence regarding first day hearings. Attend bankruptcy hearing at request of client and bankruptcy counsel. Telephone call from R. Erkert regarding same. | 2.9 | $450.00 | $1,305.00 |
| 04/18/2024 | JSH | Review of correspondence relating to status of bankruptcy. Telephone calls from M. Flaherty regarding same. | 0.3 | $450.00 | $135.00 |
| 04/22/2024 | JSH | Review and respond to M. Richman's request for information. Telephone conference with M. Flaherty regarding same and related issues. | 0.6 | $450.00 | $270.00 |
| 04/23/2024 | JSH | Brief review of loan documents, Management Agreement and Franchise Agreement regarding any requirement to escrow for taxes and related issues for bankruptcy. Telephone call to J. Cordova regarding same. Draft correspondence to working group regarding same. | 0.5 | $450.00 | $225.00 |

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 04/24/2024 | JSH | Review and respond to emails from M. Richman and J. Cordova regarding various issues. Correspondence with M. Flaherty and R. Erkert regarding cash collateral order and related issues. | 0.6 | $450.00 | $270.00 |
| 04/25/2024 | JSH | Review of proposed Cash Collateral Order. Telephone call from M. Flaherty regarding same. Participate in telephone conference with M. Richman and client regarding same. | 1.4 | $450.00 | $630.00 |
| 04/26/2024 | JSH | Review of revised Cash Collateral Order and related correspondence. Telephone call from M. Flaherty regarding same. Participate in telephone conference with client and M. Richman regarding same. | 1.1 | $450.00 | $495.00 |
| 04/29/2024 | JSH | Review and respond to numerous emails and documents relating to cash collateral order. | 0.6 | $450.00 | $270.00 |
| 04/29/2024 | JSH | Review of correspondence and documents relating to cash collateral order and related issues. Review of file regarding same. Draft correspondence to J. Cordova and M. Richman regarding same. Telephone call from M. Flaherty regarding same. | 0.9 | $450.00 | $405.00 |
| 04/30/2024 | JSH | Respond to emails regarding proposed budget. Telephone conferences with M. Flaherty and J. Cordova regarding same. | 0.5 | $450.00 | $225.00 |
| 05/01/2024 | JSH | Review and respond to numerous emails regarding cash collateral order and related issues. Draft comments to same. Telephone call to M. Flaherty regarding same. | 1.3 | $450.00 | $585.00 |
| 05/02/2024 | JSH | Review of final draft of Cash Collateral Order. Draft correspondence to M. Richman regarding same. | 0.3 | $450.00 | $135.00 |
| 05/06/2024 | JSH | Review of various schedules and correspondence regarding same. Brief conference with client regarding same. | 0.7 | $450.00 | $315.00 |
| 05/13/2024 | JSH | Review of correspondence and bid materials from financial advisors in anticipation of strategy call. Participate in strategy call with clients and M. Richman. | 1.3 | $450.00 | $585.00 |
| 05/15/2024 | JSH | Review of correspondence from M. Richman regarding various issues. Respond to same. Telephone call to M. Flaherty regarding same. | 0.5 | $450.00 | $225.00 |
| 05/22/2024 | JSH | Review of draft correspondence to lender's counsel and White | 0.3 | $450.00 | $135.00 |

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| | | Lodging counsel. Draft correspondence to M. Richman regarding same. | | | |
| 06/07/2024 | JSH | Telephone call from M. Flaherty regarding strategy with lender. Draft correspondence to M. Richman regarding related issues. | 0.2 | $450.00 | $90.00 |
| 07/29/2024 | JSH | Review of pleading regarding cash collateral dispute. Draft correspondence to M. Richman regarding same. | 0.4 | $450.00 | $180.00 |
| Expenses | | | | | |
| 06/30/2024 | | PACER research fees JUN | | - | $1.20 |
| | | **Total** | | | **$18,406.20** |

This invoice can be paid online at https://pay.gravity-legal.com/paylink/42c5dbdc-e1f0-4ee9-a140-77a92415cec0
Online payments by credit card only. A surcharge of 3% will be added to your payment.

Hours Summary:
- Jon Herreman (JSH): 40.9h @$450.00 = $18,405.00