UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | Chapter 11 |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Case No. 24-21743 |
| Debtor. | Honorable G. Michael Halfenger |

---

**OBJECTION TO DEBTOR'S APPLICATION
PURSUANT TO 11 U.S.C. § 503(b)(1)(A)
FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE CLAIM OF MALLERY S.C.**

---

Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding LLC (collectively, "Lenders"), by their attorneys, Reinhart Boerner Van Deuren s.c., hereby object to Debtor's *Application Pursuant to 11 U.S.C. § 503(b)(1)(A) for Allowance and Payment of Administrative Claim of Mallery S.C.* (ECF #278) (the "Application"). In support of this objection, Lenders state as follows:

**BACKGROUND**

Lenders first heard of Mallery's bankruptcy work for the Debtor when the Application was filed on October 23, 2024; no prior notice to Lenders was given, and no request for use of cash collateral was made pursuant to the *Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection* (ECF #93) (the "Cash Collateral Order"). Lenders asked Debtor to withdraw the Application, citing many of the points detailed in this objection, but Debtor refused.

Debtor filed an application to employ the Mallery firm on a section 327(e), "special counsel," basis on June 6, 2024 (the "327(e) Application"). The 327(e) Application was accompanied by a Bankruptcy Rule 2014(a) statement (the "2014 Statement"), a copy of which is

filed herewith for the Court's convenience as Exhibit A.  In the 2014 Statement, Mallery disclosed that it previously rendered service to the Debtor, and that, among other things:

- Mallery holds a claim against the estate for prepetition services rendered;
- Mallery represents Jackson Street Management, the majority member, and creditor, of the Debtor;
- Mallery represents JS Asset Management LLC, a creditor of the Debtor;
- Randall J. Erkert is an equity shareholder with Mallery who is also a member of Jackson Street Management, the majority member of the Debtor.

*See* 2014 Statement at 6.

Nowhere in the 2014 Statement does Mallery disclose that it also provided bankruptcy services to the debtor-in-possession.  Yet time records submitted with the Application reveal that Mallery did just that, with tasks including:

- Reviewing and providing comments to bankruptcy filings, including first-day motions;
- Meeting with the client to sign the petition (likely a prepetition expense) and motions;
- Reviewing loan documents and budgets;
- Preparing a declaration for the case; and
- Assisting with cash collateral negotiations.

App., Ex. B.  None of this was disclosed in the 2014 Statement, and the 2014 Statement has not been revised or supplemented since it was filed some five months ago.

Debtor filed the Application on October 23, 2024, seeking to compensate Mallery for such bankruptcy services under the broad heading of "actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  According to the Debtor, Mallery is a unique applicant: it "did not act as bankruptcy counsel," was not engaged under section 327, and did not apply for compensation under section 330.  App. at 7.  Nevertheless, Debtor argues, Mallery's services benefited the estate under "special circumstances," where the "petition filing was urgent" and Debtor's counsel had to "master the complexities" of Debtor's business.  App. at 5.

2

52842662

Case 24-21743-gmh    Doc 306    Filed 11/13/24    Page 2 of 11

The most recent fee statement from Debtor's counsel reveals that Debtor's estate has, so far, incurred more than $5,000 in fees to prepare and file the Application. (ECF #301).

**ARGUMENT**

The Application is premised on two primary contentions: (1) that section 327 is permissive—it does not require an application to employ counsel before counsel is compensated; and (2) that the Court of Appeals for the Seventh Circuit has left the door open on section 503 compensation for attorneys under these circumstances. Both premises are flawed. What is more, Mallery failed to disclose the work for which it now seeks compensation when it was engaged as special counsel, these are not permitted expenses under the Cash Collateral Order, and Mallery's services were duplicative. For each of these reasons, the Application must be denied.

**I. IN THE SEVENTH CIRCUIT, ATTORNEYS MAY NOT BE COMPENSATED WITHOUT APPROVAL UNDER SECTION 327.**

Debtor argues that nothing in section 327 mandates employment of a law firm before it can be compensated, noting that section 327(a) uses the permissive phrase "may employ." But section 327's use of the word "may" does not imply that attorneys can be compensated without being properly employed upon notice. The statute clarifies that a trustee "may" employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . . ." That is to say, attorneys may only be employed if they meet the requirements of section 327. The same can be said for section 330, which uses the phrase "may award." Nothing in section 330 implies that attorneys may be compensated without following the requirements of section 330; "may award" means that attorneys may only receive compensation if they satisfy the requirements of section 330 ("reasonable compensation for actual, necessary services").

52842662

Case 24-21743-gmh    Doc 306    Filed 11/13/24    Page 3 of 11

Contrast these uses of the word "may" with its use in section 328(c), which says that a court "may deny allowance of compensation . . . if, at any time . . . such professional person is not a disinterested person . . . ." Section 328(c) gives the bankruptcy court the *discretion* to take the action in question. *See In re Crivello*, 134 F.3d 831, 837 (7th Cir. 1998) (holding that denial of fees is discretionary, not mandatory, under § 328(c)). Sections 327 and 330 imply that the bankruptcy court's discretion is limited: employment and compensation are permitted only if the requirements of the statutes are met, but if those requirements are met, the bankruptcy court retains discretion to approve employment or award compensation. "May employ" and "may award" do not afford the options for attorney employment or compensation that Debtor ascribes to them.

Section 503's structure supports the conclusion that attorneys must be approved and compensated under sections 327 and 330. Debtor relies exclusively on section 503(b)(1), which refers only to "actual, necessary costs and expenses of preserving the estate," listing several examples. The list of examples is not limiting, *see* section 102(3), but can be contrasted with more specific references to "compensation" in subsections (b)(2), (b)(3), (b)(4), and (b)(5). Congress clearly knew how to refer to compensation when it wanted, a fact the Court of Appeals for the Seventh Circuit highlighted in *In re Milwaukee Engraving Co.*, 219 F.3d 635, 636 (7th Cir. 2000):

> By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements. Statutes directly addressing a subject prevail over silences and implications of other provisions. We so held, for §§ 327, 330, and 503 in particular, in *In re Singson*, 41 F.3d 316, 320 (7th Cir. 1994), and the bankruptcy judge

4

52842662

Case 24-21743-gmh    Doc 306    Filed 11/13/24    Page 4 of 11

acknowledged that the language of *Singson* bars an award to MMK.

*Milwaukee Engraving* is binding precedent, and Debtor offers little to avoid it, save for a single footnote at the end of its Application, where Debtor suggests that the Court of Appeals misinterpreted its own decision in *In re Singson*, 41 F.3d 316 (7th Cir. 1994). App. at 8, n.2 ("No such discussion appears in *Singson* . . . ."). To the contrary, *Singson* holds that professional fees become administrative expenses only to the extent they are approved under section 327, 41 F.3d at 320, and *Milwaukee Engraving* emphasizes the point: "One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2)." 219 F.3d at 637. The Court of Appeals emphasized that, although *Singson* "did not spell this out at length," "there was no need to do so, for the subject had been covered by another circuit, whose conclusion we endorsed." *Id.* (referring to citation of *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 109 (3d Cir. 1988)).

*Milwaukee Engraving* explains further that *Singson* constituted a "holding" on attorney employment and compensation, while the discussion in *In re Grabill Corp.*, 983 F.2d 773, 777-78 (7th Cir. 1993) (the case on which Debtor primarily relies; more on this below), constituted mere "dictum" or "speculation." As the Court of Appeals put it, "it was unnecessary for *Singson* to discuss *Grabill's* ruminations." *Milwaukee Engraving*, 219 F.3d at 638. *Grabill*, the Court of Appeals explained, "is irrelevant to the authoritative status of the later decision in *Singson*." *Id.*

To be clear, *Singson* directly addresses the use of section 503 for attorney compensation, holding that "legal (and other professional) fees during the administration of the estate *become* administrative expenses only to the extent they are approved under § 327 or some other section, such as 11 U.S.C. § 330 or § 1103(a)." 41 F.3d at 320. *See also, In re Crivello*, 134 F.3d 831,

5

52842662

840, n.4 (noting that *Grabill* "affirmed the denial of fees, stressing that the Code authorizes compensation only to professionals employed under 11 U.S.C. § 327(a)."). Because the fees in *Singson* exceeded the scope of the work approved under section 327, section 503 could not fill the gap.[1]

Debtor tries to distinguish these binding Seventh Circuit decisions on grounds that Mallery is not seeking to "relitigate" a previous order denying employment or compensation, App. at 7, but Mallery was ineligible for section 327(a) employment in the first instance (which is the more likely reason Debtor never filed an application to employ). Mallery could not satisfy the disinterestedness standard because of its many connections to the Debtor, its equity shareholder's indirect ownership interest in the Debtor, and its representation of parties having interests adverse to the bankruptcy estate.

There is little difference (certainly not a persuasive difference) between counsel formally rejected for failure to satisfy the disinterestedness standard, and counsel that had the good sense not to apply for employment or compensation under sections 327 or 330 because it was a lost cause. In either case, counsel was ineligible for employment or compensation under sections 327 and 330, and both *Singson* and *Milwaukee Engraving* hold that section 503 cannot be used as an alternative.

As *Milwaukee Engraving* makes clear, *Grabill* does not change the result. *See In re Grabill Corp.*, 983 F.2d 773 (7th Cir. 1993). *Grabill* suggested that section 503 could

---

[1] Although the Court of Appeals does not say it explicitly, it appears that *Singson* also involved a section 327(e) engagement. *See* 41 F.3d at 318 (describing "special counsel" engagement and noting that trustee and counsel [wrongly] treated the employment order as authorizing the law firm to "act as general counsel for the estate."). So while the law firm in *Singson* was denied compensation for "general counsel" services rendered *after* its "special counsel" employment, here Mallery seeks compensation for "general counsel" services rendered *before* its "special counsel" employment. Yet if section 503 cannot be used in the former case, as *Singson* held, section 503 certainly cannot be used in the latter because Mallery's unapproved "general counsel" fees never "became" administrative expenses in the first instance. 41 F.3d at 320.

"conceivably" be used "as a safety valve to relieve the rigidity of section 330," but immediately acknowledged that the issue need not be decided because ineligible counsel in that case never sought relief under section 503. *Id.* at 777. Be that as it may, Debtor likens the present situation to the hypothetical described in *Grabill's* final paragraph. *Id.* at 777-78 (noting that things "might [have] be[en] different" if properly retained counsel [here, the Richman firm] had been the one to seek compensation for the firm that was not employed under section 327(a) [here, the Mallery firm] "if it could show that hiring [the ineligible firm] had reduced the fees and expenses that it would otherwise have had to incur." *Grabill*, 983 F.2d at 778. As noted above, these comments in *Grabill* have been described variably by the Court of Appeals for the Seventh Circuit as "ruminations," "speculation" and "dictum." *Milwaukee Engraving*, 219 F.3d at 638.[2] And there is much more in *Grabill* that hurts the Debtor than helps it.

In *Grabill*, the Court of Appeals noted that cases interpreting section 330 liberally are "cases in which lawyers *who would have been approved* as debtors' counsel under section 327(a) neglected to file an application and were compensated anyway, the idea behind this display of lenity being that the denial of all compensation would be an excessive sanction for harmless neglect." 983 F.2d at 776. This is not our case; again, Debtor fails to acknowledge that Mallery was simply *not eligible* for employment under section 327(a). Emphasizing the point, the Court of Appeals stated that "[r]etroactive approval followed by compensation is one thing; retroactive compensation to a disapproved and . . . ineligible lawyer is another." *Id.* at 777. *Grabill* goes on

---

[2] "We cover *Grabill* now only to avoid the risk that courts will ignore *this* decision, just as the bankruptcy and district judges here decided that they need not follow *Singson*, but by doing this we do not mean to encourage lengthy explorations of dictum." *Milwaukee Engraving*, 219 F.3d at 638. As Debtor notes, the Court of Appeals declined to "overrule" *Grabill*, because "[h]ow can speculation be overruled?" *Id.* at 639.

to cite the "scattered" cases that allow retroactive compensation to a not-disinterested lawyer, noting they are "just plain wrong." *Id.*

*Grabill* was not a case where an eligible lawyer acted promptly, and neither is this one. *See id.* (noting that counsel waited almost one month before filing a 327(a) application). Here, counsel waited more than six months before requesting compensation under section 503, bypassing sections 327 and 330 altogether.

Debtor cites *In re Tirado*, 329 B.R. 244 (Bankr. E.D. Wis. 2005), for the proposition that section 503, as a basis for compensating attorneys, is alive and well despite the Seventh Circuit's decisions in *Singson* and *Milwaukee Engraving*. But whatever the merits of that decision in a chapter 13 context, it is clear that the decision is limited to chapter 13 cases. The bankruptcy court expressly distinguished *Singson* and *Milwaukee Engraving* on grounds that section 327 does not apply to the employment of attorneys by a chapter 13 debtor. *See id.* at 250. So *Tirado* does not aid the Debtor here. The Application must be denied.

## II. MALLERY'S FAILURE TO DISCLOSE ITS BANKRUPTCY WORK FOR THE DEBTOR-IN-POSSESSION PROVIDES ADDITIONAL GROUNDS TO DENY THE APPLICATION.

Nowhere in the 2014 Statement does Mallery disclose that it also rendered bankruptcy services to the debtor-in-possession. The connections that must be disclosed under Rule 2014(a) apply to all professionals, are not discretionary, and are considerably broader than the disclosures required for section 327(a). *See, e.g., In re Pope*, Case No. 20-22889-gmh, 2021 WL 1346528, at *4 (Bankr. E.D. Wis. March 31, 2021). This omission appears to have been intentional: (i) Mallery has been representing Debtor in connection with its current property tax appeal since at least 2023 (2014 Statement at 2, ¶ 4); and (ii) Debtor and Mallery both clearly knew as of June 6, 2024, that Mallery had rendered services to the debtor-in-possession in the earliest days of this

case, and yet said nothing about it. Indeed, Debtor admits that it "did not make sense" for Debtor to file an application to employ Mallery because "nearly all the urgent assistance to the Debtor was provided by Mr. Herreman in the initial three weeks of the case." App. at 3. Debtor's conscious decision to not file an application to employ Mallery is not an excuse to hide the bankruptcy work from the Court, the United States Trustee, and other parties-in-interest.

Perhaps full disclosure would not have rendered Mallery ineligible for section 327(e) employment, but the point is that the Debtor and Mallery deprived the Court and parties-in-interest the opportunity to make that determination at the time the 327(e) Application was filed. Full disclosure would have allowed such parties to determine the extent and subject matter of the work done for the debtor-in-possession, whether and how it related to the section 327(e) work, if at all, and whether any positions that Mallery would take in the property tax dispute might affect or color its bankruptcy work for the Debtor and vice versa. (Note that Mallery's time entries for the undisclosed bankruptcy work show internal conferences between Jon Herreman and Randall Erkert, the Mallery shareholder who is a member of Debtor's majority owner. Are Debtor's interests completely aligned with those of its owner?) Disclosures are mandatory, for a reason. *See* Fed. R. Bankr. P. 2014(a).

At a minimum, the Application should be denied because Mallery failed to disclose this work five months ago when it submitted the 2014 Statement. "It is the professional's responsibility to make a full, candid, and complete disclosure." *See, e.g., In re Tomczak*, 283 B.R. 730, 734 (Bankr. E.D. Wis. 2002). And that responsibility is a continuing one: the attorney is under a duty to promptly notify the court of any developments. *See id.* at 735. So even in the unlikely event that Mallery "forgot" to disclose the post-petition bankruptcy work for the Debtor, it has had five months to remedy that omission, and has not done so.

9

Counsel who fail to "disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *In re Rental Sys., L.L.C.*, 511 B.R. 882, 894 (Bankr. N.D. Ill. 2014). This is especially true if the failure to disclose is intentional, since "a bankruptcy court should punish a willful failure to disclose the connections required by Fed. R. Bankr. P. 2014 as severely as an attempt to put forth a fraud upon the court." *Crivello*, 134 F.3d at 839.

### III. THE PROPOSED COMPENSATION FOR MALLERY IS AN UNDISCLOSED, UNAPPROVED EXPENSE UNDER THE CASH COLLATERAL ORDER.

The Cash Collateral Order is clear: Debtor is only authorized to use cash collateral as provided in the budgets approved by Lenders. ECF #93, at 7, ¶ 1. Mallery's fees for general bankruptcy work were never budgeted by Debtor or approved by Lenders. "In no event shall the Debtor use any Cash Collateral to pay any expenses except as set forth in the Budget and herein . . . ." ECF #93, at 8, ¶ 2. The Application must be denied because awarding compensation to Mallery under section 503 would violate the Cash Collateral Order.

### IV. THE PROPOSED FEES ARE INHERENTLY DUPLICATIVE OF WORK DONE BY COUNSEL FOR THE DEBTOR.

Debtor admits that Mallery's work helped Richman & Richman "get up to speed" after the Petition Date. App. at 3. In other words, Mallery downloaded the "history" and its "deep knowledge" to Richman & Richman, which suggests strongly that two different lawyers are seeking compensation for essentially the same services: one to speak and one to listen. Debtor suggests that there was a cost-savings associated with this approach, but offers no support for it.

Comparing the time entries of the two firms suggests that each attorney billed its own time for multiple conference calls and emails between each other, even attending the same hearing, and reviewing and revising the same pleadings and orders. Conceptually, some cost-

savings is possible, but again Debtor does not attempt to explain where the cost-savings occurred, or how much was saved. The Application must be denied because Mallery's services were duplicative.

WHEREFORE, Lenders respectfully request that the Court enter an order denying the Application in its entirety.

DATED: November 13, 2024

>COMPUTERSHARE TRUST COMPANY, N.A.
>WISCONSIN & MILWAUKEE HOTEL FUNDING LLC
>
>BY: */s/ Frank W. DiCastri*
>
>Frank W. DiCastri
>Sara C. McNamara
>REINHART BOERNER VAN DEUREN s.c.
>1000 North Water Street, Suite 1700
>Milwaukee, WI 53202-3186
>414-298-1000 (phone)
>fdicastri@reinhartlaw.com
>smcnamara@reinhartlaw.com