UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:   Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh

(Chapter 11)

---

## UNITED STATES TRUSTEE'S OBJECTION TO APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTARTIVE CLAIM OF MALLERY S.C. UNDER 11 U.S.C § 503(b)(1)(A)

---

**NOW COMES** the United States Trustee, Adam G. Brief, by Attorney Dillon Ambrose, who objects to the application for payment of Mallery S.C.'s attorneys' fees, under 11 U.S.C. § 503(b)(1)(A).

### SUMMARY OF MOTION

The Debtor seeks to pay Mallery S.C. ("Mallery"), as its attorney, under section 503(b)(1)(A), as an administrative claim. ECF No. 278. The United States Trustee objects because compensation of estate professionals may only be awarded by way of section 330 for those professionals employed under section 327. *Milwaukee Engraving* makes clear that debtors cannot use section 503(b)(1)(A) to circumvent section 327. Moreover, Mallery was employed for a specified special purpose under section 327(e), and Mallery's compensation should be limited to the scope of its employment. Had the Debtor applied to hire Mallery as its attorney for bankruptcy purposes (as opposed to litigate property tax issue), the United States Trustee would have objected, as Mallery represents multiple creditors in this case, including being a creditor itself, and is therefore ineligible for employment under section 327(a). Additionally, because Mallery and the Debtor failed to disclose this representation and its close relationship with the Debtor in its application to employ Mallery (June 6, 2024), any additional fees should be disallowed.

Attorney Dillon J. Ambrose
Office of the United States Trustee
517 East Wisconsin Avenue, Room 430
Milwaukee, WI 53202
Phone: 414-297-4499 / Dillon.J.Ambrose@usdoj.gov

## BACKGROUND

1. On April 9, 2024, the Debtor filed a petition for bankruptcy under Chapter 11. ECF No. 1.

2. On April 10, 2024, the Debtor applied, under section 327(a), to employ Richman and Richman LLC as their bankruptcy counsel. ECF No. 10.

3. On May 31, 2024, the Debtor applied, under section 327(a), to employ Allen & Associates as an appraiser. ECF No. 136.

4. On May 31, 2024, the Debtor applied, under section 327(a), to employ Eisner Advisory Group LLC as a Financial Advisor. ECF No. 137.

5. On June 6, 2024, the Debtor applied, under section 327(e), to employ Mallery S.C. as Special Counsel for a Specific Purpose. ECF No. 146.

6. Within that application for Mallery's employment, the Debtor stated "[t]he law firm of Mallery SC ("Mallery") has been representing the Debtor since 2021 with respect to the City of Milwaukee's property tax assessments of the Hotel and filed the Property Tax Appeal on behalf of the Debtor on June 8, 2023. The Debtor wishes to engage them to continue the Property Tax Appeal because of their substantial background and involvement with the City of Milwaukee's property tax assessments of the Hotel, and the Property Tax Appeal, and because a successful outcome could be highly beneficial to the estate." ECF No. 146.

7. The Debtor noted within that filing: "[l]ocal Rule 2014 of the Bankruptcy Court for this district provides that an application 'must include a specific recitation of the anticipated services to be rendered together with the proposed method of calculating the compensation.' Mallery shall act as special counsel to the Debtor, including continuing to represent the Debtor in the Property Tax Appeal, and performing such legal services as

may be required under the circumstances of the Property Tax Appeal that are deemed to be in the interests of the Debtor as set forth the Bankruptcy Code." ECF No. 146.

8. Mallery provided a "Declaration of Christopher L. Strohbehn" to employ Mallery as special counsel for the limited purpose of litigating a property tax appeal. *Id*.

9. In assessing whether it represented any adverse interest, the Declaration noted it represents or has represented multiple creditors of the Debtor but stated that the interests of all creditors and the Debtor are aligned with respect to the Property Tax Appeal. *Id*.

10. The Declaration states Mallery "has represented, and continues to represent, Jackson Street Management LLC" and that Jackson Street Management is an unsecured creditor of the Debtor. *Id*.

11. The Declaration states Mallery represents Wave Renovations, LLC, of which several members are members of Jackson Street Management, which is an unsecured creditor of the Debtor. *Id*.

12. The Declaration states Mallery's equity shareholder, Randall Eckert, is a member of Jackson Street Management, which is an unsecured creditor of Debtor. *Id*.

13. Further, the Declaration states Mallery itself is a creditor of Debtor, holding a prepetition claim of $6,612.95. *Id*.

14. The Debtor's application specifically noted its limitation of its representation: "The interests of the Debtor and Mallery are aligned and identical with respect to the Property Tax Appeal, and therefore, Mallery does not represent any interest adverse to the Debtor or to the estate *with respect to the matters for which Mallery will be providing advice and services as special counsel* to the Debtor." ECF No. 146, p. 9 (emphasis added).

15. As of June 6, 2024, the date of Mallery's Declaration and the Debtor's application to employ Mallery, Mallery omitted that it was also providing substantive legal services for this bankruptcy case since April 9, 2024. *Compare* ECF Nos. 146 *and* 278, pp 15-18.

16. On October 23, 2024, in connection with the Application for Allowance of an Administrative Expense under section 503(b)(1)(A), the Debtor first provided notice that Mallery had provided legal services to the Debtor beyond the scope of the tax matters for which it had been employed as Special Counsel. ECF No. 278.

17. Further, the Debtor noted for the first time that "Prior to the Petition Date, Mallery (and partner Jon S. Herreman in particular) was long-time counsel to the Debtor in connection with its formation and its development, financing, and operation." ECF No. 278 at 3

## ARGUMENT

**A. *Milwaukee Engraving* does not allow a claim for attorney's fees under section 503(b)(1)(A).**

Section 327 governs the employment of attorneys. 11 U.S.C.§ 327. As stated in *In Re Milwaukee Engraving*, a Debtor cannot use section 503(b)(1)(A) to circumvent section 327: "Using *§ 503(b)(1)(A)* even to overcome a procedural glitch was disapproved by *Singson;* that holding logically entails the impropriety of using *§ 503(b)(1)(A)* to defeat the principal function of *§ 327* by requiring the estate to compensate a law firm that labored under a conflict of interest." *In Re Milwaukee Engraving*, 219 F.3d 635, 637 (7th Cir. 2000) (emphasis added)

Recently, this Court affirmed that debtors must seek employment of attorneys through the exclusive mechanism set forth under section 327:

> Employment under *section 327* requires court approval. See *Singson, 41 F.3d at 320*. And professional persons who fail to obtain that approval can neither be awarded and allowed compensation under *sections 330(a)* and *503(b)(2)* nor allowed an administrative expense claim for that work under *section 503(b)(1)*. *Id.*; see also *In*

re Milwaukee Engraving Co., Inc.,* 219 F.3d 635, 636 (7th Cir. 2000) ("By making express provision for employment under § 327, payment under § 330, and priority under § 503(b)(2), the Code logically forecloses the possibility of treating § 503(b)(1)(A) as authority to pay (and give priority to) claims that do not meet its substantive requirements.")

*In re Greenpoint Tactical Income Fund LLC,* 2023 Bankr. LEXIS 3012, pp 17-18.

The Debtor attempts to distinguish Seventh Circuit caselaw by arguing those cases involved an actual application under section 327, which was brought and denied, disallowing Debtors from re-litigating the matter under section 503(b).[1] In this case, the Debtor argues it never applied under section 327, did not act as bankruptcy counsel, and did not apply for compensation under section 330, thus it may resort to section 503(b). However, this argument fails to recognize that Debtor *must* apply for attorneys' fees under section 327 and 330. *In re Milwaukee Engraving Co., Inc.,* 219 F.3d 635, 636 (7th Cir. 2000) ("the structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2)--which depends on authorization under § 330 or §1103(a) (and thus on approval under § 503(b)(1)(A)). One might as well erase § 503(b)(2) from the statute if attorneys can stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2)").

If the Court allowed payment under section 503(b)(1)(A) simply because an attorney's employment was *never* sought under section 327, section 503(b)(1)(A) would swallow, and render useless, section 327. Because the Debtor failed to apply for professional fees under section 330, the Debtor's application must be denied.

**B. Debtor's distinguishment of *Milwaukee Engraving* fails to account for the fact that Mallery was engaged under Section 327.**

---

[1] The Debtor incorrectly states "However, *Milwaukee Engraving* was subsequently reversed . . . on the basis that where counsel is already employed under § 327, and has compensation denied under § 330, it may not relitigate under § 503." ECF No. 278, ¶ 17. In fact, counsel in that case was not "already employed under § 327," but applied to be employed, and that employment was denied due to its conflict of interest in representing another creditor.

Moreover, the predicate of the Debtor's distinguishment—that Mallery did not first apply under section 327—ignores the fact that Mallery was engaged under section 327, albeit for a limited purpose to litigate the property tax appeal. Contrary to Debtor's statement "Like the lawyer for the chapter 13 debtor in *Tirado*, Mallery was not engaged under § 327," (ECF No. 278) Debtor became engaged under section 327(e) on June 6, 2024. ECF No. 146. Further, the Court ordered that Mallery may act as counsel for only a limited purpose, to "represent it in ongoing state court litigation to contest the amount of property tax it owes." ECF No. 175. As such, any additional work beyond that scope should not be paid, given the court's specific and directed limit.

C. **An application under Section 327 involving Mallery being employed as bankruptcy counsel would have received objections based upon Mallery's creditor-debtor relationship and its representation of numerous creditors of Debtor.**

The United States Trustee would have objected to an application to employ Mallery under section 327(a) to represent Debtor in bankruptcy. Unlike Mallery's application for the limited purpose to appeal the property tax under section 327(e), an application to provide legal advice in this bankruptcy was objectionable.

To be eligible for employment in a bankruptcy case, a professional must fulfill two statutory requirements: the professional (1) cannot hold or represent an interest adverse to the estate; and (2) must be a disinterested person. 11 U.S.C. § 327(a). "Together, the statutory requirements of disinterestedness and no adverse interest to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (quoting in part, *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).

The phrase in section 327(a) that the professional not "hold or represent an interest adverse to the estate," is not defined in the Bankruptcy Code. Many courts, however, have adopted the definition of the phrase provided in *In re Roberts*, 46 B.R. 815 (Bankr. D. Utah 1985):

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998). To "represent an adverse interest" means to serve as agent or attorney for any individual or entity holding such an adverse interest. *In re Tinley Plaza Assoc., Inc.*, 142 Bankr. 272, 276-77 (Bankr. N.D. Ill. 1992). A "disinterested person" is defined in section 101(14) of the Code as a person who "is not a creditor, an equity security holder, or an insider" and who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest, in the debtor . . . or for any other reason." 11 U.S.C. § 101(14)(a), (c). The phrase "or for any other reason," is commonly referred to as the "catch-all clause" and is sufficiently broad to include any professional with an "interest or relationship that would even faintly color the independence and impartial attitude required by the Code." *In re Crivello*, 134 F.3d at 835 (citing *In re BH & P, Inc.*, 119 B.R. 35, 42 (D. N.J. 1990)).

The court in *Envirodyne* considered whether a law firm that has a client who is a creditor can also serve as the attorney of the debtor. The *Envirodyne* court determined the law firm could not serve "two masters." *In re Envirodyne*, 150 B.R. 1008, 1021 (Bankr. N.D. Ill. 1993). Similarly, in *In Re Harris Agency LLC*, 451 B.R. 358 (Bankr. E.D. PA 2011), the court found an impermissible conflict with a law firm representing both a creditor and debtor, pointing to both the actual and potential conflicts:

> The Firm's simultaneous representation of Union One - a creditor and co-obligor of Harris - and the Debtor created an actual conflict of interest as of March 10, 2009, the date that Winterhalter entered its appearance in District Court on behalf of Union One. As counsel to both the Debtor and Union One, Winterhalter entered into a host of conflicts, both actual and potential. The Firm could not be an effective and loyal advocate for both of these clients at the same time because their interests, contrary to the assertion of Winterhalter, are *not* identical.

Id. at 391.

By the definition used in *Crivello*, Mallery is and would have represented an "economic interest that . . . would create either an actual or potential dispute in which the estate is a rival claimant," because Mallery and Debtor's interests do collide as independent parties holding adverse interests. *In re Crivello*, 134 F.3d at 835; *see also In re Raymond Professional Group, Inc.*, 421 B.R. 891, 901 (Bankr. N.D. Ill. 2009) ("Attorneys represent an adverse interest when they serve as an attorney for any party holding an adverse interest.") (citation omitted).

Mallery is itself a creditor, which would prevent it from representing the Debtor in this bankruptcy case. Additionally, Mallery represents JS Asset Management, which is a substantial creditor. Even further, it represents Wave Renovations, several members of which are members of JS Asset Management. And lastly, Mallery has an equity shareholder who is also a member of JS Asset Management. Mallery and all of these clients have a creditor claim against the Debtor, and a creditor is, by definition, not a "disinterested person."

As the case law reflects, a servant cannot serve two masters. A relationship with two clients cannot meet the "undivided loyalty" and ability to "provide untainted advice and assistance" standard advanced in *Crivello*, 134 F.3d at 836. Mallery cannot provide untainted advice and have undivided loyalty to its other clients. As stated by this court, "[a] Chapter 11 debtor-in-possession—and, by extension, the debtor's attorney—owe a fiduciary obligation to creditors. *In*

*re Ryan 1000, LLC*, 631 B.R. 722, 738 (Bankr. E.D. Wis. 2021). As such, the United States Trustee would have objected to this expansion of their representation under section 327(a).

### D. The Court should disallow these fees.

Because Mallery is not a disinterested person as it relates to the bankruptcy (Mallery is a creditor and represents other creditors of the Debtor, all of which have adverse interests), the United States Trustee would ask the Court to disallow any payment for work performed beyond the limited scope of Mallery's employment.

Moreover, Mallery's failure to disclose this relationship serves as yet another reason to not allow payment of this claim. Rule 2014 disclosures must be "full, candid, and complete." *In re Tomczak*, 283 B.R. 730, 734 (Bankr. E.D. Wis. 2002). "Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001) (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991)). As this Court has stated:

> Failing to disclose all connections required by Rule 2014 risks disqualification and denial of compensation: "[C]ounsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation." *Crivello*, 134 F.3d at 836. When the debtor or the debtor's attorney violates Rule 2014's disclosure requirement, however, "whether to impose a penalty and the nature and extent of the penalty is generally a matter left to the bankruptcy court's discretion." *Miller Buckfire & Co., LLC v. Citation Corp. (In re Citation Corp.)*, 493 F.3d 1313, 1321-22 (11th Cir. 2007).

*In re Pope*, 2021 Bankr. LEXIS 849 *11.

On June 6, 2024, the Debtor filed an application under section 327 to hire Mallery as special counsel for the limited purpose of the property tax appeal. Neither the Debtor nor Mallery disclosed (1) Mallery's representation of the Debtor within this bankruptcy, despite the Mallery Invoices

showing bankruptcy work completed for the Debtor from April 9 to July 29, 2024; or (2) the fact that "Prior to the Petition Date, Mallery (and partner Jon S. Herreman in particular) was long-time counsel to the Debtor in connection with its formation and its development, financing, and operation." ECF Nos. 146 and 278. Because Mallery and the Debtor failed to disclose these connections, the Court should disallow any payment for this undisclosed work.

**WHEREFORE,** the United States Trustee requests that the Court deny the Debtor's Application for Allowance and Payment of Administrative Claim of Mallery, S.C. under 11 U.S.C. section 503(b)(1)(A).

Dated: November 13, 2024.

        ADAM G. BRIEF
        United States Trustee

        */s/ Dillon J. Ambrose*
        Dillon J. Ambrose
        Trial Attorney
        Office of the United States Trustee
        517 East Wisconsin Avenue, Room 430
        Milwaukee, Wisconsin 53202
        Phone: 414-297-4499
        Email: Dillon.J.Ambrose@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2024, I filed the **UNITED STATES TRUSTEE'S OBJECTION TO APPLICATION FOR ALLOWANCE AND PAYMENT OF**

**ADMINISTARTIVE CLAIM OF MALLERY S.C. UNDER 11 U.S.C § 503(b)(1)(A)** with the Clerk of the Bankruptcy Court using the ECF system, which will send notification of such filings to all appropriate ECF filers.

*Lindsay Vahrandian*
Lindsay Vahradian, Paralegal Specialist
Office of the United States Trustee