# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Case No. 24-21743-gmh
Chapter 11

Debtor.

## DEBTOR'S COMBINED REPLY TO OBJECTIONS TO APPLICATION PURSUANT TO 11 U.S.C. § 503(b)(1)(A) FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM OF MALLERY S.C.

Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"), by its attorneys Richman & Richman LLC, by Michael P. Richman and Claire Ann Richman, hereby files this combined reply ("**Reply**") to objections filed by Computershare Trust Company, N.A. ("**Computershare**") and Wisconsin & Milwaukee Hotel Funding LLC ("**WMH Funding**," together with Computershare, "**Lenders**") and the United States Trustee ("**UST**"), to the Application Pursuant to 11 U.S.C. § 503(b)(1)(A) for Allowance and Payment of Administrative Claim of Mallery S.C. ("**Mallery Admin Claim**") [Doc 278]. In support of the Reply, the Debtor states as follows:

1.      The Debtor filed the Mallery Admin Claim on October 23, 2024, seeking an order granting an administrative expense claim and authority for payment for approximately $18,000 in services performed by the Mallery Firm for the estate and Debtor's counsel (the "**Richman Firm**") for a relatively brief time after the Petition Date (the "**Mallery Admin Claim**").

2.      On November 13, 2024, the Lenders ("**Lenders' Objection**") [Doc 306]

and the United States Trustee ("**UST Objection**") [Doc 308] filed objections (together, the "**Objections**"). By text order dated November 14, 2024 [Doc 309], the Court directed that Debtor file this combined reply on or before November 25, 2024.

3.      <u>The Mallery Firm Did Not Provide Bankruptcy Legal Services</u>. The Objections each are based on the false premise that Mallery rendered bankruptcy legal assistance to the Debtor without having first sought to be approved as Debtor's bankruptcy counsel under Bankruptcy Code § 327(a). The Lenders and UST each contend that the Mallery Firm would not have been eligible to be engaged under that Code section (based on lack of disinterestedness) and that they would have objected to any such application. Their legal arguments (and in particular their disagreements with the Debtor's presentation of the applicable precedents) are all based on this same false premise.

4.      The work that the Mallery Firm (and attorney Herreman in particular) performed at the outset of the case did not constitute bankruptcy legal services. It was typical of work for which co-counsel are frequently engaged as special counsel under Bankruptcy Code § 327(e): corporate and business law assistance to bankruptcy counsel arising from the Mallery Firm's long-standing corporate and business law representation of the Debtor's owner (which was all fully disclosed when the Debtor sought to engage the Mallery Firm as special counsel for tax litigation in June 2024).  The Debtor could have (and in retrospect at the outset of the case should have) sought to engage the Mallery Firm as special counsel for this additional corporate and business work. No one argues that the Mallery Firm would not have

been eligible to be so employed. This was simply an oversight without consequence for any policies underlying the importance of main bankruptcy counsel engagement under § 327(a); and by the time it was realized it did not make sense on a cost-benefit basis to pursue such a limited and substantially completed engagement under § 327(e).[1]

5.     What the Mallery Firm did was akin to an *ad hoc* consulting arrangement, which was limited to the provision of factual information to the Richman Firm that was in the possession of the Mallery Firm from its fully-disclosed work as long-standing prepetition counsel to the Debtor's owners on business and corporate matters. It was intended to assist the Richman Firm to render bankruptcy legal advice to the Debtor and otherwise to understand quickly the background and history of the Debtor's relationship with the Lenders, and the complex financial structure of that relationship. It did not duplicate anything that the Richman Firm did as bankruptcy counsel. Other than the incorrect assertion of duplication, no one refutes the fact that this work benefitted the estate.

6.     The Lenders examine the Mallery Firm time entries (Obj. p. 2) and imagine them to be bankruptcy legal services. But they are all the kinds of assistance that special counsel, or a member of the client team, would ordinarily (and did)

---

[1] The cost-benefit irony of incurring further estate legal fees in pursuit of the Mallery Admin Claim, is not lost on Debtor, and we note that the Lender (Obj. p. 3) made reference to the fees already incurred in preparing and filing the Motion. Those fees were comparable to (and likely less than) what would have been incurred in the preparation and filing of an application to employ the Mallery Firm as special counsel, had that been done at the outset of the case. Because we feel strongly that the Mallery Firm should not be punished for the oversight in our seeking their approval at the outset of the case to be engaged as special counsel under section 327(e) (as more fully discussed herein), and in light of the objections and contested nature of the Mallery Admin Claim, the Richman Firm will not seek compensation in this case for fees incurred with respect to this combined reply and any further proceedings in connection with the Mallery Admin Claim.

provide: (a) review of initial filings and the petition as special counsel would, (b) review of loan documents and budgets as special counsel would, (c) assistance to the Richman Firm with the preparation of a declaration as special counsel, and (d) assistance to the Richman Firm with cash collateral negotiations as part of the client team, generally to confirm critical facts and data of a factual nature. The Debtor correctly represented in the Mallery Admin Claim motion that the Mallery Firm did not act as bankruptcy counsel, a point acknowledged by the Lenders. *Id.*

7.      The Oversight in Disclosure in June 2024 Was Immaterial and Not a Basis for Denial of the Claim. The Lenders make the further argument that the allowance of the Mallery Admin Claim required the disclosure of the underlying services when the Debtor filed on June 6, 2024 the Notice and Application of Debtor for Authority to Retain and Employ Mallery SC as Special Counsel for a Specific Purpose ("**App to Employ Mallery**") [Doc 146], which included the Declaration of Christopher L. Strohbehn under Bankruptcy Rule 2014(a) ("**2014 Statement**"). The argument is based again on the false premise that the early case services underlying the Mallery Admin Claim were bankruptcy legal services outside the ambit of a § 327(a) engagement. From a bankruptcy engagement standpoint, the services that the Mallery Firm performed as (unapproved) special counsel did not create any conflict with respect to the tax litigation role for which approval was sought in the App to Employ Mallery. The nondisclosure in June (as was the lack of an initial § 327(e) motion) was an oversight without material consequence. The question for the approval of an administrative expense claim is whether the services benefitted the

4

estate. No one argues that to the contrary.

8. <u>Allowance of the Claim Does is Not Prohibited by the Bankruptcy Code and Does Not Offend any Bankruptcy Policy</u>. The bulk of the Lenders' and UST Objections takes issue with the Debtor's argument that compensation for this kind of special counsel work is permitted without prior Bankruptcy Court approval of the engagement by the express terms of Bankruptcy Code §§ 327 and 330. The Lenders and UST insist that section 330's precatory language that the Court "may award" compensation under those sections must be amended by the Court into a mandatory provision by inserting the word "only" between "may" and "award," something that only Congress may do. *Id.*, p. 4.

9. Lawyers may provide benefit to the estate, as any non-lawyer might (and be eligible for administrative expense treatment), when acting primarily in a factual consulting or special counsel capacity, and not as bankruptcy lawyers. The Debtor does not contend that lawyers should generally be excluded from the engagement requirements of section 327(a) or (e); only that in rare cases like this one where there were urgent circumstances, the work was akin to special counsel and consulting work that would have been approved under § 327(e) had an application been filed, and it produced a benefit to the estate, it would be harsh and inequitable to punish the lawyer for the oversight, and such punishment is not mandated by the Bankruptcy Code or applicable precedents.

10. The Lenders argue that permitting compensation here should be denied as a "liberal" interpretation of section 330 because the Mallery Firm was not eligible

5

to be employed as Debtors' counsel under § 327(a). As demonstrated above, this is not an end run around § 327(a). Debtor does not contend that the Mallery Firm performed bankruptcy services or was otherwise eligible to serve as Debtor's counsel. They were eligible to serve as a consultant to the Debtor for the limited purposes described in the Mallery Admin Claim, and they and Debtor did overlook, without ill intent, the filing of a motion to approve such a limited engagement (until the work had been substantially completed).

11.     Approval and Payment is Well Within the Cash Collateral Budget, and Will Have no Credible Impact on the Lenders' Collateral Rights. Finally, the Lenders contend that even if the Mallery Admin Claim is allowed, it should not be permitted to be paid because it was not approved by them under the Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection ("**Cash Collateral Order**") [Doc 93]. The most recent budget under the Cash Collateral Order was provided to the Lenders on September 11, 2024 (and approved by acquiescence). It forecast attorney professional fees in the chapter 11 case of $60,000 for each of September and October, and $80,000 for each of November and December. Actual invoices for September ($13,589 [Doc 258] and October ($37,524.50 [Doc 301]) have already been filed for fees that are well below those budgeted amounts. In addition, as noted above, Debtor's counsel has agreed to forego fees in relation to the Mallery Admin Claim from and after the filing of the Motion. Any objection to payment therefore on the grounds of Lenders' non-approval or lack of adequate protection should not be sustained.

6

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order granting the Admin Claim App, authorizing its payment, and granting further relief as is just and appropriate in the circumstances.

Dated: November 25, 2024.

                                          **RICHMAN & RICHMAN LLC**
                                          **Attorneys for Wisconsin &**
                                          **Milwaukee Hotel LLC**

By:        /s/ *Michael P. Richman*
                 Michael P. Richman
                 Claire Ann Richman
                 Eliza M. Reyes
                 122 West Washington Avenue,
                 Suite 850
                 Madison, WI 53703
                 Tel: (608) 630-8990
                 Fax: (608) 630-8991
                 mrichman@RandR.law
                 crichman@RandR.law
                 ereyes@RandR.law