UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

In re:                                                Chapter 11

WISCONSIN & MILWAUKEE HOTEL, LLC,                     Case No. 24-21743

          Debtor.                                     Honorable G. Michael Halfenger
_____

**OBJECTION TO DEBTOR'S MOTION
FOR ENTRY OF AN ORDER FURTHER EXTENDING BY 60 DAYS
THE EXCLUSIVE PERIODS FOR FILING CHAPTER 11 PLAN
OF REORGANIZATION AND FOR SOLICITING ACCEPTANCES THERETO**
_____

Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding LLC (collectively, "Lenders"), by their attorneys, Reinhart Boerner Van Deuren s.c., object to Debtor's *Motion for Entry of an Order Further Extending by 60 Days the Exclusive Periods for Filing Chapter 11 Plan of Reorganization and for Soliciting Acceptances Thereto* (ECF #318) (the "Motion"). In support of this objection, Lenders state as follows:

### INTRODUCTION

Motions to extend exclusivity are inherently fact-intensive and case-specific. As Lenders see it, this case, as it has been prosecuted, does not warrant a second extension of Debtor's exclusive periods to file and solicit a plan. This is not an unusually complex case requiring extensive negotiations with multiple stakeholders, Debtor's prosecution of this case has been less than diligent, and Debtor appears to have engaged in zero negotiations with its creditors to date.

52887574

Debtor tries to sell a generalized notion of progress toward reorganization, but when that "progress" is scrutinized, it reveals a case characterized by delay, the inexcusable failure (for months on end) to obtain an appraisal of the sole asset in question, and a healthy dose of misdirected blame. For all of the reasons discussed herein, Lenders respectfully request that the Motion be denied.

## ARGUMENT

Debtor has the burden to show cause to extend its exclusive periods. *See, e.g., In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003). Debtor begins that effort by claiming it was engaged "on a nearly daily basis" to "stabilize and regularize" business operations from shortly after the Petition Date "through the end of June." Motion at 3. That is nearly three months of every-day, business-saving activities, if Debtor is to be believed—a historical narrative that is nearly the same, word for word, that Debtor offered in its first request for extension of exclusivity. (ECF #195, at 2-3). But much of what occurred in the first three months of this case has the traditional makings of any chapter 11 case: first-day motions, cash collateral negotiations, and employment applications. Motion at 3. This does not justify an exclusive plan process lasting 300 days.

Debtor claims that there are three overriding issues on which the proposal of a plan depends: the treatment of Lenders' claims, the treatment of White Lodging's

claims, and the assumption/rejection decision pertaining to White Lodging.  Motion at 4.  If this is true, Debtor has some explaining to do.

The bar date for filing claims in this case passed on June 21, more than five months ago.  Yet Debtor only recently objected to White Lodging's claims, on October 15, 2024, and has yet to object to Lenders' claims (though it announces its intention to do so).  Motion at 7.[1]  If these were truly the linchpins of the restructuring effort, one might ask why it has taken Debtor four to five months to take these important steps.  Notably, Debtor premised its first extension request on the expectation that, "early in the extended period (if granted)," Debtor would "move to object to or estimate claims that it believes should be disallowed or estimated for plan confirmation purposes." (ECF #195, at 7).  That statement was made more than four months ago.

As for the decision to assume or reject the White Lodging contract, recall that White Lodging sought to expedite this process back in June, but Debtor opposed the effort.  (ECF #178).  Debtor now claims that the three weeks remaining in its exclusive period to file a plan are not enough to accomplish its primary goals, but crying three weeks (!) is not a moving response to months of delay.  It also begs the question what an additional 60 days will do?  More on this below.

---

[1] Debtor has not sought to discuss its forthcoming claim objection with Lenders.

Debtor blames the delay on Lenders, claiming that its efforts to engage Lenders in early May were "rebuffed" because Lenders wanted to first obtain an appraisal before commencing plan negotiations. Blame has an inverse relationship with accountability. While it is true that Lenders were ill-prepared in May to negotiate the terms of a plan without first understanding the value of the hotel, *Debtor is inexplicably silent about why it did not also take the opportunity, in early May, to obtain an appraisal of its own*. Instead, Debtor first decided to obtain an appraisal in July, ostensibly in light of the "frosty tenor" of discussions with Lenders.[2] Then, Debtor waited until August 14 to file an application to employ an appraiser: more than *four months* after the case was filed. And to this day, Debtor still does not have an appraisal of its own hotel, nearly eight months after it voluntarily commenced this case. Motion at 5.

Debtor should be held accountable for failing to obtain an appraisal during the first eight months of this case. Motion at 6. It has the temerity to blame Lenders for not negotiating without an appraisal back in May, but now claims its own appraisal is necessary to begin such negotiations "in earnest." Motion at 5, 10-11. Debtor cannot have it both ways.

---

[2] Debtor cites the "contested discovery" with Lenders regarding access to materials and information needed to complete Lenders' appraisal, but fails to mention that formal discovery was necessary only because Debtor refused to provide the requested information voluntarily. (ECF #157, at 3.) Even then, Debtor objected to Lenders' discovery, arguing that it "needed to be viewed in anticipation of potential contested plan confirmation hearings." *Id*. In other words, Debtor chose to oppose Lenders' appraisal efforts, and delay its own for months, despite acknowledging from the outset that contested plan confirmation hearings were likely.

So what good will an extra 60 days do?  Debtor reveals that it is involved in a dispute with White Lodging over the 2025 budget, significant enough that Debtor may utilize the "dispute resolution process" provided by its contract with White Lodging.  But there is little hope that a dispute resolution process can be completed with an additional 60 days.  The parties' contract appears to provide for the selection of an industry expert to resolve disputes, with time for each party to submit position papers, and additional time for the expert to render a decision.  It appears that process will take 90 days or more.

Nor, in all likelihood, will the extra 60 days be sufficient to resolve Debtor's objections to White Lodging's and Lenders' claims, both of which appear to involve discovery requests.  *See* Motion at 7; ECF #310, at 12-13.  Debtor admits that the filing of a plan and disclosure statement is not "dependent" on the resolution of these objections, so it offers only a half-hearted statement that an additional 60 days "may provide such an opportunity."  Motion at 7.  That Debtor can accomplish so much, in such a little amount of additional time, is further belied by Debtor's acknowledgement that "end-of-year holidays" are near.  Motion at 8, n.2.  And importantly, even though Debtor admits that a resolution of these issues is not necessary to file a plan and disclosure statement, it still is not willing to say that this will be its last extension request.  Motion at 2 ("Debtor *anticipates* that this will be the last such request") (emphasis added); at 8 (same).

5

Debtor suggests that its request for an additional 60 days is "meant to exhaust the possibilities of proposing a plan that other parties will consider satisfactory," but as Debtor admits, there have been no negotiations in the first instance, and Debtor has still not filed a plan. There is nothing to "exhaust" when you have not started; there can be no "pressure" to yield to an unsatisfactory plan when none has been filed. Motion at 9. As recently as October 21, Debtor informed Lenders that "[w]e expect to file the plan and disclosure statement before the end of the current exclusivity period," and that "[w]e also expect to open negotiations with your clients in about two weeks to determine if we can agree on consensual plan treatment of their claims."[3] And yet, here we are: no negotiations and no plan.

This is not an overly complex case; Debtor admits that only 18 proofs of claim were filed, and there are only three primary issues, two of which are intertwined. (ECF #195, at 6). There is no committee with which to contend, and no multitude of creditors with which to negotiate. Debtor has had nearly eight months to file a plan, yet waited until recently to begin addressing the issues it suggests are most important. Debtor also admits that it likely will not resolve these important issues in the proposed timeframe, and that such resolutions are not needed to file a plan in any event. What is more, Debtor admits that it has engaged in no negotiations with its creditors. *See, e.g., In re*

---

[3] A copy of this e-mail correspondence is available upon request.

*Gialamas*, No. 18-13341, 2019 WL 6215974, at *1 (Bankr. W.D. Wis. Nov. 20, 2019) (discussing considerations for extensions of exclusivity).

In the meantime, Lenders have been placed on ice, and they continue to incur the delays and expense caused by this bankruptcy filing. "Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." *Id.* (quoting *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988)). Lenders suspect that Debtor is attempting to delay the confirmation hearing in this case to the spring or early summer, friendlier seasons when reservations would typically increase for any hotel in Milwaukee. No debtor should be allowed to leverage exclusivity to manipulate its financial projections.

WHEREFORE, Lenders respectfully request that the Motion be denied.

| | |
|---|---|
| DATED: November 26, 2024 | COMPUTERSHARE TRUST COMPANY, N.A. WISCONSIN & MILWAUKEE HOTEL FUNDING LLC |
| | BY: /s/ *Frank W. DiCastri* |
| | Frank W. DiCastri<br>Sara C. McNamara<br>REINHART BOERNER VAN DEUREN s.c.<br>1000 North Water Street, Suite 1700<br>Milwaukee, WI 53202-3186<br>414-298-1000 (phone)<br>fdicastri@reinhartlaw.com<br>smcnamara@reinhartlaw.com |