UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Case No. 24-21743-gmh
Chapter 11

Debtor.

**DEBTOR'S COMBINED REPLY TO OBJECTIONS TO
MOTION FOR ENTRY OF AN ORDER FURTHER EXTENDING BY 60 DAYS
THE EXCLUSIVE PERIODS FOR
FILING CHAPTER 11 PLAN OF REORGANIZATION AND
FOR SOLICITING ACCEPTANCES THERETO**

Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"), by its attorneys Richman & Richman LLC, by Michael P. Richman and Claire Ann Richman, hereby files this combined reply ("**Reply**") to objections filed on November 26, 2024 by Computershare Trust Company, N.A. ("**Computershare**") and Wisconsin & Milwaukee Hotel Funding LLC ("**WMH Funding**," together with Computershare, "**Lenders**") [Doc 331], and the joinder filed on December 2, 2024 by White Lodging Services Corporation ("**White Lodging**") [Doc 335], to the Debtor's November 18, 2024 Motion for Entry of an Order Further Extending by 60 Days the Exclusive Periods for Filing Chapter 11 Plan of Reorganization and for Soliciting Acceptances Thereto ("**Exclusivity Motion**") [Doc 318]. On December 4, 2024, the Court entered the Order (1) Setting Procedures on the Adjudication of the Debtor's Motion for Entry of an Order Extending the Exclusive Periods for Filing a Chapter 11 Plan of Reorganization and for Soliciting Acceptances and (2) Setting Case Management Conference [Doc 336] ("**Order**"), directing that Debtor file this

combined reply on or before December 17, 2024.

1. A number of significant developments have occurred in the month since the Debtor filed its Exclusivity Motion, all of which have facilitated the drafting of the Debtor's plan and disclosure statement, which is now well along in process.

2. The Debtor has been in discussions with three management companies to consider replacements, and assess the economic impacts of assuming, rejecting, or terminating the White Lodging Management Agreement. The Debtor submits that this process should be completed during the extension period requested in the Exclusivity Motion, and will provide the necessary information to incorporate the decision whether to assume, reject, or terminate the Management Agreement in its plan and disclosure statement.

3. Also, within the last week, representatives of White Lodging informed Debtor's ownership that it would provide to them a comprehensive settlement proposal that would facilitate a rejection of the Management Agreement in this chapter 11 case. That proposal was received today and is, at this writing, being reviewed and evaluated. The Debtor believes that there is a likelihood of further negotiations during the extension period requested in the Exclusivity Motion, which could lead to a consensual disposition of the Management Agreement in its plan and disclosure statement.

4. An important and related issue for any decision on the disposition of the Management Agreement is the status of a guaranty of Debtor's performance as a Marriott franchisee, which was provided by White Lodging to Marriott International,

Inc. ("**Marriott**") on June 17, 2011, and whether rejection of the Management Agreement would trigger claims by Marriott and highly material and related indemnification or contribution claims (assertedly $14 million) by White Lodging against the Debtor. *See* Claim 15, 15-2 part 2, and Claim 16, 16-1 part 2. The Debtor has begun discussions with counsel for Marriott about eliminating or mitigating any such claims in the event the Debtor determines to reject the Management Agreement and replace White Lodging.[1]

5. On December 6, 2024, the Debtor received from LW Hospitality Advisors the necessary valuation information needed by it to complete its formulation of a plan, and most importantly, to propose confirmable treatment of the secured claims asserted by the Debtor's Lenders. While the Lenders' Objection characterized this case as "not overly complex" (Computershare Obj., p. 6), it is quite the opposite. In this case, a feasible plan requires consideration of the Hotel's valuation, its liquidation value, and the economics of different potential treatments under Bankruptcy Code §§ 1129(a) and (b) (anticipating the possibility of cramdown). In addition, the Debtor must consider and propose a feasible plan that accounts for the possibility of the Lenders making a section 1111(b) election.

6. The possibilities for satisfying those plan requirements are in some ways unlimited. Even without the valuation information received on December 6, 2024, the Debtor, its financial advisor and the decisionmakers in Debtor's management, had been considering a variety of Lender claim treatments which must take account of

---

[1] Significant disputes also remain between the Debtor and White Lodging as to the proposed 2025 Budget for the Debtor Hotel, as described in the Exclusivity Motion.

3

economic variables which flow from different projections, including near and long-term projected macro and microeconomic conditions and Hotel performance, which are further affected by projected interest rates, discount rates and different terms of years that may be proposed. Each different scenario requires ownership discussion and assessment, and analytical assistance from the Debtor's financial advisor, including feasibility analysis.

7. The scenario to be proposed for the Lenders' treatment in a plan also affects in economically material ways the economics of the treatment of other classes that the Debtor may propose, and which must also be carefully analyzed and considered. As soon as the Debtor received, on December 6, 2024, the important valuation information for which it was waiting, it was able to draft and propose to the Lenders, on the same day, a class and distribution treatment scenario that it believes can be confirmed and will best position the Debtor for successful emergence from chapter 11 and long-term financial health, which was quickly rejected.

8. On December 10, 2024, Lenders' counsel outlined in general terms the kind of plan the Lenders were seeking, and made clear that the Debtor and the Lenders had fundamental irreconcilable differences in objectives, Hotel values, and terms of claims treatment. In the time since the Lenders' response, the Debtor has been incorporating its proposal in the plan and disclosure statement.

9. The objections that the Debtor expects to file this week with respect to the Lenders' claims are based upon potential calculation discrepancies, contract liability, and contract interpretations, and should not be difficult to resolve. The delay

in filing these objections was attributable to the need to better understand the underlying, complicated bond treatment structure of the secured claims, which make these secured claims much different from that of a typical financial institution. In the case of WMH Funding, the Debtor also needed to confirm through its appraisal that the collateral pledged to WMH Funding (junior in priority to Computershare, and to secure an obligation to the non-debtor owner Jackson Street Management LLP) does not have sufficient value, after accounting for Computershare's senior position, to allow it any claim.

10. On December 4, 2024, in its Order, the Court directed the Debtor to explain "what remains to be done before it completes its appraisal of the hotel, how long those tasks will take, what must be accomplished before the parties will be ready to try the debtor's objections to both the claim of the Lenders and White Lodging, and why some or all of those undertakings could not have been accomplished sooner."

11. As discussed above, the appraisal has been completed.

12. The objections to White Lodging's claims 15 and 16 are proceeding. A Rule 26(f) report was filed on December 13, 2024 [Doc 343] and the Court has scheduled a preliminary conference for December 19, 2024. As discussed above, the Debtor has also taken initial steps (including communications with White Lodging and Marriott) to determine if the disposition of the Management Agreement and any White Lodging claims may be resolved consensually.

13. The objection to the Lenders' claims, limited as it will be to calculation of the claim amounts and confirmation that there is no collateral value sufficient to

5

allow the WMH Funding claim, should be relatively easy to resolve or adjudicate in a timeframe that will not likely delay plan confirmation if a plan and disclosure statement are filed by February 7, 2025, as sought by Debtor's Exclusivity Motion.

14. The answer to the question why some of these tasks could not have been accomplished earlier is that with the benefit of hindsight they could have been, but that the delays were deliberate and based on the good faith belief that estate resources could be conserved and settlements could be achieved without the time and expense of procuring a separate appraisal and engaging in litigation. For this objective, the Debtor delayed the process of selecting and moving for approval of an appraiser until filing the Application of the Debtor for Authority to Retain and Employ LW Hospitality Advisors as Appraiser [Doc 224] (approximately four months from the Petition Date, approved by the Court on September 6, 2024 [Doc 236]) when it became clear from the Lenders' conduct that a settlement would be unlikely (a belief borne out by the Lenders' response to the Debtor's recent settlement proposal). As stated in the Exclusivity Motion, p. 6, the Debtor also offered in late October to exchange appraisals with the Lenders to facilitate negotiations, but the Lenders refused. Relatedly, because a settlement with the Lenders would have also encompassed any disputed claim amounts, the Debtor deliberately delayed the filing of objections to such claims.

15. Objections to White Lodging's claims could also have been filed earlier than they were. But the Debtor is committed (as this Court previously ordered) to determine whether to terminate, assume or reject the Management Agreement by

6

the time it files its plan and disclosure statement, and does not believe that litigation over the amount of White Lodging's claims will have a material impact on the timing of plan confirmation. If the litigation is not concluded in such a timeframe, or is not otherwise settled, the Debtor may seek to have the Court estimate White Lodging's claims for plan confirmation purposes.

16. Were this a different time of year, Debtor's counsel believes that the work remaining to complete and file the plan and disclosure statement could be completed by January 8, 2025 (*i.e.*, within an extension of only 30 days of exclusivity). As stated above, Debtor's counsel is drafting the documents. However, the Debtor is concerned about the potential that the time and attention needed by Debtor's professionals and decisionmakers will be compromised by the impending end-of-the year holidays.[2]

---

[2] In addition, the principals of Debtor's counsel at Richman & Richman LLC have a long-planned vacation scheduled out of the country from January 9 – 28, 2025, and would appreciate the opportunity to have the subsequent short time after that trip (only about a week), for final review and deliberations on the plan and disclosure statement with the client team, and concomitantly to avoid rushing to filing which would otherwise be required just before that trip.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order granting the Motion for Entry of an Order Further Extending by 60 Days the Exclusive Periods for Filing Chapter 11 Plan of Reorganization and for Soliciting Acceptances Thereto, and granting further relief as is just and appropriate in the circumstances.

Dated: December 17, 2024.

                                            **RICHMAN & RICHMAN LLC**
                                            **Attorneys for Wisconsin & Milwaukee Hotel LLC**

By:       /s/ *Michael P. Richman*
          Michael P. Richman
          Claire Ann Richman
          Eliza M. Reyes
          122 West Washington Avenue, Suite 850
          Madison, WI 53703
          Tel: (608) 630-8990
          Fax: (608) 630-8991
          mrichman@RandR.law
          crichman@RandR.law
          ereyes@RandR.law