**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

In re:

Wisconsin & Milwaukee Hotel LLC,

Case No. 24-21743-gmh
Chapter 11

Debtor.

**NOTICE AND APPLICATION FOR ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF MALLERY S.C. AS SPECIAL COUNSEL FOR A SPECIFIC PURPOSE**
**EFFECTIVE AS OF THE PETITION DATE**

Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"),

by its attorneys Richman & Richman LLC ("**R&R**"), by Michael P. Richman and

Claire Ann Richman, hereby submits this application ("**Application**") pursuant to

Sections 327 and 330 of the United States Bankruptcy Code ("**Bankruptcy Code**"),

Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy**

**Rules**"), and Local Rule 2014 of the United States Bankruptcy Court for the Eastern

District of Wisconsin (the "**Local Rules**"), authorizing the Debtor to retain and

employ Mallery s.c. ("**Mallery**"), as special counsel for the Debtor for a specific

purpose effective as of the Petition Date (defined herein). In support of this

Application, the Debtor submits the Declaration of Jon S. Herreman ("**Herreman**

**Declaration**"), attached hereto and incorporated herein as **Exhibit A**. In further

support of this Application, the Debtor states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334, and the order of reference in this District entered pursuant to §

157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to §§ 1408 and 1409.

2.　　The statutory predicates for relief sought in the Motion are Sections 327(e) and 330 of title 11 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules.

## BACKGROUND

3.　　On April 9, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "**Case**"). The petition was filed in urgent circumstances in order to avoid damage to the value of the estate threatened by the imminent appointment of a receiver. Consequently, most of the work preparatory to a chapter 11 filing, including the preparation of first day motions and schedules, was performed urgently after the Petition Date, rather than prior thereto (where it would have been compensated in the ordinary course). During that time Mallery provided invaluable assistance to R&R, as corporate counsel, but in the crisis atmosphere just after the case was commenced, the Debtor and R&R neglected to prepare and file an application to employ Mallery as special corporate counsel.

4.　　By the time the Debtor and R&R realized that their oversight in engaging Mallery as corporate counsel might prevent Mallery's being compensated for its work, it appeared that there would not likely be a further need for such corporate legal work. Consequently, the Debtor moved for the approval of Mallery's compensation as an administrative expense. *See* Application Pursuant to 11 U.S.C. §

2

503(b)(1)(A) for Allowance and Payment of Administrative Claim of Mallery s.c. ("**Mallery Admin Claim App**") [Doc 278]. On November 26, 2024, the Court entered an Opinion and Order ("**Order**") [Doc 332] denying the Mallery Admin Claim App without prejudice to the Debtor seeking, as it does herein, retroactive approval of employment based on excusable neglect. *See* Order ¶4.

5. The Debtor is making this Application at this time because, in addition to seeking to relieve Mallery of the consequences of what the Debtor submits is excusable neglect, the Debtor also now believes that Mallery's services as special corporate counsel will be needed to assist with its disclosure statement, in impending claims litigation, and in an anticipated contested plan confirmation process.

6. The Debtor remains in possession of its property and is operating its business as a debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7. The Debtor owns and operates the Milwaukee Marriott Downtown, a 205-room full-service, high-end hotel located at 625 N. Milwaukee Street, Milwaukee (the "**Hotel**").

8. Prior to the Petition Date, Mallery, primarily by Attorney Jon S. Herreman ("**Herreman**"), was long-time counsel to the Debtor in connection with its formation, its development, its financing needs, its corporate governance, and its operations. On the basis of this history and deep knowledge of the complexity of the financing and contractual relationships related to the Hotel, Debtor requested, in connection with all the immediate post-petition motions, related filings, and

3

schedules, that Mallery (and specifically Attorney Herreman) provide urgent assistance to its bankruptcy counsel, R&R, to help them get "up to speed" after the Petition Date. Attorney Herreman was the only Mallery lawyer involved, and provided invaluable assistance to R&R on the Petition Date, and on an intensive basis for the ensuing three weeks, through the completion of first day hearings and the entry of the Court's order on the final use of cash collateral on May 2, 2024 [*See* Doc 93].

9. While a modest amount of additional assistance was provided by Attorney Herreman after May 2, nearly all the urgent assistance to the Debtor was provided by Attorney Herreman in the initial three weeks of the case. As the Debtor did not contemplate further assistance from the Mallery firm (except for its role as tax litigation counsel, as to which an application was filed on June 6, 2024 [Doc 146] and approved by this Court on June 26, 2024 [Doc  175]), it did not appear to make sense for the Debtor, on a cost/benefit basis, to incur the time and fees that would be required to prepare an application to employ Mallery. For that reason, as stated above, the Debtor unsuccessfully sought approval for the Mallery Firm to be allowed an administrative expense claim for its work.

10. More recently, however, it has become clear to the Debtor that significant economies and other benefits may be achieved by the assistance of Mallery as special corporate counsel in addressing matters for the disclosure statement, for issues arising from impending objections to the claims of Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding, LLC (the "**Lenders**"),

4

as well as in anticipated contested plan confirmation hearings, and in particular with respect to issues regarding the Debtor's financial structure, including loans and related obligations and agreements with respect to each of the Lenders.

11.     The Debtor therefore now wishes to engage Mallery to provide critical information and insights to R&R, which will benefit the estate by saving the time and expense that would be required by R&R to learn important financial and corporate structure facts and details from scratch. In seeking retroactive approval of Mallery's engagement as special corporate counsel, the Debtor also submits that Mallery should be able to be compensated for the prior work it performed during a time when the failure to move for its engagement was an oversight, and which in the circumstances constituted excusable neglect.

12.     On June 6, 2024, the Debtor filed a Notice and Application of Debtor for Authority to Retain and Employ Mallery s.c. as Special Counsel for a Specific Purpose ("**First App to Employ Mallery**") [Doc. 146], seeking authority to employ Mallery to represent the Debtor in the Property Tax Appeal (as defined in the First App to Employ Mallery). The Court entered the Order Authorizing the Debtor to Retain and Employ Mallery SC as Special Counsel for a Specific Purpose on June 26, 2024 [Doc 175], pursuant to which the Court authorized the Debtor to employ Mallery as special counsel to represent the Debtor in the Property Tax Appeal.

## BASIS FOR RELIEF

13.     Section 327(e) of the Bankruptcy Code provides, in relevant part, as follows:

Case 24-21743-gmh    Doc 374    Filed 01/06/25    Page 5 of 23

The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

14. Bankruptcy Rule 2014 provides, in relevant part, as follows:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to §327, §1103, or §1114 of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

15. As the Court stated in the Order, retroactive authorization under § 327(a) and Rule 2014(a) for the **provision** of professional services may be granted upon a showing of excusable neglect. Order 4; *See also In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994) ("it is possible to show "excusable neglect," as Rule 9006(b)(1) uses that term, without identifying any "extraordinary" circumstance."); *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389, 113 S. Ct. 1489, 1495, 123 L.Ed.2d 74, 85 (1993) ("this flexible understanding of "excusable neglect" accords with the policies underlying Chapter 11 and the bankruptcy rules.").

16. With regard to determining whether a party's delay is due to excusable neglect, courts have considered several factors, including:

[W]hether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the [movant] acted in good faith; and (5) whether clients should be penalized for their counsel's mistake or neglect.

6

*See Pioneer Inv. Servs.*, 507 U.S. at 385 (internal citations omitted).

17.    But because Congress has provided no specific criteria for determining what sorts of neglect will be considered "excusable," "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs.*, 507 U.S. at 395.

18.    The Debtor submits that the circumstances surrounding the delay in employing Mallery as special counsel with respect to the Debtor's corporate matters constitutes excusable neglect. The amount of prior fees incurred (about $18,000) is immaterial in the context of the size of the estate. Assuming the fees that would be applied for if retroactive employment is permitted are allowed, there can be no discernible prejudice to the Debtor or any other party in interest. While the delay in seeking approval of Mallery's engagement as special corporate counsel is a long one, for the same reasons (the small amount of fees involved), there can be no material impact on the administration of this case.

19.    The delay was beyond the control of the Mallery firm, which relied on R&R (whose oversight was the principal neglect at issue here), and R&R submits that Mallery should not be punished for its oversight. All the parties – Mallery, the Debtor, and R&R have proceeded throughout in good faith and with good intentions. The work that Mallery did was a substantial benefit to the estate.

**RELIEF REQUESTED**

20.    Mallery, and its predecessor, Mallery & Zimmerman, S.C., have represented the Debtor since December, 2010, in connection with general corporate

issues. The Debtor believes that it is in the best interests of the estate to continue to retain and employ Mallery to continue to act as the Debtor's corporate counsel. Mallery will continue to provide counsel to the Debtor regarding general corporate matters, including, but not limited to, any financial and corporate law issues that may arise relating to the Debtor's disclosure statement, impending objections to the Lenders' claims, expected contested plan confirmation hearings, and the pending litigation with White Lodging Services Corporation.

21.     Mallery has stated that it is willing and able to continue representing the Debtor as its corporate counsel, and to render the necessary professional services required in connection therewith. Moreover, the retention and employment of Mallery as corporate counsel would mitigate the administrative expenses of having R&R repeat the work previously done by Mallery. Accordingly, the Debtor believes that Mallery's continued representation of the Debtor as corporate counsel, as discussed herein, is essential to a successful reorganization, and will provide a substantial benefit to the Debtor and its estate.

22.     Mallery is a diversified, full-service law firm based in Milwaukee, and the attorneys at Mallery are experienced in handling a broad range of the business and legal needs of its clients. Mallery's practice areas include corporate and finance, and Mallery's corporate and finance team includes experienced attorneys who are familiar with navigating corporate finance, business law, and tax law and planning issues.

23.     Pursuant to Section 327(e) of the Bankruptcy Code, a debtor in

8

possession is authorized to employ "for a specified special purpose", an attorney "that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). Pursuant to Section 327(e), four requirements must be met in order for the attorney's retention to be approved:

> (1) the representation is in the best interest of the estate, (2) the attorney represented the debtor in the past, (3) the attorney is for a specific purpose approved by the court, other than to represent the debtor in conducting the case, and (4) the attorney does not represent or hold an interest adverse to the debtor or to the debtor's estate.

*See Stapleton v. Woodworkers Warehouse, Inc. (In re Woodworkers Warehouse, Inc.),* 332 B.R. 403, 406 (D. Del. 2005).

24.     In light of the prepetition services Mallery has provided to the Debtor as its corporate counsel, the Debtor submits that Mallery is well familiar with the Debtor and its business operations and is well-qualified and uniquely able to act efficiently as corporate counsel for the Debtor. By this Application, the Debtor respectfully requests that this Court enter an Order authorizing it to employ and retain Mallery as corporate counsel, pursuant to Sections 327(e) and 330 of the Bankruptcy Code.

25.     Furthermore, in light of the urgency and limited scope of post-petition work previously performed by Mallery, as well as Debtor's subsequent efforts to seek court approval for the compensation of such work, Debtor submits that the delay in requesting authority to retain and employ Mallery as its corporate counsel was due

to excusable neglect, and granting Mallery's employment as Debtor's corporate counsel retroactive to the Petition Date is justified.

## SCOPE OF EMPLOYMENT

26.     Mallery shall act as corporate counsel to the Debtor, and will perform legal services in such capacity, as may be required, that are deemed to be in the interests of the Debtor as set forth in the Bankruptcy Code. The specific professional services that the Debtor expects that Mallery will continue to provide include but are not limited to general corporate counsel services in connection with potential disputes with the Debtor's Lenders over claims objections, the Debtor's financial structure, and anticipated contested plan hearings.

## COMPENSATION

27.     Subject to the Court's approval, Mallery will charge the Debtor for its legal services on an hourly basis in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered, and for reimbursement of all costs and approximately $400.00 to $500.00 per hour for partners, approximately $200.00 to $400.00 per hour for associates and approximately $80.00 to $205.00 per hour for paraprofessionals. These hourly rates are subject to adjustment on a periodic basis.

28.     The names, positions, and current hourly rates of Mallery's professionals and paraprofessionals currently expected to have primary responsibility for providing services to the Debtor are indicated in the following table.

| Name | Title | Hourly Rate |
|------|-------|-------------|
| Jon S. Herreman | Shareholder | $480 per hour |

10

29.     Mallery may use the services of other attorneys, law clerks and paraprofessionals in the course of Mallery's representation of the Debtor. If the services of other attorneys, law clerks and paraprofessionals not listed above are used, Mallery will charge the bankruptcy estate at the individual's current hourly rate for similar work.

30.     Consistent with Mallery's policy with respect to its other clients, Mallery will continue to charge the Debtor for reimbursement of costs, out of pocket and office expenses, and disbursement incurred in the rendition of services. These include but are not limited to photocopying, printing, media duplication, legal research, long distance telephone and conference calls, secretarial overtime, couriers, business meals, off-site storage retrieval, and other costs, expenses, and disbursements.

31.     Mallery has advised the Debtor that it intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases in accordance with the application provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any applicable orders of this Court.

32.     Mallery understands and agrees to keep detailed records of all time spent on these matters.

33.     No fees shall be paid to Mallery except upon proper application to and approval by the Court.

34.     The Debtor has determined that the rates charged by Mallery are reasonable given the work Mallery is expected to perform.

11

## MALLERY DOES NOT HOLD OR REPRESENT
## ANY ADVERSE INTEREST

35.     To the best of the Debtor's knowledge, based upon the Herreman Declaration, Mallery does not have connections with the Debtor, their creditors, or any other party in interest in this Chapter 11 Case, nor the United States Trustee or any person employed in the Office of the United States Trustee, with the exception of the following:

a) Since 2010, Mallery and its predecessor, Mallery & Zimmerman, S.C, have represented, and Mallery continues to represent, Jackson Street Management LLC ("**Jackson Street Management**"), the majority member of the Debtor, and an unsecured creditor of the Debtor, with regard to Jackson Street Management's business and corporate matters. The Debtor does not believe that such concurrent representation is a conflict of interest because the interests of the Debtor and Jackson Street Management are fully aligned in the Property Tax Appeal. Additionally, since 2017, Mallery and its predecessor, Mallery & Zimmerman, S.C., have represented, and Mallery continues to represent, JS Asset Management LLC ("**JS Asset Management**"), an unsecured creditor of the Debtor, with regard to JS Asset Management's business and corporate matters. The Debtor believes that JS Asset Management and the Debtor's interests with regards to the services contemplated herein are fully aligned.

12

b) Mallery represents Wave Renovations, LLC ("**Wave Renovations**"), a hotel construction/renovation project management company, with regard to Wave Renovations' business and corporate matters. Several members of Wave Renovations are also members of Jackson Street Management.

c) Randall G. Erkert ("**Erkert**") was an equity shareholder with the Firm and currently is a senior attorney with the Firm. Erkert is a member of Jackson Street Management.

d) Mallery holds a prepetition claim against the Debtor in the amount of $6,612.95 consisting of legal fees and expenses rendered by Mallery to the Debtor in the Property Tax Appeal.

e) As stated above, the Court entered the Order Authorizing the Debtor to Retain and Employ Mallery SC as Special Counsel for a Specific Purpose on June 26, 2024 [Doc 175], pursuant to which the Court authorized the Debtor to employ Mallery as special counsel to represent the Debtor in the Property Tax Appeal (as defined therein).

36.      While Mallery holds an unsecured claim against the Debtor with respect to services rendered prepetition, neither Mallery nor any professionals who are associated with, or are members of, Mallery possess or assert an economic interest that would lessen the value of the Debtor's estate or that would create an actual or potential dispute against the estate. In addition, special purpose counsel under Section 327(e) is not required to be disinterested. See *In re J.S. II, L.L.C.*, 371 B.R. 311, 317 (Bankr. N.D. Ill. 2007). A specific purpose counsel is not required to be

13

generally "disinterested" as required under Section 327(a). *See* In re Film Ventures Int'l, Inc., 75 B.R. 250, 252 (B.A.P. 9th Cir. 1987) ("Section 327(e) contains less restrictive requirements than Section 327(a) which governs the employment of general counsel as there is no requirement of disinterestedness"). Thus, holding a prepetition claim should not disqualify an attorney from being special counsel. In re Albert, 206 B.R. 636, 642 n. 7 (Bankr. D. Mass. 1997) (finding that although proposed special counsel held a prepetition claim, he could still be employed as special counsel.) Here, pursuant to Sections 327(c) and (e), the Court need only determine whether Mallery holds an interest adverse to the estate, and it does not.

37.     The interests of the Debtor and Mallery are aligned and identical with respect to the Debtor's general corporate law needs, and therefore, Mallery does not represent any interest adverse to the Debtor or to the estate with respect to the matters for which Mallery will be providing advice and services as special counsel to the Debtor.

38.     Therefore, to the best of Debtor's knowledge, and based upon the Herreman Declaration, Mallery does not hold or represent any interest adverse to the Debtor or their respective estates with respect to the matters for which the Debtor wish to employ Mallery.

## NOTICE

39.     Pursuant to Local Rule 2014, notice of this Application will be served upon the following of their respective counsel, (a) the United States Trustee for the Eastern District of Wisconsin; (b) Computershare Trust Company, N.A., the Debtor's

14

primary secured lender; and (c) any other persons or parties designated by the Court.

40.     The Debtor asserts that notice has been provided to all required parties through the filing of this application via the Court's CM/ECF system, and requests that if no objection or request for hearing is filed within 14 days of the filing of this Application, that the Court grant the relief requested.

41.     Subject to this Court's approval of this application, Mallery has indicated that it is willing to serve as the Debtor's corporate counsel in the Chapter 11 Cases and perform the services described above.

**WHEREFORE**, the Debtor respectfully requests entry of an order (a) granting this Application, (b) authorizing the retention of Mallery, s.c. as special counsel for a specific purpose effective as of the Petition Date; and (c) granting such other and further relief as the Court deems just and appropriate.

Dated: January 6, 2025.

**RICHMAN & RICHMAN LLC**
**Attorneys for Wisconsin &**
**Milwaukee Hotel LLC**

By:  _____/s/ *Michael P. Richman*_____
        Michael P. Richman
        Claire Ann Richman
        Eliza M. Reyes
        122 West Washington Avenue,
        Suite 850
        Madison, WI 53703
        Tel: (608) 630-8990
        Fax: (608) 630-8991
        mrichman@RandR.law
        crichman@RandR.law
        ereyes@RandR.law

15

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

---

## DECLARATION OF JON S. HERREMAN
## IN SUPPORT OF DEBTOR'S APPLICATION FOR ORDER
## AUTHORIZING THE RETENTION AND EMPLOYMENT OF MALLERY
## S.C. AS SPECIAL COUNSEL FOR A SPECIFIC PURPOSE
## EFFECTIVE AS OF THE PETITION DATE

---

I, Jon S. Herreman, hereby declare as follows:

1.      I am a shareholder with the law firm of Mallery s.c. ("**Mallery**" or the "**Firm**"), whose offices are located at 731 North Jackson Street, Suite 900, Milwaukee, Wisconsin, 53202. I submit this declaration in support of Debtor's Application for Order Authorizing the Retention and Employment of Mallery s.c. as Special Counsel for a Specific Purpose Effective as of the Petition Date ("**Application**") for Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**").

2.      Unless otherwise stated, the facts set forth herein are based on my personal knowledge, upon records maintained by Mallery in the ordinary course of business, and which have been reviewed by me or other Mallery attorneys or employees at my direction, or upon information provided to me by other Mallery attorneys or employees. To the extent any information disclosed in this declaration requires amendment or modification as additional information becomes available, a supplemental declaration will be submitted to the court.

3.      Mallery and its predecessor, Mallery & Zimmerman, S.C., have been representing the Debtor as its corporate counsel since 2010. The Debtor desires to retain and employ Mallery as special counsel to the Debtor to continue to represent the Debtor in such capacity.

4.      Given its background and involvement in the Debtor's corporate affairs prior to the commencement of this chapter 11 case, the Debtor believes that it is in the best interests of the estate to retain and employ Mallery to continue to represent it as its corporate counsel, and Mallery is willing and able to continue representing the Debtor in such capacity.

5.      Mallery is a diversified, full-service law firm based in Milwaukee, and the attorneys at Mallery are experienced in handling a broad range of the business and legal needs of its clients. Mallery's practice areas include corporate and finance, and Mallery's corporate and finance team includes experienced attorneys who are familiar with navigating corporate finance, business law, and tax law and planning issues.

6.      The specific professional services that the Debtor expects that Mallery will continue to provide include but are not limited to general corporate counsel services in connection with the Sale and any other sale that may arise, resolving potential disputes with the Debtor's lenders over loan and plan terms, and in litigation with White Lodging.

7.      The Debtor's retention of Mallery is essential and should be authorized to avoid any disruption in the administration of the Debtor's estate.

2

8.      Compensation to Mallery will be calculated based on the work performed, billed at the hourly rates of Mallery attorneys and paraprofessionals, plus reimbursement of the actual and necessary expenses Mallery incurs, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered, including, but not limited to, postage, filing and recording frees, court and governmental agency fees and charges, legal data base and connect charges, witness subpoena fees, expert witness and court reporter fees, travel expenses other than mileage, photocopies, and mileage fees (at the rate allowable for deduction by federal law), and other incidental costs advanced by Mallery specifically for these matters, at the rates commonly charged for such costs to other Mallery clients.

9.      The names, positions, and current hourly rates of Mallery's professionals and paraprofessionals currently expected to have primary responsibility for providing services to the Debtor as corporate counsel are indicated in the following table.

| Name | Title | Hourly Rate |
|------|-------|-------------|
| Jon S. Herreman | Shareholder | $480 per hour |

10.      Mallery may use the services of other attorneys, law clerks and paraprofessionals at Mallery during the course of its representation of the Debtor. If the services of other attorneys, law clerks and paraprofessionals not listed above are used, Mallery will charge the bankruptcy estate at the individual's current hourly rate for similar work. Mallery's hourly rates for other attorneys and paraprofessionals fall within the range of $80 to $500 per hour. Mallery, as part of its ordinary business practice, periodically reviews and adjusts the hourly rates it

3

charges for professional services. These adjustments typically occur at the beginning of each calendar year.

11.     Mallery understands and agrees to keep detailed records of all time spent on these matters.

12.     No fees shall be paid to Mallery except upon proper application to and approval by the Court.

13.     In connection with the Debtor's proposed retention of Mallery to continue its representation as corporate counsel, and in preparing this Declaration, Mallery employees, under my supervision, conducted a search of Mallery's internal "conflicts" database for each of the following entities (collectively, the "**Search Parties**"). The list of the Search Parties is attached hereto and incorporated herein as Exhibit II.

- the Debtor's equity holders;
- the Debtor's management;
- the Debtor's secured and unsecured creditors; and
- other parties in interest.

14.     To the best of my knowledge, information, and belief, and in accordance with Bankruptcy Rule 5002, neither I, nor any attorney at Mallery is a relative of any of the United States Bankruptcy Judges who may be assigned to this case. To the best of my knowledge, information, and belief, Mallery does not have connections with the Debtor, its creditors, or any other party in interest in this Chapter 11 Case, nor the United States Trustee or any person employed in the Office of the United States

4

Trustee, with the exception of the following:

a) Since 2010, Mallery and its predecessor, Mallery & Zimmerman, S.C., have represented, and Mallery continue to represent, Jackson Street Management LLC ("**Jackson Street Management**"), the majority member of the Debtor, and an unsecured creditor of the Debtor, with regard to Jackson Street Management's business and corporate matters. I do not believe that such concurrent representation is a conflict of interest because the interests of the Debtor and Jackson Street Management are fully aligned in the Property Tax Appeal. Additionally, since 2017, Mallery and its predecessor, Mallery & Zimmerman, S.C., have represented, and Mallery continues to represent, JS Asset Management LLC ("**JS Asset Management**"), an unsecured creditor of the Debtor, with regard to JS Asset Management's business and corporate matters. I believe that JS Asset Management and the Debtor's interests in the Property Tax Appeal are also fully aligned.

b) Mallery represents Wave Renovations, LLC ("**Wave Renovations**"), a hotel construction/renovation project management company, with regard to Wave Renovations' business and corporate matters. Several members of Wave Renovations are also members of Jackson Street Management.

c) Randall G. Erkert ("**Erkert**") was an equity shareholder with the Firm and currently is a Senior Attorney with the Firm. Erkert is a member of Jackson Street Management.

d) On June 6, 2024, the Debtor filed a Notice and Application of Debtor for

5

Authority to Retain and Employ Mallery s.c. as Special Counsel for a Specific Purpose ("**First App to Employ Mallery**") [Doc. 146], seeking authority to employ Mallery to represent the Debtor in the Property Tax Appeal (as defined in the First App to Employ Mallery). On June 26, 2024, the Court entered the Order Authorizing the Debtor to Retain and Employ Mallery SC as Special Counsel for a Specific Purpose [Doc 175], pursuant to which the Court authorized the Debtor to employ Mallery as special counsel to represent the Debtor in the Property Tax Appeal. Mallery continues to represent the Debtor in the Property Tax Appeal.

e) Mallery holds a prepetition claim against the Debtor in the amount of $6,612.95 consisting of legal fees and expenses rendered by Mallery to the Debtor in the Property Tax Appeal prepetition.

15.     After reviewing the conflicts search, as far as I have been able to determine after reasonable inquiry, neither I, nor Mallery, including any of it is partners, counsel, associates or any other professional person employed by Mallery, holds or represents any interest adverse to the Debtor or its estate with respect to matters on which Mallery is proposed to be retained as special counsel.

16.     To the extent that Mallery holds an unsecured claim against the Debtor with respect to services rendered prepetition, I believe that neither Mallery nor any professionals who are associated with, or are members of, Mallery possess or assert an economic interest that would lessen the value of the Debtor's estate or that would create an actual or potential dispute against the estate. The interests of the Debtor

6

and Mallery are aligned and identical with respect to the services contemplated in the Application, and therefore, I believe that Mallery does not represent any interest adverse to the Debtor or to the estate with respect to the matters for which Mallery will be providing advice and services as special counsel to the Debtor.

17.     Mallery has not agreed to share any compensation received in connection with this proceeding with any entity other than its members, counsel, or associates in accordance with 11 U.S.C. § 504(b).

I declare under penalty of perjury under the laws of the United States that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct to the best of my knowledge.

Executed in Milwaukee, Wisconsin this 6th day of January, 2025.

Jon S. Herreman

7