So Ordered.

Dated: January 24, 2025



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel, LLC,    Case No. 24-21743-gmh
                                     Chapter 11
    Debtor.

**PRELIMINARY ORDER ON DEBTOR'S JANUARY 6, 2025 APPLICATION TO EMPLOY MALLERY SC AS SPECIAL COUNSEL UNDER 11 U.S.C. §327(e)**

    Debtor Wisconsin & Milwaukee Hotel LLC commenced this case by filing a voluntary petition under chapter 11 on April 9, 2024. The debtor applied to employ Richman & Richman LLC under 11 U.S.C. §327(a) as its counsel the following day. ECF No. 10. The court later granted that application, authorizing the employment effective as of the date the application was filed. ECF No. 131.

    On June 6, 2024, the debtor applied for permission to employ Mallery S.C. as special counsel for a specific purpose under §327(e). ECF No. 146. The application reported that for several years Mallery had been representing the debtor in ongoing litigation with the City of Milwaukee involving property tax assessments. *Id.* at 2–3. The application acknowledged that Mallery represents the debtor's majority member,

Jackson Street Management LLC; JS Asset Management LLC, an unsecured creditor that then filed a proof of claim for more than $867,000; and Wave Renovations LLC, which the application describes as "a hotel construction/renovation project management company" with "[s]everal members" who "are also members of Jackson Street Management" and which subsequently filed a proof of claim for an unsecured debt of $449,000. *Id.* at 7–8; Claim Nos. 6 & 7. The application also acknowledged that one of Mallery's shareholders, Randall Erkert, is a member of Jackson Street Management and that Mallery holds a prepetition claim for about $6,600 for "legal fees and expenses rendered by Mallery to the Debtor in the" tax litigation. ECF No. 146, at 8. Still, the application and the supporting declaration of Christopher Strohbehn, another one of Mallery's shareholders, represented that Mallery's employment would be limited to its representation of the debtor in the tax litigation and that, with respect to that matter, Mallery neither held nor represented any interest adverse to the debtor or the bankruptcy estate. *Id.* at 5, 7–9, 14 & 17–18. Based on these representations and the lack of any objection, the court approved the debtor's employment of Mallery "as special counsel to represent it in ongoing state court litigation to contest the amount of property tax it owes the City of Milwaukee. . . . effective . . . June 6, 2024", the date on which the application was filed. ECF No. 175.

About four months later, the debtor filed an application under 11 U.S.C. §503(b)(1)(A) for allowance and payment to Mallery of administrative expenses totaling more than $18,400 for services unrelated to the tax litigation rendered by one of its partners, Jon Herreman, from the petition date through July 29, 2024. ECF No. 278. The United States trustee and two creditors, Computershare Trust Company, N.A., and Wisconsin & Milwaukee Hotel Funding LLC, objected. ECF Nos. 306 & 308. On November 26 the court denied the application because, as "this court has previously reasoned[,] . . . controlling precedent does not authorize the court to allow professionals whose employment must be approved under §327 to seek administrative expenses

under §503(b)(1)". ECF No. 332, at 2 (citing *In re Greenpoint Tactical Income Fund LLC*, No. 19-29613, 2023 WL 8886413, at *5 (Bankr. E.D. Wis. 2023)).

On January 6, 2025, the debtors filed another application under §327(e) to employ Mallery "as special counsel for the Debtor for a specific purpose", but this application seeks approval of employment for a special purpose distinct from the tax litigation and seeks the court's approval of that employment "effective as of the Petition Date". ECF No. 374, at 1. The application relates that, before the petition was filed, Herreman "was long-time counsel to the Debtor in connection with its formation, . . . development, . . . financing needs, . . . corporate governance, and . . . operations" and that, based on "this history and [Herreman's] deep knowledge of the complexity of the financing and contractual relationships related to the" debtor's hotel and "in connection with all the immediate post-petition motions, related filings, and schedules," the debtor requested and Herreman "provide[d] urgent assistance to [Richman & Richman], . . . to help them get 'up to speed'" after the petition was filed. *Id.* at 3–4. The application further reports that "Herreman . . . provided invaluable assistance to [Richman & Richman] on the Petition Date, and on an intensive basis for the ensuing three weeks, through the completion of first day hearings and the entry of the Court's order on the final use of cash collateral on May 2, 2024." *Id.* at 4 (citing ECF No. 93). The application goes on to say that, after "the initial three weeks of the case", the debtor decided, for economic reasons, not to seek approval of its employment of Mallery with respect to Herreman's services, opting instead to later request allowance of and permission to pay for those services as administrative expenses under §503(b)(1):

> As the Debtor did not contemplate further assistance from the Mallery firm (except for its role as tax litigation counsel, as to which an application was filed on June 6, 2024[,] and approved by this Court on June 26, 2024), it did not appear to make sense for the Debtor, on a cost/benefit basis, to incur the time and fees that would be required to prepare an application to employ

> Mallery. For that reason, . . . the Debtor . . . sought approval for the Mallery Firm to be allowed an administrative expense claim for [Herreman's] work.

*Id.* at 4 (citations omitted) (citing ECF Nos. 146 & 175). Now, however, the debtor has concluded that it needs more help from Herreman on a variety of topics:

> More recently, however, it has become clear to the Debtor that significant economies and other benefits may be achieved by the assistance of Mallery as special corporate counsel in addressing matters for the disclosure statement, for issues arising from impending objections to the claims of Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding, LLC (the "Lenders"), as well as in anticipated contested plan confirmation hearings, and in particular with respect to issues regarding the Debtor's financial structure, including loans and related obligations and agreements with respect to each of the Lenders.

*Id.* at 4–5. As a result, the debtor seeks approval of its employment of Mallery under §327(e) with the following "scope of employment":

> Mallery shall act as corporate counsel to the Debtor, and will perform legal services in such capacity, as may be required, that are deemed to be in the interests of the Debtor as set forth in the Bankruptcy Code. The specific professional services that the Debtor expects that Mallery will continue to provide include but are not limited to general corporate counsel services in connection with potential disputes with the Debtor's Lenders over claims objections, the Debtor's financial structure, and anticipated contested plan hearings.

*Id.* at 10. As noted, the debtor requests that the court approve Mallery's employment for these purposes retroactively to the petition date, contending that the failure to apply for approval of the employment earlier resulted from excusable neglect. *Id.* at 6 (first citing *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994); then citing Fed. R. Bankr. P. 9006(b)(1); and then citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993)).

The United States trustee and creditors Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding LLC object again. ECF Nos. 379 & 380. They assert that the debtor has not shown that its failure to seek approval in April 2024

to employ Mallery for the stated purposes was the result of excusable neglect; the debtor wants approval of Mallery's employment as general bankruptcy counsel, which is not permitted by §327(e); and with respect to general bankruptcy matters, Mallery holds *and* represents "interest[s] adverse to the debtor or to the estate", which is disqualifying under §327(e), because Mallery is itself a creditor of the debtor, it represents two other creditors of the debtor, and one of its shareholders is also a member of one of those creditors.

I

The debtor's application under §327(e) for approval of Mallery's employment, retroactive to the petition date, for additional "special purpose[s]", is inadequately supported on the existing record for at least the following reasons.

A

Section 327(e) provides an avenue by which a trustee (or, here, a debtor in possession with the rights, powers, and duties of a trustee, 11 U.S.C. §1107(a)) may employ an attorney who "represent[ed] . . . the debtor before the commencement of the case" but who lacks disinterestedness and thus cannot be employed under §327(a). §1107(b); *Collier on Bankruptcy* ¶327.04[9] (16th ed. 2024), LexisNexis. The subsection's authority is limited, however, allowing such employment only (1) "for a specified special purpose, other than to represent the trustee in conducting the case", (2) "if in the best interest of the estate," and (3) "if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." §327(e). When a debtor in possession seeks approval to hire counsel under §327(e), "[t]he 'special purpose' must be unrelated to the reorganization of the debtor and must be explicitly defined or described in the application seeking approval of the attorney's employment." *Collier on Bankruptcy* ¶327.04[9][d] & n.154 (collecting cases). Because §327(e) expressly excludes employment of an attorney for the purpose of "represent[ing] the trustee in conducting the case," a

debtor in possession cannot use that subsection to employ counsel for "matters that form a part of the administration of the case under the Code, . . . includ[ing] assisting in formulating a plan". *Id.* ¶327.04[9][c] & n.142; see also *Century Indem. Co. v. Congoleum Corp.* (*In re Congoleum Corp.*), 426 F.3d 675, 691–92 (3d Cir. 2005) (describing the chapter 11 debtor in possession's employment of a law firm to provide a broad range of case-specific, post-petition services, including "advising and assisting [the debtor] with respect to insurance-related issues in connection with the formulation, negotiation and confirmation of a plan of reorganization", as "far too expansive an assignment to be appropriate for an appointment under § 327(e).").

The scope of the debtor's new proposed employment of Mallery is not "explicitly defined." *Collier on Bankruptcy* ¶327.04[9][d]. To the contrary, the scope of employment described in the debtor's application is amorphous and seems to be broad enough to encompass any number of activities that would amount to "represent[ing] the [debtor in possession] in conducting the case": as quoted above, it "include[s] but [is] not limited to general corporate counsel services in connection with potential disputes with the Debtor's Lenders over claims objections, the Debtor's financial structure, and anticipated contested plan hearings." ECF No. 374, at 10. What is more, the breadth of the proposed scope of employment makes determining whether that engagement would be in the best interest of the estate practically impossible, as it offers no clear line of demarcation between the services to be rendered by Mallery in this proposed capacity and those of the debtor's bankruptcy counsel, Richman & Richman.

A review of the record of the services rendered by Herreman from the petition date through July 29, 2024—which the debtor filed with its application under §503(b)(1) for allowance and payment of Mallery's resulting fees—reveals a substantial problem with retroactive approval of the debtor's employment of Mallery as special counsel. That record, which lists Herreman's services in undifferentiated daily blocks, describes some activities that might fall (at least in part) within a properly narrow and specific

scope of employment for purposes of §327(e), such as "[r]eview of bond and loan document and related information to provide needed information to M. Richman", on April 9, 2024; "[r]eview and respond to M. Richman's questions regarding financing and bond structure", on April 14; and "[r]espond to multiple emails and questions from M. Richman and client regarding loans, bonds, management agreement, franchise agreement and related issues", on April 15. ECF No. 278, at 15 & 16; see, e.g., *In re Woodfield Gardens Assocs.*, No. 97 B 26706, 1998 WL 276453, at *14 (Bankr. N.D. Ill. May 28, 1998) (discussing §327(e) in the context of an attorney's "efforts . . . to render discrete corporate advice to the Debtor, distinct from [another firm's] general and lead bankruptcy counseling"). But the bulk of the listed services appear to "overlap with general bankruptcy services" and are, therefore, of a type for which "courts have refused to authorize the employment of special purpose counsel . . . , regardless of how much familiarity with and understanding of the debtor's affairs counsel would bring to the case." *Id.* at *15 (first citing *In re Interstate Distrib. Ctr. Assocs. (A), Ltd.*, 137 B.R. 826, 833 (Bankr. D. Colo. 1992); then citing *In re Tidewater Mem'l Hosp., Inc.*, 110 B.R. 221, 227–28 (Bankr. E.D. Va. 1989); and then citing *In re Hempstead Realty Assocs.*, 34 B.R. 624, 625–26 (Bankr. S.D.N.Y. 1983)). Herreman's services of this type include:

- on April 9, "Meet with client to sign Petition" and "Multiple telephone calls and conferences with client and M. Richman regarding bankruptcy filing and related issues";

- on April 10, "Multiple telephone conferences with client, M. Richman and counsel for White Lodging [Services Corp., a creditor,] regarding bankruptcy filings and related issues", "Complete Corporate Ownership Certification", "Draft correspondence to client and M. Richman regarding various issues", "Meet with client to sign motion", and "Draft correspondence to M. Richman regarding same";

- on April 11, "Telephone call from [managing member of Jackson Street Management] M. Flaherty regarding first day motions and related issues", "Participate in telephone conference with White Lodging and counsel

- regarding budget, first day motions and ongoing operations", and "Telephone call to M. Flaherty regarding same";

- on April 12, "Review of various draft filings and motions and provide comments as to factual accuracy";

- on April 17, "Review of Interim Cash Collateral Order and related correspondence regarding first day hearings", "Attend bankruptcy hearing at request of client and bankruptcy counsel", and "Telephone call from [Mallery shareholder] R. Erkert regarding same";

- on April 18, "Review of correspondence relating to status of bankruptcy" and "Telephone calls from M. Flaherty regarding same";

- on April 25, "Review of proposed Cash Collateral Order", "Telephone call from M. Flaherty regarding same", and "Participate in telephone conference with M. Richman and client regarding same";

- on April 29, "Review of correspondence and documents relating to cash collateral order and related issues" and "Telephone call from M. Flaherty regarding same";

- on May 1, "Review and respond to numerous emails regarding cash collateral order and related issues" and "Telephone call to M. Flaherty regarding same";

- on May 2, "Review of final draft of Cash Collateral Order" and "Draft correspondence to M. Richman regarding same"; and

- on July 29, "Review of pleading regarding cash collateral dispute" and "Draft correspondence to M. Richman regarding same."

ECF No. 278, at 15–18.

Whatever the intended scope of Herreman's employment was at the onset of the debtor's case, in practice it "appears to [have] be[en] 'far too expansive . . . for an appointment under § 327(e).'" *In re Running Horse, L.L.C.*, 371 B.R. 446, 452 (Bankr. E.D. Cal. 2007) (quoting *Congoleum*, 426 F.3d at 692); see also *In re nCoat, Inc.*, No. 10-11512, 2012 WL 1354581, at *2 (Bankr. M.D.N.C. Apr. 18, 2012) ("[W]ork . . . relat[ing] to the

general management of the case . . . is not compensable under Section 327(e)."). And nothing in the record suggests that the debtor now seeks to employ him to provide an appropriately narrower range of services.

B

The existing record also does not support the debtor's request for retroactive approval of Herreman's employment. The debtor invokes *In re Singson*, in which the Seven Circuit recognized that a showing of excusable neglect under Federal Rule of Bankruptcy Procedure Rule 9006(b)(1) may justify granting "retroactive authorization under §327(a) and Rule 2014(a) for the provision of professional services". 41 F.3d 316, 319 (7th Cir. 1994) (citing *Fanelli v. Hensley (In re Triangle Chems., Inc.)*, 697 F.2d 1280 (5th Cir. 1983)), cited in ECF No. 374, at 6.

The dispute in *Singson*, a case under chapter 7 of the Bankruptcy Code, began when the trustee, with the bankruptcy court's approval, employed "special counsel for the purpose of opposing the [debtors'] attempt to exclude pension assets from the estate." *Id.* at 318. Counsel later requested compensation "for 71 hours of legal time beyond that necessary to deal with the pension question". *Id.* After the United States trustee objected to that request, the trustee sought "retroactive approval" of counsel's employment, expanding its scope to encompass the much broader range of services actually rendered. *Id.* The bankruptcy court denied the trustee's request and counsel's request for "compensation for any services beyond those authorized in advance." *Id.* Counsel appealed, but both the district court and the Seventh Circuit affirmed the bankruptcy court's decision, with the latter observing that counsel "took no precautions to ensure that its services . . . came within the scope of prior authorizations" and unacceptably "double bill[ed]", with the trustee, for "duplicative services on at least some matters". *Id.* at 320. Moreover, the court concluded, "a pattern of doing work first and seeking approval later . . . definitely is not 'harmless.'" *Id.* To the contrary, it is "neglect of the non-excusable kind." *Id.* (citing *Pioneer Inv. Servs.*, 507 U.S. at 395–99).

*Singson* seems remarkably unhelpful to the debtor and Mallery, especially given how similar the facts in *Singson* are to those here and the outcome in that case. Not unlike what happened in *Singson*, here, the debtor did not seek approval of Mallery's employment to cover the services rendered by Herreman until after the court denied approval and payment of compensation for nearly 41 hours' worth of unauthorized work, at least some of which was duplicative of the work of the debtor's court-approved general bankruptcy counsel, Richman & Richman. As in *Singson*, what happened here appears to be "neglect of the non-excusable kind." *Id.* And even that may be an overly generous characterization: As the United States trustee and the objecting creditors correctly observe, the application states that, at least in part, the debtor did not seek pre-approval of Mallery's employment with respect to Herreman's anticipated services because "it did not appear to make sense for the Debtor, on a cost/benefit basis, to incur the time and fees that would be required to prepare an application to employ Mallery." ECF No. 374, at 4, quoted in ECF No. 379, at 5, and ECF No. 380, at 3–4. "Neglect" ordinarily means "simple, faultless omissions to act [or], more commonly, omissions caused by carelessness." *Pioneer Inv. Servs.*, 507 U.S. at 388. A purposeful decision not to act does not seem to fit the bill.

II

These problems appear to be fatal to the debtor's request for retroactive approval of Mallery's employment as special counsel for the vaguely defined purposes stated in the application. But the principles described above do not necessarily foreclose the court's approval of Mallery's employment on a properly limited basis, at least with respect to services that have not yet been rendered.

And, although more challenging to foresee based on the existing record, perhaps if afforded the opportunity to present evidence, the debtor could prove both that its failure to seek approval to employ Mallery earlier was the result of excusable neglect and that Herreman provided services that satisfy the §327(e) standard for which

Mallery can be paid reasonable compensation, even though there seem to be no contemporaneous records separating out the time Herreman spent providing appropriately limited services from the more general services he provided.

While the current record leaves one to wonder whether continued efforts by the debtor to secure the approval necessary to employ and pay Mallery for Herreman's past work can be shown to be either reasonable or necessary—as 11 U.S.C. §330 requires for an award of compensation to a professional employed under §327—the court will afford the debtor an opportunity to address these matters further to see if through argument or evidence it can overcome the obstacles stated above and persuade the court that it can satisfy §327(e)'s standard, at least in some capacity, with respect to Herreman's past or future services to the debtor in possession. To be clear, this is not a mandate but an opportunity that the debtor in its business judgment may elect to forgo.

III

For these reasons, it is ordered:

1. The debtor may file a reply in support of its application to employ Mallery as special counsel retroactive to the petition date but must do so on or before February 7, 2025, and any such reply must address the matters raised in this order, as well as the arguments made by the objecting parties.

2. The debtor may also file additional supporting evidence, including affidavits or declarations complying with 28 U.S.C. §1746, and may make a request for an evidentiary hearing but must do so by the same date.

3. If the debtor timely files a reply, additional evidence, or a request for a hearing as permitted by this order, and the objecting parties contend that the debtor's filings warrant a hearing on the application, they must file a request for such a hearing, specifying whether evidence is to be presented, by no later than February 14, 2025.

4. If the debtor does not timely file a reply, additional evidence, or a request for an evidentiary hearing, the court will deny the application for the reasons stated in this order without further notice or a hearing.

# # # # #