UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re:  | Chapter 11

WISCONSIN & MILWAUKEE HOTEL, LLC,  | Case No. 24-21743

Debtor.  | Honorable G. Michael Halfenger

---

**OBJECTION TO WHITE LODGING'S MOTION
FOR AUTHORITY TO PAY AMOUNTS AUTHORIZED BY THE CASH
COLLATERAL ORDER AND [FOR] RELATED RELIEF**

---

Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding LLC (collectively, "Lenders") hereby object to the *Motion of White Lodging Services Corporation for Authority to Pay Amounts Authorized by the Cash Collateral Order and [for] Related Relief* (ECF #389) (the "Motion").

**OBJECTION**

The Motion is something of a mixed bag. Debtor's manager, White Lodging Services Corporation ("White Lodging" or "Manager"), requests an order "authorizing use of Debtor's Cash Collateral" (read: *Lenders'* cash collateral) to make certain bonus payments to employees for work done last year. A moment later, White Lodging reveals that such use has already been authorized by the Court, but Debtor will not agree to make bonus payments. As White Lodging sees it, the parties' June 14, 2011, Management Agreement (the "Agreement") resolves the conflict in its favor because White Lodging has "absolute discretion" in matters of employee compensation. Yet here we are: Manager seeks an order from the Court to pay bonuses it already has the alleged, unfettered authority to pay.

53293055

And then there is the rationale for the bonus payments: they are "part of the incentive to sales staff to book events at the hotel . . . an ordinary course of business expense [that is] relied upon by those employees."  Motion at 4.  This has the feel of an employee retention plan of the kind discussed in section 503(c) of the Bankruptcy Code, but White Lodging stops short of fully saying so.  The proposed bonuses are an "incentive," but are they *necessary* to keep the employees from leaving?[1]

So what is the Court to make of all this?  First, recall that the Agreement is an executory contract that has not been assumed.  In fact, Debtor recently announced that it will *reject* the Agreement, meaning that White Lodging will not be managing the hotel going forward.  (ECF # 393, at 13.)  Under these circumstances, the Court should be particularly reluctant to substitute Debtor's business judgment with that of an outgoing Manager.  It is Debtor that proposes to continue its business with the affected employees, not White Lodging.

Of course, debtors have a duty to perform their executory duties during the "gap" period, but Manager's contract rights are, in several important respects, superseded by the United States Bankruptcy Code.  For example, debtors cannot use cash collateral without the consent of their secured creditors or the courts.  *See* 11 U.S.C. § 363(c)(2).  Retention bonuses, if that is what Manager proposes here, are subject to the requirements of the Code.  *See* 11 U.S.C. § 503(c).  And lest we forget, it is *debtors* that are authorized to operate their businesses, not independent contractors like White Lodging.  *See* 11 U.S.C. § 1108.  *See also* 11 U.S.C. § 1107 (stating that debtors-in-possession have the rights and powers, and shall perform all the functions and duties, of a trustee serving in a case under chapter 11).

---

[1] Lenders have heard no reports of employees leaving because they did not receive bonuses last year.

2
53293055
Case 24-21743-gmh    Doc 400    Filed 02/14/25    Page 2 of 4

More important (though White Lodging ignores it), the plain language of the *Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection* (ECF # 93) (the "Final CC Order") unmistakenly answers the question presented here: Debtor is "authorized" to use Lenders' cash collateral as provided in the accompanying budget (the "Budget"), but is never directed to do so. Final CC Order at 7. So, while Manager makes much of the fact that "bonus" payments appear in the Budget, nowhere in the Final CC Order does the Court command Debtor to make every payment listed there. Bankruptcy courts generally defer to debtors' judgment on such matters, and the flexibility to postpone or decline an optional business expense lies at the core of a debtor's ability to "operate" its business. *See* 11 U.S.C. § 1108.

To flip White Lodging's own argument, *Manager* never objected to the discretionary authorization in the Final CC Order, even though it was heavily involved in the budgeting process. However "absolute" the Agreement makes the Manager's discretion in matters of employee compensation, the Final CC Order trumps that discretion with a healthy dose of Debtor business judgment in this chapter 11 case.

White Lodging does not make it easy to identify the requested bonus payments. The Court and parties-in-interest are left hunting for them in an eight-page, single-spaced spreadsheet attached to the Motion. But the "Ctrl+S" search function reveals bonus and related payments totaling, by Lenders' calculation, nearly $110,000. This is a significant sum of money in a case of this size. There are good reasons to defer such extraordinary expenses, particularly on the cusp of a contested confirmation hearing. The bonus payments were not made last year, and White Lodging presents no evidence that they are necessary this year.[2]

---

[2] White Lodging contends that it "relied" upon the bonus payments in the Budget "in order to operate the Hotel." Motion at 3. This argument is difficult to understand because White Lodging presents no evidence that employees

Indeed, consider that employee bonuses are most appropriate when business results justify them. Yet Debtor's monthly operating report for December 2024, (ECF # 383, at 14), shows that revenues for the year 2024 were 4% below budget and EBITDA was 7.5% below budget. The argument for employee bonuses would be stronger for employees who contributed to operational results exceeding budget. But here Debtor's budget was not achieved.

White Lodging also fails to show that all of the proposed bonus payments are intended for "sales staff." Motion at 4. The Budget suggests not; some of the proposed bonus payments fall under the "Rooms" department, some are for "Food Common" employees, while others are for "Restaurant" employees, "Admin," or "Maintenance." No justification is offered for paying bonuses to these employees.

WHEREFORE, Lenders respectfully request that the Court enter an order denying the Motion in its entirety.

DATED: February 14, 2025

> COMPUTERSHARE TRUST COMPANY, N.A.
> WISCONSIN & MILWAUKEE HOTEL FUNDING LLC
>
> BY: */s/ Frank W. DiCastri*
>
> Frank W. DiCastri
> Sara C. McNamara
> REINHART BOERNER VAN DEUREN s.c.
> 1000 North Water Street, Suite 1700
> Milwaukee, WI 53202-3186
> 414-298-1000
> fdicastri@reinhartlaw.com
> smcnamara@reinhartlaw.com

---

are threatening to leave, or even that employees were told they would get bonuses last year. Manager also offers no evidence to prove that bonus payments are made in the "ordinary course." Motion at 4.