IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Wisconsin & Milwaukee Hotel, LLC ) | |
| ) | Case No. 24-21743 |
| *Debtors*. ) | |
| ) | Honorable G. Michael Halfenger |
| ) | |
| ) | |

**REPLY IN SUPPORT OF WHITE LODGING'S MOTION FOR AUTHORITY TO PAY AMOUNTS AUTHORIZED BY THE CASH COLLATERAL ORDER**

White Lodging Services Corporation ("White Lodging"), by and through its undersigned counsel, for its reply in further support of its motion for the entry of an order, authorizing the use of Debtor's Cash Collateral to pay certain bonus payments to Debtor's employees as set forth in the Cash Collateral Order, entered by this court on May 2, 2024 [ECF #93], and for related relief. In support thereof, White Lodging respectfully states as follows:

**A. The Proposed Bonus Payments are not Discretionary and are a Necessary Operating Expense.**

Contrary to the Court's suggestion otherwise, White Lodging is not seeking to divest the Debtor of decision-making authority as to whether to make earned employee bonus payments. Instead, White Lodging seeks authority to use Cash Collateral to make non-discretionary bonus payments as agreed-to by the Debtor and allowed under the Cash Collateral Order.

The proposed bonus payments ("Bonus Payments")[1] are bonuses owed to various Hotel employees, including salespeople and operational staff, that were earned in 2024 based upon them meeting certain performance goals set forth in White Lodging's Short Term Incentive (STI)

---

[1] A schedule of the payments that White Lodging proposes to make is attached as Exhibit A to the Declaration of David Lanterman.

1

Program. (Declaration of David Lanterman ("Decl."), attached hereto as exhibit 1). The Bonus Payments are scheduled to be paid to Hotel salespersons, managers and directors (i.e., the General Manager, Director of Housekeeping, and Director of Room Operations, among others), who expect and are entitled under their employment agreements to receive the Bonus Payments based upon the Hotel's performance.

White Lodging is contractually obligated as part of its employment agreement to pay the Bonus Payments. (Decl. ¶6-7). Bonus Payments are not discretionary but instead are based upon a pre-determined formula, with a final calculation that is made at the end of the year and tied to Hotel performance metrics. (Decl. ¶7) Bonuses have been paid by White Lodging, with Debtor's full knowledge, to members of the Hotel sales teams every year prior to the Petition Date under this predetermined formula, including in Q1, 2, and 3 of 2024, with no objection from Debtor. (Decl. ¶12).

The reality is that but for White Loding managing the Hotel, the Debtor itself would be obligated to pay the Bonus Payments. The fact that White Lodging is acting as a "middleman" should not be used as a basis for the Debtor to avoid the contractual obligations through both the management agreement and employee contracts to pay the Bonus Payments to Hotel personnel.

Debtor has agreed that White Lodging had absolute discretion as to employee compensation and that it is obligated to pay all costs of operating the Hotel. Section 1.04 of the Management Agreement states:

> All personnel employed at the Hotel shall, at all times, be the employees of Manager. Except as otherwise provided below, Manager shall have ***absolute discretion*** with respect to all personnel employed at the Hotel, including, without limitation, decisions regarding hiring, . . . compensating, . . . all employees at the Hotel, and, generally, establishing and maintain all policies related to employment.

2

Case 24-21743-gmh    Doc 411    Filed 02/19/25    Page 2 of 6

Management Agreement, p. 4, §1.04 (emphasis added). The Management Agreement further provides that all costs for the operation of the Hotel are to be paid by the Debtor, and White Lodging "shall not be required to make any advance or payment with respect to the Hotel. . .and Manager shall not be obligated to incur any liability or obligation with respect to the Hotel." Management Agreement §4.03(B).

Prior to the Petition Date, the Debtor knew of and agreed to the Bonus Payments as an operating expense of the Hotel. As required by the Management Agreement, prior to the start of the 2024 fiscal year, White Lodging submitted a proposed annual operating budget to the Debtor for 2024 that included the Bonuses Payments for which White Lodging now seeks authority to pay. (Decl. ¶9). Debtor approved the annual budget and did not object to the Bonus Payments. (*Id.*). Thus, the Bonus Payments are an approved operating expense of the Debtor and not discretionary.

### B. **White Lodging has Relied Upon Entry of the Cash Collateral Order in Operating the Hotel.**

Debtor and Lenders argue the Cash Collateral Order does not compel Debtor to use cash collateral to make the Bonus Payments. This ignores the terms of the Cash Collateral Order itself. The Cash Collateral Order states in full that "The Debtor may use Cash Collateral only to pay its necessary operating expenses *consistent with the Budget* in amounts not to exceed in each month 110% of the aggregate amount of all items of expense set forth in the Budget for that month" (ECF #93, ¶1)(italics added). By including the Bonus Payments in the budget to the Cash Collateral Order, the Debtor and Lenders agreed that such payments were necessary operating expenses that could be paid from cash collateral. Debtor and Lenders, having expressly consented to the Bonus Payments in the Cash Collateral Order as necessary operating expenses, should not now be allowed to prohibited White Lodging's use of the cash collateral for the Bonus Payments simply because

3

the final calculation of the amount of the Bonus Payments could not be made until year-end 2024. *See In re Phoenix Pipe and Tube, L.P.,* 174 B.R. 688-89-90 (E.D. Pa 1994*)*(secured creditor prohibited from objection to payment of wages, salaries, and benefits to which secured creditor consented); *In re Amerigraph, LLC*, 456 B.R. 349, 357 (Bankr. S.D. Ohio 2011)("an agreement made by a debtor-in-possession that is set forth in an agreed cash collateral order generally will—unless the order expressly states otherwise—be binding on a Chapter 7 Trustee.").

White Lodging relied upon the Court's entry of the Cash Collateral Order in continuing to retain the employees needed to operate the Hotel during the course of this Bankruptcy Case, including hiring of Hotel employees, implementation of employment policies, and determining employee compensation. White Lodging has relied upon the Cash Collateral Order as setting forth the approved necessary operating expenses that would be paid from the Debtor's cash collateral. The Cash Collateral Order itself represents the agreement of the Debtor and is binding. *In re Amerigraph, LLC*, 456 B.R. 349 at 357. White Lodging was entitled to rely upon the entry of the agreed Cash Collateral Order in making and planning disbursements to employees related to the continued operation of the Hotel. *See In re Parker Steel Co.,* 149 B.R. 834, 856 (Bankr. N.D. Ohio 1992)(finding that defendant bank was permitted to rely on cash collateral order approving post-petition payments as being final.)

As admitted by Debtor in its objection to White Lodging's Motion to Assume or Reject Executory Contract, the Hotel's employees "are essential to meet the Debtor's ongoing business needs, including managing and operating the hotel. Termination would imperil the Debtor's ability to operate its business, and could lead to the closure of the Hotel, the continued operation of which is essential to a successful restructuring." (ECF #179, page 2, ¶8). As part of hiring and retention of the Hotel employees, White Lodging implemented the STI program to incentivize employees

and relied upon the inclusion of Bonus Payments in the Cash Collateral Order, as Debtor's and Lender's agreement to allow for the continued payment of such incentives after the Petition Date.

The efforts of the Hotel employees to achieve the performance goals set under the STI program is directly related to the revenue the Hotel received post-petition, which is a direct benefit to both the Debtor and Lender in that such revenues have allowed the continued operation of the Hotel, and facilitated Lender's receipt of monthly adequate protection payments. Because Debtor and Lender have both benefited from the work performed by the Hotel employees who were hired under the STI Program, they cannot now object to use of Cash Collateral for making the contractually agreed upon Bonus Payments that are authorized under the Cash Collateral Order. *See In re JKJ Chevrolet, Inc.,* 190 B.R. 542, 545 (Bankr. E.D. Vir. 1995)(Debtor authorized to use cash collateral to pay wages and commissions where the evidence showed that Lender benefitted from the work performed by the employees in that the business continued to operate and the thus value of Lender's lien was at the very least maintained). *In re Dynaco Corp.*, 158 B.R. 552, 553 (Bankr. D.N.H. 1993)("The secured claimant has benefitted from the work performed by the employees of these debtors prior to the bankruptcy filing and therefore the secured claimant will not be heard in opposition to payment for the wages due those employees for services which benefitted and created additional collateral for the secured claimant.").

As Debtor has acknowledged that Hotel employees are necessary to the continued operation of the Hotel, the payment of bonuses by White Lodging pursuant to its employment agreements should be considered an administrative expense and should not become the subject of a future motion to pay administrative expenses. Thus, authorization to pay the Bonus Payments pursuant to the Cash Collateral Order is warranted.

5

Case 24-21743-gmh    Doc 411    Filed 02/19/25    Page 5 of 6

WHEREFORE, White Lodging Services Corporation ("White Lodging") respectfully requests the entry of an Order authorizing the use of Debtor's Cash Collateral to pay certain bonus payments to Debtor's employees as set forth in the Cash Collateral Order, entered by this court on May 2, 2024 [ECF #93] and for related relief.

\*         \*         \*

**WHITE LODGING SERVICES CORP.**

By: */s/ Amy E Daleo*
      One of its Attorneys

Cornelius P. Brown (nbrown@cohonraizes.com)
Amy E Daleo (adaleo@cohonraizes.com)
Cohon Raizes & Regal LLP (90192)
300 S. Wacker Drive, Suite 500
Chicago, IL 60606
Office: (312) 726-2252
Fax: (312) 726-0609