| | |
|---|---|
| In re:<br><br>Wisconsin & Milwaukee Hotel LLC,<br><br>Debtor. | Case No. 24-21743-gmh<br>Chapter 11 |

**DEBTOR'S BRIEF IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MALLERY S.C. AS SPECIAL COUNSEL FOR A SPECIFIC PURPOSE EFFECTIVE AS OF MARCH 31, 2025**

Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"), by its attorneys Richman & Richman LLC, by Michael P. Richman and Eliza M. Reyes, hereby submits this supplemental brief in support of Debtor's Application for Order Authorizing the Retention and Employment of Mallery S.C. as Special Counsel for a Specific Purpose Effective as of March 31, 2025 ("**Application**") [Doc 476] requesting authorization pursuant to Sections 327 and 330 of the United States Bankruptcy Code ("**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and Local Rule 2014 of the United States Bankruptcy Court for the Eastern District of Wisconsin (the "**Local Rules**") to retain and employ Mallery s.c. ("**Mallery**"), as special counsel for the Debtor for a specific purpose effective as of March 31, 2025, the filing date of the Application ("**Effective Date**"). In support hereof and in further support of the Application, the Debtor also submits the Supplemental Declaration of Jon S. Herreman ("**Herreman Supp. Dec.**"), attached hereto and incorporated herein as **Exhibit A**.

Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding LLC (collectively "**Lenders**") filed on April 4, 2025 an Objection to the Application ("**Objection**") [Doc 485]. The Court held a preliminary hearing on April 7, 2025. The Lenders' principal objections were that there was insufficient disclosure by Herreman of his representation of Debtor's equity holders, and that his prior or current representations of Debtor's equity holders could hypothetically put him in conflict with the Debtor in negotiating a new management agreement and franchise agreement. At the conclusion of the hearing, the Court provided the Debtor with an opportunity to further support the Application with this supplement and the Herreman Supp. Dec. in order to address these issues.

First, as the Herreman Supp. Dec. makes clear, prior to the April 9, 2024 Petition Date, Mallery, primarily by Herreman, was long-time counsel to the Debtor in connection with its formation, its development, its financing needs, its corporate governance and its operations. In addition, a major part of Herreman's practice for over 20 years has been the representation of hotel developers, hotel owners, and hotel operators "in connection with all aspects of the life cycle of a hotel, including the development, construction, financing, licensing, franchising, management, operation, purchase and sale." Herreman Dec ¶¶ 6, 8.

Herreman states, and the Debtor believes and respectfully submits that to "[t]o effectively represent a hotel owner in connection with a hotel management agreement and/or franchise agreement, an attorney needs an understanding of industry standards, metrics, and terms," and that his "years of practice and experience in this

2

area have provided [him] with a solid understanding of such standards, metrics and terms." *Id.*, ¶ 7. The Debtor further believes and respectfully submits that this deep experience will be of substantial benefit to the estate in negotiating and documenting a new management agreement and franchise agreement, and lead to materially lower administrative expenses (legal fees) than would be the case if the Debtor were required to seek and engage new corporate counsel for this special purpose. Engaging Mallery and Mr. Herreman for this purpose will also lead to a more expeditious completion of the negotiations and documentation.

Mallery does not hold or represent any interests adverse to the Debtor in respect of the limited special purpose for which engagement is sought (see Bankruptcy Code § 327(e)). The interests of the Debtor and Mallery (and Debtor's equity owners who have been represented by Mallery) are aligned and identical with respect to these purposes. The common objective is agreement with a new management company and with Marriott International in order to support a successful chapter 11 plan. This cannot be achieved if equity owners and the Debtor take positions adverse to one another.

The Lenders' hypothetical potential conflict also makes no economic (or other) sense. How could equity benefit if the Debtor fails? The hypothetical suggests that the controlling equity holder would take a position at odds with the Debtor (to be represented by Mallery in this regard) that would necessarily lead to a likely failure of the Debtor's chapter 11 plan. On the other hand, illustrating the alignment of interests, the most favorable economics for the Debtor are also necessarily the most

3

favorable for its equity holders.

Not surprisingly, in analogous circumstances, courts have held that the interests of a controlling shareholder are unified with the interests of the controlled corporation. *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 801 (6th Cir. 2007). In *Servo Kinetics Inc.,* plaintiff sued a 98%-owned manufacturer and its parent corporation alleging that the parent corporation tortiously interfered with a contract between the plaintiff and the manufacturer. The court of appeals held that in relation to the contract, the interests of the parent corporation were unified with the interests of its subsidiary, and therefore, the parent corporation could not have committed the tort as it was not a genuine third party to the contract at issue as required by applicable law. *Id.*

In another action involving allegations of tortious interference of contract, the court found that

> [b]ecause there is a significant unity of interest between a corporation and its sole shareholder – indeed, an even greater unity than that which exists between a corporation and its agents or officers – we do not believe that such a shareholder can be considered a third party capable of "interfering" with its own company's contracts.

*Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1036 (2nd Cir. 1995).

As 99.99% owner of the Debtor, JSM's and the Debtor's interests are not just aligned; they are virtually identical. Beyond that, whatever is done with regard to the management and franchise agreements will require disclosure and Court approval. Thus, in the event a remotely unlikely actual conflict ever emerges, it can be addressed by the Lenders with the Court. There is therefore abundant good

4

reasons to engage Mallery for these limited purposes, and no reason to deny the Application.

## CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests entry of an order (a) overruling the Objection; (b) granting the Application; (c) authorizing the retention of Mallery, s.c. as special counsel for a specific purpose effective as of March 31, 2025; and (d) granting such other and further relief as is just and appropriate in the circumstances.

Dated: April 15, 2025.

**RICHMAN & RICHMAN LLC**
**Attorneys for Wisconsin &**
**Milwaukee Hotel LLC**

By: /s/ *Michael P. Richman*
Michael P. Richman
Claire Ann Richman
Eliza M. Reyes
122 West Washington Avenue, Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law
ereyes@RandR.law

5

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br><br>Wisconsin & Milwaukee Hotel LLC,<br><br>Debtor. | Case No. 24-21743-gmh<br>Chapter 11 |

### SUPPLEMENTAL DECLARATION OF JON S. HERREMAN IN SUPPORT OF DEBTOR'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MALLERY S.C. AS SPECIAL COUNSEL FOR A SPECIFIC PURPOSE EFFECTIVE AS OF MARCH 31, 2025

I, Jon S. Herreman, hereby declare as follows:

1. I am a shareholder with the law firm of Mallery s.c. ("**Mallery**" or the "**Firm**"), whose offices are located at 731 North Jackson Street, Suite 900, Milwaukee, Wisconsin, 53202.

2. I submit this Supplemental Declaration in further support of Debtor's Application for Order Authorizing the Retention and Employment of Mallery s.c. as Special Counsel for a Specific Purpose Effective as of March 31, 2025, filed by Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"), on March 31, 2025 ("**Application**") [Doc 476].

3. Unless otherwise stated, the facts set forth herein are based on my personal knowledge, upon records maintained by Mallery in the ordinary course of business, and which have been reviewed by me or other Mallery attorneys or employees at my direction, or upon information provided to me by other Mallery attorneys or employees.

4. I am making this Supplemental Declaration to provide additional details of the specialized nature of my practice in relation to the proposed scope of work, as well as additional disclosures of Mallery's connections with the Debtor, its related entities, and the various members of such related entities.

5. I am an equity shareholder and officer of Mallery.

6. I am primarily a transactional attorney and I have a diverse practice in commercial real estate, finance, and business matters. A major part of my practice for over 20 years has been the representation of hotel developers, hotel owners, and hotel operators. In such capacity, I have provided legal representation to clients in connection with all aspects of the life cycle of a hotel, including the development, construction, financing, licensing, franchising, management, operation, purchase and sale. I have also represented financial institutions in connection with the financing of hotels.

7. In my experience, hotel franchise agreements and hotel third-party management agreements are complex and involve specific legal issues and considerations. To effectively represent a hotel owner in connection with a hotel management agreement and/or franchise agreement, an attorney needs an understanding of industry standards, metrics, and terms. My years of practice and experience in this area have provided me with a solid understanding of such standards, metrics, and terms.

8. I represented WMH in connection with the development, construction, financing, franchising, management and operation of the Debtor Milwaukee Marriott

2

Downtown ("**Marriott**" or "**Hotel**").

9. I acted as counsel to the developer/owner of the Hotel from its inception, including negotiating the current hotel management agreement and franchise agreement. As such, I believe that I am qualified to act as special counsel to the bankruptcy estate in connection with the negotiation of a new hotel management agreement and amendment to the existing franchise agreement.

10. I represented JSM Management LLC ("**JSM**"), as the majority member and manager of WMH, in connection with its formation and various transactional issues. I currently have no open matters for JSM.

11. I have represented, and currently represent, in matters unrelated to WMH's Chapter 11 Case, entities in which several of the direct or indirect individual members of JSM are members of such entities.

12. While I am, and have been, an investor in other unrelated entities or projects with several of the direct or indirect individual members of JSM, I do not have any ownership or beneficial interest in WMH or JSM.

I declare under penalty of perjury under the laws of the United States that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct to the best of my knowledge.

Executed in Milwaukee, Wisconsin this 14th day of April, 2025.

_____
Jon S. Herreman

3