IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re: )
)  Chapter 11
Wisconsin & Milwaukee Hotel, LLC )
)  Case No. 24-21743
*Debtor*. )
)  Honorable G. Michael Halfenger
)
_____ )

**OBJECTION TO THE CONFIRMATION OF THE DEBTOR'S
AMENDED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

White Lodging Services Corporation ("White Lodging"), by and through its undersigned counsel, objects to the confirmation of the Debtor's Amended Plan of Reorganization and Disclosure Statement and in support thereof states as follows:

**BACKGROUND**

1. On April 9, 2024 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor is operating its business as a debtor in possession pursuant to §§1107, 1108, and 1184 of the Bankruptcy Code.

3. Debtor owns and operates a 205-room hotel located at 625 N. Milwaukee Street, Milwaukee, known as the Milwaukee Marriott Downtown (the "Hotel"). [ECF 503, p.6]

4. Debtor and White Lodging are parties to a Management Agreement by and between White Lodging Services Corporation (as "Manager") and Wisconsin & Milwaukee Hotel LLC (as "Owner"), dated as of June 14, 2011 ("Management Agreement"), pursuant to which Debtor has authorized and engaged White Lodging to supervise, direct, and control the management and operation of the Hotel. [ECF 503, p. 8]. Subsequent to the Petition Date, White Lodging has continued to act as Manager for the Hotel.

1

5. On June 13, 2024, White Lodging filed a Motion to Compel Debtor to Assume or Reject Administrative Services Agreement and for Related Relief [ECF no. 154], in which it sought to compel Debtor to immediately assume or reject the Management Agreement. Debtor objected. While the Court denied White Lodging's motion conditionally, holding that Debtor must notify White Lodging of any decision to assume of reject the Management Agreement 60 days before the effective date of any assumption or rejection. [ECF 180].

6. On June 21, 2024, White Lodging filed Claim 15 in the amount of $1,552,143.35 for management fees, reimbursements, and guaranty fees and Claim 16, a contingent claim in the amount of $21,042,609.00 for amounts due under the Management Agreement and Guaranty.

7. On December 20, 2024, this Court entered an order extending the deadline for the debtor to file a Chapter 11 plan pursuant to 11 U.S.C. 1121(c)(2) to February 7, 2025 [ECF 357].

8. The December 20, 2024 Order also granted Debtor's motions to extend the exclusive periods for filing a Chapter 11 plan of reorganization and for soliciting acceptances to the plan. (*Id.*)

9. On February 7, 2025, Debtor filed its Chapter 11 Plan of Reorganization and Disclosure Statement. [ECF 392].

10. On April 4, 2024, Debtor filed an Amended Disclosure Statement for Chapter 11 Plan of Reorganization of Wisconsin & Milwaukee Hotel LLC dated on April 4, 2025 ("Amended Disclosure Statement"). [ECF 486].

11. On April 9, 2025, the Court entered an order approving the Amended Disclosure Statement. [ECF 495].

12. Debtor filed the Amended Chapter 11 Plan of Reorganization of Wisconsin & Milwaukee Hotel LLC dated April 4, 2025 on April 10, 2025 ("Amended Plan") [ECF 504]. The

deadline for objections to the Amended Plan is May 21, 2025 pursuant to the Court's order of April 9, 2025. [ECF 495].

### The Amended Plan

13. The Amended Plan creates nine (9) classes of claims, consisting of three classes of secured claims and the following six separate classes of unsecured claims:

**CLASS 4** – Priority Unsecured Claim of US Foods, Inc.

**CLASS 5** – Unsecured Claims of White Lodging Services Corporation

**CLASS 6** – Unsecured Claim of Computershare.

**CLASS 7** – Unsecured Claim of WMH Funding.

**CLASS 8** – All other general unsecured claims.

**CLASS 9** – Equity interests of the Debtor.

14. The Amended Plan provides that "most classes will receive distributions on account of allowed claims and interests, including general unsecured creditors, most of whom will receive dividends comprising 50% of their allowed claims." [ECF 503, p. 3].

15. The Amended Plan classifies White Lodging's claims as:

**CLASS 5 – Unsecured Claims of White Lodging**.

The White Lodging claims are impaired. Subject to further determination by the Court, White Lodging shall be allowed a claim of $451,000, to be paid a 10% dividend in the amount of $45,100 on the Effective Date, or within a reasonable time after a settlement or final judicial determination of the amount of its claims in the event litigation of its claim amounts is ongoing.

[ECF 504, p. 7].

16. The Amended Plan classifies all other general unsecured claims as:

**CLASS 8 – All Other General Unsecured Claims**.

3

Class 8 consists of all other allowed General Unsecured Claims, representing primarily trade debt of the Debtor, which totals approximately $2,300,000. The claimants in Class 5 are impaired. Class 8 claimants shall be paid a 50% dividend in the approximate aggregate amount of $1,150,000 pro-rata, in quarterly payments of $115,000 over a 2 ½ year period, with the first quarterly payment due on the first day of the calendar quarter that begins after the Effective Date, and each quarterly payment due on the 1st day of each calendar quarter thereafter, until paid in full.

[ECF 504, p. 8].

17. The Amended Plan requires the following conditions to be met prior to the Effective Date:

C. **New Management Agreement**. The Debtor must have a new management agreement in effect with a management company that will on or before the Effective Date replace White Lodging at the Hotel.

D. **Franchise Agreement**. The Debtor must have Court approval to assume the Franchise Agreement with Marriott International on the same or an amended basis.

[ECF 503, Art. 7.2, p. 16].

18. Pursuant to the Amended Disclosure Statement, Debtor intends to reject the Management Agreement and replace White Lodging with a new Hotel management company. [ECF 503, p. 8].

19. Per the Amended Disclosure Statement, negotiations with the potential new replacement management company and Marriott are ongoing. (*Id.*) Debtor does not disclose the terms of the modified Franchise Agreement nor the proposed new management agreement as it has not yet entered into such agreement. (*Id.*). Debtor states:

The Debtor also believes that its entry into a new management agreement will be at least equal, but likely better economically to the present agreement, and likely to improve the Debtor's post-bankruptcy economic performance. These negotiations must be completed and the related agreements approved by the Bankruptcy Court as a condition of confirmation of the Debtor's chapter 11 Plan.

(*Id.*)

20. Debtor further intends to assume the Marriott Franchise Agreement in an "agreed modified form" after negotiations with Marriott. [ECF 503, p. 8]. Debtor does not state the terms of the modified Franchise Agreement but states that it "believes that the continuation of the Marriott Franchise Agreement will be at least equal, but likely better economically to the present agreement." [ECF 503, p. 8].

21. As of the date of this objection, Debtor has not entered into a new management agreement nor disclosed the identity of the new manager. Debtor has also not entered into a modified Franchise Agreement with Marriott.

## **ARGUMENT**

Debtor's Amended Plan should not be confirmed because (1) Debtor arbitrarily places White Lodging into its own class in violation of §1122, and (2) the Amended Plan is not feasible as there is no new Manager to operate the Hotel which is essential to an effective reorganization.

Section 1128(b) of the Bankruptcy Code provides that any "party in interest" may object to confirmation of a plan. A party in interest includes a creditor of the debtor with fiscal interests directly affected by the plan generally may object. *See In re Quigley Co., Inc.*, 391 B.R. 695, 705 (Bankr. S.D.N.Y. 2008)(a creditor of the debtor with fiscal interests directly affected by the plan is a party in interest entitled to object to confirmation). White Lodging has standing to object as its fiscal interests are directly affected by the Plan.

"Courts have recognized that 'if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing.'" *In re American Capital Equipment, LLC,* 688 F.3d 145, 154 (3rd Cir.

5

Case 24-21743-gmh    Doc 550    Filed 05/21/25    Page 5 of 13

2012)(quoting *In re Larsen,* No. 09-02630, 2011 WL 1671538, at *2 n.7 (Bankr. D. Idaho, May 3, 2011).

A. <u>**The Amended Plan Arbitrarily Places White Lodging Into Its Own Class**</u>

Although White Lodging is similarly situated with the other general creditors, Debtor has arbitrarily placed White Lodging into its own claim class and provides for payment to White Lodging of 10% of the total amount claimed [ECF 504, Art. 3.6]. All other general unsecured claims are placed in Class 8 with payment to those creditors of 50% of the amount claimed. [ECF 504, Art. 3.9]. Debtor has not articulated any reason in the Amended Disclosure Statement nor Amended Plan for why White Lodging should be treated worse than other general unsecured creditors.

"[A] plan may place a claim . . . in a particular class only if such claim . . . is substantially similar to the other claims . . . of such class." 11 U.S.C. § 1122. To determine if claims are substantially similar, the court "must evaluate the nature of each claim, i.e., the kind, species, or character of each category of claims." *In re Spin City EC, L.L.C.,* 578 B.R. 635, 639 (Bankr. W.D. Wis. 2017). Claims may be separately classified if there are good business reasons to do so or if the claimants have sufficiently different interests in the plan." *In re Multiut Corp.,* 449 B.R. 323, 334 (Bankr. N.D. Ill. 2011)(quoting *In re Wabash Valley Power Ass'n, Inc.,* 72 F.3d 1305, 1321 (7th Cir.1995). However, a debtor may not separately classify claims solely to gerrymander an affirmative vote on reorganization. *Id.* The Court of Appeals for the Seventh Circuit has accepted what the Fifth Circuit called the "one clear rule:" "Thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on reorganization." *In re Woodbrook Assocs.*, 19 F.3d 312, 318 (7th Cir. 1994)(*quoting Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991)); *see also In re Wabash Valley Power Ass'n., Inc.*, 72 F.3d at 1321 (noting that "a debtor

6

may not separately classify claims solely in order to 'gerrymander an affirmative vote on reorganization' . . . .").

The Amended Plan arbitrarily places White Lodging in its own unsecured class separate from other unsecured creditors and proposes to only pay 10% of White Lodging's allowed claim. However, White Lodging's claims are substantially similar to other general unsecured creditors and it should be treated the same.

White Lodging's claim no. 15 is a general unsecured claim arising from the prepetition amounts due and owing to White Lodging. There is no business reason provided by Debtor to show that such a claim should be separated from other general unsecured claims and that Debtor proposes to pay only 10% of White Lodging's claim compared to the remainder of the unsecured creditors.

White Lodging's claim no. 16 is a contingent claim for damages arising from Debtor's rejection of the Management Agreement. In the event the Debtor elects to terminate the Management Agreement (which Debtor has indicated that it intends to do), claim 16 asserts the net present value of the Management Agreement is $7,042,609.00 and that a contribution claim for amounts due under the Guaranty in the amount of $14,000,000. It is well-established that Debtor's post-petition rejection of an executory contract entitles the creditor to a general unsecured claim for damages. "If the debtor rejects the executory contract, the injured party receives a pre-petition claim for damages resulting from the rejection which is afforded general unsecured priority." *In re S.N.A. Nut Co.*, 191 B.R. 117 (1996). *See also In re Pre-Press Graphics Co., Inc.*, 300 B.R. 902, 909 (Bankr. N.D. Ill. 2003)("Rejection of an underlying contract constitutes a breach of the contract, which usually results in … a general unsecured claim for "rejection damages."); and *In re Am. HomePatient, Inc.*, 414 F.3d 614 (6th Cir. 2005)("Bankruptcy Code section 365(g)

provides that, upon rejection of an executory contract, the time of breach by the debtor is fixed as of the day 'immediately before the date of the filing of the petition.'…The effect of the breach is to allow the party injured by the rejection to seek allowance of its resulting claim as a pre-petition unsecured claim."). Thus, White Lodging's claim for damages based upon the Debtor's rejection of the Management Agreement should be included in the class of general unsecured claims.

The Amended Plan unfairly treats White Lodging different from other unsecured creditors. Debtor provides no business reason for placing White Lodging into its own class. Without any explanation for creating a separate class, the Court may infer that Debtor may be attempting to gerrymander the classes in an effort to try to create an accepting class for the Amended Plan. Whether Debtor intended to gerrymander a vote is not relevant. *In re Spin City EC, L.L.C.*, 578 B.R. at 641. Where a Debtor is unable to articulate a valid reason for placing substantially similar claims in separate classes, the Court can infer that the Debtor has attempted to gerrymander a vote for confirmation of a plan. *Id.* Here, Debtor's Amended Plan arbitrarily places White Lodging into its own class and proposes to pay White Lodging only 10% of its claim, while other unsecured creditors in the same position are paid 50% of their claims. Debtor has provided no other explanation as to why it has placed White Lodging into its own class separate from the other general unsecured claims. The Amended Plan unfairly discriminates in violation of section 1122 and should not be confirmed.

### B.     The Amended Plan is not Feasible.

The Amended Plan is also not feasible because it is contingent upon Debtor locating a new management company to operate the Hotel and entering into a new management agreement with equal or better terms than the existing agreement. There is no indication that Debtor has or will be

8

Case 24-21743-gmh    Doc 550    Filed 05/21/25    Page 8 of 13

able to do so. The Amended Plan is also contingent on reaching an agreement with Marriott to modify the terms of the Franchise Agreement.

Debtor's ability to reorganize hinges on its ability to continue to operate the Hotel, which will require Debtor to locate a new manager to operate the Hotel and negotiate a Franchise Agreement to allow it to operate as a Marriott. Since the Petition Date, Debtor has been well-aware that any plan of reorganization would require either accepting the current Management Agreement or locating a new manager. Still now, thirteen months later, Debtor has not entered into a new management agreement nor even identified a potential new manager.

Moreover, creditors are unable to make an informed decision because the Amended Disclosure Statement fails to set forth the financial terms of both the new management agreement and the amended franchise agreement since neither exist at this time. *See Objection to Disclosure Statement for Chapter 11 Plan of Reorganization filed by Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding LLC*, p. 1-4 [ECF 479]. In fact, the Amended Disclosure Statement is patently misleading to creditors because it asserts that such non-existent agreements may be on better financial terms and then creates the false impression that this major omission of critical information needed by creditors to make an informed decision in voting on the Amended Plan is somehow excused because such new agreements must be "approved by the Bankruptcy Court as a condition of confirmation of the Debtor's Chapter 11 Plan." Debtor puts the cart before the horse. Whether the Court approves any such new agreements is separate and apart from creditors actually knowing the financial terms before they vote. Thus, the Amended Plan is destined to fail and is not feasible.

Feasibility is a requirement for confirmation:

One requirement for confirming a plan is that the debtor demonstrate "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial

9

reorganization, of the debtor or any successor to the debtor under the plan ....” 11 U.S.C. § 1129(a)(11). This is known as the "feasibility" requirement. *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 169 (Bankr. N.D. Ill. 2012); *In re Repurchase Corp.*, 332 B.R. 336, 342 (Bankr. N.D. Ill. 2005), *aff'd*, 2008 WL 4379035 (N.D. Ill. Mar. 24, 2008). To demonstrate feasibility, a debtor need not guarantee the plan's success, but the debtor must give a "reasonable assurance of commercial viability." *Repurchase Corp.*, 332 B.R. at 342 (internal quotation omitted); *see also In re STC, Inc.*, No. 14-41014, 2016 WL 3884799, at *10 (Bankr. S.D. Ill. Apr. 7, 2016); *Olde Prairie*, 467 B.R. at 169.

*In re Aurora Memory Care, LLC*, 589 B.R. 631, 640 (Bankr. N.D. Ill. 2018)

"The central inquiry is whether there is a reasonable probability the provisions of the plan can be performed." *Id*. Additionally, "[c]onfirmation should neither be based on speculation nor the visionary projections of a debtor's champion." *Id*. *See also In re American Capital Equipment, LLC*, 688 F.3d 145, 156 (3rd Cir. 2012)("plan will not be feasible if its success hinge on future litigation that is uncertain and speculative, because success in such circumstances is only possible, not reasonably likely.").

Here, Debtor's plan is not feasible because it is entirely contingent upon finding and hiring a new manager who will agree to manage the Hotel with equal or better terms than the current Management Agreement. The new manager and management agreement would also need to be approved by Marriott. Debtor has failed to provide any information to show that a new manager is willing to take over the operation of a Hotel in bankruptcy with equal or better terms than the current Management Agreement.

Without a manager, Debtor would not be able to continue to operate the Hotel. The probability of successful performance of the Amended Plan is highly speculative at best, and is not reasonably probable given Debtor's failure at this late voting stage of the Amended Plan to have in place two of the most critical components of its Amended Plan. The continued operation of the Hotel is essential for Debtor's ability to reorganize through Chapter 11, and without a new

10

management company to operate the hotel, the planned reorganization is not reasonably likely to be successful.

As stated, confirmation of the Amended Plan without identification of a new manager and disclosure of the terms of a new management agreement is based on pure speculation. Debtor has offered no evidence to demonstrate that a management company would be willing to take over operation of a Hotel in bankruptcy under any terms, let alone equal or better terms.

The Debtor bears the burden of demonstrating feasibility by a preponderance of the evidence. *In re Repurchase Corp.*, 332 B.R. 336, 342 (Bankr. N.D. Ill. 2005), aff'd, 2008 WL 4379035 (N.D. Ill. Mar. 24, 2008). Debtor has failed to do so. In the Amended Disclosure Statemen, Debtor fails to provide information needed to demonstrate the Amended Plan is feasible. Debtor has failed to identify any potential new manager; whether the manager has the ability to operate the Hotel; the terms of new management agreement; and whether Marriott has approved the new management company. Debtor also fails to provide sufficient information regarding the terms of any agreed upon modification of the Franchise Agreement with Marriott. The assertion that such Franchise Agreement "will be on the same or better terms" is nothing more than guesswork and does not create a factual basis for Debtor's assertion that the Amended Plan is feasible.

The Amended Plan's conditional language and speculative assertions do nothing to establish the feasibility of the Amended Plan. For all of the aforementioned reasons, the Amended Plan is not feasible, and confirmation of the Amended Plan should be denied.

WHEREFORE, White Lodging Services Corporation ("White Lodging") respectfully requests the entry of an Order denying confirmation of Debtor's Amended Plan of Reorganization, and for such other relief as this Court deems just.

**WHITE LODGING SERVICES CORP.**

By: */s/ Amy E Daleo*
      One of its Attorneys

Cornelius P. Brown (nbrown@cohonraizes.com)
Amy E Daleo (adaleo@cohonraizes.com)
Cohon Raizes & Regal LLP (90192)
300 S. Wacker Drive, Suite 500
Chicago, IL 60606
Office: (312) 726-2252
Fax: (312) 726-0609

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In re: | Chapter 11 |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Case No. 24-21743 |
| Debtor. | Honorable G. Michael Halfenger |

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I caused to be filed, with the United States Bankruptcy Court for the Eastern District of Wisconsin, White Lodging's ***Objection to the Confirmation of the Debtor's Amended Plan of Reorganization and Disclosure Statement***, using the Court's CM/ECF electronic filing system which caused the Motion to be sent to all parties in this case receiving electronic notice.

Dated: May 21, 2025

**WHITE LODGING SERVICES CORPORATION**

By: */s/ Amy E Daleo*
    One of its Attorneys

Cornelius P. Brown (nbrown@cohonraizes.com)
Amy E Daleo (adaleo@cohonraizes.com)
Cohon Raizes & Regal LLP
300 S. Wacker Drive, Suite 500
Chicago, IL 60606
Office: (312) 726-2252
Fax: (312) 726-0609