UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

---

**DEBTOR'S MOTION FOR RECONSIDERATION
OF MAY 15, 2025 ORDER GRANTING IN PART
WHITE LODGING SERVICES CORPORATION'S
MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM
("2d BONUS MOTION")**

---

Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"), by its attorneys Richman & Richman LLC, by Michael P. Richman, hereby submits this motion for reconsideration ("**Motion**") pursuant to the Order Granting in Part White Lodging Services Corporation's Motion for Allowance of Administrative Expense Claim, entered on May 15, 2025 [Doc. 541], and Fed. R. Bankr. P 9024, incorporating Fed. R. Civ. P. 60.

**Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) for allowance or disallowance of claims against the estate.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**Argument**

3. On April 21, 2025, in the long-running efforts by White Lodging Services Corporation ("**WL**") to require the Debtor to pay $136,705.09 in bonuses to certain

1

Hotel employees (including double payments to some), this Court held [Doc 521, at p. 4] that the record supported denial of the 2d Bonus Motion because WL had failed after nearly three months to show that bonuses were either paid or legally obligated to be paid, a condition precedent to the allowance of an administrative expense claim.

4. The Court also stated that "if White Lodging paid the bonuses or established that it is legally obligated to do so, then, it seemingly would be entitled an allowed administrative expense to that extent." *Id.*, p. 5. While this appears tentatively to have offered WL a choice, the Debtor submits that if the payment of the bonuses (which WL now represents it secretly paid on March 13) was discretionary, as this Court previously found from the record, they cannot be "necessary" within the meaning of the administrative expense requirements of § 503(b)(1) of the Bankruptcy Code. If they were not "necessary" (because not required), then allowing them as administrative expenses would be a detriment to the Debtor's estate.

5. But that is not the only defect that should prevent allowance of the bonus payments as administrative expenses. There is still after all this time no evidence in the record that would permit the Court or the Debtor to determine (even if the bonuses were obligatory) how WL allocated the bonus amounts to the Debtor. WL has refused to disclose its bonus formula or criteria. Although it could have availed itself of the procedures permitting it to request the filing of its STI Plan (alleged to be trade secret information) under seal (§ 107(b)), it chose to simply conceal the relevant details. The manner in which bonuses were calculated and allocated to the Debtor is highly material to assessing "necessity" and benefit to the estate (even

2

if, as against the record, they were obligatory). This is especially important, where, as here, Debtor believes that some number of the affected employees also work at other properties managed by WL.

6.  The Debtor has since January 2025 objected in every one of its pleadings to the bonus payments on the basis that it could not determine necessity and benefit to the estate in the absence of disclosure of the bonus formula and criteria. On March 26, 2025, this Court held (by text order, [Doc 475]) that it was "tentatively inclined to deny the [2d Bonus Motion]" because the bonuses had not been paid, and directed that if WL "opposes this reasoning and desires to persist in the prosecution of the motion, it must file a reply in support of the motion . . . that addresses *both the issues raised in this order and those raised in the debtor's objection*"[1] (emphasis supplied).

7.  WL filed a reply on April 10, 2025 [Doc 505] addressing the alleged obligation to pay the bonuses, but not addressing any of Debtor's other issues (the formula and criteria, the calculations, the allocations). WL argued that it had a legal obligation to pay the bonuses, and that they were "necessary" as *regular wage compensation* under Wisconsin statutes.

8.  On April 21, 2025, after reviewing WL's April 10 Reply, the Court issued another Order [Doc 521]. The Court observed that, again (and in spite of the fact that the bonuses now appear to have been paid on March 13), "White Lodging does not report having paid any of the bonuses. . .. It instead suggests that it is legally

---

[1] WL disclosed on May 5, 2025 that it paid the bonuses on March 13, 2025. WL should be required to explain why it concealed that highly material fact until May 5. Both the Court and the Debtor in various pleadings and orders after March 13 relied on WL's representation that the bonuses were not paid.

3

obligated to pay those bonuses, because the bonuses are wages that Wis. Stat. chapter 109 requires it to pay." *Id.*, p. 3. The Court reviewed the only information about the so-called STI Plan that WL provided, and concluded that "it *does not* create a right to [any bonus] payment." *Id.*, p. 4 (emphasis in original). The Court then held that "White Lodging's failure to submit evidence that it paid the bonuses or to show that it is legally obligated to pay the bonuses is reason to deny the request." *Id.*

9. The Court provided WL with another opportunity to supplement the record with evidence it either paid the bonuses (and the amounts of such payments), or that it was legally obligated to do so. *Id.*, p. 5. The Court indicated that if such a filing were made, the Court would either allow the payments as administrative expenses or schedule further proceedings on the matter. *Id.*

10. WL then filed its Supplemental Reply of May 5, 2025 [Doc 534], which instead of demonstrating any legal obligation to pay the bonuses, disclosed for the first time that it actually paid the bonuses on March 13. There remains no evidence of legal obligation. The only evidence of the STI Plan provided is that the bonus payments were discretionary, and not wages, as the Court already held, and therefore cannot be found to be *necessary* to preserve the estate as required by Bankruptcy Code § 503(b)(1).

11. The Supplemental Reply also fails to disclose how the bonuses were calculated. According to the Second Supplemental Declaration of David Lanterman (WL's EVP and Chief Operating Officer) [Doc 534-1] at ¶ 3, "[t]he amount of each bonus payment was calculated based upon a confidential and proprietary formula

4

contained in White Lodging's STI Plan, which formulas are a trade secret in the industry."

12. On May 15, 2025, the Court issued the Order [Doc 541], which on the basis of WL's assertion that it paid the bonuses on March 13, tentatively allowed the administrative expense claim for the bonus payments, denied the 2d Bonus Motion to the extent it sought to compel the Debtor to make immediate payment of such claim, and provided the Debtor with the opportunity by this Motion to "contest the veracity of David Lanterman's declaration or otherwise assert[] that there are plausible grounds to challenge this order's finding that White Lodging paid bonuses in the amount stated in that declaration." *Id.*, p. 3.

13. The Debtor does not believe the Lanterman Declaration to be trustworthy. The grossly belated representation that the bonuses were paid on March 13 is not supported with any payment records. The Debtor cannot determine what funds were used to make the payments.[2] The Debtor cannot determine how WL calculated the amounts, where, as here, the calculations are based on a secret formula and criteria. The Debtor cannot accept Lanterman's assertion that WL was "legally obligated to pay the bonus payments under the STI Plan and Wisconsin law" [Doc 534-1 at ¶ 4], where, as here, a legal obligation is the most critical and material basis for determining "necessity" under § 503(b)(1).

---

[2] Debtor questioned the source in emails with WL's counsel, and was informed only that the payments came from non-debtor sources. However, and in particular given the concealment of the asserted payments until May 5, the Debtor submits that payment records should be produced.

5

14. The Court already found (quoted above) from the portions of the STI Plan provided, and under Wisconsin law, that the bonus payments were discretionary. Given the fact that WL apparently (and without explanation) concealed for nearly two months that it had made the bonus payments in March, the Debtor rejects as blatantly untrustworthy Lanterman's declaration of the manner in which the bonuses were calculated, as well as his assertion that they were legally obligated.

15. The Debtor has been adamantly opposed to these payments from the outset because WL missed its budget for the Hotel in the period for which the bonuses were paid (so the Debtor cannot conceive how any employee could be eligible for a bonus), a number of the affected employees work for WL at other properties (so the Debtor is suspicious that it is being "charged" for amounts that may be attributable to non-debtor operations), and the Debtor believes that the bonuses put the affected Hotel employees well above the market compensation rates for their positions (another fact that belies necessity).

16. Enough is enough. Beginning with its January 31, 2025 Motion for Authority to Pay Amounts Authorized by Cash Collateral Order [Doc 389], WL has filed five pleadings with respect to two motions seeking authority to pay the same bonuses, first on the basis of compelling the Debtor to pay them from cash collateral, and second on the basis of an administrative expense claim to be paid immediately.[3]

---

[3] The January 31 Motion, and a February 19, 2025 Reply in Support of White Lodging's Motion for Authority to Pay Amounts Authorized by the Cash Collateral Order [Doc 411], sought authority to compel the Debtor to make the payments from cash collateral. On March 4, 2025, in its Motion for Allowance and Payment of Administrative Expense Claim [Doc 432], WL sought authority to make the same payments from non-Debtor sources but to have them authorized as administrative expenses and to be paid by Debtor immediately. Its April 10, 2025 Reply in Support of its Motion for Allowance and Payment of Administrative Expense Claim [Doc 505] and May 5, 2025

The Debtor objected to each of the two motions.[4] The Court issued five related docket text orders on February 14, 2025 [Doc 404], March 26, 2025 [Doc 475], March 31, 2025 [Doc 480] and April 21, 2025 [Doc 521]. The Court also held a hearing on the first of the two motions on February 20, 2025 [Doc 413].

17. There have been so many pleadings because the Court has given WL numerous attempts to supply the missing evidence that bonus payments were legally required to be made, and *WL has still failed to do so*. In its last Order on these motions on April 21, 2025 [Doc 521], the Court found that "the STI Plan states that it *does not* create a right to payment." The only other basis contended by WL to find a legal requirement to pay bonuses is under the tests of Wisc. Stat. § 109.01(3), which the Court held White Lodging had also failed to show: "White Lodging, now in its second attempt to persuade the court to allow it to pay bonuses from the debtor's operating account, identifies no other basis for finding that bonuses are required by an 'established policy' or 'agreed upon between 'White Lodging and its employees" [Doc 521, at p. 4].

18. The 2d Bonus Motion should therefore be denied, or in the alternative further proceedings should be scheduled, because the belated disclosure of the payment of the bonuses and the unsupported Lanterman assertion that they were legally obligated to be paid, is not dispositive of the administrative expense claim.

---

Supplemental Reply in Support of its Motion for Allowance and Payment of Administrative Expense Claims [Doc 534] were supplemental to the second motion.

[4] February 14, 2025 Objection to Motion of White Lodging Services Corporation for Authority to Use Cash Collateral to Pay Bonuses [Doc 401] and March 25, 2025 Objection to White Lodging's motion for Allowance and Payment of Administrative Expense Claim [Doc 474].

There are too many unanswered questions, and on top of that, peculiar behavior (failure for two months to disclose the payments) that should be explained. The declaration's further statement that the bonuses paid on March 13 *were legal obligations* is not evidence of legal obligation, especially where, as here, the STI Plan provisions already provided to the Court made them discretionary. If they were discretionary, they could not be *necessary* to preserve the estate.

19. WL has had more than enough chances to make its case. It failed repeatedly. Enough is enough.

**Additional Background and Requests for Relief**

20. In the May 5, 2025 Supplemental Reply and the Lanterman Declaration, White Lodging disclosed for the first time that *it actually paid the bonuses on March 13, 2025* [Doc 534-1, at ¶ 2]. Therefore, between March 13, 2025 and May 5, 2025, *for nearly two months*, including further briefing by White Lodging, to which the Debtor replied, and interim orders were entered by this Court, White Lodging concealed that it made the payments. The Debtor continued to brief, and the Court's prior orders relied on what WL led it to believe was fact, that failure to pay the bonuses deprived them of the character required to be the basis of an administrative expense claim. *See, e.g.*, the Debtor's March 25, 2025 Objection to the 2d Bonus Motion [Doc 474, at pp. 2-4].

21. In the dark about the actual payment of the bonuses, this Court issued its text order [Doc 475] on March 26, 2025 summarizing the parties' arguments and making clear that one of the issues was that WL had not actually made the bonus

8

payments for this Court to approve as administrative expenses. *Id.* Additionally, the Court held that WL had failed to prove that it was obligated to make the bonus payments. *Id.* Accordingly, the Court granted WL an opportunity to file another reply on or before April 1, 2025 (subsequently extended to April 10) to address these and other issues, *including those raised in Debtor's objection (which included the Debtor's argument that it could not diligence or determine benefit to the estate without disclosure of the bonus formula and criteria). Id.*

22. WL filed its Reply in Support of Its Motion for Allowance and Payment of Administrative Expense Claim [Doc 505] on April 10, 2025. But WL failed to address any of the Debtor's issues that the Court directed it to address [Doc 475], and *still did not disclose that it had paid the bonuses on March 13*. Instead, WL argued (without evidence) that it had a legal obligation to pay the bonuses [Doc 505, at p. 2].

23. The Debtor believes and would show in further proceedings that there are important evidentiary issues that were not previously raised, because they were part of WL's burden of proof, and not relevant so long as the apparently agreed factual status was that the bonuses had not been paid and were not obligated to be paid. As noted earlier, the Debtor believes that some number of the employees at the Debtor Hotel are also employed by WL at other hotels that WL manages. The Debtor must be able to know the formula and criteria, and understand how any such bonuses, if they crossed different businesses, were allocated to the Debtor. This is especially important where, as here, Debtor believes that WL did not meet its budget performance for the Hotel for the year in question. The Debtor also believes (and

9

would present evidence at a hearing, again not previously germane because WL represented the bonuses were not paid, and bears the burden of proof of "necessity" to preserve the estate) that the bonuses may have resulted in total compensation to certain employees that is substantially above the market rates in Milwaukee, a fact which would also not only argue against any benefit to the estate, but would show detriment if the payments were allowed as administrative expenses, even if they were obligatory.

24. Accordingly, the Debtor respectfully requests that this Court deny WL's 2d Bonus Motion, or in the alternative schedule further evidentiary hearings on the matter. Even if WL has made bonus payments, WL must still demonstrate, pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, that the payments are actual and necessary expenses to preserve the estate. WL has not satisfied, and cannot satisfy this requirement if the payments were not obligated to be made, and if it does not disclose the bonus formula and criteria. In addition, if the employees were compensated at a rate higher than the market rate, such bonus payments cannot be necessary to preserve the estate even if obligatory.

**Legal Basis for Relief**

25. Fed. R. Bankr. P. 9024 incorporates Fed. R. Civ. P. 60(b), which provides, in pertinent part, that on motion and just cause, the Court may relieve a party from an order on the basis of, among other things, mistake or "any other reason that justifies relief." Rule 60(b)(6). The Debtor respectfully submits that the record does not support a finding that the bonus payments were obligatory (or "necessary"), and that the other arguments presented herein provide an ample basis for relief (and

10

for further proceedings) under the applicable rule and the Court's May 15 Order [Doc 541].

26. WL's asserted legal obligation to pay the bonuses (still not able to be determined by the record) is merely a threshold issue, not a dispositive one. The Court has also not previously had an opportunity to consider or evaluate whether such payments were ordinary and necessary to preserve the estate, within the meaning of Bankruptcy Code § 503(b)(1). There is no evidence to show what portion of the bonuses were attributable to the Hotel operations (notwithstanding the failure to make budget), no evidence to show that any bonused employees would have left WL's employ if bonuses had not been paid, and no evidence that any such employees, had they left, could not have been readily replaced without damage to the estate. WL has steadfastly failed and refused to provide the bonus program criteria, formula or applicable calculations.

27. Having disclosed for the first time in its May 5 Supplemental Reply that it paid the bonuses in March, WL readily consented to entry of an order that it was legally obligated to pay the bonuses [Doc 534, at p. 1]. But the Debtor does not believe that was what the Court intended when it invited such consent (at a time when it was misled about the payments). The Court was seeking a showing of legal obligation in order to be satisfied that if the bonuses had not been paid, and the claim were allowed, the bonuses would then actually be paid from the proceeds of any administrative expense claim. It appears therefore that by paying the bonuses in

secret in March, and then consenting to a finding of legal obligation, WL sought to evade proof of necessity.

## I. The Bonus Payments Do Not Qualify as Administrative Expenses

### A. The Bonus Payments Are Not Actual and Necessary Expenses of Preserving the Estate

28. Section 503(b)(1)(A) of the Bankruptcy Code mandates that an administrative expense be "the actual, necessary costs and expenses of preserving the estate." A claim cannot be "actual" unless a party has made the payment and subsequently seeks reimbursement from the debtor. *Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 839 (6th Cir. 2010). For reasons unknown, WL now states that it made the payments on March 13, but failed to inform the Court of this until May 5. But whether they were obligatory or not is critical to the question whether they preserved the estate. To be an actual and necessary expense to preserve the estate, "there must be some net benefit to the estate or a preservation of the status quo." *Matter of Plunkett*, 191 B.R. 768, 780 (Bankr. E.D. Wis. 1995), *subsequently aff'd*, 82 F.3d 738 (7th Cir. 1996).

29. The Debtor submits that where, as here, the bonuses were discretionary, they cannot be considered necessary. If the benefit is indirect, incidental or only tangential, such expense cannot qualify as an administrative expense. *In re Mandile*, 626 B.R. 915, 922 (Bankr. N.D. Ill. 2021). To qualify as an administrative expense claim under section 503 of the Bankruptcy Code, the payments must be "beneficial to the debtor-in-possession in the operation of the business." *Corporate Assets, Inc. v.*

12

*Paloian*, 368 F.3d 761, 773 (7th Cir. 2004) (quoting *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984)).

30. The employees who received bonuses were already compensated their obligated wages for their services. There is no evidence upon which the Court could conclude that the estate would be damaged (or not preserved) if discretionary bonus payments were not made. (*There is not even evidence that any such bonuses were earned* under the STI Plan, whether obligatory or discretionary). Furthermore, if WL is allowed an administrative expense claim for bonus payments that put the employees' total compensation above local market rates, it would harm the estate, especially if such employees could have been replaced by employees at market rates.

**B. WL Failed to Meet Its Burden of Proof**

31. WL has the burden to prove that it is entitled to the administrative expense claim. But WL has not presented evidence to meet its burden despite numerous opportunities. It has consistently failed and refused to disclose the formula or criteria for the bonuses. WL cannot hide behind a conclusory statement that it is a trade secret in order not to produce it. An administrative expense claimant must provide accurate documentation relating to the administrative expense claim in order to meet its burden of proof. *In re DeMert & Dougherty, Inc.*, 227 B.R. 508, 513 (Bankr. N.D. Ill. 1998). An administrative expense claimant must prove its entitlement by preponderance of the evidence. *In re Woodstock Assocs. I, Inc.*, 120 B.R. 436, 451 (Bankr. N.D. Ill. 1990). In addition, the bonus amount must be *reasonable* to qualify as an administrative expense claim. *In re Pre-Press Graphics Co., Inc.*, 287 B.R. 726,

13

731 (Bankr. N.D. Ill. 2003). This cannot be determined in the absence of the formula, criteria, and market information.

## Conclusion

WHEREFORE, for the reasons set forth herein, Debtor respectfully requests that the Court enter an order denying the 2d Bonus Motion, in the alternative scheduling further evidentiary proceedings, and granting such other and further relief as is just and appropriate.

Dated: May 29, 2025  **RICHMAN & RICHMAN LLC**
**Attorneys for Debtor**

By: */s/ Michael P. Richman*
Michael P. Richman
Claire Ann Richman
Eliza M. Reyes
122 West Washington Avenue, Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
MRichman@RandR.law
CRichman@RandR.law
EReyes@RandR.law