**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In re: | Chapter 11 |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Case No. 24-21743 |
| Debtor. | Honorable G. Michael Halfenger |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Computershare Trust Company, N.A. ("Computershare") and Wisconsin & Milwaukee Hotel Funding LLC ("Funding," and together with Computershare, "Lenders"), by their attorneys, Reinhart Boerner Van Deuren s.c., hereby move the Court pursuant to 11 U.S.C. § 362(d)(2) and Federal Rule of Bankruptcy Procedure 4001, for entry of an order lifting the automatic stay to allow Lenders to foreclose other interests in their collateral.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b) and 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

### BACKGROUND

2. Lenders filed proofs of claim in this case totaling more than $50 million. Their claims are more fully explained, and backed by supporting documentation, in Proof of Claim numbers 11 and 12, filed with the Court on June 20, 2024. Computershare exercised the § 1111(b) election by notice filed with the Court on April 7, 2025 (ECF # 489).

3.  On April 10, 2025, Debtor filed its *Amended Chapter 11 Plan of Reorganization* (ECF #504) (the "Amended Plan") and its accompanying *Amended Disclosure Statement for Chapter 11 Plan of Reorganization* (ECF #503) (the "Amended Disclosure Statement").

4.  The Court approved the Amended Disclosure Statement by order dated April 9, 2025 (ECF #495). The Court set a hearing on confirmation of the Amended Plan on July 21, 2025 (the "Confirmation Hearing").

**ARGUMENT**

5.  The Court "shall" grant relief from the automatic stay under § 362(d)(2) if the debtor does not have any equity in the property, and such property is not necessary for an effective reorganization. Lenders have the burden to show that Debtor has no equity in the property; Debtor bears the burden on all other issues. *See In re GAC Storage El Monte, LLC*, 489 B.R. 747, 771-72 (Bankr. N.D. Ill. 2013). The evidence to be presented at the Confirmation Hearing will show that both prerequisites for stay relief are satisfied here.

6.  Computershare and Debtor resolved Debtor's objection to Computershare's claim, leaving Computershare with an allowed secured claim of more than $45 million (net of the adequate protection payments received in this case).[1] There is no dispute about this.

7.  Lenders' appraisal shows that the collateral, the hotel and personal property located there (the "Collateral"), has a value of approximately $36.9 million. (Lenders' appraiser will offer testimony at the Confirmation Hearing.) Debtor disputes Lenders' valuation, and claims that the Collateral is worth only $22.5 million. Debtor's appraiser, on the other hand, believes the Collateral has a value of $24.5 million. But in any of these scenarios, Debtor has no equity in the property. There is no dispute about this either.

---

[1] The precise amount of Computershare's secured claim will be determined at or before the Confirmation Hearing.

8. Because it is undisputed that Computershare's claim exceeds the value of the Collateral, there is no dispute that Debtor lacks equity in the Collateral. The evidence will also show that the property is not necessary for an "effective" reorganization. To be effective, a plan must be confirmable. *See, e.g., GAC Storage,* 489 B.R. at 771. That is to say, Debtor cannot avoid stay relief merely by showing that the hotel is necessary for its reorganization effort, but rather must prove that the property is "essential for an effective reorganization *that is in prospect*." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988). This means that there must be a "reasonable possibility of a successful reorganization within a reasonable time." *Id.* (citing cases). *See also In re 8th Street Village Ltd. P'ship*, 94 B.R. 993, 996 (N.D. Ill. 1988) (noting use of words "effective" and "necessary" in § 362(d)(2) supports the analysis in *Timbers of Inwood Forest*). Debtor cannot meet its burden, which has increased during Debtor's year in chapter 11. *See, e.g., In re Kent Terminal Corp.*, 166 B.R. 555, 560-61 (Bankr. S.D.N.Y. 1994) ("To reflect the ongoing and cumulative costs of reorganization to secured creditors, a debtor's burden of exhibiting a reasonable probability of a successful reorganization increases as the case progresses.").

9. The evidence at the Confirmation Hearing will show that the Amended Plan cannot be confirmed, for a variety of reasons. And because Debtor has had more than one year to confirm a plan (by the Confirmation Hearing, nearly 16 months), and the Amended Plan's flaws cannot be fixed, Debtor cannot show there is a reasonable possibility of a successful reorganization within a reasonable time. *See, e.g., Timbers of Inwood Forest*, 484 U.S. at 376 ("The cases are numerous in which § 362(d)(2) relief has been provided within less than a year from the filing of the bankruptcy petition.") ("[E]ven within [Debtor's exclusive] period [to file a plan,] lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.")

(citing cases). *See also GAC Storage*, at 772-73 (lifting stay after denying confirmation of plan more than one year after petition date); *In re 4848, LLC*, 490 B.R. 343 (Bankr. E.D. Wis. 2013) (granting stay relief after four months, following determination that plan was not feasible); *In re Multiut Corp.*, 449 B.R. 323, 355 (Bankr. N.D. Ill. 2011) (denying confirmation and subsequently converting case after approximately two years); *In re Mayslake Village-Plainfield Campus, Inc.*, 441 B.R. 309, 324 (Bankr. N.D. Ill. 2010) (lifting stay after denying confirmation of plan more than one year after petition date). *Cf. In re Settler's Housing Service, Inc.*, 505 B.R. 483, 496 (Bankr. N.D. Ill. 2014) (finding plan not feasible six months after petition date but maintaining stay only to decide adversary proceeding against lender).

10. Stay relief is justified not only by the amount of time Debtor has enjoyed the benefits of chapter 11 (again, nearly 16 months by the Confirmation Hearing), and the number of opportunities Debtor has had to propose and confirm a plan (Debtor has already amended its plan, and extended exclusivity twice, most recently over Lenders' objection), and the fact that (the evidence will show) changes to the Amended Plan are unlikely to produce a confirmable plan, but also the slow progress and the harm that has occurred since Debtor elected to file for bankruptcy protection.

11. Fourteen months after filing its bankruptcy petition, Debtor still has not determined who will be managing the hotel going forward and on what terms. In February, Debtor finally (and definitively) declared that it would reject the White Lodging agreement. That proposal is a key component of the Amended Plan to this day, but Debtor announced just days ago that it may assume the White Lodging contract after all. What this would look like, considering the extensive, ongoing litigation between the parties, is anyone's guess.

12. Indeed, consider that the Debtor has been litigating with White Lodging in one form or another for at least one year (*see, e.g.,* ECF #178), and does not anticipate concluding its litigation before the Confirmation Hearing. The parties have litigated over the assumption or rejection of the management agreement, the budget, the amount of White Lodging's claims, an alleged administrative expense claim, and the Amended Plan.

13. Debtor also has not settled on the terms of a new or amended franchise agreement with Marriott International, or the extent of the anticipated performance improvement plan to remedy the lengthy delay in renovations at the hotel. The upshot of all this is that, if confirmation is denied and stay relief is not afforded immediately, it is reasonable to expect that there will be additional delays in an extended chapter 11 case. Compare the current state of affairs with Debtor's predictions of how quickly this case would proceed. *See, e.g.,* ECF #331.

14. Administrative expenses will continue to increase if stay relief is delayed. Professional fees in this case, not counting the impending surge leading to the Confirmation Hearing, likely exceed $1 million already.[2] Hundreds of thousands more are sure to be added by permitting another contested confirmation process, especially if Lenders were compelled to submit a competing plan. Then the parties could be confronted with simultaneous contested confirmation processes, each party objecting to the other's plan, submitting new expert reports, conducting new discovery, and so on. This case—these parties—cannot sustain the overwhelming burdens of "having another go."

15. The evidence will also show that the value of Lenders' Collateral decreased by over $2 million in the past year. More time in bankruptcy court may bring about further declines

---

[2] Lenders count documented professional fees of approximately $875,000 in this case to date, not including a recent month or more for some professionals.

in value; additional delays undertaking long overdue renovations at the hotel will cause further depreciation. If Debtor cannot propose a confirmable plan now, it is unlikely it will be able to do so with depreciating Collateral and increasing administrative expenses. *See, e.g., In re Henderson*, 395 B.R. 893, 899 (Bankr. D.S.C. 2008) (finding "cause" to grant relief from the automatic stay where the value of the secured creditor's collateral declined and the debt owed to it increased).

16. If the Court denies confirmation of the Amended Plan, it should immediately lift the automatic stay to allow Lenders to foreclose. "Chapter 11 provides a reasonable opportunity for corporate reorganization[;] it does not guarantee reorganization nor does it permit an indefinite suspension of creditors' rights and remedies pending the unsuccessful attempts of any party to effect a reorganization of debt." *In re Woodbrook Assocs.*, 19 F.3d 312, 322 (7th Cir. 1994) (citation omitted) (holding that bankruptcy court did not abuse its discretion in dismissing case after 10 months).

## REQUEST FOR HEARING

17. Lenders request a hearing on this Motion at the conclusion of the Confirmation Hearing in this case. By filing this Motion more than 30 days before the Confirmation Hearing, Lenders are affording Debtor ample time to respond so the Motion may be heard promptly following the Confirmation Hearing.

## REQUEST FOR RULE 4001(a)(4) RELIEF

18. Bankruptcy Rule 4001(a)(4) provides that, unless the court orders otherwise, an order granting relief from the automatic stay "is stayed for 14 days after it is entered." The purpose of the rule is to enable the debtor to seek a stay pending appeal of an adverse ruling,

53662696

6

Case 24-21743-gmh    Doc 577    Filed 06/05/25    Page 6 of 8

which minimizes the risk that the appeal will become moot if the creditor takes action that cannot be easily undone. *See, e.g., In re A Partners, LLC*, 344 B.R. 114, 128 (Bankr. E.D. Cal. 2006).

19. If the Court grants this motion, there is no risk that Lender's actions within the immediately following 14 days will render any appeal moot. Lender will have to file and serve a foreclosure complaint, and Debtor will have 20 days to respond under Wisconsin law and procedure. The case will proceed from there. Thus, the "timing and delay inherent in the State's statutory foreclosure scheme give the Debtor all of the protection intended by Rule 4001(a)(3) [now Rule 4001(a)(4)]. The additional 10 [now 14] days is unnecessary." *Id.* (waiving stay provision as long as foreclosure process could not be completed within statutory stay period).

20. The risks of further delay to Lenders, on the other hand, are real and quantifiable. Lenders will no longer receive adequate protection payments after the stay is lifted, and Debtor's obligations to Lenders will continue to grow quickly. Indeed, the interest accruing during a two-week period (without considering capitalization) will be more than $125,000, so Lenders need to proceed expeditiously with foreclosure. Every passing day will add approximately $10,000 to the debt, while Lenders continue to fund litigation with the Debtor, with no debt service to mitigate the cost. This, of course, after a harmful stay of collection efforts for more than 15 months.

21. Under these circumstances, a 14-day stay would not only be unnecessary for the Debtor, but prejudicial to the Lenders. The Court should order that no stay under Rule 4001(a)(4) will be imposed.

WHEREFORE, Lenders respectfully request that, if and when the Court denies confirmation of Debtor's Plan, the Court enter an order lifting the automatic stay to allow

Lenders to foreclose other interests in the Collateral, and waiving the 14-day stay otherwise imposed by Bankruptcy Rule 4001(a)(4).

DATED: June 5, 2025

COMPUTERSHARE TRUST COMPANY, N.A.
WISCONSIN & MILWAUKEE HOTEL FUNDING LLC

BY: */s/ Frank W. DiCastri*

Frank W. DiCastri
Sara C. McNamara
REINHART BOERNER VAN DEUREN s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202-3186
414-298-1000
fdicastri@reinhartlaw.com
smcnamara@reinhartlaw.com