## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

## NOTICE AND APPLICATION OF THE DEBTOR FOR
## AUTHORITY TO RETAIN AND EMPLOY
## SSG ADVISORS, LLC
## AS INVESTMENT BANKER

Wisconsin & Milwaukee Hotel LLC, ("**Debtor**" or "**WMH**"), by and through its counsel, Richman & Richman LLC, submits the Notice and Application of the Debtor to Employ SSG Advisors, LLC as Investment Banker ("**Application**") pursuant to Sections 327 and 328 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2014 of the United States Bankruptcy Court for the Eastern District of Wisconsin (the "**Local Rules**"), authorizing the Debtor to retain and employ SSG Advisors, LLC as its investment banker, effective as of June 18, 2025, the filing date of this Application ("**Effective Date**"). In support of the Application, the Debtor submits the Declaration of J. Scott Victor ("**Victor Declaration**") attached hereto as **Exhibit A** and incorporated herein.

## JURSIDCTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the district court's order of reference entered in the Eastern District of Wisconsin. As a matter concerning the administration of the bankruptcy estate, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 327 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014.

## BACKGROUND

2.      On April 9, 2024, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**"), commencing the above-captioned bankruptcy case [Doc 1] (the "**Chapter 11 Case**"). The Debtor is authorized to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

3.      The Debtor owns and operates the Milwaukee Marriott Downtown (the "**Hotel**"), a full-service, high-end hotel located in the heart of downtown Milwaukee.

## RELIEF REQUESTED

4.      The Debtor is in the process of amending its Amended Chapter 11 Plan of Reorganization [Doc 504] to provide, among other things, an equity rights offering. In order to do so, it requires the services of an experienced investment banker, and desires to hire SSG Advisors, LLC ("**SSG**") as its investment banker in this Chapter 11 Case. As set forth herein, SSG has considerable experience with structuring equity

2

rights offering transactions in chapter 11 cases, and is well qualified to serve as investment banker for the Debtor in this Chapter 11 Case.

5.    SSG is an independent boutique investment banking firm that assists middle market companies and their stakeholders in completing transactions involving special situations. SSG provides its clients with comprehensive investment banking services in the areas of mergers and acquisitions, private placements, financing restructurings, valuations, and litigation.

6.    SSG is an industry leader in providing services similar to those outlined in the Engagement Agreement to debtors, trustees, and other parties-in-interest involved with financial distressed companies both in and outside of bankruptcy. SSG has extensive experience with companies comparable to the Debtor in and out of bankruptcy. Since its founding in 2001, SSG has closed over 450 transactions for companies facing special situations.

## BASIS FOR RELIEF REQUESTED

7.    The Debtor seeks approval of the retention and employment of SSG under Section 327(a) of the Bankruptcy Code, which provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

8.    Additionally, the Debtors seek approval of the Engagement Agreement pursuant to section 328(a) of the Bankruptcy Code, which provides that a debtor, "with the court's approval, may employ or authorize the

3

employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingency fee basis." 11 U.S.C. § 328(a). Section 328(a) of the Bankruptcy Code permits compensation of professionals, such as financial advisors and investment bankers, on flexible terms that reflect the nature of their services and market conditions. *See Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum (In re Nat'l Gypsum Co.),* 123 F.3d 861, 862 (5th Cir. 1997) ("Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee)").

9.     Subject to the Court's approval of its retention, SSG, under the leadership of J. Scott Victor ("**Victor**"), in connection with the Debtor's reorganization efforts, will assist the Debtor in the structuring, preparation and implementation of an equity rights offering.

4

## SCOPE OF EMPLOYMENT

10. Local Rule 2014 requires that a retention application "include a specific recitation of the anticipated services to be rendered, together with the proposed method of calculating the compensation." Bankr. E.D. Wis. Local R. 2014(a).

11. Specifically, the professional services that the Debtor expects that SSG will provide in connection with the Chapter 11 Case are to assist in structuring, preparing and implementing an equity rights offering involving existing equity holders and general unsecured creditors.

## COMPENSATION

12. SSG will seek Court approval of its compensation and reimbursement of its actual, necessary, and reasonable expenses upon the filing of applications for compensation pursuant to Sections 330 and 331 of the Bankruptcy Code.

13. As compensation for providing the services discussed herein, SSG shall receive the following compensation:

- Initial Fee. An initial fee (the "Initial Fee") equal to $30,000, payable upon Bankruptcy Court approval of this Engagement Agreement.

- Monthly Fees. Monthly fees (the "Monthly Fees") of $30,000 per month payable beginning July 15, 2025 and on the fifteenth (15th) of each month thereafter throughout the Engagement Term (as such term is hereafter defined).

- Transaction Fee. Upon the consummation of an Offering, SSG shall be entitled to a fee (the "Transaction Fee"), payable in cash, in federal funds via wire transfer or certified check, prior in right to any pre- and post-petition secured debt, equal to the greater of (a) $300,000; or (b)

5

five percent (5.0%) of new value raised through a rights offering, and capped at $400,000.

The Transaction Fee shall be reduced by 50% of the Initial Fee and the Monthly Fees paid.

- In addition to the foregoing Initial Fee, Monthly Fee and Transaction Fee noted above whether or not an Offering is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses incurred in connection with services provided to the Debtor pursuant to its engagement, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered by SSG, including, but not limited to, photocopies, postage, mileage (charged at the IRS rate in effect on the date of travel), and any other incidental costs advanced by SSG specifically for these matters, at the rates commonly charged for such costs to other SSG clients.

14. SSG is not seeking hourly compensation for rendering services on behalf of the Debtor. However, SSG will maintain reasonably detailed records of time spent in .5/hr increments and of any actual and necessary out-of-pocket expenses incurred in connection with its employment.

15. The Engagement Letter retaining SSG specifically anticipates that SSG would be employed under sections 327 and 328 of the Bankruptcy Code and that SSG's fees and expenses are subject to approval of the Bankruptcy Court. Accordingly, the Debtor believes that employment of SSG under the terms of the Engagement Letter will provide a material benefit to the Debtor and is in the best interests of the Debtor's estate.

16. For the avoidance of doubt, SSG requests payment of its Initial Fee and Monthly Fees without further order of this Court.

## DISINTERESTEDNESS

17.     Bankruptcy Rule 2014(a) requires an applicant seeking an order approving employment to disclose, to the best of the applicant's knowledge, all connections with the debtor, the debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed by the United States Trustee.

18.     To the best of the Debtor's knowledge, SSG has no connection with the Debtor, the Debtor's creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee or any person employed by the United States Trustee, except as may be expressly set forth herein or in the Victor Declaration.

## NOTICE

19.     Pursuant to Local Rule 2014, notice of this Application shall be served upon the following or their respective counsel, (a) the United States Trustee for the Eastern District of Wisconsin; (b) Computershare Trust Company, N.A., the Debtor's primary secured lender; and (c) any other persons or parties designated by the Court.

20.     The Debtor asserts that notice has been provided to all required parties through the filing of this application via the Court's CM/ECF system, and requests that if no objection or request for hearing is filed within **14 days of the filing of this Application**, that the Court grant the relief requested.

7

21.    Subject to this Court's approval of this application, SSG has indicated that it is willing to serve as the Debtor's investment banker in this Chapter 11 Case, and perform the services described herein.

WHEREFORE, Wisconsin & Milwaukee Hotel, LLC respectfully requests the entry of an order (a) granting this Application; (b) authorizing it to retain and employ SSG Advisors, LLC as its investment banker in this Chapter 11 Case effective as of June 18, 2025; and (c) granting such other and further relief as this Court may deem just and proper.

Dated: June 18, 2025.

**RICHMAN & RICHMAN LLC**
**Attorneys for Wisconsin &**
**Milwaukee Hotel LLC**

By:

/s/ *Michael P. Richman*

Michael P. Richman
Claire Ann Richman
Eliza M. Reyes
122 West Washington Avenue,
Suite 850
Madison, WI 53703
Tel: (608) 630-8990
Fax: (608) 630-8991
mrichman@RandR.law
crichman@RandR.law
ereyes@RandR.law

8

# EXHIBIT A

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh
Chapter 11

## DECLARATION OF J. SCOTT VICTOR IN SUPPORT OF NOTICE AND APPLICATION OF THE DEBTOR FOR AUTHORITY TO RETAIN AND EMPLOY SSG ADVISORS, LLC AS INVESTMENT BANKER

I, J. Scott Victor, hereby declare as follows:

1.      I am a Founding Partner and Managing Director of SSG Capital Advisors, LLC. I submit this declaration pursuant to Fed. R. Bankr. P. 2014(a) in support of the Notice and Application of the Debtor for Authority to Retain and Employ SSG Advisors, LLC as Investment Banker (the "**Application**"), of Wisconsin & Milwaukee Hotel LLC, the debtor herein ("**Debtor**" or "**WMH**"). I have over 40 years of experience in restructuring.

2.      SSG Advisors, LLC ("**SSG**") is a nationally recognized boutique investment banking firm that provides comprehensive advisory services to its clients in the areas of mergers and acquisitions, financial advisory, capital raising, financial restructurings, and valuations. SSG has its office at 300 Barr Harbor Drive, Suite 420, West Conshohocken, Pennsylvania, 19428. Since its founding in 2001, SSG has closed over 450 transactions for companies facing special situations.

3. Unless otherwise stated, the facts set forth herein are based on my personal knowledge, upon records maintained by SSG in the ordinary course of business, and which have been reviewed by me or other SSG employees at my direction, or upon information provided to me by other SSG employees. To the extent any information disclosed in this declaration requires amendment or modification as additional information becomes available, a supplemental declaration will be submitted to the court.

### The Debtor's Retention of SSG

4. Subject to the approval of the Application, the Debtor retained SSG on June 18, 2025, as memorialized by the proposed Engagement Agreement Dated June 18, 2025 ("**Engagement Agreement**"). A true and correct copy of the Engagement Agreement is attached hereto and incorporated herein as **Exhibit I**.

5. The Debtor desires to retain and employ SSG to provide investment banking services to the Debtor in connection with the Debtor's pending chapter 11 case (the "**Chapter 11 Case**"). Specifically, the professional services that the Debtor expects that SSG will provide in connection with the Chapter 11 Case are to assist in the structuring, preparation and implementation of an equity rights offering (the "**Offering**"), to be made as part of the Debtor's chapter 11 plan, involving existing equity holders and general unsecured creditors.

2

## SSG is a Disinterested Person
## Pursuant to 11 U.S.C. § 101(14)

6. To the best of my knowledge, information, and belief, SSG, including all members and staff thereof, is a disinterested person within the meaning of 11 U.S.C. § 101(14) and is eligible to serve as investment banker for the Debtors pursuant to 11 U.S.C. § 327.

7. As far as I have been able to ascertain, other than as may be disclosed in this Declaration, SSG does not have connections with the Debtor, its creditors, or any other party in interest in this Case, or the United States Trustee or any person employed in the Office of the United States Trustee.

8. SSG employees, under my supervision, conducted a search of SSG's database for each of the following entities (collectively, the "**Search Parties**").

- the Debtor;

- the Debtor's equity holders;

- the Debtor's management;

- the Debtor's secured and unsecured creditors; and

- other parties in interest.

9. After reviewing the conflicts search, I have determined that neither SSG, its partners, associates, nor I (a) hold or represent any interest adverse to the Debtor or its estate, its creditors or equity holders; or (b) represent any other entity having an interest adverse to the Debtor in connection with this Chapter 11 Case. SSG has worked with Richman & Richman, LLC, Debtor's counsel, in other unrelated matters.

3

10. In addition, to the best of my knowledge, information, and belief, and in accordance with Bankruptcy Rule 5002, neither I, nor any member or employee of SSG is a relative of any of the United States Bankruptcy Judges who may be assigned to this Chapter 11 Case, and SSG does not have a connection with any of the United States Bankruptcy Judges who would render SSG's retention in this Case improper.

11. Based upon my review as of this date, I have determined that SSG does not represent any party who has a material adverse interest with respect to the Debtor.

12. In sum, I believe SSG: (a) does not hold or represent any interest adverse to the Debtor in connection with the matters for which SSG will be engaged; and (b) is disinterested.

### SSG's Professional Compensation

13. SSG will seek Court approval of its compensation and reimbursement of its actual, necessary, and reasonable expenses upon the filing of applications for compensation pursuant to Sections 330 and 331 of the Bankruptcy Code.

14. As compensation for providing the services discussed herein, SSG shall receive the following compensation:

- Initial Fee. An initial fee (the "**Initial Fee**") equal to $30,000, payable upon Bankruptcy Court approval of this Engagement Agreement.

- Monthly Fees. Monthly fees (the "**Monthly Fees**") of $30,000 per month payable beginning July 15, 2025 and on the fifteenth (15th) of each month thereafter throughout the Engagement Term (as such term is hereafter defined).

- Transaction Fee. Upon the consummation of an Offering, SSG shall be entitled to a fee (the "**Transaction Fee**"), payable in cash, in federal

4

funds via wire transfer or certified check, prior in right to any pre- and post-petition secured debt, equal to the greater of (a) $300,000; or (b) five percent (5.0%) of new value raised through the Offering.

The Transaction Fee shall be reduced by 50% of the Initial Fee and the Monthly Fees paid. The Transaction Fee shall be capped at $400,000.

- In addition to the foregoing Initial Fee, Monthly Fee and Transaction Fee noted above whether or not an Offering is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses incurred in connection with services provided to the Debtor pursuant to its engagement, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered by SSG, including, but not limited to, photocopies, postage, mileage (charged at the IRS rate in effect on the date of travel), and any other incidental costs advanced by SSG specifically for these matters, at the rates commonly charged for such costs to other SSG clients.

15. SSG is not seeking hourly compensation for rendering services on behalf of the Debtor. However, SSG will maintain reasonably detailed records of time spent in .5/hr increments and of any actual and necessary out-of-pocket expenses incurred in connection with its employment.

16. The Engagement Letter retaining SSG specifically anticipates that SSG would be employed under sections 327 and 328 of the Bankruptcy Code and that SSG's fees and expenses are subject to approval of the Bankruptcy Court. Accordingly, the Debtor believes that employment of SSG under the terms of the Engagement Letter will provide a material benefit to the Debtor and is in the best interests of the Debtor's estate.

17. SSG has not shared or agreed to share any compensation received in connection with this proceeding with any entity other than its members, or associates in accordance with 11 U.S.C. § 504(b).

5

**Certification**

I declare under penalty of perjury under the laws of the United States that, based upon my knowledge, information and belief as set forth in this Declaration, the foregoing is true and correct to the best of my knowledge.

Executed in West Conshocken, Pennsylvania this 18th day of June, 2025.

_____
J. Scott Victor

# EXHIBIT I



June 18, 2025

Mr. Mark Flaherty
Managing Member
Jackson Street Management LLC
Wisconsin & Milwaukee Hotel LLC
Milwaukee, Wisconsin 53202

Dear Mr. Flaherty:

This agreement ("Engagement Agreement") will serve as the contract between Wisconsin & Milwaukee Hotel LLC (collectively "WMH" or the "Company"), as debtor and debtor-in-possession in a Chapter 11 Bankruptcy proceeding Bankruptcy Case No. 24-21743-gmh pending in the U.S. Bankruptcy Court for the Eastern District of Wisconsin ("Bankruptcy Court"), and SSG Advisors, LLC ("SSG") regarding the retention of SSG as exclusive investment banker to Debtor for the purposes outlined in this Engagement Agreement. SSG's responsibilities hereunder involve providing investment banking services to the Company, on an exclusive basis, focusing on an equity rights offering (the "Offering").

A.   **SSG's Role:**

      SSG shall assist the Company in the structuring, preparation and implementation of an equity rights offering, as part of the Company's chapter 11 plan of reorganization, involving existing equity holders and general unsecured creditors.

In performing the services described above, the Company will furnish or cause to be furnished to SSG such information as SSG reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). The Company represents to SSG that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration of SSG's engagement hereunder, it will advise SSG promptly of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects. The Company recognizes and confirms that SSG: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of the Company. For the purposes of this Engagement Agreement, "known to," "to the knowledge of" or similar phrases means the actual knowledge, after due inquiry, of the executive officers of the Debtor.

The Company agrees that SSG shall be its exclusive investment banker in connection with the Offering with respect to the Company during the Engagement Term, as defined below, of this Engagement Agreement. The Company agrees that, during the Engagement Term, SSG shall assist and advise the Company in the

300 Barr Harbor Drive, Suite 420 • West Conshohocken, PA 19428
Phone: (610) 940-1094 • Fax: (610) 940-4719
www.ssgca.com
Case 24-21743-gmh    Doc 597    Filed 06/18/25    Page 17 of 21

structuring, preparation and implementation of the Offering, including in any negotiations with prospective investors.

SSG will consult with and advise the Company with respect to the financial aspects of any proposed Offering, including price, terms, and conditions. SSG will not, however, have any authority to bind the Company with respect to any proposed Offering. Likewise, nothing contained herein shall require the Company to accept the terms of any Offering and the Company shall at all times have the right in its sole and absolute discretion to reject any proposed Offering regardless of the terms proposed.

B. **SSG's Compensation**

As compensation for providing the foregoing services, SSG shall receive the following:

1.  Initial Fee. An initial fee (the "Initial Fee") equal to $30,000, payable upon Bankruptcy Court approval of this Engagement Agreement.

2.  Monthly Fees. Monthly fees (the "Monthly Fees") of $30,000 per month payable beginning July 15, 2025 and on the fifteenth (15th) of each month thereafter throughout the Engagement Term (as such term is hereafter defined).

3.  Transaction Fee. Upon the consummation of the Offering, SSG shall be entitled to a fee (the "Transaction Fee"), payable in cash, in federal funds via wire transfer or certified check, prior in right to any pre- and post-petition secured debt, equal to the greater of (a) $300,000; or (b) five percent (5.0%) of new value raised through a rights offering, and capped at $400,000.

    The Transaction Fee shall be reduced by 50% of the Monthly Fees paid, including the Initial Fee.

4.  In addition to the foregoing Initial Fee, Monthly Fee and Transaction Fee noted above, whether or not a Transaction is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable and documented out-of-pocket expenses incurred in connection with the subject matter of this Engagement Agreement.

C. **Term of Engagement**

This Engagement Agreement shall remain in force (the "Engagement Term") for a period of four (4) months from the date of signing this Engagement Agreement and may be extended thereafter upon prior written consent of the parties. This Engagement Agreement shall automatically terminate immediately upon the closing of an Offering. Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that: (a) termination of the Engagement Agreement shall not affect SSG's right to indemnification under the Indemnification paragraph below; and (b) the Company shall remain obligated to pay SSG any unpaid Monthly Fees and to reimburse SSG for any expenses incurred through the date of the termination of the Engagement Agreement.

D. **Indemnification**

The Company hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

E. **Miscellaneous**

No fee payable to any other financial advisor or finder by the Company in connection with the subject matter of this Engagement Agreement shall reduce or otherwise affect any fee payable to SSG hereunder. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto. This Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

F. **Scope of Duties**

The Company hereby acknowledges and agrees that: (a) it has retained SSG for the purposes set forth in the Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature, and (b) SSG has not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Offering or as to the economic, financial or other results which may be obtained or experienced by the Company as a result thereof.

G. **Bankruptcy Court Proceedings**

This Engagement Agreement shall be subject to approval by the Bankruptcy Court in the Chapter 11 Bankruptcy proceeding as part of SSG's Retention.

H. **Other Matters**

SSG has the right, following the conclusion of an Offering, to place advertisements in financial and other newspapers and journals and to send email advertising at its own expense describing its services to the Company hereunder.

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), SSG is required to obtain, verify and record information that identifies its clients, which information may include the name and address of the Company, and its senior management team as well as other information that will allow SSG to properly identify its clients. Additionally, SSG maintains important disclosures on its web site www.ssgca.com. These disclosures may be updated periodically on an as-needed basis. The Company agrees to

accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting SSG directly at (610) 940-1094.

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

I. **Securities Platform**

All transactions involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through SSG Capital Advisors, LLC. ("SCA") which is an affiliated registered Broker-Dealer in good standing with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). Principals of SSG are registered representatives of SCA. Therefore, SCA is included collectively as "SSG" with all the rights and obligations thereto under the terms of this Engagement Agreement.

To the extent a Transaction Fee is payable to SSG in connection with a Transaction constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Transaction Fee (excluding the Initial Fee and Monthly Fees) shall be specifically paid to SCA.

**SSG ADVISORS, LLC**

By: _____
J. Scott Victor
Managing Director

ACCEPTED:

**WISCONSIN & MILWAUKEE HOTEL LLC**

By: _____        _____
Mark Flaherty                                                      Date
Managing Member
Jackson Street Management LLC
Wisconsin & Milwaukee Hotel LLC

**ATTACHMENT A**
**INDEMNIFICATION PROVISIONS**

The Company agrees to indemnify, defend and hold harmless SSG or SCA, and their affiliates, the respective partners, members, directors, officers, agents and employees of SSG, SCA, and their affiliates and each other person, if any, controlling SSG, SCA, and their affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to SSG acting for the Company under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with:  (a) any act or omission by SSG related to its engagement as financial advisor under the Engagement Agreement; or (b) SSG's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement.  The Company will reimburse the Indemnified Parties for any legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted primarily from SSG's gross negligence or willful misconduct in the performance of its duties under said Engagement Agreement.  The Company agrees that reliance by SSG on any publicly-available information, the information supplied by the Company to SSG in connection with said Engagement Agreement or any directions furnished by the Company shall not constitute negligence, bad faith or willful misconduct by SSG.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement and shall be subject to Bankruptcy Court approval.