UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | Chapter 11 |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Case No. 24-21743 |
| Debtor. | Honorable G. Michael Halfenger |

---

**LENDERS' OBJECTION TO: (I) DEBTOR'S APPLICATION
TO RETAIN AND EMPLOY SSG ADVISORS, LLC
AS INVESTMENT BANKER; AND (II) SUPPLEMENTAL WITNESS LIST**

---

Computershare Trust Company, N.A. ("Computershare") and Wisconsin & Milwaukee Hotel Funding LLC ("Funding" and together with Computershare, "Lenders") hereby object to Debtor's *Application for Authority to Retain and Employ SSG Advisors, LLC as Investment Banker* (ECF #597) (the "Application") and Debtor's corresponding *Supplemental Witness List* (ECF #598) (the "Supplemental Witness List").

## **OBJECTION**

The Application demonstrates that Debtor is planning to amend its *Amended Chapter 11 Plan of Reorganization* (the "Amended Plan"), less than one month before the confirmation hearing, by providing for a rights offering involving existing equity holders ("Existing Equity") and Debtor's general unsecured creditors (the "Rights Offering"). The retention and employment of SSG Advisors ("SSG") is a means to that end, and Debtor claims that the engagement "will provide a material benefit to the Debtor and is in the best interests of the Debtor's estate." App. at 6, ¶ 15. But what is really happening here, and how it might affect creditors and parties-in-interest, is unknown—part of an emerging pattern and practice by Debtor

54098705v2

of dribbling out bits of information at the eleventh hour, without providing the entire story, and with very little time to respond.

Debtor's counsel has informed Lenders that he believes the Rights Offering will resolve Funding's objection to the Amended Plan on absolute priority grounds. The Court will recall that Funding objects to Existing Equity's retention of their interests (as proposed in the Amended Plan), despite a proposed $5 million contribution to fund renovations at the Hotel (the "Proposed Contribution"), because the Proposed Contribution is not being market-tested as required by *Bank of America Nat. Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999), and *In re Castleton Plaza, LP*, 707 F.3d 821, 821 (7th Cir. 2013).

The full terms and conditions of the Rights Offering are not yet known, and Lenders reserve their rights to object to them once revealed, but Debtor's counsel did disclose a critical detail about the Rights Offering already: Existing Equity would maintain voting control. Lenders object to the Application and the Supplemental Witness List because Debtor cannot demonstrate either that hiring SSG will materially benefit the Debtor, or is in the best interests of Debtor's estate.[1] Put simply, a Rights Offering by which Existing Equity maintains voting control cannot resolve Funding's absolute priority objection because voting rights will not be market-tested as required by the United States Supreme Court and the Court of Appeals for the Seventh Circuit.

Debtor's proposal to allow unsecured creditors to bid for exit stock in the reorganized Debtor, (to be "backstopped" by Existing Equity), is not a true market test unless voting rights are also in play. Otherwise, creditors are merely competing for the right to become passive

---

[1] Of course, SSG cannot be compensated unless its services are reasonably likely to benefit Debtor's estate and necessary to the administration of the case. *See* 11 U.S.C. § 330(a)(4).

investors in a reorganized Debtor, controlled by the very people who brought the Debtor to where it is today. This approach suppresses the new value Debtor will no doubt promote, because equity without voting rights is inherently less valuable than equity with voting rights. By proposing to engage SSG and conduct a Rights Offering where Existing Equity has the exclusive right to maintain voting control, Debtor does not propose a real auction, but only the form of one. It demonstrates that the Rights Offering is not designed to maximize benefits to the estate, but rather to ensure that Existing Equity stays in power.

As Lenders have previously noted, administrative expenses in this case have likely already reached the $1 million mark. Adding an investment banker at the last minute, whose job is to conduct a Rights Offering that will not resolve the problem it is designed to address, would be a waste of time and resources. Under the circumstances, there is good reason to scrutinize the basis for SSG's employment more closely than might have been appropriate at the beginning of this case.

Consider, too, that Computershare made the § 1111(b) election many months ago, and thereby gave up its right to participate in any plan as an unsecured creditor. By proposing a Rights Offering at this late stage, in which only unsecured creditors and Existing Equity can participate, Debtor has wrongfully denied Computershare the opportunity to participate in the Rights Offering. Computershare reserved its rights to withdraw the § 1111(b) election when made, and reiterates its reservation of rights here.

Lenders also object to the Application because Debtor proposes to pay a Transaction Fee to SSG that is "prior in right to any pre- and post-petition secured debt." App. at 5, ¶ 13. It is unclear what this means, but it sounds like a carve-out to which Lenders never agreed. If engaged, SSG should be an administrative creditor like any other—one that is subject to the

3
54098705v2
Case 24-21743-gmh    Doc 599    Filed 06/20/25    Page 3 of 5

rights of existing secured creditors, whatever they may be at the time the Transaction Fee is paid.[2]

Lastly, Lenders object to Debtor's Supplemental Witness List, which for the first time identifies J. Scott Victor of SSG as a witness to provide testimony about the Rights Offering. The deadline to file witness lists was June 6, 2025, and the Court's April 9, 2025, *Order Approving Amended Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan* (ECF #495) provides that "[t]he failure to identify a witness will result in exclusion of the witness, except upon a showing that the failure was substantially justified or harmless."[3] Rather than raise this issue at the confirmation hearing, or in a separate motion in limine, Lenders object to the Application and the Supplemental Witness List on grounds that Debtor has not made a showing that its failure to list SSG as a witness was substantially justified or harmless.

The confirmation hearing is approximately one month away, and apparently Debtor does not plan to reveal the details of its Rights Offering until it amends the Amended Plan on June 27. Making matters worse, Debtor filed the Application on 14 days' notice, which means that objections are not due until July 2, and the Court's hearing and decision on the Application may not occur until later in July. That leaves very little, if any, time to conduct a deposition of SSG, particularly with the intervening holiday and the parties' current slate of depositions.

---

[2] The conditions for payment of the Transaction Fee also stand to be improved. The fee is payable upon "consummation of an Offering," which is defined as "the structuring, preparation and implementation of an equity rights offering." It would be helpful to know precisely what SSG needs to do to earn the Transaction Fee.

[3] Even though the April 9 order was subsequently modified twice, each of the subsequent orders clarifies that the prior order remains in full force and effect, except to the extent modified.

WHEREFORE, Lenders respectfully request that the Court enter an order denying the Application, and excluding Mr. Victor as a witness.

DATED: June 20, 2025

    COMPUTERSHARE TRUST COMPANY, N.A.
    WISCONSIN & MILWAUKEE HOTEL FUNDING LLC

    BY: */s/ Frank W. DiCastri*

    Frank W. DiCastri
    Sara C. McNamara
    REINHART BOERNER VAN DEUREN s.c.
    1000 North Water Street, Suite 1700
    Milwaukee, WI 53202-3186
    414-298-1000
    fdicastri@reinhartlaw.com
    smcnamara@reinhartlaw.com