# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Chapter 11 |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Case No. 24-21743 |
| Debtor. | Honorable G. Michael Halfenger |

## LENDERS' OBJECTION TO DEBTOR'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF MUCH SHELIST, P.C. AS SPECIAL COUNSEL FOR A SPECIFIC PURPOSE

Computershare Trust Company, N.A. ("Computershare") and Wisconsin & Milwaukee Hotel Funding LLC ("Funding" and together with Computershare, "Lenders") hereby object to Debtor's *Application for Order Authorizing the Retention and Employment of Much Shelist, P.C. as Special Counsel for a Specific Purpose* (ECF #605) (the "Application").

## **OBJECTION**

The Application comes on the heels of a similar application—subsequently withdrawn—to employ SSG Advisors as an investment banker to run a rights offering process. It demonstrates that Debtor is still planning to amend its *Amended Chapter 11 Plan of Reorganization* (the "Amended Plan"), less than one month before the confirmation hearing, by providing for a rights offering involving existing equity holders ("Existing Equity") and Debtor's general unsecured creditors (the "Rights Offering").

This time, Debtor reveals that the Rights Offering will include:

- Conversion of existing equity interests into new "Class A" membership interests;
- A $6 million equity rights offering to holders of general unsecured claims for the issuance of new "Class B" membership interests; and
- A backstop commitment by Existing Equity for any unsubscribed Class B membership interests.

54118986

Although Debtor does not mention it, Lenders assume that the proposed new "Class A" membership interests include all of Existing Equity's voting rights. "Class B," the only option for unsecured creditors, presumably does not include voting rights. Clarification on this point would be helpful.

Debtor believes the Rights Offering will resolve Funding's objection to the Amended Plan on absolute priority grounds. The Court will recall that Funding objects to Existing Equity's retention of their interests (as proposed in the Amended Plan), despite a proposed $5 million contribution to fund renovations at the Hotel (the "Proposed Contribution"), because the Proposed Contribution is not being market-tested as required by *Bank of America Nat. Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999), and *In re Castleton Plaza, LP*, 707 F.3d 821, 821 (7th Cir. 2013). It is not clear whether the $5 million Proposed Contribution will be made *in addition to* the $6 million Rights Offering backstop, or if the backstop is intended to supplant the Proposed Contribution. (Counsel for Debtor informed counsel for Lenders that the Proposed Contribution would now be treated as a loan.) As the full terms and conditions of the Rights Offering are not yet known, Lenders reserve their rights to object to them, and all other amendments to the Amended Plan, once revealed.

At this point, Lenders object to the Application because Debtor cannot demonstrate that hiring Counsel either will materially benefit the Debtor, or is in the best interests of Debtor's estate.[1] Put simply, a Rights Offering by which Existing Equity maintains voting control cannot resolve Funding's absolute priority objection because voting rights will not be market-tested as required by the United States Supreme Court and the Court of Appeals for the Seventh Circuit.

---

[1] Of course, Counsel cannot be compensated unless its services are reasonably likely to benefit Debtor's estate and necessary to the administration of the case. *See* 11 U.S.C. § 330(a)(4).

Debtor's proposal to allow unsecured creditors to bid for exit stock in the reorganized Debtor is not a true market test unless all rights afforded to Existing Equity, including voting rights, are in play. Otherwise, creditors are merely competing for the right to become ("Class B") passive investors in a reorganized Debtor, controlled by the very people ("Class A") who brought the Debtor to where it is today. This approach suppresses the new value Debtor touts, because equity without voting rights is inherently less valuable than equity with voting rights. By proposing to engage Counsel and conduct a Rights Offering where Existing Equity has the exclusive right to maintain voting control, Debtor does not propose a real auction, but only the form of one. It demonstrates that the Rights Offering is not designed to maximize benefits to the estate, but rather to ensure that Existing Equity stays in power.

Administrative expenses in this case now total approximately $1.2 million. Adding another law firm at the last minute, this one charging nearly $1,000 per hour, whose job is to conduct a Rights Offering that will not resolve the problem it is designed to address, would be a waste of time and resources. Under the circumstances, there is good reason to scrutinize the basis for Counsel's employment more closely than might have been appropriate at the beginning of this case.

Consider, too, that Computershare made the § 1111(b) election many months ago, and thereby gave up its right to participate in any plan as an unsecured creditor. By proposing a Rights Offering at this late stage, in which only unsecured creditors and Existing Equity can participate, Debtor has wrongfully denied Computershare the opportunity to participate in the Rights Offering. Computershare reserved its rights to withdraw the § 1111(b) election when made, and reiterates its reservation of rights here. Lenders further reserve their rights to depose any witness who will offer testimony about the Rights Offering; Debtor does not disclose who

that might be, and Debtor's witness list does not reveal the Rights Offering as a subject of testimony to be offered at trial.

The confirmation hearing is less than one month away, yet Debtor now reveals that the details of its Rights Offering will not be provided until July 3, 2025 (the deadline for plan "supplements"), leaving very little time, if any, to conduct depositions of the witnesses who will offer testimony about it, and no time to challenge with expert testimony or report Debtor's claim that the value of the equity being retained is "reasonably equivalent" to Existing Equity's backstop. App. at 3, ¶ 6.[2] This evidence could be critical to determining whether the backstop qualifies for a "new value" exception in the first instance. Lenders reserve their rights to object to any such testimony or to offer opposing views.

WHEREFORE, Lenders respectfully request that the Court enter an order denying the Application.

DATED: June 26, 2025

        COMPUTERSHARE TRUST COMPANY, N.A.
        WISCONSIN & MILWAUKEE HOTEL FUNDING LLC

        BY: */s/ Frank W. DiCastri*

        Frank W. DiCastri
        Sara C. McNamara
        REINHART BOERNER VAN DEUREN s.c.
        1000 North Water Street, Suite 1700
        Milwaukee, WI 53202-3186
        414-298-1000
        fdicastri@reinhartlaw.com
        smcnamara@reinhartlaw.com

---

[2] The parties currently have depositions scheduled for July 7, 9, 10, 11, 14, 15, and 16, with still others to be potentially scheduled.