**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

| | |
|---|---|
| In re: | Case No. 24-21743-gmh |
| WISCONSIN & MILWAUKEE HOTEL LLC, | Chapter 11 |
| Debtor. | Honorable G. Michael Halfenger |

---

**MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF
ATTORNEY DAVID T. BROWN AND INTEREST RATE TESTIMONY OF
DEBORAH S. FRIEDLAND**

---

Computershare Trust Company, N.A. ("Computershare") and Wisconsin & Milwaukee Hotel Funding LLC ("Funding" and together with Computershare, "Lenders"), by their attorneys, Reinhart Boerner Van Deuren s.c., hereby move the Court to (a) exclude testimony from Attorney David T. Brown and (b) exclude interest rate testimony from Deborah S. Friedland, in each case at the hearing beginning July 21, 2025 (the "Confirmation Hearing") regarding confirmation of the *Second Amended Chapter 11 Plan of Reorganization of Wisconsin & Milwaukee Hotel LLC Dated June 27, 2025* [Dkt. 621] (as amended, the "Plan").

### BACKGROUND

**A. General Background.**

On April 9, 2025, following a hearing on April 7, 2025, the Court entered an order setting certain deadlines in advance of the Confirmation Hearing (the "April 9 Order") [Dkt. No. 495]. Among other things, the April 9 Order provided that:

> On or before **May 28, 2025**, the debtor and each party who is objecting to confirmation of the chapter 11 plan must file a list of witnesses that the parties intend to call at trial. *The list must include a summary of the testimony each witness will provide at the trial (including for any witness expected to present evidence under Federal Rule of Evidence 702, 703, or 705, the subject matter on which the witness is expected to present that evidence, and a summary of the facts and opinions to which the witness is expected to testify)*. The debtor and each party who

is objecting to confirmation must also provide any expert reports to the opposing party by **May 28, 2025**.

April 9 Order, p. 2-3 (emphasis added).

The April 9 Order also provided that "[t]he failure to identify a witness will result in exclusion of the witness, except upon a showing that the failure was substantially justified or harmless" and that "[a]ny failure to fully comply with all provisions of this order may result in the court taking adverse action against the non-compliant party without further notice or a hearing." April 9 Order, p. 3.

On May 29, 2025, following correspondence from the parties, the Court entered an order (the "May 29 Order") [Dkt. No. 562] modifying the April 9 Order to extend the deadline to identify witnesses and serve expert reports to June 6, 2025 (the "Witness List Deadline"). The May 29 Order also set a deadline of June 20, 2025 to serve expert rebuttal reports (which was extended by agreement of the parties to July 3, 2025, for the rebuttal reports of non-appraisal experts), and provided that "[p]arties who did not serve an expert report may not serve or otherwise use any rebuttal reports."[1] May 29 Order, p. 2. The April 9 Order remained in full force and effect except to the extent modified by the May 29 Order. *Id.*

On June 6, 2025, Debtor, Lenders and other parties-in-interest filed Witness Lists identifying witnesses that may testify at the Confirmation Hearing (each, a "Witness List") [Dkt. Nos. 576, 585, 586 and 588].

**B. Attorney David T. Brown.**

Neither Debtor nor any other party disclosed Attorney David T. Brown ("Attorney Brown") as a potential witness in the Witness Lists filed on June 6.

---

[1] This language was specifically requested by Debtor following its dispute with White Lodging over expert testimony to support White Lodging's claims in this case. In that dispute, it appears that White Lodging did not file an initial expert report, but offered expert testimony for the first time in a rebuttal report. More on this below.

On June 24, 2025, Debtor filed a *Notice and Application for Order Authorizing the Retention and Employment of Much Shelist, P.C. as Special Counsel for a Specific Purpose* and a *Declaration of Attorney Brown* in support thereof (the "Much Shelist Application") [Dkt. 605]. The Much Shelist Application indicated that Debtor was seeking to employ Much Shelist, P.C., and specifically Attorney Brown, to help address Funding's absolute priority objection to the Plan (which was filed over one month earlier, on May 21, 2025). Lenders objected to the Much Shelist Application and the Court has set a hearing on July 17, 2025, to consider Lenders' objection.

On July 1, 2025, nearly one month after the Witness List Deadline, and one week after filing the Much Shelist Application, Debtor filed a Supplemental Witness List [Dkt. No. 624] identifying Attorney Brown as a witness and indicating that Attorney Brown "may provide testimony in support of plan confirmation regarding the terms and structure of the equity offering proposed to be made as part of the Debtor's Second Amended Chapter 11 Plan that was filed on June 27, 2025." Debtor's Supplemental Witness List was not accompanied by a motion or other argument purporting to demonstrate that Debtor's failure to disclose Attorney Brown as a witness by June 6, 2025, was "substantially justified or harmless." [2]

C. **Deborah Friedland**

Debtor's Witness List, filed on June 6, did disclose Deborah Friedland ("Ms. Friedland") as an expert witness, but stated that she would provide expert testimony only regarding "(a) the feasibility of the Debtor's Plan, including but not limited to the Debtor's projections, and (b)

---

[2] Debtor's Supplemental Witness List naming Attorney Brown was not Debtor's first attempt to add a witness after the Witness List Deadline. On June 19, 2025, Debtor filed a Supplemental Witness List that identified as a new witness an investment banker from SSG Advisors. [Dkt. 624] With that filing, Debtor similarly made no effort to show that its failure to earlier disclose SSG Advisors was "substantially justified or harmless." Debtor subsequently withdrew the SSG Advisors Supplemental Witness List following Lenders' objection. [Dkt. 602]

relevant market conditions in Milwaukee that may affect the value of the Hotel." Debtor's Witness List [Dkt. 586], p. 4. Importantly, Debtor's Witness List further clarified that *"Ms. Friedland's opinion is set forth in her expert report, which is being served contemporaneously herewith"* (emphasis added).

On June 6, 2025, Debtor served Ms. Friedland's expert report (the "Friedland Report"). The Friedland Report offers no opinion or discussion regarding an appropriate cramdown rate of interest applicable to the Plan. Also on June 6, Lenders served the expert report of Cynthia Nelson (the "Nelson Report"), which included, among other things, a thorough discussion of Ms. Nelson's opinions regarding the appropriate cramdown rate of interest.

On July 3, 2025, Debtor served Ms. Friedland's "rebuttal" to the Nelson Report (the "Friedland Rebuttal Report"). In the Friedland Rebuttal Report, Ms. Friedland for the first time opines on the availability of an efficient market for the loan proposed in the Plan and the determination of an appropriate rate of interest. Neither of these topics was discussed in the Friedland Report and Debtor did not disclose either of these topics as a subject of Ms. Friedland's testimony. To the contrary, Debtor specifically defined the scope of Ms. Friedland's expert testimony to be that contained in the Friedland Report. Thus, in a "rebuttal" report dated July 3, 2025, Debtor disclosed and offered for the first time an affirmative expert opinion on interest rates.[3]

---

[3] Note that Debtor complained about much the same thing when it filed a motion for summary judgment against White Lodging. When White Lodging did not submit an "opening" expert report in connection with its claim dispute, but sought to introduce an expert opinion for the first time on rebuttal, Debtor argued that the rebuttal report should be stricken because White Lodging sought to "bypass affirmative expert testimony, and . . . rely solely on a rebuttal report." Debtor's Motion for Partial Summary Judgment [Dkt. 535], p. 18. Although White Lodging had apparently submitted no expert report at all by the initial deadline for expert reports, whereas Debtor submitted the Friedland Report for the Confirmation Hearing, in each instance a previously undisclosed, affirmative expert opinion is being offered for the first time on rebuttal.

On July 7, 2025, just two weeks before the Confirmation Hearing, Debtor filed a *Subject Matter Supplement to List of Witnesses* [Dkt. 630], intending to "clarify" that Ms. Friedland would, in fact, be testifying about the proper cramdown rate of interest at the Confirmation Hearing. Debtor argues that testimony regarding cramdown interest rates is subsumed by Debtor's Witness List disclosure that Ms. Friedland would testify about "the feasibility of the Debtor's Plan." As Debtor sees it, feasibility testimony "necessarily includes and covers the proper rate of interest to be paid in respect of its proposed treatment of Lender Claims." Subject Matter Supplement, p. 1-2.

To be clear, Debtor does not argue that Ms. Friedland offered in the Friedland Report testimony regarding the proper rate of interest, but only that Debtor's bases were covered by a vague reference to "feasibility" in Debtor's Witness List. This reference, Debtor alleges, allows Debtor to submit an interest rate opinion for the first time on "rebuttal." Under these circumstances, the Court should exclude the testimony of Attorney Brown and the interest rate testimony of Ms. Friedland.

### ARGUMENT

**A.     ATTORNEY BROWN'S TESTIMONY SHOULD BE EXCLUDED.**

The April 9 Order was clear: the failure to disclose a witness by June 6, 2025, would result in exclusion of that witness except *upon a showing* that such failure was substantially justified or harmless. This is consistent with Rule 7037(c)(1) of the Federal Rules of Bankruptcy Procedure, which requires automatic and mandatory exclusion of non-disclosed evidence unless non-disclosure was justified or harmless. *See Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996). "A [trial] court . . . retains broad discretion in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless. And the

burden of establishing [justification or harmlessness] lies with the nondisclosing party." *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021).

The introduction of Attorney Brown as a witness less than three weeks before the Confirmation Hearing is not substantially justified or harmless—nor has Debtor tried to prove otherwise. Consider first that Debtor has known for months (if not longer) about the absolute priority issue under the Plan, yet did nothing to address the issue until after witnesses were named, after expert reports were served, and after depositions had been scheduled.[4] By failing to identify Attorney Brown as a witness until July 1, 2025, shortly before a holiday weekend, Debtor deprived Lenders of the opportunity to depose Attorney Brown. Rebuttal expert reports and Plan supplements, due July 3, were the parties' focus last week, and the parties already have depositions scheduled on July 7, 9, 11, 14, 15, and 16 (the last of these by agreement to extend the discovery cutoff by one day). There is simply no time to schedule or complete a deposition of Attorney Brown.

Debtor made the situation worse by filing and then withdrawing the SSG Advisors application, and thereafter telling Lenders that it would *not call a witness at all* to testify about the equity offering. On June 29, after learning some initial details about the offering, Lenders' counsel contacted Debtor's counsel inquiring as to which of Debtor's witnesses would be testifying about the equity offering. Debtor informed Lenders that the equity offering documents were "self-explanatory" and would be offered as exhibits without a witness to sponsor them. Two days later, Debtor changed its tune and filed the second Supplemental Witness List naming Attorney Brown.

---

[4] Funding objected to the Plan on May 21, 2025 [Dkt. 551] on the basis that it violated the absolutely priority rule, and the Court subsequently raised the issue in a docket order dated May 23, 2025 [Dkt. 552], and again verbally at the hearing on June 2, 2025.

What is more, Debtor's description of Attorney Brown's proposed testimony is vague and appears to cross the boundary between lay and expert testimony. Attorney Brown was not named as an expert witness and has not submitted an expert report. Yet the second Supplemental Witness list discloses that Attorney Brown will testify "in support of plan confirmation regarding the terms and structure of the equity offering," and the Much Shelist Application indicates that the work being performed by Attorney Brown "requires specialized corporate and securities law expertise." Much Shelist Application ¶ 3. If this is expert testimony, a report was required by June 6, 2025. And recall that an attorney cannot testify about an issue to be decided in the case. *See, e.g., Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013*)* ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence. As a general rule, accordingly, an expert may not offer legal opinions."). It is unclear whether Attorney Brown intends to testify about legal issues the Court may have to decide, whether relating to the absolute priority rule or another contested issue.

**B.     MS. FRIEDLAND'S INTEREST RATE TESTIMONY SHOULD BE EXCLUDED.**

Despite Debtor's last-minute efforts to justify it, Ms. Friedland should be prohibited from offering testimony about the appropriate cramdown rate of interest. First, Debtor did not disclose in its Witness List that Ms. Friedland would be testifying about interest rates. To the contrary, Debtor disclosed that "Ms. Friedland's opinion is set forth in her expert report, which is being served contemporaneously herewith." [Dkt. No. 586], p. 4. As Debtor admits, there is no discussion of interest rates in the Friedland Report.

To couch the interest rate testimony as "plan feasibility" testimony is to disregard the express terms of the April 9 and May 29 Orders that require disclosure of "the subject matter on

which the [expert] witness is expected to present that evidence, and a summary of the facts and opinions to which the [expert] witness is expected to testify."[5] It is also unpersuasive. A plan is "feasible" if confirmation is not likely to be followed by the liquidation or need for further financial reorganization of the debtor; it does not address an appropriate rate of cramdown interest, which is critical to assessing compliance with sections 1129(a)(7)(B) and 1129(b)(2)(A)(i)(II) of the Bankruptcy Code, not section 1129(a)(11).

Nor is Ms. Friedland's testimony accurately characterized as "rebuttal" testimony. The Friedland Rebuttal Report is scattered with affirmative opinions regarding the appropriate cramdown rate of interest. *See, e.g.,* Friedland Rebuttal Report, ¶¶ 30, 32, 33, 37.[6] The consequence is that Lenders are deprived of the opportunity to rebut Ms. Friedland's interest rate testimony with an expert report, and Lenders' time to prepare for a deposition involving interest rate testimony has been shortened from approximately five weeks to just over one week, with a holiday weekend in the middle, and many other depositions during that timeframe. July 3 was the deadline for rebuttal reports, when each expert should have been addressing the other's

---

[5] Compare Debtor's inadequate disclosure to Lenders' Witness List, which disclosed Ms. Nelson's testimony to include:

> her opinions regarding the appropriate cramdown rate of interest applicable to deferred payments to be made on account of Computershare's Class 1 Secured Claim and (c) the feasibility of the Plan. Generally speaking, Ms. Nelson will testify that the appropriate interest rate to be applied to payments of the Computershare claim is 12.59% or 12.84% (Prime Rate of 7.5% plus a risk factor of 5.09 to 5.34), depending on the Court's determination of the value of the collateral, and that the Plan is not feasible. She will also testify as to her opinion of the appropriate interest rate to be applied and the feasibility of the Plan following consideration of any amendment to the Plan, any Plan supplements, any expert reports submitted by the Debtor and any information disclosed by Debtor after the date hereof.

[Dkt. No. 585].

[6] Because Lenders are asking the Court to disallow Ms. Friedland's interest rate testimony, a copy of the Friedland Rebuttal Report is not attached to this Motion. As Debtor revealed in its *Subject Matter Supplement to List of Witnesses* [Dkt. 630], however, there is no dispute that Ms. Friedland is offering interest rate testimony for the first time in the Friedland Rebuttal Report.

54163406v2

8

Case 24-21743-gmh    Doc 633    Filed 07/09/25    Page 8 of 9

affirmative expert opinions, submitted on June 6. A deadline for rebuttal reports is not an invitation for new, previously undisclosed expert testimony, as the April 9 and May 29 Orders make clear.

Debtor may have stated it best in connection with its White Lodging claims litigation: simultaneous expert reports are crucial to "assure that the two experts initially provided their opinions without being influenced by the views of each other." Debtor's Motion for Partial Summary Judgment [Dkt. 535], p. 8. Yet Debtor now wants Ms. Friedland to enjoy the benefit of reviewing the Nelson Report for an entire month before she was compelled to offer an interest rate opinion of her own. This should not be allowed, especially in such an unusually compressed timeframe, necessitated by Debtor's failure to submit plan amendments, plan supplements, and other information critical to the Confirmation Hearing, only days before the trial is set to begin.

**WHEREFORE,** Lenders respectfully ask the Court to (a) exclude the testimony of Attorney Brown at the Confirmation Hearing and (b) exclude the testimony of Ms. Friedland regarding the availability of an efficient market for the loan proposed in the Plan and the determination of an appropriate cramdown rate of interest.

| | |
|---|---|
| Dated this 9th day of July, 2025. | COMPUTERSHARE TRUST COMPANY, N.A. and WISCONSIN & MILWAUKEE HOTEL FUNDING LLC |
| | BY: */s/ Frank W. DiCastri* |
| | Frank W. DiCastri<br>Sara C. McNamara<br>REINHART BOERNER VAN DEUREN s.c.<br>1000 North Water Street, Suite 1700<br>Milwaukee, WI 53202-3186<br>414-298-1000<br>fdicastri@reinhartlaw.com<br>smcnamara@reinhartlaw.com |