**WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY**

**and**

**WELLS FARGO BANK, NATIONAL ASSOCIATION**
**as Trustee**

**INDENTURE OF TRUST**

**Dated as of August 1, 2012**

**relating to:**

**$42,500,000**
**Wisconsin Housing and Economic Development Authority**
**Economic Development Bonds**
**2012 Series A, B and C**

EXHIBIT

104

4811-6404-3536.6

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND USE OF PHRASES ................................................. 3
    Section 1.1    Definitions. ........................................................................... 3
    Section 1.2    Use of Phrases; Rules of Construction. .................................. 15

ARTICLE II GENERAL PROVISIONS RELATING TO THE BONDS ................... 15
    Section 2.1    Creation of Bonds for Issuance................................................. 15
    Section 2.2    Parity. ....................................................................................... 16
    Section 2.3    Bonds to be Limited Obligations of Authority. ...................... 16
    Section 2.4    Execution of Bonds.................................................................. 16
    Section 2.5    Authentication.......................................................................... 17
    Section 2.6    Form of Bonds. ........................................................................ 17
    Section 2.7    Provision for Registration, Transfer and Exchange of Bonds. .............. 17
    Section 2.8    Persons Treated as Owners. ..................................................... 19
    Section 2.9    Manner of Payment of Bonds. ................................................. 19
    Section 2.10    Mutilated, Lost, Stolen or Destroyed Bonds.......................... 19
    Section 2.11    Designation of Bond Registrar and Paying Agents. .............. 19
    Section 2.12    Disposition of Bonds Upon Payment; Safe-keeping of Bonds Surrendered for Exchange. ............................................. 19
    Section 2.13    Nonpresentment of Bonds. ...................................................... 20
    Section 2.14    Delivery of Bonds. .................................................................. 20

ARTICLE III GENERAL PROVISIONS RELATING TO REDEMPTION OF BONDS PRIOR TO MATURITY ................................................................. 21
    Section 3.1    Limitation of Redemptions Prior to Maturity. ....................... 21
    Section 3.2    Notice and Effect of Redemption. .......................................... 21
    Section 3.3    Selection of Bonds for Redemption; Manner of Effecting Partial Redemptions of Particular Bonds. ............................ 21

ARTICLE IV TERMS OF THE BONDS........................................................................ 22
    Section 4.1    Maturity. .................................................................................. 22
    Section 4.2    Interest on the Bonds. .............................................................. 22
    Section 4.3    Optional Redemption of Bonds. .............................................. 25
    Section 4.4    Mandatory Prepayment of Bonds. ........................................... 26
    Section 4.5    Extraordinary Special Redemption After the Lockout Period............. 26
    Section 4.6    Provisions Regarding Redemption of Bank Bonds. .............. 27
    Section 4.7    Mandatory Redemption of Bonds Upon Determination of Taxability After the Lockout Period. ....................................... 27
    Section 4.8    Purchase of Bonds Upon Demand. ......................................... 27
    Section 4.9    Mandatory Tender of Bonds for Purchase............................... 29
    Section 4.10    Purchase of Tendered Bonds. ................................................. 30
    Section 4.11    Bond Purchase Account.......................................................... 30
    Section 4.12    Treatment of Untendered Bond Certificates........................... 31

4811-6404-3536.6

Case 24-21743-gmh    Doc 638-4    Filed 07/11/25    Page 2 of 112

Section 4.13     Remarketing of Tendered Bonds. ............................................................. 32
Section 4.14     Remarketing of Bank Bonds and Authority Bonds. .............................. 33
Section 4.15     Concerning the Remarketing Agent. ....................................................... 33
Section 4.16     Concerning the Liquidity Facility. ........................................................... 34
Section 4.17     Purchase on Notice of Certain Events of Default Under Liquidity
                 Facility During the Period a Liquidity Facility is Required;
                 Notice of Liquidity Facility Default. ...................................................... 35
Section 4.18     No Remarketing After Certain Defaults. ................................................ 36
Section 4.19     Inadequate Funds for Tenders. ................................................................. 36
Section 4.20     Tender of Bonds for Cancellation. .......................................................... 37

ARTICLE V REPRESENTATIONS AND COVENANTS OF AUTHORITY .......................... 37
Section 5.1      Payment of Principal and Interest. .......................................................... 37
Section 5.2      Performance of Covenants; Authority. .................................................... 38
Section 5.3      Instruments of Further Assurance. .......................................................... 38
Section 5.4      Inspection of Books; Duty to Provide Data. ........................................... 38
Section 5.5      Payment of Trustee's Fees. ...................................................................... 38
Section 5.6      Tax-Exempt Status of Bonds. ................................................................. 39
Section 5.7      Validity and Effect on Pledge. ................................................................ 39

ARTICLE VI CUSTODY AND APPLICATION OF PROCEEDS OF BONDS ...................... 39
Section 6.1      Application of Proceeds of Bonds. .......................................................... 39
Section 6.2      Project Fund. ............................................................................................ 39
Section 6.3      Surplus Project Fund. .............................................................................. 41

ARTICLE VII REVENUES AND FUNDS ........................................................................... 42
Section 7.1      Source of Payment. ................................................................................. 42
Section 7.2      Trust Estate. ............................................................................................. 42
Section 7.3      Bond Fund. ............................................................................................... 42
Section 7.4      Redemption Fund. .................................................................................... 43
Section 7.5      Trust Funds Held in Trust. ...................................................................... 44

ARTICLE VIII INVESTMENTS ........................................................................................... 44
Section 8.1      Permitted Investment of Trust Funds. ..................................................... 44
Section 8.2      Arbitrage. ................................................................................................. 44
Section 8.3      Rebate of Certain Arbitrage Profits. ....................................................... 44

ARTICLE IX DISCHARGE. .................................................................................................. 45
Section 9.1      Discharge. ................................................................................................ 45

ARTICLE X DEFAULT PROVISIONS AND REMEDIES OF TRUSTEE AND
BONDOWNERS ..................................................................................................................... 47
Section 10.1     Defaults; Events of Default. .................................................................... 47
Section 10.2     Acceleration. ............................................................................................ 48
Section 10.3     Remedies. ................................................................................................. 48
Section 10.4     Right of Bondowners to Direct Proceedings. ......................................... 49
Section 10.5     Waiver of Certain Rights. ........................................................................ 49

Case 24-21743-gmh     Doc 638-4     Filed 07/11/25     Page 3 of 112

| | | |
|---|---|---|
| Section 10.6 | Application of Moneys. | 49 |
| Section 10.7 | Remedies Vested in Trustee. | 52 |
| Section 10.8 | Rights and Remedies of Bondowners. | 52 |
| Section 10.9 | Termination of Proceedings. | 52 |
| Section 10.10 | Waivers of Events of Default. | 53 |

ARTICLE XI THE TRUSTEE ........................................................................ 53

| | | |
|---|---|---|
| Section 11.1 | Acceptance of Trusts. | 53 |
| Section 11.2 | Reserved. | 55 |
| Section 11.3 | Notice to Bondowners if Default Occurs. | 56 |
| Section 11.4 | Intervention by Trustee. | 56 |
| Section 11.5 | Successor Trustee. | 56 |
| Section 11.6 | Resignation by Trustee. | 56 |
| Section 11.7 | Removal of Trustee. | 56 |
| Section 11.8 | Appointment of Successor Trustee; Temporary Trustee. | 56 |
| Section 11.9 | Concerning Any Successor Trustee. | 57 |
| Section 11.10 | Appointment of Co-Trustee. | 57 |
| Section 11.11 | Acquisition of Conflicting Interests by Trustee. | 58 |
| Section 11.12 | Requirement of a Corporate Trustee. | 59 |
| Section 11.13 | Trustee's Fees. | 59 |

ARTICLE XII CONCERNING THE LIQUIDITY FACILITY ............................. 60

| | | |
|---|---|---|
| Section 12.1 | Trustee to Draw on Liquidity Facility. | 60 |
| Section 12.2 | Requirements Regarding Liquidity Facility and Substitute Liquidity Facility. | 60 |
| Section 12.3 | References to Liquidity Facility Provider After Expiration or Default of Liquidity Facility. | 61 |
| Section 12.4 | References to Eligible Funds and Preference Opinion After Expiration of Liquidity Facility. | 62 |
| Section 12.5 | Option of Authority to Purchase Bonds in Lieu of Redemption or Upon Acceleration. | 62 |
| Section 12.6 | Disclaimer of FDIC Insurance. | 62 |

ARTICLE XIII SUPPLEMENTAL INDENTURES ........................................... 62

| | | |
|---|---|---|
| Section 13.1 | Amendments and Supplements Without Bondowners' Consent. | 62 |
| Section 13.2 | Amendments With Bondowners' Consent. | 62 |
| Section 13.3 | Consent of Liquidity Facility Provider. | 63 |

ARTICLE XIV FORM OF BONDS ................................................................ 63

| | | |
|---|---|---|
| Section 14.1 | General Matters. | 63 |
| Section 14.2 | Form of Bond Prior to the Initial Conversion Date. | 63 |
| Section 14.3 | Form of Bond on or After Initial Conversion Date. | 63 |
| Section 14.4 | Additional Matters Appearing on Bonds. | 64 |

ARTICLE XV MISCELLANEOUS ................................................................ 64

| | | |
|---|---|---|
| Section 15.1 | Consent of Bondowners. | 64 |
| Section 15.2 | Limitation of Rights. | 64 |

Case 24-21743-gmh    Doc 638-4    Filed 07/11/25    Page 4 of 112

Section 15.3    Severability. .......................................................................................... 64
Section 15.4    Notices. ................................................................................................... 65
Section 15.5    Payments Due on Saturdays, Sundays and Holidays............................. 65
Section 15.6    Captions. ................................................................................................. 65
Section 15.7    Counterparts............................................................................................ 65
Section 15.8    Governing Law. ...................................................................................... 65
Section 15.9    Pledge and Agreement of the State......................................................... 65


EXHIBIT A   –   FORM OF BOND PRIOR TO INITIAL CONVERSION DATE ........... A-1
EXHIBIT B   –   FORM OF BOND AFTER INITIAL CONVERSION DATE ................ B-1
EXHIBIT C   –   PROJECT DESCRIPTION ...................................................................... C-1
EXHIBIT D   –   FORM OF RESET NOTICE .................................................................... D-1

SCHEDULE I –   BOND AMORTIZATION SCHEDULE.................................................. I-1

<center>INDENTURE OF TRUST</center>

THIS INDENTURE OF TRUST, dated as of August 1, 2012 between the WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a public body corporate and politic duly created, organized and existing under the laws of the State of Wisconsin (the "Authority"), and WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association duly organized, existing and authorized to accept and execute trusts of the character herein set out, as trustee (the "Trustee");

<center>W I T N E S S E T H :</center>

WHEREAS, Chapter 234 of the Wisconsin Statutes (the "Act") authorizes the Authority to issue bonds from time to time in furtherance of its corporate purposes; and

WHEREAS, by resolution adopted on October 19, 2011 (the "General Resolution"), the Authority authorized a program for the administration of an economic development loan program (the "Program"); and

WHEREAS, by resolution adopted on October 19, 2011 (the "Supplemental Resolution"), the Authority authorized the issuance of bonds, in one or more series, to fund the Program; and

WHEREAS, by resolution adopted on July 24, 2012 (the "Series Resolution") the Members Loan Committee of the Authority has found and determined that it is necessary and desirable to fund a loan for the Project, as hereinafter described, and to issue the Bonds, subject to the terms and conditions set forth in the Series Resolution; and

WHEREAS, the Authority has induced Wisconsin & Milwaukee Hotel LLC, a Wisconsin limited liability company (the "Project Owner") to proceed with the Project by offering to issue the Bonds to finance the Project; and

WHEREAS, Wisconsin & Milwaukee Hotel Investment Fund, LLC, a Missouri limited liability company (the "Borrower"), has been organized for the purpose of assisting the Project Owner in the development of the Project, including by capitalizing a limited liability company and causing it to lend funds to the Project Owner to finance the Project and related costs; and

WHEREAS, the Authority will lend the proceeds of the Bonds to the Borrower and the Project Owner to facilitate the financing of the Project; and

WHEREAS, the Authority has found and determined that the financing of the Project with the Bonds will in all respects conform to the provisions and requirements of the Act; and

WHEREAS, the execution and delivery of this Indenture have been in all respects duly and validly authorized by the Supplemental Resolution and the Series Resolution; and

WHEREAS, all things necessary to make the Bonds, when authenticated by the Trustee as in this Indenture provided, the valid, binding and legal obligations of the Authority according

to the import thereof, and to constitute this Indenture a valid pledge and assignment of the Trust Estate (as hereinafter defined) have been done and performed;

<center>GRANTING CLAUSES</center>

NOW, THEREFORE, in consideration of the premises, the acceptance by the Trustee of the trusts hereby created, and the purchase and acceptance of delivery of the Bonds by the purchaser(s) thereof, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to secure the payment of the principal or purchase price of, premium, if any, and interest on all Bonds at any time issued and Outstanding under this Indenture according to their tenor and effect, and to secure the performance and observance by the Authority of all the covenants contained in the Bonds and in this Indenture, the Authority does hereby pledge, assign, and confirm unto the Trustee, and the Authority and the Trustee do hereby impress with the trust created hereby, all and singular the properties, revenues and rights hereinafter described, whether now owned or hereafter acquired, and the proceeds thereof (collectively called the "Trust Estate"), to wit:

1.     All right, title and interest of the Authority in and to the Loan Agreements, the Notes, the Mortgages, the Pledge Agreement, the Collateral Documents and all other agreements and instruments that secure or guarantee the loans under the Loan Agreements;

2.     All right, title and interest (if any) of the Authority in and to the Liquidity Facility, as applicable;

3.     All right, title and interest of the Authority in and to the Trust Funds and the cash, securities and investments of which they are comprised; and

4.     All property which by the express provisions of this Indenture is required to be subjected to the lien hereof, and any additional property that may from time to time hereafter be made subject to the lien hereof by the Authority or by anyone on its behalf;

IN TRUST, for the equal and ratable benefit and security of the Bondowners without preference, priority or distinction as to lien or otherwise of any particular Bond over any other Bond, except as otherwise expressly provided herein; and

PROVIDED, HOWEVER, that if the Authority shall pay, cause to be paid, or provide for the payment of the principal of, premium, if any, and interest on the Bonds in accordance with Article IX of this Indenture, shall make all required "rebate" payments to the United States Treasury in accordance with Section 8.3 of this Indenture, and if the Authority shall promptly, faithfully and strictly keep, perform and observe all of its representations, covenants and agreements contained in this Indenture, then in such event this Indenture and the rights hereby granted (excepting Bondowners' rights theretofore vested) shall cease, terminate and be void, otherwise to remain in full force and effect upon the trusts and subject to the conditions hereinafter set forth.

<center>2</center>

All Bonds issued and secured hereunder are to be issued, authenticated and delivered, and all Trust Funds, revenues and income hereby pledged are to be dealt with and disposed of under and subject to the terms, conditions, stipulations, covenants, agreements, trusts, uses and purposes as hereinafter expressed, and the Authority has agreed and covenanted, and does hereby agree and covenant, with the Trustee and with the respective Owners from time to time of the Bonds, as follows, THAT IS TO SAY:

## ARTICLE I

## DEFINITIONS AND USE OF PHRASES

Section 1.1    Definitions.    As used in this Indenture and the recitals hereto, the following terms and phrases shall have the following meanings.

"Act" means Chapter 234 of the Wisconsin Statutes, as amended from time to time.

"Alternate Paying Agent" means any bank or trust company designated by the Authority as an alternate or co-paying agent in respect of the Bonds.

"Authority" means the Wisconsin Housing and Economic Development Authority, a public body corporate and politic duly created, organized and existing under the laws of the State of Wisconsin.

"Authority Bonds" means Bonds or Beneficial Ownership interests therein, purchased by the Authority with funds of the Authority deposited in the Bond Purchase Account and not remarketed by the Remarketing Agent.

"Authority's Address" means the address which the Authority designates for the delivery of notices hereunder.  Until changed by notice from the Authority to the Liquidity Facility Provider, the Remarketing Agent and the Trustee, the Authority's Address shall be:

> Wisconsin Housing and Economic Development Authority
> 201 West Washington Avenue, Suite 700
> Madison, Wisconsin 53703
> Attention:    Chief Financial Officer
> Telephone:    608-266-1640
> Fax:          608-267-1099

"Authority's Certificate" means a certificate signed on behalf of the Authority by an Authorized Officer.

"Authority's Governing Body" means the Members of the Authority.

"Authority's Representative" means the person or, in his or her absence, the alternate person, designated in an Authority's Certificate (containing specimen signatures of each such person) as a person authorized to execute and deliver written directions to the Trustee and to give Trust Fund investment directions on behalf of the Authority.

3

"Authorized Denomination" means $100 or any multiple thereof.

"Authorized Officer" means the Chairperson, Vice Chairperson, Executive Director, Deputy Executive Director and Chief Financial Officer of the Authority, or any one of them acting alone.

"Bank Bonds" means Bonds or Beneficial Ownership Interests therein, purchased with the proceeds of a draw under a Liquidity Facility pursuant to Section 12.1(a) hereof and not remarketed by the Remarketing Agent.

"Beneficial Owner" means, with respect to a Bond, the person who owns the Beneficial Ownership Interest therein, as evidenced to the satisfaction of the Trustee.

"Beneficial Ownership Interest" means the right to receive payments and notices with respect to Bonds which are held by the Depository under a Book Entry System and for which the Depository does not, pursuant to the Letter of Representations, act on behalf of the Beneficial Owner in connection with the optional or mandatory tender of Bonds pursuant to Sections 4.8 or 4.9 hereof.

"Bond Amount" means $42,500,000.

"Bond Counsel" means Independent Counsel whose legal and tax opinion on municipal bond issues is nationally recognized.

"Bond Fund" means the Trust Fund described in Section 7.3 of this Indenture.

"Bond Issuance Costs" means the costs, fees and expenses incurred or to be incurred by the Authority in connection with the issuance and sale of the Bonds which are subject to the 2% limitation described in Section 147(g)(1) of the Internal Revenue Code, including, commitment or other financing fees, underwriting fees and discounts, the fees and disbursements of Bond Counsel, the Trustee's acceptance fee, the filing and recording fees in connection with any filings or recording necessary under this Indenture or to perfect the lien hereof, any administrative fee of the Authority (other than any fees related to loan origination or processing), the fees and disbursements of counsel to the Authority, the fees and disbursements of counsel to the underwriter, the fees and disbursements of counsel to the Liquidity Facility Provider, rating agency fees, the fees and disbursements of the Authority's accountants, the costs of preparing or printing the Bonds and the documentation supporting the issuance of the Bonds, and any other costs of a similar nature reasonably incurred.

"Bond Purchase Account" means the trust account described in Section 4.11 of this Indenture.

"Bond Register" means the registration books maintained by the Trustee pursuant to Section 2.7 of this Indenture.

"Bondowners" and "Owners" (when used with reference to Bonds) means, at the time or times of determination, the persons who are registered owners of Bonds, including the Liquidity Facility Provider as the owner of Bank Bonds.

4

"Bonds" means, collectively, the Series A Bonds, the Series B Bonds and the Series C Bonds.

"Book Entry Form" or "Book Entry System" means, with respect to the Bonds, a form or system, as applicable, under which (i) the ownership of beneficial interests in the Bonds may be transferred only through book entry and (ii) physical Bond certificates in fully registered form are registered only in the name of a Depository or its nominee as Owner, with the physical Bond Certificates "immobilized" in the custody of the Depository. The book entry maintained by the Depository is the record that identifies the owners of beneficial interests in those Bonds.

"Borrower" means Wisconsin & Milwaukee Hotel Investment Fund, LLC, a Missouri limited liability company, and any successor, surviving, resulting or transferee entity.

"Borrower's Certificate" means a certificate signed on behalf of the Borrower by an authorized representative of the Borrower.

"Business Day" means a day (a) other than a Saturday, Sunday or legal holiday on which banks located in the city in which the Trustee's Principal Office is located, the city in which the Liquidity Facility Provider's principal office is located and the city in which the Remarketing Agent's principal office is located, are not required or authorized to remain closed and (b) on which neither the New York Stock Exchange nor the Federal Reserve Banks are closed.

"Calculation Period" means, while the Bonds bear interest at the Variable Rate, the period from Thursday of each week (whether or not a Business Day) or any Proposed Conversion Date (which does not become a Conversion Date) through and including the earlier of (i) the following Wednesday (whether or not a Business Day) and (ii) the day immediately preceding a Proposed Conversion Date.

"Chairperson" means the person at the time incumbent in the office of Chairperson of the Authority or, in the event of the death, disability or absence of such person, the Vice Chairperson or other person duly authorized and legally empowered to perform the duties of such office in such event.

"Collateral Documents" means the Assignment of Architect Agreement, Assignment of Management Agreement, Assignment of Declarant's Rights, Assignment of Construction Contract and Guarantee of Completion, each as identified in Exhibit B to the Intercreditor Agreement.

"Conversion Date" means, initially, December 30, 2018, the end of the Lockout Period and the date on which the interest rate on the Bonds is converted from the Fixed Rate to the Variable Rate and thereafter any date on which the interest rate on the Bonds is converted from the Variable Rate to a Fixed Rate, all as provided in Section 4.2(b) of this Indenture.

"Conversion Notice" means a notice from the Authority to the Trustee, the Remarketing Agent and Liquidity Facility Provider designating a Proposed Conversion Date and satisfying the requirements set forth in Section 4.2(b)(1) of this Indenture.

"Default Rate" means the Fixed Rate plus 3.00% per annum.

5

"Depository" means any securities depository that is a "clearing corporation" within the meaning of the New York Uniform Commercial Code and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934, operating and maintaining, with its participants or otherwise, a Book Entry System to record ownership of beneficial interests in the Bonds, and to effect transfers of the Bonds, in Book Entry form, and includes and means initially The Depository Trust Company (a limited purpose trust company), New York, New York.

"Determination Date" means (i) with respect to each Calculation Period commencing on a Thursday, the Wednesday immediately preceding the commencement of such Calculation Period or, if such Wednesday is not a Business Day, the next preceding Business Day, and (ii) with respect to each Calculation Period commencing on a Proposed Conversion Date (which does not become a Conversion Date), such Proposed Conversion Date.

"Determination of Taxability" means the occurrence of any of the following with respect to the Bonds:

(a)    the filing of an Authority's Certificate with the Trustee asserting or indicating by its terms to the satisfaction of the Trustee that an Event of Taxability has occurred;

(b)    notification to the Trustee that an authorized officer or official of the Internal Revenue Service has issued a statutory notice of deficiency or document of similar import to the effect that an Event of Taxability has occurred; or

(c)    notification to the Trustee from any Bondowner or former Bondowner to the effect that the Internal Revenue Service has assessed as includable in the gross income of such Bondowner or former Bondowner interest on a Bond due to the occurrence of any Event of Taxability;

provided, however, that in respect of clauses (b) and (c) above, a Determination of Taxability shall not be deemed to have occurred unless and until the Authority has been notified of the allegation that an Event of Taxability and a Determination of Taxability have occurred and the Authority fails within 60 days following such notice either (i) to have the allegation that an Event of Taxability has occurred rescinded by the Internal Revenue Service or the Bondowner or the former Bondowner who made such allegation, as the case may be, or (ii) to obtain an unqualified opinion of Bond Counsel acceptable to the Trustee and the Authority to the effect that no Event of Taxability has occurred.

"Effective Date" means August 31, 2012.

"Eligible Costs of the Project" means costs incurred in connection with the Project or the financing thereof which may be paid or reimbursed from the Project Fund without adverse effect on the legality of the Bonds or, in the opinion of Bond Counsel with respect to the Bonds, or adverse effect on their tax-exempt status under Section 103(a) of the Internal Revenue Code.

"Eligible Funds" means (i) all amounts (including investment earnings) in the Bond Purchase Account, and (ii) other amounts (including investment earnings) in the Bond Fund and the Redemption Fund with respect to which the Trustee has received a Preference Opinion.

6

"Event of Default" means any of the events designated as such in Section 10.1 of this Indenture.

"Event of Taxability" means the circumstance of interest paid or payable on any Bond becoming includable for federal income tax purposes (other than for purposes of computing alternative minimum taxes) in the gross income of any Bondowner as a consequence of any act, omission or event whatsoever.

"Final Maturity Date" means January 1, 2042.

"Fixed Rate" means, prior to the Conversion Date, for each Series of Bonds, the rate per annum set forth in the Bond for each Series of Bonds in the form attached hereto as Exhibit A, and thereafter the interest rate borne by the Bonds from and after the Conversion Date, and specifically, during each Reset Period, means the lesser of (i) the maximum rate of interest permitted by law or (ii) the minimum rate of interest which, in the judgment of the Remarketing Agent, under prevailing market conditions, taking into account the current rates for tax-exempt securities comparable in security and creditworthiness to the Bonds and with a term comparable to the length of the Reset Period designated by the Authority, would enable the Bonds to be sold at a price of par on the commencement date of such Reset Period in accordance with the following procedure: (A) On the twentieth (20th) day (or, if such day is not a Business Day, the next succeeding Business Day) preceding the commencement of such Reset Period (or on an earlier date selected by the Remarketing Agent with the approval of the Authority, but not earlier than the twenty-fifth (25th) day (or, if such day is not a Business Day, the next succeeding Business Day) preceding the commencement of such Reset Period), the Remarketing Agent shall estimate such interest rate based upon then prevailing market conditions and certify such estimate to the Trustee and the Authority by facsimile transmission or by other electronic means and (B) on or before 12:00 noon on the seventh (7th) day (or, if such day is not a Business Day, the next succeeding Business Day) next preceding the commencement of such Reset Period the Remarketing Agent shall make any necessary adjustments to such interest rate and certify the actual rate to the Trustee and the Authority by facsimile transmission or by other electronic means, in each case calculated on the basis of a 360-day year, and the actual number of days elapsed.

"General Resolution" means the General Resolution of the Authority dated October 19, 2011, authorizing the Program (as defined therein).

"Government Obligations" means direct, full faith and credit obligations of the United States of America.

"Immediate Notice" means notice by telephone, telex or telecopier to such address as the addressee shall have directed in writing, promptly followed by written notice by first class mail, postage prepaid; provided, however, that if any person required to give an Immediate Notice shall not have been provided with the necessary information as to the telephone, telex or telecopier number of an addressee, Immediate Notice shall mean written notice by first class mail, postage prepaid.

4811-6404-3536.6

"Indenture" means this Indenture of Trust from the Authority to the Trustee, dated as of the Effective Date, under which the Bonds are issued, as amended from time to time by Supplemental Indentures.

"Independent Counsel" means any attorney or firm of attorneys who or which shall be acceptable to the Trustee and the Authority  and who or which is not an employee of the Authority.

"Intercreditor Agreement" means the Amended and Restated Intercreditor Agreement, dated August 31, 2012, among Wisconsin & Milwaukee Hotel Funding LLC, the Sub-CDE and the Authority.

"Interest Payment Date" means each date on which interest is stated to be due on any Bond.

"Interest Period" means, prior to the Conversion Date, the period from and including the first day of each month to and including the last day of each month, provided that the initial Interest Period shall commence on August 31, 2012 and end on September 30, 2012.  The initial Interest Period for each Variable Rate Bond shall begin on (and include) the date of its delivery; and the initial Interest Period for each Bond prior to the Conversion Date shall begin on (and include) its dated date.  The final Interest Period shall end on the day next preceding the maturity date of each Bond.

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Letter of Representations" means the agreement between the Authority and the Depository that sets forth the manner of making and processing payments, giving notices and other procedures relating to the Depository's Book Entry System.   The initial Letter of Representations is the Blanket Authority Letter of Representations dated as of August 15, 1996, between the Authority and The Depository Trust Company.

"Liquidity Facility" means an obligation of a Liquidity Facility Provider to provide funds for the purpose of purchasing tendered bonds, which may be in the form of a line of credit or standby bond purchase agreement or similar instrument meeting the requirements of Section 12.2 hereof, including any Substitute Liquidity Facility.

"Liquidity Facility Default" means, for so long as a Liquidity Facility remains outstanding, an event resulting in the termination or suspension of the Liquidity Provider's obligation to purchase Bonds under the Liquidity Facility.

"Liquidity Facility Expiration Date" means the stated expiry date of a Liquidity Facility in accordance with the terms thereof and Section 12.2 hereof.

"Liquidity Facility Provider" means any bank, savings and loan association, savings bank, insurance company or other regulated financial institution designated by the Authority which issues a Liquidity Facility in accordance with Article XII hereof.

8

"Liquidity Facility Provider's Address" means the address which the Liquidity Facility Provider designates for the delivery of notices hereunder.

"Liquidity Facility Substitution Date" means the effective date of a Substitute Liquidity Facility delivered pursuant to Section 12.2 hereof.

"Loan Agreements" means, collectively, the Series A Loan Agreement, and the Series B and C Loan Agreement.

"Lockout Period" means the period ending on December 30, 2018.

"Mandatory Tender Date" means each date on which all Bonds are required to be tendered for purchase pursuant to Section 4.9 hereof.

"Maximum Rate" means the rate which is used to determine the maximum amount of interest on the Bonds covered by a Liquidity Facility.

"Mortgages" means, collectively, the Series B Mortgage and the Series C Mortgage.

"Optional Tender Date" means, while the Bonds bear interest at the Variable Rate, the date specified in a Purchase Demand as the date on which the Owner or Beneficial Owner of the Bond(s) (or portions thereof) described therein is demanding purchase of such Bond(s) or Beneficial Ownership Interest(s) (or portions thereof), which date must be a Business Day not less than seven days after receipt by the Trustee (or, as otherwise provided herein, receipt by the Remarketing Agent) of such Purchase Demand.

"Outstanding Bonds" and "Outstanding", when used with reference to Bonds, means all Bonds which have been authenticated and delivered by the Trustee under this Indenture, except:

> (1) Bonds or portions thereof cancelled by the Trustee or delivered to the Trustee for cancellation;

> (2) Bonds in lieu of which other Bonds have been authenticated and delivered in accordance with Sections 2.5, 2.7, 2.10, 4.10 and 4.14 of this Indenture; and

> (3) Bonds which are not deemed to be Outstanding in accordance with the provisions of Sections 2.13 and 9. 1 of this Indenture.

"Pledge Agreement" means the Pledge Agreement dated as of August 31, 2012 between the Borrower and the Authority.

"Preference Opinion" means an opinion of Bond Counsel addressed to the Trustee stating in effect that the use of the funds to which the opinion relates for the purchase of Bonds or for the payment of the principal of, premium, if any, or interest on the Bonds, as the case may be, will not, upon the occurrence of a Bankruptcy Condition on or after the date of such opinion, constitute a preference payment under the United States Bankruptcy Code (taking into account the "insider" provisions thereof) or a payment of similar import (that is, a payment subject to

9

disgorgement upon the occurrence of certain bankruptcy events) under the then applicable Federal and State bankruptcy, insolvency and reorganization laws.

"Project" means the Project of the Project Owner financed in part by the proceeds of the Bonds and described in Exhibit C hereto.

"Project Fund" means the Trust Fund described in Section 6.2 of this Indenture.

"Project Owner" means Wisconsin & Milwaukee Hotel LLC, a Wisconsin limited liability company, and any successor, surviving, resulting or transferee entity.

"Promissory Notes" means, collectively, the Series A Note, the Series B Note and the Series C Note.

"Proposed Conversion Date" means the date after the end of the Lockout Period identified in a Conversion Notice properly delivered by the Authority pursuant to Section 4.2(b)(1) hereof as the date on which the interest rate on the Bonds is to be converted from the Fixed Rate to the Variable Rate.

"Purchase Demand" means, while the Bonds bear interest at the Variable Rate, a written demand by an Owner or Beneficial Owner of a Bond or Beneficial Ownership Interest therein, as the case may be, meeting the requirements of Section 4.8 hereof, that such Bond or Beneficial Ownership Interest be purchased on the date specified therein.

"Qualified Investments" means such of the following as at the time of determination are permitted investments under the Act:

(a)     direct general obligations of the United States of America and obligations (including obligations of any federal agency or corporation) the payment of the principal and interest on which, by act of the Congress of the United States or in the opinion of the Attorney General of the United States in office at the time such obligations were issued, are unconditionally guaranteed by the full faith and credit of the United States of America, or so long as at the time of their purchase such investments will not adversely affect the then-current ratings, if any, assigned to the Bonds by each Rating Agency, any other evidences of an ownership interest in obligations or in specified portions thereof (which may consist of specified portions of the interest thereon) of the character described in this clause (a);

(b)     any bonds or other obligations of any state of the United States of America or of any agency, instrumentality or local governmental unit of any such state (i) which are not callable at option of the obligor or otherwise prior to maturity or as to which irrevocable notice has been given by the obligor to call such bonds or obligations on the date specified in the notice, (ii) which are fully secured as to principal and interest and redemption premium, if any, by a fund consisting only of cash or bonds or other obligations of the character described in clause (a) hereof which fund may be applied only to the payment of interest when due, principal of and redemption premium, if any, on such bonds or other obligations on the maturity date or dates thereof or the specified redemption date or dates pursuant to such irrevocable instructions, as appropriate, (iii) as to which the principal of and interest on the bonds and obligations of the character described in clause (a) hereof which have been deposited in such fund along with any

10

cash on deposit in such fund is sufficient to pay interest when due, principal of and redemption premium, if any, on the bonds or other obligations described in this clause (b) on the maturity date or dates thereof or on the redemption date or dates specified in the irrevocable instructions referred to in subclause (i) of this clause (b), as appropriate, and (iv) which at the time of their purchase under this Resolution bear the highest rating available from each Rating Agency;

(c)     bonds, debentures, participation certificates (representing a timely guaranty of principal and interest), notes or similar evidences of indebtedness of any of the following: Financing Corporation, Federal Home Loan Bank System, Federal Farm Credit Bank, Fannie Mae (excluding "stripped" securities), Federal Home Loan Mortgage Corporation (excluding "stripped" securities), Resolution Funding Corporation, Government National Mortgage Association or Student Loan Marketing Association;

(d)     obligations of any state of the United States of America or of any political subdivision or public agency or instrumentality thereof, provided that at the time of their purchase under this Resolution such obligations are rated by each Rating Agency no lower than the rating assigned to the Bonds by each Rating Agency;

(e)     prime commercial paper of a corporation incorporated under the laws of any state of the United States of America, having at the time of their purchase under this Resolution the highest rating available from each Rating Agency;

(f)     interest-bearing time deposits, certificates of deposit or other similar banking arrangements with banks (which may include any Fiduciary), provided such deposits are made with banks rated by each Rating Agency at the time the deposit is made no lower than the rating assigned to the Bonds by such Rating Agency;

(g)     shares of a diversified open-end management investment company as defined in the Investment Company Act of 1940, which is a money market fund, which are rated (which rating shall, in the case of Standard and Poor's Corporation, have a subscript of "m" or "m-G") at the time of their purchase by each Rating Agency no lower than the rating assigned to the Bonds by such Rating Agency;

(h)     repurchase agreements for obligations of the type specified in clauses (a) and (c) above, provided either (i) the repurchase agreement is an unconditional obligation of the counterparty, and such counterparty (or an affiliated guarantor) is rated at the time of its purchase by each Rating Agency no lower than the rating assigned to the Bonds by such Rating Agency, or (ii) the repurchase agreement is an obligation of a counterparty that is rated at the time of its purchase by each Rating Agency in an investment grade category and is collateralized by obligations which (A) are marked to market at intervals, (B) have a value equal to not less than the percentage of the amount thereby secured, and (C) have such additional legal requirements specified by each Rating Agency, taking into account the maturity of such obligations;

(i)     any investment obligation or deposit the investment in which will not, at the time such investment is made, adversely affect the then-current ratings, if any, assigned to the Bonds by each Rating Agency;

11

(j)     any investment agreement with a bank, bank holding company, insurance company or other financial institution rated at the time such investment is made by each Rating Agency no lower than the rating assigned to the Bonds by such Rating Agency or guaranteed by an entity rated by each Rating Agency no lower than the rating assigned to the Bonds by such Rating Agency; and

(k)     the Local Government Pooled Investment Fund of the State established under Chapter 25 of the Wisconsin Statutes; provided that such investment will not adversely affect the then-current ratings, if any, assigned to the Bonds by each Rating Agency.

"Rating Agency" means Moody's Investors Service or any other nationally recognized rating agency which has assigned a rating on the Bonds at the request of the Authority.

"Rebate Account" means the special account described in Section 8.3(b).

"Record Date" means (i) with respect of each regularly scheduled Interest Payment Date occurring after the Conversion Date, and with respect to any redemption date or Mandatory Tender Date that is not a regularly scheduled Interest Payment Date, the day (whether or not a Business Day) immediately preceding such date, as the case may be and (ii) with respect to each regularly scheduled Interest Payment Date occurring on or before the Conversion Date, the 15th day (whether or not a Business Day) of the calendar month next preceding such Interest Payment Date.

"Redemption Fund" means the Trust Fund described in Section 7.4 of this Indenture.

"Remarketing Agent" means any institution designated by the Authority serving as Remarketing Agent pursuant to Section 4.14 of this Indenture.

"Remarketing Agent's Address" means the address or office which the Remarketing Agent designates for the delivery of notices or payments hereunder.

"Remarketing Agreement" means any Remarketing Agreement between the Authority and the Remarketing Agent, as may be amended from time to time.

"Requisite Consent of Bondowners" means the affirmative written consent of Bondowners owning in aggregate not less than a majority in principal amount of the Bonds (other than Bonds owned by the Authority or any "related person" as defined in Section 147(a) of the Internal Revenue Code) at the time Outstanding.

"Reset Date" means the October 1 next following the termination date of each Reset Period.

"Reset Notice" means a written notice, substantially in the form of Exhibit D hereto, given by the Authority to the Remarketing Agent, the Trustee and the Liquidity Facility Provider, not later than 45 days preceding the commencement of each Reset Period (other than the Reset Period which commences on the Conversion Date) (i) specifying the Reset Date for such Reset Period, which date must always be an October 1, (ii) specifying the termination date of such Reset Period, which date must always be a September 30, (iii) requesting the

12

establishment of a Fixed Rate for each stated maturity of Bonds to be in effect during such Reset Period, (iv) identifying the credit enhancement, if any, to be in effect during such Reset Period and enclosing a commitment therefor (or stating that no credit enhancement will be in effect), and (v) enclosing an opinion of Bond Counsel (to be confirmed in writing as of the first day of such Reset Period) to the effect that the establishment of such Reset Period and the Fixed Rate(s) with respect thereto (and the substitution or omission of credit enhancement in respect thereto, if applicable) will not result in an Event of Taxability.

"Reset Period" means (i) the period from the Conversion Date, if any, through and including the September 30 specified in the Conversion Notice as the termination date of the first Reset Period and (ii) each period thereafter from and including the next Reset Date through and including the September 30 specified in the Reset Notice as the termination date of such Reset Period; provided, however, that if, for whatever reason a particular Reset Period is not properly established pursuant to a Reset Notice in accordance with Section 4.2 of this Indenture, the termination date of such Reset Period shall be the September 30 next following the Reset Date.

"Revenues" means all cash and securities held from time to time in the Trust Funds, and the investment earnings thereon.

"Secretary" means the person at the time incumbent in the office of Secretary of the Authority or Assistant Secretary of the Authority.

"Series A Bonds" means the Authority's Economic Development Bonds, 2012 Series A issued under this Indenture in the aggregate principal amount of $32,737,600.

"Series B Bonds" means the Authority's Economic Development Bonds, 2012 Series B issued under this Indenture in the aggregate principal amount of $2,262,400.

"Series C Bonds" means the Authority's Economic Development Bonds, 2012 Series C issued under this Indenture in the aggregate principal amount of $7,500,000.

"Series A Loan Agreement" means the Loan Agreement and related documents, dated as of the Effective Date, between the Authority and the Borrower setting forth certain obligations and undertakings of the Borrower in respect to the Project and the Series A Bonds.

"Series B and C Loan Agreement" means the Loan Agreement and related documents, dated as of the Effective Date, between the Authority and the Project Owner setting forth certain obligations and undertakings of the Project Owner in respect to the Project, the Series B Bonds and the Series C Bonds.

"Series A Note" means the Borrower's Note, dated the Effective Date, payable to the Authority, in the aggregate principal amount of $32,737,600.

"Series B Note" means the Project Owner's Note, dated the Effective Date, payable to the Authority, in the aggregate principal amount of $2,262,400.

"Series C Note" means the Project Owner's Note, dated the Effective Date, payable to the Authority, in the aggregate principal amount of $7,500,000.

4811-6404-3536.6

"Series B Mortgage" means the Mortgage and related documents, dated as of August 31, 2012, from the Project Owner to the Mortgagee, relating to the Series B Bonds.

"Series C Mortgage" means the Mortgage and related documents, dated as of August 31, 2012, from the Project Owner to the Mortgagee, relating to the Series C Bonds.

"Series Resolution" means the Series Resolution of the Members Loan Committee of the Authority, dated July 24, 2012.

"Sub-CDE" means, collectively, WCDLF Sub-CDE XXXIII, LLC, a Wisconsin limited liability company, and WBD Growth Fund VI, LLC, a Wisconsin limited liability company, and any successor, surviving, resulting or transferee entity.

"Substitute Liquidity Facility" means a Liquidity Facility delivered in substitution for the Liquidity Facility then in effect as provided for and as defined in Section 12.2 of this Indenture.

"Supplemental Indenture" means any supplement to or amendment of this Indenture entered into in accordance with Article XIII of this Indenture.

"Supplemental Resolution" means Supplemental Resolution Number 1 of the Authority dated October 19, 2011, to the General Resolution.

"Surplus Project Fund" means the Trust Fund described in Section 6.3 of this Indenture.

"Tax Agreement" means the Tax Compliance Agreement dated August 31, 2012 among the Authority, the Borrower, the Sub-CDE and the Project Owner.

"Tender Date" means a Mandatory Tender Date or Optional Tender Date.

"Tendered Bonds" means Bonds tendered or required to be tendered for purchase in accordance with Section 4.10 of this Indenture.

"Trust Funds" means the trust funds administered by the Trustee under this Indenture other than the Bond Purchase Account, the Rebate Account and the segregated trust accounts described in Sections 2.13, 4.12 and 4.14 of this Indenture.

"Trustee" means Wells Fargo Bank, National Association, and any successor banking corporation, banking association or trust company at the time serving as corporate trustee under this Indenture.

"Trustee's Address" and "Trustee's Principal Office" means the address or office which the Trustee designates for the delivery of notices or payments hereunder. Until changed by notice from the Trustee to the Liquidity Facility Provider, the Remarketing Agent and the Authority, the Trustee's Address and Principal Office is:

14

Wells Fargo Bank, National Association
Attention: Corporate Trust Services
Mail Code MAC N9311-115
625 Marquette Ave., 11th Floor
Minneapolis, Minnesota 55402
Telephone: 612-667-7361
Fax: 612-667-2149

"Untendered Bonds" means Bonds which are required to be tendered for purchase in accordance with the provisions of Sections 4.9 of this Indenture but which in fact are not delivered to the Trustee on or before the applicable Tender Date.

"Variable Rate" means the interest rate borne by the Bonds from time to time after the Conversion Date, if any, determined in accordance with Section 4.2(a) of this Indenture.

Section 1.2    Use of Phrases; Rules of Construction.  The following provisions shall be applied wherever appropriate herein:

"Herein", "hereby", "hereunder", "hereof" and other equivalent words refer to this Indenture as an entirety and not solely to the particular portion of this Indenture in which any such word is used.

The definitions set forth in Section 1.1 hereof shall be deemed applicable whether the words defined are herein used in the singular or the plural.  EACH CAPITALIZED TERM USED HEREIN AND NOT OTHERWISE DEFINED HEREIN SHALL HAVE THE MEANING ASSIGNED THERETO IN THE GENERAL RESOLUTION, SUPPLEMENTAL RESOLUTION OR SERIES RESOLUTION.

Wherever used herein, any pronoun or pronouns shall be deemed to include both the singular and plural and to cover all genders.

Unless otherwise provided, any determinations or reports hereunder which require the application of accounting concepts or principles shall be made in accordance with generally accepted accounting principles.

ARTICLE II

GENERAL PROVISIONS RELATING TO THE BONDS

Section 2.1    Creation of Bonds for Issuance.  There is hereby created for issuance an issue of Bonds to be designated:

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY
ECONOMIC DEVELOPMENT BONDS,
2012 SERIES A, 2012 SERIES B AND 2012 SERIES C

15

4811-6404-3536.6

The Bonds shall be issued in three Series in the aggregate principal amount of Forty-two Million Five Hundred Thousand Dollars ($42,500,000), and the maximum aggregate principal amount of Bonds that may be Outstanding at any one time is hereby expressly limited to such amount.

The Bonds shall be numbered in such manner as the Trustee shall deem appropriate, provided that each particular Bond shall have a different identifying number. The Bonds shall be issuable in the form of typewritten, lithographed, printed or engraved fully registered Bonds in Authorized Denominations.

The Bonds shall mature on the Final Maturity Date and bear interest as provided in Section 4.2 of this Indenture. The Bonds shall specify, as their original issue date, the date of their original issuance and delivery. Each particular Bond shall be dated, as its registration date, the date of its authentication. Bonds authenticated prior to the first Interest Payment Date shall bear interest from the original issue date. Bonds authenticated on or after the first Interest Payment Date applicable thereto shall bear interest from the Interest Payment Date next preceding the date of their authentication unless the date of such authentication is an Interest Payment Date to which interest has been fully paid or provided for, in which case they shall bear interest from such Interest Payment Date. If interest on the Bonds shall be in default, such Bonds shall bear interest from the date to which interest on such Bonds has been paid in full or, if no interest has been paid, then from the date of their original authentication and delivery. Interest is payable on the Bonds based on its Interest Period.

Section 2.2    Parity. This Indenture is for the equal and ratable benefit and security of all Bonds issued and to be issued hereunder, including Bank Bonds. Subject to Section 7.3 of this Indenture, all Bonds shall be of equal rank, and no Bondowner shall be accorded a preference or priority over any other Bondowner except as expressly authorized or provided herein.

Section 2.3    Bonds to be Limited Obligations of Authority. In accordance with the Act and the Series Resolution, the Bonds, including Bank Bonds, shall be limited obligations of the Authority, payable solely from Revenues. The Bonds and the interest thereon are not a debt of the State of Wisconsin or any political subdivision thereof. The Bonds shall not constitute or give rise to any personal liability of any member of the Authority's Governing Body or any officers or employees of the Authority on the Bonds or for any act or omission related to the authorization or issuance of the Bonds. The Authority has no taxing power.

Section 2.4    Execution of Bonds. The Bonds shall be executed on behalf of the Authority by an Authorized Officer under the official seal, if any, of the Authority attested by its Secretary. The signatures of the Authorized Officer and the Secretary on the Bonds may be manual or facsimile. The official seal of the Authority, if any, on the Bonds may be actually impressed or imprinted or may be reproduced thereon by facsimile.

Bonds bearing the manual or facsimile signatures of the persons who were the Authorized Officer and the Secretary at the time of the execution thereof shall be valid and sufficient for all purposes notwithstanding that such persons or either of them have ceased to hold such offices prior to the authentication and delivery of the Bonds or did not hold such

16

offices at the date of the Bonds. For this purpose a Bond executed by facsimile signature shall be deemed to have been executed on the date of the printing thereof.

Section 2.5    Authentication.  The Trustee is hereby appointed as a fiscal agent of the Authority for purposes of authenticating the Bonds.  From time to time after the execution and delivery of this Indenture, the Authority may deliver executed Bonds to the Trustee for authentication, and the Trustee shall authenticate and deliver such Bonds as provided in this Indenture and not otherwise.

No Bond shall be entitled to any benefit under this Indenture or be valid for any purpose unless there appears on such Bond a certificate of authentication substantially in the forms set forth in Exhibit A and Exhibit B hereto, as appropriate, executed on behalf of the Trustee with the manual signature of an authorized signatory of the Trustee.  Such certificate of authentication executed as aforesaid on a Bond shall be conclusive evidence that such Bond has been authenticated and delivered under this Indenture.

Section 2.6    Form of Bonds.  The Bonds shall be issuable only as fully registered Bonds substantially in the form set forth in Exhibit A hereto (in the case of Bonds authenticated prior to the Conversion Date) or Exhibit B hereto (in the case of Bonds authenticated on or after the Conversion Date) of this Indenture.

Section 2.7    Provision for Registration, Transfer and Exchange of Bonds.  The Bonds are issuable only as fully registered bonds, initially registered in the name of Wisconsin & Milwaukee Hotel Funding LLC.  The Bonds may thereafter, except as hereinafter provided, be registered in the name of the Depository or its nominee, which shall thereafter be considered to be the Bondowner for all purposes of this Indenture, including, without limitation, payment by the Authority of principal of, premium, if any, and interest on the Bonds, and receipt of notices and exercise of rights of Bondowners.  While the Bonds are in the Book Entry System, there shall be a single Bond for each maturity which shall be immobilized in the custody of the Depository with the Beneficial Owners having no right to receive the Bonds in the form of physical securities or certificates.  Ownership of Beneficial Ownership Interests in the Bonds shall be shown by book entry on the Book Entry System maintained and operated by the Depository, and transfers of ownership of Beneficial Ownership Interests shall be made only by the Depository and, if applicable, its participants, by book entry, the Authority having no responsibility therefor.  The Bonds as such shall not be transferable or exchangeable, except for transfer to another Depository or to another nominee of a Depository, without further action by the Trustee.

If any Depository determines not to continue to act as a Depository for the Bonds for use in a Book Entry System, the Trustee shall attempt to have established a securities depository/Book Entry System relationship with another qualified Depository under this Indenture.  If the Trustee does not or is unable to do so, the Authority and the Trustee, after the Trustee has made provision for notification of the Beneficial Owners by the then Depository, shall permit withdrawal of the Bonds from the Depository, and authenticate and deliver Bond certificates in fully registered form (in Authorized Denominations) to the assigns of the Depository or its nominee, all at the cost and expense (including costs of printing definitive Bonds) of the Authority.

17

If the Bonds are not in a Book Entry System, the Trustee shall cause a register (herein sometimes referred to as the "Bond Register") to be kept at the Trustee's Principal Office for the purpose of providing for the registration and transfer of Bonds in accordance with the provisions of this Section and such reasonable additional regulations as the Trustee may prescribe. Subject to such regulations, any Bondowner may cause its address on the Bond Register to be changed by giving written notice to the Trustee. At reasonable times and under reasonable regulations established by the Trustee, the Bond Register may be inspected and copied by the Liquidity Facility Provider, the Remarketing Agent, the Authority or by Owners (or a designated representative thereof) of 10% or more in aggregate principal amount of Bonds then Outstanding, the authority of such designated representative to be evidenced to the satisfaction of the Trustee.

Subject to the foregoing provisions regarding the maintenance of a Book Entry System for the Bonds, each Bond shall be fully negotiable. A Bond may be transferred only by a written assignment duly executed by the Bondowner or by such Owner's duly authorized legal representative. Upon presentation and surrender of the Bond together with said executed form of assignment at the Trustee's Principal Office, the Trustee shall, subject to the limitations contained in the last paragraph of this Section 2.7, register the transfer in the Bond Register; provided, however, that the Trustee shall have no obligation to register the transfer unless the executed assignment shall be satisfactory to it in form and substance. Upon registration of the transfer of a Bond, the Trustee shall cancel the surrendered Bond and the Authority shall issue, and the Trustee shall authenticate, one or more new Bonds of Authorized Denominations of the same maturity and interest rate and in the same aggregate principal amount as the surrendered Bond.

Subject to the foregoing provisions regarding the maintenance of a Book Entry System for the Bonds, and to the limitations contained in the last paragraph of this Section 2.7, Bonds may be exchanged at the Trustee's Principal Office for a like aggregate principal amount of Bonds of the same maturity and interest rate in other Authorized Denominations. Each Bond surrendered for exchange shall be accompanied by a written assignment in form and substance satisfactory to the Trustee and duly executed by the Bondowner or by such Owner's duly authorized legal representative. The Authority shall issue and the Trustee shall authenticate such new Bonds as shall be required to accomplish exchanges as aforesaid.

The Bondowner requesting any registration of transfer or exchange of Bonds shall pay with respect thereto any resulting tax or governmental charge. All such payments shall be conditions precedent to the exercise of the Bondowner's rights of registration of transfer or exchange.

All registrations of transfer and exchanges of Bonds shall be accomplished in such manner that no increase or decrease in interest payable on the Bonds results therefrom.

Except in connection with a remarketing of Bonds pursuant to Section 4.13 of this Indenture, the Trustee shall not be required to register the transfer of or to exchange any Bond (i) after the receipt by the Trustee of a Purchase Demand with respect thereto and through the corresponding Optional Tender Date, (ii) after the Trustee has given notice of a Mandatory

18

Case 24-21743-gmh    Doc 638-4    Filed 07/11/25    Page 23 of 112

Tender Date and through the Mandatory Tender Date, (iii) during the fifteen days prior to the mailing of any notice of redemption, or (iv) after such Bond has been selected for redemption.

Section 2.8 <u>Persons Treated as Owners</u>. The Authority, the Trustee and any Alternate Paying Agent may treat the person in whose name any Bond is registered (who, in the case of a Book Entry System, shall be the Depository) as the absolute owner of such Bond for the purpose of receiving payment of the principal of, premium, if any, and interest thereon and for all other purposes whatsoever, whether or not such Bond is overdue and irrespective of any actual, implied or imputed notice to the contrary.

Section 2.9 <u>Manner of Payment of Bonds</u>. The principal of and premium, if any, on each Bond shall be payable to the Owner of such Bond as shown on the Bond Register on the date of payment, upon presentation and surrender at the Trustee's Principal Office. The interest on any Bond which is payable, and is punctually paid or duly provided for, on any Interest Payment Date shall be paid by check drawn by the Trustee payable to the order of the person in whose name that Bond is registered as of the close of business on the Record Date for such interest and mailed to such person at the address shown on the Bond Register.

The principal of, premium, if any, and interest on all Bonds shall be paid in lawful money of the United States of America.

Notwithstanding the foregoing, while the Bonds are in a Book Entry System, payments shall be made as provided in the Letter of Representations.

Section 2.10 <u>Mutilated, Lost, Stolen or Destroyed Bonds</u>. In the event any Bond is mutilated, lost, stolen or destroyed, the Authority may execute and the Trustee may authenticate a new Bond of like date, maturity, interest rate and denomination as the Bond mutilated, lost, stolen or destroyed. In the case of any lost, stolen or destroyed Bond, there shall first be furnished to the Authority and the Trustee evidence of such loss, theft or destruction satisfactory to the Authority and the Trustee, together with indemnity satisfactory to them. In the case of any mutilated Bond, such Bond shall be surrendered to the Trustee. In the event any such Bond shall have matured, the Trustee instead of issuing a substitute Bond may pay the same without surrender thereof. The Authority and the Trustee may charge the Owner of such Bond with their reasonable fees and expenses in this connection.

Section 2.11 <u>Designation of Bond Registrar and Paying Agents</u>. The Trustee shall be the Bond registrar and a paying agent for and in respect of all Bonds. At the written request of the Authority, the Authority may also designate one or more Alternate Paying Agents.

Section 2.12 <u>Disposition of Bonds Upon Payment; Safe-keeping of Bonds Surrendered for Exchange</u>. All Bonds fully paid, fully redeemed or purchased by the Trustee or any Alternate Paying Agent for cancellation under the provisions of this Indenture shall be cancelled when such final payment, redemption or purchase is made, and such cancelled Bonds shall be delivered to the Trustee. Bonds surrendered to the Trustee for exchange or transfer in accordance with <u>Section 2.7</u> hereof, temporary Bonds surrendered for exchange in accordance with <u>Section 2.6</u> hereof, and mutilated Bonds surrendered for exchange in accordance with <u>Section 2.10</u>

19

Case 24-21743-gmh    Doc 638-4    Filed 07/11/25    Page 24 of 112

hereof shall be canceled by the Trustee. All canceled Bonds shall be destroyed by the Trustee by cremation, shredding or other means deemed appropriate by the Trustee.

Section 2.13    Nonpresentment of Bonds.  In the event any Bond shall not be presented for payment when the principal thereof becomes due, either at stated maturity or at the date fixed for redemption thereof, if cash sufficient to pay such Bond shall be held by the Trustee for the benefit of the Owner thereof and available for such payment, all liability of the Authority to the Owner thereof for the payment of such Bond shall forthwith cease, terminate and be completely discharged, and thereupon it shall be the duty of the Trustee to hold such cash in a segregated trust account without liability for interest thereon, for the benefit of the Owner of such Bond who shall thereafter be restricted exclusively to such account for any claim of whatever nature on such person's part under this Indenture or on or with respect to said Bond. Such cash in such segregated trust account shall not be available for payment on other Outstanding Bonds and any such Bond shall no longer be deemed Outstanding under this Indenture.  If any such Bond has not been presented within 60 days of the date the principal became due, the Trustee shall promptly notify the person identified as the Owner of such Bond in the Bond Register (as of the date the principal of such Bond became due) by first class mail that such Bond has become due and that the amount due is being held by the Trustee hereunder.

After any such cash has been held in such segregated trust account for two years, the Trustee shall certify the amount thereof and the identifying numbers of the particular Bonds whose Owners have a claim there against (which Owners shall also be identified, if known) and deliver such certificate and such cash to the Authority.  Thereafter such Owners shall have an unsecured claim against the Authority in respect of payment of such unpresented Bonds, and shall have no further claim whatever against the Authority, the Trustee or the Liquidity Facility Provider in respect thereof.

Section 2.14    Delivery of Bonds.  Upon the execution and delivery of this Indenture, the Authority shall issue and execute and deliver the Bonds to the Trustee, and the Trustee shall authenticate such Bonds and deliver them to the purchaser(s) as may be directed by the Authority.

Prior to the delivery of the Bonds by the Trustee there shall be filed with the Trustee:

      (a)    a certified copy of the General Resolution;

      (b)    a certified copy of the Supplemental Resolution;

      (c)    a certified copy of the Series Resolution authorizing the issuance of the Bonds and the execution and delivery of this Indenture;

      (d)    an original executed counterpart of this Indenture;

      (e)    the original executed Promissory Notes and Loan Agreements;

      (f)    the original executed Pledge Agreement;

      (g)    true and correct copies of the Mortgages; and

20

(h)    a request and authorization to the Trustee, executed on behalf of the Authority by an Authorized Officer, to deliver the Bonds to the purchaser(s) therein identified, in the form and amount requested upon payment to the Trustee, for the account of the Authority, of a specified sum.

## ARTICLE III

## GENERAL PROVISIONS RELATING TO
## REDEMPTION OF BONDS PRIOR TO MATURITY

Section 3.1    Limitation of Redemptions Prior to Maturity.  No Bond may be called for redemption prior to its stated maturity except as provided in Article IV of this Indenture; provided, however, that nothing herein shall be deemed to limit the right of acceleration of Bond maturities upon the occurrence of an Event of Default.

Section 3.2    Notice and Effect of Redemption.  The Trustee shall give notice of the call for any redemption of Bonds prior to maturity by mailing a copy of the redemption notice by first class mail not less than 30 nor more than 60 days prior to the redemption date to the Owner of each Bond to be redeemed at the address shown on the Bond Register; provided, however, that failure to give any such notice as aforesaid or any defect therein with respect to any particular Bond shall not affect the validity of any proceedings for the redemption of any other Bond.

Each redemption notice shall (a) identify the Bonds to be redeemed by name, CUSIP number, date of issue, interest rate and maturity date and, if only a portion of the Bonds are to be redeemed, the certificate numbers and the respective principal amounts to be redeemed, (b) identify the redemption date, (c) state the redemption price, (d) state that interest on the Bonds or the portions thereof called for redemption will (unless such Bonds are purchased in lieu of redemption pursuant to Section 12.5 hereof) cease to accrue from and after the redemption date if funds sufficient for their redemption and available for the purpose are on deposit with the Trustee on the redemption date, and (e) state that payment for the Bonds will be made on the redemption date at the principal trust office of the Trustee during normal business hours upon the surrender of the Bonds to be redeemed.

Notice of redemption having been given as aforesaid, the Bonds so called for redemption, together with the premium, if any and accrued interest thereon, shall become due and payable on the redemption date.  If pursuant to this Indenture the Trustee shall hold funds which are available and sufficient in amount to pay the principal of and premium, if any, on the Bonds or portions thereof thus called for redemption and to pay the interest thereon to the redemption date, such Bonds or portions thereof shall (unless such Bonds are purchased in lieu of redemption pursuant to Section 12.5 hereof) cease to bear interest from and after said redemption date.

Section 3.3    Selection of Bonds for Redemption; Manner of Effecting Partial Redemptions of Particular Bonds.  If less than all Bonds are to be redeemed pursuant to the provisions of Section 4.3 hereof, the Authority, at the direction of the Project Owner, shall specify the manner in which the amounts so redeemed are to be credited against the particular installments of principal set forth in Section 4.4 hereof; provided, however, Bank Bonds shall be the first Bonds selected for redemption. Any such means of selecting Bonds for redemption shall

21

provide for the possibility of partial redemption of any Bond of a denomination greater than the smallest Authorized Denomination.

Particular Bonds may be redeemed only in multiples of the smallest Authorized Denomination (hereinafter called a "Unit"). In the case of Bonds of denominations greater than a Unit, each Unit shall be treated as though it were a separate Bond in the denomination of a Unit. If it is determined that one or more, but not all of the Units of principal amount represented by any such Bond is to be called for redemption, then upon notice of redemption of such Unit or Units, the Owner of such Bond shall present and surrender the same to the Trustee (i) for the payment of the redemption price (including the redemption premium, if any, and interest to the date fixed for redemption) in respect of the Unit or Units called for redemption and (ii) in exchange for a new Bond in the aggregate principal amount of the unredeemed balance of the principal amount not called for redemption. New Bonds representing the unredeemed balance of the principal amount of such Bond shall be issued to the registered Owner thereof without charge therefor. If the Owner of any such Bond shall fail to present such Bond to the Trustee for payment and exchange as aforesaid, such Bond shall nevertheless become due and payable on the date fixed for redemption to the extent of the Unit or Units of principal amount called for redemption (and to that extent only), and (subject to Section 3.2 hereof) interest shall cease to accrue on the portion of the principal amount of such Bond represented by such Unit or Units from and after the date fixed for redemption.

ARTICLE IV

TERMS OF THE BONDS

Section 4.1     Maturity.  The entire principal amount of the Bonds shall become due and payable on the Final Maturity Date.

Section 4.2     Interest on the Bonds.

(a)     Prior to the Conversion Date, each Series of the Bonds shall bear interest at the Fixed Rate, payable on the dates set forth on SCHEDULE I to this Indenture. Upon and during the continuance of an Event of Default, each Series of the Bonds shall bear interest at the Default Rate. Following the Conversion Date, the Bonds shall bear interest at the Variable Rate, determined from time to time in accordance with the provisions of this Section 4.2(a), payable on the first Business Day of each March, June, September and December, commencing March 1, 2019, and at maturity. The Variable Rate for each Calculation Period shall be determined on the Determination Date with respect thereto and shall be the lesser of (i) the Maximum Rate, or (ii) the minimum rate of interest which, in the judgment of the Remarketing Agent, under prevailing market conditions, taking into account the current rates for tax-exempt securities, or taxable securities as applicable, comparable in length of interest rate adjustment periods, liquidity, security and creditworthiness to the Bonds, would enable the Bonds to be sold at a price of par, plus accrued interest, if any, on the Determination Date. The Remarketing Agent shall determine the Variable Rate for each Calculation Period on the corresponding Determination Date, and shall notify the Trustee and the Authority of such determination on such date by facsimile or other electronic means. In the event that the Remarketing Agent shall fail for any reason to determine, and notify the Trustee and the Authority of, the Variable Rate for

22

any Calculation Period, the Variable Rate for such Calculation Period shall be equal to the Variable Rate in effect immediately prior to the commencement of such Calculation Period. Interest accruing at the Variable Rate shall be computed on the basis of a 365 or 366-day year, as the case may be, and the actual number of days elapsed.

(b)     The interest rate on the Bonds may be converted from the Variable Rate to a Fixed Rate as follows:

(1)     The Authority may designate any Business Day as a Proposed Conversion Date by delivering to the Trustee, the Remarketing Agent and the Liquidity Facility Provider a Conversion Notice not less than 45 days, nor more than 60 days, prior to the Proposed Conversion Date (unless a shorter notice shall be acceptable to the Trustee and the Remarketing Agent). Such Conversion Notice shall (a) identify the Proposed Conversion Date and designate the termination date (which date must always be a September 30) of the Reset Period which is to commence on the Proposed Conversion Date, (b) request the establishment of a Fixed Rate for each stated maturity of Bonds to be in effect during such Reset Period, (c) describe the credit enhancement, if any, to be in effect for the Reset Period commencing on the Conversion Date and identify the provider in respect thereto (or state that no credit enhancement will be in effect), and (d) be accompanied by a written opinion of Bond Counsel, addressed to the Trustee, the Authority and the Remarketing Agent, to the effect that the conversion of the interest rate on the Bonds from the Variable Rate to the Fixed Rate for such Reset Period (and the substitution or omission of a credit enhancement in respect thereto, if applicable) is permitted by this Indenture, and that such conversion and the delivery of the credit enhancement, if any, described in clause (c) above or the omission of a credit enhancement, as applicable, will not (upon satisfaction of such conditions as may be set forth therein) result in interest on the Bonds being included in gross income for federal income tax purposes.

(2)     Upon receipt of a Conversion Notice and Bond Counsel Opinion referred to in (b)(1) above, the Trustee shall determine whether such Conversion Notice complies with paragraph (1) above, and shall notify the Remarketing Agent, the Liquidity Facility Provider and the Authority of such determination. If the Conversion Notice does comply with said paragraph (1), the Trustee shall also notify the Bondowners of the mandatory tender on the Proposed Conversion Date as provided in Section 4.8 hereof.

(3)     The Authority may rescind the Conversion Notice by delivering to the Trustee and the Remarketing Agent, no later than eight days prior to the Proposed Conversion Date, a notice stating that the Authority wishes to rescind the Conversion Notice and have the Bonds continue to bear interest at the Variable Rate on and after the Proposed Conversion Date.

(4)     Upon receipt of notice from the Trustee under paragraph (2) above, and unless the Remarketing Agent shall have received notice from the Authority under paragraph (3) above, the Remarketing Agent shall determine the Fixed Rate (in accordance with the procedure set forth in the definition of such term in Section 1.1 of this Indenture) to be in effect for the Reset Period commencing on the Proposed

23

Conversion Date and shall notify the Trustee of such determination by facsimile or other electronic means.

(5)     On the Proposed Conversion Date, the Authority shall cause to be delivered: (a) to the Trustee, the credit enhancement, if any, described in paragraph (1)(c) above, together with all other applicable items required by Section 12.2 hereof and evidence that the Swap Agreement will be terminated on or prior to the Proposed Conversion Date and (b) to the Trustee and the Remarketing Agent, a written opinion of Bond Counsel, dated the Proposed Conversion Date, to the effect that the conversion of the interest rate on the Bonds from the Variable Rate to the Fixed Rate for the proposed Reset Period and the delivery of the credit enhancement, if any, described in clause (a) above, will not result in an Event of Taxability.

(6)     If all of the requirements of paragraphs (1), (2), (4) and (5) above are met, if the Authority has not rescinded the Conversion Notice pursuant to paragraph (3) above, and if by 10:00 a.m., Central time, on the Proposed Conversion Date the Remarketing Agent has successfully remarketed all of the Bonds at the Fixed Rate for the designated Reset Period and the proceeds of such remarketing are available in the Bond Purchase Account pursuant to Section 4.11, the Proposed Conversion Date shall be the Conversion Date and the Bonds shall bear interest at the Fixed Rate for such Reset Period. If the Authority rescinds the Conversion Notice pursuant to paragraph (3) above, if for any reason the Remarketing Agent fails to determine and notify the Trustee of the Fixed Rate as described in paragraph (4) above, if the Authority fails to cause to be delivered the credit enhancement, if any, and opinion of Bond Counsel as described in paragraph (5) above, or if the Remarketing Agent has not successfully remarketed all of the Bonds and caused the proceeds thereof to be available in the Bond Purchase Account by 10:00 a.m., Central Time, on the Proposed Conversion Date, the Proposed Conversion Date shall not be the Conversion Date, the Bonds shall continue to bear interest at the Variable Rate and the Remarketing Agent shall remarket the Tendered Bonds in accordance with Section 4.13 or 4.14 hereof, as applicable.

(c)     Not less than 45 days nor more than 60 days preceding the expiration of each Reset Period (other than a Reset Period which expires on the Final Maturity Date), the Authority shall provide a Reset Notice to the Trustee and the Remarketing Agent. If the Authority delivers to the Trustee a document purporting to be a Reset Notice, the Trustee shall as promptly as possible determine whether it is proper and sufficient as a Reset Notice pursuant to this Indenture. If the Trustee determines that a purported Reset Notice is not sufficient or in proper form, it shall promptly notify the Authority and the Remarketing Agent and give the reasons for its determination and an opportunity for the Authority to cure any defect. If the Trustee determines that the Reset Notice is sufficient and in proper form, it shall promptly give notice thereof to the Authority and the Remarketing Agent by facsimile transmission (promptly confirmed by written notice to such persons, which writing may be by electronic means). The Trustee shall notify Bondowners of the mandatory tender on the next Reset Date as provided in Section 4.9 hereof.

It is a condition to the proper establishment by Reset Notice of any Reset Period and the Fixed Rate with respect thereto that the Authority shall have caused to be delivered to the

24

Trustee on the Reset Date (i) if a Liquidity Facility is to be in effect for such Reset Period, evidence that the requirements in respect to such Liquidity Facility in Section 12.2 of this Indenture will be satisfied and (ii) a written opinion of Bond Counsel satisfactory to the Trustee, dated the Reset Date, to the effect that the establishment of such Reset Period and the Fixed Rate with respect thereto and the delivery of the Liquidity Facility, if any, described in the Reset Notice will not result in an Event of Taxability. If a Reset Notice shall have been delivered for the establishment of a Reset Period and the foregoing conditions to the establishment of the Reset Period have not been fulfilled, the Reset Period shall nevertheless commence on the Reset Date but its termination date shall be the September 30 next following the Reset Date and if not otherwise established, the Fixed Rate shall be the rate selected by the Remarketing Agent and approved by the Authority. It is the intention of the Authority that the establishment of Reset Periods and Fixed Rates not require any further action by the Authority and that it not be, or be treated as, a "reissuance" or "refunding" of the Bonds for federal income tax purposes.

(d)     From and after the Conversion Date, if any, the Bonds shall bear interest during each Reset Period at the Fixed Rate for such Reset Period established as described herein, payable on the first day of April and October of each year, commencing the first such date which is at least 30 days after the Conversion Date, and at maturity. Interest accruing at the Fixed Rate shall be calculated on the basis of a 360-day year, and the actual number of days elapsed.

To the extent permitted by law, overdue principal shall bear interest at the same rate as was borne by the Bonds on the due date of the payment that is delinquent.

Section 4.3     Optional Redemption of Bonds. Upon the direction of the Project Owner to the Authority (which direction shall be made in the event of a prepayment of a Promissory Note but otherwise may be made by the Project Owner from any source of funds available), the Bonds are subject to redemption, without notice prior to the end of the Lockout Period pursuant to this Section 4.3:

(a)     as to the Series A and the Series B Bonds, during the period from December 30, 2014 through December 30, 2016, in whole or in part (in multiples of $100) on any Interest Payment Date, at a redemption price of 100.50% of the principal amount of Series A and Series B Bonds so redeemed, plus accrued interest to the redemption date;

(b)     as to the Series A and the Series B Bonds, subsequent to December 30, 2016, in whole or in part (in multiples of $100) on any Interest Payment Date, at a redemption price of 100% of the principal amount of Series A and Series B Bonds so redeemed, plus accrued interest to the redemption date, and without premium;

(c)     as to the Series C Bonds, subsequent to December 30, 2014, in whole or in part (in multiples of $100) on any Interest Payment Date, at a redemption price of 100% of the principal amount of 2012 Series C Bonds so redeemed, plus accrued interest to the redemption date, and without premium;

(d)     during any Reset Period, on the redemption dates and at redemption prices as determined by the Remarketing Agent, which in the judgment of the Remarketing Agent, under

25

prevailing market conditions, shall be the redemption dates and prices which enable the Remarketing Agent to sell the Bonds at par on the commencement date of such Reset Period; and

(e)     in addition, the Bonds are subject to redemption in whole or in part (in multiples of $100) on any Reset Date at a redemption price equal to the principal amount of the Bonds or portions thereof so redeemed, plus accrued interest to the redemption date, and without premium.

The Trustee shall give notice of the call for redemption pursuant to paragraphs (a), (b) or (c) of this <u>Section 4.3</u> in the manner provided in <u>Section 3.2</u> of this Indenture.

Section 4.4     <u>Mandatory Prepayment of Bonds</u>.  The Series A Bonds are subject to mandatory prepayment, without presentment, and without notice as required by <u>Section 3.2</u> of this Indenture, at the times and in the amounts set forth on <u>SCHEDULE I</u> to this Indenture.

The Series B Bonds are subject to mandatory prepayment, without presentment, and without notice as required by <u>Section 3.2</u> of this Indenture, at the times and in the amounts set forth on <u>SCHEDULE I</u> to this Indenture.

Section 4.5     <u>Extraordinary Special Redemption After the Lockout Period</u>.  The Bonds shall be subject to redemption, in whole but not in part, on any Interest Payment Date after the Lockout Period, if the Authority, at the direction of the Project Owner, elects to redeem Bonds after the occurrence of any of the following events:

(a)     The Project shall have been damaged or destroyed to such extent that (i) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction, or (ii) the Project Owner is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(b)     Title to or the temporary use of all or substantially all of the Project shall have been taken under the exercise of the power of eminent domain by any governmental authority to such extent that the Project Owner is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(c)     As a result of any changes in the Constitution of Wisconsin or the Constitution of the United States of America or of legislative or administrative action (whether state or federal) or by final decree, judgment or order of any court or administrative body (whether state or federal), the Promissory Notes shall have become void or unenforceable or impossible of performance in accordance with the intent and purposes of the parties as expressed in the Promissory Notes, or unreasonable burdens or excessive liabilities shall have been imposed on the Project Owner or the Borrower as a consequence of having the Bonds or the Promissory Notes Outstanding, including without limitation federal, state or other ad valorem, property, income or other taxes not being imposed on the date of the Promissory Notes.

The redemption price shall be 100% of the principal amount of Bonds so redeemed, plus accrued interest to the redemption date, and without premium.  The Trustee shall give notice of a call for redemption pursuant to this <u>Section 4.5</u> in the manner provided in <u>Section 3.2</u> of this Indenture.

4811-6404-3536.6

Section 4.6    Provisions Regarding Redemption of Bank Bonds.  Notwithstanding any other provisions contained herein to the contrary, Bank Bonds shall be redeemed on the dates, in the amounts and at redemption prices as are set forth in the Liquidity Facility.

Section 4.7    Mandatory Redemption of Bonds Upon Determination of Taxability After the Lockout Period.

(a)    After the Lockout Period, the Bonds shall be subject to mandatory redemption in whole on the earliest practicable Interest Payment Date (selected by the Trustee) within 60 days following a Determination of Taxability.  The redemption price shall be 100% of the principal amount of Bonds so redeemed, plus accrued interest to the redemption date, and without premium.  Redemption of Bonds as aforesaid shall be the Bondholders' sole remedy upon an Event of Taxability.

(b)    The Trustee shall give notice of a call for redemption pursuant to this Section 4.6 in the manner provided in Section 3.2 of this Indenture.

Section 4.8    Purchase of Bonds Upon Demand.  While the Bonds bear interest at the Variable Rate, any Bond or Beneficial Ownership Interest therein (other than a Bank Bond or Authority Bond), or any portion thereof in an Authorized Denomination, shall be purchased from the funds available therefor in the Bond Purchase Account for such Bonds, at a purchase price equal to 100% of the principal amount thereof, plus accrued interest to the Optional Tender Date, upon the demand of the Owner or Beneficial Owner thereof as provided in this Section 4.8.  Such demand shall be made by delivery to the Trustee by not later than 5:00 p.m., New York City time on any Business Day, of the following:

(a)    A written irrevocable notice (a "Purchase Demand"), which will be effective upon receipt, which states: (i) the name and address of the registered owner, the principal amount of such Variable Rate Bond (and the portion to be tendered, if less than the full principal thereof is to be tendered, provided the same is an Authorized Denomination) and the applicable Variable Rate Bond number and CUSIP number, (ii) the date on which such Variable Rate Bond shall be so purchased, which date shall be a Business Day not prior to the seventh day next succeeding the date of the delivery of such notice to the Trustee, and (iii) each Variable Rate Bond to be purchased.

(b)    The registered owner of any Variable Rate Bond shall have no right to tender, nor shall there be any purchase of less than the entire amount of any Variable Rate Bonds bearing interest at a Variable Rate unless the amount to be purchased and the amount to be retained by such Owner are in Authorized Denominations.

The Trustee shall promptly (but in no event later than 11:00 a.m., New York City time, on the Business Day following receipt of the Purchase Demand) give notice by facsimile or other electronic means not later than the Business Day following, to the Remarketing Agent specifying the contents of each such Purchase Demand.  Such Purchase Demand, once transmitted to the Trustee, shall be irrevocable with respect to the tender for which such Purchase Demand was delivered, and such tender shall occur on the Business Day specified in such Purchase Demand.

27

Each Owner of any Bonds that are to be tendered pursuant to this Section shall be entitled to receive the proceeds of such tender by delivering such Bonds (with all necessary endorsements and guarantees of signature) to the Trustee; provided, however, that each such Bond shall be so purchased only if such Bond delivered to the Trustee shall conform in all respects to the description of it in the Purchase Demand; and further, provided that in order to receive payment on the Optional Tender Date, such delivery must be made at any time at or prior to 11:00 a.m., New York City time, on the Optional Tender Date with respect to such Bonds unless the registered owner of the tendered Bond has previously certified to the Trustee that it is an open-ended diversified management investment company (registered under the Investment Company Act of 1940, as amended), in which case the delivery of such Bond need not be made until 1:30 p.m., New York City time, on the date such Bond is to be purchased from such registered owner. Owners of any Bonds that are delivered to the Trustee after the time stated above shall not be entitled to receive payment from the Trustee of the purchase price until the later of the next Business Day following (i) the Optional Tender Date, or (ii) the date of delivery of such Bonds. The purchase price of any such tendered Bonds (or portions of them in Authorized Denominations) shall be payable on the applicable Optional Tender Date by the Trustee, but only from amounts received by it for such purpose pursuant to this Indenture in immediately available funds. Payment shall be made by wire transfer to any Owner of at least $1,000,000 aggregate principal amount of Bonds upon written notice from such Owner containing the wire transfer address (which shall be in the continental United States) to which such Owner wishes to have such wire directed, if such written notice is received with the applicable Purchase Demand when such Purchase Demand is delivered to the Trustee and such Owner complies with the reasonable requirements of the Trustee.

If any Bonds are held by a Depository in a Book-Entry System, a Beneficial Owner shall have the right optionally to tender for purchase its beneficial interest in any Outstanding Bonds (or portion of them in an Authorized Denomination) as described below.

(a) Such right shall be exercised by delivery by the Beneficial Owner to the Remarketing Agent or other participant at its principal office of an irrevocable written notice identifying the name and address of such Beneficial Owner and stating that such Beneficial Owner will cause its beneficial interest (or portion of it in an Authorized Denomination) to be purchased, the amount of such interest to be purchased, the date on which such interest will be purchased (which date shall be a Business Day at least seven days after delivery of such notice to the Remarketing Agent) and specifying the Remarketing Agent or other participant as the participant through which the Beneficial Owner maintains its interest. Upon delivery of such notice, the Beneficial Owner shall cause its beneficial ownership interest in any Variable Rate Bonds (or the portion of them specified in the foregoing notice) being purchased to be transferred to the Remarketing Agent at or prior to 11:00 a.m., New York City time, on the Optional Tender Date, in accordance with the rules and procedures of the applicable Book-Entry System.

(b) Bonds need not be physically tendered on the Tender Date, and transfers of beneficial ownership interests will be effected by the Depository in accordance with its rules and procedures.

4811-6404-3536.6

(c)     Notices required to be given by the Trustee shall be given by the Remarketing Agent, and the purchase price of tendered Bonds shall be paid to the account of the Remarketing Agent for purchase through the Securities Depository.

There is no right of purchase on demand of an Owner with respect to (i) Bank Bonds (except as provided in the Liquidity Facility), or (ii) Variable Rate Bonds held by or for the benefit of the Authority.

Section 4.9     Mandatory Tender of Bonds for Purchase.  All Bonds of a particular Series or the Beneficial Ownership Interests therein (other than Bank Bonds and Authority Bonds) shall be subject to mandatory tender for purchase in accordance with Section 4.10 hereof on each of the following dates (a "Mandatory Tender Date"):

(a)     The initial Conversion Date and each Proposed Conversion Date thereafter;

(b)     prior to the Conversion Date, the first Business Day of the month in which the Liquidity Facility Expiration Date is to occur unless, at least 45 days prior to such first Business Day of the month, the Authority shall have caused to be delivered to the Trustee an amendment extending the Liquidity Facility Expiration Date to a new date meeting the requirements of Section 12.2(b) hereof or the Liquidity Facility shall automatically extend to such date pursuant to its terms or a Substitute Liquidity Facility meeting the requirements of Section 12.2 hereof (except in the event no Liquidity Facility is required as set forth in Section 4.16);

(c)     after the Conversion Date, each Reset Date; provided that if any such Reset Date is not a Business Day, then the first Business Day thereafter; and

(d)     prior to the Conversion Date, the date set by the Trustee which is at least 5 Business Days prior to the last day on which funds will be available under the Liquidity Facility due to the occurrence of an event of default under the  Liquidity Facility (other than a Liquidity Facility Default) as set forth in Section 4.17 hereof.

(e)     prior to the Conversion Date, on each Liquidity Facility Substitution Date other than a Substitute Liquidity Facility satisfying the requirements of 12.2(e)(i) or (ii) hereof.

The Trustee shall give notice of each Mandatory Tender Date in the same manner as notice of redemption of Bonds pursuant to Section 3.2 hereof (other than as provided in Section 4.17 with respect to (d) above). Such notice shall (i) identify the Bonds by name, CUSIP number, date of issue and maturity date, (ii) state the Mandatory Tender Date, (iii) state that all Bonds (or Beneficial Ownership Interests, as the case may be) are subject to mandatory tender for purchase at a purchase price equal to 100% of the principal amount thereof, plus accrued interest to the Mandatory Tender Date, (iv) state that, if moneys in immediately available funds are available and on hand with the Trustee on the Mandatory Tender Date, all Bonds (or Beneficial Ownership Interests, as the case may be) shall be deemed tendered, whether or not so tendered, and that on and after the Mandatory Tender Date, the Owner (or Beneficial Owner) shall have no further rights in such Bond other than the right to receive the purchase price thereof upon presentation of such Bond to the Trustee on any Business Day on or after the Mandatory Tender Date (or upon the transfer of such Beneficial Ownership Interest as directed by the

29

Trustee) and (v) in the case of a mandatory tender of Bonds, state the place where Bonds may be presented for purchase.

Section 4.10    Purchase of Tendered Bonds.    All Bonds or Beneficial Ownership Interests, as the case may be (other than Bank Bonds or Authority Bonds), with respect to which the Owners or Beneficial Owners, as the case may be, thereof have delivered Purchase Demands pursuant to Section 4.8 shall be purchased on an Optional Tender Date, and all Bonds or Beneficial Ownership Interests, as the case may be (other than Bank Bonds or Authority Bonds), shall be purchased on a Mandatory Tender Date, at a purchase price equal to 100% of the principal amount thereof, plus accrued interest to the Tender Date, from moneys available therefor in the Bond Purchase Account. Provided that funds are available to the Trustee to pay the purchase price thereof:

   (a)    in the case of the tender of Bonds:

          (1)    all Tendered Bonds shall be deemed tendered, whether or not actually tendered, on the Tender Date;

          (2)    interest accruing on the Tendered Bonds on and after the Tender Date shall cease to be payable to the former Owners of such Tendered Bonds, who shall have no further interest or rights in such Bonds, except the right to receive payment of the purchase price thereof exclusively from moneys held by the Trustee for such purpose upon presentation of such Bonds to the Trustee at its Principal Office on any Business Day on or after the Tender Date; and

          (3)    the Trustee shall authenticate and deliver Bonds to the new Owners thereof as provided in Section 4.11 hereof.

Section 4.11    Bond Purchase Account.    There is hereby created by the Authority and ordered established with the Trustee a trust account to be designated with the name of the Authority and the Bonds and the label "Bond Purchase Account." There shall be deposited into the Bond Purchase Account, when and as received by the Trustee (i) all funds received from the Remarketing Agent on a Tender Date for the purchase of Tendered Bonds (or Beneficial Ownership Interests therein) in accordance with Section 4.13 of this Indenture, (ii) all funds received from the Liquidity Facility Provider pursuant to a draw made by the Trustee under Section 12.1(a) hereof; and (iii) any other funds deposited therein by or on behalf of the Authority. No other funds shall be accepted by the Trustee for deposit into the Bond Purchase Account. Funds in the Bond Purchase Account shall be held in trust for the account of the respective owners of such funds at the time of the deposit thereof into the Bond Purchase Account until such funds are applied by the Trustee on the Tender Date to pay the purchase price of Tendered Bonds or Beneficial Ownership Interests. Funds in the Bond Purchase Account are not pledged to, and are not available to pay, the Counterparty under the Swap Agreement. Application of such funds to pay the purchase price of Beneficial Ownership Interests shall be accomplished by Trustee through the Depository and its participants, and the Trustee shall have no obligation to transmit any such funds directly to a Beneficial Owner. Such funds may be invested only in Government Obligations (or securities as to which timely payment of both principal and interest is unconditionally guaranteed by the United States of America) maturing

30

no later than the date(s) on which such funds are expected to be needed for the purposes of the Bond Purchase Account.

Funds for the payment of such purchase price shall be derived from the following sources in the following order:

first, from proceeds of the remarketing of the Bonds (or Beneficial Ownership Interests) by the Remarketing Agent as described in Section 4.13 hereof;

second, from proceeds of a draw on the Liquidity Facility, as applicable; and

third, from any other funds in the Bond Purchase Account applicable to the Bonds.

Each Tendered Bond delivered to the Trustee pursuant to Section 4.10 of this Indenture shall be held in trust in the Bond Purchase Account for the account of the Owner of such Tendered Bond until the purchase price shall have been paid in full to such Owner. Upon payment in full of the purchase price of a Tendered Bond or Beneficial Ownership Interest from the Bond Purchase Account, the Tendered Bond or Beneficial Ownership Interest, as the case may be, subject to the provisions of Section 4.10, shall (a) in the case of Bonds purchased with proceeds of the remarketing thereof, be registered and delivered by the Trustee as directed by the Remarketing Agent, (b) in the case of Beneficial Ownership Interests purchased with the proceeds of the remarketing thereof, be recorded on the records of the Depository as directed by the Trustee pursuant to instructions from the Remarketing Agent, (c) in the case of Bonds purchased with the proceeds of a draw on the Liquidity Facility be registered in the name of the Liquidity Facility Provider and held by the Trustee, except as otherwise directed by the Liquidity Facility Provider, (d) in the case of Beneficial Ownership Interests purchased with the proceeds of a draw on the Liquidity Facility be recorded on the records of the Depository as directed by the Trustee pursuant to instructions from the Liquidity Facility Provider, (e) in the case of Bonds purchased with other funds in the Bond Purchase Account, registered and delivered by the Trustee as directed by the Authority (which includes registration or identification of the Borrower as the Beneficial Owner) and (f) in the case of Beneficial Ownership Interests purchased with other funds in the Bond Purchase Account, be recorded on the records of the Depository as directed by the Trustee pursuant to instructions of the Authority (which includes registration or identification of the Borrower as the Beneficial Owner).

Section 4.12    Treatment of Untendered Bond Certificates.    Untendered Bonds shall cease to bear interest on the Tender Date if funds sufficient to pay the purchase price of all Untendered Bonds (including any accrued and unpaid interest) shall be held by the Trustee in the Bond Purchase Account. All liability of the Authority to the Owner thereof for the payment of such Untendered Bond shall forthwith cease, terminate and be completely discharged, and thereupon it shall be the duty of the Trustee to hold such funds in a separate segregated trust account, without liability for interest thereon, for the benefit of the Owner of such Untendered Bond who shall thereafter be restricted exclusively to such account for any claim of whatever nature on such person's part under this Indenture or on or with respect to such Bond. Such funds in such segregated trust account shall not be available for payment on other Outstanding Bonds, and such Untendered Bonds shall not be deemed to be Outstanding under this Indenture.

31

After any such funds have been held in such segregated trust account for two years, the Trustee shall certify the amount thereof and the identifying numbers of the particular Bonds whose Owners have a claim there against (which Owners shall also be identified, if known) and deliver such certificate and such funds to the Authority. Thereafter such Owners shall have an unsecured claim against the Authority in respect of payment of such Untendered Bonds, and shall have no further claim whatever against the Trustee in respect thereof.

Section 4.13    Remarketing of Tendered Bonds.  Upon receipt of a Purchase Demand, the Trustee shall notify the Remarketing Agent by facsimile or other electronic means, of the principal amount of Bonds or Beneficial Ownership Interests to be purchased on the Optional Tender Date.

Upon being notified by the Trustee of its receipt of a Purchase Demand, the Remarketing Agent shall attempt to remarket the Bonds or Beneficial Ownership Interests described in such Purchase Demand in accordance with this Section 4.13; provided, however, that if the Authority notifies the Remarketing Agent of a principal amount of Tendered Bonds or Beneficial Ownership Interests which the Remarketing Agent shall not remarket, then the Remarketing Agent shall not attempt to remarket the principal amount of the Bonds or Beneficial Ownership Interests so identified.

If a Proposed Conversion Date shall not be the Conversion Date and the Bonds continue to bear interest at the Variable Rate as described in Section 4.2(b)(6), the Remarketing Agent shall attempt to remarket the Bonds required to be purchased on the Proposed Conversion Date in accordance with this Section 4.13; provided, however, that if the Authority notifies the Remarketing Agent of a principal amount of Tendered Bonds or Beneficial Ownership Interests which the Remarketing Agent shall not remarket, then the Remarketing Agent shall not attempt to remarket the principal amount of the Bonds or Beneficial Ownership Interests so identified.

On or before the September 1 immediately preceding each Reset Date, the Authority shall notify the  provider of the Liquidity Facility, if any, the Trustee and the Remarketing Agent of the principal amount of Bonds which the Remarketing Agent shall attempt to remarket in accordance with this Section 4.13.

The Remarketing Agent shall use its best efforts to solicit purchases of Tendered Bonds or Beneficial Ownership Interests at a price of par plus accrued interest on each Tender Date. The Remarketing Agent shall pay the purchase price received by it (for any Tendered Bonds or Beneficial Ownership Interests so remarketed) to the Trustee for deposit in the Bond Purchase Account prior to 10:15 a.m., New York City time, on the Tender Date.  In addition, the Remarketing Agent shall notify the Trustee by 10:15 a.m., New York City time on the Tender Date of the amount of any Tendered Bonds which have not been remarketed on such Tender Date and for which the Trustee shall be required to make a request for payment under the Liquidity Facility.  Upon request of the Authority or Liquidity Facility Provider from time to time, the Remarketing Agent shall advise the requesting party of the status of the remarketing effort and the Trustee shall advise the requesting party of the balance held by it in the Bond Purchase Account.

4811-6404-3536.6

The Remarketing Agent shall have the right to purchase Bonds or Beneficial Ownership Interests therein (including Bank Bonds and Authority Bonds) for its own account to the same extent as if it were not the Remarketing Agent hereunder, and the purchase price paid by the Remarketing Agent for Tendered Bonds or Beneficial Ownership Interests shall be considered proceeds of the remarketing of such Tendered Bonds or Beneficial Ownership Interests, as the case may be.

Section 4.14    Remarketing of Bank Bonds and Authority Bonds.    The Remarketing Agent shall continue to use its best efforts to solicit purchases of Bank Bonds and Authority Bonds at a price of par plus accrued interest on any Business Day; provided that if the Authority notifies the Remarketing Agent of a principal amount of Authority Bonds which the Remarketing Agent shall not remarket, then the Remarketing Agent shall not attempt to remarket the principal amount of Authority Bonds so identified.  If the Remarketing Agent shall identify a purchaser for Bank Bonds or Authority Bonds, it shall notify the Authority, the Trustee and the Liquidity Facility Provider.  With respect to Bank Bonds, upon the deposit into the Bond Purchase Account of the amount, if any, which the Liquidity Facility Provider has advised the Trustee is required under the Liquidity Facility to be paid to the Liquidity Facility Provider, together with the proceeds of the remarketing, to cause the release of the Bank Bonds, the Remarketing Agent shall cause to be deposited into the Bond Purchase Account any proceeds it receives from such remarketing.

On the Business Day fixed for such remarketing, provided that funds sufficient for the payment of the purchase price of the Bank Bonds to be remarketed, together with any additional amount which the Liquidity Facility Provider has advised the Trustee is required pursuant to the Liquidity Facility for the release of the Bank Bonds or Authority Bonds to be remarketed, are on deposit in the Bond Purchase Account:

(a)    the Trustee shall authenticate and deliver Bonds to the new Owners thereof as directed by the Remarketing Agent, or the Beneficial Ownership Interest shall be transferred on the records of the Depositary, as appropriate; provided that Bonds remarketed by the Remarketing Agent shall not be delivered to the purchasers (i) if a Liquidity Facility is then required to be in effect, until the Trustee has received written notice from the Liquidity Facility Provider that there has been reinstatement of the facility in an amount equal to the purchase price paid by the Trustee from proceeds of a draw on the Liquidity Facility (unless the Liquidity Facility provides for automatic reinstatement upon such remarketing), or (ii) if a Bond (or Beneficial Ownership Interest) has been an Authority Bond for a period of 30 days or more, unless the Trustee has been provided with an opinion of Bond Counsel to the effect that the status of such Bond (or Beneficial Ownership Interest) as an Authority Bond has not adversely affected the exclusion of interest on such Bond from gross income for federal tax purposes; and

(b)    the moneys held in the Bond Purchase Account with respect to Bank Bonds shall be paid to the Liquidity Facility Provider to the extent required by the Liquidity Facility and thereafter to the order of the Authority.

Section 4.15    Concerning the Remarketing Agent.    The Remarketing Agent shall be a member of the National Association of Securities Dealers, Inc. or other investment banking or financial entity authorized by law to perform the functions of the Remarketing Agent as

33

described in this Indenture. The Trustee shall cooperate with the Remarketing Agent in the performance of its duties. The Remarketing Agent may resign upon not less than 30 days prior written notice to the Authority, the Trustee, and the Liquidity Facility Provider and may be removed by the Authority upon not less than 30 days prior written notice to the Trustee, the Liquidity Facility Provider and the Remarketing Agent. In case the Remarketing Agent shall resign or be removed, the Authority shall appoint a successor Remarketing Agent meeting the requirements of this Section 4.15, subject to the prior written consent of the Liquidity Provider. The successor Remarketing Agent shall evidence its acceptance of its duties hereunder by a writing delivered to the Trustee, the Liquidity Facility Provider and the Authority. Should the Authority fail to appoint a successor to the Remarketing Agent at the time of its resignation or removal, or should the Remarketing Agent be dissolved or taken under the control of any state or Federal court or administrative body for any reason, the Trustee shall (pending the appointment by the Authority of a qualified successor), ipso facto, be deemed to be the Remarketing Agent for all purposes of this Indenture, provided that the Trustee, in its capacity as Remarketing Agent, shall not be required to remarket Tendered Bonds or to set rates, other than as provided for under Section 4.2(a) and Section 4.2(c).

The Remarketing Agent's duty to remarket Tendered Bonds (or Beneficial Ownership Interests), Authority Bonds and Bank Bonds pursuant to this Indenture (unless it shall agree otherwise in writing) shall be a "best efforts" undertaking on its part and shall not obligate it to purchase Bonds (or Beneficial Ownership Interests) for its own account or to advance funds for the account of any of its customers or prospective purchasers of Bonds (or Beneficial Ownership Interests). The Authority shall, at its expense, furnish the Remarketing Agent with a prospectus meeting the requirements of applicable state and federal securities laws as a condition precedent to the institution by the Remarketing Agent of the remarketing described in Sections 4.13 and 4.14. The Remarketing Agent's compensation for remarketing shall be determined by agreement between the Authority and the Remarketing Agent within the range of customary charges by investment bankers for similar services and shall be paid by the Authority.

Section 4.16    Concerning the Liquidity Facility. The Authority covenants and agrees at all times while the Bonds bear interest at a Variable Rate to maintain a Liquidity Facility in full force and effect, except as otherwise provided by this Section 4.16. The Bonds are not required to have the benefit of a Liquidity Facility with respect to 100% of the outstanding principal amount of such Bonds if, prior to the date by which an extension or substitution of the Liquidity Facility then in effect is required to be delivered to the Trustee under Section 4.9(b), there is delivered to the Authority, the Remarketing Agent, and the Bond Trustee (i) an Opinion of Bond Counsel to the effect that the expiration or termination of the Liquidity Facility then in effect will not adversely affect the validity of the Bonds or any exemption from federal income taxation to which the interest on the Bonds would otherwise be entitled, and (ii) written evidence from each Rating Agency then maintaining a rating on the Bonds that the rating on the Bonds following the expiration or termination of the Liquidity Facility will not be reduced or withdrawn from the rating on the Bonds immediately prior to such expiration or termination. After the Conversion Date, Bonds shall not be required to have the benefit of a Liquidity Facility. If at any time no Liquidity Facility is required on the Bonds, the Bond Trustee shall (A) give Immediate Notice to all Bondholders no later than the 30th day preceding the termination date of the existing Liquidity Facility that no Liquidity Facility will support the payment of the purchase price of the Bonds after such termination date, and (B) affix a legend on the face of each Bond which does

34

not bear interest at a Fixed Rate authenticated on or after the date on which a Liquidity Facility is no longer required in substantially the following form:

> A LIQUIDITY FACILITY IS NOT REQUIRED WITH RESPECT TO THIS BOND. IF A LIQUIDITY FACILITY IS CURRENTLY PROVIDED, IT MAY BE DISCONTINUED AT ANY TIME WITHOUT PRIOR NOTICE TO OR A RIGHT TO TENDER BY THE BONDHOLDER.

Section 4.17    Purchase on Notice of Certain Events of Default Under Liquidity Facility During the Period a Liquidity Facility is Required; Notice of Liquidity Facility Default.  During the period a Liquidity Facility is required for the Bonds by this Indenture, such Bonds (other than Authority Bonds or Bank Bonds) are subject to mandatory tender by the Owners thereof to the Trustee when the Trustee gives Immediate Notice to the Owners of such Bonds of the occurrence and continuation of an event of default under the Liquidity Facility (other than a Liquidity Facility Default) as set forth in Section 4.9 hereof.  The Bond Trustee shall give such Immediate Notice upon receipt of a written notice from the Liquidity Facility Provider of the occurrence of an event of default under the Liquidity Facility other than a Liquidity Facility Default.  Upon the giving of such Immediate Notice, such Bonds shall be purchased on a date designated by the Trustee which is no more than 15 days after the date of the Immediate Notice to the Bondholders, and in no event later than five Business Days prior to the last day on which funds will be available under the Liquidity Facility, at a purchase price equal to 100% of the principal amount thereof plus accrued interest, if any, to the purchase date.  In such case, the Owner of any such Bond required to be purchased may not elect to retain its Bond and by the acceptance of such Bond shall be deemed to have agreed to sell such Bond to the Trustee on the date specified pursuant to this Section 4.17.

The Trustee agrees to provide any and all notices to the Liquidity Facility Provider at the time and in the manner provided by the Liquidity Facility in order to permit the purchase by the Liquidity Facility Provider of Bonds pursuant to the provisions of this Section 4.17.

Upon receipt by the Trustee of a written notice from the Liquidity Facility Provider of the occurrence of a Liquidity Facility Default under the Liquidity Facility, the Trustee shall give Immediate Notice thereof to the Owners of all the Bonds and the Remarketing Agent which notice shall state that there will be no mandatory purchase of the Bonds as a result of such Liquidity Facility Default and that the purchase price of Tendered Bonds will no longer be payable from a Liquidity Facility (i) due to a termination of the Liquidity Facility Provider's obligation to purchase Bonds as a result of such Liquidity Facility Default or (ii) due to a suspension of the Liquidity Facility Provider's obligation to purchase Bonds as a result of such Liquidity Facility Default.  In addition, if Immediate Notice of a mandatory tender has been given prior to receipt by the Bond Trustee of written notice from the Liquidity Facility Provider of the occurrence of such a Liquidity Facility Default but such notice of a Liquidity Facility Default is received by the Bond Trustee prior to the Mandatory Tender Date, the mandatory tender of the Bonds (other than Authority Bonds or Bank Bonds) shall be immediately canceled or suspended and the notice described in the preceding sentence shall include notice of that fact.

4811-6404-3536.6

The Trustee shall give Immediate Notice to the owners of all such Bonds if (i) such suspension of the Liquidity Facility Provider's obligation to purchase Bonds has ended and the Liquidity Facility has been reinstated or (ii) such suspension has resulted in a termination of the Liquidity Facility Provider's obligation to purchase Bonds under the terms of the Liquidity Facility.

Section 4.18    No Remarketing After Certain Defaults. Anything in this Bond Indenture to the contrary notwithstanding, if during the period a Liquidity Facility is required pursuant to Section 4.16 hereof, there is no Liquidity Facility in effect or a Liquidity Facility Default shall have occurred and be continuing thereunder, there shall be no remarketing of Tendered Bonds other than a remarketing in connection with a conversion of all Bonds to a Fixed Rate.

Section 4.19    Inadequate Funds for Tenders. If the funds available for purchase of the Bonds pursuant to this Indenture are inadequate for the purchase of all Bonds required to be purchased on any Optional or Mandatory Tender Date, all Bonds, other than Authority Bonds and Bank Bonds, shall bear interest from such date at a rate equal to the lesser of (i) the Maximum Rate and (ii) prior to the initial Conversion Date, the Default Rate and thereafter the SIFMA Swap Index plus 100 basis points until such payment is made or such Bonds are paid in full. In the event that the provisions of this Section 4.19 become applicable, the Trustee shall immediately: (i) return all tendered Bonds to the holders thereof; (ii) return all money received for the purchase of such Bonds to the persons providing such money; and (iii) provide written notice thereof to all Bondholders.

If the Liquidity Facility Provider fails to honor a properly presented and conforming demand for payment under the Liquidity Facility (a "Bank Failure") or a Liquidity Facility Default shall occur, (i) all optional tender rights under Article IV hereof shall be immediately suspended; and (ii) any mandatory purchase of Bonds under Article IV hereof for which a notice has been given shall be immediately canceled. The Trustee shall give Immediate Notice to the Bondholders of the occurrence of any such Bank Failure or Liquidity Facility Default. If by the 45th day succeeding the occurrence of the Bank Failure or a Liquidity Facility Default, as the case may be, no Substitute Liquidity Facility has been delivered and such Bank Failure or Liquidity Facility Default has not been cured or terminated, the Trustee shall on such date mail to each Bondholder written notice, which  notice shall inform the Bondholders that: (i) the Authority has failed to provide a Substitute Liquidity Facility or the Liquidity Facility Default has not been cured or terminated, (ii) on the 60th day succeeding the occurrence of the Bank Failure or the Liquidity Facility Default (for which 45 days have already elapsed), as the case may be, all Bonds are required to be tendered for purchase, (iii) the Bonds will, except under the circumstances described in the following paragraph, commence bearing interest at a Fixed Rate on such tender date, and (iv) the short-term rating on the Bonds will be withdrawn. The requirements set forth in Section 12.2 for delivery of a Substitute Liquidity Facility shall not apply in the event of a substitution pursuant to this Section.

On the 60th day succeeding the occurrence of the Bank Failure or the Liquidity Facility Default, as the case may be, the Bonds shall commence bearing interest at a Fixed Rate established by the Remarketing Agent. The foregoing notwithstanding, if (i) all of the Bonds are not remarketed on such date at the Fixed Rate or (ii) the Authority does not on such date deliver to the Trustee an opinion of Bond Counsel to the effect that conversion of the interest rate on the

36

Bonds to a Fixed Rate will not result in an Event of Taxability, the mandatory purchase of Bonds will be canceled, the Trustee shall return all Bonds to the holders thereof and the Bonds shall continue bearing interest at a rate equal to the lesser of (i) the Maximum Rate and (ii) the SIFMA Swap Index plus 100 basis points. In all events, the right to optionally tender Bonds shall remain suspended until a Substitute Liquidity Facility has been delivered to the Trustee.

Section 4.20    Tender of Bonds for Cancellation.    Upon the Conversion Date, and provided there is not more than one Owner or Beneficial Owner, all, but not less than all, of the Bonds may be tendered to the Trustee for purchase and the Trustee shall purchase such Bonds, at a purchase price equal to the items set forth in paragraph 1 of the Trust Estate (the "Collateral"). Notice of such Purchase Demand shall be made in the manner provided in Section 4.8(a) of this Indenture. The Trustee shall promptly (but in no event later than 11:00 a.m. New York City time on the third Business Day following receipt of the Purchase Demand) assign, transfer and sell the Collateral to such Owner or Beneficial Owner, whereupon the Bonds shall be fully paid and cancelled in the manner provided in Section 2.12 of this Indenture. Such Purchase Demand, once transmitted to the Trustee, shall be irrevocable with respect to the tender for which such Purchase Demand was delivered.

## ARTICLE V

## REPRESENTATIONS AND COVENANTS OF AUTHORITY

Section 5.1    Payment of Principal and Interest.    The Authority covenants that it will promptly pay the principal of, premium, if any, interest and purchase price on each Bond issued under this Indenture at the place, on the date and in the manner provided in said Bond and this Indenture according to the true intent and meaning thereof. The principal of, premium, if any, interest and purchase price on the Bonds (including Bank Bonds) are limited obligations of the Authority payable solely from Revenues.

In order to provide for such payment, the Authority agrees to make deposits of immediately available funds into the appropriate fund or account under this Indenture as follows:

(a)    By 11:00 a.m. New York City time, on each Interest Payment Date -- an amount sufficient to pay all principal and interest on the Outstanding Bonds, including Bank Bonds, due on such Interest Payment Date;

(b)    On or before the Business Day preceding each redemption date fixed pursuant to Sections 4.3, 4.4, 4.5, 4.6 or 4.7 of this Indenture -- an amount sufficient to pay the principal of and accrued interest (to the extent not already covered by the draw described in clause (a) above) on all Outstanding Bonds, including Bank Bonds, to be redeemed on such redemption date;

(c)    At or before 2:00 p.m., New York City time, on each Tender Date -- an amount sufficient, together with other available funds on deposit at 1:30 p.m., New York City time, in the Bond Purchase Account, to pay the purchase price of all Tendered Bonds or Beneficial Ownership Interests; and

37

Case 24-21743-gmh    Doc 638-4    Filed 07/11/25    Page 42 of 112

(d)     Upon acceleration of the maturity of the Bonds pursuant to <u>Section 10.2</u> of this Indenture -- an amount sufficient to pay the principal of the Outstanding Bonds and the accrued interest thereon to the expected payment date;

provided, however, that for purposes of this Section, Authority Bonds shall not be deemed Outstanding, and the Authority shall not be required to deposit payment in respect of Authority Bonds.

Section 5.2     <u>Performance of Covenants; Authority</u>.  The Authority covenants that it will faithfully perform each and every undertaking, covenant, stipulation and provision contained in this Indenture and in each and every Bond executed, authenticated and delivered hereunder. The Authority represents that it is duly authorized under the Constitution and laws of the State of Wisconsin and the Act to issue the Bonds, to execute this Indenture and to pledge the revenues described and pledged herein.  The Authority represents further that all action on its part for the issuance of the Bonds and the execution and delivery of this Indenture has been duly and effectively taken, and that the Bonds in the hands of the Owners thereof are and will be valid and enforceable obligations of the Authority according to the tenor and import thereof.

Section 5.3     <u>Instruments of Further Assurance</u>.  The Authority covenants that it will do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered, such Supplemental Indentures and such further acts, instruments and transfers as the Trustee may reasonably require for the better assuring, pledging, assigning and confirming unto the Trustee all and singular the Trust Estate and the revenues pledged hereby to the payment of the principal of, premium, if any, and interest on the Bonds.

Section 5.4     <u>Inspection of Books; Duty to Provide Data</u>.   The Authority and the Trustee each covenant and agree that all books and documents in their possession relating to the Bonds and the Revenues shall at all times be open to inspection by such accountants or other agents as the Trustee or the Authority may from time to time designate.

The Authority agrees to furnish to the Trustee, promptly upon receipt of a written request therefor, any documents, information or data reasonably necessary to enable the Trustee to carry out its duties and responsibilities under this Indenture or to verify the truth and accuracy of any representation or statement made on behalf of the Authority herein, in any Authority's Certificate or in any written notice.

Section 5.5     <u>Payment of Trustee's Fees</u>.  The Project Owner has agreed to pay the Trustee its customary fees for acting as Trustee under this Indenture and that it will reimburse the Trustee for its ordinary and necessary expenses incurred in carrying out the terms of this Indenture.  Such fees and reimbursements of expenses shall be paid upon receipt of periodic invoices therefor.

In the event the Trustee is required by the terms of this Indenture or otherwise deems it necessary or advisable in fulfillment of its fiduciary responsibilities thereunder to take actions beyond those which are routinely performed by corporate trustees under similar indentures, the Project Owner has also agreed that it will pay the Trustee its reasonable fees for its services in such regard (including but not limited to reasonable legal fees and costs) and that it will

4811-6404-3536.6

reimburse the Trustee for ordinary and necessary expenses incurred in connection therewith. Such fees and reimbursements of expenses shall be paid promptly following receipt of invoices therefor; provided, however, that the Project Owner may dispute (in good faith and by appropriate proceeding) the reasonableness of any such charges.

Section 5.6    Tax-Exempt Status of Bonds.  The Authority covenants that it will take no action which would adversely affect the exclusion of interest on the Bonds from gross income under Sections 103 and 1400N of the Internal Revenue Code.  The Authority agrees that it will comply with the provisions of the Tax Agreement and will take no action which would (and will omit no action the omission of which would) cause an Event of Taxability.

Section 5.7    Validity and Effect on Pledge.  Any pledge of moneys or property made by the Authority with respect to the Bonds shall be valid and binding from the time when the pledge is made; the moneys or property so pledged and thereafter received by the Authority shall immediately be subject to the lien of such pledge without any physical delivery thereof or further act; and the lien of any such pledge shall be valid and binding as against all parties having claims of any kind in tort, contract or otherwise against the Authority, irrespective of whether such parties have notice thereof.  As provided in Section 234.11 of the Act, neither the General Resolution, the Supplemental Resolution, the Series Resolution nor any other instrument (including this Indenture) by which this pledge is created need be recorded.

ARTICLE VI

CUSTODY AND APPLICATION OF PROCEEDS OF BONDS

Section 6.1    Application of Proceeds of Bonds.  The Trustee shall deposit the entire amount of Bond proceeds received by it, which is the $42,500,000 par amount of the Bonds, for the account of the Authority, into the Project Fund.

Section 6.2    Project Fund.  There is hereby created by the Authority and ordered established with the Trustee a Trust Fund to be designated with the name of the Authority and the Bonds and the label "Project Fund."  The Trustee shall deposit into the Project Fund, when and as received:

(a)    the amount specified in Section 6.1 hereof;

(b)    any additional moneys which the Authority may deliver to the Trustee from time to time with the instruction that such moneys be deposited into such Fund; and

(c)    Moneys required to be deposited into the Project Fund under the terms of a Supplemental Indenture.

On the date of issuance, the Trustee is hereby authorized and directed to disburse moneys from the Project Fund in the amount of $424,746 to pay costs of issuance of the Bonds, in the amount of $32,737,600 to the Project Owner to reimburse Capital Costs of the Project and in the amount of $9,337,654 to the Project Owner to pay Capital Costs of the Project.  Proceeds of the Bonds must be used for Eligible Costs of the Project which do not result in an Event of

4811-6404-3536.6

Taxability. Such disbursement shall be made only upon receipt by the Trustee of a written direction from the Authority setting forth the request for the disbursement of the moneys from the Project Fund (such written direction may be in the form of a closing memorandum setting forth the sources and uses of the proceeds of the Bonds on the issue date.) The Project Fund will be deemed closed on the funding of the final disbursement from the Project Fund (and, if for any reason funds remain on deposit, such funds shall be transferred to the Surplus Project Fund).

After the Lockout Period, in the event of damage, destruction or condemnation or other event which results in the receipt of insurance proceeds, condemnation awards or other moneys by the Project Owner and if under the terms of the Loan Agreements the Project Owner and the Borrower are not required or do not elect to prepay the Promissory Notes, and there is no redemption of Bonds in accordance with Section 4.4 hereof, such moneys shall be deposited in the Project Fund and shall be used to rebuild or replace the Project. The Trustee is authorized and directed to disburse moneys from the Project Fund to pay (or reimburse the Project Owner or the Borrower for) Eligible Costs of the Project. Except as otherwise provided below, such disbursements shall be made only upon requisition of the Authority (upon receipt of proper documentation from the Project Owner and the Borrower meeting the requirements of and submitted in accordance with the terms of the Loan Agreements). The Trustee may condition any disbursement from the Project Fund upon its receipt of such information and documentation as it may reasonably require to evidence the truth and accuracy of the statements and representations contained in the requisition. The Trustee shall have the right to withhold disbursements from the Project Fund if the information in the requisition is incomplete or inaccurate in any material respect.

In the event the Authority, the Project Owner and the Borrower shall have entered into an agreement with a title insurance company for the disbursement of the proceeds, disbursements from the Project Fund shall be subject to such further terms and conditions as may be contained in such agreement.

The Authority shall have the following evidence from the Project Owner and the Borrower regarding the completion of the Project:

(i)     A certificate of the Project Owner certifying, without prejudice to any rights against third parties (i) that the Project has been constructed, acquired and installed in accordance with Project plans and specifications provided to the Authority under the Loan Agreements, (ii) the date of Project completion and, if applicable, the respective dates of completion of each of the component phases of the Project, and (iii) that all labor, services, materials and supplies used to construct, acquire and install the Project have been paid in full, except for such portion thereof (which shall be identified in detail) which the Project Owner or the Borrower is disputing in good faith and by appropriate proceeding;

(ii)    a certificate of substantial completion signed by the architect or engineer in charge of the Project designating the date of substantial completion of the Project; and

(iii)   the final occupancy permit for the Project.

40

4811-6404-3536.6

Upon being furnished the items described above, the Authority shall deliver an Authority's Certificate to the Trustee and the Trustee shall again close the Project Fund and transfer the remaining balance therein, if any, to the Surplus Project Fund.

If an Event of Default shall have happened and be continuing, the Trustee may, to the extent consistent with an opinion of Bond Counsel to the effect that such application will not result in an Event of Taxability, apply moneys in the Project Fund in accordance with Section 10.6 of this Indenture.

Section 6.3    Surplus Project Fund.    There is hereby created by the Authority and ordered established with the Trustee a Trust Fund to be designated with the name of the Authority and the Bonds and the label "Surplus Project Fund."

The Trustee shall deposit into the Surplus Project Fund, when and as received:

(a)    Moneys remaining in the Project Fund after it has been closed in accordance with Section 6.2 hereof; and

(b)    Moneys required to be deposited into the Surplus Project Fund under the terms of a Supplemental Indenture.

The Trustee is hereby authorized and directed to use the moneys in the Surplus Project Fund to call Bonds for redemption at any time after the Lockout Period pursuant to Section 4.3 of this Indenture.    Such redemption shall be in the largest amount possible and at the earliest possible call date or dates given the call provisions of the Bonds as specified in Section 4.3 of this Indenture.

Notwithstanding the foregoing, during periods in which the Bonds are callable only in an amount in excess of available moneys in the Surplus Project Fund, or during periods in which the Bonds are not callable or are callable but a call premium or penalty is required for such early redemption, the Trustee shall not transfer Surplus Project Fund moneys to the Redemption Fund unless directed to do so in writing by the Authority.

Until used for one or more of the foregoing purposes, any moneys in the Surplus Project Fund shall be invested in Qualified Investments, but the yield on such investments shall be limited if and to the extent required in Section 148 of the Internal Revenue Code and any proposed, temporary or final regulations promulgated thereunder; provided that such yield restriction on the Surplus Project Fund shall not apply if the Trustee is furnished with an opinion of Bond Counsel to the effect that the lack of a yield restriction on the Surplus Project Fund will not result in an Event of Taxability.

4811-6404-3536.6

## ARTICLE VII

## REVENUES AND FUNDS

Section 7.1    Source of Payment.   The principal of, premium, if any, interest and purchase price on the Bonds, including Bank Bonds, shall be payable by the Authority from the Revenues.

Section 7.2    Trust Estate.   The Trust Estate is hereby pledged to the punctual payment of the principal of, premium, if any, interest and purchase price on the Bonds.

Section 7.3    Bond Fund.   There is hereby created by the Authority and ordered established with the Trustee a Trust Fund to be designated with the name of the Authority and the Bonds and the label "Bond Fund."   The Bond Fund shall consist of four subaccounts designated the "Series A Subaccount," the "Series B Subaccount" and the "Series C Subaccount" (individually, a "Subaccount" and collectively, the "Subaccounts").

The Trustee shall deposit into each Subaccount of the Bond Fund, when and as received:

(a)    All payments from or for the account of the Authority on the related series of Bonds made in accordance with SCHEDULE I (except prepayments of principal and the premium, if any, thereon required to be deposited into the Redemption Fund);

(b)    Moneys required to be transferred to the related Subaccount of the Bond Fund from related Subaccount of the other Trust Funds in accordance with this Indenture; and

(c)    Moneys required to be deposited into the related Subaccount of the Bond Fund pursuant to the terms of a Supplemental Indenture.

All moneys in each Subaccount of the Bond Fund shall be used solely for the payment of interest on the related Series of Bonds and for the payment of principal of the related Series of Bonds when due (whether at maturity, by acceleration or call for redemption or otherwise).   No moneys in a Subaccount of the Bond Fund shall be available to pay principal of or interest on any other Series of Bonds.   The Trustee shall pay principal of and interest on each Series of the Bonds from the following sources and in the following priority:

First, from Eligible Funds on deposit in the related Subaccount of the Bond Fund; and

Second, from remaining moneys in the related Subaccount of the Bond Fund.

After the date moneys deposited in any Subaccount of the Bond Fund have been used by the Trustee for the payment of interest or principal on the Bonds of a related Series when due, any balance in such Subaccount of the Bond Fund shall be transferred by the Trustee to or at the direction of the Authority.

42

Case 24-21743-gmh    Doc 638-4    Filed 07/11/25    Page 47 of 112

During such time as the Bonds bear interest at a Variable Rate, the Trustee shall notify the Borrower and the Project Owner by first class mail, facsimile or other electronic means of the amount of money needed for the payment of interest, principal and purchase price on each Series of the Bonds when due. Such notification shall be as follows:

(a)     By 2:00 p.m., New York City time, one Business Day prior to each Interest Payment Date;

(b)     By 2:00 p.m., New York City time, two Business Days prior to the Final Maturity Date;

(c)     By 2:00 p.m., New York City time, two Business Days prior to each redemption date fixed pursuant to Sections 4.3, 4.4, 4.5, 4.6 or 4.7 hereof; and

(d)     By 1:30 p.m., New York City time, on each Tender Date.

Section 7.4     Redemption Fund. There is hereby created by the Authority and ordered established with the Trustee a Trust Fund to be designated with name of the Authority and the Bonds and the label "Redemption Fund." The Redemption Fund shall consist of four subaccounts designated the "Series A Subaccount," the "Series B Subaccount" and the "Series C Subaccount") (individually, a "Subaccount" and collectively, the "Subaccounts").

The Trustee shall deposit into each Subaccount of the Redemption Fund, when and as received:

(a)     All prepayments of principal by or for the account of the Authority on the related series of Bonds, together with the premium, if any, thereon;

(b)     Moneys required to be transferred to the related Subaccount of the Redemption Fund from other Trust Funds in accordance with this Indenture; and

(c)     Moneys required to be deposited into the related Subaccount of the Redemption Fund pursuant to the terms of a Supplemental Indenture.

The Authority hereby authorizes and directs the Trustee to (i) transfer moneys from each Subaccount of the Redemption Fund to the related Subaccount of the Bond Fund when and as required to pay the principal of the related Series of Bonds called for redemption in accordance with this Indenture; (ii) withdraw moneys from each Subaccount of the Redemption Fund to pay any premiums payable on the related Series of Bonds called for redemption in accordance with this Indenture; and (iii) transfer moneys from each Subaccount of the Redemption Fund to the related Subaccount of the Bond Fund to pay the final payment of principal on the related Series of Bonds at the last maturity thereof. Except to the extent moneys in each Subaccount of the Redemption Fund are needed for the purposes described in the foregoing clauses (i) and (ii), the Trustee is authorized to use any remaining moneys in each Subaccount of Redemption Fund for the purchase of Bonds of a related Series for cancellation; provided that such purchases shall be made only to the extent authorized by the Authority in an Authority's Certificate; and provided further that the purchase price for any Bond so purchased shall not exceed the principal amount thereof plus any accrued and unpaid interest thereon.

43

Section 7.5    Trust Funds Held in Trust.  All Trust Funds shall be held in trust in the custody of the Trustee, subject to the provisions of this Indenture which permit disbursements from the Trust Funds.  All moneys and securities held in Trust Funds shall be subject to the first lien of this Indenture thereon and shall not be subject to lien, attachment, garnishment or other claims or proceedings by other creditors of the Authority.

## ARTICLE VIII

## INVESTMENTS

Section 8.1    Permitted Investment of Trust Funds.  Moneys held in the Trust Funds shall be separately invested and reinvested by the Trustee in accordance with this Article VIII and pursuant to written directions provided to the Trustee by an Authorized Officer.  Each investment shall be held by or under the control of the Trustee and shall be deemed at all times to be part of the particular Trust Fund in which such moneys were held.  Income and profit from any such investment shall be credited to the Trust Fund for whose account the investment was made (provided, however, any interest earnings on the Project Fund shall be transferred to the Bond Fund).  Any net loss realized and resulting from any such investment shall be charged to the particular Trust Fund for whose account the investment was made.

All such investments and reinvestments shall be made in Qualified Investments having a maturity not later than the estimated time when the moneys so invested will be needed for the purposes of the Trust Fund of which they are a part.  Investments and reinvestments of moneys held in the subaccount of the Surplus Project Fund shall be restricted as to yield as provided in Section 6.4 of this Indenture.  Moneys in the Bond Fund shall be invested only in securities identified in paragraphs (a), (b) and (g) of the definition of Qualified Investments.

The Trustee may make and execute any such investment through its own bond department, money center or other investment operation or through the bond department, money center or investment operation of any affiliated bank.

Section 8.2    Arbitrage.  The Project Owner has agreed, at its own expense, that it will take no action to permit any investment or other use of the proceeds of the Bonds which would cause any Bond to be classified as an "arbitrage bond" within the meaning of Section 148 the Internal Revenue Code or any proposed, temporary or final regulations issued thereunder.

In the event the Authority is of the opinion (supported by an opinion of Bond Counsel) that it is necessary or advisable to restrict or limit the yield on the investment of any moneys held in any Trust Fund in order to avoid the Bonds being considered "arbitrage bonds" within the meaning aforesaid, the Authority may issue to the Trustee a written certificate to such effect together with appropriate written instructions, in which event the Trustee shall take such action as is necessary so to restrict or limit the yield on such investment in accordance with such certificate and instructions, irrespective of whether the Trustee shares such opinion.

Section 8.3    Rebate of Certain Arbitrage Profits.  To the extent required by law, the Authority shall, at the expense of the Project Owner, take the following actions to provide for

44

payment to the United States Treasury pursuant to Section 148(f) of the Internal Revenue Code and any proposed, temporary or final regulations promulgated thereunder:

(a) Make, or employ another qualified nationally recognized provider to make, a determination within 30 days of the fifth, tenth, fifteenth, twentieth, and twenty-fifth anniversaries of the Effective Date if any Bonds are then Outstanding, and within 60 days of the retirement of the last Bond, of the amount of rebate required to be paid with respect to the Bonds to the United States Treasury; provided that, no such determination shall be required if the Authority shall have received an opinion of Bond Counsel that no additional rebate amount will be required to be paid with respect to the Bonds to the United States Treasury on such dates pursuant to Section 148(f) of the Internal Revenue Code.

(b) An amount equal to the amount of rebate to be paid to the United States Treasury with respect to the Bonds as determined above shall be paid by the Authority to the Trustee from funds provided by the Project Owner and deposited by the Trustee into a special account established with the Trustee and designated with the name of the Authority and the Bonds and the label "Rebate Account." The Rebate Account shall be held for the sole benefit of the United States Treasury and shall not be or be deemed to be a Trust Fund.

(c) The Trustee shall make required rebate payments with respect to the Bonds to the United States Treasury from the Rebate Account at such times and in such amounts and manner as are required by the Internal Revenue Code of 1986, as amended, and the related Treasury Regulations.

(d) The Authority shall take any additional action required to be taken pursuant to the Tax Agreement, among the Authority, the Borrower and the Project Owner delivered in connection with the issuance and sale of the Bonds.

(e) The Authority shall provide a copy of all rebate determinations to the Trustee, and the Trustee shall keep records of the rebate determinations prepared and rebate payments made until six years after the retirement of the last Bond.

## ARTICLE IX

## DISCHARGE

Section 9.1    Discharge.  If the Authority shall pay or cause to be paid the principal, premium, if any, and interest due or to become due on the Bonds at the times and in the manner stipulated therein, and if the Authority shall not then be in default in any of the covenants and promises in the Bonds and in this Indenture expressed as to be kept, performed and observed by it or on its part, and shall pay or cause to be paid to the Trustee all sums of money due or to become due according to the provisions hereof, then these presents and the estate and rights hereby granted shall cease, terminate and be void, whereupon the Trustee shall cancel and discharge the lien of this Indenture and execute and deliver to the Authority such instruments in writing as shall be requisite to cancel and discharge the lien hereof, and reconvey, release, assign

4811-6404-3536.6

and deliver unto the Authority any and all the estate, right, title and interest in and to any and all property conveyed, assigned or pledged to the Trustee or otherwise subject to the lien of this Indenture, except moneys or securities held by the Trustee in separate segregated trust accounts pursuant to Sections 2.13 and 4.11 hereof for the purchase of Untendered Bonds or the payment of the principal of, premium, if any, and interest on unpresented Bonds.

A Bond shall be deemed to be paid within the meaning of this Article when payment of the principal of and premium, if any, on such Bond, plus interest thereon to the due date thereof (whether such due date be by reason of maturity or upon redemption as provided in this Indenture, or otherwise) either (A) shall have been made in accordance with the terms of this Indenture, or (B) shall have been provided for by irrevocably depositing with the Trustee, in trust and irrevocably set aside exclusively for such payment, (i) moneys sufficient to make such payment or (ii) Government Obligations not redeemable at the option of the issuer or anyone acting on its behalf maturing as to principal and interest in such amounts and at such times as will provide sufficient moneys to make such payment, and all necessary and proper fees and expenses of the Trustee pertaining to the Bond with respect to which such deposit is made. At such time as a Bond shall be deemed to be paid hereunder as aforesaid, it shall no longer be deemed to be Outstanding hereunder and shall no longer be secured by or entitled to the benefits of this Indenture, except for the purposes of any such payment from such moneys or Government Obligations.

Notwithstanding the foregoing, no deposit under clause (B) of the immediately preceding paragraph shall be deemed a payment of such Bonds as aforesaid until:

(a)  The deposit shall have been made under the terms of an escrow trust agreement in form and substance satisfactory to the Trustee consistent herewith, which shall identify the bonds covered thereby;

(b)  In the case of an escrow trust deposit with respect to Bonds subject to redemption prior to maturity at the option of the Authority, the Authority shall have delivered an Authority's Certificate designating when such Bonds are to be paid or redeemed under the terms of such escrow trust agreement;

(c)  In the case of Bonds which are subject to mandatory redemption or which are subject to mandatory or optional tender for purchase, the Trustee shall have been furnished with evidence satisfactory to it that a redemption or purchase of such Bonds in accordance with their terms in advance of stated maturity will not create a deficiency in the escrow;

(d)  In case of Bonds which are to be redeemed prior to maturity from such escrow trust deposit, a redemption notice meeting the requirements of Section 3.2 hereof and stating that such Bonds are being redeemed from a deposit made pursuant to this Article either (i) shall have been given, or (ii) shall have been provided for by delivery to the Trustee of irrevocable instructions for the giving of such notice;

(e)  The Trustee shall have been furnished with an opinion of Bond Counsel to the effect that the payment of the Bonds in accordance with said escrow trust agreement

will not adversely affect the tax-exempt status of the Bonds and will not cause the Bonds to be classified as "arbitrage bonds" under Section 148 of the Internal Revenue Code;

(f)     If payment on the Bonds is otherwise required to be made with Eligible Funds, the Trustee shall have been furnished with a Preference Opinion in respect of the moneys so deposited; and

(g)     The Trustee shall have given notice of such deposit to the Owner of each Bond at the address shown on the Bond Register.

Notwithstanding any provision of any other Article of this Indenture which may be contrary to the provisions of this Article, all moneys or Governmental Obligations set aside and held in trust pursuant to the provisions of this Article for the payment of Bonds (including interest and premium thereon, if any) shall be applied to and used solely for the payment of the particular Bonds (including interest and premium thereon, if any) with respect to which such moneys and Government Obligations have been so set aside in trust.

Anything in Article XIII hereof to the contrary notwithstanding, if moneys or Government Obligations have been deposited or set aside with the Trustee pursuant to this Article for the payment of Bonds and the interest and premium, if any, thereon and such Bonds and the interest and premium, if any, thereon shall not have in fact been actually paid in full, no amendment to the provisions of this Article shall be made without the consent of the Owner of each of the Bonds affected thereby.

## ARTICLE X

### DEFAULT PROVISIONS
### AND REMEDIES OF TRUSTEE AND BONDOWNERS

Section 10.1     Defaults; Events of Default.  If any of the following events occur, it is hereby defined as and declared to be and to constitute an "Event of Default":

(a)     Default in the due and punctual payment of the principal or purchase price of, premium, if any, or interest on any Bond whether on an Interest Payment Date, at the stated maturity thereof, on a Tender Date, or upon proceedings for redemption (or purchase in lieu of redemption) thereof, or upon the maturity thereof by acceleration or otherwise; or

(b)     Default in the performance or observance of any of the covenants, agreements or conditions on the part of the Authority in the Act, this Indenture or in the Bonds contained and the continuance thereof for a period of 60 days after written notice given to the Authority by the Trustee or to the Trustee and the Authority by the Owners of not less than 25% in aggregate principal amount of Bonds then Outstanding; or

(c)     The inadequacy of funds for tender of Bonds pursuant to Section 4.19 on the initial Conversion Date; or

47

(d)     The Authority or a Bondowner shall deliver a certificate to the Trustee stating that an "event of default" has occurred under a Loan Agreement and as a result of such default there is an acceleration of the related Promissory Note.

Section 10.2     Acceleration.  Upon the occurrence of an Event of Default set forth in Sections 10.1(b) or (c), or upon the continuance for two Business Days of the Event of Default set forth in Section 10.1(a), the Trustee shall, having first given 30 days' notice in writing delivered to the Authority, the Governor and the Attorney General declare the principal of all Bonds then Outstanding and the accrued interest thereon immediately due and payable, and such principal and interest shall thereupon become and be immediately due and payable.

Upon the occurrence of an Event of Default set forth in Section 10.1(a), and without regard to the continuance thereof, the Trustee may, and upon the written request of the Owners of not less than 25% in aggregate principal amount of Bonds then Outstanding shall, by notice in writing delivered to the Authority declare the principal of all such Bonds then outstanding and the accrued interest thereon immediately due and payable, and such principal and interest shall thereupon become and be immediately due and payable.

Upon the acceleration of the maturities of such Bonds, the Trustee shall forthwith demand payment from the Authority for the payment of an amount sufficient to pay the principal of and interest on the Bonds (other than Authority Bonds) to the expected payment date.

Section 10.3     Remedies.  Upon the occurrence of an Event of Default, the Trustee may, in addition to acceleration as provided in Section 10.2, pursue any available remedy by action at law or suit in equity to enforce the provisions of this Indenture and the payment of the principal of, premium, if any, and interest on the Bonds.

In exercising the rights given the Trustee under this Article X, the Trustee shall take such action as, in the judgment of the Trustee applying the standards described in Section 11.1 hereof, would best serve the interests of the Bondowners.

If an Event of Default shall have occurred, and if requested so to do by the Owners of at least 25% in aggregate principal amount of Bonds then Outstanding and if indemnified as provided in subsection (l) of Section 11.1 hereof, the Trustee shall be obliged to exercise such one or more of the rights and powers conferred by this Article as the Trustee, being advised by counsel, shall deem most expedient in the interest of the Bondowners.

No remedy by the terms of this Indenture conferred upon or reserved to the Trustee (or to the Bondowners) is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given to the Trustee or to the Bondowners hereunder or now or hereafter existing at law or in equity or by statute.

No delay or omission to exercise any right or power accruing upon any default or Event of Default shall impair any such right or power or shall be construed to be a waiver of any such default or Event of Default or acquiescence therein; and every such right and power may be exercised from time to time and as often as may be deemed expedient.

48

No waiver of any default or Event of Default hereunder, whether by the Trustee pursuant to the provisions of Section 10.10 hereof or by the Bondowners, shall extend to or shall affect any subsequent default or event of default or shall impair any rights or remedies consequent thereon.

Section 10.4    Right of Bondowners to Direct Proceedings.  Anything in this Indenture to the contrary notwithstanding, the Owners of a majority in aggregate principal amount of Bonds then Outstanding shall have the right, at any time, by an instrument or instruments in writing executed and delivered to the Trustee, to direct the time, method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Indenture, or for the appointment of a receiver or any other proceedings hereunder; provided, that such direction shall not be otherwise than in accordance with the provisions of law and of this Indenture.

Section 10.5    Waiver of Certain Rights.  Upon the occurrence of an Event of Default, to the extent that such rights may then lawfully be waived, neither the Authority nor anyone claiming through it or under it, shall set up, claim or seek to take advantage of any moratorium, stay, extension or redemption laws now or hereafter in force to prevent or hinder the enforcement of this Indenture, but the Authority for itself and all who may claim through or under it hereby waives, to the extent that it lawfully may do so, the benefit of all such laws to which it may be entitled by law.

Section 10.6    Application of Moneys.  All moneys received by the Trustee pursuant to any right given or action taken under the provisions of this Article shall, after payment of the cost and expenses of the proceedings resulting in the collection of such moneys and of the fees, expenses, liabilities and advances incurred or made by the Trustee, including, but not limited to, Trustee counsel or other experts employed by the Trustee, be deposited into the Bond Fund and all moneys held or deposited in the Bond Fund during the continuance of an Event of Default shall be applied, in the order of priority set forth in Section 7.3 of this Indenture, as follows:

(a)    Unless the principal of all the Bonds has become or shall have been declared due and payable, all such moneys shall be applied:

First:  To the payment to the persons entitled thereto of all installments of interest then due on the Series A Bonds and the Series B Bonds, in the order of the maturity of the installments of such interest including interest (to the extent permitted by law) on overdue installments of interest at the same rate(s) per annum as borne by the Series A Bonds and the Series B Bonds on the date such interest became due, and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment ratably, according to the amounts due on such installment, to the persons entitled thereto without any discrimination or privilege; and

Second:  To the payment to the persons entitled thereto of the unpaid principal of any of the Series A Bonds and the Series B Bonds which shall have become due, including by mandatory prepayment under Section 4.4 of this Indenture (other than Series A Bonds and Series B Bonds called for redemption

49

for the payment of which moneys are held pursuant to the provisions of this Indenture), in the order of their due dates, with interest (to the extent permitted by law) on such Series A Bonds and Series B Bonds from the respective dates upon which they became due at the same rate(s) per annum as borne by such Series A Bonds and Series B Bonds on the date such principal became due and, if the amount available shall not be sufficient to pay in full Series A Bonds and Series B Bonds due on any particular date, together with such interest, then to the payment ratably, according to the amount of principal, with interest (to the extent permitted by law) on such principal from the respective dates on which such principal became due, due on such date, to the persons entitled thereto without any discrimination or privilege; and

Third: To the payment to the persons entitled thereto of the unpaid premium, if any of the Series A Bonds and Series B Bonds which have been called for redemption, in the order of the redemption dates, with interest (to the extent permitted by law) on such premiums from the respective dates on which such premiums became due, and, if the amount available shall not be sufficient to pay in full the premiums due on any particular redemption date, together with such interest, then to the payment ratably, according to the premium due on such date, to the persons entitled thereto without any discrimination or privilege; and

Fourth: To the payment to the persons entitled thereto of all installments of interest then due on the Series C Bonds, in the order of the maturity of the installments of such interest including interest (to the extent permitted by law) on overdue installments of interest at the same rate(s) per annum as borne by the Series C Bonds on the date such interest became due, and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment ratably, according to the amounts due on such installment, to the persons entitled thereto without any discrimination or privilege; and

Fifth: To the payment to the persons entitled thereto of the unpaid principal of any of the Series C Bonds which shall have become due (other than Series C Bonds called for redemption for the payment of which moneys are held pursuant to the provisions of this Indenture), in the order of their due dates, with interest (to the extent permitted by law) on such Series C Bonds from the respective dates upon which they became due at the same rate(s) per annum as borne by such Series C Bonds on the date such principal became due and, if the amount available shall not be sufficient to pay in full Series C Bonds due on any particular date, together with such interest, then to the payment ratably, according to the amount of principal, with interest (to the extent permitted by law) on such principal from the respective dates on which such principal became due, due on such date, to the persons entitled thereto without any discrimination or privilege; and

Sixth: To the payment to the persons entitled thereto of the unpaid premium, if any on any of the Series C Bonds which have been called for

50

redemption, in the order of the redemption dates, with interest (to the extent permitted by law) on such premiums from the respective dates on which such premiums became due, and, if the amount available shall not be sufficient to pay in full the premiums due on any particular redemption date, together with such interest, then to the payment ratably, according to the premium due on such date, to the persons entitled thereto without any discrimination or privilege; and

(b) If the principal of all the Bonds shall have become due or shall have been declared due and payable, all such moneys shall be applied first to the payment of the principal and interest then due and unpaid upon the Series A Bonds and Series B Bonds, without preference or priority of principal over interest or of interest over principal, or of any installment of interest, or of any Series A Bonds and Series B Bond over any other Series A Bonds and Series B Bond, ratably, according to the amounts due respectively for principal and interest, to the persons entitled thereto without any discrimination or privilege, and secondly to the payment of the premium, if any, then due, ratably to the persons entitled thereto without any discrimination or privilege and second to the payment of the principal and interest then due and unpaid upon the Series C Bonds, without preference or priority of principal over interest or of interest over principal, or of any installment of interest, or of any Series C Bond over any other Series C Bond, ratably, according to the amounts due respectively for principal and interest, to the persons entitled thereto without any discrimination or privilege, and secondly to the payment of the premium, if any, then due, ratably to the persons entitled thereto without any discrimination or privilege.

(c) If the principal of all the Bonds shall have been declared due and payable, and if such declaration shall thereafter have been rescinded and annulled under the provisions of this Article then, subject to the provisions of paragraph (b) of this Section in the event that the principal of all the Bonds shall later become due or be declared due and payable, the moneys shall be applied in accordance with the provisions of paragraph (a) of this Section.

Whenever moneys are to be applied pursuant to the provisions of this Section, such moneys shall be applied at such times from time to time as the Trustee shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future. Whenever the Trustee shall apply such funds, it shall fix the date (which shall be a regularly scheduled Interest Payment Date unless it shall deem another date more suitable upon which such application is to be made) and upon such date interest on the amounts of principal to be paid on such dates shall cease to accrue. The Trustee shall give such notice as it may deem appropriate of the deposit with it of such moneys and of the fixing of such date and shall not be required to make payment to the Owner of any unpaid Bond until such Bond shall be presented to the Trustee for appropriate endorsement or for cancellation if fully paid.

Whenever all of the Bonds and interest thereon have been paid under the provisions of this Section 10.6 and all fees, charges and expenses of the Trustee and any paying agents and all other amounts required to be paid hereunder have been paid, any balance remaining in the

4811-6404-3536.6

applicable subaccount of the Bond Fund shall be paid to the Liquidity Facility Provider, if any, and thereafter to the Authority.

Section 10.7    Remedies Vested in Trustee.  All rights of action (including the right to file proof of claims) under this Indenture or under any of the Bonds may be enforced by the Trustee without the possession of any of the Bonds or the production thereof in any trial or other proceedings relating thereto and any such suit or proceeding instituted by the Trustee shall be brought in its name as Trustee without the necessity of joining as plaintiffs or defendants any Owners of the Bonds, and any recovery of judgment shall, subject to the provisions of Section 10.6 hereof, be for the equal and ratable benefit of the Owners of the Outstanding Bonds.

Section 10.8    Rights and Remedies of Bondowners.  No Owner of any Bond shall have any right to institute any suit, action or proceeding in equity or at law for the enforcement of this Indenture or for the execution of any trust thereof or for the appointment of a receiver or any other remedy hereunder, unless: (i) a default has occurred of which the Trustee has been notified as provided in subsection (h) of Section 11.1, and or of which by said subsection it is deemed to have notice, (ii) such default shall have become an Event of Default and the Owners of at least 25% in aggregate principal amount of Bonds then Outstanding shall have made written request to the Trustee and shall have offered it reasonable opportunity either to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceeding in its own name, (iii) such Owners shall have offered to the Trustee indemnity as provided in Section 11.1, and (iv) the Trustee shall thereafter have failed or refused to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in its own name; and such notification, request and offer of indemnity are hereby declared in every case at the option of the Trustee to be conditions precedent to the execution of the powers and trust of this Indenture, and to any action or cause of action for the enforcement of this Indenture, or for the appointment of a receiver or for any other remedy hereunder; it being understood and intended that no one or more Owners of the Bonds shall have any right in any manner whatsoever to affect, disturb or prejudice the security of this Indenture by its, his, her or their action or to enforce any right hereunder except in the manner herein provided and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the equal benefit of the Owners of all Bonds then Outstanding.  Nothing in this Indenture contained shall, however, affect or impair the right of any Owner of Bonds to enforce the payment of the principal of and interest on any Bond at and after the stated maturity thereof, or the obligation of the Authority to pay the principal of, premium, if any, and interest on each of the Bonds issued hereunder to the respective Owners of the Bonds at the time and place, from the source and in the manner herein and in said Bonds expressed.  Pursuant to Section 234.10 (9) of the Act, the right of Bondholders to appoint a trustee pursuant to Section 234.20 of the Act is abrogated.

Section 10.9    Termination of Proceedings.  In case the Trustee shall have proceeded to enforce any right under this Indenture and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely, then and in every such case the Authority and the Trustee shall be restored to their former positions and rights hereunder and all rights, remedies and powers of the Trustee shall continue as if no such proceedings had been taken.

Section 10.10  <u>Waivers of Events of Default</u>.  The Trustee shall waive any Event of Default hereunder and its consequences and rescind any declaration of maturity of principal of and interest on the Bonds upon the written request of the Owners of a majority in aggregate principal amount of all of the Bonds then Outstanding; provided, however, there shall not be waived without the consent of the Owners of all the Bonds Outstanding (i) any Event of Default in the payment of the principal of any such Outstanding Bonds at the date of maturity specified therein or at the date fixed for the redemption or mandatory purchase thereof, or (ii) any Event of Default in the payment when due of the interest on any such Bonds unless, prior to such waiver or rescission, all arrears of interest, with interest (to the extent permitted by law) on overdue installments of interest at the same rate(s) per annum as borne by such Bonds, or all arrears of payments of principal, with interest (to the extent permitted by law) on overdue principal at the same rate(s) per annum as borne by such provided in the Bonds, as the case may be, and all expenses of the Trustee in connection with such default shall have been paid or provided for; and in case of any such waiver or rescission, or in case any proceeding taken by the Trustee on account of any such default shall have been discontinued or abandoned or determined adversely, then and in every such case the Authority, the Trustee and the Bondowners shall be restored to their former positions and rights hereunder respectively, but no such waiver or rescission shall extend to any subsequent or other default, or impair any right consequent thereon.

## ARTICLE XI

## THE TRUSTEE

Section 11.1  <u>Acceptance of Trusts</u>.  The Trustee hereby accepts the trusts imposed upon it by this Indenture, and agrees to perform said trusts, but only upon and subject to the following express terms and conditions, and no implied covenants or obligations shall be read into this Indenture against the Trustee:

(a)  The Trustee, prior to the occurrence of any Event of Default and after the curing of all Events of Default which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture.  In case an Event of Default has occurred (which has not been cured) the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a reasonable and prudent person would exercise or use under the circumstances in the conduct of personal affairs.

(b)  The Trustee may execute any of the trusts or powers hereof and perform any of its duties by or through attorneys, agents or employees but shall be answerable for the conduct of the same in accordance with the standard specified above, and shall be entitled to act upon the opinion or advice of its counsel concerning all matters of trust hereof and the duties hereunder, and may in all cases pay such reasonable compensation to all such attorneys, agents and employees as may reasonably be employed in connection with the trust hereof.  The Trustee may act upon an opinion of Independent Counsel and shall not be responsible for any loss or damage resulting from any action or nonaction by it taken or omitted to be taken in good faith in reliance upon such opinion of Independent Counsel.

53

(c)     The Trustee shall not be responsible for any recital herein or in the Bonds (except in respect to the certificate of the Trustee endorsed on the Bonds) or for the validity of the execution by the Authority of this Indenture or of any supplements hereto or for the sufficiency of the security for the Bonds issued hereunder or intended to be secured hereby, and the Trustee shall not be bound to ascertain or inquire as to the performance or observance of any covenants, conditions or agreements on the part of the Authority, except as hereinafter set forth; and the Trustee shall not be responsible or liable for any loss suffered in connection with any investment of funds made by it in accordance with Article VIII hereof.

(d)     The Trustee shall not be accountable for the use of any Bonds authenticated or delivered hereunder. The Trustee may become the Owner of Bonds secured hereby with the same rights which it would have if not Trustee. The Trustee may in good faith buy, sell, own and deal in any of the Bonds and may join in any action which any Bondowner may be entitled to take with like effect as if the Trustee were not a party to this Indenture.

(e)     The Trustee shall be protected in acting upon any notice, request, consent, certificate, order, affidavit, letter, telegram, telex, telecopy or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons. Any action taken by the Trustee pursuant to this Indenture upon the request or authority or consent of any person who at the time of making such request or giving such authority or consent is the Owner of any Bond, shall be conclusive and binding upon all future Owners of the same Bond and upon Bonds issued in exchange therefor or in place thereof.

(f)     As to the existence or nonexistence of any fact or as to the sufficiency or validity of any instrument, paper or proceeding, the Trustee shall be entitled to rely upon a certificate signed on behalf of the Authority by an Authorized Officer or such other person as may be designated for such purpose by resolution of the Authority's Governing Body, as sufficient evidence of the facts therein contained; and prior to the occurrence of a default of which the Trustee has been notified as provided in subsection (h) of this Section, or of which by said subsection it is deemed to have notice, shall also be at liberty to accept and rely upon a similar certificate to the effect that any particular dealing, transaction or action is necessary or expedient, but may at its discretion secure such further evidence deemed necessary or advisable, but shall in no case be bound to secure the same. The Trustee may accept a certificate of an Authorized Officer under the Authority's seal, if any, to the effect that a resolution in the form therein set forth has been adopted by the Authority's Governing Body as conclusive evidence that such resolution has been duly adopted, and is in full force and effect. The resolutions, orders, opinions, certificates and other instruments provided for in this Indenture may be accepted by the Trustee as conclusive evidence of the facts and conclusions stated therein and shall be full warrant, protection and authority to the Trustee for the withdrawal of cash and the taking or omitting of any other action hereunder.

54

(g)     The permissive right of the Trustee to do things enumerated in this Indenture shall not be construed as a duty, and the Trustee shall not be answerable for other than its negligence or willful default.

(h)     The Trustee shall not be presumed to have knowledge of any default or Event of Default hereunder except (i) failure to pay the principal or purchase price of, premium, if any, and interest on the Bonds, or (ii) the failure of the Liquidity Facility Provider to honor a demand made by the Trustee under the Liquidity Facility unless the Trustee shall be specifically notified in writing of such default by the Authority, Liquidity Facility Provider or the Owners of at least 10% in aggregate principal amount of Bonds then Outstanding.

(i)     At any and all reasonable times the Trustee and its duly authorized agents, attorneys, experts, engineers, accountants and representatives shall have the right, but shall not be required, to inspect all books, papers and records of the Authority pertaining to the Bonds and to take such memoranda from and in regard thereto as may be desired.

(j)     The Trustee shall not be required to give any bond or surety in respect of the execution of said trusts and powers or otherwise in respect of the premises.

(k)     Notwithstanding anything elsewhere in this Indenture contained, the Trustee shall have the right, but shall not be required, to demand, in respect of the authentication of any Bonds, the withdrawal of any cash, the release of any property, or any action whatsoever within the purview of this Indenture, any showings, certificates, opinions, appraisals or other information, or corporate action or evidence thereof, in addition to that by the terms hereof required, as a condition of such action by the Trustee deemed desirable for the purpose of establishing the right of the Authority to the authentication of any Bonds, the withdrawal of any cash, or the taking of any other action by the Trustee.

(l)     Before taking any action under Articles X or XI of this Indenture, the Trustee may require that satisfactory indemnity be furnished to it for the reimbursement of all expenses to which it may be put and to protect it against all liability, except liability which is adjudicated to have resulted from its negligence or willful default, by reason of any action so taken.

(m)     All moneys received by the Trustee or any Alternate Paying Agent shall, until used or applied or invested as herein provided, be held in trust in the manner and for the purposes for which they were received but need not be segregated from other funds except to the extent required by this Indenture or law.  Neither the Trustee nor any Alternate Paying Agent shall be under any liability for interest on any moneys received hereunder except such as may be agreed upon.

(n)     While the Bonds are in book entry form, the Trustee shall comply with the representations and undertakings set forth in the Letter of Representations.

Section 11.2    Reserved.

4811-6404-3536.6

Section 11.3    Notice to Bondowners if Default Occurs.  If a default occurs of which the Trustee has, or is by subsection (h) of Section 11.1 hereof presumed to have, knowledge, then the Trustee shall give written notice thereof by first-class mail to the Owners of all Bonds then Outstanding.

Section 11.4    Intervention by Trustee.  In any judicial proceedings to which the Authority is a party and which in the opinion of the Trustee and its counsel has a substantial bearing on the interests of Owners of the Bonds, the Trustee may intervene on behalf of Bondowners and shall do so if requested in writing by the Owners of at least 25% in aggregate principal amount of all Bonds then Outstanding, provided that the Trustee shall first have been offered such reasonable indemnity against such liability as it may incur in or by reason of such proceedings.  The rights and obligations of the Trustee under this Section are subject to the approval of a court of competent jurisdiction.

Section 11.5    Successor Trustee.  Any corporation or association into which the Trustee may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer its trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which it is a party, ipso facto, shall be and become a successor Trustee hereunder and vested with all of the title to the whole property or trust estate and all the trusts, powers, discretions, immunities, privileges and all other matters as was its predecessor, without the execution or filing of any instrument or any further act, deed or conveyance on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

Section 11.6    Resignation by Trustee.  The Trustee and any successor Trustee may at any time resign from the trusts hereby created by giving 90 days' prior written notice to the Authority, any Remarketing Agent and any Liquidity Facility Provider, and by first-class mail to each Owner of Bonds. Such resignation shall take effect, however, only upon the appointment of a successor Trustee (or a temporary Trustee as provided in Section 11.8 hereof) by the Bondowners or by the Authority and the acceptance of such appointment; provided that, if a successor Trustee shall not have been appointed (and accepted such appointment) within 90 days from the date such notice is given, the Trustee may petition a court of competent jurisdiction for appointment of a successor Trustee.

Section 11.7    Removal of Trustee.  If no default or Event of Default under this Indenture shall have occurred and be continuing, the Trustee may be removed by the Authority, with the approval of the Liquidity Facility Provider, if any, by an instrument in writing delivered to the Trustee and Liquidity Facility Provider, if any; provided that such removal shall take effect only upon the appointment of a successor Trustee by the Authority, the acceptance of such appointment, and the transfer of any Liquidity Facility to the successor Trustee.

Section 11.8    Appointment of Successor Trustee; Temporary Trustee.  In case the Trustee hereunder shall resign or be removed, or be dissolved, or shall be in course of dissolution or liquidation, or otherwise become incapable of acting hereunder, or in case it shall be taken under the control of any public officer or officers, or of a receiver appointed by a court, a successor may be appointed by the Authority by an instrument executed and signed by an Authorized Officer under its seal.  If no successor Trustee has been appointed within 90 days

56

from the mailing of notice of resignation by the Trustee under <u>Section 11.6</u>, or from the date the Trustee is removed or becomes incapable of acting hereunder, the Trustee or any Bondowner may petition a court of competent jurisdiction to appoint a successor or temporary Trustee. Every such Trustee appointed pursuant to the provisions of this Section shall be a trust company or bank organized and in good standing under the laws of the United States of America or any state of the United States of America having the power and any authority to assume the duties and trusts hereby created and having a reported capital, surplus and undivided profits of not less than $10,000,000 if there be such an institution willing, qualified and able to accept the trust upon reasonable or customary terms. Such successor Trustee must be consented to in writing by the Liquidity Facility Provider, if any.

Section 11.9    <u>Concerning Any Successor Trustee</u>. Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to its predecessor and also to the Authority an instrument in writing accepting such appointment hereunder, and thereupon such successor, without any further act, deed or conveyance, shall become fully vested with all of the properties, rights, powers, trusts, duties and obligations of its predecessor; but such predecessor shall nevertheless, on the written request of its successor, or of the Authority, execute and deliver an instrument transferring to such successor Trustee all the properties, rights, powers, and trusts of such predecessor hereunder; and every predecessor Trustee shall deliver all securities and moneys held by it as Trustee hereunder to its successor. Should any instrument in writing from the Authority be required by any successor Trustee for more fully and certainly vesting in such successor the properties, rights, powers and duties hereby vested or intended to be vested in the predecessor, any and all such instruments in writing, shall, on request, be executed, acknowledged and delivered by the Authority.

Section 11.10    <u>Appointment of Co-Trustee</u>. At any time or times, for the purposes of conforming to any legal requirements, restrictions or conditions in any State, or if the Trustee shall be advised by Independent Counsel that it is necessary or advisable in the interest of the Bondowners so to do, the Authority and the Trustee shall have power to appoint (and upon the request of the Trustee, the Authority shall for such purpose join with the Trustee in the execution, delivery and recording of all instruments and agreements necessary or proper to appoint) another corporation or one or more persons, approved by the Trustee, either to act as separate Trustee or Trustees or Co-Trustees of all or any of the trust estate jointly with the Trustee hereunder.

Every separate Trustee or Co-Trustee (other than the Trustee initially acting as Trustee hereunder, hereinafter in this Section called the "<u>Initial Trustee</u>," and any Trustee which may be appointed as successor to it) shall, to the extent permitted by law, be appointed subject to the following provisions and conditions, namely:

(a)    The Bonds secured hereby shall be authenticated and delivered, and all powers, duties, obligations and rights, conferred upon the Trustee in respect of the custody of all funds and any securities pledged hereunder, shall be exercised solely by the Initial Trustee or its successors in trust hereunder;

4811-6404-3536.6

(b)     No power shall be exercised hereunder by such separate Trustee or Co-Trustee except with the consent in writing of the Initial Trustee or its successors in the trust hereunder;

(c)     The Authority and the Initial Trustee or its successors in the trust hereunder, at any time by an instrument in writing executed by them jointly, may accept the resignation or remove any separate Trustee or Co-Trustee appointed under this Section, and may likewise and in like manner appoint a successor to such separate Trustee or Co-Trustee who shall be so removed or who shall have resigned as provided in Section 11.6 hereof, anything herein contained to the contrary notwithstanding; and

(d)     No Trustee or Co-Trustee hereunder shall be personally liable by reason of any act or omission of any other Trustee or Co-Trustee hereunder.

Any notice, request or other writing, by or on behalf of the Owners of the Bonds issued hereunder, delivered solely to the Initial Trustee, or its successors in trust, shall be deemed to have been delivered to all of the then Trustees and Co-Trustees as effectually as if delivered to each of them. Every instrument appointing any Trustee or Co-Trustee other than a successor to the Initial Trustee shall refer to this Indenture and the conditions in this Section expressed, and upon the acceptance in writing by such Trustee or Co-Trustee, he, she, they or it shall be vested with the rights, powers, estate and/or property specified in such instrument either jointly with the Initial Trustee, or its successor, or separately, as may be provided therein, subject to all the trusts, conditions and provisions of this Indenture; and every such instrument shall be filed with the Initial Trustee or its successors in the trust. Any separate Trustee or Co-Trustee may at any time by an instrument in writing constitute the Initial Trustee or its successors in the trusts hereunder, his, her, their or its agent or attorney-in-fact, with full power and authority, to the extent which may be authorized by law, to do all acts and things and exercise all discretion authorized or permitted by him, her, them or it, for and in behalf of him, her, them or it, and in his, her, their or its name. Any Co-Trustee may, as to any action hereunder, whether discretionary or otherwise, act by attorney-in-fact. In case any separate Trustee or Co-Trustee, or a successor to any of them, shall die, become incapable of acting, resign or be removed, all the estates, properties, rights, powers, trusts, duties and obligations of said separate Trustee or Co-Trustee, so far as permitted by law, shall vest in and be exercised by the Initial Trustee or its successors in trust until the appointment of a successor to such separate Trustee or Co-Trustee.

Section 11.11  Acquisition of Conflicting Interests by Trustee. If the Trustee has or shall acquire any conflicting interest, the Trustee shall, within 90 days after ascertaining that it has such conflicting interest, either eliminate the same or resign by giving notice in accordance with Section 11.6 hereof to the Authority and Bondowners within such period; provided that such resignation shall become effective upon the appointment of a successor Trustee and such successor's acceptance of such appointment, and the Authority and the Trustee agree to take prompt steps to have a successor appointed in the manner herein provided.

The Trustee shall be deemed to have a conflicting interest hereunder if, while the Bonds are not secured by a Liquidity Facility, it has a "conflicting interest" within the meaning of Section 3.10(b)(1) to (9), inclusive, of the Trust Indenture Act of 1939, as amended, except that the Trustee shall not be deemed to have a conflicting interest solely by reason of its having for

4811-6404-3536.6

itself or as a banker become a purchaser, seller or pledgee of Bonds, it being understood that the Trustee may so deal with Bonds with the same rights that it would have if it were not Trustee and without liability or accountability to the Authority or Owners of Bonds on account thereof. Also, it may act as depositary for any purpose for any committee formed to protect the rights of Bondowners or effect or aid in any reorganization growing out of or involving the enforcement of the Bonds or this Indenture whether or not any such committee shall represent the Owners of a majority in aggregate principal amount of the Bonds Outstanding hereunder.

In the event that the Trustee shall fail to comply with the provisions of this Section, the Trustee shall within 10 days after the expiration of such 90-day period, transmit notice of such failure to the Bondowners.

Any Bondowner who has been a bona fide Owner of a Bond or Bonds for at least six months may, on behalf of himself, herself or itself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor, if the Trustee fails, after written request therefor by such Owner, to comply with the provisions of this Section.

Section 11.12  <u>Requirement of a Corporate Trustee</u>.  There shall at all times be one or more Trustees hereunder. One of the Trustees hereunder shall at all times be a corporate Trustee, and the corporate Trustee and any successor to the corporate Trustee, appointed as hereinbefore provided, shall be a corporation organized and doing business under the laws of the United States of America or any State or territory thereof, or of the District of Columbia, and shall be authorized under such laws to exercise corporate trust powers and be subject to supervision or examination by Federal, State, Territorial or District of Columbia authority and have a combined capital, surplus and undivided profits of not less than the $10,000,000; provided, however, that the preceding combined capital, surplus and undivided profits test shall not apply to the initial Trustee under this Indenture. If such corporate Trustee publishes reports of its condition at least annually, pursuant to law or to the requirements of any supervising or examining authority hereinbefore referred to, then for the purposes of this Section, the combined capital, surplus and undivided profits of the corporate Trustee shall be deemed its combined capital, surplus and undivided profits as the same is set forth in such corporate Trustee's most recent report of condition so published.

Section 11.13  <u>Trustee's Fees</u>.  The Project Owner has agreed to pay certain fees and expenses of the Trustee for acting as Trustee hereunder.  During the continuance of an Event of Default, the Trustee shall have a lien on Revenues (other than proceeds of any Liquidity Facility and moneys in the Bond Purchase Account and the segregated trust accounts held by the Trustee pursuant to <u>Sections 2.13</u>, <u>4.12</u> or <u>4.14</u> hereof) for payment of its fees and expenses, with a right of payment therefrom prior to payment of any principal, premium, or interest on the Bonds.  The Trustee shall not be entitled to any payments of fees or reimbursements of expenses which result from the negligence or willful default of the Trustee.

4811-6404-3536.6

## ARTICLE XII

## CONCERNING THE LIQUIDITY FACILITY

Section 12.1    Trustee to Draw on Liquidity Facility.  For so long as a Liquidity Facility remains outstanding, the Trustee shall draw on the Liquidity Facility as follows:

(a)    At or before 11:00 a.m., New York City time, on each Tender Date -- an amount sufficient, together with other funds on deposit at 10:15 a.m., New York City time, in the Bond Purchase Account, to pay the purchase price of all Tendered Bonds or Beneficial Ownership Interests;

provided, however, that for purposes of this Section 12.1, Authority Bonds and Bank Bonds shall not be deemed Outstanding, and the Trustee shall not draw on the Liquidity Facility or use the proceeds of the Liquidity Facility for the payment of Authority Bonds or Bank Bonds.

Each such draw on the Liquidity Facility shall be made in a timely manner in accordance with the terms of the Liquidity Facility.  In the event that for purposes of obtaining or maintaining a rating for the Bonds or for any other reason, it shall be necessary or desirable to make provision for draws on the Liquidity Facility at particular times, the Trustee shall deliver a written undertaking so to do and shall be bound thereby to the same extent as if the terms thereof were set forth in full in this Indenture.

Section 12.2    Requirements Regarding Liquidity Facility and Substitute Liquidity Facility.  Each Liquidity Facility shall have the following terms and provisions:

(a)    the Liquidity Facility shall be issued by a Liquidity Facility Provider and shall permit demands to be made against it as set forth in Section 12.1 of this Indenture;

(b)    the Liquidity Facility shall have a Liquidity Facility Expiration Date which is not earlier than the fifth day of a month and not earlier than the earlier of (i) 90 days after the effective date of such Liquidity Facility or (ii) the Final Maturity Date;

(c)    the Liquidity Facility shall be in an amount not less than the sum of (i) the maximum principal amount of Bonds that will be Outstanding commencing on the first date on which draws are permitted thereunder, plus (ii) at least 105 days of interest on such principal amount of Bonds at the Maximum Rate that could be borne thereby;

(d)    the Liquidity Facility shall be issued in favor of and delivered to the Trustee; and

(e)    either (i) the Liquidity Facility Provider is the issuer of both the Existing Liquidity Facility and the Substitute Liquidity Facility, or (ii) the Trustee shall have received evidence satisfactory to it that the Rating Agency has assigned a short-term rating to the Bonds which is the same or higher than the short-term rating in effect immediately prior to the substitution of the Liquidity Facility, or (iii) if the ratings requirement in (ii) shall not be met, (x) there shall be a Mandatory Tender pursuant to

60

Section 4.9(e) hereof and (y) such Liquidity Provider shall be acceptable to the Remarketing Agent.

The Trustee shall not accept any instrument as a Liquidity Facility unless it determines to its satisfaction that the foregoing conditions have been satisfied and unless (subject to the last sentence of the next succeeding paragraph hereof) the Trustee shall have been furnished with (i) an opinion of Independent Counsel to the effect that the Liquidity Facility has been duly authorized, executed and delivered and is a legally valid and binding obligation of the Liquidity Facility Provider enforceable in accordance with its terms (subject to customary exceptions as to enforceability), (ii) an opinion of Bond Counsel to the effect that the Trustee's acceptance of the Substitute Liquidity Facility will not result in an Event of Taxability.

The Trustee shall, from time to time, at the written direction of the Authority (and without the need for any consent or approval of the Bondowners) received not less than 45 days prior to the Liquidity Facility Substitution Date (unless a shorter notice shall be acceptable to the Trustee), accept (i) a substitute or replacement Liquidity Facility (such substitute or replacement Liquidity Facility which is not merely an extension of the Existing Liquidity Facility, is referred to herein as a "Substitute Liquidity Facility"), to replace the Liquidity Facility then in effect (the "Existing Liquidity Facility") or (ii) an extension of the Liquidity Facility Expiration Date of the Existing Liquidity Facility, provided that the Substitute Liquidity Facility or Existing Liquidity Facility, as extended, meets the requirements of a Liquidity Facility as set forth above. In the case of an extension of the Liquidity Facility Expiration Date of the Existing Liquidity Facility that does not otherwise modify the Liquidity Facility in any material respect, the opinions referred to in the immediately preceding paragraph shall not be required.

The Trustee shall give notice of the proposed delivery of any Substitute Liquidity Facility by first class mail not less than 30 nor more than 60 days prior to the Liquidity Facility Substitution Date to the Owner of each Bond at the address shown on the Bond Register and to the Remarketing Agent at the Remarketing Agent's Address. The original Liquidity Facility shall remain in effect through the effective date of the Substitution Liquidity Facility, and the mandatory tender of the Bonds, if applicable, on that date; and the Trustee shall draw on the original Liquidity Facility, as necessary, on that date.

On the effective date of a Substitute Liquidity Facility (a "Liquidity Facility Substitution Date"), the Existing Liquidity Facility may be terminated; provided that the Existing Liquidity Facility shall not be so released upon the delivery of a Substitute Liquidity Facility in connection with a Reset Period for which the conditions set forth in Section 4.2(b)(6) are not met and thereupon all references in this Indenture to the Liquidity Facility, the Liquidity Facility Provider and the Liquidity Facility Expiration Date shall be construed by reference to the Substitute Liquidity Facility.

Section 12.3    References to Liquidity Facility Provider After Expiration or Default of Liquidity Facility.    The particular provisions of this Indenture which require the approval, consent or direction of, or notice to, the Liquidity Facility Provider apply only while a Liquidity Facility or Bank Bonds are outstanding and if the Liquidity Facility Provider has not failed to honor any properly presented and conforming demand for payment made on the Liquidity Facility.

61

Section 12.4    References to Eligible Funds and Preference Opinion After Expiration of Liquidity Facility. The provisions of this Indenture which require that particular funds be Eligible Funds or that require a Preference Opinion with respect thereto shall not apply if no Liquidity Facility is outstanding.

Section 12.5    Option of Authority to Purchase Bonds in Lieu of Redemption or Upon Acceleration. The Authority shall have the right to purchase with its own funds (and not with funds of the Liquidity Facility Provider) any Bonds (i) which have been called for redemption pursuant to Sections 4.3 or 4.7 hereof or (ii) whose maturities have been accelerated pursuant to Section 10.2. The purchase price due the Owners of the Bonds so purchased shall be not greater than 100% of the principal, premium, if any, and interest otherwise due on such Bonds on the redemption date or accelerated maturity date, as the case may be. The purchase price shall be payable in immediately available funds for the account of such Owners at the Principal Office of the Trustee prior to the time that payment would otherwise be due for the retirement of such Bonds in such event. In any such case, a payment from the Authority shall be deemed to be for the purchase of the Bonds otherwise to be redeemed, unless the Authority elects in a written notice accompanying such payment to have such payment applied to the redemption and retirement of such Bonds.

Section 12.6    Disclaimer of FDIC Insurance. The Trustee hereby disclaims and waives any and all right to assert a claim for federal deposit insurance against the Federal Deposit Insurance Corporation in respect of the Bonds.

ARTICLE XIII

SUPPLEMENTAL INDENTURES

Section 13.1    Amendments and Supplements Without Bondowners' Consent. This Indenture may be amended or supplemented from time to time, without the consent of the Bondowners, by a Supplemental Indenture authorized by a resolution of the Authority's Governing Body filed with the Trustee, for one or more of the following purposes:

(a)    to add additional covenants of the Authority or to surrender any right or power herein conferred upon the Authority; and

(b)    for any purpose not inconsistent with the terms of this Indenture or to cure any ambiguity or to correct or supplement any provision contained herein or in any Supplemental Indenture which may be defective or inconsistent with any other provision contained herein or in any Supplemental Indenture, or to make such other provisions in regard to matters or questions arising under this Indenture which shall not be inconsistent with the provisions of this Indenture and which, in the judgment of the Trustee, shall not materially and adversely affect the interests of the Owners of the Bonds.

Section 13.2    Amendments With Bondowners' Consent. This Indenture may be amended from time to time by a Supplemental Indenture and approved by the Requisite Consent of Bondowners; provided that no amendment shall be made which affects the rights of some but less than all the Outstanding Bonds without the written consent of Bondowners owning a

62

majority in principal amount of the Bonds so affected; and provided further that unanimous written consent of the Bondowners shall be required for any amendment with respect to (i) the amount or due date of any principal, premium or interest payment upon any Bonds, (ii) the mandatory redemption provisions of any Bonds, (iii) the provisions for optional or mandatory tender of Bonds and (iv) this Article XIII.

If at any time the Authority shall request the Trustee to enter into any Supplemental Indenture for any of the purposes of this Section, the Trustee shall, upon being satisfactorily indemnified with respect to expenses, mail a copy of the notice by first-class mail to each Owner of the Bonds. Such notice shall briefly set forth the nature of the proposed Supplemental Indenture and shall state that copies thereof are on file at the Trustee's Principal Office for inspection by all Bondowners. If within six months following the giving of such notice, the execution of any such Supplemental Indenture shall have been consented to and approved as herein provided, no Owner of any Bond shall have any right to object to any of the terms and provisions contained therein, or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Authority from executing the same or from taking any action pursuant to the provisions thereof. Upon the execution of any such Supplemental Indenture as in this Section permitted and provided, this Indenture shall be and be deemed to be modified and amended in accordance therewith.

Section 13.3    Consent of Liquidity Facility Provider. No Supplemental Indenture under this Article XIII shall become effective unless the Liquidity Facility Provider, if any, shall have consented in writing thereto.

ARTICLE XIV

FORM OF BONDS

Section 14.1    General Matters. The Bonds and the certificates of authentication thereon shall be in substantially the forms set forth in Exhibit A and Exhibit B hereto, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon, as may be required to comply with the rules of any securities exchange, or as may, consistently herewith, be determined by the officers executing such Bonds as evidenced by their execution of the Bonds.

Section 14.2    Form of Bond Prior to the Initial Conversion Date. Each particular Bond authenticated prior to the initial Conversion Date shall be substantially in the form attached hereto as Exhibit A, with such insertions and alterations as shall be necessary to identify such Bond by series, number, date and CUSIP number (if any) and to indicate the principal amount, maturity, Owner, interest rate and redemption features of such Bond; and the Trustee's Certificate of Authentication to appear on all Bonds shall be substantially in the form attached hereto as Exhibit A.

Section 14.3    Form of Bond on or After Initial Conversion Date. Each particular Bond authenticated on or after the initial Conversion Date shall be substantially in the form attached hereto as Exhibit B, with such insertions and alterations as shall be necessary to identify such

4811-6404-3536.6

Case 24-21743-gmh    Doc 638-4    Filed 07/11/25    Page 68 of 112

Bond by series, number, date and CUSIP number (if any) and to indicate the principal amount, maturity, Owner, interest rate and redemption features of such Bond; and the Trustee's Certificate of authentication to appear on all Bonds shall be substantially in the form attached hereto as Exhibit B.

Section 14.4    Additional Matters Appearing on Bonds.    There may be printed or otherwise reproduced on any Bond form (i) the legal opinion of Bond Counsel, (ii) customary "back file panel" summary information, (iii) restrictions on transfer in form approved by the Trustee as required in particular instances, and (iv) any other information deemed necessary or appropriate by the Authority or the Trustee with the approval of Bond Counsel to give notice of information to Bondowners.

ARTICLE XV

MISCELLANEOUS

Section 15.1    Consent of Bondowners.    Any consent, request, direction, approval, objection or other instrument required by this Indenture to be signed and executed by the Bondowners may be in any number of concurrent writings of similar tenor and may be signed or executed by such Bondowners in person or by agent appointed in writing. Proof of the execution of any such consent, request, direction, approval, objection or other instrument or of the writing appointing any such agent, if made in the following manner, shall be sufficient for any of the purposes of this Indenture, and shall be conclusive in favor of the Trustee with regard to any action taken under such request for other instrument, namely:  The fact and date of the execution by any person of any such writing may be proved by the certificate of any officer in any jurisdiction who by law had power to take acknowledgments within such jurisdiction that the person signing such writing acknowledged before him or her the execution thereof, or by an affidavit of any witness to such execution.

Section 15.2    Limitation of Rights.    With the exception of rights herein expressly conferred, nothing expressed or mentioned in or to be implied from the Indenture or the Bonds is intended or shall be construed to give to any person other than the parties hereto, the Remarketing Agent, if any, the Liquidity Facility Provider, if any, and the Owners of the Bonds any legal or equitable right, remedy or claim under or in respect to this Indenture, or any covenants, conditions and provisions hereof, which are and are intended to be for the sole and exclusive benefit of the parties hereto, the Liquidity Facility Provider, if any, and the Owners of the Bonds as herein provided.

Section 15.3    Severability.  If any provision of this Indenture shall be held or deemed to be or shall, in fact, be inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all jurisdictions, or in all cases because it conflicts with any other provision or provisions hereof or any constitution or statute or rule of public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstance, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatever.

The invalidity of any one or more phrases, sentences, clauses or Sections in this Indenture contained shall not affect the remaining portions of the Indenture, or any part thereof.

Section 15.4    Notices.    Unless otherwise expressly provided herein, all notices, certificates or other communications hereunder shall be sufficiently given and shall be deemed given when hand delivered or when mailed by certified or registered mail, postage prepaid, or by prepaid telex, telecopy or telegram addressed as follows:    (i) if to the Authority, at the Authority's Address; (ii) if to the Trustee, at the Trustee's Address; (iii) if to the Remarketing Agent, at the Remarketing Agent's Address; and (iv) if to the Liquidity Facility Provider, at the Liquidity Facility Provider's Address.

A duplicate copy of each notice, certificate or other communication given hereunder by either the Authority or the Trustee shall also be concurrently given to the Liquidity Facility Provider at the Liquidity Facility Provider's Address.

Whenever the Trustee is required hereunder to give notice to Bondowners, it shall give such notice by first class mail to each person on the Bond Register whose Bond is affected thereby.

Section 15.5    Payments Due on Saturdays, Sundays and Holidays.    In any case where the date of maturity of interest on or principal of the Bonds or the date fixed for mandatory tender or redemption of any Bonds shall not be a Business Day, the payment of principal, premium, if any, and interest (or, in the case of mandatory tender for purchase, the purchase price) need not be made on such date in such city but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest shall accrue for the period after such date and prior to the date of payment as aforesaid.

Section 15.6    Captions.    The captions or headings in this Indenture are for convenience only and in no way define, limit or describe the scope or intent of any provisions of this Indenture.

Section 15.7    Counterparts.    This Indenture may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

Section 15.8    Governing Law.    The laws of the State of Wisconsin shall govern this Indenture.

Section 15.9    Pledge and Agreement of the State.    The following pledge and agreement of the State of Wisconsin is included in this Indenture and as part of the agreement between the Authority and the holders of the Bonds under the express authority of Section 234.19 of the Act.

The State of Wisconsin pledges and agrees with the holders of the Bonds that the State of Wisconsin will not limit or alter the rights vested in the Authority to fulfill the terms of any agreements made with the holders of the Bonds, or in any way impair the rights and remedies of the holders until the Bonds, together with the interest thereon, with interest on any unpaid

65

4811-6404-3536.6

installments of interest, and all costs and expenses in connection with any action or proceeding by or on behalf of such holders, are fully met and discharged.

4811-6404-3536.6

IN WITNESS WHEREOF, the Authority has caused this Indenture to be executed in its name and on its behalf by an Authorized Officer thereunto duly authorized, and the Trustee has caused this Indenture to be executed in its name and behalf by its duly authorized officer all as of the first day of August, 2012.

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY

By:_____
     Wyman B. Winston
     Executive Director

WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE

By:_____
Its_____

4811-6404-3536.2

IN WITNESS WHEREOF, the Authority has caused this Indenture to be executed in its name and on its behalf by an Authorized Officer thereunto duly authorized, and the Trustee has caused this Indenture to be executed in its name and behalf by its duly authorized officer all as of the first day of August, 2012.

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY

By:_____
    Wyman B. Winston
    Executive Director

WELLS FARGO BANK, NATIONAL
ASSOCIATION, AS TRUSTEE

By:_____
Its_____

[Signature Page to Indenture of Trust]

4811-6404-3536.2

## FORM OF BOND PRIOR TO INITIAL CONVERSION DATE

REGISTERED          UNITED STATES OF AMERICA        REGISTERED
                           STATE OF WISCONSIN

NO. _____                                                 $_____

## WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY
## ECONOMIC DEVELOPMENT BOND,
## 2012 SERIES __

| Interest Rate | Maturity Date | Dated Date | CUSIP Number |
|---|---|---|---|
| _____ % | _____ 1, ____ | _____, 2012 | _____ |

REGISTERED OWNER: _____

DENOMINATION: _____ DOLLARS

       KNOW ALL MEN BY THESE PRESENTS THAT THE WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Wisconsin (the "Authority"), for value received, promises to pay, but solely from the source and as hereinafter provided and not otherwise, to the above named Registered Owner, or registered assigns, on the above specified Maturity Date, upon presentation and surrender of this 2012 Series __ Bond, the principal sum specified above and to pay interest thereon, but solely from said source and as so provided and not otherwise, at a rate per annum equal to the Interest Rate set forth above.

       The 2012 Series __ Bonds have been issued pursuant to and in full compliance with the Constitution and laws of the State of Wisconsin, particularly Section 234 of the Wisconsin Statutes, as amended (the "Act"), and by authority of resolutions adopted by the Authority's governing body, in particular the (i) General Resolution adopted on October 19, 2011, (ii) Supplemental Resolution Number 1 adopted on October 19, 2011 and (iii) Series Resolution of the Members Loan Committee adopted on July 24, 2012. THE 2012 SERIES __ BONDS ARE LIMITED OBLIGATIONS OF THE AUTHORITY. THE AUTHORITY HAS NO TAXING POWER. THE 2012 SERIES __ BONDS SHALL NOT BE A DEBT OF THE STATE OF WISCONSIN, OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY STATE CONSTITUTIONAL PROVISION, STATUTORY LIMITATION OR CHARTER PROVISION NOR SHALL ANY OF THEM BE LIABLE THEREON. THE 2012 SERIES __ BONDS ARE NOT "MORAL OBLIGATIONS" OF THE STATE OF WISCONSIN. THE 2012 SERIES __ BONDS SHALL NOT IN ANY EVENT BE PAYABLE OUT OF ANY FUNDS OR PROPERTIES OTHER THAN THOSE OF THE AUTHORITY PLEDGED THERETO.

4811-6404-3536.5

SECTION 234.15 OF THE ACT DOES NOT APPLY TO THE 2012 SERIES __ BONDS. The principal of, premium, if any, and interest on the 2012 Series __ Bonds are payable by the Authority solely from "Revenues." Revenues means all revenues and income available to the Authority, including without limitation, all cash and securities held from time to time in the trust funds created under the Indenture (as hereinafter defined) and the investment earnings thereon, but subject to the provisions of any prior resolutions of the Authority pledging particular revenues or income of the Authority to other notes, bonds or obligations.

Interest hereon shall be payable semiannually on each March 1, June 1, September 1, and December 1 commencing _____ 1, 2012 and on each redemption date in respect hereto until payment of such principal sum, or, if this 2012 Series __ Bond shall be duly called for redemption, until the redemption date. Overdue principal (to the extent legally enforceable) shall bear interest at the same rate per annum as was borne by this 2012 Series __ Bond on the due date of the payment that is delinquent. The principal of, premium, if any, and interest on this 2012 Series __ Bond are payable in lawful money of the United States of America at the principal corporate trust office of Wells Fargo Bank, National Association, or its successor or successors, as trustee (the "Trustee"). Interest hereon which is payable, and punctually paid or duly provided for, on any interest payment date shall be paid by check drawn by the Trustee payable to the order of the person in whose name this 2012 Series __ Bond is registered at the close of business on the record date for such interest, which shall be the fifteenth day of the calendar month immediately preceding such interest payment date and for interest payable on any redemption date which is not a regularly scheduled semiannual interest payment date shall be the day (whether or not a Business Day) next preceding such date. Such interest shall be mailed to such person at the address shown on the 2012 Series __ Bond register kept by the Trustee. Notwithstanding the foregoing, for so long as the 2012 Series __ Bonds are in a Book Entry System as provided in the Indenture, interest hereon shall be transmitted to the Registered Owner on the interest payment date by wire transfer in immediately available funds.

This 2012 Series __ Bond is one of a duly authorized issue of 2012 Series __ Bonds of the Authority, limited in aggregate principal amount to $_____ (hereinafter referred to as the "2012 Series __ Bonds"). This 2012 Series __ Bond is issued and authorized to be issued for the purpose of funding loans to Wisconsin & Milwaukee Hotel Investment Fund, LLC and Wisconsin & Milwaukee Hotel LLC.

The 2012 Series __ Bonds are all issued under and are equally and ratably secured and entitled to the protection and benefits given by an Indenture of Trust, dated as of August 1, 2012, duly executed and delivered by the Authority to the Trustee (the "Indenture"). Reference is hereby made to the Indenture and to all indentures supplemental thereto for a description of rights, duties and obligations of the Authority, the Trustee and the owners of the Bonds.

The 2012 Series __ Bonds are not subject to redemption except as provided herein and in the Indenture. Upon the election of the Authority (which election shall be made in the event of a prepayment of the Series __ Note, as defined in the Indenture, but otherwise may be made by the Authority from any source of funds available), the 2012 Series __ Bonds are subject to redemption in whole or in part on any business day on or after _____, 20__, at a redemption price of 100% of the principal amount of 2012 Series __ Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

A-2

The 2012 Series __ Bonds are subject to mandatory redemption at the price of 100% of the principal amount of 2012 Series __ Bonds so redeemed, plus accrued interest to the redemption date, on the following dates in the following amounts.

| Date | Amount |
|------|--------|
|      |        |

The 2012 Series __ Bonds shall be subject to redemption, in whole but not in part, at any time after the Lockout Period (as defined in the Indenture), if the Authority elects to redeem 2012 Series __ Bonds after the occurrence of any of the following events:

(a)     The Project (as defined in the Indenture) shall have been damaged or destroyed to such extent that, (i) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction, or (ii) the Project Owner (as defined in the Indenture) is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months;

(b)     Title to or the temporary use of all or substantially all of the Project shall have been taken under the exercise of the power of eminent domain by any governmental authority to such extent that the Project Owner is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(c)     As a result of any changes in the Constitution of Wisconsin or the Constitution of the United States of America or of legislative or administrative action (whether state or federal) or by final decree, judgment or order of any court or administrative body (whether state or federal), the Series __ Note (as defined in the Indenture) shall have become void or unenforceable or impossible of performance in accordance with the intent and purposes of the parties as expressed in the Series __ Note, or unreasonable burdens or excessive liabilities shall have been imposed on the Authority or the Project Owner as a consequence of having the 2012 Series __ Bonds or the Series __ Note outstanding including without limitation federal, state or other ad valorem, property, income or other taxes not being imposed on the date of the Series __ Note.

The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series __ Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

A-3

After the Lockout Period, the 2012 Series __ Bonds shall be subject to mandatory redemption in whole on the earliest practicable date (selected by the Trustee) within 60 days following a Determination of Taxability (as defined in the Indenture). The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series __ Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

Notice of the call for any redemption of the 2012 Series __ Bonds prior to maturity shall be given by mailing a copy of the redemption notice by first-class mail not less than 30 nor more than 60 days prior to the redemption date to the registered owner of each 2012 Series __ Bond to be redeemed at the address shown on the 2012 Series __ Bond register maintained by the Trustee. Neither the failure to mail any such notice, nor any defect in any notice so mailed, with respect to any particular Bondowner shall affect the validity of any proceedings for redemption of any other 2012 Series __ Bond. All 2012 Series __ Bonds or portions thereof so called for redemption shall cease to bear interest on the specified redemption date and shall no longer be deemed to be outstanding under the provisions of the Indenture if Eligible Funds (as defined in the Indenture) available and sufficient for their redemption are on deposit at the place of payment at that time.

Except as provided in the Indenture, the owners of the 2012 Series __ Bonds shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture, or to institute, appear in or defend any suit or other proceedings with respect thereto. In certain events, on the conditions, in the manner and with the effect set forth in the Indenture, the principal of all 2012 Series __ Bonds issued under the Indenture and then outstanding may become or may be declared due and payable before the stated maturity thereof, together with interest accrued thereon. Amendments, modifications and alterations of the Indenture, or of any supplements thereto, may be made only to the extent and in the circumstances permitted by the Indenture.

**This 2012 Series __ Bond shall be fully negotiable, but may be transferred only to an "Accredited Investor," as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, by a written assignment duly executed by the registered owner hereof or by such owner's duly authorized legal representative.** Upon presentation and surrender of this 2012 Series __ Bond together with said executed form of assignment at the principal corporate trust office of the Trustee, the Trustee shall register the transfer of this 2012 Series __ Bond in the 2012 Series __ Bond register maintained by the Trustee; provided, however, that the Trustee shall have no obligation to register the transfer unless the executed assignment shall be satisfactory to it in form and substance. Upon registration of the transfer of this 2012 Series __ Bond, the Trustee shall cancel this 2012 Series __ Bond, and the Authority shall issue, and the Trustee shall authenticate, one or more new 2012 Series __ Bonds of authorized denominations of the same maturity and interest rate and in the same aggregate outstanding principal amount as this 2012 Series __ Bond. The Authority and the Trustee may deem and treat the registered owner hereof as the absolute owner hereof for the purpose of receiving payment of or on account of the principal of, premium, if any, and interest due hereon and for all other purposes, and neither the Authority, nor the Trustee nor any alternate paying agent shall be affected by any notice to the contrary.

A-4

The 2012 Series __ Bonds are issuable in the form of fully registered bonds in the denominations of $5,000 or any multiple thereof. In the manner and subject to the conditions provided in the Indenture, 2012 Series __ Bonds, upon surrender thereof at the principal corporate trust office of the Trustee together with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or such owner's duly authorized legal representative, may be exchanged for an equal outstanding aggregate principal amount of 2012 Series __ Bonds of the same maturities and interest rates of any authorized denomination. The Trustee shall not be required to register the transfer or to exchange any 2012 Series __ Bond (i) during the fifteen days prior to the mailing of notice of any redemption, or (ii) after such 2012 Series __ Bond has been called for redemption. The Bondowner requesting any registration of transfer or exchange of 2012 Series __ Bonds shall pay with respect thereto any resulting tax or governmental charge. All such payments shall be conditions precedent to the exercise of the Bondowner's rights of registration of transfer or exchange.

The provisions of the two immediately preceding paragraphs are subject to the provisions of the Indenture regarding the maintenance of a Book Entry System for the 2012 Series __ Bonds.

IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required to exist, happen and be performed precedent to and in the execution and delivery of the Indenture and the issuance of this 2012 Series __ Bond do exist, have happened and have been performed in due time, form and manner as required by law, and that the issuance of this 2012 Series __ Bond and the issue of which it forms a part has been duly authorized by the Authority and does not exceed or violate any constitutional or statutory limitation. This 2012 Series __ Bond is issued with the intent that the laws of the State of Wisconsin will govern its construction. This 2012 Series __ Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Indenture until the certificate of authentication hereon shall have been signed by the Trustee.

IN WITNESS WHEREOF, the Authority has caused this 2012 Series __ Bond to be executed in its name by the manual or facsimile signature of an Authorized Officer of the Authority and attested by its Assistant Secretary and its corporate seal to be hereunto affixed, impressed, imprinted or otherwise reproduced.

<div style="margin-left:40%">

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY


By:_____
Its:    Executive Director


Attest:_____
Its:    Assistant Secretary

</div>

[SEAL]

4811-6404-3536.5

Registrar, Paying Agent and
Tender Agent: _____

Certificate of Authentication:

Dated: _____.

    This 2012 Series __ Bond is one of the 2012 Series __ Bonds described in the within-mentioned Indenture of Trust.

                WELLS FARGO BANK, NATIONAL
                ASSOCIATION, as trustee

                By:_____
                    Authorized Signatory

4811-6404-3536.5

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR
OTHER IDENTIFYING NUMBER OF ASSIGNEE

_____

_____
_____
(Please Print or Type Name and Address of Assignee)

the within-mentioned 2012 Series __ Bond and all rights thereunder and does hereby irrevocably constitute and appoint _____ attorney-in-fact, to transfer the same on the books of the registry in the office of the Trustee, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____

NOTICE: Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in the Securities Transfer Association Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

Note: The signature to this assignment must correspond with the name as written on the face of the within Bond in every particular, without alteration or enlargement or change whatsoever. When assignment is made by a guardian, trustee, executor or administrator, an officer of a corporation, or anyone in a representative capacity, proof of such person's authority to act must accompany this 2012 Series A Bond.

A-7

4811-6404-3536.5

FORM OF BOND AFTER INITIAL CONVERSION DATE

REGISTERED       UNITED STATES OF AMERICA       REGISTERED

                          STATE OF WISCONSIN

NO. ___                                               $_____

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY
ECONOMIC DEVELOPMENT BOND,
2012 SERIES __

| Interest Rate: | Maturity Date | Original Issue Date: | CUSIP Number |
|---|---|---|---|
| Variable - see below | _____ 1, _____ | _____, 2012 | _____ |

REGISTERED OWNER:     _____

DENOMINATION:     _____ DOLLARS

      KNOW ALL MEN BY THESE PRESENTS THAT THE WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Wisconsin (the "Authority"), for value received, promises to pay, but solely from the source and as hereinafter provided and not otherwise, to the above named Registered Owner, or registered assigns, on the above specified Maturity Date, upon presentation and surrender of this 2012 Series __ Bond, the principal sum specified above and to pay interest thereon, but solely from said source and as so provided and not otherwise, at the Variable Rate (as defined below).

      The 2012 Series ___ Bonds have been issued pursuant to and in full compliance with the Constitution and laws of the State of Wisconsin, particularly Section 234 of the Wisconsin Statutes, as amended (the "Act"), and by authority of resolutions adopted by the Authority's governing body, in particular the (i) General Resolution adopted on October 19, 2011, (ii) Supplemental Resolution Number 1 adopted on October 19, 2011 and (iii) Series Resolution of the Members Loan Committee adopted on July 24, 2012. THE 2012 SERIES ___ BONDS ARE LIMITED OBLIGATIONS OF THE AUTHORITY. THE AUTHORITY HAS NO TAXING POWER. THE 2012 SERIES ___ BONDS SHALL NOT BE A DEBT OF THE STATE OF WISCONSIN, OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY STATE CONSTITUTIONAL PROVISION, STATUTORY LIMITATION OR CHARTER PROVISION OR LIMITATION NOR SHALL ANY OF THEM BE LIABLE THEREON. THE 2012 SERIES ___ BONDS ARE NOT "MORAL OBLIGATIONS" OF THE STATE OF WISCONSIN. THE 2012 SERIES ___ BONDS SHALL NOT IN ANY EVENT BE PAYABLE OUT OF ANY FUNDS OR PROPERTIES OTHER THAN THOSE OF THE AUTHORITY PLEDGED THERETO. SECTION 234.15 OF THE

4811-6404-3536.5

ACT DOES NOT APPLY TO THE 2012 SERIES ___ BONDS. The principal of, premium, if any, and interest on the 2012 Series ___ Bonds are payable by the Authority from "Revenues." Revenues means all revenues and income available to the Authority, including without limitation, all cash and securities held from time to time in the trust funds created under the Indenture (as hereinafter defined) and the investment earnings thereon, but subject to the provisions of any prior resolutions of the Authority pledging particular revenues or income of the Authority to other notes, bonds or obligations.

Interest hereon is payable on the first Business Day of each March, June, September and December, commencing _____ 1, 2012, and on each redemption date in respect hereto until payment of such principal sum, or, if this 2012 Series ___ Bond shall be duly called for redemption, until the redemption date. Overdue principal (to the extent legally enforceable) shall bear interest at the same rate per annum as was borne by this 2012 Series ___ Bond on the due date of the payment that is delinquent. The principal of, premium, if any, and interest on this 2012 Series ___ Bond are payable in lawful money of the United States of America at the principal corporate trust office of Wells Fargo Bank, National Association, or its successor or successors, as trustee (the "Trustee"). Interest hereon which is payable, and punctually paid or duly provided for, on any interest payment date shall be paid by check drawn by the Trustee payable to the order of the person in whose name this 2012 Series ___ Bond is registered at the close of business on the record date for such interest, which shall be the day (whether or not a Business Day) immediately preceding such interest payment date. Such interest shall be mailed to such person at the address shown on the 2012 Series ___ Bond register kept by the Trustee. Notwithstanding the foregoing, for so long as the 2012 Series ___ Bonds are in a Book Entry System as provided in the Indenture, interest hereon shall be transmitted to the Registered Owner on the interest payment date by wire transfer in immediately available funds.

The interest rate on this 2012 Series ___ Bond may be converted to a fixed interest rate as described in the Indenture (as hereinafter defined). In such event, the owner of this 2012 Series ___ Bond shall be required to tender this 2012 Series ___ Bond for purchase as hereinafter described, and a new 2012 Series ___ Bond will be authenticated and delivered in lieu hereof.

As used herein:

"Business Day" means a day (a) other than a Saturday, Sunday or legal holiday on which banks located in the city in which the Trustee's designated corporate trust office is located, the city in which the Liquidity Facility Provider's principal office is located and the city in which the Remarketing Agent's principal office is located, are not required or authorized to remain closed and (b) on which neither the New York Stock Exchange nor the Federal Reserve Banks are closed.

"Calculation Period" means, while the 2012 Series ___ Bonds bear interest at the Variable Rate, the period from Thursday of each week (whether or not a Business Day) or any proposed Conversion Date established as provided in the Indenture through and including the earlier of (i) the following Wednesday (whether or not a Business Day), and (ii) the day immediately preceding a proposed Conversion Date. The initial Calculation Period shall be from the date of issuance of the 2012 Series ___ Bonds through and including _____.

B-2

"Conversion Date" means the date, if any, on which the interest rate on the 2012 Series ___ Bonds is converted from the Variable Rate to the fixed rate referenced above.

"Determination Date" means (i) with respect to each Calculation Period commencing on a Thursday, the Wednesday immediately preceding the commencement of such Calculation Period or, if such Wednesday is not a Business Day, the next preceding Business Day, and (ii) with respect to each Calculation Period commencing on a proposed Conversion Date (which does not become a Conversion Date), such proposed Conversion Date.

"Maximum Rate" means the rate which is used to determine the maximum amount of interest on the 2012 Series ___ Bonds covered by a Liquidity Facility. Initially the Maximum Rate is 10%.

"Remarketing Agent" means _____ any successor institution serving as Remarketing Agent pursuant to the Indenture.

"Variable Rate" means the interest rate for each Calculation Period as determined on the Determination Date with respect thereto and shall be the lesser of (i) Maximum Rate, or (ii) the minimum rate of interest which, in the judgment of the Remarketing Agent, under prevailing market conditions, taking into account the current rates for tax-exempt securities, or taxable securities as applicable, comparable in length of interest rate adjustment periods, liquidity, security and creditworthiness to the 2012 Series ___ Bonds, would enable the 2012 Series ___ Bonds to be sold at a price of par, plus accrued interest, if any, on the Determination Date. The Remarketing Agent shall determine the Variable Rate for each Calculation Period on the corresponding Determination Date, and shall notify the Trustee of such determination on such date by facsimile or other electronic means. In the event that the Remarketing Agent shall fail for any reason to determine, and notify the Trustee of, the Variable Rate for any Calculation Period, the Variable Rate for such Calculation Period shall be equal to the Variable Rate in effect immediately prior to the commencement of such Calculation Period.

This 2012 Series ___ Bond is duly authorized by the Authority, limited in aggregate principal amount to $_____. This 2012 Series ___ Bond is issued and authorized to be issued for the purpose of funding loans to Wisconsin & Milwaukee Hotel Investment Fund, LLC and Wisconsin & Milwaukee Hotel LLC.

The 2012 Series ___ Bonds are all issued under and are equally and ratably secured and entitled to the protection and benefits given by an Indenture of Trust, dated as of August 1, 2012, duly executed and delivered by the Authority to the Trustee (the "Indenture"). Reference is hereby made to the Indenture and to all indentures supplemental thereto for a description of rights, duties and obligations of the Authority, the Trustee and the owners of the 2012 Series ___ Bonds.

In order to provide liquidity for each 2012 Series ___ Bond tendered but not remarketed on each Optional Tender Date or Mandatory Tender Date, the Authority will enter into a Standby Bond Purchase Agreement (the "Liquidity Facility") with _____ (the "Initial Liquidity Facility Provider") which provides that the Initial Liquidity Provider will purchase Bonds, except

B-3

under certain circumstances, upon optional or mandatory tender of the 2012 Series ___ Bonds through and including _____.

The Owner of this 2012 Series ___ Bond may require the Trustee to purchase this 2012 Series ___ Bond (or any portion hereof that is a multiple of $5,000) on any Business Day (an "Optional Tender Date") but only from the sources set forth in the Indenture, upon delivery to the Trustee, no less than seven days prior to the Optional Tender Date, of a written demand for purchase (a "Purchase Demand"). The purchase price shall be 100% of the principal amount of this 2012 Series ___ Bond (or the portion hereof to be purchased), plus accrued interest to the Optional Tender Date. The Purchase Demand shall be irrevocable, and must state (i) the name and address of the registered owner, the principal amount of this 2012 Series ___ Bond (and the portion to be tendered, if less than the full principal hereof is to be tendered, provided the same is an Authorized Denomination) and the 2012 Series ___ Bond number and CUSIP number, (ii) the date on which this 2012 Series ___ Bond shall be so purchased, which date shall be a Business Day not prior to the seventh day next succeeding the date of the delivery of such notice to the Trustee, and (iii) each 2012 Series ___ Bond to be purchased. If this 2012 Series ___ Bond is held by a Depository in a Book Entry System, the Purchase Demand shall be executed in accordance with the provisions of the Indenture and the rules and procedures of the applicable Book-Entry System.

This 2012 Series ___ Bond shall be subject to mandatory tender for purchase by the Trustee, but only from the sources set forth in the Indenture, (i) on any date established under the Indenture for the conversion of the interest rate on the 2012 Series ___ Bonds to fixed interest rates (for a period of one year or more), (ii) on the first Business Day of the month in which the expiration date of the Liquidity Facility is to occur, unless the Liquidity Facility has been replaced or the expiration date has been extended in accordance with the Indenture, (iii) on a date established by the Trustee in accordance with the terms of the Indenture due to a default under the Liquidity Facility (other than certain defaults which result in an automatic suspension or termination of payments for mandatory purchase) or (iv) on each Liquidity Facility Substitution Date other than with a Substitute Liquidity Facility which results in same or higher short-term rating on the 2012 Series ___ Bonds. The purchase price shall be 100% of the principal amount hereof plus accrued interest to such date. The Trustee shall give notice of such mandatory tender, in the same manner described below for notice of redemption, not less than 30 nor more than 60 days prior to the date fixed for such mandatory tender (a "Mandatory Tender Date").

2012 SERIES ___ BONDS WHICH ARE SUBJECT TO OPTIONAL OR MANDATORY TENDER FOR PURCHASE AS AFORESAID BUT WHICH ARE NOT IN FACT DELIVERED TO THE TRUSTEE ON OR BEFORE THE TENDER DATE SHALL CEASE TO BEAR INTEREST ON THE TENDER DATE. IF FUNDS SUFFICIENT TO PAY THE PURCHASE PRICE OF ANY SUCH UNTENDERED 2012 SERIES ___ BOND SHALL BE HELD BY THE TRUSTEE, ALL LIABILITY OF THE AUTHORITY TO THE OWNER OF SUCH UNTENDERED 2012 SERIES ___ BOND FOR THE PAYMENT OF SUCH 2012 SERIES ___ BOND SHALL FORTHWITH CEASE, TERMINATE AND BE COMPLETELY DISCHARGED, AND THEREUPON IT SHALL BE THE DUTY OF THE TRUSTEE TO HOLD SUCH FUNDS IN A SEPARATE SEGREGATED TRUST ACCOUNT, WITHOUT LIABILITY FOR INTEREST THEREON, FOR THE BENEFIT OF THE OWNER OF SUCH UNTENDERED 2012 SERIES ___ BOND WHO SHALL THEREAFTER BE RESTRICTED

B-4

4811-6404-3536.5

EXCLUSIVELY TO SUCH ACCOUNT FOR ANY CLAIM OF WHATEVER NATURE ON SUCH PERSON'S PART UNDER THE INDENTURE OR ON OR WITH RESPECT TO SUCH 2012 SERIES ___ BOND. SUCH FUNDS IN SUCH SEGREGATED TRUST ACCOUNT SHALL NOT BE CONSIDERED PLEDGED REVENUES, AND SUCH UNTENDERED 2012 SERIES ___ BONDS SHALL NOT BE DEEMED TO BE OUTSTANDING UNDER THE INDENTURE.

Prior to the Conversion Date, at the option of the Authority, the 2012 Series ___ Bonds are subject to redemption, in whole or in part (in multiples of $5,000) on any date. The redemption price shall be 100% of the principal amount of the 2012 Series ___ Bonds or portions thereof so redeemed, plus accrued interest to the redemption date, and without premium.

The 2012 Series ___ Bonds are subject to mandatory redemption at the price of 100% of the principal amount of 2012 Series ___ Bonds so redeemed, plus accrued interest to the redemption date, on the following dates in the following amounts.

| Date | Amount |
|------|--------|

The 2012 Series ___ Bonds shall be subject to redemption, in whole but not in part, at any time if the Authority elects to redeem 2012 Series ___ Bonds after the occurrence of any of the following events:

(a)     The Project (as defined in the Indenture) shall have been damaged or destroyed to such extent that, (i) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction, or (ii) the Project Owner (as defined in the Indenture) is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months;

(b)     Title to or the temporary use of all or substantially all of the Project shall have been taken under the exercise of the power of eminent domain by any governmental

4811-6404-3536.5

authority to such extent that the Project Owner is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(c)     As a result of any changes in the Constitution of Wisconsin or the Constitution of the United States of America or of legislative or administrative action (whether state or federal) or by final decree, judgment or order of any court or administrative body (whether state or federal), the Series ___ Note (as defined in the Indenture) shall have become void or unenforceable or impossible of performance in accordance with the intent and purposes of the parties as expressed in the Series ___ Note, or unreasonable burdens or excessive liabilities shall have been imposed on the Authority or the Project Owner as a consequence of having the 2012 Series ___ Bonds or the Series ___ Note outstanding including without limitation federal, state or other ad valorem, property, income or other taxes not being imposed on the date of the Series ___ Note.

The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series ___ Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

2012 Series ___ Bonds which otherwise are to be redeemed in accordance with the redemption provisions summarized in the immediately preceding paragraphs may, at the option of the Authority, be purchased in lieu of redemption on the redemption date. Any 2012 Series ___ Bonds so purchased may be remarketed. The purchase price shall be the same as the otherwise applicable redemption price.

Notice of the call for any redemption of the 2012 Series ___ Bonds prior to maturity shall be given by mailing a copy of the redemption notice by first-class mail not less than 30 nor more than 60 days prior to the redemption date to the registered owner of each 2012 Series ___ Bond to be redeemed at the address shown on the 2012 Series ___ Bond register maintained by the Trustee. Neither the failure to mail any such notice, nor any defect in any notice so mailed, with respect to any particular Bondowner shall affect the validity of any proceedings for redemption of any other 2012 Series ___ Bond. All 2012 Series ___ Bonds or portions thereof so called for redemption shall, unless they are purchased in lieu of redemption as provided in the Indenture, cease to bear interest on the specified redemption date and shall no longer be deemed to be outstanding under the provisions of the Indenture if funds available and sufficient for their redemption are on deposit at the place of payment at that time.

Except as provided in the Indenture, the owners of the 2012 Series ___ Bonds shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture, or to institute, appear in or defend any suit or other proceedings with respect thereto. In certain events, on the conditions, in the manner and with the effect set forth in the Indenture, the principal of all 2012 Series ___ Bonds issued under the Indenture and then outstanding may become or may be declared due and payable before the stated maturity thereof, together with interest accrued thereon. Amendments, modifications and alterations of the Indenture and the Liquidity Facility, or of any supplements thereto, may be made only to the extent and in the circumstances permitted by the Indenture.

**This 2012 Series \_\_\_ Bond shall be fully negotiable, but may be transferred only to an "Accredited Investor," as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, by a written assignment duly executed by the registered owner hereof or by such owner's duly authorized legal representative.** Upon presentation and surrender of this 2012 Series \_\_\_ Bond together with said executed form of assignment at the principal corporate trust office of the Trustee, the Trustee shall register the transfer of this 2012 Series \_\_\_ Bond in the 2012 Series \_\_\_ Bond register maintained by the Trustee; provided, however, that the Trustee shall have no obligation to register the transfer unless the executed assignment shall be satisfactory to it in form and substance. Upon registration of the transfer of this 2012 Series \_\_\_ Bond, the Trustee shall cancel this 2012 Series \_\_\_ Bond, and the Authority shall issue, and the Trustee shall authenticate, one or more new 2012 Series \_\_\_ Bonds of authorized denominations of the same maturity and interest rate and in the same aggregate outstanding principal amount as this 2012 Series \_\_\_ Bond. The Authority and the Trustee may deem and treat the registered owner hereof as the absolute owner hereof for the purpose of receiving payment of or on account of the principal of, premium, if any, and interest due hereon and for all other purposes, and neither the Authority, nor the Trustee nor any alternate paying agent shall be affected by any notice to the contrary.

The 2012 Series \_\_\_ Bonds are issuable in the form of fully registered bonds in the denominations of $5,000 or any multiple thereof. In the manner and subject to the conditions provided in the Indenture, 2012 Series \_\_\_ Bonds, upon surrender thereof at the principal corporate trust office of the Trustee together with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or such owner's duly authorized legal representative, may be exchanged for an equal outstanding aggregate principal amount of 2012 Series \_\_\_ Bonds of the same maturities and interest rates of any authorized denomination. Except in connection with a remarketing of the 2012 Series \_\_\_ Bonds upon optional or mandatory tender, the Trustee shall not be required to register the transfer or to exchange any 2012 Series \_\_\_ Bond (i) after the receipt by the Trustee of a Purchase Demand with respect thereto and through the corresponding Optional Tender Date, (ii) after the Trustee has given notice of a Mandatory Tender Date and through the Mandatory Tender Date, (iii) during the fifteen days prior to the mailing of notice of any redemption, or (iv) after such 2012 Series \_\_\_ Bond has been called for redemption. The Bondowner requesting any registration of transfer or exchange of 2012 Series \_\_\_ Bonds shall pay with respect thereto any resulting tax or governmental charge. All such payments shall be conditions precedent to the exercise of the Bondowner's rights of registration of transfer or exchange.

The provisions of the two immediately preceding paragraphs are subject to the provisions of the Indenture regarding the maintenance of a Book Entry System for the 2012 Series \_\_\_ Bonds.

IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required to exist, happen and be performed precedent to and in the execution and delivery of the Indenture and the issuance of this 2012 Series \_\_\_ Bond do exist, have happened and have been performed in due time, form and manner as required by law, and that the issuance of this 2012 Series \_\_\_ Bond and the issue of which it forms a part has been duly authorized by the Authority and does not exceed or violate any constitutional or statutory limitation. This 2012 Series \_\_\_ Bond is issued with the intent that the laws of the State of Wisconsin will govern its

4811-6404-3536.5

construction. This 2012 Series ___ Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Indenture until the certificate of authentication hereon shall have been signed by the Trustee.

IN WITNESS WHEREOF, the Authority has caused this 2012 Series ___ Bond to be executed in its name by the manual or facsimile signature of its Executive Director and attested to by its [Assistant] Secretary and its corporate seal to be hereunto affixed, impressed, imprinted or otherwise reproduced.

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY

By:_____
Its:    Executive Director

[SEAL]

Attest:_____
Its:     [Assistant] Secretary

Registrar, Paying Agent and
Tender Agent:

WELLS FARGO BANK, NATIONAL
ASSOCIATION

Certificate of Authentication:

Dated:          _____

This 2012 Series ___ Bond is one of the 2012 Series ___ Bonds described in the within-mentioned Indenture of Trust.

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as trustee

By_____
Authorized Signatory

B-8

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR
OTHER IDENTIFYING NUMBER OF ASSIGNEE

_____

_____
(Please Print or Type Name and Address of Assignee)

the within-mentioned 2012 Series ___ Bond and all rights thereunder and does hereby irrevocably constitute and appoint _____ attorney-in-fact, to transfer the same on the books of the registry in the office of the Trustee, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____

NOTICE: Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in the Securities Transfer Association Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

Note: The signature to this assignment must correspond with the name as written on the face of the within 2012 Series ___ Bond in every particular, without alteration or enlargement or change whatsoever. When assignment is made by a guardian, trustee, executor or administrator, an officer of a corporation, or anyone in a representative capacity, proof of such person's authority to act must accompany this 2012 Series ___ Bond.

B-9

4811-6404-3536.5

EXHIBIT C

PROJECT DESCRIPTION

A nine story, 154,600 square foot 200 room Marriott Hotel with a restaurant and lounge, a Starbuck's coffee outlet, an indoor pool, a fitness center, retail shops, vending areas and a sundry shop, to be located in Milwaukee, Wisconsin.

C-1

4811-6404-3536.5

FORM OF RESET NOTICE

Addressed to:

Wells Fargo Bank, National Association          [Name and Address of Liquidity Facility
Mail Code MAC N9311-115                          Provider]
625 Marquette Avenue, 11th Floor
Minneapolis, Minnesota 55402

[Name and Address of Remarking Agent]

Re:    $_____ Wisconsin Housing and Economic Development Authority
       Economic Development Bonds, 2012 Series __

This is a "Reset Notice" for purposes of the Indenture of Trust, dated as of August 1, 2012, entered into in connection with the issuance of the captioned bonds. Terms are used herein with the meanings assigned to them in said Indenture of Trust.

The Authority hereby specifies the date October 1, 20__, as the Reset Date, and the date September 30, 20__, as the termination date of the next following Reset Period. The Authority hereby requests the establishment (by [insert name of Remarking Agent] as Remarking Agent) of the Fixed Rate for such Reset Period in accordance with the aforesaid Indenture of Trust. [The credit enhancement to be in effect during the new Reset Period is _____.] -OR- [The Authority hereby elects that there shall be no credit enhancement securing the Bonds during the Reset Period.] Enclosed herewith is an opinion of Bond Counsel (to be confirmed in writing as of the first day of such Reset Period) to the effect that the establishment of such Reset Period and the Fixed Rate with respect thereto [and the lack of credit enhancement during such Reset Period] [delivery of a credit enhancement for such Reset Period] will not result in an Event of Taxability.

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY


By:_____
Title:_____

D-1

SCHEDULE I

# LOAN A AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 1 | October 1, 2012 | 129,677.27 | 0.00 | 129,677.27 | 32,737,600.00 |
| 2 | November 1, 2012 | 129,677.27 | 0.00 | 129,677.27 | 32,737,600.00 |
| 3 | December 1, 2012 | 125,494.13 | 0.00 | 125,494.13 | 32,737,600.00 |
| 4 | January 1, 2013 | 129,677.27 | 0.00 | 129,677.27 | 32,737,600.00 |
| 5 | February 1, 2013 | 129,677.27 | 0.00 | 129,677.27 | 32,737,600.00 |
| 6 | March 1, 2013 | 117,127.86 | 0.00 | 117,127.86 | 32,737,600.00 |
| 7 | April 1, 2013 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 8 | May 1, 2013 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 9 | June 1, 2013 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 10 | July 1, 2013 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 11 | August 1, 2013 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 12 | September 1, 2013 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 13 | October 1, 2013 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 14 | November 1, 2013 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 15 | December 1, 2013 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 16 | January 1, 2014 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 17 | February 1, 2014 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 18 | March 1, 2014 | 147,173.70 | 0.00 | 147,173.70 | 32,737,600.00 |
| 19 | April 1, 2014 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 20 | May 1, 2014 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 21 | June 1, 2014 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 22 | July 1, 2014 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 23 | August 1, 2014 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 24 | September 1, 2014 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 25 | October 1, 2014 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 26 | November 1, 2014 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 27 | December 1, 2014 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 28 | January 1, 2015 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 29 | February 1, 2015 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 30 | March 1, 2015 | 147,173.70 | 0.00 | 147,173.70 | 32,737,600.00 |
| 31 | April 1, 2015 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 32 | May 1, 2015 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 33 | June 1, 2015 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 34 | July 1, 2015 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 35 | August 1, 2015 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 36 | September 1, 2015 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 37 | October 1, 2015 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 38 | November 1, 2015 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 39 | December 1, 2015 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 40 | January 1, 2016 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 41 | February 1, 2016 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 42 | March 1, 2016 | 152,429.90 | 0.00 | 152,429.90 | 32,737,600.00 |
| 43 | April 1, 2016 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 44 | May 1, 2016 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 45 | June 1, 2016 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 46 | July 1, 2016 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 47 | August 1, 2016 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 48 | September 1, 2016 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 49 | October 1, 2016 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 50 | November 1, 2016 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 51 | December 1, 2016 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 52 | January 1, 2017 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 53 | February 1, 2017 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 54 | March 1, 2017 | 147,173.70 | 0.00 | 147,173.70 | 32,737,600.00 |
| 55 | April 1, 2017 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 56 | May 1, 2017 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 57 | June 1, 2017 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 58 | July 1, 2017 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 59 | August 1, 2017 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 60 | September 1, 2017 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 61 | October 1, 2017 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 62 | November 1, 2017 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 63 | December 1, 2017 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 64 | January 1, 2018 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 65 | February 1, 2018 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 66 | March 1, 2018 | 147,173.70 | 0.00 | 147,173.70 | 32,737,600.00 |
| 67 | April 1, 2018 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 68 | May 1, 2018 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 69 | June 1, 2018 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 70 | July 1, 2018 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 71 | August 1, 2018 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 72 | September 1, 2018 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |

Date prepared 8/31/2012

# LOAN A AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 73 | October 1, 2018 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 74 | November 1, 2018 | 162,942.31 | 0.00 | 162,942.31 | 32,737,600.00 |
| 75 | December 1, 2018 | 157,686.11 | 0.00 | 157,686.11 | 32,737,600.00 |
| 76 | January 1, 2019 | 219,642.31 | 56,700.00 | 162,942.31 | 32,680,900.00 |
| 77 | February 1, 2019 | 219,560.10 | 56,900.00 | 162,660.10 | 32,624,000.00 |
| 78 | March 1, 2019 | 203,863.00 | 57,200.00 | 146,663.00 | 32,566,800.00 |
| 79 | April 1, 2019 | 219,492.20 | 57,400.00 | 162,092.20 | 32,509,400.00 |
| 80 | May 1, 2019 | 214,286.94 | 57,700.00 | 156,586.94 | 32,451,700.00 |
| 81 | June 1, 2019 | 219,519.32 | 58,000.00 | 161,519.32 | 32,393,700.00 |
| 82 | July 1, 2019 | 214,329.66 | 58,300.00 | 156,029.66 | 32,335,400.00 |
| 83 | August 1, 2019 | 219,540.47 | 58,600.00 | 160,940.47 | 32,276,800.00 |
| 84 | September 1, 2019 | 219,448.81 | 58,800.00 | 160,648.81 | 32,218,000.00 |
| 85 | October 1, 2019 | 214,283.37 | 59,100.00 | 155,183.37 | 32,158,900.00 |
| 86 | November 1, 2019 | 219,461.99 | 59,400.00 | 160,061.99 | 32,099,500.00 |
| 87 | December 1, 2019 | 214,312.59 | 59,700.00 | 154,612.59 | 32,039,800.00 |
| 88 | January 1, 2020 | 219,569.20 | 60,100.00 | 159,469.20 | 31,979,700.00 |
| 89 | February 1, 2020 | 219,470.07 | 60,300.00 | 159,170.07 | 31,919,400.00 |
| 90 | March 1, 2020 | 209,220.27 | 60,600.00 | 148,620.27 | 31,858,800.00 |
| 91 | April 1, 2020 | 219,468.33 | 60,900.00 | 158,568.33 | 31,797,900.00 |
| 92 | May 1, 2020 | 214,259.89 | 61,100.00 | 153,159.89 | 31,736,800.00 |
| 93 | June 1, 2020 | 219,361.11 | 61,400.00 | 157,961.11 | 31,675,400.00 |
| 94 | July 1, 2020 | 214,269.84 | 61,700.00 | 152,569.84 | 31,613,700.00 |
| 95 | August 1, 2020 | 219,348.41 | 62,000.00 | 157,348.41 | 31,551,700.00 |
| 96 | September 1, 2020 | 219,339.82 | 62,300.00 | 157,039.82 | 31,489,400.00 |
| 97 | October 1, 2020 | 214,273.94 | 62,600.00 | 151,673.94 | 31,426,800.00 |
| 98 | November 1, 2020 | 219,318.17 | 62,900.00 | 156,418.17 | 31,363,900.00 |
| 99 | December 1, 2020 | 214,269.45 | 63,200.00 | 151,069.45 | 31,300,700.00 |
| 100 | January 1, 2021 | 219,390.54 | 63,600.00 | 155,790.54 | 31,237,100.00 |
| 101 | February 1, 2021 | 219,273.99 | 63,800.00 | 155,473.99 | 31,173,300.00 |
| 102 | March 1, 2021 | 204,341.30 | 64,200.00 | 140,141.30 | 31,109,100.00 |
| 103 | April 1, 2021 | 219,336.90 | 64,500.00 | 154,836.90 | 31,044,600.00 |
| 104 | May 1, 2021 | 214,331.49 | 64,800.00 | 149,531.49 | 30,979,800.00 |
| 105 | June 1, 2021 | 219,293.35 | 65,100.00 | 154,193.35 | 30,914,700.00 |
| 106 | July 1, 2021 | 214,305.81 | 65,400.00 | 148,905.81 | 30,849,300.00 |
| 107 | August 1, 2021 | 219,243.82 | 65,700.00 | 153,543.82 | 30,783,600.00 |
| 108 | September 1, 2021 | 219,216.82 | 66,000.00 | 153,216.82 | 30,717,600.00 |
| 109 | October 1, 2021 | 214,356.44 | 66,400.00 | 147,956.44 | 30,651,200.00 |
| 110 | November 1, 2021 | 219,257.83 | 66,700.00 | 152,557.83 | 30,584,500.00 |
| 111 | December 1, 2021 | 214,315.34 | 67,000.00 | 147,315.34 | 30,517,500.00 |
| 112 | January 1, 2022 | 219,292.38 | 67,400.00 | 151,892.38 | 30,450,100.00 |
| 113 | February 1, 2022 | 219,156.91 | 67,600.00 | 151,556.91 | 30,382,500.00 |
| 114 | March 1, 2022 | 204,586.22 | 68,000.00 | 136,586.22 | 30,314,500.00 |
| 115 | April 1, 2022 | 219,182.00 | 68,300.00 | 150,882.00 | 30,246,200.00 |
| 116 | May 1, 2022 | 214,285.86 | 68,600.00 | 145,685.86 | 30,177,600.00 |
| 117 | June 1, 2022 | 219,200.62 | 69,000.00 | 150,200.62 | 30,108,600.00 |
| 118 | July 1, 2022 | 214,323.09 | 69,300.00 | 145,023.09 | 30,039,300.00 |
| 119 | August 1, 2022 | 219,112.27 | 69,600.00 | 149,512.27 | 29,969,700.00 |
| 120 | September 1, 2022 | 219,165.86 | 70,000.00 | 149,165.86 | 29,899,700.00 |
| 121 | October 1, 2022 | 214,316.89 | 70,300.00 | 144,016.89 | 29,829,400.00 |
| 122 | November 1, 2022 | 219,067.55 | 70,600.00 | 148,467.55 | 29,758,800.00 |
| 123 | December 1, 2022 | 214,338.22 | 71,000.00 | 143,338.22 | 29,687,800.00 |
| 124 | January 1, 2023 | 219,162.78 | 71,400.00 | 147,762.78 | 29,616,400.00 |
| 125 | February 1, 2023 | 219,107.40 | 71,700.00 | 147,407.40 | 29,544,700.00 |
| 126 | March 1, 2023 | 204,819.84 | 72,000.00 | 132,819.84 | 29,472,700.00 |
| 127 | April 1, 2023 | 218,992.18 | 72,300.00 | 146,692.18 | 29,400,400.00 |
| 128 | May 1, 2023 | 214,311.93 | 72,700.00 | 141,611.93 | 29,327,700.00 |
| 129 | June 1, 2023 | 218,970.48 | 73,000.00 | 145,970.48 | 29,254,700.00 |
| 130 | July 1, 2023 | 214,310.14 | 73,400.00 | 140,910.14 | 29,181,300.00 |
| 131 | August 1, 2023 | 219,041.81 | 73,800.00 | 145,241.81 | 29,107,500.00 |
| 132 | September 1, 2023 | 218,974.50 | 74,100.00 | 144,874.50 | 29,033,400.00 |
| 133 | October 1, 2023 | 214,344.21 | 74,500.00 | 139,844.21 | 28,958,900.00 |
| 134 | November 1, 2023 | 218,934.88 | 74,800.00 | 144,134.88 | 28,884,100.00 |
| 135 | December 1, 2023 | 214,325.08 | 75,200.00 | 139,125.08 | 28,808,900.00 |
| 136 | January 1, 2024 | 218,988.30 | 75,600.00 | 143,388.30 | 28,733,300.00 |
| 137 | February 1, 2024 | 218,912.02 | 75,900.00 | 143,012.02 | 28,657,400.00 |
| 138 | March 1, 2024 | 209,732.04 | 76,300.00 | 133,432.04 | 28,581,100.00 |
| 139 | April 1, 2024 | 218,854.49 | 76,600.00 | 142,254.49 | 28,504,500.00 |
| 140 | May 1, 2024 | 214,296.68 | 77,000.00 | 137,296.68 | 28,427,500.00 |
| 141 | June 1, 2024 | 218,889.98 | 77,400.00 | 141,489.98 | 28,350,100.00 |
| 142 | July 1, 2024 | 214,352.98 | 77,800.00 | 136,552.98 | 28,272,300.00 |
| 143 | August 1, 2024 | 218,817.52 | 78,100.00 | 140,717.52 | 28,194,200.00 |
| 144 | September 1, 2024 | 218,828.80 | 78,500.00 | 140,328.80 | 28,115,700.00 |
| 145 | October 1, 2024 | 214,323.96 | 78,900.00 | 135,423.96 | 28,036,800.00 |

Date prepared 8/31/2012

# LOAN A AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 146 | November 1, 2024 | 218,845.38 | 79,300.00 | 139,545.38 | 27,957,500.00 |
| 147 | December 1, 2024 | 214,261.96 | 79,600.00 | 134,661.96 | 27,877,900.00 |
| 148 | January 1, 2025 | 218,854.50 | 80,100.00 | 138,754.50 | 27,797,800.00 |
| 149 | February 1, 2025 | 218,755.83 | 80,400.00 | 138,355.83 | 27,717,400.00 |
| 150 | March 1, 2025 | 205,405.11 | 80,800.00 | 124,605.11 | 27,636,600.00 |
| 151 | April 1, 2025 | 218,753.50 | 81,200.00 | 137,553.50 | 27,555,400.00 |
| 152 | May 1, 2025 | 214,325.18 | 81,600.00 | 132,725.18 | 27,473,800.00 |
| 153 | June 1, 2025 | 218,743.21 | 82,000.00 | 136,743.21 | 27,391,800.00 |
| 154 | July 1, 2025 | 214,337.17 | 82,400.00 | 131,937.17 | 27,309,400.00 |
| 155 | August 1, 2025 | 218,724.95 | 82,800.00 | 135,924.95 | 27,226,600.00 |
| 156 | September 1, 2025 | 218,712.84 | 83,200.00 | 135,512.84 | 27,143,400.00 |
| 157 | October 1, 2025 | 214,340.71 | 83,600.00 | 130,740.71 | 27,059,800.00 |
| 158 | November 1, 2025 | 218,682.64 | 84,000.00 | 134,682.64 | 26,975,800.00 |
| 159 | December 1, 2025 | 214,333.44 | 84,400.00 | 129,933.44 | 26,891,400.00 |
| 160 | January 1, 2026 | 218,744.47 | 84,900.00 | 133,844.47 | 26,806,500.00 |
| 161 | February 1, 2026 | 218,621.91 | 85,200.00 | 133,421.91 | 26,721,300.00 |
| 162 | March 1, 2026 | 205,727.09 | 85,600.00 | 120,127.09 | 26,635,700.00 |
| 163 | April 1, 2026 | 218,571.80 | 86,000.00 | 132,571.80 | 26,549,700.00 |
| 164 | May 1, 2026 | 214,281.06 | 86,400.00 | 127,881.06 | 26,463,300.00 |
| 165 | June 1, 2026 | 218,513.72 | 86,800.00 | 131,713.72 | 26,376,500.00 |
| 166 | July 1, 2026 | 214,346.81 | 87,300.00 | 127,046.81 | 26,289,200.00 |
| 167 | August 1, 2026 | 218,547.19 | 87,700.00 | 130,847.19 | 26,201,500.00 |
| 168 | September 1, 2026 | 218,510.69 | 88,100.00 | 130,410.69 | 26,113,400.00 |
| 169 | October 1, 2026 | 214,279.54 | 88,500.00 | 125,779.54 | 26,024,900.00 |
| 170 | November 1, 2026 | 218,531.71 | 89,000.00 | 129,531.71 | 25,935,900.00 |
| 171 | December 1, 2026 | 214,324.59 | 89,400.00 | 124,924.59 | 25,846,500.00 |
| 172 | January 1, 2027 | 218,443.77 | 89,800.00 | 128,643.77 | 25,756,700.00 |
| 173 | February 1, 2027 | 218,396.82 | 90,200.00 | 128,196.82 | 25,666,500.00 |
| 174 | March 1, 2027 | 206,085.18 | 90,700.00 | 115,385.18 | 25,575,800.00 |
| 175 | April 1, 2027 | 218,396.44 | 91,100.00 | 127,296.44 | 25,484,700.00 |
| 176 | May 1, 2027 | 214,351.31 | 91,600.00 | 122,751.31 | 25,393,100.00 |
| 177 | June 1, 2027 | 218,387.10 | 92,000.00 | 126,387.10 | 25,301,100.00 |
| 178 | July 1, 2027 | 214,266.97 | 92,400.00 | 121,866.97 | 25,208,700.00 |
| 179 | August 1, 2027 | 218,369.30 | 92,900.00 | 125,469.30 | 25,115,800.00 |
| 180 | September 1, 2027 | 218,306.92 | 93,300.00 | 125,006.92 | 25,022,500.00 |
| 181 | October 1, 2027 | 214,325.04 | 93,800.00 | 120,525.04 | 24,928,700.00 |
| 182 | November 1, 2027 | 218,275.68 | 94,200.00 | 124,075.68 | 24,834,500.00 |
| 183 | December 1, 2027 | 214,319.51 | 94,700.00 | 119,619.51 | 24,739,800.00 |
| 184 | January 1, 2028 | 218,235.48 | 95,100.00 | 123,135.48 | 24,644,700.00 |
| 185 | February 1, 2028 | 218,262.15 | 95,600.00 | 122,662.15 | 24,549,100.00 |
| 186 | March 1, 2028 | 210,403.34 | 96,100.00 | 114,303.34 | 24,453,000.00 |
| 187 | April 1, 2028 | 218,208.02 | 96,500.00 | 121,708.02 | 24,356,500.00 |
| 188 | May 1, 2028 | 214,317.14 | 97,000.00 | 117,317.14 | 24,259,500.00 |
| 189 | June 1, 2028 | 218,244.92 | 97,500.00 | 120,744.92 | 24,162,000.00 |
| 190 | July 1, 2028 | 214,280.30 | 97,900.00 | 116,380.30 | 24,064,100.00 |
| 191 | August 1, 2028 | 218,172.37 | 98,400.00 | 119,772.37 | 23,965,700.00 |
| 192 | September 1, 2028 | 218,182.61 | 98,900.00 | 119,282.61 | 23,866,800.00 |
| 193 | October 1, 2028 | 214,258.42 | 99,300.00 | 114,958.42 | 23,767,500.00 |
| 194 | November 1, 2028 | 218,096.13 | 99,800.00 | 118,296.13 | 23,667,700.00 |
| 195 | December 1, 2028 | 214,299.42 | 100,300.00 | 113,999.42 | 23,567,400.00 |
| 196 | January 1, 2029 | 218,100.19 | 100,800.00 | 117,300.19 | 23,466,600.00 |
| 197 | February 1, 2029 | 218,098.48 | 101,300.00 | 116,798.48 | 23,365,300.00 |
| 198 | March 1, 2029 | 206,840.00 | 101,800.00 | 105,040.00 | 23,263,500.00 |
| 199 | April 1, 2029 | 218,087.61 | 102,300.00 | 115,787.61 | 23,161,200.00 |
| 200 | May 1, 2029 | 214,259.78 | 102,700.00 | 111,559.78 | 23,058,500.00 |
| 201 | June 1, 2029 | 217,967.28 | 103,200.00 | 114,767.28 | 22,955,300.00 |
| 202 | July 1, 2029 | 214,268.03 | 103,700.00 | 110,568.03 | 22,851,600.00 |
| 203 | August 1, 2029 | 217,937.49 | 104,200.00 | 113,737.49 | 22,747,400.00 |
| 204 | September 1, 2029 | 217,918.86 | 104,700.00 | 113,218.86 | 22,642,700.00 |
| 205 | October 1, 2029 | 214,262.34 | 105,200.00 | 109,062.34 | 22,537,500.00 |
| 206 | November 1, 2029 | 217,874.15 | 105,700.00 | 112,174.15 | 22,431,800.00 |
| 207 | December 1, 2029 | 214,346.50 | 106,300.00 | 108,046.50 | 22,325,500.00 |
| 208 | January 1, 2030 | 217,918.97 | 106,800.00 | 111,118.97 | 22,218,700.00 |
| 209 | February 1, 2030 | 217,887.41 | 107,300.00 | 110,587.41 | 22,111,400.00 |
| 210 | March 1, 2030 | 207,203.03 | 107,800.00 | 99,403.03 | 22,003,600.00 |
| 211 | April 1, 2030 | 217,816.81 | 108,300.00 | 109,516.81 | 21,895,300.00 |
| 212 | May 1, 2030 | 214,262.36 | 108,800.00 | 105,462.36 | 21,786,500.00 |
| 213 | June 1, 2030 | 217,836.25 | 109,400.00 | 108,436.25 | 21,677,100.00 |
| 214 | July 1, 2030 | 214,311.37 | 109,900.00 | 104,411.37 | 21,567,200.00 |
| 215 | August 1, 2030 | 217,744.75 | 110,400.00 | 107,344.75 | 21,456,800.00 |
| 216 | September 1, 2030 | 217,795.26 | 111,000.00 | 106,795.26 | 21,345,800.00 |
| 217 | October 1, 2030 | 214,315.60 | 111,500.00 | 102,815.60 | 21,234,300.00 |
| 218 | November 1, 2030 | 217,687.83 | 112,000.00 | 105,687.83 | 21,122,300.00 |

# LOAN A AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 219 | December 1, 2030 | 214,339.08 | 112,600.00 | 101,739.08 | 21,009,700.00 |
| 220 | January 1, 2031 | 217,669.95 | 113,100.00 | 104,569.95 | 20,896,600.00 |
| 221 | February 1, 2031 | 217,707.02 | 113,700.00 | 104,007.02 | 20,782,900.00 |
| 222 | March 1, 2031 | 207,630.68 | 114,200.00 | 93,430.68 | 20,668,700.00 |
| 223 | April 1, 2031 | 217,572.71 | 114,700.00 | 102,872.71 | 20,554,000.00 |
| 224 | May 1, 2031 | 214,301.77 | 115,300.00 | 99,001.77 | 20,438,700.00 |
| 225 | June 1, 2031 | 217,627.95 | 115,900.00 | 101,727.95 | 20,322,800.00 |
| 226 | July 1, 2031 | 214,288.15 | 116,400.00 | 97,888.15 | 20,206,400.00 |
| 227 | August 1, 2031 | 217,571.74 | 117,000.00 | 100,571.74 | 20,089,400.00 |
| 228 | September 1, 2031 | 217,489.41 | 117,500.00 | 99,989.41 | 19,971,900.00 |
| 229 | October 1, 2031 | 214,297.99 | 118,100.00 | 96,197.99 | 19,853,800.00 |
| 230 | November 1, 2031 | 217,516.77 | 118,700.00 | 98,816.77 | 19,735,100.00 |
| 231 | December 1, 2031 | 214,257.40 | 119,200.00 | 95,057.40 | 19,615,900.00 |
| 232 | January 1, 2032 | 217,432.69 | 119,800.00 | 97,632.69 | 19,496,100.00 |
| 233 | February 1, 2032 | 217,436.42 | 120,400.00 | 97,036.42 | 19,375,700.00 |
| 234 | March 1, 2032 | 211,215.41 | 121,000.00 | 90,215.41 | 19,254,700.00 |
| 235 | April 1, 2032 | 217,434.92 | 121,600.00 | 95,834.92 | 19,133,100.00 |
| 236 | May 1, 2032 | 214,257.77 | 122,100.00 | 92,157.77 | 19,011,000.00 |
| 237 | June 1, 2032 | 217,321.97 | 122,700.00 | 94,621.97 | 18,888,300.00 |
| 238 | July 1, 2032 | 214,278.65 | 123,300.00 | 90,978.65 | 18,765,000.00 |
| 239 | August 1, 2032 | 217,297.58 | 123,900.00 | 93,397.58 | 18,641,100.00 |
| 240 | September 1, 2032 | 217,280.90 | 124,500.00 | 92,780.90 | 18,516,600.00 |
| 241 | October 1, 2032 | 214,288.29 | 125,100.00 | 89,188.29 | 18,391,500.00 |
| 242 | November 1, 2032 | 217,238.58 | 125,700.00 | 91,538.58 | 18,265,800.00 |
| 243 | December 1, 2032 | 214,280.27 | 126,300.00 | 87,980.27 | 18,139,500.00 |
| 244 | January 1, 2033 | 217,184.32 | 126,900.00 | 90,284.32 | 18,012,600.00 |
| 245 | February 1, 2033 | 217,152.71 | 127,500.00 | 89,652.71 | 17,885,100.00 |
| 246 | March 1, 2033 | 208,603.46 | 128,200.00 | 80,403.46 | 17,756,900.00 |
| 247 | April 1, 2033 | 217,180.04 | 128,800.00 | 88,380.04 | 17,628,100.00 |
| 248 | May 1, 2033 | 214,308.68 | 129,400.00 | 84,908.68 | 17,498,700.00 |
| 249 | June 1, 2033 | 217,094.92 | 130,000.00 | 87,094.92 | 17,368,700.00 |
| 250 | July 1, 2033 | 214,259.24 | 130,600.00 | 83,659.24 | 17,238,100.00 |
| 251 | August 1, 2033 | 217,097.85 | 131,300.00 | 85,797.85 | 17,106,800.00 |
| 252 | September 1, 2033 | 217,044.35 | 131,900.00 | 85,144.35 | 16,974,900.00 |
| 253 | October 1, 2033 | 214,262.44 | 132,500.00 | 81,762.44 | 16,842,400.00 |
| 254 | November 1, 2033 | 217,028.37 | 133,200.00 | 83,828.37 | 16,709,200.00 |
| 255 | December 1, 2033 | 214,282.65 | 133,800.00 | 80,482.65 | 16,575,400.00 |
| 256 | January 1, 2034 | 216,999.45 | 134,500.00 | 82,499.45 | 16,440,900.00 |
| 257 | February 1, 2034 | 216,930.01 | 135,100.00 | 81,830.01 | 16,305,800.00 |
| 258 | March 1, 2034 | 209,103.63 | 135,800.00 | 73,303.63 | 16,170,000.00 |
| 259 | April 1, 2034 | 216,881.68 | 136,400.00 | 80,481.68 | 16,033,600.00 |
| 260 | May 1, 2034 | 214,328.51 | 137,100.00 | 77,228.51 | 15,896,500.00 |
| 261 | June 1, 2034 | 216,820.41 | 137,700.00 | 79,120.41 | 15,758,800.00 |
| 262 | July 1, 2034 | 214,304.89 | 138,400.00 | 75,904.89 | 15,620,400.00 |
| 263 | August 1, 2034 | 216,846.20 | 139,100.00 | 77,746.20 | 15,481,300.00 |
| 264 | September 1, 2034 | 216,753.87 | 139,700.00 | 77,053.87 | 15,341,600.00 |
| 265 | October 1, 2034 | 214,295.37 | 140,400.00 | 73,895.37 | 15,201,200.00 |
| 266 | November 1, 2034 | 216,759.75 | 141,100.00 | 75,659.75 | 15,060,100.00 |
| 267 | December 1, 2034 | 214,339.48 | 141,800.00 | 72,539.48 | 14,918,300.00 |
| 268 | January 1, 2035 | 216,651.69 | 142,400.00 | 74,251.69 | 14,775,900.00 |
| 269 | February 1, 2035 | 216,642.94 | 143,100.00 | 73,542.94 | 14,632,800.00 |
| 270 | March 1, 2035 | 209,582.57 | 143,800.00 | 65,782.57 | 14,489,000.00 |
| 271 | April 1, 2035 | 216,614.97 | 144,500.00 | 72,114.97 | 14,344,500.00 |
| 272 | May 1, 2035 | 214,292.68 | 145,200.00 | 69,092.68 | 14,199,300.00 |
| 273 | June 1, 2035 | 216,573.07 | 145,900.00 | 70,673.07 | 14,053,400.00 |
| 274 | July 1, 2035 | 214,290.54 | 146,600.00 | 67,690.54 | 13,906,800.00 |
| 275 | August 1, 2035 | 216,517.23 | 147,300.00 | 69,217.23 | 13,759,500.00 |
| 276 | September 1, 2035 | 216,484.09 | 148,000.00 | 68,484.09 | 13,611,500.00 |
| 277 | October 1, 2035 | 214,262.06 | 148,700.00 | 65,562.06 | 13,462,800.00 |
| 278 | November 1, 2035 | 216,507.35 | 149,500.00 | 67,007.35 | 13,313,300.00 |
| 279 | December 1, 2035 | 214,325.73 | 150,200.00 | 64,125.73 | 13,163,100.00 |
| 280 | January 1, 2036 | 216,415.67 | 150,900.00 | 65,515.67 | 13,012,200.00 |
| 281 | February 1, 2036 | 216,364.61 | 151,600.00 | 64,764.61 | 12,860,600.00 |
| 282 | March 1, 2036 | 212,280.38 | 152,400.00 | 59,880.38 | 12,708,200.00 |
| 283 | April 1, 2036 | 216,351.54 | 153,100.00 | 63,251.54 | 12,555,100.00 |
| 284 | May 1, 2036 | 214,273.73 | 153,800.00 | 60,473.73 | 12,401,300.00 |
| 285 | June 1, 2036 | 216,324.03 | 154,600.00 | 61,724.03 | 12,246,700.00 |
| 286 | July 1, 2036 | 214,288.27 | 155,300.00 | 58,988.27 | 12,091,400.00 |
| 287 | August 1, 2036 | 216,281.58 | 156,100.00 | 60,181.58 | 11,935,300.00 |
| 288 | September 1, 2036 | 216,204.64 | 156,800.00 | 59,404.64 | 11,778,500.00 |
| 289 | October 1, 2036 | 214,333.11 | 157,600.00 | 56,733.11 | 11,620,900.00 |
| 290 | November 1, 2036 | 216,139.80 | 158,300.00 | 57,839.80 | 11,462,600.00 |
| 291 | December 1, 2036 | 214,311.52 | 159,100.00 | 55,211.52 | 11,303,500.00 |

## LOAN A AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 292 | January 1, 2037 | 216,160.03 | 159,900.00 | 56,260.03 | 11,143,600.00 |
| 293 | February 1, 2037 | 216,064.17 | 160,600.00 | 55,464.17 | 10,983,000.00 |
| 294 | March 1, 2037 | 210,774.69 | 161,400.00 | 49,374.69 | 10,821,600.00 |
| 295 | April 1, 2037 | 216,061.51 | 162,200.00 | 53,861.51 | 10,659,400.00 |
| 296 | May 1, 2037 | 214,342.78 | 163,000.00 | 51,342.78 | 10,496,400.00 |
| 297 | June 1, 2037 | 215,942.92 | 163,700.00 | 52,242.92 | 10,332,700.00 |
| 298 | July 1, 2037 | 214,269.17 | 164,500.00 | 49,769.17 | 10,168,200.00 |
| 299 | August 1, 2037 | 215,909.39 | 165,300.00 | 50,609.39 | 10,002,900.00 |
| 300 | September 1, 2037 | 215,886.66 | 166,100.00 | 49,786.66 | 9,836,800.00 |
| 301 | October 1, 2037 | 214,280.59 | 166,900.00 | 47,380.59 | 9,669,900.00 |
| 302 | November 1, 2037 | 215,829.24 | 167,700.00 | 48,129.24 | 9,502,200.00 |
| 303 | December 1, 2037 | 214,268.93 | 168,500.00 | 45,768.93 | 9,333,700.00 |
| 304 | January 1, 2038 | 215,755.90 | 169,300.00 | 46,455.90 | 9,164,400.00 |
| 305 | February 1, 2038 | 215,813.26 | 170,200.00 | 45,613.26 | 8,994,200.00 |
| 306 | March 1, 2038 | 211,433.93 | 171,000.00 | 40,433.93 | 8,823,200.00 |
| 307 | April 1, 2038 | 215,715.03 | 171,800.00 | 43,915.03 | 8,651,400.00 |
| 308 | May 1, 2038 | 214,270.91 | 172,600.00 | 41,670.91 | 8,478,800.00 |
| 309 | June 1, 2038 | 215,700.87 | 173,500.00 | 42,200.87 | 8,305,300.00 |
| 310 | July 1, 2038 | 214,303.86 | 174,300.00 | 40,003.86 | 8,131,000.00 |
| 311 | August 1, 2038 | 215,569.79 | 175,100.00 | 40,469.79 | 7,955,900.00 |
| 312 | September 1, 2038 | 215,598.28 | 176,000.00 | 39,598.28 | 7,779,900.00 |
| 313 | October 1, 2038 | 214,273.19 | 176,800.00 | 37,473.19 | 7,603,100.00 |
| 314 | November 1, 2038 | 215,542.32 | 177,700.00 | 37,842.32 | 7,425,400.00 |
| 315 | December 1, 2038 | 214,265.68 | 178,500.00 | 35,765.68 | 7,246,900.00 |
| 316 | January 1, 2039 | 215,469.43 | 179,400.00 | 36,069.43 | 7,067,500.00 |
| 317 | February 1, 2039 | 215,476.52 | 180,300.00 | 35,176.52 | 6,887,200.00 |
| 318 | March 1, 2039 | 212,061.79 | 181,100.00 | 30,961.79 | 6,706,100.00 |
| 319 | April 1, 2039 | 215,377.75 | 182,000.00 | 33,377.75 | 6,524,100.00 |
| 320 | May 1, 2039 | 214,324.42 | 182,900.00 | 31,424.42 | 6,341,200.00 |
| 321 | June 1, 2039 | 215,361.56 | 183,800.00 | 31,561.56 | 6,157,400.00 |
| 322 | July 1, 2039 | 214,258.14 | 184,600.00 | 29,658.14 | 5,972,800.00 |
| 323 | August 1, 2039 | 215,227.95 | 185,500.00 | 29,727.95 | 5,787,300.00 |
| 324 | September 1, 2039 | 215,204.68 | 186,400.00 | 28,804.68 | 5,600,900.00 |
| 325 | October 1, 2039 | 214,277.67 | 187,300.00 | 26,977.67 | 5,413,600.00 |
| 326 | November 1, 2039 | 215,144.69 | 188,200.00 | 26,944.69 | 5,225,400.00 |
| 327 | December 1, 2039 | 214,269.01 | 189,100.00 | 25,169.01 | 5,036,300.00 |
| 328 | January 1, 2040 | 215,166.78 | 190,100.00 | 25,066.78 | 4,846,200.00 |
| 329 | February 1, 2040 | 215,120.61 | 191,000.00 | 24,120.61 | 4,655,200.00 |
| 330 | March 1, 2040 | 213,575.13 | 191,900.00 | 21,675.13 | 4,463,300.00 |
| 331 | April 1, 2040 | 215,014.84 | 192,800.00 | 22,214.84 | 4,270,500.00 |
| 332 | May 1, 2040 | 214,269.58 | 193,700.00 | 20,569.58 | 4,076,800.00 |
| 333 | June 1, 2040 | 214,991.14 | 194,700.00 | 20,291.14 | 3,882,100.00 |
| 334 | July 1, 2040 | 214,298.78 | 195,600.00 | 18,698.78 | 3,686,500.00 |
| 335 | August 1, 2040 | 214,948.53 | 196,600.00 | 18,348.53 | 3,489,900.00 |
| 336 | September 1, 2040 | 214,870.01 | 197,500.00 | 17,370.01 | 3,292,400.00 |
| 337 | October 1, 2040 | 214,258.39 | 198,400.00 | 15,858.39 | 3,094,000.00 |
| 338 | November 1, 2040 | 214,799.53 | 199,400.00 | 15,399.53 | 2,894,600.00 |
| 339 | December 1, 2040 | 214,342.32 | 200,400.00 | 13,942.32 | 2,694,200.00 |
| 340 | January 1, 2041 | 214,709.63 | 201,300.00 | 13,409.63 | 2,492,900.00 |
| 341 | February 1, 2041 | 214,707.72 | 202,300.00 | 12,407.72 | 2,290,600.00 |
| 342 | March 1, 2041 | 213,597.52 | 203,300.00 | 10,297.52 | 2,087,300.00 |
| 343 | April 1, 2041 | 214,688.96 | 204,300.00 | 10,388.96 | 1,883,000.00 |
| 344 | May 1, 2041 | 214,269.78 | 205,200.00 | 9,069.78 | 1,677,800.00 |
| 345 | June 1, 2041 | 214,550.78 | 206,200.00 | 8,350.78 | 1,471,600.00 |
| 346 | July 1, 2041 | 214,288.21 | 207,200.00 | 7,088.21 | 1,264,400.00 |
| 347 | August 1, 2041 | 214,493.20 | 208,200.00 | 6,293.20 | 1,056,200.00 |
| 348 | September 1, 2041 | 214,456.94 | 209,200.00 | 5,256.94 | 847,000.00 |
| 349 | October 1, 2041 | 214,279.72 | 210,200.00 | 4,079.72 | 636,800.00 |
| 350 | November 1, 2041 | 214,369.50 | 211,200.00 | 3,169.50 | 425,600.00 |
| 351 | December 1, 2041 | 214,349.97 | 212,300.00 | 2,049.97 | 213,300.00 |
| 352 | January 1, 2042 | 214,361.64 | 213,300.00 | 1,061.64 | 0.00 |
| | TOTALS: | 71,555,685.33 | 32,737,600.00 | 38,818,085.33 | |

# LOAN B AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 1 | October 1, 2012 | 8,961.62 | 0.00 | 8,961.62 | 2,262,400.00 |
| 2 | November 1, 2012 | 8,961.62 | 0.00 | 8,961.62 | 2,262,400.00 |
| 3 | December 1, 2012 | 8,672.53 | 0.00 | 8,672.53 | 2,262,400.00 |
| 4 | January 1, 2013 | 8,961.62 | 0.00 | 8,961.62 | 2,262,400.00 |
| 5 | February 1, 2013 | 8,961.62 | 0.00 | 8,961.62 | 2,262,400.00 |
| 6 | March 1, 2013 | 8,094.36 | 0.00 | 8,094.36 | 2,262,400.00 |
| 7 | April 1, 2013 | 8,961.62 | 0.00 | 8,961.62 | 2,262,400.00 |
| 8 | May 1, 2013 | 8,672.53 | 0.00 | 8,672.53 | 2,262,400.00 |
| 9 | June 1, 2013 | 9,109.93 | 0.00 | 9,109.93 | 2,262,400.00 |
| 10 | July 1, 2013 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 11 | August 1, 2013 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 12 | September 1, 2013 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 13 | October 1, 2013 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 14 | November 1, 2013 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 15 | December 1, 2013 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 16 | January 1, 2014 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 17 | February 1, 2014 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 18 | March 1, 2014 | 10,170.74 | 0.00 | 10,170.74 | 2,262,400.00 |
| 19 | April 1, 2014 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 20 | May 1, 2014 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 21 | June 1, 2014 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 22 | July 1, 2014 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 23 | August 1, 2014 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 24 | September 1, 2014 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 25 | October 1, 2014 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 26 | November 1, 2014 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 27 | December 1, 2014 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 28 | January 1, 2015 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 29 | February 1, 2015 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 30 | March 1, 2015 | 10,170.74 | 0.00 | 10,170.74 | 2,262,400.00 |
| 31 | April 1, 2015 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 32 | May 1, 2015 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 33 | June 1, 2015 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 34 | July 1, 2015 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 35 | August 1, 2015 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 36 | September 1, 2015 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 37 | October 1, 2015 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 38 | November 1, 2015 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 39 | December 1, 2015 | 10,897.23 | 0.00 | 10,897.23 | 2,262,400.00 |
| 40 | January 1, 2016 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 41 | February 1, 2016 | 11,260.47 | 0.00 | 11,260.47 | 2,262,400.00 |
| 42 | March 1, 2016 | 54,333.99 | 43,800.00 | 10,533.99 | 2,218,600.00 |
| 43 | April 1, 2016 | 43,742.47 | 32,700.00 | 11,042.47 | 2,185,900.00 |
| 44 | May 1, 2016 | 49,028.75 | 38,500.00 | 10,528.75 | 2,147,400.00 |
| 45 | June 1, 2016 | 43,788.09 | 33,100.00 | 10,688.09 | 2,114,300.00 |
| 46 | July 1, 2016 | 48,983.88 | 38,800.00 | 10,183.88 | 2,075,500.00 |
| 47 | August 1, 2016 | 43,730.22 | 33,400.00 | 10,330.22 | 2,042,100.00 |
| 48 | September 1, 2016 | 43,763.99 | 33,600.00 | 10,163.99 | 2,008,500.00 |
| 49 | October 1, 2016 | 49,074.28 | 39,400.00 | 9,674.28 | 1,969,100.00 |
| 50 | November 1, 2016 | 43,800.65 | 34,000.00 | 9,800.65 | 1,935,100.00 |
| 51 | December 1, 2016 | 49,020.73 | 39,700.00 | 9,320.73 | 1,895,400.00 |
| 52 | January 1, 2017 | 43,733.83 | 34,300.00 | 9,433.83 | 1,861,100.00 |
| 53 | February 1, 2017 | 43,763.11 | 34,500.00 | 9,263.11 | 1,826,600.00 |
| 54 | March 1, 2017 | 59,511.58 | 51,300.00 | 8,211.58 | 1,775,300.00 |
| 55 | April 1, 2017 | 43,736.06 | 34,900.00 | 8,836.06 | 1,740,400.00 |
| 56 | May 1, 2017 | 49,082.93 | 40,700.00 | 8,382.93 | 1,699,700.00 |
| 57 | June 1, 2017 | 43,759.78 | 35,300.00 | 8,459.78 | 1,664,400.00 |
| 58 | July 1, 2017 | 49,016.86 | 41,000.00 | 8,016.86 | 1,623,400.00 |
| 59 | August 1, 2017 | 43,780.02 | 35,700.00 | 8,080.02 | 1,587,700.00 |
| 60 | September 1, 2017 | 43,802.34 | 35,900.00 | 7,902.34 | 1,551,800.00 |
| 61 | October 1, 2017 | 49,074.50 | 41,600.00 | 7,474.50 | 1,510,200.00 |
| 62 | November 1, 2017 | 43,816.60 | 36,300.00 | 7,516.60 | 1,473,900.00 |
| 63 | December 1, 2017 | 48,999.29 | 41,900.00 | 7,099.29 | 1,432,000.00 |
| 64 | January 1, 2018 | 43,727.38 | 36,600.00 | 7,127.38 | 1,395,400.00 |
| 65 | February 1, 2018 | 43,745.22 | 36,800.00 | 6,945.22 | 1,358,600.00 |
| 66 | March 1, 2018 | 59,507.66 | 53,400.00 | 6,107.66 | 1,305,200.00 |
| 67 | April 1, 2018 | 43,796.27 | 37,300.00 | 6,496.27 | 1,267,900.00 |
| 68 | May 1, 2018 | 49,007.05 | 42,900.00 | 6,107.05 | 1,225,000.00 |
| 69 | June 1, 2018 | 43,797.10 | 37,700.00 | 6,097.10 | 1,187,300.00 |
| 70 | July 1, 2018 | 49,018.83 | 43,300.00 | 5,718.83 | 1,144,000.00 |
| 71 | August 1, 2018 | 43,793.94 | 38,100.00 | 5,693.94 | 1,105,900.00 |
| 72 | September 1, 2018 | 43,804.31 | 38,300.00 | 5,504.31 | 1,067,600.00 |

# LOAN B AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 73 | October 1, 2018 | 49,042.27 | 43,900.00 | 5,142.27 | 1,023,700.00 |
| 74 | November 1, 2018 | 43,795.18 | 38,700.00 | 5,095.18 | 985,000.00 |
| 75 | December 1, 2018 | 84,344.42 | 79,600.00 | 4,744.42 | 905,400.00 |
| 76 | January 1, 2019 | 6,106.38 | 1,600.00 | 4,506.38 | 903,800.00 |
| 77 | February 1, 2019 | 6,098.41 | 1,600.00 | 4,498.41 | 902,200.00 |
| 78 | March 1, 2019 | 5,655.89 | 1,600.00 | 4,055.89 | 900,600.00 |
| 79 | April 1, 2019 | 6,082.49 | 1,600.00 | 4,482.49 | 899,000.00 |
| 80 | May 1, 2019 | 5,930.18 | 1,600.00 | 4,330.18 | 897,400.00 |
| 81 | June 1, 2019 | 6,066.56 | 1,600.00 | 4,466.56 | 895,800.00 |
| 82 | July 1, 2019 | 5,914.77 | 1,600.00 | 4,314.77 | 894,200.00 |
| 83 | August 1, 2019 | 6,050.63 | 1,600.00 | 4,450.63 | 892,600.00 |
| 84 | September 1, 2019 | 6,042.67 | 1,600.00 | 4,442.67 | 891,000.00 |
| 85 | October 1, 2019 | 5,891.65 | 1,600.00 | 4,291.65 | 889,400.00 |
| 86 | November 1, 2019 | 6,026.74 | 1,600.00 | 4,426.74 | 887,800.00 |
| 87 | December 1, 2019 | 5,976.24 | 1,700.00 | 4,276.24 | 886,100.00 |
| 88 | January 1, 2020 | 6,110.32 | 1,700.00 | 4,410.32 | 884,400.00 |
| 89 | February 1, 2020 | 6,101.86 | 1,700.00 | 4,401.86 | 882,700.00 |
| 90 | March 1, 2020 | 5,809.95 | 1,700.00 | 4,109.95 | 881,000.00 |
| 91 | April 1, 2020 | 6,084.93 | 1,700.00 | 4,384.93 | 879,300.00 |
| 92 | May 1, 2020 | 5,935.30 | 1,700.00 | 4,235.30 | 877,600.00 |
| 93 | June 1, 2020 | 6,068.01 | 1,700.00 | 4,368.01 | 875,900.00 |
| 94 | July 1, 2020 | 5,918.92 | 1,700.00 | 4,218.92 | 874,200.00 |
| 95 | August 1, 2020 | 6,051.09 | 1,700.00 | 4,351.09 | 872,500.00 |
| 96 | September 1, 2020 | 6,042.63 | 1,700.00 | 4,342.63 | 870,800.00 |
| 97 | October 1, 2020 | 5,894.35 | 1,700.00 | 4,194.35 | 869,100.00 |
| 98 | November 1, 2020 | 6,025.70 | 1,700.00 | 4,325.70 | 867,400.00 |
| 99 | December 1, 2020 | 5,877.98 | 1,700.00 | 4,177.98 | 865,700.00 |
| 100 | January 1, 2021 | 6,108.78 | 1,800.00 | 4,308.78 | 863,900.00 |
| 101 | February 1, 2021 | 6,099.82 | 1,800.00 | 4,299.82 | 862,100.00 |
| 102 | March 1, 2021 | 5,675.62 | 1,800.00 | 3,875.62 | 860,300.00 |
| 103 | April 1, 2021 | 6,081.90 | 1,800.00 | 4,281.90 | 858,500.00 |
| 104 | May 1, 2021 | 5,935.11 | 1,800.00 | 4,135.11 | 856,700.00 |
| 105 | June 1, 2021 | 6,063.99 | 1,800.00 | 4,263.99 | 854,900.00 |
| 106 | July 1, 2021 | 5,917.77 | 1,800.00 | 4,117.77 | 853,100.00 |
| 107 | August 1, 2021 | 6,046.07 | 1,800.00 | 4,246.07 | 851,300.00 |
| 108 | September 1, 2021 | 6,037.11 | 1,800.00 | 4,237.11 | 849,500.00 |
| 109 | October 1, 2021 | 5,891.76 | 1,800.00 | 4,091.76 | 847,700.00 |
| 110 | November 1, 2021 | 6,019.19 | 1,800.00 | 4,219.19 | 845,900.00 |
| 111 | December 1, 2021 | 5,974.42 | 1,900.00 | 4,074.42 | 844,000.00 |
| 112 | January 1, 2022 | 6,100.78 | 1,900.00 | 4,200.78 | 842,100.00 |
| 113 | February 1, 2022 | 6,091.32 | 1,900.00 | 4,191.32 | 840,200.00 |
| 114 | March 1, 2022 | 5,677.17 | 1,900.00 | 3,777.17 | 838,300.00 |
| 115 | April 1, 2022 | 6,072.41 | 1,900.00 | 4,172.41 | 836,400.00 |
| 116 | May 1, 2022 | 5,928.66 | 1,900.00 | 4,028.66 | 834,500.00 |
| 117 | June 1, 2022 | 6,053.49 | 1,900.00 | 4,153.49 | 832,600.00 |
| 118 | July 1, 2022 | 5,910.36 | 1,900.00 | 4,010.36 | 830,700.00 |
| 119 | August 1, 2022 | 6,034.58 | 1,900.00 | 4,134.58 | 828,800.00 |
| 120 | September 1, 2022 | 6,025.12 | 1,900.00 | 4,125.12 | 826,900.00 |
| 121 | October 1, 2022 | 5,882.90 | 1,900.00 | 3,982.90 | 825,000.00 |
| 122 | November 1, 2022 | 6,106.21 | 2,000.00 | 4,106.21 | 823,000.00 |
| 123 | December 1, 2022 | 5,964.12 | 2,000.00 | 3,964.12 | 821,000.00 |
| 124 | January 1, 2023 | 6,086.30 | 2,000.00 | 4,086.30 | 819,000.00 |
| 125 | February 1, 2023 | 6,076.35 | 2,000.00 | 4,076.35 | 817,000.00 |
| 126 | March 1, 2023 | 5,672.87 | 2,000.00 | 3,672.87 | 815,000.00 |
| 127 | April 1, 2023 | 6,056.44 | 2,000.00 | 4,056.44 | 813,000.00 |
| 128 | May 1, 2023 | 5,915.95 | 2,000.00 | 3,915.95 | 811,000.00 |
| 129 | June 1, 2023 | 6,036.53 | 2,000.00 | 4,036.53 | 809,000.00 |
| 130 | July 1, 2023 | 5,896.68 | 2,000.00 | 3,896.68 | 807,000.00 |
| 131 | August 1, 2023 | 6,016.62 | 2,000.00 | 4,016.62 | 805,000.00 |
| 132 | September 1, 2023 | 6,006.66 | 2,000.00 | 4,006.66 | 803,000.00 |
| 133 | October 1, 2023 | 5,967.78 | 2,100.00 | 3,867.78 | 800,900.00 |
| 134 | November 1, 2023 | 6,086.26 | 2,100.00 | 3,986.26 | 798,800.00 |
| 135 | December 1, 2023 | 5,947.55 | 2,100.00 | 3,847.55 | 796,700.00 |
| 136 | January 1, 2024 | 6,065.35 | 2,100.00 | 3,965.35 | 794,600.00 |
| 137 | February 1, 2024 | 6,054.90 | 2,100.00 | 3,954.90 | 792,500.00 |
| 138 | March 1, 2024 | 5,789.97 | 2,100.00 | 3,689.97 | 790,400.00 |
| 139 | April 1, 2024 | 6,034.00 | 2,100.00 | 3,934.00 | 788,300.00 |
| 140 | May 1, 2024 | 5,896.98 | 2,100.00 | 3,796.98 | 786,200.00 |
| 141 | June 1, 2024 | 6,013.09 | 2,100.00 | 3,913.09 | 784,100.00 |
| 142 | July 1, 2024 | 5,976.75 | 2,200.00 | 3,776.75 | 781,900.00 |
| 143 | August 1, 2024 | 6,091.69 | 2,200.00 | 3,891.69 | 779,700.00 |
| 144 | September 1, 2024 | 6,080.74 | 2,200.00 | 3,880.74 | 777,500.00 |
| 145 | October 1, 2024 | 5,944.96 | 2,200.00 | 3,744.96 | 775,300.00 |

Date prepared 8/31/2012

Page 7 of 20

# LOAN B AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 146 | November 1, 2024 | 6,058.84 | 2,200.00 | 3,858.84 | 773,100.00 |
| 147 | December 1, 2024 | 5,923.77 | 2,200.00 | 3,723.77 | 770,900.00 |
| 148 | January 1, 2025 | 6,036.94 | 2,200.00 | 3,836.94 | 768,700.00 |
| 149 | February 1, 2025 | 6,025.99 | 2,200.00 | 3,825.99 | 766,500.00 |
| 150 | March 1, 2025 | 5,645.84 | 2,200.00 | 3,445.84 | 764,300.00 |
| 151 | April 1, 2025 | 6,004.09 | 2,200.00 | 3,804.09 | 762,100.00 |
| 152 | May 1, 2025 | 5,970.78 | 2,300.00 | 3,670.78 | 759,800.00 |
| 153 | June 1, 2025 | 6,081.69 | 2,300.00 | 3,781.69 | 757,500.00 |
| 154 | July 1, 2025 | 5,948.63 | 2,300.00 | 3,648.63 | 755,200.00 |
| 155 | August 1, 2025 | 6,058.80 | 2,300.00 | 3,758.80 | 752,900.00 |
| 156 | September 1, 2025 | 6,047.35 | 2,300.00 | 3,747.35 | 750,600.00 |
| 157 | October 1, 2025 | 5,915.39 | 2,300.00 | 3,615.39 | 748,300.00 |
| 158 | November 1, 2025 | 6,024.46 | 2,300.00 | 3,724.46 | 746,000.00 |
| 159 | December 1, 2025 | 5,893.23 | 2,300.00 | 3,593.23 | 743,700.00 |
| 160 | January 1, 2026 | 6,001.56 | 2,300.00 | 3,701.56 | 741,400.00 |
| 161 | February 1, 2026 | 6,090.11 | 2,400.00 | 3,690.11 | 739,000.00 |
| 162 | March 1, 2026 | 5,722.22 | 2,400.00 | 3,322.22 | 736,600.00 |
| 163 | April 1, 2026 | 6,066.22 | 2,400.00 | 3,666.22 | 734,200.00 |
| 164 | May 1, 2026 | 5,936.40 | 2,400.00 | 3,536.40 | 731,800.00 |
| 165 | June 1, 2026 | 6,042.33 | 2,400.00 | 3,642.33 | 729,400.00 |
| 166 | July 1, 2026 | 5,913.28 | 2,400.00 | 3,513.28 | 727,000.00 |
| 167 | August 1, 2026 | 6,018.44 | 2,400.00 | 3,618.44 | 724,600.00 |
| 168 | September 1, 2026 | 6,006.50 | 2,400.00 | 3,606.50 | 722,200.00 |
| 169 | October 1, 2026 | 5,878.60 | 2,400.00 | 3,478.60 | 719,800.00 |
| 170 | November 1, 2026 | 6,082.60 | 2,500.00 | 3,582.60 | 717,300.00 |
| 171 | December 1, 2026 | 5,955.00 | 2,500.00 | 3,455.00 | 714,800.00 |
| 172 | January 1, 2027 | 6,057.72 | 2,500.00 | 3,557.72 | 712,300.00 |
| 173 | February 1, 2027 | 6,045.28 | 2,500.00 | 3,545.28 | 709,800.00 |
| 174 | March 1, 2027 | 5,690.95 | 2,500.00 | 3,190.95 | 707,300.00 |
| 175 | April 1, 2027 | 6,020.39 | 2,500.00 | 3,520.39 | 704,800.00 |
| 176 | May 1, 2027 | 5,894.79 | 2,500.00 | 3,394.79 | 702,300.00 |
| 177 | June 1, 2027 | 5,995.50 | 2,500.00 | 3,495.50 | 699,800.00 |
| 178 | July 1, 2027 | 5,970.70 | 2,600.00 | 3,370.70 | 697,200.00 |
| 179 | August 1, 2027 | 6,070.12 | 2,600.00 | 3,470.12 | 694,600.00 |
| 180 | September 1, 2027 | 6,057.18 | 2,600.00 | 3,457.18 | 692,000.00 |
| 181 | October 1, 2027 | 5,933.13 | 2,600.00 | 3,333.13 | 689,400.00 |
| 182 | November 1, 2027 | 6,031.30 | 2,600.00 | 3,431.30 | 686,800.00 |
| 183 | December 1, 2027 | 5,908.09 | 2,600.00 | 3,308.09 | 684,200.00 |
| 184 | January 1, 2028 | 6,005.42 | 2,600.00 | 3,405.42 | 681,600.00 |
| 185 | February 1, 2028 | 5,992.47 | 2,600.00 | 3,392.47 | 679,000.00 |
| 186 | March 1, 2028 | 5,861.50 | 2,700.00 | 3,161.50 | 676,300.00 |
| 187 | April 1, 2028 | 6,066.10 | 2,700.00 | 3,366.10 | 673,600.00 |
| 188 | May 1, 2028 | 5,944.51 | 2,700.00 | 3,244.51 | 670,900.00 |
| 189 | June 1, 2028 | 6,039.22 | 2,700.00 | 3,339.22 | 668,200.00 |
| 190 | July 1, 2028 | 5,918.50 | 2,700.00 | 3,218.50 | 665,500.00 |
| 191 | August 1, 2028 | 6,012.34 | 2,700.00 | 3,312.34 | 662,800.00 |
| 192 | September 1, 2028 | 5,998.90 | 2,700.00 | 3,298.90 | 660,100.00 |
| 193 | October 1, 2028 | 5,879.48 | 2,700.00 | 3,179.48 | 657,400.00 |
| 194 | November 1, 2028 | 6,072.03 | 2,800.00 | 3,272.03 | 654,600.00 |
| 195 | December 1, 2028 | 5,952.99 | 2,800.00 | 3,152.99 | 651,800.00 |
| 196 | January 1, 2029 | 6,044.15 | 2,800.00 | 3,244.15 | 649,000.00 |
| 197 | February 1, 2029 | 6,030.22 | 2,800.00 | 3,230.22 | 646,200.00 |
| 198 | March 1, 2029 | 5,705.03 | 2,800.00 | 2,905.03 | 643,400.00 |
| 199 | April 1, 2029 | 6,002.34 | 2,800.00 | 3,202.34 | 640,600.00 |
| 200 | May 1, 2029 | 5,885.56 | 2,800.00 | 3,085.56 | 637,800.00 |
| 201 | June 1, 2029 | 6,074.47 | 2,900.00 | 3,174.47 | 634,900.00 |
| 202 | July 1, 2029 | 5,958.10 | 2,900.00 | 3,058.10 | 632,000.00 |
| 203 | August 1, 2029 | 6,045.60 | 2,900.00 | 3,145.60 | 629,100.00 |
| 204 | September 1, 2029 | 6,031.17 | 2,900.00 | 3,131.17 | 626,200.00 |
| 205 | October 1, 2029 | 5,916.20 | 2,900.00 | 3,016.20 | 623,300.00 |
| 206 | November 1, 2029 | 6,002.30 | 2,900.00 | 3,102.30 | 620,400.00 |
| 207 | December 1, 2029 | 5,888.26 | 2,900.00 | 2,988.26 | 617,500.00 |
| 208 | January 1, 2030 | 6,073.43 | 3,000.00 | 3,073.43 | 614,500.00 |
| 209 | February 1, 2030 | 6,058.50 | 3,000.00 | 3,058.50 | 611,500.00 |
| 210 | March 1, 2030 | 5,749.03 | 3,000.00 | 2,749.03 | 608,500.00 |
| 211 | April 1, 2030 | 6,028.64 | 3,000.00 | 3,028.64 | 605,500.00 |
| 212 | May 1, 2030 | 5,916.49 | 3,000.00 | 2,916.49 | 602,500.00 |
| 213 | June 1, 2030 | 5,998.78 | 3,000.00 | 2,998.78 | 599,500.00 |
| 214 | July 1, 2030 | 5,887.59 | 3,000.00 | 2,887.59 | 596,500.00 |
| 215 | August 1, 2030 | 6,068.91 | 3,100.00 | 2,968.91 | 593,400.00 |
| 216 | September 1, 2030 | 6,053.48 | 3,100.00 | 2,953.48 | 590,300.00 |
| 217 | October 1, 2030 | 5,943.28 | 3,100.00 | 2,843.28 | 587,200.00 |
| 218 | November 1, 2030 | 6,022.62 | 3,100.00 | 2,922.62 | 584,100.00 |

# LOAN B AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 219 | December 1, 2030 | 5,913.42 | 3,100.00 | 2,813.42 | 581,000.00 |
| 220 | January 1, 2031 | 5,991.77 | 3,100.00 | 2,891.77 | 577,900.00 |
| 221 | February 1, 2031 | 5,976.34 | 3,100.00 | 2,876.34 | 574,800.00 |
| 222 | March 1, 2031 | 5,784.05 | 3,200.00 | 2,584.05 | 571,600.00 |
| 223 | April 1, 2031 | 6,044.98 | 3,200.00 | 2,844.98 | 568,400.00 |
| 224 | May 1, 2031 | 5,937.79 | 3,200.00 | 2,737.79 | 565,200.00 |
| 225 | June 1, 2031 | 6,013.13 | 3,200.00 | 2,813.13 | 562,000.00 |
| 226 | July 1, 2031 | 5,906.97 | 3,200.00 | 2,706.97 | 558,800.00 |
| 227 | August 1, 2031 | 5,981.27 | 3,200.00 | 2,781.27 | 555,600.00 |
| 228 | September 1, 2031 | 6,065.34 | 3,300.00 | 2,765.34 | 552,300.00 |
| 229 | October 1, 2031 | 5,960.25 | 3,300.00 | 2,660.25 | 549,000.00 |
| 230 | November 1, 2031 | 6,032.50 | 3,300.00 | 2,732.50 | 545,700.00 |
| 231 | December 1, 2031 | 5,928.46 | 3,300.00 | 2,628.46 | 542,400.00 |
| 232 | January 1, 2032 | 5,999.65 | 3,300.00 | 2,699.65 | 539,100.00 |
| 233 | February 1, 2032 | 5,983.22 | 3,300.00 | 2,683.22 | 535,800.00 |
| 234 | March 1, 2032 | 5,794.74 | 3,300.00 | 2,494.74 | 532,500.00 |
| 235 | April 1, 2032 | 6,050.37 | 3,400.00 | 2,650.37 | 529,100.00 |
| 236 | May 1, 2032 | 5,948.50 | 3,400.00 | 2,548.50 | 525,700.00 |
| 237 | June 1, 2032 | 6,016.53 | 3,400.00 | 2,616.53 | 522,300.00 |
| 238 | July 1, 2032 | 5,915.75 | 3,400.00 | 2,515.75 | 518,900.00 |
| 239 | August 1, 2032 | 5,982.68 | 3,400.00 | 2,582.68 | 515,500.00 |
| 240 | September 1, 2032 | 5,965.76 | 3,400.00 | 2,565.76 | 512,100.00 |
| 241 | October 1, 2032 | 5,966.62 | 3,500.00 | 2,466.62 | 508,600.00 |
| 242 | November 1, 2032 | 6,031.42 | 3,500.00 | 2,531.42 | 505,100.00 |
| 243 | December 1, 2032 | 5,932.90 | 3,500.00 | 2,432.90 | 501,600.00 |
| 244 | January 1, 2033 | 5,996.57 | 3,500.00 | 2,496.57 | 498,100.00 |
| 245 | February 1, 2033 | 5,979.15 | 3,500.00 | 2,479.15 | 494,600.00 |
| 246 | March 1, 2033 | 5,723.50 | 3,500.00 | 2,223.50 | 491,100.00 |
| 247 | April 1, 2033 | 6,044.31 | 3,600.00 | 2,444.31 | 487,500.00 |
| 248 | May 1, 2033 | 5,948.13 | 3,600.00 | 2,348.13 | 483,900.00 |
| 249 | June 1, 2033 | 6,008.48 | 3,600.00 | 2,408.48 | 480,300.00 |
| 250 | July 1, 2033 | 5,913.45 | 3,600.00 | 2,313.45 | 476,700.00 |
| 251 | August 1, 2033 | 5,972.64 | 3,600.00 | 2,372.64 | 473,100.00 |
| 252 | September 1, 2033 | 5,954.72 | 3,600.00 | 2,354.72 | 469,500.00 |
| 253 | October 1, 2033 | 5,961.43 | 3,700.00 | 2,261.43 | 465,800.00 |
| 254 | November 1, 2033 | 6,018.39 | 3,700.00 | 2,318.39 | 462,100.00 |
| 255 | December 1, 2033 | 5,925.78 | 3,700.00 | 2,225.78 | 458,400.00 |
| 256 | January 1, 2034 | 5,981.56 | 3,700.00 | 2,281.56 | 454,700.00 |
| 257 | February 1, 2034 | 5,963.14 | 3,700.00 | 2,263.14 | 451,000.00 |
| 258 | March 1, 2034 | 5,827.50 | 3,800.00 | 2,027.50 | 447,200.00 |
| 259 | April 1, 2034 | 6,025.81 | 3,800.00 | 2,225.81 | 443,400.00 |
| 260 | May 1, 2034 | 5,935.71 | 3,800.00 | 2,135.71 | 439,600.00 |
| 261 | June 1, 2034 | 5,987.99 | 3,800.00 | 2,187.99 | 435,800.00 |
| 262 | July 1, 2034 | 5,899.10 | 3,800.00 | 2,099.10 | 432,000.00 |
| 263 | August 1, 2034 | 5,950.16 | 3,800.00 | 2,150.16 | 428,200.00 |
| 264 | September 1, 2034 | 6,031.25 | 3,900.00 | 2,131.25 | 424,300.00 |
| 265 | October 1, 2034 | 5,943.71 | 3,900.00 | 2,043.71 | 420,400.00 |
| 266 | November 1, 2034 | 5,992.42 | 3,900.00 | 2,092.42 | 416,500.00 |
| 267 | December 1, 2034 | 5,906.14 | 3,900.00 | 2,006.14 | 412,600.00 |
| 268 | January 1, 2035 | 5,953.60 | 3,900.00 | 2,053.60 | 408,700.00 |
| 269 | February 1, 2035 | 6,034.19 | 4,000.00 | 2,034.19 | 404,700.00 |
| 270 | March 1, 2035 | 5,819.35 | 4,000.00 | 1,819.35 | 400,700.00 |
| 271 | April 1, 2035 | 5,994.37 | 4,000.00 | 1,994.37 | 396,700.00 |
| 272 | May 1, 2035 | 5,910.77 | 4,000.00 | 1,910.77 | 392,700.00 |
| 273 | June 1, 2035 | 5,954.56 | 4,000.00 | 1,954.56 | 388,700.00 |
| 274 | July 1, 2035 | 5,972.24 | 4,100.00 | 1,872.24 | 384,600.00 |
| 275 | August 1, 2035 | 6,014.24 | 4,100.00 | 1,914.24 | 380,500.00 |
| 276 | September 1, 2035 | 5,993.83 | 4,100.00 | 1,893.83 | 376,400.00 |
| 277 | October 1, 2035 | 5,912.99 | 4,100.00 | 1,812.99 | 372,300.00 |
| 278 | November 1, 2035 | 5,953.02 | 4,100.00 | 1,853.02 | 368,200.00 |
| 279 | December 1, 2035 | 5,973.50 | 4,200.00 | 1,773.50 | 364,000.00 |
| 280 | January 1, 2036 | 6,011.71 | 4,200.00 | 1,811.71 | 359,800.00 |
| 281 | February 1, 2036 | 5,990.80 | 4,200.00 | 1,790.80 | 355,600.00 |
| 282 | March 1, 2036 | 5,855.71 | 4,200.00 | 1,655.71 | 351,400.00 |
| 283 | April 1, 2036 | 5,949.00 | 4,200.00 | 1,749.00 | 347,200.00 |
| 284 | May 1, 2036 | 5,972.35 | 4,300.00 | 1,672.35 | 342,900.00 |
| 285 | June 1, 2036 | 6,006.69 | 4,300.00 | 1,706.69 | 338,600.00 |
| 286 | July 1, 2036 | 5,930.92 | 4,300.00 | 1,630.92 | 334,300.00 |
| 287 | August 1, 2036 | 5,963.89 | 4,300.00 | 1,663.89 | 330,000.00 |
| 288 | September 1, 2036 | 5,942.48 | 4,300.00 | 1,642.48 | 325,700.00 |
| 289 | October 1, 2036 | 5,968.79 | 4,400.00 | 1,568.79 | 321,300.00 |
| 290 | November 1, 2036 | 5,999.18 | 4,400.00 | 1,599.18 | 316,900.00 |
| 291 | December 1, 2036 | 5,926.40 | 4,400.00 | 1,526.40 | 312,500.00 |

# LOAN B AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 292 | January 1, 2037 | 5,955.38 | 4,400.00 | 1,555.38 | 308,100.00 |
| 293 | February 1, 2037 | 5,933.48 | 4,400.00 | 1,533.48 | 303,700.00 |
| 294 | March 1, 2037 | 5,865.30 | 4,500.00 | 1,365.30 | 299,200.00 |
| 295 | April 1, 2037 | 5,989.18 | 4,500.00 | 1,489.18 | 294,700.00 |
| 296 | May 1, 2037 | 5,919.47 | 4,500.00 | 1,419.47 | 290,200.00 |
| 297 | June 1, 2037 | 5,944.39 | 4,500.00 | 1,444.39 | 285,700.00 |
| 298 | July 1, 2037 | 5,976.12 | 4,600.00 | 1,376.12 | 281,100.00 |
| 299 | August 1, 2037 | 5,999.10 | 4,600.00 | 1,399.10 | 276,500.00 |
| 300 | September 1, 2037 | 5,976.20 | 4,600.00 | 1,376.20 | 271,900.00 |
| 301 | October 1, 2037 | 5,909.65 | 4,600.00 | 1,309.65 | 267,300.00 |
| 302 | November 1, 2037 | 5,930.41 | 4,600.00 | 1,330.41 | 262,700.00 |
| 303 | December 1, 2037 | 5,965.34 | 4,700.00 | 1,265.34 | 258,000.00 |
| 304 | January 1, 2038 | 5,984.12 | 4,700.00 | 1,284.12 | 253,300.00 |
| 305 | February 1, 2038 | 5,960.73 | 4,700.00 | 1,260.73 | 248,600.00 |
| 306 | March 1, 2038 | 5,817.60 | 4,700.00 | 1,117.60 | 243,900.00 |
| 307 | April 1, 2038 | 6,013.94 | 4,800.00 | 1,213.94 | 239,100.00 |
| 308 | May 1, 2038 | 5,951.67 | 4,800.00 | 1,151.67 | 234,300.00 |
| 309 | June 1, 2038 | 5,966.16 | 4,800.00 | 1,166.16 | 229,500.00 |
| 310 | July 1, 2038 | 5,905.43 | 4,800.00 | 1,105.43 | 224,700.00 |
| 311 | August 1, 2038 | 5,918.38 | 4,800.00 | 1,118.38 | 219,900.00 |
| 312 | September 1, 2038 | 5,994.49 | 4,900.00 | 1,094.49 | 215,000.00 |
| 313 | October 1, 2038 | 5,935.58 | 4,900.00 | 1,035.58 | 210,100.00 |
| 314 | November 1, 2038 | 5,945.71 | 4,900.00 | 1,045.71 | 205,200.00 |
| 315 | December 1, 2038 | 5,888.38 | 4,900.00 | 988.38 | 200,300.00 |
| 316 | January 1, 2039 | 5,996.94 | 5,000.00 | 996.94 | 195,300.00 |
| 317 | February 1, 2039 | 5,972.05 | 5,000.00 | 972.05 | 190,300.00 |
| 318 | March 1, 2039 | 5,855.50 | 5,000.00 | 855.50 | 185,300.00 |
| 319 | April 1, 2039 | 5,922.28 | 5,000.00 | 922.28 | 180,300.00 |
| 320 | May 1, 2039 | 5,968.45 | 5,100.00 | 868.45 | 175,200.00 |
| 321 | June 1, 2039 | 5,972.01 | 5,100.00 | 872.01 | 170,100.00 |
| 322 | July 1, 2039 | 5,919.32 | 5,100.00 | 819.32 | 165,000.00 |
| 323 | August 1, 2039 | 5,921.24 | 5,100.00 | 821.24 | 159,900.00 |
| 324 | September 1, 2039 | 5,995.86 | 5,200.00 | 795.86 | 154,700.00 |
| 325 | October 1, 2039 | 5,945.14 | 5,200.00 | 745.14 | 149,500.00 |
| 326 | November 1, 2039 | 5,944.09 | 5,200.00 | 744.09 | 144,300.00 |
| 327 | December 1, 2039 | 5,895.05 | 5,200.00 | 695.05 | 139,100.00 |
| 328 | January 1, 2040 | 5,992.33 | 5,300.00 | 692.33 | 133,800.00 |
| 329 | February 1, 2040 | 5,965.95 | 5,300.00 | 665.95 | 128,500.00 |
| 330 | March 1, 2040 | 5,898.31 | 5,300.00 | 598.31 | 123,200.00 |
| 331 | April 1, 2040 | 5,913.19 | 5,300.00 | 613.19 | 117,900.00 |
| 332 | May 1, 2040 | 5,967.89 | 5,400.00 | 567.89 | 112,500.00 |
| 333 | June 1, 2040 | 5,959.94 | 5,400.00 | 559.94 | 107,100.00 |
| 334 | July 1, 2040 | 5,915.87 | 5,400.00 | 515.87 | 101,700.00 |
| 335 | August 1, 2040 | 5,906.18 | 5,400.00 | 506.18 | 96,300.00 |
| 336 | September 1, 2040 | 5,979.31 | 5,500.00 | 479.31 | 90,800.00 |
| 337 | October 1, 2040 | 5,937.35 | 5,500.00 | 437.35 | 85,300.00 |
| 338 | November 1, 2040 | 5,924.56 | 5,500.00 | 424.56 | 79,800.00 |
| 339 | December 1, 2040 | 5,884.37 | 5,500.00 | 384.37 | 74,300.00 |
| 340 | January 1, 2041 | 5,969.81 | 5,600.00 | 369.81 | 68,700.00 |
| 341 | February 1, 2041 | 5,941.94 | 5,600.00 | 341.94 | 63,100.00 |
| 342 | March 1, 2041 | 5,883.67 | 5,600.00 | 283.67 | 57,500.00 |
| 343 | April 1, 2041 | 5,886.19 | 5,600.00 | 286.19 | 51,900.00 |
| 344 | May 1, 2041 | 5,949.99 | 5,700.00 | 249.99 | 46,200.00 |
| 345 | June 1, 2041 | 5,929.95 | 5,700.00 | 229.95 | 40,500.00 |
| 346 | July 1, 2041 | 5,895.08 | 5,700.00 | 195.08 | 34,800.00 |
| 347 | August 1, 2041 | 5,973.21 | 5,800.00 | 173.21 | 29,000.00 |
| 348 | September 1, 2041 | 5,944.34 | 5,800.00 | 144.34 | 23,200.00 |
| 349 | October 1, 2041 | 5,911.75 | 5,800.00 | 111.75 | 17,400.00 |
| 350 | November 1, 2041 | 5,886.60 | 5,800.00 | 86.60 | 11,600.00 |
| 351 | December 1, 2041 | 5,855.87 | 5,800.00 | 55.87 | 5,800.00 |
| 352 | January 1, 2042 | 5,828.87 | 5,800.00 | 28.87 | 0.00 |
| | TOTALS: | 3,714,646.21 | 2,262,400.00 | 1,452,246.21 | |

# LOAN C AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 1 | October 1, 2012 | 38,879.17 | 0.00 | 38,879.17 | 7,500,000.00 |
| 2 | November 1, 2012 | 38,879.17 | 0.00 | 38,879.17 | 7,500,000.00 |
| 3 | December 1, 2012 | 37,625.00 | 0.00 | 37,625.00 | 7,500,000.00 |
| 4 | January 1, 2013 | 38,879.17 | 0.00 | 38,879.17 | 7,500,000.00 |
| 5 | February 1, 2013 | 38,879.17 | 0.00 | 38,879.17 | 7,500,000.00 |
| 6 | March 1, 2013 | 35,116.67 | 0.00 | 35,116.67 | 7,500,000.00 |
| 7 | April 1, 2013 | 38,879.17 | 0.00 | 38,879.17 | 7,500,000.00 |
| 8 | May 1, 2013 | 37,625.00 | 0.00 | 37,625.00 | 7,500,000.00 |
| 9 | June 1, 2013 | 39,808.33 | 0.00 | 39,808.33 | 7,500,000.00 |
| 10 | July 1, 2013 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 11 | August 1, 2013 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 12 | September 1, 2013 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 13 | October 1, 2013 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 14 | November 1, 2013 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 15 | December 1, 2013 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 16 | January 1, 2014 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 17 | February 1, 2014 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 18 | March 1, 2014 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 19 | April 1, 2014 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 20 | May 1, 2014 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 21 | June 1, 2014 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 22 | July 1, 2014 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 23 | August 1, 2014 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 24 | September 1, 2014 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 25 | October 1, 2014 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 26 | November 1, 2014 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 27 | December 1, 2014 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 28 | January 1, 2015 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 29 | February 1, 2015 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 30 | March 1, 2015 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 31 | April 1, 2015 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 32 | May 1, 2015 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 33 | June 1, 2015 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 34 | July 1, 2015 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 35 | August 1, 2015 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 36 | September 1, 2015 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 37 | October 1, 2015 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 38 | November 1, 2015 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 39 | December 1, 2015 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 40 | January 1, 2016 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 41 | February 1, 2016 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 42 | March 1, 2016 | 49,843.75 | 0.00 | 49,843.75 | 7,500,000.00 |
| 43 | April 1, 2016 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 44 | May 1, 2016 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 45 | June 1, 2016 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 46 | July 1, 2016 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 47 | August 1, 2016 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 48 | September 1, 2016 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 49 | October 1, 2016 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 50 | November 1, 2016 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 51 | December 1, 2016 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 52 | January 1, 2017 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 53 | February 1, 2017 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 54 | March 1, 2017 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 55 | April 1, 2017 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 56 | May 1, 2017 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 57 | June 1, 2017 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 58 | July 1, 2017 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 59 | August 1, 2017 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 60 | September 1, 2017 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 61 | October 1, 2017 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 62 | November 1, 2017 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 63 | December 1, 2017 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 64 | January 1, 2018 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 65 | February 1, 2018 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 66 | March 1, 2018 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 67 | April 1, 2018 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 68 | May 1, 2018 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 69 | June 1, 2018 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 70 | July 1, 2018 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 71 | August 1, 2018 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 72 | September 1, 2018 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |

Date prepared 8/31/2012

# LOAN C AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 73 | October 1, 2018 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 74 | November 1, 2018 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 75 | December 1, 2018 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 76 | January 1, 2019 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 77 | February 1, 2019 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 78 | March 1, 2019 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 79 | April 1, 2019 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 80 | May 1, 2019 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 81 | June 1, 2019 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 82 | July 1, 2019 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 83 | August 1, 2019 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 84 | September 1, 2019 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 85 | October 1, 2019 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 86 | November 1, 2019 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 87 | December 1, 2019 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 88 | January 1, 2020 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 89 | February 1, 2020 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 90 | March 1, 2020 | 49,843.75 | 0.00 | 49,843.75 | 7,500,000.00 |
| 91 | April 1, 2020 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 92 | May 1, 2020 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 93 | June 1, 2020 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 94 | July 1, 2020 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 95 | August 1, 2020 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 96 | September 1, 2020 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 97 | October 1, 2020 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 98 | November 1, 2020 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 99 | December 1, 2020 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 100 | January 1, 2021 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 101 | February 1, 2021 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 102 | March 1, 2021 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 103 | April 1, 2021 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 104 | May 1, 2021 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 105 | June 1, 2021 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 106 | July 1, 2021 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 107 | August 1, 2021 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 108 | September 1, 2021 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 109 | October 1, 2021 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 110 | November 1, 2021 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 111 | December 1, 2021 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 112 | January 1, 2022 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 113 | February 1, 2022 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 114 | March 1, 2022 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 115 | April 1, 2022 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 116 | May 1, 2022 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 117 | June 1, 2022 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 118 | July 1, 2022 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 119 | August 1, 2022 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 120 | September 1, 2022 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 121 | October 1, 2022 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 122 | November 1, 2022 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 123 | December 1, 2022 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 124 | January 1, 2023 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 125 | February 1, 2023 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 126 | March 1, 2023 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 127 | April 1, 2023 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 128 | May 1, 2023 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 129 | June 1, 2023 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 130 | July 1, 2023 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 131 | August 1, 2023 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 132 | September 1, 2023 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 133 | October 1, 2023 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 134 | November 1, 2023 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 135 | December 1, 2023 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 136 | January 1, 2024 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 137 | February 1, 2024 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 138 | March 1, 2024 | 49,843.75 | 0.00 | 49,843.75 | 7,500,000.00 |
| 139 | April 1, 2024 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 140 | May 1, 2024 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 141 | June 1, 2024 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 142 | July 1, 2024 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 143 | August 1, 2024 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 144 | September 1, 2024 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 145 | October 1, 2024 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |

Date prepared 8/31/2012

Page 12 of 20

# LOAN C AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 146 | November 1, 2024 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 147 | December 1, 2024 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 148 | January 1, 2025 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 149 | February 1, 2025 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 150 | March 1, 2025 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 151 | April 1, 2025 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 152 | May 1, 2025 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 153 | June 1, 2025 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 154 | July 1, 2025 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 155 | August 1, 2025 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 156 | September 1, 2025 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 157 | October 1, 2025 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 158 | November 1, 2025 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 159 | December 1, 2025 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 160 | January 1, 2026 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 161 | February 1, 2026 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 162 | March 1, 2026 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 163 | April 1, 2026 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 164 | May 1, 2026 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 165 | June 1, 2026 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 166 | July 1, 2026 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 167 | August 1, 2026 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 168 | September 1, 2026 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 169 | October 1, 2026 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 170 | November 1, 2026 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 171 | December 1, 2026 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 172 | January 1, 2027 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 173 | February 1, 2027 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 174 | March 1, 2027 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 175 | April 1, 2027 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 176 | May 1, 2027 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 177 | June 1, 2027 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 178 | July 1, 2027 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 179 | August 1, 2027 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 180 | September 1, 2027 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 181 | October 1, 2027 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 182 | November 1, 2027 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 183 | December 1, 2027 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 184 | January 1, 2028 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 185 | February 1, 2028 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 186 | March 1, 2028 | 49,843.75 | 0.00 | 49,843.75 | 7,500,000.00 |
| 187 | April 1, 2028 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 188 | May 1, 2028 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 189 | June 1, 2028 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 190 | July 1, 2028 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 191 | August 1, 2028 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 192 | September 1, 2028 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 193 | October 1, 2028 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 194 | November 1, 2028 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 195 | December 1, 2028 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 196 | January 1, 2029 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 197 | February 1, 2029 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 198 | March 1, 2029 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 199 | April 1, 2029 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 200 | May 1, 2029 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 201 | June 1, 2029 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 202 | July 1, 2029 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 203 | August 1, 2029 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 204 | September 1, 2029 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 205 | October 1, 2029 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 206 | November 1, 2029 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 207 | December 1, 2029 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 208 | January 1, 2030 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 209 | February 1, 2030 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 210 | March 1, 2030 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 211 | April 1, 2030 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 212 | May 1, 2030 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 213 | June 1, 2030 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 214 | July 1, 2030 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 215 | August 1, 2030 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 216 | September 1, 2030 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 217 | October 1, 2030 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 218 | November 1, 2030 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |

Date prepared 8/31/2012

# LOAN C AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 219 | December 1, 2030 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 220 | January 1, 2031 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 221 | February 1, 2031 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 222 | March 1, 2031 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 223 | April 1, 2031 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 224 | May 1, 2031 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 225 | June 1, 2031 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 226 | July 1, 2031 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 227 | August 1, 2031 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 228 | September 1, 2031 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 229 | October 1, 2031 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 230 | November 1, 2031 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 231 | December 1, 2031 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 232 | January 1, 2032 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 233 | February 1, 2032 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 234 | March 1, 2032 | 49,843.75 | 0.00 | 49,843.75 | 7,500,000.00 |
| 235 | April 1, 2032 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 236 | May 1, 2032 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 237 | June 1, 2032 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 238 | July 1, 2032 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 239 | August 1, 2032 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 240 | September 1, 2032 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 241 | October 1, 2032 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 242 | November 1, 2032 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 243 | December 1, 2032 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 244 | January 1, 2033 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 245 | February 1, 2033 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 246 | March 1, 2033 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 247 | April 1, 2033 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 248 | May 1, 2033 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 249 | June 1, 2033 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 250 | July 1, 2033 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 251 | August 1, 2033 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 252 | September 1, 2033 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 253 | October 1, 2033 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 254 | November 1, 2033 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 255 | December 1, 2033 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 256 | January 1, 2034 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 257 | February 1, 2034 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 258 | March 1, 2034 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 259 | April 1, 2034 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 260 | May 1, 2034 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 261 | June 1, 2034 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 262 | July 1, 2034 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 263 | August 1, 2034 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 264 | September 1, 2034 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 265 | October 1, 2034 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 266 | November 1, 2034 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 267 | December 1, 2034 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 268 | January 1, 2035 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 269 | February 1, 2035 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 270 | March 1, 2035 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 271 | April 1, 2035 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 272 | May 1, 2035 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 273 | June 1, 2035 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 274 | July 1, 2035 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 275 | August 1, 2035 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 276 | September 1, 2035 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 277 | October 1, 2035 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 278 | November 1, 2035 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 279 | December 1, 2035 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 280 | January 1, 2036 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 281 | February 1, 2036 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 282 | March 1, 2036 | 49,843.75 | 0.00 | 49,843.75 | 7,500,000.00 |
| 283 | April 1, 2036 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 284 | May 1, 2036 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 285 | June 1, 2036 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 286 | July 1, 2036 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 287 | August 1, 2036 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 288 | September 1, 2036 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 289 | October 1, 2036 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 290 | November 1, 2036 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 291 | December 1, 2036 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |

## LOAN C AMORTIZATION SCHEDULE

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 292 | January 1, 2037 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 293 | February 1, 2037 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 294 | March 1, 2037 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 295 | April 1, 2037 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 296 | May 1, 2037 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 297 | June 1, 2037 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 298 | July 1, 2037 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 299 | August 1, 2037 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 300 | September 1, 2037 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 301 | October 1, 2037 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 302 | November 1, 2037 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 303 | December 1, 2037 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 304 | January 1, 2038 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 305 | February 1, 2038 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 306 | March 1, 2038 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 307 | April 1, 2038 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 308 | May 1, 2038 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 309 | June 1, 2038 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 310 | July 1, 2038 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 311 | August 1, 2038 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 312 | September 1, 2038 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 313 | October 1, 2038 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 314 | November 1, 2038 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 315 | December 1, 2038 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 316 | January 1, 2039 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 317 | February 1, 2039 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 318 | March 1, 2039 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 319 | April 1, 2039 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 320 | May 1, 2039 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 321 | June 1, 2039 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 322 | July 1, 2039 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 323 | August 1, 2039 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 324 | September 1, 2039 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 325 | October 1, 2039 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 326 | November 1, 2039 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 327 | December 1, 2039 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 328 | January 1, 2040 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 329 | February 1, 2040 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 330 | March 1, 2040 | 49,843.75 | 0.00 | 49,843.75 | 7,500,000.00 |
| 331 | April 1, 2040 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 332 | May 1, 2040 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 333 | June 1, 2040 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 334 | July 1, 2040 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 335 | August 1, 2040 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 336 | September 1, 2040 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 337 | October 1, 2040 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 338 | November 1, 2040 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 339 | December 1, 2040 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 340 | January 1, 2041 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 341 | February 1, 2041 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 342 | March 1, 2041 | 48,125.00 | 0.00 | 48,125.00 | 7,500,000.00 |
| 343 | April 1, 2041 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 344 | May 1, 2041 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 345 | June 1, 2041 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 346 | July 1, 2041 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 347 | August 1, 2041 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 348 | September 1, 2041 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 349 | October 1, 2041 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 350 | November 1, 2041 | 53,281.25 | 0.00 | 53,281.25 | 7,500,000.00 |
| 351 | December 1, 2041 | 51,562.50 | 0.00 | 51,562.50 | 7,500,000.00 |
| 352 | January 1, 2042 | 7,553,281.25 | 7,500,000.00 | 53,281.25 | 0.00 |
| | TOTALS: | 25,790,039.60 | 7,500,000.00 | 18,290,039.60 | |

# LOAN AMORTIZATION SCHEDULE - A, B & C COMBINED

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 1 | October 1, 2012 | 177,518.06 | 0.00 | 177,518.06 | 42,500,000.00 |
| 2 | November 1, 2012 | 177,518.06 | 0.00 | 177,518.06 | 42,500,000.00 |
| 3 | December 1, 2012 | 171,791.66 | 0.00 | 171,791.66 | 42,500,000.00 |
| 4 | January 1, 2013 | 177,518.06 | 0.00 | 177,518.06 | 42,500,000.00 |
| 5 | February 1, 2013 | 177,518.06 | 0.00 | 177,518.06 | 42,500,000.00 |
| 6 | March 1, 2013 | 160,338.89 | 0.00 | 160,338.89 | 42,500,000.00 |
| 7 | April 1, 2013 | 210,783.10 | 0.00 | 210,783.10 | 42,500,000.00 |
| 8 | May 1, 2013 | 203,983.64 | 0.00 | 203,983.64 | 42,500,000.00 |
| 9 | June 1, 2013 | 211,860.57 | 0.00 | 211,860.57 | 42,500,000.00 |
| 10 | July 1, 2013 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 11 | August 1, 2013 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 12 | September 1, 2013 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 13 | October 1, 2013 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 14 | November 1, 2013 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 15 | December 1, 2013 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 16 | January 1, 2014 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 17 | February 1, 2014 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 18 | March 1, 2014 | 205,469.44 | 0.00 | 205,469.44 | 42,500,000.00 |
| 19 | April 1, 2014 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 20 | May 1, 2014 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 21 | June 1, 2014 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 22 | July 1, 2014 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 23 | August 1, 2014 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 24 | September 1, 2014 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 25 | October 1, 2014 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 26 | November 1, 2014 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 27 | December 1, 2014 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 28 | January 1, 2015 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 29 | February 1, 2015 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 30 | March 1, 2015 | 205,469.44 | 0.00 | 205,469.44 | 42,500,000.00 |
| 31 | April 1, 2015 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 32 | May 1, 2015 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 33 | June 1, 2015 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 34 | July 1, 2015 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 35 | August 1, 2015 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 36 | September 1, 2015 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 37 | October 1, 2015 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 38 | November 1, 2015 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 39 | December 1, 2015 | 220,145.84 | 0.00 | 220,145.84 | 42,500,000.00 |
| 40 | January 1, 2016 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 41 | February 1, 2016 | 227,484.03 | 0.00 | 227,484.03 | 42,500,000.00 |
| 42 | March 1, 2016 | 256,607.64 | 43,800.00 | 212,807.64 | 42,456,200.00 |
| 43 | April 1, 2016 | 259,966.03 | 32,700.00 | 227,266.03 | 42,423,500.00 |
| 44 | May 1, 2016 | 258,277.36 | 38,500.00 | 219,777.36 | 42,385,000.00 |
| 45 | June 1, 2016 | 260,011.65 | 33,100.00 | 226,911.65 | 42,351,900.00 |
| 46 | July 1, 2016 | 258,232.49 | 38,800.00 | 219,432.49 | 42,313,100.00 |
| 47 | August 1, 2016 | 259,953.78 | 33,400.00 | 226,553.78 | 42,279,700.00 |
| 48 | September 1, 2016 | 259,987.55 | 33,600.00 | 226,387.55 | 42,246,100.00 |
| 49 | October 1, 2016 | 258,322.89 | 39,400.00 | 218,922.89 | 42,206,700.00 |
| 50 | November 1, 2016 | 260,024.21 | 34,000.00 | 226,024.21 | 42,172,700.00 |
| 51 | December 1, 2016 | 258,269.34 | 39,700.00 | 218,569.34 | 42,133,000.00 |
| 52 | January 1, 2017 | 259,957.39 | 34,300.00 | 225,657.39 | 42,098,700.00 |
| 53 | February 1, 2017 | 259,986.67 | 34,500.00 | 225,486.67 | 42,064,200.00 |
| 54 | March 1, 2017 | 254,810.28 | 51,300.00 | 203,510.28 | 42,012,900.00 |
| 55 | April 1, 2017 | 259,959.62 | 34,900.00 | 225,059.62 | 41,978,000.00 |
| 56 | May 1, 2017 | 258,331.54 | 40,700.00 | 217,631.54 | 41,937,300.00 |
| 57 | June 1, 2017 | 259,983.34 | 35,300.00 | 224,683.34 | 41,902,000.00 |
| 58 | July 1, 2017 | 258,265.47 | 41,000.00 | 217,265.47 | 41,861,000.00 |
| 59 | August 1, 2017 | 260,003.58 | 35,700.00 | 224,303.58 | 41,825,300.00 |
| 60 | September 1, 2017 | 260,025.90 | 35,900.00 | 224,125.90 | 41,789,400.00 |
| 61 | October 1, 2017 | 258,323.11 | 41,600.00 | 216,723.11 | 41,747,800.00 |
| 62 | November 1, 2017 | 260,040.16 | 36,300.00 | 223,740.16 | 41,711,500.00 |
| 63 | December 1, 2017 | 258,247.90 | 41,900.00 | 216,347.90 | 41,669,600.00 |
| 64 | January 1, 2018 | 259,950.94 | 36,600.00 | 223,350.94 | 41,633,000.00 |
| 65 | February 1, 2018 | 259,968.78 | 36,800.00 | 223,168.78 | 41,596,200.00 |
| 66 | March 1, 2018 | 254,806.36 | 53,400.00 | 201,406.36 | 41,542,800.00 |
| 67 | April 1, 2018 | 260,019.83 | 37,300.00 | 222,719.83 | 41,505,500.00 |
| 68 | May 1, 2018 | 258,255.66 | 42,900.00 | 215,355.66 | 41,462,600.00 |
| 69 | June 1, 2018 | 260,020.66 | 37,700.00 | 222,320.66 | 41,424,900.00 |
| 70 | July 1, 2018 | 258,267.44 | 43,300.00 | 214,967.44 | 41,381,600.00 |
| 71 | August 1, 2018 | 260,017.50 | 38,100.00 | 221,917.50 | 41,343,500.00 |
| 72 | September 1, 2018 | 260,027.87 | 38,300.00 | 221,727.87 | 41,305,200.00 |

# LOAN AMORTIZATION SCHEDULE - A, B & C COMBINED

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 73 | October 1, 2018 | 258,290.88 | 43,900.00 | 214,390.88 | 41,261,300.00 |
| 74 | November 1, 2018 | 260,018.74 | 38,700.00 | 221,318.74 | 41,222,600.00 |
| 75 | December 1, 2018 | 293,593.03 | 79,600.00 | 213,993.03 | 41,143,000.00 |
| 76 | January 1, 2019 | 279,029.94 | 58,300.00 | 220,729.94 | 41,084,700.00 |
| 77 | February 1, 2019 | 278,939.76 | 58,500.00 | 220,439.76 | 41,026,200.00 |
| 78 | March 1, 2019 | 257,643.89 | 58,800.00 | 198,843.89 | 40,967,400.00 |
| 79 | April 1, 2019 | 278,855.94 | 59,000.00 | 219,855.94 | 40,908,400.00 |
| 80 | May 1, 2019 | 271,779.62 | 59,300.00 | 212,479.62 | 40,849,100.00 |
| 81 | June 1, 2019 | 278,867.13 | 59,600.00 | 219,267.13 | 40,789,500.00 |
| 82 | July 1, 2019 | 271,806.93 | 59,900.00 | 211,906.93 | 40,729,600.00 |
| 83 | August 1, 2019 | 278,872.35 | 60,200.00 | 218,672.35 | 40,669,400.00 |
| 84 | September 1, 2019 | 278,772.73 | 60,400.00 | 218,372.73 | 40,609,000.00 |
| 85 | October 1, 2019 | 271,737.52 | 60,700.00 | 211,037.52 | 40,548,300.00 |
| 86 | November 1, 2019 | 278,769.98 | 61,000.00 | 217,769.98 | 40,487,300.00 |
| 87 | December 1, 2019 | 271,851.33 | 61,400.00 | 210,451.33 | 40,425,900.00 |
| 88 | January 1, 2020 | 278,960.77 | 61,800.00 | 217,160.77 | 40,364,100.00 |
| 89 | February 1, 2020 | 278,853.18 | 62,000.00 | 216,853.18 | 40,302,100.00 |
| 90 | March 1, 2020 | 264,873.97 | 62,300.00 | 202,573.97 | 40,239,800.00 |
| 91 | April 1, 2020 | 278,834.51 | 62,600.00 | 216,234.51 | 40,177,200.00 |
| 92 | May 1, 2020 | 271,757.69 | 62,800.00 | 208,957.69 | 40,114,400.00 |
| 93 | June 1, 2020 | 278,710.37 | 63,100.00 | 215,610.37 | 40,051,300.00 |
| 94 | July 1, 2020 | 271,751.26 | 63,400.00 | 208,351.26 | 39,987,900.00 |
| 95 | August 1, 2020 | 278,680.75 | 63,700.00 | 214,980.75 | 39,924,200.00 |
| 96 | September 1, 2020 | 278,663.70 | 64,000.00 | 214,663.70 | 39,860,200.00 |
| 97 | October 1, 2020 | 271,730.79 | 64,300.00 | 207,430.79 | 39,795,900.00 |
| 98 | November 1, 2020 | 278,625.12 | 64,600.00 | 214,025.12 | 39,731,300.00 |
| 99 | December 1, 2020 | 271,709.93 | 64,900.00 | 206,809.93 | 39,666,400.00 |
| 100 | January 1, 2021 | 278,780.57 | 65,400.00 | 213,380.57 | 39,601,000.00 |
| 101 | February 1, 2021 | 278,655.06 | 65,600.00 | 213,055.06 | 39,535,400.00 |
| 102 | March 1, 2021 | 258,141.92 | 66,000.00 | 192,141.92 | 39,469,400.00 |
| 103 | April 1, 2021 | 278,700.05 | 66,300.00 | 212,400.05 | 39,403,100.00 |
| 104 | May 1, 2021 | 271,829.10 | 66,600.00 | 205,229.10 | 39,336,500.00 |
| 105 | June 1, 2021 | 278,638.59 | 66,900.00 | 211,738.59 | 39,269,600.00 |
| 106 | July 1, 2021 | 271,786.08 | 67,200.00 | 204,586.08 | 39,202,400.00 |
| 107 | August 1, 2021 | 278,571.14 | 67,500.00 | 211,071.14 | 39,134,900.00 |
| 108 | September 1, 2021 | 278,535.18 | 67,800.00 | 210,735.18 | 39,067,100.00 |
| 109 | October 1, 2021 | 271,810.70 | 68,200.00 | 203,610.70 | 38,998,900.00 |
| 110 | November 1, 2021 | 278,558.27 | 68,500.00 | 210,058.27 | 38,930,400.00 |
| 111 | December 1, 2021 | 271,852.26 | 68,900.00 | 202,952.26 | 38,861,500.00 |
| 112 | January 1, 2022 | 278,674.41 | 69,300.00 | 209,374.41 | 38,792,200.00 |
| 113 | February 1, 2022 | 278,529.48 | 69,500.00 | 209,029.48 | 38,722,700.00 |
| 114 | March 1, 2022 | 258,388.39 | 69,900.00 | 188,488.39 | 38,652,800.00 |
| 115 | April 1, 2022 | 278,535.66 | 70,200.00 | 208,335.66 | 38,582,600.00 |
| 116 | May 1, 2022 | 271,777.02 | 70,500.00 | 201,277.02 | 38,512,100.00 |
| 117 | June 1, 2022 | 278,535.36 | 70,900.00 | 207,635.36 | 38,441,200.00 |
| 118 | July 1, 2022 | 271,795.95 | 71,200.00 | 200,595.95 | 38,370,000.00 |
| 119 | August 1, 2022 | 278,428.10 | 71,500.00 | 206,928.10 | 38,298,500.00 |
| 120 | September 1, 2022 | 278,472.23 | 71,900.00 | 206,572.23 | 38,226,600.00 |
| 121 | October 1, 2022 | 271,762.29 | 72,200.00 | 199,562.29 | 38,154,400.00 |
| 122 | November 1, 2022 | 278,455.01 | 72,600.00 | 205,855.01 | 38,081,800.00 |
| 123 | December 1, 2022 | 271,864.84 | 73,000.00 | 198,864.84 | 38,008,800.00 |
| 124 | January 1, 2023 | 278,530.33 | 73,400.00 | 205,130.33 | 37,935,400.00 |
| 125 | February 1, 2023 | 278,465.00 | 73,700.00 | 204,765.00 | 37,861,700.00 |
| 126 | March 1, 2023 | 258,617.71 | 74,000.00 | 184,617.71 | 37,787,700.00 |
| 127 | April 1, 2023 | 278,329.87 | 74,300.00 | 204,029.87 | 37,713,400.00 |
| 128 | May 1, 2023 | 271,790.38 | 74,700.00 | 197,090.38 | 37,638,700.00 |
| 129 | June 1, 2023 | 278,288.26 | 75,000.00 | 203,288.26 | 37,563,700.00 |
| 130 | July 1, 2023 | 271,769.32 | 75,400.00 | 196,369.32 | 37,488,300.00 |
| 131 | August 1, 2023 | 278,339.68 | 75,800.00 | 202,539.68 | 37,412,500.00 |
| 132 | September 1, 2023 | 278,262.41 | 76,100.00 | 202,162.41 | 37,336,400.00 |
| 133 | October 1, 2023 | 271,874.49 | 76,600.00 | 195,274.49 | 37,259,800.00 |
| 134 | November 1, 2023 | 278,302.39 | 76,900.00 | 201,402.39 | 37,182,900.00 |
| 135 | December 1, 2023 | 271,835.13 | 77,300.00 | 194,535.13 | 37,105,600.00 |
| 136 | January 1, 2024 | 278,334.90 | 77,700.00 | 200,634.90 | 37,027,900.00 |
| 137 | February 1, 2024 | 278,248.17 | 78,000.00 | 200,248.17 | 36,949,900.00 |
| 138 | March 1, 2024 | 265,365.76 | 78,400.00 | 186,965.76 | 36,871,500.00 |
| 139 | April 1, 2024 | 278,169.74 | 78,700.00 | 199,469.74 | 36,792,800.00 |
| 140 | May 1, 2024 | 271,756.16 | 79,100.00 | 192,656.16 | 36,713,700.00 |
| 141 | June 1, 2024 | 278,184.32 | 79,500.00 | 198,684.32 | 36,634,200.00 |
| 142 | July 1, 2024 | 271,892.23 | 80,000.00 | 191,892.23 | 36,554,200.00 |
| 143 | August 1, 2024 | 278,190.46 | 80,300.00 | 197,890.46 | 36,473,900.00 |
| 144 | September 1, 2024 | 278,190.79 | 80,700.00 | 197,490.79 | 36,393,200.00 |
| 145 | October 1, 2024 | 271,831.42 | 81,100.00 | 190,731.42 | 36,312,100.00 |

# LOAN AMORTIZATION SCHEDULE - A, B & C COMBINED

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 146 | November 1, 2024 | 278,185.47 | 81,500.00 | 196,685.47 | 36,230,600.00 |
| 147 | December 1, 2024 | 271,748.23 | 81,800.00 | 189,948.23 | 36,148,800.00 |
| 148 | January 1, 2025 | 278,172.69 | 82,300.00 | 195,872.69 | 36,066,500.00 |
| 149 | February 1, 2025 | 278,063.07 | 82,600.00 | 195,463.07 | 35,983,900.00 |
| 150 | March 1, 2025 | 259,175.95 | 83,000.00 | 176,175.95 | 35,900,900.00 |
| 151 | April 1, 2025 | 278,038.84 | 83,400.00 | 194,638.84 | 35,817,500.00 |
| 152 | May 1, 2025 | 271,858.46 | 83,900.00 | 187,958.46 | 35,733,600.00 |
| 153 | June 1, 2025 | 278,106.15 | 84,300.00 | 193,806.15 | 35,649,300.00 |
| 154 | July 1, 2025 | 271,848.30 | 84,700.00 | 187,148.30 | 35,564,600.00 |
| 155 | August 1, 2025 | 278,065.00 | 85,100.00 | 192,965.00 | 35,479,500.00 |
| 156 | September 1, 2025 | 278,041.44 | 85,500.00 | 192,541.44 | 35,394,000.00 |
| 157 | October 1, 2025 | 271,818.60 | 85,900.00 | 185,918.60 | 35,308,100.00 |
| 158 | November 1, 2025 | 277,988.35 | 86,300.00 | 191,688.35 | 35,221,800.00 |
| 159 | December 1, 2025 | 271,789.17 | 86,700.00 | 185,089.17 | 35,135,100.00 |
| 160 | January 1, 2026 | 278,027.28 | 87,200.00 | 190,827.28 | 35,047,900.00 |
| 161 | February 1, 2026 | 277,993.27 | 87,600.00 | 190,393.27 | 34,960,300.00 |
| 162 | March 1, 2026 | 259,574.31 | 88,000.00 | 171,574.31 | 34,872,300.00 |
| 163 | April 1, 2026 | 277,919.27 | 88,400.00 | 189,519.27 | 34,783,900.00 |
| 164 | May 1, 2026 | 271,779.96 | 88,800.00 | 182,979.96 | 34,695,100.00 |
| 165 | June 1, 2026 | 277,837.30 | 89,200.00 | 188,637.30 | 34,605,900.00 |
| 166 | July 1, 2026 | 271,822.59 | 89,700.00 | 182,122.59 | 34,516,200.00 |
| 167 | August 1, 2026 | 277,846.88 | 90,100.00 | 187,746.88 | 34,426,100.00 |
| 168 | September 1, 2026 | 277,798.44 | 90,500.00 | 187,298.44 | 34,335,600.00 |
| 169 | October 1, 2026 | 271,720.64 | 90,900.00 | 180,820.64 | 34,244,700.00 |
| 170 | November 1, 2026 | 277,895.56 | 91,500.00 | 186,395.56 | 34,153,200.00 |
| 171 | December 1, 2026 | 271,842.09 | 91,900.00 | 179,942.09 | 34,061,300.00 |
| 172 | January 1, 2027 | 277,782.74 | 92,300.00 | 185,482.74 | 33,969,000.00 |
| 173 | February 1, 2027 | 277,723.35 | 92,700.00 | 185,023.35 | 33,876,300.00 |
| 174 | March 1, 2027 | 259,901.13 | 93,200.00 | 166,701.13 | 33,783,100.00 |
| 175 | April 1, 2027 | 277,698.08 | 93,600.00 | 184,098.08 | 33,689,500.00 |
| 176 | May 1, 2027 | 271,808.60 | 94,100.00 | 177,708.60 | 33,595,400.00 |
| 177 | June 1, 2027 | 277,663.85 | 94,500.00 | 183,163.85 | 33,500,900.00 |
| 178 | July 1, 2027 | 271,800.17 | 95,000.00 | 176,800.17 | 33,405,900.00 |
| 179 | August 1, 2027 | 277,720.67 | 95,500.00 | 182,220.67 | 33,310,400.00 |
| 180 | September 1, 2027 | 277,645.35 | 95,900.00 | 181,745.35 | 33,214,500.00 |
| 181 | October 1, 2027 | 271,820.67 | 96,400.00 | 175,420.67 | 33,118,100.00 |
| 182 | November 1, 2027 | 277,588.23 | 96,800.00 | 180,788.23 | 33,021,300.00 |
| 183 | December 1, 2027 | 271,790.10 | 97,300.00 | 174,490.10 | 32,924,000.00 |
| 184 | January 1, 2028 | 277,522.15 | 97,700.00 | 179,822.15 | 32,826,300.00 |
| 185 | February 1, 2028 | 277,535.87 | 98,200.00 | 179,335.87 | 32,728,100.00 |
| 186 | March 1, 2028 | 266,108.59 | 98,800.00 | 167,308.59 | 32,629,300.00 |
| 187 | April 1, 2028 | 277,555.37 | 99,200.00 | 178,355.37 | 32,530,100.00 |
| 188 | May 1, 2028 | 271,824.15 | 99,700.00 | 172,124.15 | 32,430,400.00 |
| 189 | June 1, 2028 | 277,565.39 | 100,200.00 | 177,365.39 | 32,330,200.00 |
| 190 | July 1, 2028 | 271,761.30 | 100,600.00 | 171,161.30 | 32,229,600.00 |
| 191 | August 1, 2028 | 277,465.96 | 101,100.00 | 176,365.96 | 32,128,500.00 |
| 192 | September 1, 2028 | 277,462.76 | 101,600.00 | 175,862.76 | 32,026,900.00 |
| 193 | October 1, 2028 | 271,700.40 | 102,000.00 | 169,700.40 | 31,924,900.00 |
| 194 | November 1, 2028 | 277,449.41 | 102,600.00 | 174,849.41 | 31,822,300.00 |
| 195 | December 1, 2028 | 271,814.91 | 103,100.00 | 168,714.91 | 31,719,200.00 |
| 196 | January 1, 2029 | 277,425.59 | 103,600.00 | 173,825.59 | 31,615,600.00 |
| 197 | February 1, 2029 | 277,409.95 | 104,100.00 | 173,309.95 | 31,511,500.00 |
| 198 | March 1, 2029 | 260,670.03 | 104,600.00 | 156,070.03 | 31,406,900.00 |
| 199 | April 1, 2029 | 277,371.20 | 105,100.00 | 172,271.20 | 31,301,800.00 |
| 200 | May 1, 2029 | 271,707.84 | 105,500.00 | 166,207.84 | 31,196,300.00 |
| 201 | June 1, 2029 | 277,323.00 | 106,100.00 | 171,223.00 | 31,090,200.00 |
| 202 | July 1, 2029 | 271,788.63 | 106,600.00 | 165,188.63 | 30,983,600.00 |
| 203 | August 1, 2029 | 277,264.34 | 107,100.00 | 170,164.34 | 30,876,500.00 |
| 204 | September 1, 2029 | 277,231.28 | 107,600.00 | 169,631.28 | 30,768,900.00 |
| 205 | October 1, 2029 | 271,741.04 | 108,100.00 | 163,641.04 | 30,660,800.00 |
| 206 | November 1, 2029 | 277,157.70 | 108,600.00 | 168,557.70 | 30,552,200.00 |
| 207 | December 1, 2029 | 271,797.26 | 109,200.00 | 162,597.26 | 30,443,000.00 |
| 208 | January 1, 2030 | 277,273.65 | 109,800.00 | 167,473.65 | 30,333,200.00 |
| 209 | February 1, 2030 | 277,227.16 | 110,300.00 | 166,927.16 | 30,222,900.00 |
| 210 | March 1, 2030 | 261,077.06 | 110,800.00 | 150,277.06 | 30,112,100.00 |
| 211 | April 1, 2030 | 277,126.70 | 111,300.00 | 165,826.70 | 30,000,800.00 |
| 212 | May 1, 2030 | 271,741.35 | 111,800.00 | 159,941.35 | 29,889,000.00 |
| 213 | June 1, 2030 | 277,116.28 | 112,400.00 | 164,716.28 | 29,776,600.00 |
| 214 | July 1, 2030 | 271,761.46 | 112,900.00 | 158,861.46 | 29,663,700.00 |
| 215 | August 1, 2030 | 277,094.91 | 113,500.00 | 163,594.91 | 29,550,200.00 |
| 216 | September 1, 2030 | 277,129.99 | 114,100.00 | 163,029.99 | 29,436,100.00 |
| 217 | October 1, 2030 | 271,821.38 | 114,600.00 | 157,221.38 | 29,321,500.00 |
| 218 | November 1, 2030 | 276,991.70 | 115,100.00 | 161,891.70 | 29,206,400.00 |

# LOAN AMORTIZATION SCHEDULE - A, B & C COMBINED

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 219 | December 1, 2030 | 271,815.00 | 115,700.00 | 156,115.00 | 29,090,700.00 |
| 220 | January 1, 2031 | 276,942.97 | 116,200.00 | 160,742.97 | 28,974,500.00 |
| 221 | February 1, 2031 | 276,964.61 | 116,800.00 | 160,164.61 | 28,857,700.00 |
| 222 | March 1, 2031 | 261,539.73 | 117,400.00 | 144,139.73 | 28,740,300.00 |
| 223 | April 1, 2031 | 276,898.94 | 117,900.00 | 158,998.94 | 28,622,400.00 |
| 224 | May 1, 2031 | 271,802.06 | 118,500.00 | 153,302.06 | 28,503,900.00 |
| 225 | June 1, 2031 | 276,922.33 | 119,100.00 | 157,822.33 | 28,384,800.00 |
| 226 | July 1, 2031 | 271,757.62 | 119,600.00 | 152,157.62 | 28,265,200.00 |
| 227 | August 1, 2031 | 276,834.26 | 120,200.00 | 156,634.26 | 28,145,000.00 |
| 228 | September 1, 2031 | 276,836.00 | 120,800.00 | 156,036.00 | 28,024,200.00 |
| 229 | October 1, 2031 | 271,820.74 | 121,400.00 | 150,420.74 | 27,902,800.00 |
| 230 | November 1, 2031 | 276,830.52 | 122,000.00 | 154,830.52 | 27,780,800.00 |
| 231 | December 1, 2031 | 271,748.36 | 122,500.00 | 149,248.36 | 27,658,300.00 |
| 232 | January 1, 2032 | 276,713.59 | 123,100.00 | 153,613.59 | 27,535,200.00 |
| 233 | February 1, 2032 | 276,700.89 | 123,700.00 | 153,000.89 | 27,411,500.00 |
| 234 | March 1, 2032 | 266,853.90 | 124,300.00 | 142,553.90 | 27,287,200.00 |
| 235 | April 1, 2032 | 276,766.54 | 125,000.00 | 151,766.54 | 27,162,200.00 |
| 236 | May 1, 2032 | 271,768.77 | 125,500.00 | 146,268.77 | 27,036,700.00 |
| 237 | June 1, 2032 | 276,619.75 | 126,100.00 | 150,519.75 | 26,910,600.00 |
| 238 | July 1, 2032 | 271,756.90 | 126,700.00 | 145,056.90 | 26,783,900.00 |
| 239 | August 1, 2032 | 276,561.51 | 127,300.00 | 149,261.51 | 26,656,600.00 |
| 240 | September 1, 2032 | 276,527.91 | 127,900.00 | 148,627.91 | 26,528,700.00 |
| 241 | October 1, 2032 | 271,817.41 | 128,600.00 | 143,217.41 | 26,400,100.00 |
| 242 | November 1, 2032 | 276,551.25 | 129,200.00 | 147,351.25 | 26,270,900.00 |
| 243 | December 1, 2032 | 271,775.67 | 129,800.00 | 141,975.67 | 26,141,100.00 |
| 244 | January 1, 2033 | 276,462.14 | 130,400.00 | 146,062.14 | 26,010,700.00 |
| 245 | February 1, 2033 | 276,413.11 | 131,000.00 | 145,413.11 | 25,879,700.00 |
| 246 | March 1, 2033 | 262,451.96 | 131,700.00 | 130,751.96 | 25,748,000.00 |
| 247 | April 1, 2033 | 276,505.60 | 132,400.00 | 144,105.60 | 25,615,600.00 |
| 248 | May 1, 2033 | 271,819.31 | 133,000.00 | 138,819.31 | 25,482,600.00 |
| 249 | June 1, 2033 | 276,384.65 | 133,600.00 | 142,784.65 | 25,349,000.00 |
| 250 | July 1, 2033 | 271,735.19 | 134,200.00 | 137,535.19 | 25,214,800.00 |
| 251 | August 1, 2033 | 276,351.74 | 134,900.00 | 141,451.74 | 25,079,900.00 |
| 252 | September 1, 2033 | 276,280.32 | 135,500.00 | 140,780.32 | 24,944,400.00 |
| 253 | October 1, 2033 | 271,786.37 | 136,200.00 | 135,586.37 | 24,808,200.00 |
| 254 | November 1, 2033 | 276,328.01 | 136,900.00 | 139,428.01 | 24,671,300.00 |
| 255 | December 1, 2033 | 271,770.93 | 137,500.00 | 134,270.93 | 24,533,800.00 |
| 256 | January 1, 2034 | 276,262.26 | 138,200.00 | 138,062.26 | 24,395,600.00 |
| 257 | February 1, 2034 | 276,174.40 | 138,800.00 | 137,374.40 | 24,256,800.00 |
| 258 | March 1, 2034 | 263,056.13 | 139,600.00 | 123,456.13 | 24,117,200.00 |
| 259 | April 1, 2034 | 276,188.74 | 140,200.00 | 135,988.74 | 23,977,000.00 |
| 260 | May 1, 2034 | 271,826.72 | 140,900.00 | 130,926.72 | 23,836,100.00 |
| 261 | June 1, 2034 | 276,089.65 | 141,500.00 | 134,589.65 | 23,694,600.00 |
| 262 | July 1, 2034 | 271,766.49 | 142,200.00 | 129,566.49 | 23,552,400.00 |
| 263 | August 1, 2034 | 276,077.61 | 142,900.00 | 133,177.61 | 23,409,500.00 |
| 264 | September 1, 2034 | 276,066.37 | 143,600.00 | 132,466.37 | 23,265,900.00 |
| 265 | October 1, 2034 | 271,801.58 | 144,300.00 | 127,501.58 | 23,121,600.00 |
| 266 | November 1, 2034 | 276,033.42 | 145,000.00 | 131,033.42 | 22,976,600.00 |
| 267 | December 1, 2034 | 271,808.12 | 145,700.00 | 126,108.12 | 22,830,900.00 |
| 268 | January 1, 2035 | 275,886.54 | 146,300.00 | 129,586.54 | 22,684,600.00 |
| 269 | February 1, 2035 | 275,958.38 | 147,100.00 | 128,858.38 | 22,537,500.00 |
| 270 | March 1, 2035 | 263,526.92 | 147,800.00 | 115,726.92 | 22,389,700.00 |
| 271 | April 1, 2035 | 275,890.59 | 148,500.00 | 127,390.59 | 22,241,200.00 |
| 272 | May 1, 2035 | 271,765.95 | 149,200.00 | 122,565.95 | 22,092,000.00 |
| 273 | June 1, 2035 | 275,808.88 | 149,900.00 | 125,908.88 | 21,942,100.00 |
| 274 | July 1, 2035 | 271,825.28 | 150,700.00 | 121,125.28 | 21,791,400.00 |
| 275 | August 1, 2035 | 275,812.72 | 151,400.00 | 124,412.72 | 21,640,000.00 |
| 276 | September 1, 2035 | 275,759.17 | 152,100.00 | 123,659.17 | 21,487,900.00 |
| 277 | October 1, 2035 | 271,737.55 | 152,800.00 | 118,937.55 | 21,335,100.00 |
| 278 | November 1, 2035 | 275,741.62 | 153,600.00 | 122,141.62 | 21,181,500.00 |
| 279 | December 1, 2035 | 271,861.73 | 154,400.00 | 117,461.73 | 21,027,100.00 |
| 280 | January 1, 2036 | 275,708.63 | 155,100.00 | 120,608.63 | 20,872,000.00 |
| 281 | February 1, 2036 | 275,636.66 | 155,800.00 | 119,836.66 | 20,716,200.00 |
| 282 | March 1, 2036 | 267,979.84 | 156,600.00 | 111,379.84 | 20,559,600.00 |
| 283 | April 1, 2036 | 275,581.79 | 157,300.00 | 118,281.79 | 20,402,300.00 |
| 284 | May 1, 2036 | 271,808.58 | 158,100.00 | 113,708.58 | 20,244,200.00 |
| 285 | June 1, 2036 | 275,611.97 | 158,900.00 | 116,711.97 | 20,085,300.00 |
| 286 | July 1, 2036 | 271,781.69 | 159,600.00 | 112,181.69 | 19,925,700.00 |
| 287 | August 1, 2036 | 275,526.72 | 160,400.00 | 115,126.72 | 19,765,300.00 |
| 288 | September 1, 2036 | 275,428.37 | 161,100.00 | 114,328.37 | 19,604,200.00 |
| 289 | October 1, 2036 | 271,864.40 | 162,000.00 | 109,864.40 | 19,442,200.00 |
| 290 | November 1, 2036 | 275,420.23 | 162,700.00 | 112,720.23 | 19,279,500.00 |
| 291 | December 1, 2036 | 271,800.42 | 163,500.00 | 108,300.42 | 19,116,000.00 |

Page 19 of 20

# LOAN AMORTIZATION SCHEDULE - A, B & C COMBINED

| PAYMENT # | PAYMENT DATE | PAYMENT AMOUNT | PRINCIPAL PAID | INTEREST PAID | REMAINING PRINCIPAL |
|---|---|---|---|---|---|
| 292 | January 1, 2037 | 275,396.66 | 164,300.00 | 111,096.66 | 18,951,700.00 |
| 293 | February 1, 2037 | 275,278.90 | 165,000.00 | 110,278.90 | 18,786,700.00 |
| 294 | March 1, 2037 | 264,764.99 | 165,900.00 | 98,864.99 | 18,620,800.00 |
| 295 | April 1, 2037 | 275,331.94 | 166,700.00 | 108,631.94 | 18,454,100.00 |
| 296 | May 1, 2037 | 271,824.75 | 167,500.00 | 104,324.75 | 18,286,600.00 |
| 297 | June 1, 2037 | 275,168.56 | 168,200.00 | 106,968.56 | 18,118,400.00 |
| 298 | July 1, 2037 | 271,807.79 | 169,100.00 | 102,707.79 | 17,949,300.00 |
| 299 | August 1, 2037 | 275,189.74 | 169,900.00 | 105,289.74 | 17,779,400.00 |
| 300 | September 1, 2037 | 275,144.11 | 170,700.00 | 104,444.11 | 17,608,700.00 |
| 301 | October 1, 2037 | 271,752.74 | 171,500.00 | 100,252.74 | 17,437,200.00 |
| 302 | November 1, 2037 | 275,040.90 | 172,300.00 | 102,740.90 | 17,264,900.00 |
| 303 | December 1, 2037 | 271,796.77 | 173,200.00 | 98,596.77 | 17,091,700.00 |
| 304 | January 1, 2038 | 275,021.27 | 174,000.00 | 101,021.27 | 16,917,700.00 |
| 305 | February 1, 2038 | 275,055.24 | 174,900.00 | 100,155.24 | 16,742,800.00 |
| 306 | March 1, 2038 | 265,376.53 | 175,700.00 | 89,676.53 | 16,567,100.00 |
| 307 | April 1, 2038 | 275,010.22 | 176,600.00 | 98,410.22 | 16,390,500.00 |
| 308 | May 1, 2038 | 271,785.08 | 177,400.00 | 94,385.08 | 16,213,100.00 |
| 309 | June 1, 2038 | 274,948.28 | 178,300.00 | 96,648.28 | 16,034,800.00 |
| 310 | July 1, 2038 | 271,771.79 | 179,100.00 | 92,671.79 | 15,855,700.00 |
| 311 | August 1, 2038 | 274,769.42 | 179,900.00 | 94,869.42 | 15,675,800.00 |
| 312 | September 1, 2038 | 274,874.02 | 180,900.00 | 93,974.02 | 15,494,900.00 |
| 313 | October 1, 2038 | 271,771.27 | 181,700.00 | 90,071.27 | 15,313,200.00 |
| 314 | November 1, 2038 | 274,769.28 | 182,600.00 | 92,169.28 | 15,130,600.00 |
| 315 | December 1, 2038 | 271,716.56 | 183,400.00 | 88,316.56 | 14,947,200.00 |
| 316 | January 1, 2039 | 274,747.62 | 184,400.00 | 90,347.62 | 14,762,800.00 |
| 317 | February 1, 2039 | 274,729.82 | 185,300.00 | 89,429.82 | 14,577,500.00 |
| 318 | March 1, 2039 | 266,042.29 | 186,100.00 | 79,942.29 | 14,391,400.00 |
| 319 | April 1, 2039 | 274,581.28 | 187,000.00 | 87,581.28 | 14,204,400.00 |
| 320 | May 1, 2039 | 271,855.37 | 188,000.00 | 83,855.37 | 14,016,400.00 |
| 321 | June 1, 2039 | 274,614.82 | 188,900.00 | 85,714.82 | 13,827,500.00 |
| 322 | July 1, 2039 | 271,739.96 | 189,700.00 | 82,039.96 | 13,637,800.00 |
| 323 | August 1, 2039 | 274,430.44 | 190,600.00 | 83,830.44 | 13,447,200.00 |
| 324 | September 1, 2039 | 274,481.79 | 191,600.00 | 82,881.79 | 13,255,600.00 |
| 325 | October 1, 2039 | 271,785.31 | 192,500.00 | 79,285.31 | 13,063,100.00 |
| 326 | November 1, 2039 | 274,370.03 | 193,400.00 | 80,970.03 | 12,869,700.00 |
| 327 | December 1, 2039 | 271,726.56 | 194,300.00 | 77,426.56 | 12,675,400.00 |
| 328 | January 1, 2040 | 274,440.36 | 195,400.00 | 79,040.36 | 12,480,000.00 |
| 329 | February 1, 2040 | 274,367.81 | 196,300.00 | 78,067.81 | 12,283,700.00 |
| 330 | March 1, 2040 | 269,317.19 | 197,200.00 | 72,117.19 | 12,086,500.00 |
| 331 | April 1, 2040 | 274,209.28 | 198,100.00 | 76,109.28 | 11,888,400.00 |
| 332 | May 1, 2040 | 271,799.97 | 199,100.00 | 72,699.97 | 11,689,300.00 |
| 333 | June 1, 2040 | 274,232.33 | 200,100.00 | 74,132.33 | 11,489,200.00 |
| 334 | July 1, 2040 | 271,777.15 | 201,000.00 | 70,777.15 | 11,288,200.00 |
| 335 | August 1, 2040 | 274,135.96 | 202,000.00 | 72,135.96 | 11,086,200.00 |
| 336 | September 1, 2040 | 274,130.57 | 203,000.00 | 71,130.57 | 10,883,200.00 |
| 337 | October 1, 2040 | 271,758.24 | 203,900.00 | 67,858.24 | 10,679,300.00 |
| 338 | November 1, 2040 | 274,005.34 | 204,900.00 | 69,105.34 | 10,474,400.00 |
| 339 | December 1, 2040 | 271,789.19 | 205,900.00 | 65,889.19 | 10,268,500.00 |
| 340 | January 1, 2041 | 273,960.69 | 206,900.00 | 67,060.69 | 10,061,600.00 |
| 341 | February 1, 2041 | 273,930.91 | 207,900.00 | 66,030.91 | 9,853,700.00 |
| 342 | March 1, 2041 | 267,606.19 | 208,900.00 | 58,706.19 | 9,644,800.00 |
| 343 | April 1, 2041 | 273,856.40 | 209,900.00 | 63,956.40 | 9,434,900.00 |
| 344 | May 1, 2041 | 271,782.27 | 210,900.00 | 60,882.27 | 9,224,000.00 |
| 345 | June 1, 2041 | 273,761.98 | 211,900.00 | 61,861.98 | 9,012,100.00 |
| 346 | July 1, 2041 | 271,745.79 | 212,900.00 | 58,845.79 | 8,799,200.00 |
| 347 | August 1, 2041 | 273,747.66 | 214,000.00 | 59,747.66 | 8,585,200.00 |
| 348 | September 1, 2041 | 273,682.53 | 215,000.00 | 58,682.53 | 8,370,200.00 |
| 349 | October 1, 2041 | 271,753.97 | 216,000.00 | 55,753.97 | 8,154,200.00 |
| 350 | November 1, 2041 | 273,537.35 | 217,000.00 | 56,537.35 | 7,937,200.00 |
| 351 | December 1, 2041 | 271,768.34 | 218,100.00 | 53,668.34 | 7,719,100.00 |
| 352 | January 1, 2042 | 7,773,471.76 | 7,719,100.00 | 54,371.76 | 0.00 |
| | | 101,060,371.14 | 42,500,000.00 | 58,560,371.14 | |