**THIRD SUPPLEMENTAL INDENTURE**

**Dated as of January 3, 2022**

**to**

**INDENTURE OF TRUST**

**Between**

**WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY**

**and**

**COMPUTERSHARE TRUST COMPANY, N.A.,**
**as Trustee**

**Relating to**

**$42,500,000**
**WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY**
**ECONOMIC DEVELOPMENT BONDS**
**2012 SERIES A, B AND C**

**EXHIBIT**

**107**

# THIRD SUPPLEMENTAL INDENTURE

This Third Supplemental Indenture (this "Supplement") dated as of January 3, 2022 between WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a public body corporate and politic duly created, organized and existing under the laws of the State of Wisconsin (the "Authority"), and COMPUTERSHARE TRUST COMPANY, N.A. (successor in interest to Wells Fargo Bank, National Association), as trustee (the "Trustee"), supplements and amends that certain Indenture of Trust dated as of August 1, 2012 (as heretofore supplemented and amended, the "Indenture") between the Authority and the Trustee.

The Authority and the Trustee hereby agree as follows:

1.    **Purpose and Authority.**  This Supplement is being entered into pursuant to the terms of the Indenture, and particularly <u>Section 13.2</u>, for the purpose of making certain amendments to the Indenture.  Except as otherwise provided in this Supplement, capitalized terms used in this Supplement shall have the meanings set forth in the Indenture.

2.    **Acknowledgment of Deferred Payments; Waiver of Events of Default.** The Authority and the Trustee acknowledge that, due to the lack of availability of payments under the Loan Agreement (i) the Bonds were not purchased on the Mandatory Tender Date of December 31, 2020 as provided in Section 4.9 of the Indenture and (ii) commencing with payments due July 1, 2020, multiple payments due prior to the date hereof with respect to the Bonds were not made.  As of January 3, 2022 (and taking into account payments required to be made on or about the date hereof pursuant to the Covenant Agreement (as defined in the Loan Agreement)), the outstanding principal balances of the Bonds were as follows:

    (a)    Series A Bonds:  principal of $32,737,600 plus accrued and capitalized interest of $1,927,076.02 (such accrued interest amount calculated net of accrued participation payments pursuant to that certain Bond Participation Agreement dated October 30, 2015 between Wisconsin & Milwaukee Hotel Funding LLC and Jackson Street Management LLC, which are deemed to have been paid), for a new principal balance of $34,664,676.02;

    (b)    Series B Bonds:  principal of $2,262,400 plus accrued and capitalized interest of $131,585.18, for a new principal balance of $2,393,985.18; and

    (c)    Series C Bonds:  principal of $7,500,000 plus accrued and capitalized interest of $409,905.90, for a new principal balance of $7,909,905.90.

Notwithstanding Section 10.1 of the Indenture, the failure to make such purchase and such payments shall not be an Event of Default, and interest accrued from and after the date of any such failure shall not (unless an Event of Default occurs after the date hereof) be computed at the Default Rate. Any Event of Default heretofore arising from any such failure is hereby waived.

3.    **Amendments to Indenture.**  The Indenture is amended as follows:

    (a)    The following definitions are inserted into Section 1.1 of the Indenture to appear in proper alphabetical order therein:

"Capitalization Date" means April 1, 2021.

"Capitalized Interest" means interest on the Bonds accrued and unpaid to the Capitalization Date.

"Current Pay Rate" means (i) for the period from the Capitalization Date to March 31, 2022, the rate of 2% per annum, and (ii) thereafter, (a) with respect to the Series A Bonds, 5.25% and (b) with respect to the Series B Bonds and the Series C Bonds, 3.625% per annum.

"Deferred Interest" means interest accrued and unpaid on the Bonds (a) on and after the Capitalization Date but prior to January 1, 2022, and (b) on and after January 1, 2022 but prior to the Initial Conversion Date to the extent it exceeds the amount required to be paid on any Interest Payment Date as provided in Section 4.2(e)(i).

(b)    The definition of the term "Event of Taxability" in Section 1.1 of the Indenture is amended and restated in its entirety to read as follows:

"Event of Taxability" means the circumstance of interest paid or payable on any Bond (but not including interest on Capitalized Interest and Deferred Interest) becoming includable for federal income tax purposes (other than for purposes of computing alternative minimum taxes) in the gross income of any Bondowner as a consequence of any act, omission or event whatsoever.

(c)    The definition of the term "Initial Conversion Date" in Section 1.1 of the Indenture is amended and restated in its entirety to read as follows:

"Initial Conversion Date" means March 31, 2022 or such later date as may be established pursuant to Section 4.2(f).

(d)    The first paragraph of Section 4.2(a) of the Indenture is amended and restated in its entirety to read as follows:

(a)    Prior to the Initial Conversion Date, each Series of the Bonds shall bear interest at the Fixed Rate applicable thereto, and interest accrued through the end of each month shall, subject to Section 4.2(e), be payable on the first Business Day of the following month.  Upon and during the continuance of an Event of Default occurring after January 3, 2022, each Series of the Bonds shall bear interest at the Default Rate.  Following the Initial Conversion Date, the Bonds shall bear interest at the Variable Rate, determined from time to time in accordance with the provisions of this Section 4.2(a), payable on the first Business Day of each March, June, September and December, and at maturity.  The Variable Rate for each Calculation Period shall be determined on the Determination Date with respect thereto and shall be the lesser of (i) the Maximum Rate, or (ii) the minimum rate of interest which, in the judgment of the Remarketing Agent, under prevailing market conditions, taking into account the current rates for tax-exempt securities, or taxable

2

securities as applicable, comparable in length of interest rate adjustment periods, liquidity, security and creditworthiness to the Bonds, would enable the Bonds to be sold at a price of par, plus accrued interest, if any, on the Determination Date. The Remarketing Agent shall determine the Variable Rate for each Calculation Period on the corresponding Determination Date, and shall notify the Trustee and the Authority of such determination on such date by facsimile or other electronic means. In the event that the Remarketing Agent shall fail for any reason to determine, and notify the Trustee and the Authority of, the Variable Rate for any Calculation Period, the Variable Rate for such Calculation Period shall be equal to the Variable Rate in effect immediately prior to the commencement of such Calculation Period. Interest accruing at the Variable Rate shall be computed on the basis of a 365 or 366-day year, as the case may be, and the actual number of days elapsed.

(e)     A new Section 4.2(e) of the Indenture is created to read as follows:

(e)     Notwithstanding Section 4.2(a), (i) the first Interest Payment Date following the Capitalization Date on which interest is due shall be February 1, 2022, (ii) interest on the Bonds accrued during the period from January 1, 2022 to the Initial Conversion Date shall be due on any Interest Payment Date only in an amount equal to the lesser of (A) interest accrued at the Current Pay Rate and (B) the amount of interest then required to be paid on the Notes pursuant to Section 2.4 of the Loan Agreement, and (iii) Deferred Interest on the Bonds shall be due on the Initial Conversion Date. Capitalized Interest shall bear interest from the Capitalization Date, and each installment of other Deferred Interest shall bear interest from the date on which it would otherwise be due (but for the operation of this Section 4.2(e)), in each case at the rate borne by the applicable Bonds, payable on the Initial Conversion Date. All payments of interest on the Bonds accrued prior to the Initial Conversion Date shall be applied, *first*, to interest accrued on the Bonds at the Current Pay Rate, *second* to interest accrued on the Deferred Interest, and *third*, to the Deferred Interest (and in each case, first to such interest allocable to the Series A Bonds, second to such interest allocable to the Series B Bonds and third to such interest allocable to the Series C Bonds).

(f)     A new Section 4.2(f) of the Indenture is created to read as follows:

(f)     So long as no uncured and unwaived Event of Default exists as of March 22, 2022, the Initial Conversion Date will be extended to March 31, 2023. If the Initial Conversion Date is so extended, it will again be extended to March 31, 2024 in the same manner and subject to the same condition. No extension of the Initial Conversion Date beyond March 31, 2024 shall be made.

(g)     The last paragraph of Section 4.2 of the Indenture is re-designated as subsection (g).

(h)     The first paragraph of Section 4.9 of the Indenture is amended and restated in its entirety to read as follows:

All Bonds of a particular Series or the Beneficial Ownership Interests therein (other than Bank Bonds and Authority Bonds) shall be subject to mandatory tender for purchase in accordance with Section 4.10 hereof on each of the following dates (a "Mandatory Tender Date"):

(a)     the Initial Conversion Date and each Proposed Conversion Date;

(b)     while the Bonds bear interest at the Variable Rate, the first Business Day of the month in which the Liquidity Facility Expiration Date is to occur unless, at least 45 days prior to such first Business Day of the month, the Authority shall have caused to be delivered to the Trustee an amendment extending the Liquidity Facility Expiration Date to a new date meeting the requirements of Section 12.2(b) hereof or the Liquidity Facility shall automatically extend to such date pursuant to its terms or a Substitute Liquidity Facility meeting the requirements of Section 12.2 hereof (except in the event no Liquidity Facility is required as set forth in Section 4.16);

(c)     each Reset Date; provided that if any such Reset Date is not a Business Day, then the first Business Day thereafter;

(d)     while the Bonds bear interest at the Variable Rate, the date set by the Trustee which is at least 5 Business Days prior to the last day on which funds will be available under the Liquidity Facility due to the occurrence of an event of default under the Liquidity Facility (other than a Liquidity Facility Default) as set forth in Section 4.17 hereof; and

(e)     while the Bonds bear interest at the Variable Rate, on each Liquidity Facility Substitution Date other than a Substitute Liquidity Facility satisfying the requirements of 12.2(e)(i) or (ii) hereof.

(i)     Schedule I of the Indenture is replaced with Schedule I hereto.

(j)     Exhibits A-1, A-2 and A-3 to the Indenture are replaced with Exhibits A-1, A-2 and A-3, respectively, hereto.

3.     The Trustee hereby: (a) consents to the amendment to the Loan Agreement in the form attached hereto as Exhibit B, and (b) confirms that Wisconsin & Milwaukee Hotel Funding LLC is the sole Bondowner.

4.     **Delivery of Documents to the Trustee**.  As is required by Section 13.2 of the Indenture, the Trustee hereby acknowledges receipt of:

(a)     This Supplement; and

(b)     Written consent of the Bondowner for the Trustee to enter into this Supplement.

4

5.  **Supplement Construed with Indenture.**  All of the provisions of this Supplement shall be deemed to be construed as part of the Indenture to the same extent as if fully set forth therein.

6.  **Indenture as Amended and Supplemented to Remain in Effect.**  Except as amended and supplemented by this Supplement, the Indenture shall remain in full force and effect.

7.  **Execution in Counterparts**.  This Supplement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument.

8.  **Severability.**  If any section, paragraph, clause or provision of this Supplement shall for any reason be held to be invalid or unenforceable, the invalidity or unenforceability of such section, paragraph, clause or provision shall not affect any of the remaining provisions of this Supplement.

9.  **Governing Law**.  This Supplement shall be construed in accordance with the laws of the State of Wisconsin.

[remainder of page intentionally left blank]

**IN WITNESS WHEREOF** the Authority and the Trustee have executed this Supplement as of the date first stated above.

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY

By:_____
      Kimberly Plache, Interim Executive Director

COMPUTERSHARE TRUST COMPANY,
N.A., as Trustee

By: _____
Name: _____
Title: _____

### Consent of Bondowner

     The undersigned, as the sole Bondowner of the Bonds referred to in the foregoing Third Supplemental Indenture (the "Supplemental Indenture") hereby (i) waives notice of the proposed execution of the Supplemental Indenture and (ii) consents to and approves the execution of (a) the Supplemental Indenture and (b) the amendment to the Loan Agreement in the form attached thereto.

WISCONSIN & MILWAUKEE HOTEL
FUNDING LLC, as sole Bondowner

By:_____
Name:_____
Title:  Manager

[Signature Page to Third Supplemental Indenture]

**IN WITNESS WHEREOF** the Authority and the Trustee have executed this Supplement as of the date first stated above.

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY

By:_____
      Kimberly Plache, Interim Executive Director

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee

By:_____
Name:_____
Title:_____

### Consent of Bondowner

      The undersigned, as the sole Bondowner of the Bonds referred to in the foregoing Third Supplemental Indenture (the "Supplemental Indenture") hereby (i) waives notice of the proposed execution of the Supplemental Indenture and (ii) consents to and approves the execution of (a) the Supplemental Indenture and (b) the amendment to the Loan Agreement in the form attached thereto.

WISCONSIN & MILWAUKEE HOTEL FUNDING LLC, as sole Bondowner

By:_____
Name:_____Daniel Wycklend +_____
Title: Manager

[Signature Page to Third Supplemental Indenture]

## Schedule I

[Attached]

| Date | Principal amount | | | |
|------|------------------|---|---|---|
| | | | | |
| | | 0.00 | 3,951,100.00 | |
| 5/1/2024 | 143,100.00 | | | |
| 6/1/2024 | 143,400.00 | | | |
| 7/1/2024 | 143,900.00 | | | |
| 8/1/2024 | 144,200.00 | | | |
| 9/1/2024 | 144,600.00 | | | |
| 10/1/2024 | 144,900.00 | | | |
| 11/1/2024 | 145,400.00 | | | |
| 12/1/2024 | 145,700.00 | | | |
| 1/1/2025 | 146,100.00 | | | |
| 2/1/2025 | 146,500.00 | | | |
| 3/1/2025 | 4,088,000.00 | | | |
| 4/1/2025 | 137,200.00 | | | |
| 5/1/2025 | 137,700.00 | | | |
| 6/1/2025 | 138,000.00 | | | |
| 7/1/2025 | 138,500.00 | | | |
| 8/1/2025 | 138,800.00 | | | |
| 9/1/2025 | 139,300.00 | | | |
| 10/1/2025 | 139,600.00 | | | |
| 11/1/2025 | 140,100.00 | | | |
| 12/1/2025 | 140,400.00 | | | |
| 1/1/2026 | 140,900.00 | | | |
| 2/1/2026 | 141,300.00 | | | |
| 3/1/2026 | 141,700.00 | | | |
| 4/1/2026 | 142,000.00 | | | |
| 5/1/2026 | 142,500.00 | | | |
| 6/1/2026 | 142,800.00 | | | |
| 7/1/2026 | 143,300.00 | | | |
| 8/1/2026 | 143,700.00 | | | |

| Date | Amount | | | |
|---|---|---|---|---|
| 9/1/2026 | 144,200.00 | | | |
| 10/1/2026 | 144,500.00 | | | |
| 11/1/2026 | 145,000.00 | | | |
| 12/1/2026 | 145,400.00 | | | |
| 1/1/2027 | 145,900.00 | | | |
| 2/1/2027 | 146,200.00 | | | |
| 3/1/2027 | 146,700.00 | | | |
| 4/1/2027 | 147,100.00 | | | |
| 5/1/2027 | 147,600.00 | | | |
| 6/1/2027 | 148,000.00 | | | |
| 7/1/2027 | 148,500.00 | | | |
| 8/1/2027 | 148,800.00 | | | |
| 9/1/2027 | 149,400.00 | | | |
| 10/1/2027 | 149,700.00 | | | |
| 11/1/2027 | 150,300.00 | | | |
| 12/1/2027 | 150,600.00 | | | |
| 1/1/2028 | 151,200.00 | | | |
| 2/1/2028 | 151,500.00 | | | |
| 3/1/2028 | 152,100.00 | | | |
| 4/1/2028 | 152,500.00 | | | |
| 5/1/2028 | 153,000.00 | | | |
| 6/1/2028 | 153,400.00 | | | |
| 7/1/2028 | 154,000.00 | | | |
| 8/1/2028 | 154,300.00 | | | |
| 9/1/2028 | 154,900.00 | | | |
| 10/1/2028 | 155,300.00 | | | |
| 11/1/2028 | 155,800.00 | | | |
| 12/1/2028 | 156,200.00 | | | |
| 1/1/2029 | 156,800.00 | | | |
| 2/1/2029 | 157,200.00 | | | |
| 3/1/2029 | 157,800.00 | | | |
| 4/1/2029 | 158,200.00 | | | |
| 5/1/2029 | 158,800.00 | | | |
| 6/1/2029 | 159,100.00 | | | |
| 7/1/2029 | 159,700.00 | | | |
| 8/1/2029 | 160,100.00 | | | |
| 9/1/2029 | 160,700.00 | | | |
| 10/1/2029 | 161,100.00 | | | |
| 11/1/2029 | 161,700.00 | | | |
| 12/1/2029 | 162,100.00 | | | |
| 1/1/2030 | 162,800.00 | | | |
| 2/1/2030 | 163,200.00 | | | |
| 3/1/2030 | 163,800.00 | | | |
| 4/1/2030 | 164,300.00 | | | |
| 5/1/2030 | 164,800.00 | | | |
| 6/1/2030 | 165,300.00 | | | |
| 7/1/2030 | 165,900.00 | | | |
| 8/1/2030 | 166,400.00 | | | |
| 9/1/2030 | 166,900.00 | | | |
| 10/1/2030 | 167,500.00 | | | |
| 11/1/2030 | 163,000.00 | | | |
| 12/1/2030 | 163,500.00 | | | |
| 1/1/2031 | 164,100.00 | | | |
| 2/1/2031 | 164,600.00 | | | |
| 3/1/2031 | 165,200.00 | | | |
| 4/1/2031 | 165,700.00 | | | |
| 5/1/2031 | 165,200.00 | | | |
| 6/1/2031 | 165,800.00 | | | |
| 7/1/2031 | 166,400.00 | | | |
| 8/1/2031 | 164,800.00 | | | |
| 9/1/2031 | 163,800.00 | | | |
| 10/1/2031 | 166,700.00 | | | |
| 11/1/2031 | 165,700.00 | | | |
| 12/1/2031 | 165,700.00 | | | |
| 1/1/2032 | 164,700.00 | | | |
| 2/1/2032 | 163,700.00 | | | |
| 3/1/2032 | 162,700.00 | | | |
| 4/1/2032 | 161,700.00 | | | |
| 5/1/2032 | 160,800.00 | | | |
| 6/1/2032 | 159,800.00 | | | |
| 7/1/2032 | 158,800.00 | | | |
| 8/1/2032 | 157,800.00 | | | |
| 9/1/2032 | 156,900.00 | | | |

| | | | | |
|---|---|---|---|---|
| 10/1/2032 | 155,900.00 | | | |
| 11/1/2032 | 154,900.00 | | | |
| 12/1/2032 | 154,000.00 | | | |
| 1/1/2033 | 153,100.00 | | | |
| 2/1/2033 | 151,200.00 | | | |
| 3/1/2033 | 150,200.00 | | | |
| 4/1/2033 | 149,300.00 | | | |
| 5/1/2033 | 148,400.00 | | | |
| 6/1/2033 | 147,500.00 | | | |
| 7/1/2033 | 146,600.00 | | | |
| 8/1/2033 | 145,600.00 | | | |
| 9/1/2033 | 144,700.00 | | | |
| 10/1/2033 | 143,800.00 | | | |
| 11/1/2033 | 142,900.00 | | | |
| 12/1/2033 | 142,000.00 | | | |
| 1/1/2034 | 141,100.00 | | | |
| 2/1/2034 | 140,300.00 | | | |
| 3/1/2034 | 139,400.00 | | | |
| 4/1/2034 | 138,500.00 | | | |
| 5/1/2034 | 147,600.00 | | | |
| 6/1/2034 | 146,800.00 | | | |
| 7/1/2034 | 145,900.00 | | | |
| 8/1/2034 | 145,000.00 | | | |
| 9/1/2034 | 144,200.00 | | | |
| 10/1/2034 | 143,300.00 | | | |
| 11/1/2034 | 142,500.00 | | | |
| 12/1/2034 | 141,600.00 | | | |
| 1/1/2035 | 140,800.00 | | | |
| 2/1/2035 | 140,000.00 | | | |
| 3/1/2035 | 139,100.00 | | | |
| 4/1/2035 | 138,300.00 | | | |
| 5/1/2035 | 137,500.00 | | | |
| 6/1/2035 | 136,700.00 | | | |
| 7/1/2035 | 135,800.00 | | | |
| 8/1/2035 | 135,000.00 | | | |
| 9/1/2035 | 134,200.00 | | | |
| 10/1/2035 | 133,400.00 | | | |
| 11/1/2035 | 132,600.00 | | | |
| 12/1/2035 | 131,800.00 | | | |
| 1/1/2036 | 131,000.00 | | | |
| 2/1/2036 | 130,200.00 | | | |
| 3/1/2036 | 129,500.00 | | | |
| 4/1/2036 | 128,700.00 | | | |
| 5/1/2036 | 127,900.00 | | | |
| 6/1/2036 | 127,100.00 | | | |
| 7/1/2036 | 126,400.00 | | | |
| 8/1/2036 | 125,600.00 | | | |
| 9/1/2036 | 124,800.00 | | | |
| 10/1/2036 | 124,100.00 | | | |
| 11/1/2036 | 123,300.00 | | | |
| 12/1/2036 | 122,600.00 | | | |
| 1/1/2037 | 121,800.00 | | | |
| 2/1/2037 | 121,100.00 | | | |
| 3/1/2037 | 120,300.00 | | | |
| 4/1/2037 | 119,600.00 | | | |
| 5/1/2037 | 118,900.00 | | | |
| 6/1/2037 | 118,100.00 | | | |
| 7/1/2037 | 117,400.00 | | | |
| 8/1/2037 | 116,700.00 | | | |
| 9/1/2037 | 116,000.00 | | | |
| 10/1/2037 | 115,200.00 | | | |
| 11/1/2037 | 114,500.00 | | | |
| 12/1/2037 | 113,800.00 | | | |
| 1/1/2038 | 113,100.00 | | | |
| 2/1/2038 | 112,400.00 | | | |
| 3/1/2038 | 111,700.00 | | | |
| 4/1/2038 | 111,000.00 | | | |
| 5/1/2038 | 110,300.00 | | | |
| 6/1/2038 | 109,600.00 | | | |
| 7/1/2038 | 108,900.00 | | | |
| 8/1/2038 | 108,300.00 | | | |
| 9/1/2038 | 107,600.00 | | | |
| 10/1/2038 | 106,900.00 | | | |

| | | | | |
|---|---|---|---|---|
| 11/1/2038 | 106,200.00 | | | |
| 12/1/2038 | 105,600.00 | | | |
| 1/1/2039 | 104,900.00 | | | |
| 2/1/2039 | 104,200.00 | | | |
| 3/1/2039 | 103,600.00 | | | |
| 4/1/2039 | 102,900.00 | | | |
| 5/1/2039 | 102,300.00 | | | |
| 6/1/2039 | 101,600.00 | | | |
| 7/1/2039 | 101,000.00 | | | |
| 8/1/2039 | 100,300.00 | | | |
| 9/1/2039 | 99,700.00 | | | |
| 10/1/2039 | 99,000.00 | | | |
| 11/1/2039 | 98,400.00 | | | |
| 12/1/2039 | 97,800.00 | | | |
| 1/1/2040 | 97,100.00 | | | |
| 2/1/2040 | 96,500.00 | | | |
| 3/1/2040 | 95,900.00 | | | |
| 4/1/2040 | 95,300.00 | | | |
| 5/1/2040 | 94,700.00 | | | |
| 6/1/2040 | 94,000.00 | | | |
| 7/1/2040 | 93,400.00 | | | |
| 8/1/2040 | 92,800.00 | | | |
| 9/1/2040 | 92,200.00 | | | |
| 10/1/2040 | 91,600.00 | | | |
| 11/1/2040 | 91,000.00 | | | |
| 12/1/2040 | 90,400.00 | | | |
| 1/1/2041 | 89,800.00 | | | |
| 2/1/2041 | 89,200.00 | | | |
| 3/1/2041 | 88,600.00 | | | |
| 4/1/2041 | 88,100.00 | | | |
| 5/1/2041 | 87,500.00 | | | |
| 6/1/2041 | 86,900.00 | | | |
| 7/1/2041 | 86,300.00 | | | |
| 8/1/2041 | 85,700.00 | | | |
| 9/1/2041 | 85,200.00 | | | |
| 10/1/2041 | 84,600.00 | | | |
| 11/1/2041 | 84,000.00 | | | |
| 12/1/2041 | 83,500.00 | | | |
| 1/1/2042 | 82,900.00 | | | |

| Date | Principal amount | | |
|------|------------------|---|---|
| | | | |
| | | 0.00 | 1,830,100.00 |
| 5/1/2024 | 4,500.00 | | |
| 6/1/2024 | 4,500.00 | | |
| 7/1/2024 | 4,400.00 | | |
| 8/1/2024 | 4,400.00 | | |
| 9/1/2024 | 4,400.00 | | |
| 10/1/2024 | 4,400.00 | | |
| 11/1/2024 | 4,500.00 | | |
| 12/1/2024 | 4,400.00 | | |
| 1/1/2025 | 4,400.00 | | |
| 2/1/2025 | 4,400.00 | | |
| 3/1/2025 | 1,854,500.00 | | |
| 4/1/2025 | 4,300.00 | | |
| 5/1/2025 | 4,300.00 | | |
| 6/1/2025 | 4,300.00 | | |
| 7/1/2025 | 4,300.00 | | |
| 8/1/2025 | 4,300.00 | | |
| 9/1/2025 | 4,200.00 | | |
| 10/1/2025 | 4,200.00 | | |
| 11/1/2025 | 4,200.00 | | |
| 12/1/2025 | 4,300.00 | | |
| 1/1/2026 | 2,400.00 | | |
| 2/1/2026 | 2,400.00 | | |
| 3/1/2026 | 2,400.00 | | |
| 4/1/2026 | 2,400.00 | | |
| 5/1/2026 | 2,400.00 | | |
| 6/1/2026 | 2,300.00 | | |
| 7/1/2026 | 2,300.00 | | |
| 8/1/2026 | 2,300.00 | | |

| | |
|---|---|
| 9/1/2026 | 2,300.00 |
| 10/1/2026 | 2,300.00 |
| 11/1/2026 | 2,200.00 |
| 12/1/2026 | 2,200.00 |
| 1/1/2027 | 2,200.00 |
| 2/1/2027 | 2,200.00 |
| 3/1/2027 | 2,200.00 |
| 4/1/2027 | 2,100.00 |
| 5/1/2027 | 2,100.00 |
| 6/1/2027 | 2,100.00 |
| 7/1/2027 | 2,100.00 |
| 8/1/2027 | 2,100.00 |
| 9/1/2027 | 2,000.00 |
| 10/1/2027 | 2,000.00 |
| 11/1/2027 | 2,000.00 |
| 12/1/2027 | 2,000.00 |
| 1/1/2028 | 2,000.00 |
| 2/1/2028 | 2,900.00 |
| 3/1/2028 | 2,900.00 |
| 4/1/2028 | 2,900.00 |
| 5/1/2028 | 2,900.00 |
| 6/1/2028 | 2,900.00 |
| 7/1/2028 | 2,800.00 |
| 8/1/2028 | 2,800.00 |
| 9/1/2028 | 2,800.00 |
| 10/1/2028 | 2,800.00 |
| 11/1/2028 | 2,800.00 |
| 12/1/2028 | 2,800.00 |
| 1/1/2029 | 2,700.00 |
| 2/1/2029 | 2,700.00 |
| 3/1/2029 | 2,700.00 |
| 4/1/2029 | 2,700.00 |
| 5/1/2029 | 2,700.00 |
| 6/1/2029 | 2,600.00 |
| 7/1/2029 | 2,600.00 |
| 8/1/2029 | 2,600.00 |
| 9/1/2029 | 2,600.00 |
| 10/1/2029 | 2,600.00 |
| 11/1/2029 | 2,600.00 |
| 12/1/2029 | 2,500.00 |
| 1/1/2030 | 2,500.00 |
| 2/1/2030 | 2,500.00 |
| 3/1/2030 | 2,500.00 |
| 4/1/2030 | 2,500.00 |
| 5/1/2030 | 2,500.00 |
| 6/1/2030 | 2,400.00 |
| 7/1/2030 | 2,400.00 |
| 8/1/2030 | 2,400.00 |
| 9/1/2030 | 2,400.00 |
| 10/1/2030 | 2,400.00 |
| 11/1/2030 | 2,400.00 |
| 12/1/2030 | 2,300.00 |
| 1/1/2031 | 2,300.00 |
| 2/1/2031 | 2,300.00 |
| 3/1/2031 | 2,300.00 |
| 4/1/2031 | 2,300.00 |
| 5/1/2031 | 2,300.00 |
| 6/1/2031 | 2,300.00 |
| 7/1/2031 | 2,200.00 |
| 8/1/2031 | 2,200.00 |
| 9/1/2031 | 2,200.00 |
| 10/1/2031 | 2,200.00 |
| 11/1/2031 | 2,200.00 |
| 12/1/2031 | 2,200.00 |
| 1/1/2032 | 2,100.00 |
| 2/1/2032 | 2,100.00 |
| 3/1/2032 | 2,100.00 |
| 4/1/2032 | 2,100.00 |
| 5/1/2032 | 2,100.00 |
| 6/1/2032 | 2,100.00 |
| 7/1/2032 | 2,100.00 |
| 8/1/2032 | 2,000.00 |
| 9/1/2032 | 2,000.00 |

| | | | |
|---|---|---|---|
| 10/1/2032 | 2,000.00 | | |
| 11/1/2032 | 2,000.00 | | |
| 12/1/2032 | 2,000.00 | | |
| 1/1/2033 | 2,000.00 | | |
| 2/1/2033 | 2,000.00 | | |
| 3/1/2033 | 1,900.00 | | |
| 4/1/2033 | 1,900.00 | | |
| 5/1/2033 | 1,900.00 | | |
| 6/1/2033 | 1,900.00 | | |
| 7/1/2033 | 1,900.00 | | |
| 8/1/2033 | 1,900.00 | | |
| 9/1/2033 | 1,900.00 | | |
| 10/1/2033 | 1,800.00 | | |
| 11/1/2033 | 1,800.00 | | |
| 12/1/2033 | 1,800.00 | | |
| 1/1/2034 | 1,800.00 | | |
| 2/1/2034 | 1,800.00 | | |
| 3/1/2034 | 1,800.00 | | |
| 4/1/2034 | 1,800.00 | | |
| 5/1/2034 | 1,800.00 | | |
| 6/1/2034 | 1,800.00 | | |
| 7/1/2034 | 1,800.00 | | |
| 8/1/2034 | 1,700.00 | | |
| 9/1/2034 | 1,700.00 | | |
| 10/1/2034 | 1,700.00 | | |
| 11/1/2034 | 1,700.00 | | |
| 12/1/2034 | 1,700.00 | | |
| 1/1/2035 | 1,700.00 | | |
| 2/1/2035 | 1,700.00 | | |
| 3/1/2035 | 1,700.00 | | |
| 4/1/2035 | 1,600.00 | | |
| 5/1/2035 | 1,600.00 | | |
| 6/1/2035 | 1,600.00 | | |
| 7/1/2035 | 1,600.00 | | |
| 8/1/2035 | 1,600.00 | | |
| 9/1/2035 | 1,600.00 | | |
| 10/1/2035 | 1,600.00 | | |
| 11/1/2035 | 1,600.00 | | |
| 12/1/2035 | 1,500.00 | | |
| 1/1/2036 | 1,500.00 | | |
| 2/1/2036 | 1,500.00 | | |
| 3/1/2036 | 1,500.00 | | |
| 4/1/2036 | 1,500.00 | | |
| 5/1/2036 | 1,500.00 | | |
| 6/1/2036 | 1,500.00 | | |
| 7/1/2036 | 1,500.00 | | |
| 8/1/2036 | 1,400.00 | | |
| 9/1/2036 | 1,400.00 | | |
| 10/1/2036 | 1,400.00 | | |
| 11/1/2036 | 1,400.00 | | |
| 12/1/2036 | 1,400.00 | | |
| 1/1/2037 | 1,400.00 | | |
| 2/1/2037 | 1,400.00 | | |
| 3/1/2037 | 1,400.00 | | |
| 4/1/2037 | 1,400.00 | | |
| 5/1/2037 | 1,300.00 | | |
| 6/1/2037 | 1,300.00 | | |
| 7/1/2037 | 1,300.00 | | |
| 8/1/2037 | 1,300.00 | | |
| 9/1/2037 | 1,300.00 | | |
| 10/1/2037 | 1,300.00 | | |
| 11/1/2037 | 1,300.00 | | |
| 12/1/2037 | 1,300.00 | | |
| 1/1/2038 | 1,300.00 | | |
| 2/1/2038 | 1,200.00 | | |
| 3/1/2038 | 1,200.00 | | |
| 4/1/2038 | 1,200.00 | | |
| 5/1/2038 | 1,200.00 | | |
| 6/1/2038 | 1,200.00 | | |
| 7/1/2038 | 1,200.00 | | |
| 8/1/2038 | 1,200.00 | | |
| 9/1/2038 | 1,200.00 | | |
| 10/1/2038 | 1,200.00 | | |

| | | | |
|---|---|---|---|
| 11/1/2038 | 1,200.00 | | |
| 12/1/2038 | 1,100.00 | | |
| 1/1/2039 | 1,100.00 | | |
| 2/1/2039 | 1,100.00 | | |
| 3/1/2039 | 1,100.00 | | |
| 4/1/2039 | 1,100.00 | | |
| 5/1/2039 | 1,100.00 | | |
| 6/1/2039 | 1,100.00 | | |
| 7/1/2039 | 1,100.00 | | |
| 8/1/2039 | 1,100.00 | | |
| 9/1/2039 | 1,000.00 | | |
| 10/1/2039 | 1,000.00 | | |
| 11/1/2039 | 1,000.00 | | |
| 12/1/2039 | 1,000.00 | | |
| 1/1/2040 | 1,000.00 | | |
| 2/1/2040 | 1,000.00 | | |
| 3/1/2040 | 1,000.00 | | |
| 4/1/2040 | 1,000.00 | | |
| 5/1/2040 | 1,000.00 | | |
| 6/1/2040 | 1,000.00 | | |
| 7/1/2040 | 1,000.00 | | |
| 8/1/2040 | 900.00 | | |
| 9/1/2040 | 900.00 | | |
| 10/1/2040 | 900.00 | | |
| 11/1/2040 | 900.00 | | |
| 12/1/2040 | 900.00 | | |
| 1/1/2041 | 900.00 | | |
| 2/1/2041 | 900.00 | | |
| 3/1/2041 | 900.00 | | |
| 4/1/2041 | 900.00 | | |
| 5/1/2041 | 900.00 | | |
| 6/1/2041 | 900.00 | | |
| 7/1/2041 | 800.00 | | |
| 8/1/2041 | 800.00 | | |
| 9/1/2041 | 800.00 | | |
| 10/1/2041 | 800.00 | | |
| 11/1/2041 | 800.00 | | |
| 12/1/2041 | 800.00 | | |
| 1/1/2042 | 800.00 | | |
| | | | |
| | 2,282,400.00 | | |

**<u>Exhibit A-1</u>**

[Attached]

## WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY
### ECONOMIC DEVELOPMENT BOND,
### 2012 SERIES A

| Interest Rate | Maturity Date | Dated Date | CUSIP Number |
|---|---|---|---|
| See below | January 1, 2042 | January 3, 2022 | 976905 CH0 |

REGISTERED OWNER:  Wisconsin & Milwaukee Hotel Funding LLC

KNOW ALL MEN BY THESE PRESENTS THAT THE WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Wisconsin (the "Authority"), for value received, promises to pay, but solely from the source and as hereinafter provided and not otherwise, to the above named Registered Owner, or registered assigns, on the above specified Maturity Date, upon presentation and surrender of this 2012 Series A Bond, the principal sum specified above and to pay interest thereon, but solely from said source and as so provided and not otherwise, at a rate per annum equal to the Interest Rate described herein.

The 2012 Series A Bonds have been issued pursuant to and in full compliance with the Constitution and laws of the State of Wisconsin, particularly Section 234 of the Wisconsin Statutes, as amended (the "Act"), and by authority of resolutions adopted by the Authority's governing body, in particular the (i) General Resolution adopted on October 19, 2011, (ii) Supplemental Resolution Number 1 adopted on October 19, 2011 and (iii) Series Resolution of the Members Loan Committee adopted on July 24, 2012.  THE 2012 SERIES A BONDS ARE LIMITED OBLIGATIONS OF THE AUTHORITY.  THE AUTHORITY HAS NO TAXING POWER.  THE 2012 SERIES A BONDS SHALL NOT BE A DEBT OF THE STATE OF WISCONSIN, OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY STATE CONSTITUTIONAL PROVISION, STATUTORY LIMITATION OR CHARTER PROVISION NOR SHALL ANY OF THEM BE LIABLE THEREON.  THE 2012 SERIES A BONDS ARE NOT "MORAL OBLIGATIONS" OF THE STATE OF WISCONSIN.  THE 2012 SERIES A BONDS SHALL NOT IN ANY EVENT BE PAYABLE OUT OF ANY FUNDS OR PROPERTIES OTHER THAN THOSE OF THE AUTHORITY PLEDGED THERETO. SECTION 234.15 OF THE ACT DOES NOT APPLY TO THE 2012 SERIES A BONDS.  The principal of, premium, if any, and interest on the 2012 Series A Bonds are payable by the Authority solely from "Revenues."  Revenues means all revenues and income available to the Authority, including without limitation, all cash and securities held from time to time in the trust funds created under the Indenture (as hereinafter defined) and the investment earnings thereon.

Prior to the Initial Conversion Date, interest hereon (calculated on the basis of a 360-day year and the actual number of days elapsed) accrued through the end of the preceding month shall be payable (subject to deferral as provided in the Indenture) on the first Business Day of each month commencing February 1, 2022 and on each redemption date in respect hereto until payment of such principal sum, or, if this 2012 Series A Bond shall be duly called for redemption, until the redemption date. From and after the Initial Conversion Date, interest shall be payable as provided in the Indenture. The 2012 Series A Bonds shall bear interest at the rate per annum of 5.78% to the Initial Conversion Date. From and after the Initial Conversion Date, the 2012 Series A Bonds shall bear interest at the Variable Rate or, after a subsequent Conversion Date, at the Fixed Rate, all as provided in the Indenture; provided, however, that if the conditions in Section 4.2(a) of the Indenture are not satisfied on the Initial Conversion Date, the Series A Bonds shall continue to bear interest at the Fixed Rate. Upon and during the continuation of an Event of Default (as defined in the Indenture), the 2012 Series A Bonds shall bear interest at their stated rate plus 3.00 percent per annum. Overdue principal (to the extent legally enforceable) shall bear interest at the same rate per annum as was borne by this 2012 Series A Bond on the due date of the payment that is delinquent. The principal of, premium, if any, and interest on this 2012 Series A Bond are payable in lawful money of the United States of America at the principal corporate trust office of Computershare Trust Company, N.A, or its successor or successors, as trustee (the "Trustee"). Interest hereon which is payable, and punctually paid or duly provided for, on any interest payment date shall be paid by check drawn by the Trustee payable to the order of the person in whose name this 2012 Series A Bond is registered at the close of business on the record date for such interest, which shall be the fifteenth day of the calendar month immediately preceding such interest payment date and for interest payable on any redemption date which is not a regularly scheduled interest payment date shall be the day (whether or not a Business Day) next preceding such date. Such interest shall be mailed to such person at the address shown on the 2012 Series A Bond register kept by the Trustee. Notwithstanding the foregoing, for so long as the 2012 Series A Bonds are in a Book Entry System as provided in the Indenture, interest hereon shall be transmitted to the Registered Owner on the interest payment date by wire transfer in immediately available funds.

This 2012 Series A Bond is one of a duly authorized issue of 2012 Series A Bonds of the Authority, limited in initial aggregate principal amount to $32,737,600 (hereinafter referred to as the "2012 Series A Bonds"). The principal amount of this 2012 Series A Bond includes deferred interest added to the principal balance as provided in the Indenture. This 2012 Series A Bond is issued and authorized to be issued for the purpose of funding a loan to Wisconsin & Milwaukee Hotel Investment Fund, LLC.

The 2012 Series A Bonds are all issued under and are equally and ratably secured and entitled to the protection and benefits given by an Indenture of Trust, dated as of August 1, 2012, duly executed and delivered by the Authority to the Trustee (as supplemented and amended, the "Indenture"). Reference is hereby made to the Indenture and to all indentures supplemental thereto for a description of rights, duties and obligations of the Authority, the Trustee and the owners of the 2012 Series A Bonds.

The 2012 Series A Bonds are not subject to redemption except as provided herein and in the Indenture. Upon the direction of the Project Owner (as defined in the Indenture) (which direction shall be made in the event of a prepayment of the Series A Note, as defined in the

2

Indenture, but otherwise may be made by the Project Owner from any source of funds available), the 2012 Series A Bonds are subject to redemption in whole or in part on any business day at a redemption price of 100% of the principal amount of 2012 Series A Bonds so redeemed, plus accrued interest to the redemption date.

The 2012 Series A Bonds are subject to mandatory prepayment, without presentment, at the price of 100% of the principal amount of 2012 Series A Bonds so prepaid, plus accrued interest to the prepayment date, on the dates and in the amounts set forth in Schedule 1 of the Indenture.

The 2012 Series A Bonds shall be subject to redemption, in whole but not in part, on any Interest Payment Date if the Authority elects to redeem 2012 Series A Bonds after the occurrence of any of the following events:

(a)     The Project (as defined in the Indenture) shall have been damaged or destroyed to such extent that, (i) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction, or (ii) the Project Owner (as defined in the Indenture) is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months;

(b)     Title to or the temporary use of all or substantially all of the Project shall have been taken under the exercise of the power of eminent domain by any governmental authority to such extent that the Project Owner is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(c)     As a result of any changes in the Constitution of Wisconsin or the Constitution of the United States of America or of legislative or administrative action (whether state or federal) or by final decree, judgment or order of any court or administrative body (whether state or federal), the Series A Note (as defined in the Indenture) shall have become void or unenforceable or impossible of performance in accordance with the intent and purposes of the parties as expressed in the Series A Note, or unreasonable burdens or excessive liabilities shall have been imposed on the Authority or the Project Owner as a consequence of having the 2012 Series A Bonds or the Series A Note outstanding including without limitation federal, state or other ad valorem, property, income or other taxes not being imposed on the date of the Series A Note.

The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series A Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

The 2012 Series A Bonds shall be subject to mandatory redemption in whole on the earliest practicable Interest Payment Date (selected by the Trustee) within 60 days following a Determination of Taxability (as defined in the Indenture).  The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series A Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

Notice of the call for any redemption of the 2012 Series A Bonds prior to maturity shall be given by mailing a copy of the redemption notice by first-class mail not less than 30 nor more than 60 days prior to the redemption date to the registered owner of each 2012 Series A Bond to be redeemed at the address shown on the 2012 Series A Bond register maintained by the Trustee. Neither the failure to mail any such notice, nor any defect in any notice so mailed, with respect to

4847-6757-8868.3

any particular Bondowner shall affect the validity of any proceedings for redemption of any other 2012 Series A Bond. All 2012 Series A Bonds or portions thereof so called for redemption shall cease to bear interest on the specified redemption date and shall no longer be deemed to be outstanding under the provisions of the Indenture if Eligible Funds (as defined in the Indenture) available and sufficient for their redemption are on deposit at the place of payment at that time.

The 2012 Series A Bonds are subject to optional and mandatory tender for purchase on the dates and as otherwise as provided in the Indenture.

Except as provided in the Indenture, the owners of the 2012 Series A Bonds shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture, or to institute, appear in or defend any suit or other proceedings with respect thereto. In certain events, on the conditions, in the manner and with the effect set forth in the Indenture, the principal of all 2012 Series A Bonds issued under the Indenture and then outstanding may become or may be declared due and payable before the stated maturity thereof, together with interest accrued thereon. Amendments, modifications and alterations of the Indenture, or of any supplements thereto, may be made only to the extent and in the circumstances permitted by the Indenture.

**This 2012 Series A Bond shall be fully negotiable, but may be transferred only to an "Accredited Investor," as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, by a written assignment duly executed by the registered owner hereof or by such owner's duly authorized legal representative.** Upon presentation and surrender of this 2012 Series A Bond together with said executed form of assignment at the principal corporate trust office of the Trustee, the Trustee shall register the transfer of this 2012 Series A Bond in the 2012 Series A Bond register maintained by the Trustee; provided, however, that the Trustee shall have no obligation to register the transfer unless the executed assignment shall be satisfactory to it in form and substance. Upon registration of the transfer of this 2012 Series A Bond, the Trustee shall cancel this 2012 Series A Bond, and the Authority shall issue, and the Trustee shall authenticate, one or more new 2012 Series A Bonds of authorized denominations of the same maturity and interest rate and in the same aggregate outstanding principal amount as this 2012 Series A Bond. The Authority and the Trustee may deem and treat the registered owner hereof as the absolute owner hereof for the purpose of receiving payment of or on account of the principal of, premium, if any, and interest due hereon and for all other purposes, and neither the Authority, nor the Trustee nor any alternate paying agent shall be affected by any notice to the contrary.

The 2012 Series A Bonds are issuable in the form of fully registered bonds in the denominations of $100 or any multiple thereof. In the manner and subject to the conditions provided in the Indenture, 2012 Series A Bonds, upon surrender thereof at the principal corporate trust office of the Trustee together with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or such owner's duly authorized legal representative, may be exchanged for an equal outstanding aggregate principal amount of 2012 Series A Bonds of the same maturities and interest rates of any authorized denomination. The Trustee shall not be required to register the transfer or to exchange any 2012 Series A Bond (i) during the fifteen days prior to the mailing of notice of any redemption, or (ii) after such 2012 Series A Bond has been called for redemption. The Bondowner requesting any registration of transfer or exchange of 2012 Series A Bonds shall pay with respect thereto any resulting tax or governmental charge. All such

4847-6757-8868.3

payments shall be conditions precedent to the exercise of the Bondowner's rights of registration of transfer or exchange.

The provisions of the two immediately preceding paragraphs are subject to the provisions of the Indenture regarding the maintenance of a Book Entry System for the 2012 Series A Bonds.

This 2012 Series A Bond replaces that certain 2012 Series A Bond numbered R-2 and dated October 1, 2015 (the "Replaced Bond"). The indebtedness evidenced by the Replaced Bond has not been extinguished and no novation has occurred.

IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required to exist, happen and be performed precedent to and in the execution and delivery of the Indenture and the issuance of this 2012 Series A Bond do exist, have happened and have been performed in due time, form and manner as required by law, and that the issuance of this 2012 Series A Bond and the issue of which it forms a part has been duly authorized by the Authority and does not exceed or violate any constitutional or statutory limitation. This 2012 Series A Bond is issued with the intent that the laws of the State of Wisconsin will govern its construction. This 2012 Series A Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Indenture until the certificate of authentication hereon shall have been signed by the Trustee.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the Authority has caused this 2012 Series A Bond to be executed in its name by the manual or facsimile signature of an Authorized Officer of the Authority and attested by its Assistant Secretary and its corporate seal to be hereunto affixed, impressed, imprinted or otherwise reproduced.

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY

By:_____

Its:    Interim Executive Director

[SEAL]

Attest:_____

Its:    Assistant Secretary

Registrar, Paying Agent and
Tender Agent:                              Computershare Trust Company, N.A

Certificate of Authentication:

Dated: _____, 2022

This 2012 Series A Bond is one of the 2012 Series A Bonds described in the within-mentioned Indenture of Trust.

COMPUTERSHARE TRUST COMPANY, N.A, as trustee

By:_____

Authorized Signatory

[Signature Page to 2012 Series A Bond]

4847-6757-8868.3

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR
OTHER IDENTIFYING NUMBER OF ASSIGNEE

| |
|---|
| |

_____

_____

(Please Print or Type Name and Address of Assignee)

the within-mentioned 2012 Series A Bond and all rights thereunder and does hereby irrevocably constitute and appoint _____ attorney-in-fact, to transfer the same on the books of the registry in the office of the Trustee, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____

NOTICE: Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in the Securities Transfer Association Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

_____

Note: The signature to this assignment must correspond with the name as written on the face of the within Bond in every particular, without alteration or enlargement or change whatsoever. When assignment is made by a guardian, trustee, executor or administrator, an officer of a corporation, or anyone in a representative capacity, proof of such person's authority to act must accompany this 2012 Series A Bond.

7

4847-6757-8868.3

**Exhibit A-2**

[Attached]

REGISTERED        UNITED STATES OF AMERICA        REGISTERED
STATE OF WISCONSIN

NO. R-3                                                   $2,393,985.18

## WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY
## ECONOMIC DEVELOPMENT BOND,
## 2012 SERIES B

| Interest Rate | Maturity Date | Dated Date | CUSIP Number |
|---|---|---|---|
| See below | January 1, 2042 | January 3, 2022 | 976905 CJ6 |

REGISTERED OWNER: Wisconsin & Milwaukee Hotel Funding LLC

KNOW ALL MEN BY THESE PRESENTS THAT THE WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Wisconsin (the "Authority"), for value received, promises to pay, but solely from the source and as hereinafter provided and not otherwise, to the above named Registered Owner, or registered assigns, on the above specified Maturity Date, upon presentation and surrender of this 2012 Series B Bond, the principal sum specified above and to pay interest thereon, but solely from said source and as so provided and not otherwise, at a rate per annum equal to the Interest Rate described herein.

The 2012 Series B Bonds have been issued pursuant to and in full compliance with the Constitution and laws of the State of Wisconsin, particularly Section 234 of the Wisconsin Statutes, as amended (the "Act"), and by authority of resolutions adopted by the Authority's governing body, in particular the (i) General Resolution adopted on October 19, 2011, (ii) Supplemental Resolution Number 1 adopted on October 19, 2011 and (iii) Series Resolution of the Members Loan Committee adopted on July 24, 2012. THE 2012 SERIES B BONDS ARE LIMITED OBLIGATIONS OF THE AUTHORITY. THE AUTHORITY HAS NO TAXING POWER. THE 2012 SERIES B BONDS SHALL NOT BE A DEBT OF THE STATE OF WISCONSIN, OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY STATE CONSTITUTIONAL PROVISION, STATUTORY LIMITATION OR CHARTER PROVISION NOR SHALL ANY OF THEM BE LIABLE THEREON. THE 2012 SERIES B BONDS ARE NOT "MORAL OBLIGATIONS" OF THE STATE OF WISCONSIN. THE 2012 SERIES B BONDS SHALL NOT IN ANY EVENT BE PAYABLE OUT OF ANY FUNDS OR PROPERTIES OTHER THAN THOSE OF THE AUTHORITY PLEDGED THERETO. SECTION 234.15 OF THE ACT DOES NOT APPLY TO THE 2012 SERIES B BONDS. The principal of, premium, if any, and interest on the 2012 Series B Bonds are payable by the Authority solely from "Revenues." Revenues means all revenues and income available to the Authority, including without limitation, all cash and securities held from time to time in the trust funds created under the Indenture (as hereinafter defined) and the investment earnings thereon.

4814-9110-6804.3

Prior to the Initial Conversion Date, interest hereon (calculated on the basis of a 365 or 366-day year, as the case may be, and the actual number of days elapsed) accrued through the end of the preceding month shall be payable (subject to deferral as provided in the Indenture) on the first Business Day of each month commencing February 1, 2022 and on each redemption date in respect hereto until payment of such principal sum, or, if this 2012 Series B Bond shall be duly called for redemption, until the redemption date. From and after the Initial Conversion Date, interest shall be payable as provided in the Indenture. The 2012 Series B Bonds shall bear interest at the rate per annum of 4.125% to the Initial Conversion Date. From and after the Initial Conversion Date, the 2012 Series B Bonds shall bear interest at the Variable Rate or, after a subsequent Conversion Date, at the Fixed Rate, all as provided in the Indenture; provided, however, that if the conditions in Section 4.2(a) of the Indenture are not satisfied on the Initial Conversion Date, the Series B Bonds shall continue to bear interest at the Fixed Rate. Upon and during the continuation of an Event of Default (as defined in the Indenture), the 2012 Series B Bonds shall bear interest at their stated rate plus 3.00 percent per annum. Overdue principal (to the extent legally enforceable) shall bear interest at the same rate per annum as was borne by this 2012 Series B Bond on the due date of the payment that is delinquent. The principal of, premium, if any, and interest on this 2012 Series B Bond are payable in lawful money of the United States of America at the principal corporate trust office of Computershare Trust Company, N.A., or its successor or successors, as trustee (the "Trustee"). Interest hereon which is payable, and punctually paid or duly provided for, on any interest payment date shall be paid by check drawn by the Trustee payable to the order of the person in whose name this 2012 Series B Bond is registered at the close of business on the record date for such interest, which shall be the fifteenth day of the calendar month immediately preceding such interest payment date and for interest payable on any redemption date which is not a regularly scheduled interest payment date shall be the day (whether or not a Business Day) next preceding such date. Such interest shall be mailed to such person at the address shown on the 2012 Series B Bond register kept by the Trustee. Notwithstanding the foregoing, for so long as the 2012 Series B Bonds are in a Book Entry System as provided in the Indenture, interest hereon shall be transmitted to the Registered Owner on the interest payment date by wire transfer in immediately available funds.

This 2012 Series B Bond is one of a duly authorized issue of 2012 Series B Bonds of the Authority, limited in initial aggregate principal amount to $2,262,400 (hereinafter referred to as the "2012 Series B Bonds"). The principal amount of this 2012 Series B Bond includes deferred interest added to the principal balance as provided in the Indenture. This 2012 Series B Bond is issued and authorized to be issued for the purpose of funding a loan to Wisconsin & Milwaukee Hotel LLC.

The 2012 Series B Bonds are all issued under and are equally and ratably secured and entitled to the protection and benefits given by an Indenture of Trust, dated as of August 1, 2012, duly executed and delivered by the Authority to the Trustee (as supplemented and amended, the "Indenture"). Reference is hereby made to the Indenture and to all indentures supplemental thereto for a description of rights, duties and obligations of the Authority, the Trustee and the owners of the 2012 Series B Bonds.

The 2012 Series B Bonds are not subject to redemption except as provided herein and in the Indenture. Upon the direction of the Project Owner (as defined in the Indenture) (which direction shall be made in the event of a prepayment of the Series B Note, as defined in the

4814-9110-6804.3

Indenture, but otherwise may be made by the Project Owner from any source of funds available), the 2012 Series B Bonds are subject to redemption in whole or in part on any business day at a redemption price of 100% of the principal amount of 2012 Series B Bonds so redeemed, plus accrued interest to the redemption date.

The 2012 Series B Bonds are subject to mandatory prepayment, without presentment, at the price of 100% of the principal amount of 2012 Series B Bonds so prepaid, plus accrued interest to the prepayment date, on the dates and in the amounts set forth in Schedule 1 of the Indenture.

The 2012 Series B Bonds shall be subject to redemption, in whole but not in part, on any Interest Payment Date, if the Authority elects to redeem 2012 Series B Bonds after the occurrence of any of the following events:

(a)     The Project (as defined in the Indenture) shall have been damaged or destroyed to such extent that, (i) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction, or (ii) the Project Owner (as defined in the Indenture) is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months;

(b)     Title to or the temporary use of all or substantially all of the Project shall have been taken under the exercise of the power of eminent domain by any governmental authority to such extent that the Project Owner is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(c)     As a result of any changes in the Constitution of Wisconsin or the Constitution of the United States of America or of legislative or administrative action (whether state or federal) or by final decree, judgment or order of any court or administrative body (whether state or federal), the Series B Note (as defined in the Indenture) shall have become void or unenforceable or impossible of performance in accordance with the intent and purposes of the parties as expressed in the Series B Note, or unreasonable burdens or excessive liabilities shall have been imposed on the Authority or the Project Owner as a consequence of having the 2012 Series B Bonds or the Series B Note outstanding including without limitation federal, state or other ad valorem, property, income or other taxes not being imposed on the date of the Series B Note.

The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series B Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

The 2012 Series B Bonds shall be subject to mandatory redemption in whole on the earliest practicable Interest Payment Date (selected by the Trustee) within 60 days following a Determination of Taxability (as defined in the Indenture).  The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series B Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

Notice of the call for any redemption of the 2012 Series B Bonds prior to maturity shall be given by mailing a copy of the redemption notice by first-class mail not less than 30 nor more than 60 days prior to the redemption date to the registered owner of each 2012 Series B Bond to be redeemed at the address shown on the 2012 Series B Bond register maintained by the Trustee. Neither the failure to mail any such notice, nor any defect in any notice so mailed, with respect to

3

any particular Bondowner shall affect the validity of any proceedings for redemption of any other 2012 Series B Bond. All 2012 Series B Bonds or portions thereof so called for redemption shall cease to bear interest on the specified redemption date and shall no longer be deemed to be outstanding under the provisions of the Indenture if Eligible Funds (as defined in the Indenture) available and sufficient for their redemption are on deposit at the place of payment at that time.

The 2012 Series B Bonds are subject to optional and mandatory tender for purchase on the dates and as otherwise as provided in the Indenture.

Except as provided in the Indenture, the owners of the 2012 Series B Bonds shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture, or to institute, appear in or defend any suit or other proceedings with respect thereto. In certain events, on the conditions, in the manner and with the effect set forth in the Indenture, the principal of all 2012 Series B Bonds issued under the Indenture and then outstanding may become or may be declared due and payable before the stated maturity thereof, together with interest accrued thereon. Amendments, modifications and alterations of the Indenture, or of any supplements thereto, may be made only to the extent and in the circumstances permitted by the Indenture.

**This 2012 Series B Bond shall be fully negotiable, but may be transferred only to an "Accredited Investor," as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, by a written assignment duly executed by the registered owner hereof or by such owner's duly authorized legal representative.** Upon presentation and surrender of this 2012 Series B Bond together with said executed form of assignment at the principal corporate trust office of the Trustee, the Trustee shall register the transfer of this 2012 Series B Bond in the 2012 Series B Bond register maintained by the Trustee; provided, however, that the Trustee shall have no obligation to register the transfer unless the executed assignment shall be satisfactory to it in form and substance. Upon registration of the transfer of this 2012 Series B Bond, the Trustee shall cancel this 2012 Series B Bond, and the Authority shall issue, and the Trustee shall authenticate, one or more new 2012 Series B Bonds of authorized denominations of the same maturity and interest rate and in the same aggregate outstanding principal amount as this 2012 Series B Bond. The Authority and the Trustee may deem and treat the registered owner hereof as the absolute owner hereof for the purpose of receiving payment of or on account of the principal of, premium, if any, and interest due hereon and for all other purposes, and neither the Authority, nor the Trustee nor any alternate paying agent shall be affected by any notice to the contrary.

The 2012 Series B Bonds are issuable in the form of fully registered bonds in the denominations of $100 or any multiple thereof. In the manner and subject to the conditions provided in the Indenture, 2012 Series B Bonds, upon surrender thereof at the principal corporate trust office of the Trustee together with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or such owner's duly authorized legal representative, may be exchanged for an equal outstanding aggregate principal amount of 2012 Series B Bonds of the same maturities and interest rates of any authorized denomination. The Trustee shall not be required to register the transfer or to exchange any 2012 Series B Bond (i) during the fifteen days prior to the mailing of notice of any redemption, or (ii) after such 2012 Series B Bond has been called for redemption. The Bondowner requesting any registration of transfer or exchange of 2012 Series B Bonds shall pay with respect thereto any resulting tax or governmental charge. All such

4

payments shall be conditions precedent to the exercise of the Bondowner's rights of registration of transfer or exchange.

The provisions of the two immediately preceding paragraphs are subject to the provisions of the Indenture regarding the maintenance of a Book Entry System for the 2012 Series B Bonds.

This 2012 Series B Bond replaces that certain 2012 Series B Bond numbered R-2 and dated October 1, 2015 (the "Replaced Bond"). The indebtedness evidenced by the Replaced Bond has not been extinguished and no novation has occurred.

IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required to exist, happen and be performed precedent to and in the execution and delivery of the Indenture and the issuance of this 2012 Series B Bond do exist, have happened and have been performed in due time, form and manner as required by law, and that the issuance of this 2012 Series B Bond and the issue of which it forms a part has been duly authorized by the Authority and does not exceed or violate any constitutional or statutory limitation. This 2012 Series B Bond is issued with the intent that the laws of the State of Wisconsin will govern its construction. This 2012 Series B Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Indenture until the certificate of authentication hereon shall have been signed by the Trustee.

[Remainder of page intentionally left blank]

4814-9110-6804.3

IN WITNESS WHEREOF, the Authority has caused this 2012 Series B Bond to be executed in its name by the manual or facsimile signature of an Authorized Officer of the Authority and attested by its Assistant Secretary and its corporate seal to be hereunto affixed, impressed, imprinted or otherwise reproduced.

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY

By:_____
Its:    Interim Executive Director

[SEAL]

Attest:_____
Its:    Assistant Secretary

Registrar, Paying Agent and
Tender Agent:                    Computershare Trust Company, N.A

Certificate of Authentication:

Dated: _____, 2022

This 2012 Series B Bond is one of the 2012 Series B Bonds described in the within-mentioned Indenture of Trust.

COMPUTERSHARE TRUST COMPANY, N.A, as
trustee

By:_____
    Authorized Signatory

[Signature Page to 2012 Series B Bond]

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR
OTHER IDENTIFYING NUMBER OF ASSIGNEE

|  |
| --- |

_____
_____
(Please Print or Type Name and Address of Assignee)

the within-mentioned 2012 Series B Bond and all rights thereunder and does hereby irrevocably constitute and appoint _____ attorney-in-fact, to transfer the same on the books of the registry in the office of the Trustee, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____

NOTICE: Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in the Securities Transfer Association Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

Note: The signature to this assignment must correspond with the name as written on the face of the within Bond in every particular, without alteration or enlargement or change whatsoever. When assignment is made by a guardian, trustee, executor or administrator, an officer of a corporation, or anyone in a representative capacity, proof of such person's authority to act must accompany this 2012 Series B Bond.

7

**Exhibit A-3**

[Attached]

REGISTERED             UNITED STATES OF AMERICA           REGISTERED
                        STATE OF WISCONSIN

NO. R-3                                               $7,909,905.90

## WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY
## ECONOMIC DEVELOPMENT BOND,
## 2012 SERIES C

| Interest Rate | Maturity Date | Dated Date | CUSIP Number |
|---|---|---|---|
| See below | January 1, 2042 | January 3, 2022 | 976905 CK3 |

REGISTERED OWNER:  Wisconsin & Milwaukee Hotel Funding LLC

KNOW ALL MEN BY THESE PRESENTS THAT THE WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Wisconsin (the "Authority"), for value received, promises to pay, but solely from the source and as hereinafter provided and not otherwise, to the above named Registered Owner, or registered assigns, on the above specified Maturity Date, upon presentation and surrender of this 2012 Series C Bond, the principal sum specified above and to pay interest thereon, but solely from said source and as so provided and not otherwise, at a rate per annum equal to the Interest Rate described herein.

The 2012 Series C Bonds have been issued pursuant to and in full compliance with the Constitution and laws of the State of Wisconsin, particularly Section 234 of the Wisconsin Statutes, as amended (the "Act"), and by authority of resolutions adopted by the Authority's governing body, in particular the (i) General Resolution adopted on October 19, 2011, (ii) Supplemental Resolution Number 1 adopted on October 19, 2011 and (iii) Series Resolution of the Members Loan Committee adopted on July 24, 2012.  THE 2012 SERIES C BONDS ARE LIMITED OBLIGATIONS OF THE AUTHORITY.  THE AUTHORITY HAS NO TAXING POWER.  THE 2012 SERIES C BONDS SHALL NOT BE A DEBT OF THE STATE OF WISCONSIN, OR ANY POLITICAL SUBDIVISION THEREOF WITHIN THE MEANING OF ANY STATE CONSTITUTIONAL PROVISION, STATUTORY LIMITATION OR CHARTER PROVISION NOR SHALL ANY OF THEM BE LIABLE THEREON.  THE 2012 SERIES C BONDS ARE NOT "MORAL OBLIGATIONS" OF THE STATE OF WISCONSIN.  THE 2012 SERIES C BONDS SHALL NOT IN ANY EVENT BE PAYABLE OUT OF ANY FUNDS OR PROPERTIES OTHER THAN THOSE OF THE AUTHORITY PLEDGED THERETO. SECTION 234.15 OF THE ACT DOES NOT APPLY TO THE 2012 SERIES C BONDS.  The principal of, premium, if any, and interest on the 2012 Series C Bonds are payable by the Authority solely from "Revenues."  Revenues means all revenues and income available to the Authority, including without limitation, all cash and securities held from time to time in the trust funds created under the Indenture (as hereinafter defined) and the investment earnings thereon.

4811-6054-3220.3

Prior to the Initial Conversion Date, interest hereon (calculated on the basis of a 365 or 366-day year, as the case may be, and the actual number of days elapsed) accrued through the end of the preceding month shall be payable (subject to deferral as provided in the Indenture) on the first Business Day of each month commencing February 1, 2022 and on each redemption date in respect hereto until payment of such principal sum, or, if this 2012 Series C Bond shall be duly called for redemption, until the redemption date. From and after the Initial Conversion Date, interest shall be payable as provided in the Indenture. The 2012 Series C Bonds shall bear interest at the rate per annum of 4.125% to the Initial Conversion Date. From and after the Initial Conversion Date, the 2012 Series C Bonds shall bear interest at the Variable Rate or, after a subsequent Conversion Date, at the Fixed Rate, all as provided in the Indenture; provided, however, that if the conditions in Section 4.2(a) of the Indenture are not satisfied on the Initial Conversion Date, the Series C Bonds shall continue to bear interest at the Fixed Rate. Upon and during the continuation of an Event of Default (as defined in the Indenture), the 2012 Series C Bonds shall bear interest at their stated rate plus 3.00 percent per annum. Overdue principal (to the extent legally enforceable) shall bear interest at the same rate per annum as was borne by this 2012 Series C Bond on the due date of the payment that is delinquent. The principal of, premium, if any, and interest on this 2012 Series C Bond are payable in lawful money of the United States of America at the principal corporate trust office of Computershare Trust Company, N.A., or its successor or successors, as trustee (the "Trustee"). Interest hereon which is payable, and punctually paid or duly provided for, on any interest payment date shall be paid by check drawn by the Trustee payable to the order of the person in whose name this 2012 Series C Bond is registered at the close of business on the record date for such interest, which shall be the fifteenth day of the calendar month immediately preceding such interest payment date and for interest payable on any redemption date which is not a regularly scheduled interest payment date shall be the day (whether or not a Business Day) next preceding such date. Such interest shall be mailed to such person at the address shown on the 2012 Series C Bond register kept by the Trustee. Notwithstanding the foregoing, for so long as the 2012 Series C Bonds are in a Book Entry System as provided in the Indenture, interest hereon shall be transmitted to the Registered Owner on the interest payment date by wire transfer in immediately available funds.

This 2012 Series C Bond is one of a duly authorized issue of 2012 Series C Bonds of the Authority, limited in initial aggregate principal amount to $7,500,000 (hereinafter referred to as the "2012 Series C Bonds"). The principal amount of this 2012 Series C Bond includes deferred interest added to the principal balance as provided in the Indenture. This 2012 Series C Bond is issued and authorized to be issued for the purpose of funding a loan to Wisconsin & Milwaukee Hotel LLC.

The 2012 Series C Bonds are all issued under and are equally and ratably secured and entitled to the protection and benefits given by an Indenture of Trust, dated as of August 1, 2012, duly executed and delivered by the Authority to the Trustee (as supplemented and amended, the "Indenture"). Reference is hereby made to the Indenture and to all indentures supplemental thereto for a description of rights, duties and obligations of the Authority, the Trustee and the owners of the 2012 Series C Bonds.

**As provided in the Indenture, upon an Event of Default (as defined in the Indenture), available funds are to be applied first to payment of principal of, interest on and premium,**

**if any, on the 2012 Series A Bonds and the 2012 Series B Bonds issued under the Indenture prior to application to the 2012 Series C Bonds.**

The 2012 Series C Bonds are not subject to redemption except as provided herein and in the Indenture. Upon the direction of the Project Owner (as defined in the Indenture) (which direction shall be made in the event of a prepayment of the Series C Note, as defined in the Indenture, but otherwise may be made by the Project Owner from any source of funds available), the 2012 Series C Bonds are subject to redemption in whole or in part on any business day at a redemption price of 100% of the principal amount of 2012 Series C Bonds so redeemed, plus accrued interest to the redemption date.

The 2012 Series C Bonds are subject to mandatory prepayment, without presentment, at the price of 100% of the principal amount of 2012 Series C Bonds so prepaid, plus accrued interest to the prepayment date, on the dates and in the amounts set forth in Schedule 1 to the Indenture.

The 2012 Series C Bonds shall be subject to redemption, in whole but not in part, on any Interest Payment Date, if the Authority elects to redeem 2012 Series C Bonds after the occurrence of any of the following events:

(a)     The Project (as defined in the Indenture) shall have been damaged or destroyed to such extent that, (i) it is not practicable or desirable to rebuild, repair or restore the Project within a period of six consecutive months following such damage or destruction, or (ii) the Project Owner (as defined in the Indenture) is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months;

(b)     Title to or the temporary use of all or substantially all of the Project shall have been taken under the exercise of the power of eminent domain by any governmental authority to such extent that the Project Owner is or will be thereby prevented from carrying on its normal operations at the Project for a period of at least six consecutive months; or

(c)     As a result of any changes in the Constitution of Wisconsin or the Constitution of the United States of America or of legislative or administrative action (whether state or federal) or by final decree, judgment or order of any court or administrative body (whether state or federal), the Series C Note (as defined in the Indenture) shall have become void or unenforceable or impossible of performance in accordance with the intent and purposes of the parties as expressed in the Series C Note, or unreasonable burdens or excessive liabilities shall have been imposed on the Authority or the Project Owner as a consequence of having the 2012 Series C Bonds or the Series C Note outstanding including without limitation federal, state or other ad valorem, property, income or other taxes not being imposed on the date of the Series C Note.

The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series C Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

The 2012 Series C Bonds shall be subject to mandatory redemption in whole on the earliest practicable Interest Payment Date (selected by the Trustee) within 60 days following a Determination of Taxability (as defined in the Indenture). The redemption price for any such redemption shall be 100% of the principal amount of 2012 Series C Bonds so redeemed, plus accrued interest to the redemption date, and without premium.

3

4811-6054-3220.3

Notice of the call for any redemption of the 2012 Series C Bonds prior to maturity shall be given by mailing a copy of the redemption notice by first-class mail not less than 30 nor more than 60 days prior to the redemption date to the registered owner of each 2012 Series C Bond to be redeemed at the address shown on the 2012 Series C Bond register maintained by the Trustee. Neither the failure to mail any such notice, nor any defect in any notice so mailed, with respect to any particular Bondowner shall affect the validity of any proceedings for redemption of any other 2012 Series C Bond. All 2012 Series C Bonds or portions thereof so called for redemption shall cease to bear interest on the specified redemption date and shall no longer be deemed to be outstanding under the provisions of the Indenture if Eligible Funds (as defined in the Indenture) available and sufficient for their redemption are on deposit at the place of payment at that time.

The 2012 Series C Bonds are subject to optional and mandatory tender for purchase on the dates and as otherwise as provided in the Indenture.

Except as provided in the Indenture, the owners of the 2012 Series C Bonds shall have no right to enforce the provisions of the Indenture or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Indenture, or to institute, appear in or defend any suit or other proceedings with respect thereto. In certain events, on the conditions, in the manner and with the effect set forth in the Indenture, the principal of all 2012 Series C Bonds issued under the Indenture and then outstanding may become or may be declared due and payable before the stated maturity thereof, together with interest accrued thereon. Amendments, modifications and alterations of the Indenture, or of any supplements thereto, may be made only to the extent and in the circumstances permitted by the Indenture.

**This 2012 Series C Bond shall be fully negotiable, but may be transferred only to an "Accredited Investor," as defined in Rule 501 of Regulation D promulgated under the Securities Act of 1933, by a written assignment duly executed by the registered owner hereof or by such owner's duly authorized legal representative.** Upon presentation and surrender of this 2012 Series C Bond together with said executed form of assignment at the principal corporate trust office of the Trustee, the Trustee shall register the transfer of this 2012 Series C Bond in the 2012 Series C Bond register maintained by the Trustee; provided, however, that the Trustee shall have no obligation to register the transfer unless the executed assignment shall be satisfactory to it in form and substance. Upon registration of the transfer of this 2012 Series C Bond, the Trustee shall cancel this 2012 Series C Bond, and the Authority shall issue, and the Trustee shall authenticate, one or more new 2012 Series C Bonds of authorized denominations of the same maturity and interest rate and in the same aggregate outstanding principal amount as this 2012 Series C Bond. The Authority and the Trustee may deem and treat the registered owner hereof as the absolute owner hereof for the purpose of receiving payment of or on account of the principal of, premium, if any, and interest due hereon and for all other purposes, and neither the Authority, nor the Trustee nor any alternate paying agent shall be affected by any notice to the contrary.

The 2012 Series C Bonds are issuable in the form of fully registered bonds in the denominations of $100 or any multiple thereof. In the manner and subject to the conditions provided in the Indenture, 2012 Series C Bonds, upon surrender thereof at the principal corporate trust office of the Trustee together with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or such owner's duly authorized legal representative, may be exchanged for an equal outstanding aggregate principal amount of 2012 Series C Bonds of the

4

4811-6054-3220.3

same maturities and interest rates of any authorized denomination. The Trustee shall not be required to register the transfer or to exchange any 2012 Series C Bond (i) during the fifteen days prior to the mailing of notice of any redemption, or (ii) after such 2012 Series C Bond has been called for redemption. The Bondowner requesting any registration of transfer or exchange of 2012 Series C Bonds shall pay with respect thereto any resulting tax or governmental charge. All such payments shall be conditions precedent to the exercise of the Bondowner's rights of registration of transfer or exchange.

The provisions of the two immediately preceding paragraphs are subject to the provisions of the Indenture regarding the maintenance of a Book Entry System for the 2012 Series C Bonds.

This 2012 Series C Bond replaces that certain 2012 Series C Bond numbered R-2 and dated October 1, 2015 (the "Replaced Bond"). The indebtedness evidenced by the Replaced Bond has not been extinguished and no novation has occurred.

IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required to exist, happen and be performed precedent to and in the execution and delivery of the Indenture and the issuance of this 2012 Series C Bond do exist, have happened and have been performed in due time, form and manner as required by law, and that the issuance of this 2012 Series C Bond and the issue of which it forms a part has been duly authorized by the Authority and does not exceed or violate any constitutional or statutory limitation. This 2012 Series C Bond is issued with the intent that the laws of the State of Wisconsin will govern its construction. This 2012 Series C Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Indenture until the certificate of authentication hereon shall have been signed by the Trustee.

[Remainder of page intentionally left blank]

4811-6054-3220.3

IN WITNESS WHEREOF, the Authority has caused this 2012 Series C Bond to be executed in its name by the manual or facsimile signature of an Authorized Officer of the Authority and attested by its Assistant Secretary and its corporate seal to be hereunto affixed, impressed, imprinted or otherwise reproduced.

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY

By:_____

Its:     Interim Executive Director

[SEAL]

Attest:_____

Its:     Assistant Secretary

Registrar, Paying Agent and
Tender Agent:                             Computershare Trust Company, N.A.

Certificate of Authentication:

Dated: _____, 2022

This 2012 Series C Bond is one of the 2012 Series C Bonds described in the within-mentioned Indenture of Trust.

COMPUTERSHARE TRUST COMPANY, N.A.,
as trustee

By:_____

Authorized Signatory

## ASSIGNMENT

For value received, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR
OTHER IDENTIFYING NUMBER OF ASSIGNEE

|  |
|---|

_____

_____

(Please Print or Type Name and Address of Assignee)

the within-mentioned 2012 Series C Bond and all rights thereunder and does hereby irrevocably constitute and appoint _____ attorney-in-fact, to transfer the same on the books of the registry in the office of the Trustee, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed

_____

| NOTICE: Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in the Securities Transfer Association Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended. | Note:  The signature to this assignment must correspond with the name as written on the face of the within Bond in every particular, without alteration or enlargement or change whatsoever.  When assignment is made by a guardian, trustee, executor or administrator, an officer of a corporation, or anyone in a representative capacity, proof of such person's authority to act must accompany this 2012 Series C Bond. |

7

4811-6054-3220.3

**Exhibit B**

[Attached]

## THIRD AMENDMENT TO LOAN AGREEMENT

THIS THIRD AMENDMENT TO LOAN AGREEMENT (this "Amendment"), dated as of January 3, 2022, amends and supplements that certain Loan Agreement dated as of August 31, 2012 (as heretofore amended, the "Loan Agreement"), between WISCONSIN & MILWAUKEE HOTEL LLC, a Wisconsin limited liability company ("Borrower"), and WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a Wisconsin public body corporate and politic duly created ("Lender").

### RECITAL

Borrower and Lender desire to amend and supplement the Loan Agreement as provided below.

### AGREEMENTS

In consideration of the promises and agreements set forth in the Loan Agreement, the parties agree as follows, subject to fulfillment of the conditions specified in Section 4 below:

1. <u>Definitions and References</u>.  Capitalized terms not otherwise defined herein have the meanings assigned in the Loan Agreement.  All references to the Loan Agreement contained in the Loan Documents shall mean the Loan Agreement as previously supplemented and amended and as amended by this Amendment.

2. <u>Acknowledgment of Deferred Payments; Waiver of Events of Default</u>. Borrower and Lender acknowledge that, due to the lack of cash flows from the Project (i) the Loan was not prepaid on December 31, 2020 as provided in Section 2.7 of the Loan Agreement and (ii) multiple payments due prior to the date hereof with respect to the Notes were not made.  As of January 3, 2022 (and taking into account payments required to be made on or about the date hereof pursuant to the Covenant Agreement), the outstanding principal balances of the Notes were as follows:

      (a)    Series A Note:  principal of $32,737,600 plus accrued and capitalized interest of $1,927,076.02 (such accrued interest amount calculated net of accrued participation payments pursuant to that certain Bond Participation Agreement dated October 30, 2015 between Wisconsin & Milwaukee Hotel Funding LLC and Jackson Street Management LLC, which are deemed to have been paid), for a new principal balance of $34,664,676.02;

      (b)    Series B Note:  principal of $2,262,400 plus accrued and capitalized interest of $131,585.18, for a new principal balance of $2,393,985.18; and

      (c)    Series C Note:  principal of $7,500,000 plus accrued and capitalized interest of $409,905.90, for a new principal balance of $7,909,905.90.

Notwithstanding Section 6.1 of the Loan Agreement, the failure to make such payments or the failure to comply with any provisions of the Loan Agreement revised (or removed)

by this Amendment, to the extent the Borrower is in compliance with such provisions as revised by this Amendment (or such provisions are removed by this Amendment), shall not be an Event of Default, and interest accrued from and after the date of any such failure shall not (unless an Event of Default occurs after the date hereof) be computed at the Default Rate. Any Event of Default heretofore arising from any such failure is hereby waived.

3. <u>Amendments to Loan Agreement</u>. The Loan Agreement is amended as follows:

(a) Section 1.1 of the Loan Agreement is amended by adding the following definitions, to appear in alphabetical order:

"**Capitalization Date**" has the meaning assigned to such term in Section 1.1 of the Indenture.

"**Covenant Agreement**" means that certain Covenant Agreement dated as of the Capitalization Date among the Borrower, JSM and FPP, as amended or otherwise modified from time to time.

"**Current Pay Rate**" means (i) for the period from the Capitalization Date to March 31, 2022, the rate of 2% per annum, and (ii) thereafter, (a) with respect to the Series A Note, 5.25% and (b) with respect to the Series B Note and the Series C Note, 3.625% per annum.

"**Deferred Interest**" means interest accrued and unpaid on the Notes (a) on and after the Capitalization Date but prior to January 1, 2022, and (b) on and after January 1, 2022 but prior to the Initial Conversion Date to the extent it exceeds the amount required to be paid on any Interest Payment Date as provided in Section 2.4.

"**FPP**" Wisconsin & Milwaukee & Hotel Funding LLC, a Wisconsin limited liability company.

"**Initial Conversion Date**" has the meaning assigned to such term in Section 1.1 of the Indenture.

"**JSM**" Jackson Street Management LLC, a Wisconsin limited liability company.

"**Subordinated Debt**" mean indebtedness and obligations outstanding as of January 3, 2022 and subject to that certain Subordination Agreement dated as of January 3, 2022 from JSM and certain of its affiliates to and for the benefit of the Lender and the Bondowner.

(b) The definition of the term "Management Agreement" in Section 1.1 of the Loan Agreement is amended and restated in its entirety to read as follows:

"**Management Agreement**" means the Management Agreement dated June 14, 2011, between Borrower and White Lodging Services Corporation, an Indiana corporation, as amended pursuant to the Amendment to Management Agreement dated November 23, 2020.

(c)     Section 2.2 of the Loan Agreement is amended in its entirety to read as follows:

Section 2.2. <u>The Notes; Interest and Repayment</u>. The Loans shall be evidenced by the Notes. Lender shall enter in its ledger and record the payments made on each Loan and Lender is authorized by Borrower to enter on a schedule attached to each Note a record of such payments. Interest shall accrue and interest and principal shall be paid as provided in the Notes. If not sooner paid, each Note, together with all accrued and unpaid interest thereon, shall be due and payable in full on the Maturity Date applicable to such Note. All payments of interest on the Notes accrued prior to the Initial Conversion Date shall be applied, first, to interest accrued on the Notes at the Current Pay Rate, second to interest accrued on the Deferred Interest, and third, to the Deferred Interest (and in each case, first to such interest allocable to the Series A Note, second to such interest allocable to the Series B Note, and third to such interest allocable to the Series C Note) All payments of interest on the Notes accrued on or after the Initial Conversion Date shall be applied, first to the Series A Note, second to the Series B Note, and third to the Series C Note.

(d)     Section 2.4 of the Loan Agreement is amended in its entirety to read as follows:

Section 2.4.     <u>Interest Deferral.</u> In the event that Borrower is unable to make regularly scheduled interest payments on Loans accruing prior to the Initial Conversion Date based on available cash flows from the Project, as determined in accordance with the terms of the Covenant Agreement, and provided that Borrower gives Lender advance written notice of such inability, such failure shall not constitute an Event of Default hereunder. From and after January 1, 2022, the Borrower shall be required to make such interest payments, up to interest accrued at the Current Pay Rate, to the extent of available cash flow, as determined in accordance with the terms of the Covenant Agreement, with interest not so paid (whether constituting interest in excess the Current Pay Rate or interest not paid due to insufficient cash flow) being capitalized and constituting Deferred Interest; interest shall accrue on Deferred Interest on each Loan from the date it would otherwise be due until paid at the rate borne by the applicable Note.

(e)     Section 2.5 of the Loan Agreement is amended in its entirety to read as follows:

Section 2.5.     [Intentionally Left Blank]

(f)     Section 2.6 of the Loan Agreement is amended in its entirety to read as follows:

> Section 2.6.     <u>Lien Priority.</u> The relative priority of the liens and security interests created by the Mortgages issued by Borrower to Lender on the date hereof shall be as follows: (a) Mortgage A shall have first lien priority; (b) Mortgage B shall have second lien priority; and (c) Mortgage C shall have third lien priority.

(g)     Section 5.1(b) of the Loan Agreement is amended in its entirety to read as follows:

> (b)     [Intentionally Left Blank]

(h)     Section 5.13(b) of the Loan Agreement is amended in its entirety to read as follows:

> (b)     Subordinated Debt, loans obtained under the federal Paycheck Protection Program and other loans to the extent permitted by the terms of the Covenant Agreement; and

(i)     Section 5.14(b) of the Loan Agreement is amended in its entirety to read as follows:

> (b)     Lien in favor of FPP securing a loan made to JSM.

(j)     Section 5.15 of the Loan Agreement is amended by replacing the reference to <u>Section 5.14</u> with a reference to <u>Section 5.13</u>.

(k)     Section 5.17 of the Loan Agreement is amended in its entirety to read as follows:

> Section 5.17     <u>Franchise Agreement</u>. Borrower shall comply fully with the terms and conditions of the Franchise Agreement, the failure to comply with which would give Marriott International, Inc. the right to terminate the Franchise Agreement.

(l)     Section 5.27 of the Loan Agreement is amended in its entirety to read as follows:

> Section 5.27     <u>[Intentionally Left Blank]</u>

(m)     Section 6.1(n) of the Loan Agreement is amended in its entirety to read as follows:

> (n)     As a result of an event of default or default under the Franchise Agreement or the Management Agreement, Marriott International, Inc. takes affirmative legal action to terminate the Franchise Agreement or

4

White Lodging Services Corporation takes affirmative legal action to terminate the Management Agreement, as applicable.

(n)     Section 6.1(o) of the Loan Agreement is created to read as follows:

(o)     An "Event of Default" (as defined therein) occurs under the Covenant Agreement.

4.    <u>Closing Conditions</u>.    This Amendment shall become effective upon the execution and delivery by Borrower and Lender of this Amendment and:

(a)     consent of the sole Bondowner (as defined in the Indenture), which consent shall be deemed given upon full execution of the covenant Agreement;

(b)     effectiveness of the Covenant Agreement; and

(b)     effectiveness of that certain Third Supplemental Indenture related to the Bonds dated the date hereof.

5.    <u>Representations and Warranties</u>.    Borrower represents and warrants to Lender that:

(a)     the execution and delivery of this Amendment are within the power of Borrower, have been duly authorized by proper action on the part of Borrower, are not in violation of any existing law, rule or regulation of any governmental agency or authority, any order or decision of any court, the charter documents of Borrower or the terms of any agreement, restriction or undertaking to which Borrower is a party or by which it is bound, and do not require the approval or consent of any governmental body, agency or authority or any other person or entity; and

(b)     except as the Borrower has previously disclosed to the Bondholder (as defined in the Indenture), the representations and warranties of Borrower contained in the Loan Agreement and the other Loan Documents are true and correct in all material respects as of the date of this Amendment.

6.    <u>Costs and Expenses</u>.    Borrower agrees to pay on demand all out-of-pocket costs and expenses paid or incurred by Lender in connection with the negotiation, preparation, execution and delivery of this Amendment and all documents, instruments and agreements related hereto and thereto, including the reasonable fees and expenses of Lender's counsel and the reasonable fees and expenses of the Trustee.

5

7.  <u>Full Force and Effect</u>.  The Loan Agreement, as amended hereby, remains in full force and effect.


8.  <u>Counterparts</u>. This Amendment may be signed in one or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute one and the same instrument.

[remainder of page intentionally left blank]

45699286v6

IN WITNESS WHEREOF the Lender and the Borrower have executed this Amendment as of the date first stated above.

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY

By:_____
    Kimberly Plache, Interim Executive Director

WISCONSIN & MILWAUKEE HOTEL LLC
By: Jackson Street Management LLC, its Manager

By: _____
    Mark Flaherty, Manager

Consented to as of the date first above written:

WISCONSIN & MILWAUKEE HOTEL FUNDING LLC, as sole Bondholder

By:_____
Name:_____
Title:  Manager

[Signature Page to Third Amendment to Loan Agreement]

45699286v6