# SECOND AMENDMENT TO LOAN AGREEMENTS

THIS SECOND AMENDMENT TO LOAN AGREEMENTS ("Amendment"), dated as of _____, 2019, amends and supplements (i) that certain Fund Loan Agreement dated as of August 31, 2012, as amended to date (as so amended, the "Series A Loan Agreement"), between WISCONSIN & MILWAUKEE HOTEL INVESTMENT FUND LLC, a Missouri limited liability company ("Fund Borrower"), and WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a Wisconsin public body corporate and politic duly created ("Lender"), and (ii) that certain Loan Agreement dated as of August 31, 2012, as amended to date (as so amended, the "Series B and C Loan Agreement"), between WISCONSIN & MILWAUKEE HOTEL LLC, a Wisconsin limited liability company ("Project Owner"), and Lender.

## RECITALS

1. Lender has issued its Economic Development Bonds, 2012 Series A in the aggregate principal amount of $32,737,600 (the "Series A Bonds"), its Economic Development Bonds, 2012 Series B in the aggregate principal amount of $2,262,400 (the "Series B Bonds") and its Economic Development Bonds, 2012 Series C in the aggregate principal amount of $7,500,000 (the "Series C Bonds" and, together with the Series A Bonds and the Series B Bonds, the "Bonds").

2. Lender lent proceeds of the Series A Bonds to Fund Borrower pursuant to the Series A Loan Agreement and lent the proceeds of the Series B Bonds and the Series C Bonds to Project Owner pursuant to the Series B and C Loan Agreement.

3. The loan under the Series A Loan Agreement is evidenced by a Promissory Note dated August 31, 2012 issued by the Fund Borrower to Lender in the principal amount of $32,737,600 (the "Series A Note").

4. Fund Borrower used the proceeds of such loan, together with other funds, to facilitate the continued capitalization of WCDLF SUB CDE XXXIII, LLC ("WCDLF Sub-CDE") and WBD Growth Fund VI, LLC ("WBD Sub-CDE" and, together with WCDLF Sub-CDE, the "Sub-CDEs").

5. Each Sub-CDE lent the proceeds of such capitalization to Project Owner pursuant to a CDE Loan Agreement dated as of December 30, 2011 among the Sub-CDEs and Project Owner (the "CDE Loan Agreement").

6. The loans under the CDE Loan Agreement are evidenced by a Promissory Note dated December 30, 2011 in the stated principal amount of $25,181,000 issued by Project Owner to WCDLF Sub-CDE and a Promissory Note date December 30, 2011 in the stated principal amount of $7,556,600 issued by Project Owner to WBD Sub-CDE, respectively (together, the "QLICI A Notes").

7. The QLICI A Notes are secured by the Construction Mortgage, Security Agreement, Fixture Filing and Financing Statement A (WCDLF), dated as of December 31, 2011, from Project Owner to Fund Borrower (as successor in interest to WCDLF Sub-CDE) and the Construction Mortgage, Security Agreement, Fixture Filing and Financing Statement A (WBD), dated as of December 31, 2011, from Project Owner to Fund

EXHIBIT

110

Borrower (as successor in interest to WBD Sub-CDE), respectively (together, the "QLICI A Mortgages").

8. The Sub-CDEs made additional loans under the Sub-CDE Loan Agreement, evidenced by a Promissory Note dated December 30, 2011 in the stated principal amount of $4,619,000 issued by Project Owner to WCDLF Sub-CDE and a Promissory Note date December 30, 2011 in the stated principal amount of $2,628,400 issued by Project Owner to WBD Sub-CDE, respectively (together, the "QLICI B Notes" and together with the QLICI A Notes, the "QLICI Notes").

9. The QLICI B Notes are secured by the Construction Mortgage, Security Agreement, Fixture Filing and Financing Statement B (WCDLF), dated as of December 31, 2011, from Project Owner to Fund Borrower (as successor in interest to WCDLF Sub-CDE) and the Construction Mortgage, Security Agreement, Fixture Filing and Financing Statement B (WBD), dated as of December 31, 2011, from Project Owner to Fund Borrower (as successor in interest to WBD Sub-CDE), respectively (together, the "QLICI B Mortgages" and together with the QLICI A Mortgages, the "QLICI Mortgages").

10. The Series A Note is secured by a Pledge Agreement, dated as of August 31, 2012, pursuant to which Fund Borrower granted to Lender a security interest in the Fund Borrower's membership interests in the Sub-CDEs and proceeds thereof.

11. The loans under the Series B and C Loan Agreement are evidenced by Promissory Notes dated August 31, 2012 issued by the Fund Borrower to Lender in the principal amounts of $2,262,400 and $7,500,000, respectively.

12. On December 31, 2018, WMH, LLC became the sole member of the Fund Borrower.

13. On December 31, 2018, the Fund Borrower redeemed its interests in the Sub-CDEs, at which time the QLICI Notes and QLICI Mortgages, as proceeds of the membership interests pledged under the Pledge Agreement, became "Pledged Collateral" under the Pledge Agreement.

14. Fund Borrower now desires to assign all of its rights in the Fund Loan Agreement and related rights to Project Owner, in exchange for the assumption by Project Owner of Fund Borrower's obligations thereunder, and its rights in the QLICI A Notes and QLICI A Mortgages to Lender in substitution for the Pledge Agreement. In connection therewith, the parties desire to

    a. Replace the Series A Note as evidence of the loan under the Series A Loan Agreement with the QLICI A Notes;

    b. Replace the QLICI A Notes with a single promissory note of Project Owner, payable to Lender in the form attached hereto as Exhibit A;

    c. Release Lender's security interest in the QLICI B Notes and the QLICI B Mortgages; and

    d. Consolidate Project Owner's rights and obligations under the Series A Loan Agreement (as assigned by and assumed from the Fund Borrower)

2

with those under the Series B and C Loan Agreement, and terminate the Series A Loan Agreement.

**AGREEMENTS**

In consideration of the foregoing Recitals, the parties agree as follows, subject to fulfillment of the conditions specified in section 7 below:

1. <u>Definitions and References</u>. Capitalized terms not otherwise defined herein have the meanings assigned in the Series B and C Loan Agreement. All references to the "Loan Agreement" contained in the Loan Documents shall mean the Series B and C Loan Agreement, as amended by this Amendment.

2. <u>Assignments and Assumption</u>.

    (a) Fund Borrower hereby assigns, grants, transfers and delivers unto Project Owner all of Fund Borrower's right, title and interest in, to, and under, and all of Fund Borrower's duties and obligations under, the Series A Loan Agreement, the Series A Note and the Indenture.

    (b) Project Owner hereby accepts the assignment of all of Fund Borrower's right, title and interest in and to such documents and assumes and agrees (subject to the terms of this Amendment) to perform and discharge each and every right, duty, obligation or liability, if any, on the part of Fund Borrower to be performed pursuant to the Series A Loan Agreement, the Series A Note and the Indenture.

    (c) Fund Borrower hereby assigns, grants, transfers and delivers unto Lender all of Fund Borrower's right, title and interest in, to, and under, the QLICI A Notes and the QLICI A Mortgages.

3. <u>Amendments to Series B and C Loan Agreement</u>. The Series B and C Loan Agreement is amended as follows:

    (a) Recital A of the Series B and C Loan Agreement is amended in its entirety to read as follows:

    A. On August 31, 2012, the Lender fully disbursed the proceeds of two loans to the Borrower in the respective amounts of $2,262,400 ("**Loan B**") and $7,500,000 ("**Loan C**"), and the proceeds of one loan to Wisconsin & Milwaukee Hotel Investment Fund, LLC, a Missouri limited liability company (the "Fund Borrower"), in the amount of $32,737,600 (such loan, as assumed by the Borrower, "**Loan A**"). The Series A Note (as defined in the Indenture) has been exchanged for the following promissory notes (the "**QLICI Notes**"): (a) Promissory Note dated December 30, 2011 in the stated principal amount of $25,181,000 issued by the Borrower and payable to the Fund Borrower (as successor in interest to WCDLF SUB CDE XXXIII, LLC) and (b) Promissory

3

41695494v3  Case 24-21743-gmh    Doc 638-10    Filed 07/11/25    Page 3 of 10

Note dated December 30, 2011 in the stated principal amount of $7,556,600 issued by the Borrower and payable to the Fund Borrower (as successor in interest to WBD Growth Fund VI, LLC). The QLICI Notes are secured by mortgages on the Project. In connection with such exchange of notes, the QLICI Notes have been amended and restated in their entirety as a single promissory note of the Borrower in the stated principal amount of $32,737,600 payable to the Lender ("**Note A**") and will continue to be secured by such mortgages. Loan A shall be governed by this Agreement. Loan A, Loan B and Loan C are together referred to herein as the "**Loans**."

(b) The following definition is inserted into Section 1.1 of the Series B and C Loan Agreement to appear in proper alphabetical order therein:

"**Mortgage A**" means the Mortgages and related documents, dated as of December 31, 2011, as amended from time to time, from the Borrower to the Fund Borrower (as successor in interest to the CDE Lender) as assigned to the Lender, securing Note A, as amended, restated or otherwise modified from time to time.

(c) The following defined terms in Section 1.1 of the Series B and C Loan Agreement are amended and restated in their entirety to read, respectively, as follows:

"**Mortgages**" means Mortgage A, Mortgage B and Mortgage C.

"**Note**" or "**Notes**" means, individually or collectively, Note A, Note B and Note C.

"**UCC Financing Statements**" means those certain UCC Financing Statements naming Borrower (or Borrower as successor to Fund Borrower) as Debtor and Lender as Secured Party.

(c) Section 2.2 of the Series B and C Loan Agreement is amended and restated in its entirety to read as follows:

Section 2.2. <u>The Notes: Interest and Repayment</u>. The Loans shall be evidenced by the Notes. Lender shall enter in its ledger and record the payments made on each Loan and Lender is authorized by Borrower to enter on a schedule attached to each Note a record of such payments. Interest shall accrue and interest and principal shall be paid as provided in the Notes. If not sooner paid, each Note, together with all accrued and unpaid interest thereon, shall be due and payable in full on the Maturity Date applicable to such Note. All payments made by Borrower to Lender shall be applied first to pay

4

all amounts then due with respect to Note A, then to pay all amounts due with respect to Note C and then to pay all amounts then due with respect to Note C

(d) Section 2.7 of the Series B and C Loan Agreement is amended in its entirety to read as follows:

Section 2.7. <u>Prepayment</u>. Borrower may prepay any or all of the Notes, in whole or in part, at any time, without premium or penalty. The Loans have been made with the proceeds of Bonds. In the event the Bonds are prepaid in accordance with Section 4.3, 4.5, or 4.7 of the Indenture, other than by effecting a prepayment of the Notes, Borrower may be required to prepay the Loans to the extent required to refund the proceeds of the Bonds to the Bondholders (as that term is defined in the Indenture). Additionally, in the event of a mandatory tender under Section 4.9 of the Indenture with respect to the Bonds, if there are insufficient monies in the Bond Purchase Account (as defined in the Indenture) on the Mandatory Tender Date (as defined in the Indenture) to purchase the Bonds, the Borrower shall be required to prepay the Loan on the later of the Mandatory Tender Date or December 31, 2020 in an amount equal to such shortfall. Notwithstanding anything else to the contrary herein, permissible prepayments (which exclude mandatory prepayments referenced in the preceding two sentences) (i) may only be made on any Business Day (as defined in the Indenture) upon 48 hours prior written notice to Wells Fargo Bank, National Association, whose mailing address is 625 Marquette Avenue, $11_{th}$ Floor; Minneapolis, Minnesota 55479 and (ii) must include all accrued interest through the day before the prepayment date.

(e) References in the Series B and C Loan Agreement and the other Loan Documents to the Intercreditor Agreement and to the Pledge Agreement shall no longer apply.

4. <u>No Waiver</u>. Project Owner agrees that nothing contained herein shall be construed by Project Owner as a waiver by Lender of Project Owner's compliance with any representation, warranty or covenant contained in the Loan Agreement (as amended hereby) and that no waiver of any provision of the Loan Agreement (as amended hereby) by Lender has occurred as a result of the execution and delivery hereof; provided, that the failure of Project Owner to repay the QLICI Notes on or prior to the maturity date specified therein (as such maturity date was stated prior to the amendment and restatement thereof pursuant to the terms of the Note A) shall not be deemed to constitute a Default or Event of Default pursuant to the Loan Agreement. Project Owner further agrees that nothing contained herein shall impair the right of Lender to require strict performance by the Project Owner of the Loan Agreement (as amended hereby).

5

5. Release of QLICI B Notes and QLICI B Mortgages. Lender hereby releases, satisfies and discharges all its right, title and interest in, to and under the QLICI B Notes and the QLICI B Mortgages.

6. Termination of Series A Loan Agreement and Pledge Agreement. The Series A Loan Agreement and the Pledge Agreement are hereby terminated.

7. Closing Conditions. This Amendment shall become effective upon the execution and delivery by Project Owner, Fund Borrower and Lender of this Amendment and:

(a) receipt by Lender of consent of the sole Bondowner (as defined in the Indenture);

(b) effectiveness of that certain Second Supplemental Indenture related to the Bonds; and

(c) receipt by Lender of the other agreements and instruments referenced on Exhibit B attached hereto.

8. Representations and Warranties. Project Owner represents and warrants to Lender that:

(a) the execution and delivery of this Amendment are within the power of Project Owner, have been duly authorized by proper action on the part of Project Owner, are not in violation of any existing law, rule or regulation of any governmental agency or authority, any order or decision of any court, the charter documents of Project Owner or the terms of any agreement, restriction or undertaking to which Project Owner is a party or by which it is bound, and do not require the approval or consent of any governmental body, agency or authority or any other person or entity; and

(b) the representations and warranties of Project Owner contained in the Series B and C Loan Agreement and the other Loan Documents are true and correct in all material respects as of the date of this Amendment.

9. Costs and Expenses. Project Owner agrees to pay on demand all out-of-pocket costs and expenses paid or incurred by Lender in connection with the negotiation, preparation, execution and delivery of this Amendment and all documents, instruments and agreements related hereto and thereto, including the reasonable fees and expenses of Lender's and Bondowner's counsel.

10. Full Force and Effect. The Series B and C Loan Agreement, as amended hereby, remains in full force and effect.

11. Side Agreement. The Side Agreement dated as of October 30, 2015 between Project Owner and Wisconsin & Milwaukee Hotel Funding LLC remains in full force and effect.

[remainder of page intentionally left blank]

WISCONSIN HOUSING AND
ECONOMIC DEVELOPMENT
AUTHORITY


By:_____
Name:_____
Title:_____


WISCONSIN & MILWAUKEE HOTEL
INVESTMENT FUND LLC


By:_____
Name:_____
Title:_____


WISCONSIN & MILWAUKEE
HOTEL LLC


By:_____
Name:_____
Title:_____

Consented to as of the date first
above written:

WISCONSIN & MILWAUKEE HOTEL
FUNDING LLC, as sole Bondholder

By:_____
Name:_____
Title:_____

[Signature Page to Second Amendment to Loan Agreements]

WISCONSIN HOUSING AND
ECONOMIC DEVELOPMENT
AUTHORITY

By:_____
Name:_____
Title:_____

WISCONSIN & MILWAUKEE HOTEL
INVESTMENT FUND LLC

By: *[signature]*
Name: EDWARD CAROW
Title: MANAGER

WISCONSIN & MILWAUKEE
HOTEL LLC

By: *[signature]*
Name: EDWARD CAROW
Title: MANAGER

Consented to as of the date first
above written:

WISCONSIN & MILWAUKEE HOTEL
FUNDING LLC, as sole Bondholder

By:_____
Name:_____
Title:_____

[Signature Page to Second Amendment to Loan Agreements]

WISCONSIN HOUSING AND
ECONOMIC DEVELOPMENT
AUTHORITY

By:_____
Name:_____
Title:_____

WISCONSIN & MILWAUKEE HOTEL
INVESTMENT FUND LLC

By:_____
Name:_____
Title:_____

WISCONSIN & MILWAUKEE
HOTEL LLC

By: /s/ Edward Carow
Name: EDWARD CAROW
Title: MANAGER

Consented to as of the date first
above written:

WISCONSIN & MILWAUKEE HOTEL
FUNDING LLC, as sole Bondholder

By:_____
Name:_____
Title:_____

[Signature Page to Second Amendment to Loan Agreements]

WISCONSIN HOUSING AND
ECONOMIC DEVELOPMENT
AUTHORITY


By:_____
Name:_____
Title:_____


WISCONSIN & MILWAUKEE HOTEL
INVESTMENT FUND LLC


By:_____
Name:_____
Title:_____


WISCONSIN & MILWAUKEE
HOTEL LLC


By:_____
Name:_____
Title:_____

Consented to as of the date first
above written:

WISCONSIN & MILWAUKEE HOTEL
FUNDING LLC, as sole Bondholder

By: /s/ *signature*
Name: ROBERT W. KRAFT
Title: MANAGER

[Signature Page to Second Amendment to Loan Agreements]