# THIRD AMENDMENT TO LOAN AGREEMENT

THIS THIRD AMENDMENT TO LOAN AGREEMENT (this "Amendment"), dated as of January 3, 2022, amends and supplements that certain Loan Agreement dated as of August 31, 2012 (as heretofore amended, the "Loan Agreement"), between WISCONSIN & MILWAUKEE HOTEL LLC, a Wisconsin limited liability company ("Borrower"), and WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a Wisconsin public body corporate and politic duly created ("Lender").

## RECITAL

Borrower and Lender desire to amend and supplement the Loan Agreement as provided below.

## AGREEMENTS

In consideration of the promises and agreements set forth in the Loan Agreement, the parties agree as follows, subject to fulfillment of the conditions specified in Section 4 below:

1. <u>Definitions and References.</u> Capitalized terms not otherwise defined herein have the meanings assigned in the Loan Agreement. All references to the Loan Agreement contained in the Loan Documents shall mean the Loan Agreement as previously supplemented and amended and as amended by this Amendment.

2. <u>Acknowledgment of Deferred Payments; Waiver of Events of Default.</u> Borrower and Lender acknowledge that, due to the lack of cash flows from the Project (i) the Loan was not prepaid on December 31, 2020 as provided in Section 2.7 of the Loan Agreement and (ii) multiple payments due prior to the date hereof with respect to the Notes were not made. As of January 3, 2022 (and taking into account payments required to be made on or about the date hereof pursuant to the Covenant Agreement), the outstanding principal balances of the Notes were as follows:

(a) Series A Note: principal of $32,737,600 plus accrued and capitalized interest of $1,927,076.02 (such accrued interest amount calculated net of accrued participation payments pursuant to that certain Bond Participation Agreement dated October 30, 2015 between Wisconsin & Milwaukee Hotel Funding LLC and Jackson Street Management LLC, which are deemed to have been paid), for a new principal balance of $34,664,676.02;

(b) Series B Note: principal of $2,262,400 plus accrued and capitalized interest of $131,585.18, for a new principal balance of $2,393,985.18; and

(c) Series C Note: principal of $7,500,000 plus accrued and capitalized interest of $409,905.90, for a new principal balance of $7,909,905.90.

Notwithstanding Section 6.1 of the Loan Agreement, the failure to make such payments or the failure to comply with any provisions of the Loan Agreement revised (or removed)

EXHIBIT
111

by this Amendment, to the extent the Borrower is in compliance with such provisions as revised by this Amendment (or such provisions are removed by this Amendment), shall not be an Event of Default, and interest accrued from and after the date of any such failure shall not (unless an Event of Default occurs after the date hereof) be computed at the Default Rate. Any Event of Default heretofore arising from any such failure is hereby waived.

3. <u>Amendments to Loan Agreement</u>. The Loan Agreement is amended as follows:

(a) Section 1.1 of the Loan Agreement is amended by adding the following definitions, to appear in alphabetical order:

"**Capitalization Date**" has the meaning assigned to such term in Section 1.1 of the Indenture.

"**Covenant Agreement**" means that certain Covenant Agreement dated as of the Capitalization Date among the Borrower, JSM and FPP, as amended or otherwise modified from time to time.

"**Current Pay Rate**" means (i) for the period from the Capitalization Date to March 31, 2022, the rate of 2% per annum, and (ii) thereafter, (a) with respect to the Series A Note, 5.25% and (b) with respect to the Series B Note and the Series C Note, 3.625% per annum.

"**Deferred Interest**" means interest accrued and unpaid on the Notes (a) on and after the Capitalization Date but prior to January 1, 2022, and (b) on and after January 1, 2022 but prior to the Initial Conversion Date to the extent it exceeds the amount required to be paid on any Interest Payment Date as provided in Section 2.4.

"**FPP**" Wisconsin & Milwaukee & Hotel Funding LLC, a Wisconsin limited liability company.

"**Initial Conversion Date**" has the meaning assigned to such term in Section 1.1 of the Indenture.

"**JSM**" Jackson Street Management LLC, a Wisconsin limited liability company.

"**Subordinated Debt**" mean indebtedness and obligations outstanding as of January 3, 2022 and subject to that certain Subordination Agreement dated as of January 3, 2022 from JSM and certain of its affiliates to and for the benefit of the Lender and the Bondowner.

(b) The definition of the term "Management Agreement" in Section 1.1 of the Loan Agreement is amended and restated in its entirety to read as follows:

"**Management Agreement**" means the Management Agreement dated June 14, 2011, between Borrower and White Lodging Services Corporation, an Indiana corporation, as amended pursuant to the Amendment to Management Agreement dated November 23, 2020.

(c) Section 2.2 of the Loan Agreement is amended in its entirety to read as follows:

Section 2.2. <u>The Notes; Interest and Repayment</u>. The Loans shall be evidenced by the Notes. Lender shall enter in its ledger and record the payments made on each Loan and Lender is authorized by Borrower to enter on a schedule attached to each Note a record of such payments. Interest shall accrue and interest and principal shall be paid as provided in the Notes. If not sooner paid, each Note, together with all accrued and unpaid interest thereon, shall be due and payable in full on the Maturity Date applicable to such Note. All payments of interest on the Notes accrued prior to the Initial Conversion Date shall be applied, first, to interest accrued on the Notes at the Current Pay Rate, second to interest accrued on the Deferred Interest, and third, to the Deferred Interest (and in each case, first to such interest allocable to the Series A Note, second to such interest allocable to the Series B Note, and third to such interest allocable to the Series C Note) All payments of interest on the Notes accrued on or after the Initial Conversion Date shall be applied, first to the Series A Note, second to the Series B Note, and third to the Series C Note.

(d) Section 2.4 of the Loan Agreement is amended in its entirety to read as follows:

Section 2.4. <u>Interest Deferral.</u> In the event that Borrower is unable to make regularly scheduled interest payments on Loans accruing prior to the Initial Conversion Date based on available cash flows from the Project, as determined in accordance with the terms of the Covenant Agreement, and provided that Borrower gives Lender advance written notice of such inability, such failure shall not constitute an Event of Default hereunder. From and after January 1, 2022, the Borrower shall be required to make such interest payments, up to interest accrued at the Current Pay Rate, to the extent of available cash flow, as determined in accordance with the terms of the Covenant Agreement, with interest not so paid (whether constituting interest in excess the Current Pay Rate or interest not paid due to insufficient cash flow) being capitalized and constituting Deferred Interest; interest shall accrue on Deferred Interest on each Loan from the date it would otherwise be due until paid at the rate borne by the applicable Note.

(e) Section 2.5 of the Loan Agreement is amended in its entirety to read as follows:

Section 2.5. <u>[Intentionally Left Blank]</u>

3

(f) Section 2.6 of the Loan Agreement is amended in its entirety to read as follows:

Section 2.6. <u>Lien Priority.</u> The relative priority of the liens and security interests created by the Mortgages issued by Borrower to Lender on the date hereof shall be as follows: (a) Mortgage A shall have first lien priority; (b) Mortgage B shall have second lien priority; and (c) Mortgage C shall have third lien priority.

(g) Section 5.1(b) of the Loan Agreement is amended in its entirety to read as follows:

(b) [Intentionally Left Blank]

(h) Section 5.13(b) of the Loan Agreement is amended in its entirety to read as follows:

(b) Subordinated Debt, loans obtained under the federal Paycheck Protection Program and other loans to the extent permitted by the terms of the Covenant Agreement; and

(i) Section 5.14(b) of the Loan Agreement is amended in its entirety to read as follows:

(b) Lien in favor of FPP securing a loan made to JSM.

(j) Section 5.15 of the Loan Agreement is amended by replacing the reference to <u>Section 5.14</u> with a reference to <u>Section 5.13</u>.

(k) Section 5.17 of the Loan Agreement is amended in its entirety to read as follows:

Section 5.17 <u>Franchise Agreement</u>. Borrower shall comply fully with the terms and conditions of the Franchise Agreement, the failure to comply with which would give Marriott International, Inc. the right to terminate the Franchise Agreement.

(l) Section 5.27 of the Loan Agreement is amended in its entirety to read as follows:

Section 5.27 <u>[Intentionally Left Blank]</u>

(m) Section 6.1(n) of the Loan Agreement is amended in its entirety to read as follows:

(n) As a result of an event of default or default under the Franchise Agreement or the Management Agreement, Marriott International, Inc. takes affirmative legal action to terminate the Franchise Agreement or

4

45699286v6

Case 24-21743-gmh    Doc 638-11    Filed 07/11/25    Page 4 of 8

White Lodging Services Corporation takes affirmative legal action to terminate the Management Agreement, as applicable.

(n) Section 6.1(o) of the Loan Agreement is created to read as follows:

(o) An "Event of Default" (as defined therein) occurs under the Covenant Agreement.

4. <u>Closing Conditions</u>. This Amendment shall become effective upon the execution and delivery by Borrower and Lender of this Amendment and:

(a) consent of the sole Bondowner (as defined in the Indenture), which consent shall be deemed given upon full execution of the covenant Agreement;

(b) effectiveness of the Covenant Agreement; and

(b) effectiveness of that certain Third Supplemental Indenture related to the Bonds dated the date hereof.

5. <u>Representations and Warranties</u>. Borrower represents and warrants to Lender that:

(a) the execution and delivery of this Amendment are within the power of Borrower, have been duly authorized by proper action on the part of Borrower, are not in violation of any existing law, rule or regulation of any governmental agency or authority, any order or decision of any court, the charter documents of Borrower or the terms of any agreement, restriction or undertaking to which Borrower is a party or by which it is bound, and do not require the approval or consent of any governmental body, agency or authority or any other person or entity; and

(b) except as the Borrower has previously disclosed to the Bondholder (as defined in the Indenture), the representations and warranties of Borrower contained in the Loan Agreement and the other Loan Documents are true and correct in all material respects as of the date of this Amendment.

6. <u>Costs and Expenses</u>. Borrower agrees to pay on demand all out-of-pocket costs and expenses paid or incurred by Lender in connection with the negotiation, preparation, execution and delivery of this Amendment and all documents, instruments and agreements related hereto and thereto, including the reasonable fees and expenses of Lender's counsel and the reasonable fees and expenses of the Trustee.

7. <u>Full Force and Effect</u>. The Loan Agreement, as amended hereby, remains in full force and effect.

8. <u>Counterparts</u>. This Amendment may be signed in one or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts together shall constitute one and the same instrument.

[remainder of page intentionally left blank]

IN WITNESS WHEREOF the Lender and the Borrower have executed this Amendment as of the date first stated above.

                                                 WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY

By:_____
     Kimberly Plache, Interim Executive Director

WISCONSIN & MILWAUKEE HOTEL LLC
By: Jackson Street Management LLC, its Manager

By: _____
     Mark Flaherty, Manager

Consented to as of the date first
above written:

WISCONSIN & MILWAUKEE HOTEL
FUNDING LLC, as sole Bondholder

By:_____
Name:_____
Title:  Manager

[Signature Page to Third Amendment to Loan Agreement]
45699286v6

IN WITNESS WHEREOF the Lender and the Borrower have executed this Amendment as of the date first stated above.

WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY

By:_____
Kimberly Plache, Interim Executive Director

WISCONSIN & MILWAUKEE HOTEL LLC
By: Jackson Street Management LLC, its Manager

By: _____
Randall G. Erkert, Manager

Consented to as of the date first above written:

WISCONSIN & MILWAUKEE HOTEL FUNDING LLC, as sole Bondholder

By:_____
Name: Daniel Wycklendt
Title: Manager

[Signature Page to Third Amendment to Loan Agreement]

45699286v6