**CONSTRUCTION MORTGAGE, SEC. AGREE, FIXTURE FILING & FINANCING STATEMENT**

Document Number                    Document Title

**DOC.# 10156581**
RECORDED
09/04/2012 08:36AM

JOHN LA FAVE
REGISTER OF DEEDS
Milwaukee County, WI
AMOUNT: $30.00

FEE EXEMPT #: 0
0
***This document has been
electronically recorded and
returned to the submitter. **

Recording Area

Name and Return Address
JOSEPH D. SHUMOW
WHEDA
201 WEST WASHINGTON AVENUE, SUITE 700
MADISON, WI  53703

See Exhibit A

Parcel Identification Number (PIN)

**THIS PAGE IS PART OF THIS LEGAL DOCUMENT-DO NOT REMOVE**

This information must be completed by submitter: document title, name & return address, and PIN (if required). Other information such as the granting clauses, legal description, etc. may be placed on this first page of the document or may be placed on additional pages of the document. Note: Use of this cover page adds one page to your document and $2.00 to the recording fee. Wisconsin Statutes, 59.517. WRDA 2/96

recbox09 8/09rmd

Doc Yr: 2012 Doc# 10156581 Page# 1 of 23

**EXHIBIT**

**120**

| Document Number | CONSTRUCTION MORTGAGE, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT C |
|---|---|

THIS CONSTRUCTION MORTGAGE, SECURITY AGREEMENT, FIXTURE FILING AND FINANCING STATEMENT C (this "**Mortgage**"), dated as of August 31, 2012, is made and executed by WISCONSIN & MILWAUKEE HOTEL LLC, a Wisconsin limited liability company, having its principal offices at c/o Jackson Street Management, 731 North Jackson Street, Suite 900, Milwaukee, Wisconsin 53202 ("**Mortgagor**"), in favor of WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a Wisconsin public body corporate and politic ("**Lender**"), whose mailing address is 201 West Washington Avenue, Suite 700; Madison, Wisconsin 53703.

THIS IS A CONSTRUCTION MORTGAGE WITHIN THE MEANING OF WIS. STATS. § 409.313 AND 706.11 (1m) (a) OF THE WISCONSIN STATUTES, AS THE SAME MAY BE AMENDED OR RENUMBERED FROM TIME TO TIME.

Drafted by and after recording return to:
Joseph D. Shumow
WHEDA
201 West Washington Avenue, Suite 700
Madison, WI 53703

See Exhibit A

Parcel Identification Number(s)
392-0735-5, 392-0734-X,
392-0736-0, 392-0737-6 and
392-0738-1

## RECITALS

Mortgagor and Lender acknowledge the following:

A.     Pursuant to the Loan Agreement dated as of the date hereof (such agreement, as amended, revised, supplemented or restated from time to time, the "**Loan Agreement**") between Mortgagor and Lender, Lender has agreed to make certain financial accommodations available to Mortgagor on the terms and subject to the conditions set forth in the Loan Agreement. All terms not otherwise defined herein shall have the meanings set forth in the Loan Agreement.

B.     This Mortgage is given to secure the following: (i) the repayment by Mortgagor of Loan C (in the aggregate principal amount of up to $7,500,000.00) and other extensions of credit at any time outstanding, now or hereafter made by Lender to Mortgagor pursuant to the Loan Agreement other than extensions of credit associated with the Loan B (collectively with the Loan B, the "**Loans**"), evidenced by a promissory note dated as of the date hereof and any extensions, renewals, refinancings or modifications of, or substitutes or replacements for, it (the "**Note**"); (ii) the repayment of all other loans and extensions of credit now or hereafter made by Lender to Mortgagor, jointly to a third party and Mortgagor or to a third party guaranteed by Mortgagor other than Loan B; (iii) the payment of all amounts due under and the performance and observance of all covenants and conditions contained in this Mortgage, the Note, the Loan Agreement, any and all other mortgages, security agreements, assignments of leases and rents, guaranties, letters of credit and any other documents and instruments now or hereafter executed by Mortgagor or any party related thereto or affiliated therewith to evidence, secure or guarantee

the payment of all or any portion of the indebtedness under the Note and any and all renewals, extensions, amendments and replacements of this Mortgage, the Note, the Loan Agreement and any such other documents and instruments (the Note, the Loan Agreement, this Mortgage, such other mortgages, security agreements, assignments of leases and rents, guaranties, letters of credit and any other documents and instruments now or hereafter executed and delivered in connection with the Loans and any and all amendments, renewals, extensions and replacements hereof and thereof, being sometimes referred to individually as a "**Loan Instrument**" and collectively as the "**Loan Instruments**"); (iv) the payment of any and all other indebtedness and obligations of Mortgagor or any party related thereto or affiliated therewith to Lender and its affiliates, whether now existing or hereafter created, absolute or contingent, direct or indirect, liquidated or unliquidated or otherwise, other than indebtedness evidenced by the Note B; and (v) the payment of interest on all such obligations of Mortgagor to Lender and its affiliates with respect to the Loans (all indebtedness and liabilities secured hereby being hereinafter sometimes referred to as "**Mortgagor's Liabilities**").

        C.     This Mortgage is the "Mortgage C" defined in the Loan Agreement.

## AGREEMENTS

In consideration of the Recitals and to induce Lender to extend credit under the Loan Agreement, Mortgagor agrees as follows:

Mortgagor does hereby convey, mortgage, warrant, assign, transfer, pledge and deliver to Lender, its successors and assigns and grants to Lender a security interest in all of Mortgagor's right, title and interest in and to the following described property whether such property or interest therein is now owned or existing or hereafter acquired or arising, subject to the terms and conditions herein:

        A.     The real property, parcels or other units of land located in Milwaukee County, Wisconsin, legally described in attached <u>Exhibit A</u> ("**Land**");

        B.     All the buildings, structures, improvements and fixtures of every kind or nature now or hereafter situated on the Land and all machinery, appliances, equipment, furniture and all other personal property of every kind or nature, all of which fixtures, machinery, appliances, equipment, furniture and all other personal property shall be deemed to be part of the Land, together will all extensions, additions, improvements, substitutions and replacements of the foregoing ("**Improvements**");

        C.     All permits, licenses, consents, easements, tenements, rights-of-way, vaults, gores of land, streets, ways, alleys, passages, sewer rights, water courses, water rights and powers and appurtenances in any way belonging, relating or appertaining to any of the Land or Improvements or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired, including without limitation, all of the rights of Mortgagor as Declarant under the Declaration of Condominium of Wisconsin & Milwaukee Condominium and the other associated condominium documents (collectively, the "**Condominium Documents**") and Constituent Documents (as defined in the Condominium Rider) (collectively, "**Appurtenances**"); it being intended that this Mortgage shall constitute an absolute and present assignment of the Appurtenances;

        D.     (i)     All judgments, insurance proceeds, awards of damages and settlements which may result from any damage to all or any portion of the Land, Improvements or Appurtenances or any part thereof or to any rights appurtenant thereto;

2

(ii)     All compensation, awards, damages, claims, rights of action and proceeds of or on account of (a) any damage or taking, pursuant to the power of eminent domain, of the Land, Improvements or Appurtenances or any part thereof, (b) damage to all or any portion of the Land, Improvements or Appurtenances by reason of the taking, pursuant to the power of eminent domain, of all or any portion of the Land, Improvements, Appurtenances or of other property, or (c) the alteration of the grade of any street or highway on or about the Land, Improvements, Appurtenances or any part thereof and, except as otherwise provided herein, Lender is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquittances therefore and, except as otherwise provided herein, to apply the same toward the payment of the indebtedness and other sums secured hereby; and

(iii) All proceeds, products, replacements, additions, substitutions, renewals and accessions of and to the Land, Improvements or Appurtenances;

E.     All rents, issues, profits, income and other benefits now or hereafter arising from or in respect of the Land, Improvements or Appurtenances (the "**Rents**"); it being intended that this Mortgage shall constitute an absolute and present assignment of the Rents;

F.     All leases (and subleases), licenses and other occupancy agreements now or hereafter affecting the Land, Improvements or Appurtenances, together with all security therefor and guaranties thereof and all monies payable thereunder and all books and records owned by Mortgagor which contain evidence of payments made under the leases and all security given therefor (collectively, the "**Leases**"), it being intended that this Mortgage shall constitute an absolute and present assignment of the Leases;

G.     Any and all after-acquired right, title or interest of Mortgagor in and to any of the property described herein;

H.     Any and all proceeds of the conversion, whether voluntary or involuntary, of all or any part of the Land, Improvements, Appurtenances, Rents, Leases and other property and interests subject to this Mortgage into cash or liquidated claims, including, without limitation by reason of specification, proceeds of insurance, condemnation awards and any and all other property of every name and nature from time to time by delivery or writing of any kind conveyed, mortgaged, pledged, assigned or transferred for additional security for this Mortgage, and all judgments and all additions to, replacements of, substitutions for and all proceeds (including without limitation goods, accounts, general intangibles, chattel paper, documents, instruments, money and the proceeds thereof) and the products of the Real Property and any other property and interests subject to this Mortgage; and

I.     The proceeds from the sale, transfer, pledge or other disposition of any or all of the property described herein.

All of the mortgaged property described herein, together with all real and personal, tangible and intangible property pledged in or to which a security interest attaches pursuant to any of the Loan Instruments is sometimes referred to collectively as the "**Mortgaged Property.**" The Rents and Leases are pledged on a parity with Mortgagor's interest in the Land and Improvements and not secondarily. This Mortgage includes and incorporates Exhibit A (Legal Description) and Exhibit B (Condominium Rider).

3

Doc Yr: 2012 Doc# 10156581 Page# 4 of 23

# 1.
## COVENANTS OF MORTGAGOR

Mortgagor covenants and agrees with Lender as follows:

      a.      **Performance under the Note, Mortgage and Other Loan Instruments**. Mortgagor shall duly and punctually pay each and every installment of principal and interest on Mortgagor's Liabilities, including without limitation, the indebtedness evidenced by the Note, when due, and promptly pay any penalties or other assessments that may be made, with interest thereon. Mortgagor shall perform, observe and comply with or cause to be performed, observed and complied with in a complete and timely manner all provisions hereof, of the Loan Agreement and of the Note, every other Loan Instrument and every instrument evidencing or securing Mortgagor's Liabilities.

      b.      **General Covenants and Representations**.  Mortgagor covenants, represents and warrants that as of the date hereof and at all times thereafter during the term hereof: (a) Mortgagor is seized of an indefeasible estate in fee simple in that portion of the Mortgaged Property which is real property and has good and absolute title to it and the balance of the Mortgaged Property free and clear of all liens, security interests, charges and encumbrances whatsoever, except Permitted Encumbrances and those otherwise permitted by the Loan Agreement; (b) Mortgagor has good right, full power and lawful authority to mortgage and pledge the Mortgaged Property as provided herein; (c) upon the occurrence of an Event of Default (as hereinafter defined) and to the extent permitted by applicable law, Lender may at all times peaceably and quietly enter upon, hold, occupy and enjoy the Mortgaged Property in accordance with the terms hereof; and (d) Mortgagor will maintain and preserve the lien of this Mortgage as a lien on the Mortgaged Property subject only to the Permitted Encumbrances, except as otherwise provided by the Loan Agreement until Mortgagor's Liabilities have been paid in full.

      c.      **Compliance with Laws and Other Restrictions**.  Mortgagor covenants and represents that the Land and the Improvements and the use thereof presently comply in all material respects with, and will during the full term of this Mortgage continue to comply in all material respects with, all applicable restrictive covenants and all Governmental Requirements.

      d.      **Taxes and Other Charges.**

      i.      **Taxes and Assessments**.  Mortgagor shall pay promptly when due and payable all taxes, assessments, rates, dues, charges, fees, levies, fines, impositions, liabilities, obligations, liens and encumbrances of every kind and nature whatsoever now or hereafter imposed, levied or assessed upon or against the Mortgaged Property or any part thereof or upon or against this Mortgage or Mortgagor's Liabilities or upon or against the interest of Lender in the Mortgaged Property, as well as all taxes, assessments and other governmental charges levied and imposed by the United States of America or any state, county, municipality or other taxing authority upon or in respect of the Mortgaged Property or any part thereof; provided, however, that Mortgagor may in good faith contest the validity, applicability or amount of any asserted tax, assessment or other charge in accordance with the provisions set forth in the Loan Agreement regarding the contest of taxes.  Upon Lender's request, Mortgagor will promptly file, if it has not therefore filed, such petition, application or other instrument as is necessary to cause the Land and Improvements to be taxed as a separate parcel or parcels which include no property not a part of the Mortgaged Property.

      ii.      **Taxes Affecting Lender's Interest**.  If any state, federal, municipal or other governmental law, order, rule or regulation, which becomes effective subsequent to the date hereof, in any

4

manner changes or modifies existing laws governing the taxation of mortgages or debts secured by mortgages or the manner of collecting taxes so as to impose on Lender a tax by reason of its ownership of any or all of the Loan Instruments or measured by the principal amount of the Note, requires or has the practical effect of requiring Lender to pay any portion of the real estate taxes levied in respect of the Mortgaged Property to pay any tax levied in whole or in part in substitution for real estate taxes or otherwise affects materially and adversely the rights of Lender in respect of the Note, this Mortgage or the other Loan Instruments, then Mortgagor's Liabilities and all interest accrued thereon shall, upon thirty (30) days' notice, become due and payable forthwith at the option of Lender, whether or not there shall have occurred an Event of Default; provided, however, that, if Mortgagor may, without violating or causing a violation of such law, order, rule or regulation pay such taxes or other sums as are necessary to eliminate such adverse effect upon the rights of Lender and does pay such taxes or other sums when due, then Lender, at its sole option, may elect to declare due Mortgagor's Liabilities by reason of the provisions of this Section ii.

       iii.   **Tax Escrow**. Commencing on May 30, 2013, Mortgagor shall establish and maintain a tax escrow account to pay the taxes on the Land and Improvements. Mortgagor shall, in order to secure the performance and discharge of Mortgagor's obligations under this Section iii, but not in lieu of such obligations, deposit with Lender, throughout the term of the Loans, a sum in amounts set by Lender from time to time by written notice to Mortgagor, in order to accumulate funds sufficient to permit Lender to pay all annual ad valorem taxes, assessments and charges of any nature imposed upon the Land and Improvements at least thirty (30) days prior to the date or dates on which they shall become due and payable. The taxes, assessments and charges for purposes of this Section iii shall, if Lender so elects, include, without limitation, water and sewer rents. Mortgagor shall procure and deliver to Lender when issued all statements or bills for such obligations. Upon demand by Lender, Mortgagor shall deliver to Lender such additional monies as are required to satisfy any deficiencies in the amounts necessary to enable Lender to pay such taxes, assessments and similar charges thirty (30) days prior to the date they become due and payable. Lender shall pay such taxes, assessments and other charges as they become due to the extent of the funds on deposit with Lender from time to time and provided Mortgagor has delivered to Lender the statements or bills therefore. In making any such payments, Lender shall be entitled to rely on any bill issued in respect of any such taxes, assessments or charges without inquiry into the validity, propriety or amount thereof and whether delivered to Lender by Mortgagor or otherwise obtained by Lender. Any deposits received pursuant to this Section iii shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Lender and Lender shall have no obligation to pay interest on amounts deposited with Lender pursuant to this Section iii. If any Event of Default occurs, any part or all of the amounts then on deposit or thereafter deposited with Lender under this Section iii may at Lender's option be applied to payment of Mortgagor's Liabilities in such order as Lender may determine.

       iv.   **No Credit Against the Indebtedness Secured Hereby**. Mortgagor shall not claim, demand or be entitled to receive any credit against the principal or interest payable under the terms of the Note or the Loan Agreement or on any of Mortgagor's Liabilities for any of the taxes, assessments or similar impositions assessed against the Mortgaged Property or any part thereof or that are applicable to Mortgagor's Liabilities or to Lender's interest in the Mortgaged Property.

       e.   **Mechanic's and Other Liens**. Mortgagor shall not permit or suffer any mechanic's, laborer's, materialman's, statutory or other lien or encumbrance, other than Permitted Encumbrances, to be created upon or against the Mortgaged Property; provided, however, that Mortgagor may in good faith, by appropriate proceeding, contest the validity, applicability or amount of any asserted

5

lien in accordance with the applicable provisions of the Loan Agreement, if any. Mortgagor shall pay the disputed amount and all interest and penalties due in respect thereof on or before the date any adjudication of the validity or amount thereof becomes final and, in any event, no less than thirty (30) days prior to any foreclosure sale of the Mortgaged Property or the exercise of any other remedy by such claimant against the Mortgaged Property.

        f.        **Insurance and Condemnation**.

        i.        **Hazard Insurance**.  Mortgagor shall, at its sole expense, obtain for, deliver to, assign to and maintain for the benefit of Lender policies of hazard insurance in an amount which shall be not less than 100% of the full insurable replacement cost of the Mortgaged Property insuring, on a replacement cost basis, the Mortgaged Property against loss or damage on a "special cause of loss" form, such insurable hazards, casualties and contingencies as are included therein and otherwise as Lender may require, including without limitation fire, windstorm, rainstorm, vandalism, earthquake and, if all or any part of the Mortgaged Property shall at any time be located within an area identified by the government of the United States or any agency thereof as having special flood hazards flood.  Mortgagor shall pay promptly when due any premiums on such insurance policies and on any renewals thereof.  The form of such policies and the companies issuing them shall be acceptable to Lender.  If any such policy shall contain a co-insurance clause it shall also contain an agreed amount or stipulated value endorsement, and shall be subject to approval by Lender, in its sole discretion.  All such policies and renewals shall contain a "Lender's loss payable" clause making losses that would be payable to Mortgagor payable to Lender.  Losses shall not be payable to any other party without Lender's prior written consent.  In the event of loss, Mortgagor will give immediate written notice to Lender and Lender may make proof of loss if not made promptly by Mortgagor (for which purpose Mortgagor hereby irrevocably appoints Lender as its attorney-in-fact).  In the event of the foreclosure of this Mortgage or any other transfer of title to the Mortgaged Property in full or partial satisfaction of Mortgagor's Liabilities, all right, title and interest of Mortgagor in and to all insurance policies and renewals thereof then in force shall pass to the purchaser or grantee.  All such policies shall provide that they shall not be modified, cancelled or terminated without at least thirty (30) days' prior written notice to Lender from the insurer.  Certificates of said insurance shall be provided to Lender, with copies of the policies if requested by Lender.

        ii.        **Insurance**.  In addition to anything contained in Section 1.6.1, Mortgagor shall, at its sole expense, obtain for, deliver to, assign to and maintain for the benefit of, Lender, until Mortgagor's Liabilities are paid in full, the policies of insurance as may be required by the terms of the Loan Agreement.

        iii.        **Adjustment of Loss**.  Except as prohibited by the Loan Agreement, Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies covering the Mortgaged Property and to collect and receive the proceeds from any such policy or policies (which proceeds shall be disposed of in the manner provided in Section v).  Mortgagor hereby irrevocably appoints Lender as its attorney-in-fact for the purposes set forth in the preceding sentence.  Each insurance company is hereby authorized and directed to make payment of 100% of all such losses directly to Lender alone.  After deducting from such insurance proceeds any expenses incurred by Lender in the collection and settlement thereof, including without limitation attorneys' and adjusters' fees and charges, Lender shall apply the net proceeds as provided in Section v.

        iv.        **Condemnation Awards**.  Mortgagee shall give Lender prompt notice of any pending or threatened eminent domain or condemnation proceedings of any or all parts of the Mortgaged Property.  Lender shall be entitled to all compensation, awards, damages, claims, rights of action and

6

proceeds of or on account of, (i) any damage or taking, pursuant to the power of eminent domain of the Mortgaged Property or any part thereof, (ii) damage to the Mortgaged Property by reason of the taking, pursuant to the power of eminent domain, of other property or (iii) the alteration of the grade of any street or highway on or about the Mortgaged Property. Lender is hereby authorized, at its option, to commence, appear in and prosecute in its own or Mortgagor's name any action or proceeding relating to any such compensation, awards, damages, claims, rights of action and, proceeds and to settle or compromise any claim in connection therewith. Mortgagor hereby irrevocably appoints Lender as its attorney-in-fact for the purposes set forth in the preceding sentence. Lender after deducting from such compensation, awards, damages, claims, rights of action and proceeds all its expenses, including attorneys' fees, may apply such net proceeds (except as otherwise provided in Section v of this Mortgage) to payment of Mortgagor's Liabilities in such order and manner as Lender may elect. Mortgagor agrees to execute such further assignments of any compensation awards, damages, claims, rights of action and proceeds as Lender may require.

      v.    **Repair; Proceeds of Casualty Insurance and Eminent Domain.** If all or any part of the Mortgaged Property shall be damaged or destroyed by fire or other casualty or shall be damaged or taken through the exercise of the power of eminent domain or other cause described in Section iv, and if the proceeds, award or compensation are made available by Lender to Mortgagor for restoration of the Mortgaged Property, then Mortgagor shall promptly and with all due diligence restore and repair the Mortgaged Property to the condition of the Mortgaged Property prior to such damage, destruction or condemnation whether or not the proceeds, award or other compensation are sufficient to pay the cost of such restoration or repair. The amount of such proceeds, award or compensation shall, at the option of Lender, either (i) be applied to the repayment of Mortgagor's Liabilities in such order and manner as Lender may elect or (ii) be made available to Mortgagor on such terms and conditions as Lender may impose, for the purpose of financing the cost of restoration or repair with any excess to be applied to Mortgagor's Liabilities.

      vi.    **Renewal of Policies.** At least thirty (30) days prior to the expiration date of any policy evidencing insurance required under this Section f, a renewal certificate thereof satisfactory to Lender shall be delivered to Lender or substitution therefore, together with receipts or other evidence of the payment of any premiums then due on such renewal policy or substitute policy. Copies of all renewal or substitute policies shall be delivered to Lender promptly after request therefore.

      vii.    **Insurance Escrow.** Upon the occurrence and during the continuance of an Event of Default, if directed by Lender in writing, Mortgagor shall, in order to secure the performance and discharge of Mortgagor's obligations under this Section f, but not in lieu of such obligations, deposit with Lender on the first day of each calendar month throughout the term of the Loans, a sum in an amount determined by Lender from time to time by written notice to Mortgagor, in order to accumulate funds sufficient to permit Lender to pay all premiums payable in connection with the insurance required hereunder at least thirty (30) days prior to the date or dates on which they shall become due, except to the extent Lender is satisfied, in its sole discretion, that said insurance premiums are being collected by the Association. In such event, upon demand by Lender, Mortgagor shall deliver to Lender such additional monies as are required to satisfy any deficiencies in the amounts necessary to enable Lender to pay such premiums thirty (30) days prior to the date they shall become due. If any Event of Default occurs, any part or all of the amounts then on deposit or thereafter deposited with Lender under this Section vii may, at Lender's option, be applied to the payment of Mortgagor's Liabilities in such order as Lender may determine.

      g.          **Care of the Mortgaged Property.**

Doc Yr: 2012 Doc# 10156581 Page# 8 of 23

(1)  Mortgagor shall preserve and maintain the Mortgaged Property in good and first class condition and repair, ordinary wear and tear excepted. Mortgagor shall not, without the prior written consent of Lender, permit, commit or suffer any waste, impairment or deterioration of the Mortgaged Property or of any part thereof.

(2)  Except as otherwise provided in the Loan Agreement or this Mortgage, no new improvements shall be constructed on the Mortgaged Property and no part of the Mortgaged Property shall be removed, demolished or altered in any material manner without the prior written consent of Lender.

h.  **Transfer or Encumbrance of the Mortgaged Property**.  Except for Permitted Encumbrances and as otherwise permitted by the Loan Agreement, Mortgagor shall not permit or suffer to occur any sale, assignment, conveyance, transfer, mortgage, lease (other than leases made in accordance with the provisions of this Mortgage and the Loan Agreement) or encumbrance of, or any contract for any of the foregoing on an installment basis or otherwise pertaining to, the Mortgaged Property, any part thereof, any interest therein, the beneficial interest in Mortgagor, any interest in the beneficial interest in Mortgagor or in any trust holding title to the Mortgaged Property or any interest in a corporation, partnership or other entity which owns all or part of the Mortgaged Property or such beneficial interest, whether by operation of law or otherwise, without the prior written consent of Lender having been obtained.

i.  **Further Assurances**.  At any time and from time to time, upon Lender's request, Mortgagor shall make, execute and deliver, or cause to be made, executed and delivered, to Lender, and where appropriate, shall cause to be recorded, registered or filed and from time to time thereafter to be re-recorded, re-registered and refiled at such time and in such offices and places as shall be deemed desirable by Lender, any and all such further mortgages, security agreements, financing statements, instruments of further assurance, certificates and other documents as Lender may consider necessary or desirable in order to effectuate or perfect or to continue and preserve the obligations under this Mortgage.

j.  **Assignment of Rents and Leases**.  The assignment of Rents and Leases contained in this Mortgage is and shall be fully operative without any further action on the part of either party, and, specifically, Lender shall be entitled, at its option, upon the occurrence and during the continuance of an Event of Default hereunder, to all Rents from the Mortgaged Property, whether or not Lender takes possession of such property.  Such assignment and grant shall continue in effect until Mortgagor's Liabilities are paid in full, the execution of this Mortgage constituting and evidencing the irrevocable consent of Mortgagor to the entry upon and taking possession of the Mortgaged Property by Lender pursuant to such grant, whether or not foreclosure proceedings have been instituted.

k.  **Assignment of Rights of Declarant under the Condominium Documents**.  The assignment of all of the rights of Mortgagor as Declarant under the Declaration of Condominium of Wisconsin & Milwaukee Condominium and other Condominium Documents, including without limitation, all of Declarant's right, title and interest in and to the easements and other rights reserved under such Declaration of Condominium is and shall be fully operative without any further action on the part of either party and shall constitute a perfect, absolute and present assignment, provided Mortgagor shall be permitted to act as Declarant under the Condominium Documents and to exercise all other rights (except as limited by this assignment) and fulfill all other obligations under the Condominium Documents unless and until the occurrence of an Event of Default.  Such assignment and grant shall continue in effect until Mortgagor's Liabilities are paid in full, the execution of this Mortgage constituting

8

and evidencing the irrevocable consent of Mortgagor to the entry upon and taking possession of the Mortgaged Property by Lender pursuant to such grant, whether or not foreclosure proceedings have been instituted.

l.        **After-Acquired Property**. To the extent permitted by, and subject to, applicable law, the lien of this Mortgage shall automatically attach, without further act, to all property hereafter acquired by Mortgagor located in or on, or attached to, or used or intended to be used in connection with, or with the operation of, the Mortgaged Property or any part thereof.

m.        **Leases Affecting Mortgaged Property**. Mortgagor shall comply with and perform in a complete and timely manner all of its obligations as landlord under all leases affecting the Mortgaged Property or any part thereof. The assignment contained in Section F of the definition of Mortgaged Property shall not be deemed to impose upon Lender any of the obligations or duties of the landlord or Mortgagor provided in any lease.

n.        **Management of Mortgaged Property**. Mortgagor shall cause the Mortgaged Property to be managed at all times in accordance with sound business practices. If required by Lender after the occurrence of an Event of Default, Mortgagor shall provide for professional management of the Mortgaged Property by a property manager satisfactory to Lender pursuant to a contract acceptable to Lender.

o.        **Execution of Leases**. Except as permitted in the Loan Agreement, Mortgagor shall not permit: (i) any leases to be made of all or any portion of the Mortgaged Property or (ii) any material leases of the Mortgaged Property to be modified in any respect, terminated or extended or renewed on different terms, in each case, without the prior written consent of Lender. For purposes hereof, the term "material leases" shall mean (a) any lease in excess of 3,000 rentable square feet and/or (b) any retail lease, regardless of size. Mortgagor shall not lease any portion of the Mortgaged Property for other than its intended use, except with the prior written approval of Lender. Mortgagor, at Lender's request, shall furnish Lender with copies of all executed leases now existing or hereafter made or all for any part of the Mortgaged Property, and all such leases of the Mortgaged Property shall be subordinate to the lien of this Mortgage. Notwithstanding the foregoing, within a reasonable time after request therefor, Lender may, but shall not be obligated to, execute reasonably acceptable nondisturbance agreements agreeing not to disturb the use and occupancy of any tenants or subtenants and the rights of said tenants and subtenants under their leases or subleases, unless such tenant or subtenant is in default under its lease or sublease beyond any applicable grace period and on such other terms as may be reasonably agreed to by Lender, Mortgagor and such tenant or subtenant.

p.        **Expenses**. Without limitation of any obligation of Mortgagor set forth in the Loan Agreement, Mortgagor shall pay when due and payable and otherwise on demand made by Lender, all appraisal fees, recording fees, taxes, brokerage fees and commissions, abstract fees, title insurance fees, escrow fees, attorneys' fees, court costs, documentary and expert evidence fees, fees of inspecting architects and engineers and all other costs and expenses of every character which have been incurred prior to or as of the date hereof or which may hereafter be incurred by Lender in connection with this Mortgage or the administration and enforcement of any term or provision of this Mortgage whether or not suit is brought, including, without limitation, any post judgment fees incurred by Lender in connection with the Mortgage. If Mortgagor fails to pay said costs and expenses as above provided, then Lender may elect, but shall not be obligated, to pay the costs and expenses described in this Section p, and if Lender does so elect, then Mortgagor will, upon demand by Lender, reimburse Lender for all such expenses which have been or shall be paid or incurred by it. The amounts paid by Lender shall bear interest at the

9

default rate in the Note and such amounts, together with interest, shall be added to Mortgagor's Liabilities, shall be immediately due and payable and shall be secured by the lien of this Mortgage and the other Loan Instruments. In the event of foreclosure hereof, Lender shall be entitled to add to the indebtedness found to be due by the court a reasonable estimate of such expenses to be incurred after entry of the decree of foreclosure.

q. **Indemnity.** To the extent permitted by law, Mortgagor agrees to hold harmless Lender against and from, and reimburse it for, all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses, including without limitation reasonable attorneys' fees, which may be imposed upon, asserted against or incurred or paid by it by reason of or in connection with any bodily injury or death or property damage occurring in or upon or in the vicinity of the Mortgaged Property through any cause whatsoever or asserted against it on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Property, this Mortgage, the other Loan Instruments, any of the indebtedness evidenced by the Note or any of Mortgagor's Liabilities.

r. **Lender's Performance of Mortgagor's Obligations.** If Mortgagor fails to pay any tax, assessment, encumbrance or other imposition or to furnish insurance hereunder or to perform any other covenant, condition or term in this Mortgage, the Note, the Loan Agreement or any other Loan Instrument, Lender may, but shall not be obligated to, pay, obtain or perform the same. All payments made, whether such payments are regular or accelerated payments and costs and expenses incurred or paid by Lender in connection therewith shall be due and payable immediately. The amounts so incurred or paid by Lender shall bear interest at the default rate set forth in the Note and such amounts, together with interest, shall be added to Mortgagor's Liabilities and secured by the lien of this Mortgage and the other Loan Instruments. Lender is hereby empowered to enter and to authorize others to enter upon the Mortgaged Property or any part thereof for the purpose of performing or observing any covenant, condition or term that Mortgagor has failed to perform or observe, without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor or the Association or any other condominium owners. Performance or payment by Lender of any obligation of Mortgagor shall not relieve Mortgagor of such obligation or of the consequences of having failed to perform or pay the same and shall not effectuate the cure of any Event of Default.

s. **Payment of Superior Liens.** To the extent that Lender, after the date hereof, pays any sum due under any provision of law or instrument or document creating any lien superior or equal in priority in whole or in part to the lien of this Mortgage, Lender shall have and be entitled to a lien on the Mortgaged Premises equal in parity with that discharged, and Lender shall be subrogated to and receive and enjoy all rights and liens possessed, held or enjoyed by, the holder of such lien, which shall remain in existence and benefit Lender to secure the Note, the Loan Agreement and all obligations and liabilities secured hereby. Lender shall be subrogated, notwithstanding their release of record, to mortgages, trust deeds, superior titles, vendors' liens, mechanics' and materialmen's liens, charges, encumbrances, rights and equities on the Mortgaged Property to the extent that any obligation under any thereof is paid or discharged with proceeds of disbursements or advances under the Note or other indebtedness secured hereby.

t. **Use of the Mortgaged Property.** Mortgagor shall not suffer or permit the Mortgaged Property, or any portion thereof, to be used for any purpose prohibited in the Loan Agreement and other than for the purposes permitted by the Loan Agreement and, without limitation of the foregoing, Mortgagor shall not use or permit the use of the Mortgaged Property or any portion thereof for any unlawful purpose or in any manner in contravention of any applicable law.

10

u. **Environmental Matters.** The representations, warranties, covenants and other terms set forth in the Hazardous Substance Indemnity Agreement are hereby incorporated by reference.

## 2.
## DEFAULTS

a. **Event of Default.** The term **"Event of Default,"** wherever used in this Mortgage, shall mean any one or more of the following events:

(1) The failure by Mortgagor: (i) to pay or deposit when due any deposit for taxes and assessments due hereunder or any other sums to be paid by Mortgagor hereunder; (ii) to keep, perform or observe any covenant, condition or agreement contained in Sections 1.d.i, 1.f.i, 1.f.iii or 1.h hereof or (iii) to keep, perform or observe any other covenant, condition or agreement on the part of Mortgagor in this Mortgage.

(2) The occurrence of an "Event of Default" or "Default" under and as defined in the Loan Agreement or any of the other Loan Instruments.

(3) The untruth of any warranty or representation made herein, in the Loan Agreement or in any of the other Loan Instruments.

(4) An uninsured loss, damage, destruction or taking by eminent domain or other condemnation proceeding of any part of the Mortgaged Property (excluding reasonable and prudent deductibles as may be approved by Lender).

## 3.
## REMEDIES

a. **Acceleration of Maturity.** If an Event of Default shall have occurred, then Lender may declare Mortgagor's Liabilities to be immediately due and payable, and upon such declaration, Mortgagor's Liabilities shall immediately become and be due and payable without further demand or notice. The foregoing shall not be in limitation of any provision contained in any other Loan Instrument, including without limitation any such provision pursuant to which Mortgagor's Liabilities become immediately due and payable without action or election by Lender.

b. **Lender's Power of Enforcement.** If an Event of Default shall have occurred, then Lender may, either with or without entry or taking possession as provided in this Mortgage or otherwise, and without regard to whether or not Mortgagor's Liabilities shall have been accelerated, and without prejudice to the right of Lender thereafter to bring an action of foreclosure or any other action for any Event of Default existing at the time such earlier action was commenced or arising thereafter, proceed by any appropriate action or proceeding: (a) to enforce payment of the Note and/or any other of Mortgagor's Liabilities or the performance of any term hereof or any of the other Loan Instruments; (b) to foreclose this Mortgage and to have sold or transferred, as an entirety or in separate lots or parcels, the Mortgaged Property, in one sale or in any number of separate sales held at one time or at any number of times, all in any manner and upon such notice as provided by the Wisconsin Uniform Commercial Code (the **"Code"**) or Chapter 846 of the Wisconsin Statutes, as the same may be amended or renumbered from time to time or under any other statutory or common law of the State of Wisconsin. Upon the completion of any such sale or sales, Lender shall transfer and deliver or cause to be transferred and delivered to the

11

purchaser Mortgagor's interest in the property so sold, in the manner and form provided by the Code, Chapter 846 of the Wisconsin Statutes or any other statutory or common law of the State of Wisconsin, and Lender is hereby irrevocably appointed the true and lawful attorney-in-fact of Mortgagor, in its name and stead, to make all necessary transfers of property thus sold, and for that purpose, Lender may execute and deliver, for and in the name of Mortgagor, all necessary instruments of assignment and transfer, Mortgagor hereby ratifying and confirming all that said attorney-in-fact shall lawfully do; and (c) to pursue any other remedy available to it at law or in equity. Lender may take action either by such proceedings or by the exercise of its powers with respect to entry or taking possession, or both, as Lender may determine. Without limitation of the foregoing, if an Event of Default shall have occurred, then as an alternative to the right of foreclosure for the full indebtedness evidenced by the Note and the interest accrued thereon and any other Mortgagor's Liabilities, after acceleration thereof, Lender shall have the right to institute partial foreclosure proceedings with respect to the portion of Mortgagor's Liabilities so in default, as if under a full foreclosure and without declaring all of Mortgagor's Liabilities to be immediately due and payable (such proceedings being referred to herein as "partial foreclosure"), and provided that, if Lender has not elected to accelerate all of Mortgagor's Liabilities and a foreclosure sale is made because of default in payment of only a part of Mortgagor's Liabilities, then such sale may be made subject to the continuing lien of this Mortgage for the unmatured part of Mortgagor's Liabilities. Any sale pursuant to a partial foreclosure, if so made, shall not in any manner affect the unmatured portion of Mortgagor's Liabilities, but as to such unmatured portion, this Mortgage and the lien thereof shall remain in full force and effect just as though no foreclosure sale had been made. Notwithstanding the filing of any partial foreclosure or entry of a decree of sale therein, Lender may elect, at any time prior to a foreclosure sale pursuant to such decree, to discontinue such partial foreclosure and to accelerate Mortgagor's Liabilities by reason of any Event of Default upon which such partial foreclosure was predicated or by reason of any other Event of Default and proceed with full foreclosure proceedings. Lender may proceed with one or more partial foreclosures without exhausting its right to proceed with a full or partial foreclosure sale for any unmatured portion of Mortgagor's Liabilities, it being the purpose to permit, from time to time a partial foreclosure sale for any matured portion of Mortgagor's Liabilities without exhausting the power to foreclose and to sell the Mortgaged Property pursuant to any partial foreclosure in respect of any other portion of Mortgagor's Liabilities, whether matured at the time or subsequently maturing and without exhausting at any time the right of acceleration and the right to proceed with a full foreclosure.

        c.         **Lender's Right to Enter and Take Possession, Operate and Apply Income.**

        (1)     If an Event of Default shall have occurred, then Mortgagor, upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Mortgaged Property, and to the extent permitted by law, Lender itself, or by such officers or agents as it may appoint, is hereby expressly authorized to enter and take possession of all or any portion of the Mortgaged Property and may exclude Mortgagor and its agents and employees wholly therefrom.

        (2)     If Mortgagor shall for any reason fail to surrender or deliver the Mortgaged Property or any part thereof after Lender's demand, then Lender may obtain a judgment or decree conferring on Lender the right to immediate possession or requiring Mortgagor to deliver immediate possession of all or part of the Mortgaged Property to Lender, the entry of which judgment or decree Mortgagor hereby specifically consents. Mortgagor shall pay to Lender, upon demand, all costs and expenses of obtaining such judgment or decree and reasonable compensation to Lender, its attorneys and

12

agents, and all such costs, expenses and compensation shall, until paid, be secured by the lien of this Mortgage.

(3) Upon every such entering upon or taking of possession, Lender, to the extent permitted by law, may hold, store, use, operate, manage and control the Mortgaged Property and conduct the business thereof.

d. **Leases**. Lender shall have the right to foreclose this Mortgage subject to the rights, if any, of any or all Tenants of the Mortgaged Property, even if the rights of any such Tenants are or would be subordinate to the lien of this Mortgage; provided, however, Lender may elect to foreclose the rights of some Tenants while foreclosing subject to the rights of other Tenants.

e. **Purchase by Lender**. Upon any foreclosure sale, Lender may bid for and purchase all or any portion of the Mortgaged Property and, upon compliance with the terms of the sale, may hold, retain and possess and dispose of such property in its own absolute right without further accountability.

f. **Application of Foreclosure Sale Proceeds**. The proceeds of any foreclosure sale of the Mortgaged Property or any part thereof received by Lender shall be applied by Lender to the indebtedness secured hereby in such order and manner as Lender may elect.

g. **Agreement to Wisconsin Statutes Section 846.103**. Mortgagor consents and agrees that in the event of the commencement of foreclosure proceedings, Lender may, at such time, elect to proceed according to section 846.103 of the Wisconsin Statutes, as the same may be amended or renumbered from time to time.

h. **Application of Indebtedness Toward Purchase Price**. Upon any foreclosure sale, Lender may apply any or all of the indebtedness and other sums due to Lender under the Note, this Mortgage or any other Loan Instrument to the price paid by Lender at the foreclosure sale.

i. **Waiver of Appraisement, Valuation, Stay and Extension Laws and Redemption Rights**. Mortgagor hereby waives any and all rights of redemption. Mortgagor further agrees, to the full extent permitted by law, that in case of an Event of Default, neither Mortgagor nor anyone claiming through or under it will set up, claim or seek to take advantage of any reinstatement, appraisement, valuation, stay or extension laws now or hereafter in force or take any other action which would prevent or hinder the enforcement or foreclosure of this Mortgage or the absolute sale of the Mortgaged Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser thereat. Mortgagor, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprising the Mortgaged Property marshaled upon any foreclosure of the lien hereof and agrees that Lender or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property in part or as an entirety.

j. **Receiver - Lender in Possession**. If an Event of Default shall have occurred, then Lender, to the extent permitted by law and without regard to the value of the Mortgaged Property or the adequacy of the security for the indebtedness and other sums secured hereby, shall be entitled as a matter of right and without any additional showing or proof, at Lender's election, to either the appointment by the court of a receiver (without the necessity of Lender posting a bond) to enter upon and take possession of the Mortgaged Property and to collect all Rents and apply the same as the court may

13

direct or to be placed by the court into possession of the Mortgaged Property as mortgagee in possession with the same power herein granted to a receiver and with all other rights and privileges of a mortgagee in possession under law. The right to enter and take possession of and to manage and operate the Mortgaged Property and to collect all Rents, whether by a receiver or otherwise, shall be cumulative to any other right or remedy hereunder or afforded by law and may be exercised concurrently therewith or independently thereof. Lender shall be liable to account only for such Rents actually received by Lender, whether received pursuant to this Section j or Section b. Notwithstanding the appointment of any receiver or other custodian, Lender shall be entitled as pledgee to the possession and control of any cash, deposits or instruments at the time held by, or payable or deliverable under the terms of this Mortgage to Lender.

        k.        **Mortgagor to Pay Mortgagor's Liabilities upon Event of Default; Application of Monies by Lender**.

        (1)        Upon occurrence of an Event of Default, Lender shall be entitled to sue for and to recover judgment against Mortgagor for Mortgagor's Liabilities due and unpaid together with costs and expenses, including, without limitation, the reasonable compensation, expenses and disbursements of Lender's agents, attorneys and other representatives, either before, after or during the pendency of any proceedings for the enforcement of this Mortgage; and the right of Lender to recover such judgment shall not be affected by any taking of possession or foreclosure sale hereunder or by the exercise of any other right, power or remedy for the enforcement of the terms of this Mortgage or the foreclosure of the lien hereof.

        (2)        In case of a foreclosure sale of all or any part of the Mortgaged Property and of the application of the proceeds of sale to the payment of Mortgagor's Liabilities, Lender shall be entitled to enforce all other rights and remedies under the Loan Instruments.

        (3)        Mortgagor hereby agrees, to the extent permitted by law, that no recovery of any judgment by Lender under any of the Loan Instruments, and no attachment or levy of execution upon any of the Mortgaged Property or any other property of Mortgagor, shall (except as otherwise provided by law) in any way affect the lien of this Mortgage upon the Mortgaged Property or any part thereof or any lien, rights, powers or remedies of Lender hereunder, but such lien, rights, powers and remedies shall continue unimpaired as before until Mortgagor's Liabilities are paid in full.

        (4)        Any monies collected or received by Lender under this Section k shall be applied to the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of Lender, and the balance remaining shall be applied to the payment of Mortgagor's Liabilities, in such order and manner as Lender may elect, and any surplus, after payment of all Mortgagor's Liabilities shall be paid to Mortgagor.

        l.        **Remedies Cumulative**. No right, power or remedy conferred upon or reserved to Lender by the Note, the Loan Agreement, this Mortgage or any other Loan Instrument or any instrument evidencing or securing Mortgagor's Liabilities is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other Loan Instrument or any instrument evidencing or securing Mortgagor's Liabilities, or now or hereafter existing at law, in equity or by statute.

4.
MISCELLANEOUS PROVISIONS

14

Doc Yr: 2012 Doc# 10156581 Page# 15 of 23

a.    **Heirs, Successors and Assigns Included in Parties.**  Whenever Mortgagor or Lender is named or referred to herein, heirs and successors and assigns of such person or entity shall be included, and all covenants and agreements contained in this Mortgage shall bind the successors and assigns of Mortgagor, including any subsequent owner of all or any part of the Mortgaged Property and inure to the benefit of the successors and assigns of Lender.  This Section a shall not be construed to permit an assignment, transfer, conveyance, encumbrance or other disposition otherwise prohibited by this Mortgage.

b.    **Notices.**  All notices, requests, reports, demands or other instruments required or contemplated to be given or furnished under this Mortgage to Mortgagor or Lender shall be directed to Mortgagor or Lender, as the case may be, in the manner and at the addresses set forth in the Loan Agreement.

c.    **Headings.**  The headings of the articles, sections, paragraphs and subdivisions of this Mortgage are for convenience only, are not to be considered a part hereof and shall not limit, expand or otherwise affect any of the terms hereof.

d.    **Invalid Provisions.**  In the event that any of the covenants, agreements, terms or provisions contained in this Mortgage shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein (or the application of the covenant, agreement or term held to be invalid, illegal or unenforceable to persons or circumstances other than those in respect of which it is invalid, illegal or unenforceable) shall be in no way affected, prejudiced or disturbed thereby and shall be interpreted as closely to the Lender's and Mortgagor's original intent with respect to this Mortgage.

e.    **Changes.**  Neither this Mortgage nor any term hereof may be released, changed, waived, discharged or terminated orally, or by any action or inaction, but only by an instrument in writing signed by the party against which enforcement of the release, change, waiver, discharge or termination is sought.  To the extent permitted by law, any agreement hereafter made by Mortgagor and Lender relating to this Mortgage shall be superior to the rights of the holder of any intervening lien or encumbrance.  Any holder of a lien or encumbrance junior to the lien of this Mortgage shall take its lien subject to the right of Lender to amend, modify or supplement this Mortgage, the Note, the Loan Agreement or any of the other Loan Instruments, to extend the maturity of Mortgagor's Liabilities or any portion thereof, to vary the rate of interest chargeable under the Note and/or the Loan Agreement and to increase the amount of the indebtedness secured hereby, in each and every case without obtaining the consent of the holder of such junior lien and without the lien of this Mortgage losing its priority over the rights of any such junior lien.

f.    **Governing Law.**  This Mortgage shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Wisconsin.  The Mortgaged Property is not homestead property.

g.    **Required Notices.**  Mortgagor shall notify Lender promptly of the occurrence of any of the following: (i) receipt of notice from any governmental authority relating to the violation of any Governmental Requirement, the enforcement of which would materially and adversely affect the Mortgaged Property; (ii) material default by any Tenant of all or any portion of the Mortgaged Property in the performance of its obligations under any Lease or receipt of any notice from any Tenant claiming that a default by Mortgagor in the performance of its obligations under any Lease has occurred; (iii) commencement of any judicial or administrative proceedings by or against or otherwise adversely

15

affecting Mortgagor or the Mortgaged Property; or (iv) receipt of notice from the Association relating to any violation of or default under any of the Condominium Documents or Constituent Documents (as such term is defined in the Condominium Rider).

h. **Future Advances.** This Mortgage is given to secure not only existing indebtedness, but also future advances made by Lender under the Note or the Loan Agreement to the same extent as if such future advances were made on the date of the execution of this Mortgage (and whether such advances are obligatory or are to be made at the option of Lender or otherwise). The total amount of indebtedness that may be so secured may decrease or increase from time to time.

i. **Release.** Upon full payment and satisfaction of Mortgagor's Liabilities, Lender shall issue to Mortgagor an appropriate satisfaction of mortgage in recordable form.

j. **Attorneys' Fees.** Whenever reference is made herein to the payment or reimbursement of attorneys' fees, such fees shall be deemed to include compensation to staff counsel, if any, of Lender in addition to the fees of any other attorneys engaged by Lender.

k. **Compliance with Mortgage Foreclosure Law.** In the event that any provision in this Mortgage shall be inconsistent with any provision of applicable statutory or common law, such statutory or common law shall take precedence over the inconsistent provision of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with such statutory or common law provision. If any provision of this Mortgage shall grant to Lender any rights or remedies upon an Event of Default of Mortgagor which are more limited than the rights that would otherwise be vested in Lender under applicable law, Lender shall be vested with such rights to the full extent permitted by law.

l. **Loan Agreement .** The Loans are governed by the terms and provisions set forth in the Loan Agreement. In the event of any conflict between the terms of this Mortgage and the terms of the Loan Agreement, the terms of the Loan Agreement shall control.

m. **Inspection.** In addition to any rights of inspection provided under the Loan Agreement or other Loan Instruments, Mortgagor shall permit Lender, and its duly authorized agents, experts, engineers and representatives, upon at least 48 hours prior notice, to make or cause to be made entries upon and inspections of the Mortgaged Property during normal business hours at all times during the term hereof. Mortgagor shall assist Lender in conducting all inspections and shall make access available to Lender to all tenant areas.

n. **Waiver of Jury Trial.** MORTGAGOR AND LENDER HEREBY JOINTLY AND SEVERALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS MORTGAGE AND TO ANY OF THE LOAN INSTRUMENTS, THE OBLIGATIONS HEREUNDER OR THEREUNDER, ANY COLLATERAL SECURING THE OBLIGATIONS OR ANY TRANSACTION ARISING THEREFROM OR CONNECTED THERETO. MORTGAGOR AND LENDER EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.

o. **Venue.** AT THE OPTION OF LENDER, THIS MORTGAGE MAY BE ENFORCED IN ANY FEDERAL COURT OR WISCONSIN STATE COURT SITTING IN MILWAUKEE COUNTY, WISCONSIN; AND MORTGAGOR CONSENTS TO THE JURISDICTION AND VENUE OF ANY SUCH COURT AND WAIVES ANY ARGUMENT THAT VENUE IN SUCH

16

FORUMS IS NOT CONVENIENT. IN THE EVENT MORTGAGOR COMMENCES ANY ACTION IN ANOTHER JURISDICTION OR VENUE UNDER ANY TORT OR CONTRACT THEORY ARISING DIRECTLY OR INDIRECTLY FROM THE RELATIONSHIP CREATED BY THIS MORTGAGE, LENDER AT ITS OPTION SHALL BE ENTITLED TO HAVE THE CASE TRANSFERRED TO ONE OF THE JURISDICTIONS AND VENUES ABOVE-DESCRIBED, OR IF SUCH TRANSFER CANNOT BE ACCOMPLISHED UNDER APPLICABLE LAW, TO HAVE SUCH CASE DISMISSED WITHOUT PREJUDICE.

## 5.
## UCC PROVISIONS

The following are applicable to, but do not limit, this Mortgage:

a. **Security Agreement**. This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Code. The Mortgaged Property includes both real and personal property (including, but not limited to, goods and chattels, building materials and supplies, inventory, accounts, chattel paper, instruments and general intangibles, and computer equipment and other information technology) and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property.

b. **Fixture Filing**. By executing and delivering this Mortgage, Mortgagor hereby grants to Lender, as security for Mortgagor's Liabilities, a security interest in the Mortgaged Property to the fullest extent that the Mortgaged Property may be subject to a security interest under the Code. Some of the Mortgaged Property is or is to become fixtures upon the Land, and this fixture filing is to be filed for record in the public real estate records.

c. **Financing Statement**. Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Articles 9 of the Code.

d. **Other Information**. The following information is included: (a) Mortgagor shall be deemed the "debtor"; (b) Lender shall be deemed to be the "secured party" and shall have all of the rights of a secured party under the Uniform Commercial Code; (c) this Mortgage covers goods which are or are to become fixtures; (d) Mortgagor is the record owner of the Land; (e) the legal name and address of the debtor are as set forth above; (f) the state of organization and the organizational identification number of the debtor are Wisconsin and W057260 and (g) the address of the secured party is as set forth above.

e. **Intercreditor Agreement. REFERENCE IS MADE TO THE INTERCREDITOR AGREEMENT. ANYTHING CONTAINED HEREIN TO THE CONTRARY NOTWITHSTANDING, THE LIENS AND SECURITY INTERESTS GRANTED TO LENDER PURSUANT TO THIS MORTGAGE AND THE EXERCISE OF CERTAIN RIGHTS OR REMEDIES BY LENDER HEREUNDER ARE SUBJECT TO THE PROVISIONS OF THE INTERCREDITOR AGREEMENT.**

[SIGNATURE PAGE FOLLOWS]

17

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be executed under seal by its duly authorized officers as of the day and year first above written.

WISCONSIN & MILWAUKEE
HOTEL LLC,
a Wisconsin limited liability company

By: Jackson Street Management LLC,
Manager

By: _Edward G. Carow_ (signature)
Edward G. Carow, Manager

STATE OF WISCONSIN )
                    ) ss.
COUNTY OF MILWAUKEE )

On this 3rd day of August, 2012, personally came before me Edward G. Carow, the Manager of Jackson Street Management LLC, the Manager of Wisconsin & Milwaukee Hotel LLC, a Wisconsin limited liability company, and the person who executed the foregoing instrument on behalf of said limited liability company and acknowledged the same.

[Notarial Seal]

Name: Jon S. Herreman
Notary Public, State of Wisconsin
My Commission: is permanent

*(Notary seal: NOTARY PUBLIC · JON S. HERREMAN · STATE OF WISCONSIN)*

**Signature Page to Mortgage C**

## EXHIBIT A

### LEGAL DESCRIPTION

Unit 1, together with said unit's undivided interest in the common elements all in Wisconsin & Milwaukee Condominium, a condominium declared and existing under and by virtue of the Condominium Ownership Act of the State of Wisconsin and recorded by a Declaration as such condominium in the Office of the Register of Deeds for Milwaukee County, Wisconsin, on December 28, 2011, as Document No. 10067047, said condominium being located in the City of Milwaukee, County of Milwaukee, State of Wisconsin on the real estate described in said Declaration and incorporated herein by this reference thereto.

Tax Key Nos. 392-0735-5, 392-0734-X, 392-0736-0, 392-0737-6 and 392-0738-1

Address 319-327 East Wisconsin Avenue and 625-633 North Milwaukee Street

**EXHIBIT B**

**CONDOMINIUM RIDER**

THIS CONDOMINIUM RIDER is made as of August 31, 2012 and is incorporated into and shall be deemed to amend and supplement the Mortgage of the same date (the "**Security Instrument**") given by WISCONSIN & MILWAUKEE HOTEL LLC, a Wisconsin limited liability company ("**Mortgagor**"), in favor of WISCONSIN HOUSING AND ECONOMIC DEVELOPMENT AUTHORITY, a Wisconsin public body corporate and politic ("**Lender**"), and covering the Mortgaged Property defined and described in the Security Instrument.

The Mortgaged Property includes Unit 1 in, together with an undivided interest in the common elements of, a condominium project known as: Wisconsin & Milwaukee Condominium (the "**Condominium Project**"). If the owners association or other entity which acts for the Condominium Project (the "**Owners Association**") holds title to property for the benefit or use of its members or shareholders, then the Mortgaged Property also includes Mortgagor's interest in the Owners Association and the uses, proceeds and benefits of Mortgagor's interest. All terms not otherwise defined herein shall have the meanings set forth in the Security Instrument.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Mortgagor further covenants and agrees as follows:

A.      **Condominium Obligations.** Mortgagor shall perform all of Mortgagor's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project, including any amendments thereto; (ii) Association Agreement and By-laws of the Owners Association; (iii) Rules and Regulations for the Condominium Project; and (iv) any other equivalent documents governing the Condominium Project and/or the Owners Association. Mortgagor shall promptly pay when due all dues and assessments imposed on Mortgagor and/or levied against Mortgagor's units in the Condominium Project pursuant to the Constituent Documents.

B.      **Property Insurance.** So long as the Owners Association maintains with a generally accepted insurance carrier a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels) for the periods and against such liabilities, casualties and hazards in compliance with Section 1.f.i of the Security Instrument, then Mortgagor's obligation under Section 1.f.i of the Security Instrument to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan and in the event that the Owners Association policy is at any time not in form, amount or substance reasonably satisfactory to Lender, Lender may require Mortgagor to obtain its own property insurance policy that satisfies the provisions of Section 1.f.i of the Security Instrument.

Mortgagor shall give Lender prompt notice of any lapse in required property insurance coverage provided by Owner's Association policy of which Mortgagor has knowledge.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, whether to a unit or to common elements, any proceeds payable to Mortgagor are hereby assigned and shall be paid to Lender for application as provided for in the Security Instrument.

   C. **Public Liability Insurance.** Mortgagor shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount and extent of coverage reasonably satisfactory to Lender, which policy shall name Lender as additional insured.

   D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Mortgagor in connection with any condemnation or other taking of all or any part of the Mortgaged Property, whether of the units or of the common elements or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender as provided for under the Security Instrument.

   E. **Lender's Prior Consent.** Mortgagor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Mortgaged Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain as permitted under the Security Instrument; (ii) any amendment to any provision of the Constituent Documents if the provision is not for the benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

   F. **Remedies.** If Mortgagor does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph shall become additional debt of Mortgagor secured by the Security Instrument. Unless Mortgagor and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the interest rate set forth in the Note and shall be payable, with interest, upon notice from Lender to Mortgagor requesting payment.

   G. **Subunits.** Mortgagor agrees that it will not request nor consent to the creation of a condominium within the Mortgaged Property, a so called "sub-condominium," without Lender's consent, which consent shall not be unreasonably withheld, conditioned or delayed.

**[SIGNATURE PAGE FOLLOWS]**

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and provisions contained in this Condominium Rider.

> **WISCONSIN & MILWAUKEE HOTEL LLC,**
> a Wisconsin limited liability company
>
> By: Jackson Street Management LLC, its Manager
>
> By: _Edward G. Carow_
> Edward G. Carow, Manager

STATE OF WISCONSIN    )
                         ) ss.
COUNTY OF MILWAUKEE    )

On this 30th day of August, 2012, personally came before me Edward G. Carow, the Manager of Jackson Street Management LLC, the Manager of Wisconsin & Milwaukee Hotel LLC, a Wisconsin limited liability company, and the person who executed the foregoing instrument on behalf of said limited liability company and acknowledged the same.

[Notarial Seal]

Name: Jon S. Herreman
Notary Public, State of Wisconsin
My Commission: 6 months

*(Notary seal: NOTARY PUBLIC — JON S. HERREMAN — STATE OF WISCONSIN)*

*This instrument was drafted by:*

*Joseph D. Shumow*

*WHEDA, 201 West Washington Avenue, Suite 700; Madison, Wisconsin 53703*

Doc Yr: 2012 Doc# 10156581 Page# 23 of 23