# COVENANT AGREEMENT

THIS COVENANT AGREEMENT, dated as of January 3, 2022 (as amended, supplemented and restated or otherwise modified from time to time, this "Agreement"), is among WISCONSIN & MILWAUKEE HOTEL LLC, a Wisconsin limited liability company ("WMH"), JACKSON STREET MANAGEMENT LLC, a Wisconsin limited liability company ("JSM") and WISCONSIN & MILWAUKEE HOTEL FUNDING LLC, a Wisconsin limited liability company (the "Purchaser").

## RECITALS

The parties acknowledge the following:

A. Pursuant to a Trust Indenture dated as of August 1, 2012, as amended to date (as so amended, the "Indenture"), between Wisconsin Housing and Economic Development Authority (the "Authority") and Wells Fargo Bank, National Association, as trustee (the "Trustee"), the Authority issued those certain Economic Development Bonds, 2012 Series A, B and C (the "Bonds"). The proceeds of the Bonds were lent by the Authority to finance development of the Project (as defined in the Indenture). Such loans (collectively, the "Loans") are evidenced by a Loan Agreement dated as of August 31, 2012, as amended to date (as so amended, the "Loan Agreement"), between the Authority and WMH. The Purchaser is the owner of the Bonds.

B. The Purchaser also previously made a $2,000,000 loan to JSM. Such loan is evidenced by a Business Note dated the date hereof (the "Note") from JSM payable to the Purchaser.

C. As a condition to restructuring certain terms of the Bonds and the Note, the Purchaser requires that WMH and JSM enter into this Agreement with the Purchaser.

## AGREEMENTS

NOW, THEREFORE, to induce the Purchaser to restructure certain terms of the Bonds and the Note, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, WMH, JSM and the Purchaser agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.01 <u>Certain Defined Terms.</u> Capitalized terms defined in the Indenture shall have the same meanings in this Agreement. In addition to the terms defined in the recitals and elsewhere in this Agreement and the Indenture, the following terms shall have the following meanings:

"Bond Participation Agreement" means that certain Bond Participation Agreement dated October 30, 2015 between JSM and the Purchaser.

**EXHIBIT**

**129**

"Event of Default" has the meaning set forth in section 4.01 herein.

"Excess Cash Flow" means cash flow from the Hotel after payment of all accrued interest on the Loans at the WMH Current Pay Rate, distributions to JSM to permit JSM to pay accrued interest on the Note at the JSM Current Pay Rate, current real estate and personal property tax installments, reserves required by Marriott International, Inc. pursuant to the Franchise Agreement (as defined in the Loan Agreement) and ordinary operating expenses of the Hotel, including funding working capital requirements established by White Lodging pursuant to the Management Agreement (as defined in the Loan Agreement).

"Force Majeure" means an inability to keep the Hotel open of business caused by forces beyond WMH's control, including, without limitation, pandemics or epidemics (but only to the extent such events force other hotels located in downtown Milwaukee to not be able to remain open for business), strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that WMH shall use reasonable efforts which are consistent with accepted practices in the hotel industry to open the Hotel for business as soon as practicable under the circumstances following any such event.

"Hotel" means the Milwaukee Marriott Hotel owned by WMH.

"Interest Payment Requirement" has the meaning assigned to such term in section 2.05 herein.

"JSM Current Pay Rate" has the meaning assigned to the term "Current Pay Rate" in the Note.

"JSM Deferred Interest" has the meaning assigned to the term "Deferred Interest" in the Note.

"Lodging Grant" has the meaning assigned to such term in section 2.08 herein.

"Lodging Reserve" has the meaning assigned to such term in section 2.08 herein.

"No Default Requirement" has the meaning assigned to such term in section 2.05 herein.

"PPP Loan" has the meaning assigned to such term in section 2.09 herein.

"Side Agreement" means that certain Side Agreement dated October 30, 2015 between WMH and the Purchaser.

"Town Bank" means Town Bank, N.A.

"White Lodging" means White Lodging Services Corporation, an Indiana corporation.

"WMH Current Pay Rate" has the meaning assigned to the term "Current Pay Rate" in the Loan Agreement.

"WMH Deferred Interest" has the meaning assigned to the term "Deferred Interest" in the Loan Agreement.

## ARTICLE II
## COVENANTS AND AGREEMENTS

Section 2.01  Covenant Agreement.  This Agreement is the Covenant Agreement referenced in the Loan Agreement.

Section 2.02  Termination of Bond Participation Agreement and Side Agreement.  As of the date hereof, the Bond Purchase Agreement and the Side Agreement are each terminated and no longer have any force or effect.  JSM and WMH acknowledge and agree that the amount of capitalized interest on the Series A Bonds and the related Loan (as defined in the Loan Agreement) as of January 3, 2022, as referenced in that certain Third Supplemental Indenture dated as of the date hereof between the Authority and the Trustee and that certain Third Amendment to Loan Agreement dated as of the date hereof between WMH and the Authority have been reduced by accrued amounts that would otherwise have been payable under the Bond Participation Agreement prior to its termination.  As a result of termination of the Bond Participation Agreement, that certain Bond Payment Deposit and Disbursing Agreement dated October 30, 2015 among the Purchaser, JSM and Town Bank is also terminated.

Section 2.03  Mandatory Prepayment.  WMH shall repay the Loans upon repayment in full of the Note.  JSM will repay the Note upon repayment, redemption or purchase of the Bonds (other than a sale of the Bonds initiated solely by the Purchaser).

Section 2.04  Extension Fee.  In consideration of the Purchaser restructuring certain terms of the Bonds and the Note as of the date hereof, WMH and JSM agree to pay the Purchaser a non-refundable extension fee equal to $100,000.  Such fee is fully earned as of the date hereof, but is due and payable to the Purchaser at maturity or acceleration, repayment, redemption or purchase, as applicable, of the Bonds and/or the Note.

Section 2.05  Asset Management Fees.  WMH shall not pay asset management or similar fees to its affiliates, including JSM, until such time as all interest accrued from and after March 31, 2021 on the Loans at the WMH Current Pay Rate (including any of such interest that is permitted to be converted to WMH Deferred Interest) and all interest accrued from and after March 31, 2021 on the Note at the JSM Current Pay Rate (including any of such interest that is permitted to be converted to JSM Deferred Interest) is paid in full (the "Interest Payment Requirement") and no Event of Default exists (the "No Default Requirement").  To the extent not paid as a result of the foregoing restriction, the asset management fee to WMH's affiliates shall accrue.  While the Interest Payment Requirement and No Default Requirement are met, WMH shall be permitted to pay JSM an asset management fee equal to 1% of gross revenue of the Hotel, including any accrued amount of asset management fee calculated at such rate previously prohibited from being paid based on the restriction herein.

Section 2.06  Dividends and Distributions; Loan Payments. Until such time as all interest accrued from and after March 31, 2021 on the Bonds (including all WMH Deferred Interest) and the Note (including all JSM Deferred Interest) are paid in full and no Event of Default exists, WMH shall not make and JSM shall not accept (or permit its affiliates to accept) dividends or distributions or payments on any loans or advances from JSM or its affiliates other than distributions to JSM to enable JSM to make interest payments under the Note.

For the avoidance of doubt, Exhibit B details accrued interest on the Bonds and the Note, including amounts required to be paid prior to payment of asset management or similar fees to its affiliates as referenced in Section 2.05 and dividends, distributions or payments on any loans or advances from JSM or its affiliates as referenced in this Section 2.06.

Section 2.07  FF&E Funds. As of the date hereof, the balance in the FF&E Reserve is $_____. The Purchaser consents to WMH's use of all of the FF&E Reserve; provided that the proceeds thereof are used to pay (a) installments of personal property and real estate taxes for the Hotel as they become due, (b) ordinary operating expenses of the Hotel as incurred, including amounts for working capital requirements established by White Lodging pursuant to the Management Agreement (as defined in the Loan Agreement) and reserves required by Marriott International, Inc. pursuant to the Franchise Agreement (as defined in the Loan Agreement), if any, (c) the monthly fee of $6,000 payable to JLL for continued oversight of Hotel operations, and (d) legal, accounting and other consulting fees incurred by WMH in connection with the Hotel and its operations and payable other than to affiliates of WMH. In no event shall Mallery s.c. be deemed an affiliate of WMH for purposes of this Agreement. Except for the reserves expressly referenced herein (the FF&E Reserve, the PPP Reserve and the Lodging Grant Reserve), unless and to the extent required by Marriott International, Inc. pursuant to the Marriott Franchise Agreement, WMH shall not be required to escrow for real estate taxes, furniture, fixtures and equipment or any other items relating to the Hotel. As a condition to the effectiveness of this Agreement, WMH will enter into a pledge and control agreement providing the Purchaser with control over the FF&E Reserve and the Tax Escrow account maintained for WMH by Town Bank; provided the Purchaser agrees to permit the use of such reserve funds as provided above and White Lodging agrees and consents the pledge and control agreement. WMH will use commercially reasonable efforts to obtain White Lodging's agreement and consent to the pledge and control agreement.

Section 2.08  Lodging Grant Funds. A portion of the proceeds of a State of Wisconsin lodging grant (the "Lodging Grant") received by WMH have been deposited into a reserve account at Town Bank (the "Lodging Reserve"). As of the date hereof, the balance in the Lodging Reserve is $632,500. So long as no Event of Default exists, and to the extent revenues from the Hotel, together with other reserve funds available for operation of the Hotel, are insufficient for payment when due, the Purchaser shall consent to release of funds from the Lodging Reserve to pay (a) installments of personal property and real estate taxes for the Hotel as they become due, (b) ordinary operating expenses of the Hotel as incurred, including amounts for working capital requirements established by White Lodging pursuant to the Management Agreement (as defined in the Loan Agreement) and reserves required by Marriott International, Inc. pursuant to the Franchise Agreement (as defined in the Loan Agreement), if any, (c) the monthly fee of $6,000 payable to JLL for continued oversight of Hotel operations, and (d) legal, accounting and other consulting fees incurred by WMH in connection with the Hotel and its operations and payable other than to affiliates of WMH. As a condition to the effectiveness of this Agreement, WMH will enter into a pledge and control agreement providing the Purchaser with control over the Lodging Reserve account maintained for WMH by Town Bank; provided the Purchaser agrees to permit the use of such reserve funds as provided above.

Section 2.09  PPP Loan. WMH received a second round loan under the Paycheck Protection Program (the "PPP Loan") in the amount of $1,066,828. The proceeds of the PPP Loan have been deposited in a restricted account at Town Bank (the "PPP Reserve"). As a condition to the effectiveness of this Agreement, on the date hereof WMH is paying the Purchaser $426,731.20 from the PPP Reserve to pay a portion of the interest accrued on the Series A Bonds and the related Loan (as defined in the Loan Agreement) from and after July 1, 2020 and reducing the amount of interest thereon otherwise being capitalized. The balance of the PPP Reserve will be applied by WMH to pay payroll costs and other eligible costs under the Paycheck Protection Program and associated with operation of the Hotel and to repay any amount of the PPP Loan and other loans granted to WMH under the Paycheck Protection Program and not otherwise forgiven.

Section 2.10  Application of Excess Cash; Available Cash. Purchaser, WMH and JSM agree that all Excess Cash Flow will be applied by WMH 100% to WMH Deferred Interest until paid in full, and then to JSM Deferred Interest until paid in full.

References in the Loan Agreement and Note to excess cash flow of WMH for purposes of the special payment provisions therein shall be calculated as Excess Cash Flow prior to payment of debt service on the Loans and distributions to JSM to fund payments on the Note.

WMH shall timely provide the Purchaser such financial reporting as is reasonably requested to verify cash flows of the Hotel and application thereof.

Section 2.11  Operations. WMH shall cause the Hotel to remain open during the term of the Bonds, subject to Force Majeure.

Section 2.12  Loan Agreement Modifications. As between the Purchaser (as owner of the Bonds) and WMH, with respect to the Loan Agreement:

(a) The Purchaser will not declare or request that the Authority declare an Event of Default (as defined in the Loan Agreement) as a result of an event occurring under section 6.1(a) of the Loan Agreement unless the Purchaser has provided written notice of such failure and WMH has failed to make such payment within five (5) days after such notice; provided further, WMH's failure to make required payments as and when due (whether or not cured within the cure period) on more than three occasions during the term of the Loans shall be deemed an Event of Default under the Loan Agreement without notice from WMH;

(b) The Purchaser will not declare or request that the Authority declare an Event of Default (as defined in the Loan Agreement) as a result of an event occurring under section 6.1(d) of the Loan Agreement; for the avoidance of doubt, such events shall be subject to section 6.1(e) of the Loan Agreement; and

(c) The Purchaser will not declare or request that the Authority declare an Event of Default (as defined in the Loan Agreement) of a result of an event occurring under section 6.1(j) or section 6.1(k) of the Loan Agreement unless WMH has failed to cure such event within the notice and cure provisions of section 6.1(e) of the Loan Agreement.

(d) WMH shall be permitted to obtain unsecured loans from third parties after January 3, 2022; provided that each such loan shall be fully subordinated in favor of Purchaser at the time of incurrence pursuant to a subordination agreement in form and substance reasonably acceptable to Purchaser (terms shall include permission to make interest only payments so long as the Interest Payment Requirement and the No Default Requirement are met).

Section 2.13  **Financial Statements**.  WMH shall directly furnish to the Purchaser by email the quarterly and annual financial statements and reports required pursuant to section 5.1(a), (k) and (l) of that the Loan Agreement.  The Purchaser shall hold and keep all financial statements and other information provided by WMH to the Purchaser relating to WMH or WMH's business confidential and limit the distribution and access to such information (except to the extent the Purchaser may be legally compelled or required by law to disclose such information) to officers of the Purchaser and the Purchaser's accountants and attorneys to the extent necessary to advise the Purchaser in connection with this matter; provided, the Purchaser shall require such professionals to keep such information confidential.  Notwithstanding the foregoing, in no event shall such information be disclosed to Kyle Strigenz or Joseph Klein.

Failure by Borrower to furnish to Lender the financial statements when required under this section 2.13 herein shall constitute an Event of Default if such event continues for 30 days after the date the Purchaser gives notice of such failure by email to WMH and Jon Herreman, counsel for Borrower.  Upon such a default, and as Lender's sole remedy for such a default, Borrower shall pay Lender a fee of $500 per day until such financial statements are delivered to Lender as required.

# ARTICLE III
# CONDITIONS PRECEDENT

Section 3.01  **Required Documents**.  This Agreement shall be effective upon the

Purchaser's receipt of all of the documents and payments referenced on Exhibit A, duly executed, as applicable, by all the parties thereto; provided, however, WMH, JSM and Purchaser may execute and deliver the documents to which each is a party into an escrow pending signature of the Authority and Trustee as applicable. In such event, WMH, JSM and Purchaser shall enter into an escrow agreement pursuant to which the documents shall be held pending full execution by the Authority and Trustee, as applicable. Notwithstanding such escrow, the payments to Purchaser referenced on Exhibit A shall be made on or about the date hereof.

## ARTICLE IV
## EVENTS OF DEFAULT

Section 4.01  Events of Default.  The occurrence of any of the following events (whatever the reason for such event and whether voluntary, involuntary, or effected by operation of law) shall be an "Event of Default" hereunder:

(a) any "event of default" shall have occurred and is continuing under any of the Indenture, the Loan Agreement or the Note (as defined respectively therein), beyond any applicable notice and cure period provided therein; or

(b) failure by WMH or JSM to observe or perform any covenant or agreement contained in this Agreement, which Borrower fails to cure within 30 days after receipt of written notice from Lender.

Section 4.02  Consequences of an Event of Default.  An Event of Default shall constitute an "event of default" under the Loan Agreement and the Note (as defined respectively therein).

## ARTICLE V
## MISCELLANEOUS

Section 5.01  Governing Law.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF WISCONSIN.

Section 5.02  Prior Understandings.  This Agreement supersedes all other prior understandings and agreements, whether written or oral, among the parties hereto relating to the matters referenced herein.

Section 5.03  Limited Recourse With Respect to Guaranty.  Notwithstanding anything to the contrary in that certain Continuing Guaranty (Unlimited) dated as of the date hereof from WMH to the Purchaser (the "Guaranty") related to obligations of JSM to the Purchaser, the Purchaser's recourse against WMH with respect to the Guaranty shall be limited to enforcement of the Real Estate Mortgage dated as of the date hereof from WMH to the Purchaser.

Section 5.04  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first above written.

[Signature Page Follows]

IN WITNESS WHEREOF, this Agreement has been executed and delivered as of the date first set forth above.

WISCONSIN & MILWAUKEE HOTEL LLC

By: Jackson Street Management LLC, Manager

By: _____/s/ Mark Flaherty_____
Mark Flaherty, Manager

JACKSON STREET MANAGEMENT LLC

By: _____/s/ Mark Flaherty_____
Mark Flaherty, Manager

WISCONSIN & MILWAUKEE HOTEL FUNDING LLC

By:_____
Name:_____
Title: Manager

**Signature Page to Covenants Agreement**

IN WITNESS WHEREOF, this Agreement has been executed and delivered as of the date first set forth above.

WISCONSIN & MILWAUKEE HOTEL LLC

By: Jackson Street Management LLC, Manager

By: _____
Randall G. Erkert, Manager

JACKSON STREET MANAGEMENT LLC

By: _____
Randall G. Erkert, Manager

WISCONSIN & MILWAUKEE HOTEL FUNDING LLC

By: _____
Name: Daniel Wycklendt
Title: Manager

**Signature Page to Covenants Agreement**

# EXHIBIT A

## CLOSING CHECKLIST - DEBT RESTRUCTURING

LENDER: Wisconsin & Milwaukee Hotel Funding LLC

PROJECT OWNER: Wisconsin & Milwaukee Hotel LLC

AFFILIATE BORROWER: Jackson Street Management LLC

CLOSING DATE: as of January 3, 2022

| | Documents to be Executed and/or Delivered at or Prior to Closing | Responsible Party | Status |
|---|---|---|---|
| 1. | Term Sheet | Reinhart | Completed-dated 5/28/21 |
| 2. | Replacement Business Note (Affiliate Borrower) | Reinhart | Revised draft circulated 1/4 |
| 3. | Guaranty of Project Owner | Reinhart | Revised draft circulated 1/4 |
| 4. | Mortgage | Reinhart | Revised draft circulated 1/4 |
| 5. | Account Pledge and Control Agreement (FF&E and Tax Escrow) | Reinhart | Revised draft circulated 1/4 |
| 5. | Account Pledge and Control Agreement (Lodging Grant) | Reinhart | Revised draft circulated 1/4 - need account number completed |
| 6. | Third Supplemental Indenture | Foley | Revised draft circulated 1/4 - Schedule I added |
| 7. | Replacement 2012 Series A Bond | Foley | Revised draft circulated 11/2 |
| 8. | Replacement 2012 Series B Bond | Foley | Revised draft circulated 11/2 |
| 9. | Replacement 2012 Series C Bond | Foley | Revised draft circulated 11/2 |
| 10. | Third Amendment to Loan Agreement | Foley | Revised draft circulated 1/4 |
| 11. | Second Restated Promissory Note (Series A) | Foley | Revised draft circulated 11/2 |
| 12. | Restated Promissory Note (Series B) | Foley | Revised draft circulated 11/2 |
| 13. | Restated Promissory Note (Series C) | Foley | Revised draft circulated 11/2 |
| 14. | Covenant Agreement | Reinhart | Revised draft circulated 1/4 (need to complete FF&E balance) |

45282414v2

| 15. | Subordination Agreement | Reinhart | Revised draft circulated 1/4 |
| --- | --- | --- | --- |
| 16. | Bond Counsel Opinion | Foley | |
| 17. | Payment of accrued interest from PPP funds equal to $426,731.20 (applied to older interest) | Affiliate Borrower | |
| 18. | Payment of accrued Current Pay interest for October - December | Affiliate Borrower | |
| 19. | Deposit of $632,500 from Lodging Grant into controlled account | Affiliate Borrower | |
| 20. | Evidence of release of Town Bank liens | Affiliate Borrower | Completed |

45282414v2    2
Case 24-21743-gmh    Doc 638-29    Filed 07/11/25    Page 12 of 13

| | WMHF | | | | | | | | 10/1/21 - 12/31/2021 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Bonds & JSM Note Summary | | | | | | | | | | | | |
| | C:\Users\dschulz\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\VF6R4S6W\[Milwaukee Marriott Debt Schedules (003).xlsx]Sum | | | | | | | | | | | | |
| | | Accrued Interest 3/31/2021 | | Accrued Interest 9/30/2021 | 10/1/2021 | | 1/31/2022 | 1/31/2022 | Current Pay Rate Interest | 3/31/2022 Interest due | 3/31/2022 Interest due | | |
| | Original Principal | To be Capitalized | Call Protection Offset | To be Capitalized | New Principal Balance | 1/31/2022 Payment | Deferred Interest Capitalized | New Principal Balance | Paid 1/31/2022 | Before Pmt of Management Fee | Before Pmt of Dividends | | |
| A Bond | 32,737,600.00 | 1,440,199.77 | (424,898.92) | 991,716.49 | 34,744,617.34 | (426,731.20) | 346,789.88 | 34,664,676.02 | 177,583.60 | 403,206.35 | 1,716,198.49 | | |
| B Bond | 2,262,400.00 | 70,056.94 | | 48,238.74 | 2,380,695.68 | | 13,289.50 | 2,393,985.18 | 12,001.32 | 27,467.99 | 77,610.25 | | |
| C Bond | 7,500,000.00 | 232,243.12 | | 159,914.43 | 7,892,157.55 | | 17,748.35 | 7,909,905.90 | 39,785.12 | 91,013.38 | 77,610.25 | | |
| Total Bonds | 42,500,000.00 | 1,742,499.83 | (424,898.92) | 1,199,869.66 | 45,017,470.57 | (426,731.20) | 377,827.73 | 44,968,567.10 | 229,370.04 | 521,687.72 | 1,871,419.00 | | |
| JSM Note | 2,000,000.00 | 56,301.34 | | 38,661.29 | 2,094,962.63 | | 9,671.27 | 2,104,633.90 | 10,560.91 | 24,203.71 | 60,565.99 | | |
| Total | 44,500,000.00 | 1,798,801.17 | (424,898.92) | 1,238,530.95 | 47,112,433.20 | (426,731.20) | 387,499.00 | 47,073,201.00 | 239,930.95 | 545,891.43 | 1,931,984.99 | | |
| | | | | | | | | | | | | Total | |
| Payment | 1/31/2022 | | | | | 426,731.20 | | | 239,930.95 | | | 666,662.15 | PPP payment and current pay Oct-Dec 2021 interest |
| | 2/1/2022 | | | | | | | | 80,844.09 | | | 80,844.09 | current pay January 2022 interest |
| | 3/1/2022 | | | | | | | | 73,148.13 | | | 73,148.13 | current pay February 2022 interest |