# SUBSCRIPTION AGREEMENT

# WISCONSIN & MILWAUKEE HOTEL LLC

## A WISCONSIN LIMITED LIABILITY COMPANY

This Agreement is made and entered into by and between the undersigned (**"Purchaser"**) and WISCONSIN & MILWAUKEE HOTEL LLC, a Wisconsin limited liability company (**"Company"**).

## RECITALS

The Company has been organized in the State of Wisconsin pursuant to its Articles of Organization and the Amended and Restated Operating Agreement (**"Operating Agreement"**). The relative rights, qualifications, and obligations of the Members are provided for in the Operating Agreement.

## CLAUSES

1. **Subscription.** Subject to the terms and conditions hereof, the undersigned hereby tenders this irrevocable subscription to purchase the Class B Units stated on the Signature Page hereof, together with its Capital Contribution with respect to such Class B Units as provided by Section 6 below. This subscription may be rejected by the manager of the Company (the "**Manager**") for any reason whatsoever. A Purchaser of Class B Units hereby accepts and adopts each and every provision of the Operating Agreement and agrees to be bound thereby upon acceptance by the Manager of all or any portion of this subscription.

2. **Subscription Proceeds.** Pending acceptance by the Company, Purchaser's Initial Capital Contribution shall be maintained by the Company separate and apart from all other funds. The Manager will have the right to use Purchaser's Capital Contribution for proper Company purposes immediately following acceptance by the Company of Purchaser's subscription and the closing of the sale of the Class B Units subscribed for hereunder.

3. **Investment Suitability.** Purchaser acknowledges and agrees that the Class B Units will not to be registered under the Securities Act of 1933, as amended (**"Act"**), or under any applicable state securities laws (collectively, the **"Laws"**) and are being offered and sold in reliance upon exemptions from registration under said Act and Laws. The undersigned hereby represents and warrants to the Company, the Manager and the Members of the Company, that Purchaser is an Accredited Investor as defined in Regulation D of the Securities Act of 1933 for the following reasons:

EXHIBIT

11

PLEASE INITIAL THE STATEMENTS BELOW WHICH ARE TRUE AS TO YOU IN THE BOX TO THE LEFT THEREOF.

\_\_\_\_\_ That the Purchaser is a natural person(s) whose individual net worth, or joint net worth with that person's spouse, exclusive of the value of the primary residence, at the time of subscription for the Class B Units exceeds $1,000,000; or

\_\_\_\_\_ That the Purchaser is a natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year; or

\_\_\_\_\_ That the Purchaser is a corporation, partnership, trust or other entity in which one of the two alternative representations contained above is true with respect to each and every equity owner of said entity; or

\_\_\_\_\_ That the Purchaser is a broker or dealer registered under Section 15 of the Securities Exchange Act of 1934; or

\_\_\_\_\_ That the Purchaser is a corporation, partnership, limited liability company, an organization described under 501(c)(3) of the Internal Revenue Code of 1986, as amended, or a Massachusetts or similar business trust, not formed for the specific purpose of acquiring the Class B Units and having total assets in excess of $5,000,000;

\_\_\_\_\_ That the Purchaser is: (a) a trust with total assets in excess of $5,000,000 not formed for the specific purpose of the investment whose purchase is directed by a sophisticated person described in Rule 506(b)(2)(ii) of the Act or (b) a trust which is a grantor trust and the grantor of such trust is an Accredited Investor; or

\_\_\_\_\_ That the Purchaser is: (a) a "family office," as defined in rule 202(a)(11)(G)-1 under the Investment Advisers Act of 1940 (17 CFR 275.202(a)(11)(G)-1): (i) with assets under management in excess of $5,000,000, (ii) that was not formed for the specific purpose of acquiring the Class B Units, and whose prospective investment is directed by a person who has such knowledge and experience in financial and business matters that such family office is capable of evaluating the merits and risks of the prospective investment; or (b) a "family client," as defined in rule 202(a)(11)(G)-1 under the Investment Advisers Act of 1940 (17 CFR 275.202(a)(11)(G)-1)), of a family office meeting the requirements in paragraph (a) of this section and whose prospective investment in Class B Units is directed by such family office.

**4.** **Representations and Warranties of Purchaser.** Purchaser hereby represents and warrants as follows:

(a) Purchaser has received and carefully read and understands this Subscription Agreement and the Operating Agreement and is aware of the risks associated with an investment in the Company. In evaluating the suitability of an investment in the Company, the Purchaser has not relied upon any representations or other information (whether oral or written) other than as set forth in any documents furnished to him or her by the Company.

(b) Purchaser has been provided an opportunity to obtain additional information concerning the Company, the Class B Units, the business of the Company, and any other relevant matters and has been given the opportunity to ask questions of, and receive answers from, the Company and its Manager concerning the terms and conditions upon which the Class B Units are being issued and sold and to obtain such additional information necessary to verify the accuracy of the information provided.

(c) Purchaser understands that no federal or state agency has made any recommendation or endorsement of the Class B Units, nor has any federal or state agency made any finding or determination as to the adequacy or accuracy of the information provided to Purchaser, or as to the fairness of this offering for investment.

(d) Purchaser acknowledges that (i) the Class B Units will be issued pursuant to applicable exemptions from registration under the Laws, and (ii) the Class B Units have not been registered under the Act, in reliance on exemptions therefrom. In connection therewith, Purchaser hereby covenants and agrees that Purchaser will not offer, sell, or otherwise transfer the Class B Units unless and until Purchaser obtains the consent of the Manager and such Class B Units are registered pursuant to the Act and the laws of all jurisdictions which in the opinion of the Company may be applicable or unless such Class B Units are, in the opinion of the Company, otherwise exempt from registration thereunder.

(e) Purchaser acknowledges and is aware that there are substantial restrictions on the transferability of the Class B Units. In the foreseeable future, there will be no public market for the Class B Units and the Company is under no obligation, nor has any representation been made, to register the Class B Units at some future date.

(f) Purchaser is acquiring the Class B Units for investment, for Purchaser's own account and not with a view to resell or otherwise distribute the Class B Units and has not, and does not, intend to divide Purchaser's participation with others or to resell or otherwise dispose of all, or any part of, said Class B Units.

(g) If an individual Purchaser is of majority age or over and is a bona fide resident of the State set forth in the resident address which Purchaser has set forth in the Signature Page hereof and has no present intention of becoming a resident of any other state or jurisdiction.

(h) To the best of Purchaser's knowledge, no action, suit, arbitration, government investigation or legal or administrative proceeding is pending or is threatened against the Purchaser in any court or in any governmental agency or arbitration tribunal which, if determined adversely to Purchaser, would have a material adverse effect upon the Purchaser or which affects or relates in any way to the ability of the Purchaser to fulfill, perform and comply

3

with the agreements, representations and warranties on the part of Purchaser to be fulfilled, performed or complied with in accordance with the provisions hereof.

(i) Because the Class B Units have not been registered under the Act or applicable state securities laws, the economic risk of the investment must be borne indefinitely by the Purchaser, and the Class B Units cannot be sold unless subsequently registered under the Act and such state laws or exemptions from otherwise applicable registration requirements are available. Registration under the Act and such state laws is unlikely at any time in the future. Neither the Manager nor the Company is obligated to file an offering statement under Regulation A of the Act or a registration statement under the Act. Rule 144 adopted under the Act and governing the possible disposition of the Class B Units is not currently available or anticipated to be available in the future, and neither the Manager nor the Company has covenanted to take any action necessary to make such Rule available for a resale of the Class B Units. It is not anticipated that there will be any market for resale of the Class B Units.

(j) No assignment, sale, transfer, exchange or other disposition of the Class B Units can be made except as specifically permitted in the Operating Agreement.

(k) The Purchaser recognizes that an investment in the Company involves a substantial degree of risk; and the Purchaser has taken full cognizance of and understands all of the risk factors, including risks associated with the Federal tax aspects of an investment in the Company.

(l) The Purchaser has discussed with Purchaser's professional, legal, tax and financial advisers the suitability of an investment in the Company for his or her particular tax and financial situation. All information that the Purchaser has provided to the Company including Purchaser's financial position is correct and complete as of the date set forth below, and if there should be any material change in such information, Purchaser will immediately provide such information to the Company.

(m) If this Subscription Agreement is executed and delivered on behalf of a partnership, corporation, trust or other entity, the undersigned has been duly authorized to execute and deliver this Subscription Agreement and all other instruments and documents executed and delivered on behalf of such entity in connection with the purchase of the Class B Units; the signature of the undersigned is binding upon such entity; and the undersigned has delivered herewith the underlying partnership agreement, corporation charter documents, or trust agreement of such entity and such other evidence of the ability of such entity to purchase the Class B Units as may be requested by the Company. Such entity has previously made other investments or engaged in other substantive business activities prior to receiving an opportunity to purchase Class B Units and was not formed with a view to invest in the Class B Units.

(n) Purchaser has knowledge and experience in financial and business matters and investments; Purchaser's financial condition is such that Purchaser has no need for liquidity with respect to Purchaser's investment in the Class B Units to satisfy any existing or contemplated undertaking or indebtedness; Purchaser is able to bear the economic risk of Purchaser's investment in the Class B Units for an indefinite period of time including the risk of losing Purchaser's entire

investment in the Class B Units, and loss of Purchaser's entire investment in the Class B Units would not materially adversely affect the standard of living of Purchaser and Purchaser's family; Purchaser's overall commitment to investments which are not readily marketable is not (and the acquisition of Class B Units will not cause such overall commitment to become) disproportionate to the Purchaser's net worth; Purchaser has either secured independent tax advice with respect to the investment in the Class B Units, upon which Purchaser is solely relying, or Purchaser is sufficiently familiar with income taxation of partnerships and limited liability companies that Purchaser has deemed such independent advice unnecessary; and Purchaser is acquiring Purchaser's Class B Units for investment, for Purchaser's own account and with no view toward resale or further distribution thereof, in whole or in part.

(o) Purchaser, if not a U.S. Person or an Affiliate of the Company (as such terms are defined in Regulation S), represents and agrees that: (i) at the time Purchaser executed this Subscription Agreement, Purchaser was outside the United States, its territories and possessions; (ii) Purchaser: (a) will not, during the period commencing on the acceptance of the Subscription Agreement by the Company and ending on the day 40 days after the Offering Termination Date (the "**Restricted Period**"), offer or sell any of the Class B Units in the United States, its territories or possessions, or to a U.S. Person or for the account or benefit of a U.S. Person, other than in accordance with Rules 903 or 904 of Regulation S, and (b) will, after the expiration of the Restricted Period, offer, sell, pledge or otherwise transfer the Class B Units only pursuant to registration under the Act or an available exemption therefrom and, in any case in accordance with ethical state and foreign securities laws; (iii) none of Purchaser, its affiliates or any person acting on behalf of the Purchaser or such affiliates has engaged, or will engage, in any Directed Selling Efforts (as defined in Regulation S) with respect to the Class B Units or any distribution as that term is defined in the definition of Distributor (as defined in Rule 902 in Regulation S) with respect to the Class B Units; (iv) the transactions contemplated with respect to this Offering: (a) have not been pre-arranged with a purchaser located in the United States, its territories or possessions, or who is a U.S. Person, and (b) are not part of a plan or scheme to evade the registration provisions of the Act; and (iv) if Purchaser offers and sells any of the Class B Units during the Restricted Period, then he, she or it will do so only: (a) in accordance with the provisions of Regulation S, (b) pursuant to the registration of the Class B Units under the Act, or (c) pursuant to an available exemption from the registration requirements of the Act.

(p) Purchaser represents and warrants that Purchasers and, if Purchaser is an entity, any beneficial owner of it is: (i) not a "blocked" person listed in the Annex to Executive Order Nos. 12947, 13099 and 13224 and all modifications thereto or thereof (as used in this paragraph only, the "**Annex**"); (ii) in full compliance with the requirements of the Patriot Act (defined below) and all other requirements contained in the rules and regulations of the Office of Foreign Assets Control, Department of the Treasury ("**OFAC**"); (iii) operated under policies, procedures and practices, if any, that are in compliance with the Patriot Act and available for review and inspection by the Manager or any lender to or for the benefit of the Company during normal business hours and upon reasonable prior notice; (iv) not in receipt of any notice from the Secretary of State or the Attorney General of the United States or any other department, agency or office of the United States claiming a violation or possible violation of the Patriot Act; (v) not listed as a Specially Designated Terrorist or as a "blocked" person on any lists maintained by the OFAC pursuant to the Patriot Act or any other list of terrorists or terrorist organizations maintained

pursuant to any of the rules and regulations of the OFAC issued pursuant to the Patriot Act or on any other list of terrorists or terrorist organizations maintained pursuant to the Patriot Act; (vi) not a person who has been determined by competent authority to be subject to any of the prohibitions contained in the Patriot Act; (vii) not owned or controlled by or now acting and or will in the future act for or on behalf of any person named in the Annex or any other list promulgated under the Patriot Act or any other person who has been determined to be subject to the prohibitions contained in the Patriot Act; and (viii) not a Person subject to trade restrictions under U.S. law, including but not limited to, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 *et seq.*, The Trading with the Enemy Act, 50 U.S.C. App. 1 *et seq.*, and any Executive Orders or regulations promulgated thereunder. Moreover, Purchaser represents and warrants that none of the funds it used or will use to satisfy its capital commitment to the Company have been derived from any unlawful activity. All capitalized words and phrases and all defined terms used in the USA Patriot Act of 2001, 107 Public Law 56 (October 26, 2001) and in other statutes and all orders, rules and regulations of the United States government and its various executive departments, agencies and offices related to the subject matter of the Patriot Act, including Executive Order 13224 effective September 24, 2001 (collectively referred to in this paragraph only as the "**Patriot Act**") and are incorporated into this paragraph.

5. **Survival of Representations and Warranties.** Purchaser agrees that the statements made by Purchaser herein, including any attachments hereto, and that the representations and warranties made in Section 4 above, are true, accurate and complete as of the date hereof and shall be true, accurate and complete as of the date of acceptance hereof. If in any respect such statements, representations and warranties shall not be true, accurate and complete prior to such dates, Purchaser shall give written notice of such fact to the Company specifying such statements, representations and warranties that are not true, accurate and complete and the reasons therefor.

6. **Payment of Subscription.** The amount of Purchaser's subscription is set forth on the Signature Page hereof (the "**Subscription Amount**"). The Purchaser must pay, concurrently with the submission of this Agreement, by wire transfer pursuant to wire instructions provided by the Company, an amount equal to the Subscription Amount. If the Purchaser's subscription is accepted, its Subscription Amount will constitute the Purchaser's Capital Contribution to the Company. If the Purchaser's subscription is rejected in whole or in part, the portion of the Subscription Amount applicable to the rejected subscription shall be returned to the Purchaser.

7. **Irrevocable Subscription.** The Purchaser hereby acknowledges and agrees that this subscription is irrevocable and may not be cancelled, revoked or withdrawn by the Purchaser, and that this Subscription Agreement and the documents submitted herewith shall survive (i) changes in the Operating Agreement or other transactions, documents or instruments referenced in this Agreement that are not material, and (ii) death or disability of the Purchaser.

8. **Termination.** If this Agreement is not accepted by the Manager and the Class B Units subscribed for hereunder are not issued to Purchaser within forty-five (45) days of the date of this Agreement, this Agreement will terminate and the Capital Contribution applicable to the terminated subscription shall be returned to the Purchaser.

**9. Record Ownership.** The undersigned's Class B Units will be owned and should be shown on the Company's records as indicated on the Signature Page hereof.

**10. Indemnification.** Purchaser understands and acknowledges that the Company is relying upon the representations, warranties and agreements made by Purchaser to the Company herein and, thus, hereby agrees to indemnify the Company and the Manager, and agrees to hold each of them harmless from and against any and all loss, damage, liability, cost or expense, including reasonable attorney's fees, that they or any of them may suffer, sustain or incur by reason of or in connection with any misrepresentation or breach of warranty or agreement made by the Purchaser under this Subscription Agreement or in connection with the sale or distribution by the Purchaser of the Class B Units purchased by Purchaser pursuant hereto in violation of the Operating Agreement, the Act or any other applicable law.

**11. Miscellaneous.**

(a) All notices required or permitted hereunder shall be in writing, signed by the party giving notice or an officer thereof and shall be deemed to have been given when delivered by personal delivery, by facsimile, telegraph or telex, by Federal Express or similar courier service or by deposit in the United States mail, registered or certified, with postage prepaid, return receipt requested, addressed as follows:

If to the Company, at:

Wisconsin & Milwaukee Hotel LLC
[                              ]
[                              ]
[                              ]

If to Purchaser, at the resident address set forth in the Signature Page hereof.

(b) This Agreement may be executed in any one or more counterparts, each of which shall constitute an original, no other counterpart needing to be produced and all of which, when taken together, shall constitute but one and the same instrument.

(c) Capitalized terms used in this Subscription Agreement, if not otherwise defined herein, shall have the meanings attributed to such terms in the Operating Agreement. All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

(d) The failure of the Company to exercise any right or remedy under this Subscription Agreement or any other agreement between the Company and the Purchaser, or otherwise, or delay by the Company in exercising the same, will not operate as a waiver thereof. No waiver by the Company will be effective unless and until it is in writing and signed by the Company.

(e) This Subscription Agreement shall be enforced, governed and construed in all respects in accordance with the laws of the State of Wisconsin. This Subscription Agreement and the rights, powers and duties set forth herein shall be binding upon the Purchaser, his or her heirs, estate, legal representatives, successors and assigns and shall inure to the benefit of the Company and its successors and assigns.

(f) Whenever possible, each provision of this Subscription Agreement shall be construed so as to be interpreted in such manner as to be effective and valid under applicable law. If any provisions of this Subscription Agreement or the application thereof to any party or circumstance shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or any other provision of this Subscription Agreement or the application of such provision to other parties or circumstances.

S-1

# SUBSCRIPTION AGREEMENT

**Wisconsin & Milwaukee Hotel LLC**
**a Wisconsin Limited Liability Company**

**Signature Page**

PLEASE READ ALL OF THIS AGREEMENT BEFORE SIGNING

The undersigned wishes to subscribe for Class B Units of Wisconsin & Milwaukee Hotel LLC, a Wisconsin limited liability company, as follows:

Total Subscription Amount associated with Class B Units subscribed for:  $_____

IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement.

Name(s) of Purchaser(s) (please print): _____

_____

Signature(s) of Purchaser(s):  _____
(Title, if appropriate)

_____
(Title, if appropriate)

Date: _____, 2025

S-1

15517096

REGISTRATION:

Please print name(s) in which the Class B Units are to be registered. Include trust name, if applicable:

_____

SOCIAL SECURITY NUMBER or
TAXPAYER IDENTIFICATION NUMBER:   _____

E-MAIL ADDRESS:   _____

PURCHASER ADDRESS:   _____
Street or P.O. Box

_____
City    State    Zip

_____
Home Phone   Business Phone   E-mail address

---

LEGAL FORM OF OWNERSHIP (check one)

| | | | |
|---|---|---|---|
| _____ | Individual Ownership | _____ | Corporate/LLC/Partnership |
| _____ | Joint Tenants with Right of Survivorship (both parties must sign) | _____ | Uniform Gift to Minors Act of the State of _____ |
| _____ | Community Property (one signature required) | _____ | Trust |
| _____ | Tenants in Common (all parties must sign) | _____ | Other |

**SUBSTITUTE FORM W-8**

By checking this box [ ], the person signing this Subscription Agreement hereby certifies under penalties of perjury that the Purchaser is an "exempt foreign person" for purposes of the backup withholding rules under the U.S. federal income tax laws, because the Purchaser:

(i) Is a non-resident alien individual or a foreign corporation, partnership, estate or trust;

(ii) If an individual, has not been and plans not to be present in the U.S. for a total of 183 days or more during the calendar year; and

(iii) Neither engages, nor plans to engage, in a U.S. trade or business that has effectively connected gains from transactions with a broker or barter exchange.

ACCEPTED:  Acceptance Date: _____, 2025

Wisconsin & Milwaukee Hotel LLC

By: _____

Name: _____

Title: _____

**Amended and Restated Operating Agreement of
Wisconsin & Milwaukee Hotel LLC
Signature Page and Power of Attorney**

      The undersigned, by executing this Signature Page to the Amended and Restated Operating Agreement (**"Operating Agreement"**) of Wisconsin & Milwaukee Hotel LLC, a Wisconsin limited liability company (the **"Company"**), is hereby admitted as a Member, agrees to all the terms of the Agreement and agrees to be bound by the terms and provisions of the Operating Agreement. The undersigned further constitutes and appoints the Manager or any officer of the Company, with full power of substitution, the undersigned's true and lawful attorney for the undersigned and in the undersigned's name, place and stead to make, execute, sign, acknowledge, swear to, deliver, record and file any documents or instruments which may be determined necessary or desirable by the Manager to carry out the provisions of the Operating Agreement, including, without limitation, any amendment or amendments to the Operating Agreement for the purpose of adding the undersigned and others as Members as contemplated by the Operating Agreement (which amendment(s) the undersigned hereby joins in and executes, hereby authorizing this Signature Page to be attached to any such amendment(s)). The power of attorney hereby granted shall be deemed to be coupled with an interest and shall be irrevocable and survive the death, incapacity, insolvency, dissolution or termination of the undersigned or any delivery by the undersigned of an assignment of the whole or any portion of his or her interest. The place of residence of the undersigned is as shown below.

                                                  [Signature page follows]

The undersigned hereby signs and swears to this Signature Page this ___ day of _____, 2025 at _____, _____.

Total Subscription Amount associated with Class B Units subscribed for:  $_____

Name(s) of Member(s) (please print): _____

_____

Signature(s) of Member(s): _____
(Title, if appropriate)

_____
(Title, If appropriate)

Member(s) Residence Address: _____

_____

_____

_____

Member(s) Business Address: _____

_____

_____

_____

Member(s) E-mail Address: _____

_____

Member(s) Social Security or
Taxpayer Identification Number: _____

_____