July __, 2025

Jackson Street Management LLC
_____
_____

Re:     Loan Commitment Letter

Ladies and Gentlemen:

This loan commitment letter (this "Agreement") sets forth the commitment of Reiman Family Investment Company, LLC ("Lender") to advance a loan to Jackson Street Management LLC ("JSM") in connection with JSM's Equity Backstop Commitment dated on or about this date (the "Equity Commitment") obligating JSM to purchase Class B Units of Wisconsin & Milwaukee Hotel LLC ("Issuer").

1.     <u>Commitment</u>.

(a)     Lender hereby irrevocably commits, subject to the terms and conditions set forth herein , and subject to the review and approval in Lender's sole discretion of the court approved final Chapter 11 Plan of Reorganization of Issuer, to advance a loan (the "Loan") to JSM in a principal amount up to $6,000,000.

(b)     The Loan shall be evidenced by a promissory note in the form of <u>Exhibit A</u> (a "Note") and shall be on the terms and conditions set forth therein.

(c)     JSM may request the Loan from Lender following JSM's receipt of notice from Issuer of the dollar amount of Class B Units of Issuer that JSM is required to purchase under the Equity Commitment by (i) delivering a written request to Lender setting forth the requested principal amount of the Loan (which may not exceed $6,000,000) and (ii) executing and delivering to Lender a Note in the principal amount of the requested Loan. Upon receiving such a request of the Loan from JSM, Lender shall advance the Loan in the requested amount to or as directed by JSM within five (5) business days.

2.     <u>Miscellaneous</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Wisconsin, without giving effect to any principles of conflict of laws that would result in the application of the law of any other jurisdiction. This Agreement contains the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes all prior negotiations, writings, commitments and understandings, if any, between the parties with respect thereto. This Agreement may not be terminated, amended, modified, supplemented or waived without the mutual written consent of both parties hereto. Neither party may assign any rights or delegate any obligations created by this Agreement without the prior written consent of the other party. Any written notice required hereunder may be in the form of email or other electronic communication.

EXHIBIT

13
_____

3.     Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. Counterparts may be delivered via electronic mail (including PDF or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method, and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

*[Signature page follows.]*

2

Please confirm that the above correctly reflects our understanding and agreement with respect to the foregoing matters by signing the enclosed copy of this Agreement and returning such copy to the Company.

Very truly yours,

Reiman Family Investment Company, LLC

By: _____
Name: _____
Title: _____

AGREED AND ACCEPTED:

Jackson Street Management LLC

By: _____
Name: _____
Title: _____

15537384

<u>Exhibit A</u>

<u>Note</u>

See attached.

15537384

# PROMISSORY NOTE

Milwaukee, Wisconsin

$_____                                                    _____, 2025

This Second Amended and Restated Promissory Note (this "**Note**") is made by Jackson Street Management LLC ("**Maker**"), in favor of Reiman Family Investment Company, LLC, with address at [_____] ("**Holder**").

For value received, Maker promises to pay to the order of Holder the amount of [_____ Dollars ($_____)], together with any other amounts due under this Note.

The unpaid principal balance of this Note will bear simple interest at a rate equal to [_____ percent (___%) per annum] (the "**Interest Rate**") from and after the date of this Note. Interest will be computed on the basis of a 365-day year for each day or portion thereof that all or part of the principal balance hereof shall remain outstanding.

Payments under this Note are due and payable as follows: [(a) Maker shall make [monthly/quarterly] payments of all accrued and unpaid interest under this Note, beginning on [_____, 2025] and continuing on the first business day of each calendar [month/quarter] until this Note is repaid in full; and (b)] Maker shall make a final payment of the entire unpaid principal balance of this Note, together with any and all accrued and unpaid interest under this Note, on or before [_____, 20__] (the "**Maturity Date**"). This Note may be prepaid by Maker in whole or in part at any time without penalty or premium.

The occurrence of any one of the following events shall constitute a default by Maker ("**Event of Default**") under this Note:

(a)     Maker fails to make any payment under this Note when due and payable or declared due and payable;

(b)     Maker fails to perform, keep or observe any other term or provision contained in this Note, which is required to be performed, kept or observed by Maker and does not cure such failure to the reasonable satisfaction of Holder within fifteen (15) days after such Holder gives written notice of such failure to Maker;

(d)     (i) Maker commences a voluntary case concerning itself under the Bankruptcy Code or any other law; (ii) an involuntary bankruptcy case is commenced against Maker and the petition is not controverted within ten days, or is not dismissed within 60 days after commencement of such case; (iii) a "custodian" (as defined in the Bankruptcy Code) or similar person is appointed for, or takes charge of, all or substantially all of Maker's property, or Maker commences any other proceedings under any reorganization, arrangement, adjustment of debt, relief of debtors, insolvency, dissolution or liquidation or similar law of any governmental entity, whether now or subsequently in effect, or there is commenced against Maker any such proceeding which remains undismissed for a period of 60 days following commencement; (iv) any order of relief or other order approving any such case or proceeding is entered; (v) Maker is adjudicated bankrupt; (vi) Maker

15542194

suffers any appointment of any custodian or the like for it or any substantial part of its property to continue undischarged for a period of 30 days; (vii) Maker makes a general assignment for the benefit of creditors; (viii) Maker calls a meeting of its creditors with a view to arranging an adjustment of its debts; (ix) Maker by any act or failure to act, consents to, approves of or acquiesces in any of the foregoing; or (x) any action is taken by Maker for the purpose of effecting any of the foregoing; or

(e)     the dissolution or liquidation of Maker.

Upon an Event of Default, without notice or demand by Holder to Maker, all of Maker's liabilities under this Note shall be immediately due and payable, and Maker may exercise any one or more of the rights and remedies it may have pursuant to applicable law. In addition, after an Event of Default, interest will accrue on the unpaid principal balance of this Note at a rate equal to [_____ percent (___%) per annum], calculated daily and payable on demand.

The acceptance by Holder of any partial payment made hereunder after the time any amount under this Note becomes due and payable will not establish a custom or waive any rights of Holder to enforce prompt payment hereof. Maker and every endorser hereof waive presentment, demand and protest and notice of presentment, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of this Note.

If, on an Event of Default, Holder employs counsel for advice or other representation to enforce any rights of Holder against Makers under this Note and/or attempts to or enforces any of Holder's rights or remedies under this Note, all costs and expenses (including reasonable attorney fees and expenses) incurred by Holder in any manner or way with respect to such enforcement will become part of Makers' liabilities hereunder, payable by Makers to Holder on demand.

No delay by the Holder in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Holder of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy.

If any provision of this Note or the application thereof to any party or circumstance is held invalid or unenforceable, the remainder of this Note and the application of such provision to other parties or circumstances will not be affected thereby and the provisions of this Note shall be severable in any such instance.

This Note shall be binding upon Maker, its successors and assigns, and shall inure to the benefit of the successors and assigns of Holder. This Note shall be governed and controlled by the laws of the State of Wisconsin as to interpretation, enforcement, validity, construction, effect, choice of law and in all other respects. PDF and/or other electronically transmitted copies of signatures shall be deemed originals for all purposes hereof and Holder may produce such copies, without the need to produce original signatures, to prove the existence of this Note and Maker's obligations hereunder.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, Maker has caused this Promissory Note to be duly executed and delivered as of the date first written above.

JACKSON STREET MANAGEMENT LLC

By: _____

Name: _____

Title: _____

15542194

<u>**OFFERING PROCEDURES**</u>

**WISCONSIN & MILWAUKEE HOTEL LLC**

**OFFERING OF $6,000,000 OF CLASS B UNITS**

July 2025

| TERM | MEANING |
|---|---|
| **Company** | Wisconsin & Milwaukee Hotel LLC, a Wisconsin limited liability company |
| **JSM** | Jackson Street Management LLC |
| **SEC** | U.S. Securities and Exchange Commission |
| **Plan** | Second Amended and Restated Chapter 11 Plan of Reorganization of Company dated June 27, 2025 |

## I.      DOCUMENTATION

| <u>No.</u> | <u>Document/Item</u> | <u>Purpose</u> |
|---|---|---|
| 1. | Amended and Restated Operating Agreement of Company | Amends Company's operating agreement to create Class A and Class B Units, convert outstanding membership interests to Class A Units and establish rights and obligations of all members of Company. |
| 2. | Form of Subscription Agreement | Agreement by which purchasers would subscribe to purchase Class B Units in the offering and join as a party to the Amended and Restated Operating Agreement of Company. |
| 3. | Subscription Agreement Transmittal Materials | Transmittal materials to be used to distribute Subscription Agreements to unsecured creditors, briefly outline the terms and procedures of the offering and identify key risk factors with respect to the offering. |
| 4. | Equity Backstop Commitment Letter | Agreement by which JSM commit to purchase any Class B Units not subscribed for by unsecured creditors in the offering. |
| 5. | Loan Commitment Letter | Agreement by which Reiman Family Investment Company, LLC commits to loan JSM up to $6,000,000 for JSM's use to purchase Class B Units under the Equity Backstop Commitment Letter. |
| 6. | Federal and State Securities Filings | Filings to comply with applicable federal and state securities laws (to be determined based on sales of Class B Units made). |

15533721

## II. OFFERING STEPS AND TIMELINE

| No. | Action | Description | Timing |
|---|---|---|---|
| 1. | Segregated Account | Company will open segregated bank account and establish inbound wire transfer instructions for receipt of subscription amounts. | Prior to Distribution of Subscription Agreements to Unsecured Creditors (#2) |
| 2. | Distribution of Subscription Agreements to Unsecured Creditors | Subscription Agreement and Subscription Agreement Transmittal Materials sent to each unsecured creditor. | |
| 3. | Subscription Period | Period during which unsecured creditors may subscribe for Class B Units.<br><br>Each unsecured creditor will have the right to purchase its pro rata amount of Class B Units as determined under the Plan (the "Allocated Amount"). In addition, each unsecured creditor may indicate its subscription to purchase Class B Units in excess of such amount to the extent other unsecured creditors do not exercise their subscription rights in full.<br><br>To exercise the right to purchase Class B Units, unsecured creditors must complete, execute and deliver their Subscription Agreement and pay by wire transfer to the segregated account, an amount equal to the Subscription Amount for the total amount of Class B Units subscribed for (including any amount subscribed for in excess of their Allocated Amounts). Among other requirements under the Subscription Agreement, unsecured creditors must represent and warrant to Company that they are an Accredited Investor (as defined in Regulation D of the Securities Act of 1933) to purchase Class B Units. | 15 days from distribution of Subscription Agreements (#2) |
| 4. | Acceptance of Subscription Agreements | Company will determine the amount of Class B Units to be purchased by each unsecured creditor that duly completes and submits a Subscription Agreement and will countersign such Subscription Agreements.<br><br>The amount purchasable by each subscribing unsecured creditor will be its Allocated Amount (to the extent subscribed for) plus an amount, if any, equal to a pro rata share (in | Within 5 business days after end of Subscription Period (#3) |

15533721

| No. | Action | Description | Timing |
|---|---|---|---|
| | | proportion to the Allocated Amounts desiring to purchase such Class B Units) of any Class B Units not subscribed for by other unsecured creditors. | |
| 5. | Call on Equity Backstop Commitment Letter (if applicable) | If unsecured creditors do not submit subscriptions that are accepted by the Company for all Class B Units offered in the offering, then Company will advise JSM the remaining amount of Class B Units that it must purchase. | Within 5 business days after end of Subscription Period (#3) |
| 6. | Call on Debt Commitment Letter (if applicable) | If JSM must purchase Class B Units under the Equity Backstop Commitment Letter and requires a loan to fund such purchase, it will advise Reiman Family Investment Company, LLC of the amount of loan required. | Following call on Equity Backstop Commitment Letter (#5) |
| 7. | Advance of Loan under Debt Commitment Letter (if applicable) | Reiman Family Investment Company, LLC to advance amount of requested loan and JSM will delivery promissory note(s) to evidence such loans. | By date of Submission of Subscription by JSM (#8) |
| 8. | Submission of Subscription by JSM (if applicable) | If JSM must purchase Class B Units under the Equity Backstop Commitment Letter, it will complete, execute and deliver a Subscription Agreement and pay by wire transfer to the segregated account an amount equal to the Subscription Amount for the total amount of Class B Units subscribed for. | Within 5 business days after call on Equity Backstop Commitment Letter (#5) |
| 9. | Acceptance of JSM Subscription Agreement | Company will accept and countersign the Subscription Agreement of JSM. | Following Submission of Subscription by JSM (#8) and prior to closing of purchase of Class B Units in Offering (#10) |
| 10. | Closing of Purchases of Class B Units in Offering | Purchase of Class B Units is consummated and purchasers become Class B Members. Funds in segregated account are available for Company's general use. | By or before 45 days after distribution of Subscription Agreements to unsecured creditors (#2) |
| 11. | Completion of Exhibit B to Amended and Restated Operating Agreement of Company | Exhibit B to Amended and Restated Operating Agreement of Company is completed by the Manager to reflect the Class B Units purchased at Closing. | Following closing |

15533721

| No. | Action | Description | Timing |
|-----|--------|-------------|--------|
| 12. | Federal and State Securities Filings (if applicable) | Actions to comply with applicable federal and state securities laws (to be determined based on sales of Class B Units made). | Generally, within 15 days after closing |

15533721