**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In re: | Case No. 24-21743-gmh |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Chapter 11 |
| Debtor. | Honorable G. Michael Halfenger |

# NOTICE OF MOTION TO SUSPEND PROCEEDINGS PENDING APPEAL

**PLEASE TAKE NOTICE** that on January 29, 2026, Computershare Trust Company, N.A. (solely in its capacity as indenture trustee, taking direction from the bondholder, "Computershare") and Wisconsin & Milwaukee Hotel Funding LLC ("Funding," and together with Computershare, "Lenders"), by their attorneys at Reinhart Boerner Van Deuren s.c., filed a *Motion to Suspend Proceedings Pending Appeal* (the "Motion"). A copy of the Motion accompanies this Notice.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Motion is on file with the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Court"), 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. You may also obtain a copy of the Motion by contacting Lynn Herder at (414) 298-8429 or lherder@reinhartlaw.com, or for a fee using a PACER login and password at www.pacer.gov.

**YOUR RIGHTS MAY BE AFFECTED. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant Lenders' request for relief as set forth in the Motion, or you want the Court to consider your views on the Motion, then **on or before February 17, 2026**, you or your attorney must:

File with the Court your written objection to the Motion, explaining your position and the reasons for your objection. You may file electronically via the Court's Case Management-Electronic Case Filing System, or mail your objection to:

United States Bankruptcy Court
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 126
Milwaukee, Wisconsin 53202

If you mail your request to the Clerk of Court for filing, you must mail it early enough so that the Clerk's Office will receive it on or before the date stated above. You must also mail or e-mail a copy to:

Frank W. DiCastri
REINHART BOERNER VAN DEUREN s.c.
1000 North Water Street, Suite 1700
Milwaukee, Wisconsin 53202
fdicastri@reinhartlaw.com

**PLEASE TAKE FURTHER NOTICE**, if you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion, and enter an order granting the relief requested by Lenders.

Dated this 29th day of January, 2026

COMPUTERSHARE TRUST COMPANY, N.A. and WISCONSIN & MILWAUKEE HOTEL FUNDING LLC

By: *_/s/ Monica A. Mark_*

Frank W. DiCastri
Sara C. McNamara
Monica A. Mark
REINHART BOERNER VAN DEUREN s.c.
1000 North Water Street, Suite 1700
Milwaukee, Wisconsin 53202
(414) 298-1000
fdicastri@reinhartlaw.com
smcnamara@reinhartlaw.com
mmark@reinhartlaw.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In re: | Chapter 11 |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Case No. 24-21743 |
| Debtor. | Honorable G. Michael Halfenger |

**LENDERS' MOTION TO SUSPEND PROCEEDINGS PENDING APPEAL**

Computershare Trust Company, N.A. (solely in its capacity as indenture trustee, taking direction from the bondholder, "Computershare") and Wisconsin & Milwaukee Hotel Funding LLC ("Funding," and together with Computershare, "Lenders"), hereby move pursuant to Federal Rule of Bankruptcy Procedure 8007 to suspend further proceedings in this Chapter 11 bankruptcy case, pending resolution of the appeal of the Court's denial of Lenders' motion for relief from the automatic stay. In support of this motion, Lenders respectfully represent the following.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

2. The Court retains jurisdiction to decide this Motion, notwithstanding Lenders' presently pending appeal. *See* Fed. R. Bankr. P. 8007(a)(1)(A), (D) (requiring party seeking stay of order or suspension of proceedings to move first in Bankruptcy Court).

**FACTUAL BACKGROUND**

3. Debtor Wisconsin & Milwaukee Hotel LLC ("Debtor") filed a voluntary Chapter 11 petition on April 9, 2024.

4. Lenders filed proofs of claim in this case totaling more than $50 million. Their claims are more fully explained, and backed by supporting documentation, in Proof of Claim Numbers 11 and 12, filed with the Court on June 20, 2024.

5. Debtor received two extensions of its exclusive period to file a plan (*see* ECF #217, 357) before filing its first plan with the Court on February 7, 2025. (ECF #392.) It amended that plan on April 4, 2025, filing a clean copy on April 10 (ECF #504), then amended its plan again at the Court's direction on June 27, 2025 (ECF #621). After the Court informed Debtor again that its plan did not comply with the absolute priority rule (*see* ECF #654), and despite the fact that the Court had directed that the June 27, 2025 plan be a "final amended plan" (ECF #593), Debtor announced on July 17, 2025 that it would be amending its plan yet again. (July 17, 2025 Tr. 10:24-11:16, 13:3-6; *see* ECF #665.)

6. Meanwhile, on June 5, 2025, Lenders had filed a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2). (ECF #577.) The parties presented expert evidence on the value of the hotel during the week of July 21, at which point the Court found that the hotel has a fair market value of $26 million. (*See* ECF #697, at 2.) On the same day, the Court ordered Debtor to file a "final version" of its Chapter 11 plan by August 4, 2025. (*Id.*) Debtor accordingly filed its Third Amended Plan—its fourth plan overall—on August 4. (ECF #710.)

7. Trial on Lenders' motion for relief from the stay was held on August 6, 11, and 14, 2025. At the conclusion of the trial, Debtor informed the Court it intended to submit a fifth plan. (*See* Aug. 14, 2025 Tr. 149: 6-7 "[T]he plan will have to be amended to fix some of the glitches."), 155:6-156:14, ECF #746.)

8. On October 29, 2025, the Court sought supplemental briefing from the parties in relation to Lenders' motion for relief from the automatic stay, principally related to the determination of the proper cramdown rate. (ECF #774.) In its October 29 order, among other things, the Court directed Debtor to explain (1) what evidence supported its desired 2.5% increase to the five-year treasury rate; (2) how Debtor "justif[ied] a cramdown rate of 6.5 percent being fair and equitable as applied to an obligation having a loan-to-value ratio of 100 percent when the evidence shows market lending rates for similar properties with a lower loan-to-value ratio are as high as 13 percent"; (3) the "maximum rate for which the plan could 'conceivably still be modified and be confirmable'"; and (4) how the Court "can reach such a conclusion on the existing record." (*Id.*) The Court also directed the parties to propose a schedule "to conclude administration of this case as a reorganization matter" "[i]f the court denies the Lenders' motion." (*Id.*)

9. The parties provided correspondence detailing their scheduling proposals on November 13 (ECF #784) and November 14 (ECF #788). They also filed their supplemental materials in response to the Court's October 29 order on November 13. (ECF #786, 787.)

10. On December 2, 2025, the Court notified the parties that it anticipated issuing an opinion on the Lenders' motion for relief from the automatic stay by December 5. (ECF #796.) The Court also notified the parties that it proposed to hold a scheduling conference on Thursday, December 11. (*Id.*)

11. On December 5, 2025, the Court entered an Opinion & Order modifying the stay to terminate upon the entry of an order denying confirmation of all plans of reorganization filed or last amended no later than December 31, 2025 and Lenders' filing of a request for termination of the stay, but otherwise denying Lenders' motion in its entirety. (ECF #803.)

12. On December 11, 2025, the Court entered a schedule pursuant to which Debtor was required to file another plan by January 12, 2026, with a confirmation hearing to be held May 26 through 28, 2026. (ECF #817, 818.)

13. Lenders timely appealed from the Opinion & Order on December 17, 2025. (ECF #824.) They filed their Designation of Record Items and Statement of Issues on Appeal on December 31, 2025. (ECF #843.)

14. The Court entered a corrected Opinion & Order on January 5, 2026. (ECF #845.)

15. On January 9, 2025, Lenders filed an Amended Notice of Appeal (ECF #846) and updated their Designation of Record Items and Statement of Issues on Appeal to include the Court's corrected Opinion & Order and the amended appellate filings (ECF #847). Debtor designated additional record items on January 14, 2026. (ECF #863.)

16. The record was transmitted to the District Court on January 15, 2026.

## RELIEF REQUESTED

17. By this Motion, Lenders respectfully request that the Court suspend further confirmation proceedings pending the resolution of Lenders' appeal of the order denying their motion for relief from the automatic stay, pursuant to Federal Rule of Bankruptcy Procedure 8007.

## ARGUMENT

18. A party appealing an order of the bankruptcy court may move the court to issue a stay of its order or otherwise suspend proceedings in the case during the pendency of the appeal to protect the rights of all parties in interest. Fed. R. Bankr. P. 8007(a) and (e).

19. A stay pending appeal is an exercise of judicial discretion and depends on the circumstances of the particular case. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). When deciding whether to issue a stay under Bankruptcy Rule 8007, courts consider factors similar to

those required in the preliminary injunction context, with the goal of "minimiz[ing] the costs of error." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). Specifically, the Court must consider "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *Id.*; *see also In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015); *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). These standards apply to motions invoking either Rule 8007(a) or (e). *See, e.g., In re Michigan Produce Haulers, Inc.*, No. BG 14-03188, 2015 WL 1275387, at *2 (Bankr. W.D. Mich. Mar. 19, 2015).

20. The stay analysis takes the form of a "sliding scale" approach: "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *In re A & F Enters.*, 742 F.3d at 766; *see also Revel AC*, 802 F.3d at 569; *Forty-Eight Insulations*, 115 F.3d at 1301. Given the Court's discretionary power, the Court may give greater weight to particular factors in a given case or balance the factors against one another "despite one factor not being met." *In re Quade*, 496 B.R. 520, 531 (Bankr. N.D. Ill. 2013).

21. Here, Lenders respectfully submit that the scales tip decisively in favor of a suspension of proceedings pending appeal and request that a stay of the confirmation proceedings be granted.

## I. Likelihood of Success on the Merits

22. "As a threshold matter, the applicant for a stay pending appeal must first show *some* likelihood of success on the merits." *In re Quade*, 496 B.R. at 526. "Once the threshold burden is met, . . . the applicant is required to make a stronger showing of the likelihood of success on the merits than the mere possibility of success that is required in a preliminary injunction context." *Id.* "While this probability of success, laying somewhere along a continuum

of likeliness, requires a substantial showing, it also calls for something less than a demonstration that the applicant will probably win on appeal." *Id.*; *see also In re Doctors Hosp. of Hyde Park, Inc.*, 376 B.R. 242, 246 (Bankr. N.D. Ill. 2007) ("Likelihood of success is not certainty of success; neither is it a mere possibility."); *Wilcox v. Stroup*, 358 B.R. 835, 838 (D.S.C. 2006) ("[T]o justify the granting of a stay, the movant need not always establish a high or mathematical probability of success on the merits.").

23. Applying the foregoing standards, Lenders respectfully submit that they have a strong likelihood of success on the merits of their arguments on appeal and that the first stay factor weighs in their favor.

24. This Court's grant or denial of relief from the automatic stay is reviewed for an abuse of discretion. *See Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003). "However, a court necessarily abuses its discretion when its decision is based solely on an erroneous conclusion of law." *Id.* The Court's conclusions of law will be reviewed *de novo. Id.*

25. Lenders will advance numerous arguments on appeal, including some arguments that are premised on this Court's conclusions of law and that will therefore benefit from a *de novo* standard of review before the District Court. Though Lenders recognize this Court ultimately disagreed with Lenders' arguments, they respectfully submit that, given the unusual facts and circumstances of this particular case, they have a strong likelihood of success on the merits of their appellate arguments.

26. For example, Lenders argued that the Third Amended Plan violated the absolute priority rule, § 1129(b)(2)(B), because the Plan's auction provisions bestowed substantial property on Jackson Street Management LLC ("JSM"), the owner of Debtor, by virtue of its existing ownership interests, including (1) the exclusive right to serve as stalking horse bidder,

(2) the exclusive and automatic status of "qualified bidder," (3) the exclusive right to a breakup fee of 3.5%, (4) the lower burden of demonstrating financial wherewithal on bid price and renovations, (5) the lower burden of demonstrating compliance with the Marriott Franchise Agreement, (6) the absence of a cash deposit subject to forfeiture, and (7) the right to obtain excess sale proceeds before Computershare is paid in full. (ECF #760, at 11.) The Court rejected that argument for two reasons.

a. First, it stated that even if some of the terms were inconsistent with the law, "[a]n equity auction could presumably proceed even if the court approved it on terms that are not identical to those proposed in the third amended plan." (ECF #845, at 6.) Lenders submit that this reasoning improperly allocated the burden of proof applicable to Lenders' motion, particularly given the late stage of these proceedings. It is *Debtor's* burden to show that there is "a reasonable possibility of a successful reorganization within a reasonable time." *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Inc.*, 484 U.S. 365, 376 (1988) (quoting *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 370-71 & nn.11-12 (5th Cir. 1988) (en banc)). Given that (1) the exclusivity period has long since expired, (2) this was Debtor's *fourth* attempt at providing a feasibly confirmable plan, and (3) the Court recognized that certain of the terms proposed were problematic (*see, e.g.*, ECF #845 at 7 (noting that "the plan's proposed auction is certainly susceptible to a charge that it, and the plan itself, is rigged in JSM's favor" and that such a rigged plan "unquestionably runs afoul of § 1129(b)'s fair and equitable requirement")), the Court effectively read out the burden of proof statutorily imposed on Debtor by § 362(g)(2) and required Lenders to prove a

negative (i.e., that there was *no* set of facts under which Debtor could demonstrate a reasonable possibility of successful reorganization within a reasonable time). As a misapplication of the law, Lenders submit that this approach necessarily constitutes an abuse of the Court's discretion.

b. Second, it held that JSM was not receiving *property* on account of its ownership interest, because "property" under § 1129(b)(2)(B)(ii) must be "measurable in money's worth on a balance sheet." (ECF #845, at 6.) Lenders respectfully disagree with the Court's statutory interpretation, given the breadth of the term "property" in § 1129(b). *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 208 (1988) ("[W]hile the Code itself does not define what 'property' means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad."); *In re Bryson Properties, XVIII*, 961 F.2d 496, 504-05 (4th Cir. 1992); *In re Grandfather Mountain Ltd. P'ship*, 207 B.R. 475, 492, 494 (Bankr. M.D.N.C. 1996). The Court's statutory interpretation will be reviewed *de novo*. Moreover, no evidence supports the Court's conclusion that the procedures ***cannot*** be translated into money measurable on a balance sheet, even were that the proper standard for assessing whether something constitutes "property."

27. The Court also rejected Lenders' argument that Debtor's plan violates the requirements of *In re Castleton Plaza, LP*, 707 F.3d 821 (7th Cir. 2013), in which the Seventh Circuit Court of Appeals unambiguously stated that "[a] plan of reorganization that includes a new investment must allow other potential investors to bid. In this competition, creditors can bid the value of their loans." *Id.* at 821. The Bankruptcy Court held that *Castleton Plaza* "does not

mandate credit bidding in all circumstances" (ECF #845, at 15) despite that language, and its interpretation of this legal question will similarly be subject to *de novo* review.

28. The Court also failed to address Lenders' argument that the estate in ***this particular case*** would be better off if the plan permitted credit bids. Courts routinely reject proposed "new value" contributions that do not maximize value for the estate. *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453-54 & n.26 (1999). In this case, as Lenders previously argued, the estate would be materially better off if credit bids are accepted, because Computershare would still be compelled to pay cash for the needed hotel renovations, while the credit bid would reduce the secured debt, thus improving Debtor's balance sheet and reducing the eventual balloon payment. Given the importance of ensuring that the auction results in the receipt of "top dollar" or the "best obtainable" price through competition, *see id.*, Lenders respectfully submit they have a substantial likelihood of success in challenging the Court's holding on this point.

29. The Court rejected numerous of Lenders' arguments that the Third Amended Plan was not fair and equitable as required by § 1129(b)(2)(B)(ii). "Fair and equitable" requires more than what is explicitly set forth in 11 U.S.C. § 1129(b)(2), *see id.* ("[T]he condition that a plan be fair and equitable with respect to a class ***includes the following requirements***: . . .") (emphasis added)), and in this case, it is neither fair nor equitable for the plan to permit payments to existing equity holders like JSM while Computershare must wait eighteen years for payments culminating in a $32 million balloon payment that is speculative at best. More specifically, if the price received through the proposed auction is high enough, JSM may receive payment on its existing equity interest while requiring Computershare to bear substantial risk in waiting nearly two decades for the payment of its own secured claim. *See, e.g.*, *In re Miami Center Assocs., Ltd.*, 144

B.R. 937, 940-42 (Bankr. S.D. Fla. 1992) (holding that proposed ten-year term for repayment of hotel loan was too long, and that risk-shifting to secured creditor violated absolute priority rule where upside potential went to equity); *see also id.* at 940 (collecting cases holding that thirty-, fifteen-, and ten-year repayment terms were too long). This is not fair and equitable, as § 1129(b)(2) requires, and the Court should have found that Debtor had thus failed to proffer a potentially confirmable plan.

30. Lenders also argued that the plan overpays Computershare by roughly $15 million in order to allow for the deferral of the bulk of what Computershare is owed to the balloon payment nearly two decades in the future. It is not fair or equitable to pay Computershare a total secured claim of approximately $60 million when unsecured creditors are not being paid in full. *See, e.g.*, *In re Exide Techs.*, 303 B.R. 48, 61 (Bankr. D. Del. 2003) ("Courts have decided that 'a corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims.'" (citation omitted)).

31. Lenders further submit that the Court erred in interpreting the term "fair and equitable" too narrowly by confining it to "the absolute priority terms that § 1129(b)(2) actually specifies" (*see* ECF #845 at 11), though § 1129(b)(2) is clear that the requirements articulated therein are ***necessary*** but not ***sufficient*** to satisfy the "fair and equitable" requirement. In light of the foregoing significant questions of both law and discretion, Lenders have a strong argument on appeal that Debtor's plan was not confirmable—meaning that Debtor failed to satisfy its burden under § 362(g)(2), and Lender's motion for relief for stay should have been granted. *See Edgewater Walk Apartments v. MONY Life Ins. Co. of Am.*, 162 B.R. 490, 498 (N.D. Ill. 1993) ("To be 'effective,' a plan must be confirmable. To be confirmable, specific requirements must be met. As a result, in order to assess whether a debtor has met its burden under sections

362(d)(2) and 362(g), a bankruptcy court must weigh the evidence presented against the standards imposed by section 1129 to determine whether the threshold requirements of that section can be met.") (citation omitted).

32. Finally, Lenders will argue on appeal that the Court's overall approach to the lift-stay analysis improperly applied the burden of proof. As noted above, 11 U.S.C. § 362(g) places the burden of proving a reasonable possibility of reorganization within a reasonable time on Debtor, and the Court explicitly recognized that at least some aspects of Debtor's Third Amended Plan were unconfirmable. (*See, e.g.*, ECF #845, at 7-9.) But the Court ultimately denied Lenders' motion because the record did not establish "that the debtor's proposed plan faces insurmountable obstacles to confirmation in the near future" (ECF #845, at 3) based on its determination that, even though the Third Amended Plan was problematic, Debtor could potentially propose a *different* confirmable plan. (*See, e.g.*, *id.* at 6.) Lenders respectfully submit that the Court improperly shifted the burden of proof, requiring as a practical matter that Lenders prove there was no set of circumstances under which Debtor could achieve confirmation of a reorganization plan, rather than requiring that Debtor prove that they had a reasonable possibility of a successful reorganization within a reasonable time, such that the hotel is necessary to an effective reorganization.

33. Based on at least the foregoing arguments, which Lenders will advance on appeal before the District Court, Lenders have shown a strong likelihood of success on the merits.

## II. Irreparable Harm

34. Second, a party seeking a stay must demonstrate irreparable injury. To constitute irreparable injury, the harm asserted must rise above the level of speculation, and it must be something more than monetary harm. *In re Quade*, 496 B.R. at 528.

35. Lenders face irreparable harm if a stay is not entered and proceedings are not suspended. "Irreparable harm is an injury that cannot be redressed by a legal or equitable remedy following a trial." *In re Tribune Co.*, 477 B.R. 465, 476 (Bankr. D. Del. 2012); *see also Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied").

36. Numerous courts have held that the risk that an appeal could be mooted satisfies the irreparable harm requirement.[1] *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 n.40 (S.D.N.Y. 2007) (collecting cases). "[T]he fact is that loss of appellate rights is a 'quintessential form of prejudice.'" *Id.* at 348 (S.D.N.Y. 2007) (quoting *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (2d Cir. B.A.P. 1996)); *see also In re Cujas*, 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007) (agreeing with *Adelphia* court that " the potential loss of a party's appellate rights through the mootness doctrine may constitute irreparable harm."); *In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 522 (W.D. Tex. 2000) (in case where "post-judgment legal relief to recover damages is not available because the assets of the debtor have already been sold and the proceeds distributed under the appealed plan," "[s]uch injury can constitute irreparable injury"; holding that bankruptcy court abused its discretion in finding no irreparable harm); *In re Grandview Estates Assocs., Ltd.*, 89 B.R. 42, 43 (Bankr. W.D. Mo. 1988) (holding that irreparable injury was "clearly shown by debtor" because if foreclosure could proceed, "the appeal will be moot and there is nothing left to review"); *see also In re Doctors Hosp. of Hyde Park*, 376 B.R. at 249 (view that mootness constitutes irreparable harm "will sometimes be

[1] Lenders recognize that there is a split of authority on this point but respectfully submit that recognizing the possible loss of appellate rights as irreparable harm is the better view.

applicable, but only if the appellant can show a substantial appellate issue and likelihood of success.").

37. In this case, Debtor has already made clear through its proposed amended Disclosure Statement that, in the event its Fourth Amended Plan is confirmed, it plans to argue that Lenders' current appeal is moot. (2d Am. Disclosure Statement, at ECF 26 ("Absent a stay, the Appeal will likely become moot if the Debtor's Plan is confirmed and becomes effective before an Appeal decision is rendered."), ECF #855.)

38. While Lenders dispute Debtor's contention that their appeal will be mooted by the confirmation of the Fourth Amended Plan, the mere risk that the appeal might be mooted supports a finding of irreparable harm. *See In re Adelphia Commc'ns*, 361 B.R. at 348 ("[W]here the denial of a stay pending appeal ***risks*** mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied.") (first emphasis added). And indeed, some courts have held that the confirmation of a plan may moot the appeal of an order denying relief from a stay under certain circumstances. *E.g.*, *In re L & L Wings*, No. 22-CV-1082-LTS, 2023 WL 2307431, at *3-4 (S.D.N.Y. Mar. 1, 2023).

39. Should this Court ultimately confirm the Fourth Amended Plan, and should the District Court conclude that such confirmation moots Lenders' pending appeal, that would unquestionably constitute an injury that cannot be redressed by any legal or equitable remedy.

40. Moreover, Lenders will be harmed should the Fourth Amended Plan confirmation proceedings be allowed to continue, and should the Fourth Amended Plan be confirmed, because they will permanently lose the relief they sought through their motion for relief from stay: a chance to proceed with foreclosure based on Debtor's failure to provide a confirmable plan after well over a year of bankruptcy proceedings.

41. While the automatic stay serves the important purpose of providing a debtor with "breathing space" early in the proceedings, *see Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, 115 F.4th 1202, 1210 (9th Cir. 2024) (citation omitted), as time passes, the burden on the debtor to make a showing that successful reorganization is possible – and in progress – increases. *See Edgewater Walk Apartments v. MONY Life Ins. Co. of Am.*, 162 B.R. 490, 499-500 (N.D. Ill. 1993). Courts have described the heightened debtor burden as anything from "the most stringent and convincing showing," *In re Holly's, Inc.*, 140 B.R. 643, 702 (Bankr. W.D. Mich. 1992), to "a fairly concrete proposal," *Edgewater*, 162 B.R. at 500. But what courts agree on is that, the longer the case goes on, the greater the debtor's burden. *See Holly's*, 140 B.R. at 702 ("After the expiration of the exclusivity period, the balance between the reasonableness of the delay borne by a secured creditor and the debtor's ability to formulate a plan favors the creditor."); *Edgewater*, 162 B.R. at 499 ("[A]s the case progresses, so too does the debtor's burden of proving that successful reorganization may be reasonably expected.... [T]he test should be viewed as a continuum with the scales tipping in favor of the debtor in the early stages and the burden of proof becoming greater in the later stages.") (citation omitted). When the debtor fails to meet that burden, a court is well within its discretion to grant relief from the automatic stay to allow secured creditors to proceed against the property in question. *E.g.*, *In re River E. Plaza, LLC*, 669 F.3d 826, 833-34 (7th Cir. 2012); *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 172 (Bankr. N.D. Ill. 2012). Indeed, as the Seventh Circuit has recognized, Chapter 11 "does not guarantee reorganization ***nor does it permit an indefinite suspension of creditors' rights and remedies*** pending the unsuccessful attempts of any party to effect a reorganization of debt." *In re Woodbrook Assocs.*, 19 F.3d 312, 322 (7th Cir. 1994) (emphasis added) (quoting *In re BGNX, Inc.*, 76 B.R. 851, 853 (Bankr. S.D. Fla. 1987)).

42. Here, however, the Court allowed Debtor a ***fifth*** bite at the apple despite the fact that, after more than a year of bankruptcy proceedings, Debtor still had not proffered a feasibly confirmable plan of reorganization. With the benefit of the Court's guidance yet again, Debtor has been afforded the opportunity to proceed well past the point at which Lenders should have been permitted to pursue their legal remedies against Debtor in the forum of their choosing. In other words, Lenders are being deprived of the opportunity to proceed with a foreclosure action, which should have been afforded them as a result of Debtor's multiple failures to formulate a feasibly confirmable plan. Lenders should not be required to litigate Debtor's Fourth Amended Plan (including, if necessary, through a second appeal) when the law and facts alike demonstrate that Debtor's time should have run out long ago.

## III. No Substantial Injury to Other Parties

43. The entry of an order suspending further confirmation proceedings will not cause substantial injury to Debtor or other parties to this proceeding.

44. A stay suspending confirmation proceedings will merely preserve the *status quo* for the parties to this Chapter 11 proceeding, for a period of time that is likely to be relatively short. *See In re Skinner*, 202 B.R. 867, 869 (W.D. Va. 1996) ("The case law signals a preference in favor of maintaining the status quo."). Briefing in the District Court should be concluded by April 1, 2026, well before the trial on the Fourth Amended Plan is scheduled to take place. *See* Fed. R. Bankr. P. 8018. And while there is no guarantee as to the timeline for the issuance of a decision by the District Court, it is likely that a decision will issue with significantly less delay than Debtor itself has already occasioned in these proceedings, given its multiple requests for extension of the exclusivity period, as well as its multiple withdrawals of and amendments to its proposed reorganization plans.

45. Lenders anticipate that Debtor will argue that it will suffer harm based on its obligation to continue to make adequate protection payments and/or the stigma of remaining in Chapter 11 bankruptcy. As to the former point, Debtor has already requested that the Court relieve it from that obligation (ECF #829), and if the Court grants its motion (albeit over Lenders' objections), that argument will be moot; on the other hand, if the Court denies Debtor's request, the requirement that Debtor continue to make adequate protection payments for what is likely to be a brief period of delay does not constitute ***substantial*** harm, particularly as those payments will simply be applied to reduce Debtor's obligations to Computershare. As to the stigma of protracted bankruptcy proceedings, Debtor itself is responsible for much of the delay that has already taken place in this proceeding, seeking multiple extensions of the exclusivity period and filing, then withdrawing, multiple proposed reorganization plans over the course of nearly a full year.

46. Lenders are not aware of any substantial harm that third parties will suffer as a result of the requested stay.

47. In sum, while Lenders will suffer substantial and irreparable harm in the event that Debtor is allowed to proceed to a confirmation hearing on its Fourth Amended Plan, in the form of potential loss of meaningful appellate review (as well as the need to participate in further confirmation proceedings when Debtor failed to meet its burden to maintain the automatic stay in the first instance), neither Debtor nor third parties will suffer any substantial injury should the confirmation proceedings be delayed until Lenders' appeal is concluded. Accordingly, the balance of harms favors granting Lenders' requested relief.

## IV. Public Interest Considerations

48. Public policy concerns strongly support Lenders' request for a suspension of proceedings. "This factor calls for the court to weigh the public interest in the matter, and to

consider and balance the goal of efficient case administration and the right to a meaningful review on appeal." *In re Taub*, No. 08-44210, 2010 WL 3911360, at *3 (Bankr. E.D.N.Y. Oct. 1, 2010); *see also In re Adelphia Commc'ns*, 361 B.R. at 349-50.

49. As noted above, Lenders anticipate the delay occasioned by their pending appeal to be relatively short, with briefing scheduled to be complete nearly two months before the Court has scheduled the confirmation hearing on Debtor's Fourth Amended Plan. And a stay will ensure Lenders the "right to a meaningful review on appeal," *In re Taub*, 2010 WL 3911360, at *3, which serves the public interest.

50. Moreover, while Lenders acknowledge that the public has an interest in "the expedient administration of the bankruptcy proceedings," *In re Adelphia Commc'ns*, 361 B.R. at 349 (citation omitted), in this case, the temporary suspension of further proceedings will actually serve this element of the public interest by maximizing judicial efficiency and eliminating the risk of litigation that may ultimately prove futile.

51. In adjudicating Lenders' motion for relief from stay, this Court rejected a number of Lenders' arguments as to the objectionability of certain plan provisions – provisions that Debtor then carried forward and included in its Fourth Amended Plan. For example, as discussed above, the Court held, *inter alia*, that neither *Castleton Plaza* nor the circumstances of this case require that the auction procedures permit credit bids; that none of the advantages JSM secured to itself in the auction procedures constitute "property" because they are not susceptible to representation on a balance sheet; and that the plan was not rendered unfair despite Lenders' arguments that it (1) permits payment to JSM before Computershare is paid in full; and (2) pays Computershare nearly $60 million on a $45 million claim. Lenders will make those arguments to the District Court, and should the District Court reverse the judgment of this Court, that will

necessarily inform this Court's analysis of the Fourth Amended Plan, which, like the Third Amended Plan, does not permit credit bids; secures certain advantages to JSM by virtue of its current ownership interest; permits payment to JSM before Computershare is paid in full; and pays Computershare roughly $60 million on a $45 million claim. (*See* ECF #853, at 10 ("Computershare shall have a secured claim in an amount which is calculated to be $61,322,050…"); 23-28 (setting forth proposed auction procedures, including establishment of JSM as Stalking Horse bidder, deeming of JSM as qualified bidder, forfeiture of cash deposits of other bidders upon failure to obtain Marriott's approval, requirement that bids "be in cash only," and potential distribution of excess sale proceeds to existing equity holders before payment to secured creditors).) It does not make sense, as a matter of judicial efficiency, for the parties to undertake confirmation proceedings applying the law as set forth by the Court in its lift-stay opinion when the District Court will be asked to rule on whether that law is correct in the course of the pending appeal. *See also Revel AC*, 802 F.3d at 573 (noting that "public policy strongly favors the correct application of the Bankruptcy Code").

52. Lender respectfully submit that it is inefficient for the parties and the Court to devote resources to confirmation proceedings when the District Court will, in the near future, be asked to rule on questions that will unquestionably affect the standards applicable to those proceedings. Even if the District Court does not reverse this Court's decision not to grant relief from the automatic stay, it will certainly provide guidance to this Court on the legal questions that arose during the litigation of that motion and that will inevitably recur during confirmation proceedings on Debtor's Fourth Amended Plan. In contrast, it would be detrimental to the public interest to proceed to a confirmation hearing on the Fourth Amended Plan under a potentially

incorrect interpretation of the law, potentially requiring the parties to re-try the Plan once the appeal has been resolved.

53. Accordingly, because a suspension of further proceedings will both preserve the right to meaningful appellate review and serve the aim of judicial efficiency, the public interest favors the Court granting a suspension of proceedings pending the resolution of Lenders' appeal.

**V. Bond**

54. Lenders should not be required to post a bond as a condition of granting their requested stay pending appeal.

55. Federal Rule of Bankruptcy Procedure 8007(c) permits, but does not require, the Court to condition relief on filing a bond or other security with the Court. *In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y. 1994) ("The posting of a bond, therefore, is discretionary."); *see* Fed. R. Bankr. P. 8007(c).

56. The purpose of imposing a bond is "to protect the adverse party from potential losses resulting from the stay." *In re United Merchs. & Mfrs., Inc.*, 138 B.R. 426, 430 (D. Del. 1992). If no substantial harm will come to the opposing party, the Court need not condition the stay on a posting of the bond. *See, e.g.*, *id.*; *In re Finova Grp., Inc.*, Bankruptcy No. 01-698-PJW, Civil Action No. 07-480-JJF, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007).

57. The suspension of proceedings that Lenders seek will do nothing more than maintain the status quo and the rights of the parties until after an appeal is decided. Thus, no real harm will be suffered by the parties by virtue of a stay. *See In re Sphere Holding Corp.*, 162 B.R. at 644-45 (bond not required as a condition to enjoin creditors from collection pending appeal when there was no evidence that the creditor's collateral was diminishing in value and little damage would occur). Therefore, a bond is unnecessary.

58. If the Court does require Lenders to post a bond, the amount of the bond should be nominal given the minimal potential losses that Debtor could conceivably suffer as the "natural and proximate" result of the stay. *In re Theatre Holding Corp.*, 22 B.R. 884, 886 (Bankr. S.D.N.Y. 1982) (quoting *Weiner v. 222 E. Chestnut St. Corp.*, 303 F.2d 630, 634 (7th Cir. 1962)).

## NOTICE

59. Lenders will provide notice of this Motion to Debtor, counsel to Debtor, the US Trustee, Debtor's 20 largest unsecured creditors, and all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Considering the nature of the relief requested herein, Lenders submit that no other or further notice is necessary.

## NO PRIOR REQUEST

60. No prior request for the relief sought herein has been made.

## CONCLUSION

For all of the reasons set forth herein, the Court should grant the Motion and suspend further proceedings in this case pending the resolution of Lenders' appeal.

DATE: January 29, 2026

COMPUTERSHARE TRUST COMPANY, N.A.
WISCONSIN & MILWAUKEE HOTEL FUNDING LLC

BY: */s/ Monica A. Mark*

Frank W. DiCastri
Sara C. McNamara
Monica A. Mark
REINHART BOERNER VAN DEUREN s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202-3186
414-298-1000
fdicastri@reinhartlaw.com
smcnamara@reinhartlaw.com
mmark@reinhartlaw.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

| | |
|---|---|
| In re: | Chapter 11 |
| WISCONSIN & MILWAUKEE HOTEL, LLC, | Case No. 24-21743 |
| Debtor. | Honorable G. Michael Halfenger |

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on January 29, 2026, I caused to be filed, with the United States Bankruptcy Court for the Eastern District of Wisconsin, Computershare Trust Company, N.A. and Wisconsin & Milwaukee Hotel Funding LLC's *Motion to Suspend Proceedings Pending Appeal*, using the Court's CM/ECF electronic filing system, which caused the Motion to be sent to all parties in this case receiving electronic notice. Further, I certify that on January 29, 2026, at the offices of Reinhart Boerner Van Deuren s.c, 1000 North Water Street, Suite 1700, Milwaukee, Wisconsin, I caused the Motion to be served upon the attached service list via first class U.S. mail, postage prepaid.

Dated this 29th day of January, 2026.

*/s/ Frank W. DiCastri*

REINHART BOERNER VAN DEUREN s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202-3186
414-298-1000
fdicastri@reinhartlaw.com

**Service List**

Wisconsin & Milwaukee Hotel LLC
Attn: Jon Herreman, Registered Agent
731 North Jackson Street, Suite 900
Milwaukee, WI 53202

Wisconsin & Milwaukee Hotel LLC
Attn: Jon Herreman, Registered Agent
731 North Jackson Street, Suite 420
Milwaukee, WI 53202

Cintas
N56 W13605 Silver Spring Drive
Menomonee Falls, WI 53051

City of Milwaukee
Office of the City Treasurer
Customer Services Division
P.O. Box 514062
Milwaukee, WI 53203-3462

Courtesy Products, Inc.
10840 Linpage Place
Saint Louis, MO 63132

CVENT
P.O. Box 822699
Philadelphia, PA 19182-2699

Deluxe Branded Marketing
P.O. Box 645633
Cincinnati, OH 45264-5633

Fitzgerald Consultancy
44 East Mifflin Street
Suite 305
Madison, WI 53703

Fortune Fish Company
Lockbox 235263
Chicago, IL 60689-5263

J.M. Brennan Inc.
2101 W. St. Paul Avenue
Milwaukee, WI 53233

JLL
200 East Randolph Drive, 43 Floor
Chicago, IL 60601

Marriott International, Inc.
7750 Wisconsin Avenue
Bethesda, MD 20814

Milwaukee World Festival
BIN 88485
639 E. Summerfest Place
Milwaukee, WI 53202

Testa Produce, Inc.
O2nd Dept 2105
PO Box 5905
Carol Stream, IL 60197-5905

Town Bank
9801 W. Higgins Road
Des Plaines, IL 60018

Towne Park LLC
PO Box 79349
Baltimore, MD 21279-0349

Wisconsin Housing & Economic
Development Authority (WHEDA)
611 W. National Avenue
Milwaukee, WI 53204

US Foodservice Inc.
W137N9245 WI-45
Menomonee Falls, WI 53051

Guest Tek Interactive
1060 Lake Susan Drive
Chanhassen, MN 55317

Vistar Corporation
16639 Gale Way Avenue
Hacienda Heights, CA 91745

Wolf's Dry Cleaners
1354 N. Seventh Street
Milwaukee, WI 53205