So Ordered.

Dated: May 12, 2026



G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Debtor.

Case No. 24-21743-gmh

Chapter 11

## OPINION AND ORDER
## ON DEBTOR'S MOTION TO MODIFY CASH COLLATERAL ORDER

The debtor moves to modify a May 2024 order that requires monthly payments to its principal secured creditor as a condition on its use of cash collateral.

I

Debtor Wisconsin & Milwaukee Hotel LLC owns the Milwaukee Marriott Downtown, a full-service hotel in Milwaukee. Creditors Computershare Trust Company, N.A. (Computershare) and Wisconsin & Milwaukee Hotel Funding LLC (collectively, Lenders) hold debt secured by the debtor's assets, including the hotel. ECF No. 632, at 1–5. The debtor was unable to pay its obligations to Computershare when it demanded full payment on April 1, 2024, resulting in the debtor commencing this bankruptcy case by filing a chapter 11 petition on April 9, 2024. ECF No. 632, at 5.

A few days after filing its bankruptcy petition the debtor requested that the court authorize its operational use of cash in which Computershare held a security interest and grant Computershare adequate protection limited to "the granting of replacement liens to the extent of any completely unanticipated decline in the Cash Collateral".[1] ECF No. 19, at 9. The court held a preliminary hearing on the motion, at which Computershare appeared through counsel. ECF No. 46. The parties reported that Computershare consented to the debtor's use of Computershare's cash collateral on an interim basis subject to certain conditions, including that it would be granted replacement liens, allowed a superpriority administrative expense claim, and receive a payment "equal to 25% of the 'cash available for administrative expenses,' as indicated on the [debtor's] budget, after accounting for bankruptcy professional fees for the Interim Period, in accordance with the budget." ECF No. 38, at 3–4; see also ECF No. 46. The court entered an order giving effect to the interim agreement, setting a deadline to object to the motion, and scheduling a final hearing on the debtor's motion. ECF No. 38, at 4.

No one timely objected, but a few hours before the final hearing was scheduled to commence, debtor's counsel filed correspondence requesting that the court postpone the hearing because debtor's counsel and Computershare's counsel had "been engaged in negotiations of a final cash collateral agreement and proposed order, which [they] believe[d] w[ould] result in an agreement shortly." ECF No. 79, at 1. Based on that report the court postponed the hearing for four days and reset the objection deadline to

---

1. The debtor's cash collateral motion identified Wisconsin Housing and Economic Development Authority as the secured creditor; later proceedings clarified that Computershare has succeeded WHEDA as the holder of principal secured claims against the debtor. See ECF No. 632, at 8 ("WHEDA's rights under the Notes, Mortgages and other Loan Documents were assigned to Computershare pursuant to the Indenture"); see also *id*. ("Computershare is the successor-in-interest to Wells Fargo Bank, National Association, as assignee of WHEDA, in regards to title to and possession of the Indenture and all of the Loan Documents, and is the owner and holder in due course of the Indenture and all such Loan Documents and all obligations of Debtor evidenced by the Loan Documents.").

the day preceding the rescheduled hearing. ECF No. 80. Three days later debtor's counsel reported that the debtor and Computershare "reached agreement on the terms of a proposed Final Order," promising that the debtor would file a proposed order giving effect to that agreement later that day. ECF No. 88, at 1. Based principally on the parties' agreement as memorialized in the proposed order, the court entered an order authorizing the debtor to use cash collateral and requiring, among other things, that the debtor make monthly payments to Computershare, capped at $50,000 per month, as follows:

> As additional adequate protection for the Lender's security interests in Cash Collateral, the Debtor shall make a payment to the Lender on or before the first day of each calendar month, beginning on July 1, 2024 for the month ended May 31, 2024, equal to 25% of the remainder of (a) the "cash available for administrative expenses," as indicated in the Budget for the applicable prior month *minus* (b) the paid or accrued, as applicable, bankruptcy professional fees for such month as provided for in the Budget (without double-counting the same fees as "accrued" in one month and "paid" in another); provided in no event shall such payment amount exceed $50,000 for any calendar month (the "Adequate Protection Payment"). The Adequate Protection Payment shall be applied by the Lender first to accrued but unpaid interest, if any, and second to principal.

ECF No. 93, at 9–10 (the Order). The Order has no termination date, though it entitles Computershare to terminate the debtor's right to use cash collateral upon notice of an event of default, which includes, among other things, a confirmed plan taking effect. ECF No. 93, at 12.

By December 2025 the debtor had paid Computershare more than $957 thousand during the bankruptcy case and the debtor's cash accounts had increased from about $368 thousand when it filed for bankruptcy protection to more than $2 million. ECF No. 830, at 2. The debtor now proposes that under these changed financial circumstances continued monthly adequate protection payments are unnecessary: There is no significant risk that Computershare's collateral—debtor's cash accounts and the hotel—

will decline in value before a final hearing on plan confirmation. Cash on hand now vastly exceeds the amount available on the petition date and there is no evidence that the hotel is decreasing in value (indeed, both sides' experts have presumed it is increasing in value). As a result, the debtor contends, Computershare's secured position is adequately protected and there's no adequate-protection need for additional payments. ECF No. 829, at 5–6. On that basis, the debtor moves under Federal Rule of Civil Procedure 60(b)(5) and (6) (made applicable here by Federal Rule of Bankruptcy Procedure 9024) for prospective relief from the Order's requirement that the debtor must continue paying Computershare up to $50 thousand a month. See §361(1); see also *People's Cap. & Leasing Corp. v. Big3D, Inc. (In re BIG3D, Inc.)*, 438 B.R. 214, 220–21 (B.A.P. 9th Cir. 2010) ("Adequate protection is in turn defined in § 361, and is intended to compensate a secured creditor whose collateral declines in value while it is in the possession of, and being used by, a chapter 11 debtor.") (footnote omitted).

Computershare objects to the debtor's motion, arguing that it is untimely under Rule 60(c) and that no change in circumstances warrants altering the Order's requirement that the debtor make monthly payments to Computershare. ECF Nos. 864 & 910.

II

A

Rule 60(b)(5) provides, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable".

A "judgment" for Rule 9024 purposes "includes any appealable order." Fed. R. Bankr. P. 9002(e). And, at least in the context of Rule 60(b), which governs "final judgment[s]," whether an order for purposes of that rule is a "judgment" depends on

4

whether it is a *final* appealable order. Whether the Order, which affords Computershare contingent rights to terminate it, is a "final appealable order" within the meaning of Rule 9002(e), is not entirely clear. See *Wolf v. FirstMerit Bank, N.A.*, 535 B.R. 772, 776 (N.D. Ill. 2015) (concluding that even if bankruptcy court's cash collateral and adequate protection order were not a final order appealable under §158(a)(1), it would exercise jurisdiction under §158(a)(3)); see also *Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 475–76 (S.D.N.Y. 2013) (citing conflicting decisions on the issue of whether denial of a motion for adequate protection is a final order), and *Aurelius Cap. Master, Ltd. v. Tousa Inc.*, Nos. 08-61317 & 08-61335, 2009 WL 6453077, at *13 (S.D. Fla. Feb. 6, 2009) ("Here, the Cash Collateral Order preserves Wells Fargo's ability to seek additional adequate protection for the use of its cash collateral for the Creditors' Committee's professional fees, which reflects the Bankruptcy Court's intent to 'reexamine' such use of the cash collateral on an ongoing basis. Because the fee awards are interim in nature and the Cash Collateral Order is structured to permit further reexamination by the Bankruptcy Court, the Order is not final with respect to Wells Fargo's appeal.").

This uncertainty is immaterial for purposes of this opinion, however, because the principles governing the circumstances under which a court may conclude that the prospective application of a judgment is no longer equitable under Rule 60(b)(5) similarly govern a court's ability to modify interlocutory orders granting equitable relief. Compare *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378–84 (1992), with *Hendrix v. Page (In re Hendrix)*, 986 F.2d 195, 198 (7th Cir. 1993), and *In re Martin*, 92 B.R. 364, 366 (Bankr. N.D. Ind. 1988) ("Because adequate protection in the form of lost economic opportunity compensation is a flexible concept, it is more analogous to an injunction than a final judgment and thereby susceptible to modification as the result of a change in circumstances warranting the initial order." (citing *In re All–Way Servs., Inc.*, 73 B.R. 556, 565 (Bankr. E.D. Wis. 1987))). Under the circumstances here, nothing of

moment depends on whether the Order is a "final" "order appealable to an appellate court" to which Rule 60(b)(5) applies or is an interlocutory order that this court may modify if there is a justifying change in circumstances. The parties' presentations presume that Rule 60(b)(5) applies to the debtor's request to modify the Order; this opinion follows suit and construes the debtor's request in the same context.[2]

The Order was entered into with the parties' agreement, and in relevant part it imposes an affirmative injunction—it requires the debtor to make monthly payments to Computershare of twenty-five percent of its funds available after paying budgeted professional fees, with each monthly payment capped at $50 thousand. In practice this has meant that the debtor has paid Computershare $50 thousand per month, totaling about $1 million through December 2025. The debtor contends that additional payments serve no legitimate purpose, since the value of Computershare's collateral has not diminished and will not diminish in the short time remaining before a final hearing on confirmation or a grant of stay relief.

"'[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.'" *Rufo*, 502 U.S. at 378–80 (quoting *Sys. Fed'n No. 91, Ry. Emps. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961)). Similarly, a party who demonstrates that an order's prospective application is no longer equitable is entitled to relief under Rule 60(b)(5). The party must show, however, "that a significant change in circumstances warrants revision of the decree." *Id.* at 383. The

---

2. The debtor also invokes (in passing) Rule 60(b)(6)'s catchall provision. Even presuming (as do the parties) that the Order is a final order for purposes of Rule 60(b), Rule 60(b)(6) is not applicable here because "relief under Rule 60(b)(6) is available 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'" *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)). "Rule 60(b)(6) is a catchall that follows paragraphs (1) through (5). It covers 'any *other* reason' that justifies relief; that is, Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs." *Id.* As presented, the debtor's motion rises or falls on the application of Rule 60(b)(5).

6

party may meet this burden by "showing a significant change either in factual conditions or in law", but, ordinarily, the court should not grant a modification "where a party relies upon events that actually were anticipated at the time it entered the decree." *Id.* at 384-85. The Seventh Circuit has read *Rufo* to allow a bankruptcy "court [to] modify an injunction that it has entered whenever the principles of equity require it do so." *Hendrix*, 986 F.2d at 198.

The debtor points to three changes in circumstances as justifying a modification of the Order to remove the requirement that the debtor make monthly cash payments to Computershare: (1) the debtor's cash on hand when it commenced the case was about $370 thousand but now exceeds $2 million (ECF No. 829, at 3–7), (2) the case has remained pending without a confirmed plan for longer than originally anticipated (ECF No. 891, at 2), and (3) the monthly payments to Computershare are no longer reducing the value of Computershare's secured claim—a claim that the debtor's chapter 11 plan must pay with interest (ECF No. 891, at 3–6).

Computershare sees these developments as the foreseeable consequences of the deal the debtor struck to use cash collateral on a consensual basis, the debtor's own failure to quickly confirm a plan, and a later deal struck to avoid further litigation over the value of the secured claim for purposes of plan confirmation. None of this, Computershare says, constitutes a change in circumstances sufficient to terminate the required monthly payments. Computershare adds that the debtor's accumulation of cash has been so long in the making that the request to modify the order on that basis is untimely under Rule 60(c).

B

1

Rule 60(c)(1) provides, "A motion under Rule 60(b) must be made within a reasonable time". The debtor's reply brief acknowledges Computershare's observation that the buildup of cash is not a new development. The debtor responds, however, that

7

its motion to eliminate future monthly payments was made within a reasonable time because the debtor filed it soon after (a) the debtor and Computershare agreed on the value of Computershare's secured claim for confirmation purposes—an agreement that resulted in the monthly adequate protection payments no longer reducing the amount of the secured claim (in the §506(a) sense) to be paid through a reorganization plan, as those payments had previously—and (b) Computershare made clear that it would accept no achievable plan of reorganization. Based on Computershare's declaration that mediation is pointless and the Lenders' pending appeal of the order denying them immediate relief from the automatic stay, the debtor paints continued payments as simply funding its opponents' "litigation war chest". ECF No. 891, at 6.

Computershare first responds that the debtor cannot contest the timeliness of its Rule 60(b)(5) motion, stating, "Because Debtor chose to ignore Rule 60(c), Debtor should not be permitted to argue it for the first time in a reply brief." ECF No. 864, at 2 n.1. But "the time limits in Rule 60(c) are subject to waiver and forfeiture". *In re Terrell*, 39 F.4th 888, 892 (7th Cir. 2022). And, although the moving party bears the ultimate burden to show that a Rule 60(b) motion was timely filed, Rule 60(c) imposes a limitations period, which, in the absence of language directing otherwise, is typically understood as an affirmative defense. As so understood, the movant need not address Rule 60(c) until it is raised. See *NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) ("A plaintiff is not required to plead elements in his or her complaint that overcome affirmative defenses, such as statute-of-limitations defenses."); *Smith v. SEC*, No. 24-3907, 2026 WL 850806, at *4 (6th Cir. Mar. 27, 2026) ("[A] party is not required to anticipate affirmative defenses in its opening [summary judgment] brief; so long as it responds to those defenses in its reply brief, it preserves its arguments on the issue."); *United Cent. Bank v. Wells St. Apartments, LLC*, 957 F. Supp. 2d 978, 988 (E.D. Wis. 2013), aff'd sub nom. *United Cent. Bank v. KMWC 845, LLC*, 800 F.3d 307 (7th Cir. 2015) ("Thus, the most efficient way to handle affirmative defenses at the summary-judgment stage is

8

to require the defendant to raise the defenses it intends to pursue at trial in response to the plaintiff's motion for summary judgment on a claim."); *Freeland v. Lorenzini & Assocs., Ltd.*, No. 19 CV 07888, 2024 WL 3251584, at *3–4 (N.D. Ill. July 1, 2024) (following same approach as *United Central Bank v. Wells Street Apartments, LLC*).

The debtor's failure to address Rule 60(c) in its motion, therefore, does not amount to a forfeiture of its right to demonstrate that it timely filed its motion to modify the Order. Allowing the debtor to address Computershare's Rule 60(c) argument in their reply brief worked no procedural unfairness, since the court afforded Computershare an opportunity to address the debtor's response in a sur-reply. Under the circumstances, the debtor's failure to address Rule 60(c) does not require a ruling that the motion is untimely.

2

Computershare argues that the debtor did not file its Rule 60(b)(5) motion in a "reasonable time" because the debtor knew (or should have known) that the balance of its cash accounts would increase during the bankruptcy. Indeed, one of the principals of the debtor's managing member predicted that outcome in a declaration the debtor filed in support of its "first-day" motion seeking permission to use cash collateral. See ECF No. 21, at 7 ("In my opinion, the Operating and Bankruptcy Budgets show that the net cash of the Debtor is projected to increase substantially over the next four months, after accounting for all ordinary and necessary business expenses, and the anticipated bankruptcy expenses.").

But to decide whether the debtor filed the motion in a reasonable time, the court must consider all of the relevant factual circumstances: "Although '[t]here is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion,' we look at 'the interest in finality, the reasons for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice, if any, to other parties.'" *Ingram v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 371 F.3d 950,

9

952 (7th Cir. 2004) (quoting *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986)). "[E]ven with respect to purely private litigation, the litigants' knowledge of the grounds for relief is only one factor for the [trial] court to weigh. Other factors include '"the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties."' *Shakman v. City of Chi.*, 426 F.3d 925, 933–34 (7th Cir. 2005) (quoting *Kagan*, 795 F.2d at 610 (alteration in original)). And, in determining whether a Rule 60(b) motion was brought in a reasonable time, a court must also consider "the nature of th[e] litigation". *Id.* at 934.

In the context of this chapter 11 case, the debtor filed its Rule 60(b) motion within a reasonable time for purposes of Rule 60(c). At the time the debtor filed its motion, it was clear that continuing to make monthly payments to Computershare was not required as adequate protection—that is, those payments were not then (and are not now) required to preserve the value of Computershare's collateral—instead, they are required only by the terms of the Order. See *In re Wilson*, 70 B.R. 46, 48 (Bankr. N.D. Ind. 1987). Following evidentiary hearings on the Lenders' motion for stay relief, which included valuation of the debtor's hotel as of July 2025, and determination of a fair and equitable cramdown rate, the court denied the Lenders' request for immediate relief from the automatic stay and directed that it would afford the debtor only one last chance to confirm a plan of reorganization. The parties agreed on—and the court adopted—a six-month schedule projected to conclude the reorganization effort, either in plan confirmation or relief from the stay in favor of the Lenders. The parties also agreed that if matters proceeded as proposed (and ordered), they would not relitigate the hotel's value but would use the 2025 hotel value as the value of the secured claim for purposes of the debtor's need to show that its reorganization plan pays the value of that claim as of the plan's effective date, as required by §1129(b)(2)(A)(i)(II). Given that agreement, the debtor's monthly payments will no longer decrease the value of the

10

secured claim for confirmation purposes. Going forward those payments would only decrease the amount of Computershare's total claim (having exercised its §1111(b) election) that exceeds the hotel value—an excess amount the plan proposes to pay several years in the future without interest. Beyond all that, the Lenders appealed the court's denial of immediate stay relief to the district court, which, when the debtor moved for relief from the Order, had at least some potential to disrupt the planned final litigation of plan confirmation and stay relief as proposed by the parties and adopted by the court.

Notably, Computershare does not argue that the debtor's failure to file the motion earlier somehow prejudices it; it makes no mention of anything that it would have done differently had the debtor filed its motion sooner. See ECF Nos. 864 & 910, at 1–3. And, even presuming the Order is final for purposes of 28 U.S.C. §158(a), that is, it finally resolved the contested matter of the debtor's use of cash collateral and imposed conditions in favor of Computershare, the Order is unquestionably interlocutory as viewed from the perspective of the overall chapter 11 reorganization case. See *In re Lafayette Dial, Inc.*, 92 B.R. 798, 799–800 (Bankr. N.D. Ind. 1988) ("While an order of adequate protection is final, in the sense that it is capable of being appealed, it is not final in the sense that it is immutable."). From that perspective, the Order's command to make monthly adequate-protection payments is akin to a preliminary injunction, conditions imposed on the debtor to maintain the status quo as to Computershare's interest in the debtor's property while affording the debtor the right to use that property while it attempts to confirm a plan of reorganization. This status quo will be overtaken either by confirmation of a plan that modifies Computershare's rights to relief from the debtor and its property or an order denying confirmation of that plan and granting Computershare relief from the automatic stay so that it can immediately exercise its foreclosure and other rights under nonbankruptcy law. Considering all this,

11

the debtor moved for relief from the Order within a reasonable time for Rule 60(c) purposes.

C

1

Whether the debtor is entitled to that relief is a different matter. The Order incorporated the terms of an agreement between the debtor and Computershare, one that preempted litigation over the debtor's request for court authorization to use cash in which Computershare had a lien. As noted above, in the analogous context of consent decrees, "relief under Rule 60(b)(5) . . . requires a substantial change in circumstances". *United States v. Sherard*, No. 05-CV-486, 2015 WL 1840050, at *6 (E.D. Wis. Apr. 22, 2015) (citing *Rufo*, 502 U.S. at 383). But the "standard for modification . . . [as] set forth in Federal Rule of Civil Procedure 60(b)[] is a 'flexible' one." *O'Sullivan v. City of Chi.*, 396 F.3d 843, 861 (7th Cir. 2005) (citing *Rufo*, 502 U.S. at 380). As the Supreme Court has instructed, Rule 60(b)(5) affords a potential avenue for relief when changes in fact or law make a final order's continuing effect inequitable:

> Federal Rule of Civil Procedure 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, applying the judgment or order prospectively is no longer equitable. Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest. The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes.

*Horne v. Flores*, 557 U.S. 433, 447 (2009) (cleaned up, quotations and citations removed); see also *United States v. City of Chi.*, 663 F.2d 1354, 1360 (7th Cir. 1981) ("The standard also incorporates consideration of whether there remains any need to continue the

12

injunction, that is, whether 'the purposes of the litigation as incorporated in the decree' have been achieved."). Still, courts have cautioned against modifying orders to relieve a party of known consequences or where the change of circumstances should have been foreseen. See, e.g., *Bigelow v. Balaban & Katz Corp.*, 199 F.2d 794, 796 (7th Cir. 1952) ("[U]nder the doctrine of *United States v. Swift & Co.*, 286 U.S. 106, [(1932), the] power to modify an injunction turns upon the issue whether such modification is in adaptation to changed conditions not readily foreseeable at the time the decree was entered."); *In re Lafayette Dial, Inc.*, 92 B.R. at 800 ("Consequently, having once settled the dispute through the entry of an agreed order, a debtor is not permitted to change its mind and repudiate that agreement."). And although the origins of these cautions might trace back to "the 'grievous wrong' language of *Swift* . . . [which] ward[ed] off virtually all efforts to modify consent decrees," more recent precedent makes clear that modification of injunctive relief entered by consent continues to be generally limited to "changes in circumstances that were beyond the [moving party's] control and were not contemplated by the court or the parties when the [order] was entered," *Rufo*, 502 U.S. at 380–81.

While the debtor correctly observes that its substantially increased cash position makes adequate protection payments unnecessary to preserve the collateral value, the debtor appears to have anticipated that development from the onset. See ECF No. 19, at 6 ("The Operating Budget shows estimated substantial and material increases in net cash during this initial four-month period [of the bankruptcy case], and demonstrates that substantial and material net cash will remain and increase during this time after the payment of all ordinary and necessary expenditures".). The debtor nonetheless agreed with Computershare on the current terms of the cash collateral order, including the monthly payments of up to $50 thousand.

The debtor argues that the Lenders' refusal to negotiate has unexpectedly extended the case beyond what it reasonably expected and that the continued cash

13

payments are now unfairly "financing the Lenders' appellate litigation and efforts to suspend and extend this case." ECF No. 891, at 11. But while the Lenders' apparent lack of interest in negotiating terms of an acceptable reorganization plan no doubt disappoints the debtor, it cannot be deemed so outside the range of foreseeable outcomes to justify modification of the stipulated cash collateral order.

Additionally, the debtor's agreement that the value of Computershare's secured claim will be set for confirmation purposes at the hotel's adjudicated value of $26 million is not a change of circumstance that makes the continued payments inequitable. And while the Lenders' decision to appeal the court's denial of immediate stay relief may impose additional costs on the debtor, those additional costs alone are insufficient to find continued application of the Order inequitable.

2

Still, as noted above, the cash collateral order is inherently interlocutory in the context of the overall chapter 11 case—the Order's purpose and effect terminate upon plan confirmation, dismissal, or conversion. Therefore, this court retains the authority to modify the cash collateral order "to take into account any change in circumstances". *Chi. Hous. Tenants Org., Inc. v. Chi. Hous. Auth.*, 512 F.2d 19, 22 (7th Cir. 1975); see also *Dore & Associates Contracting, Inc. v. Am. Druggists' Ins. Co.*, 54 B.R. 353, 360 (Bankr. W.D. Wis. 1985) ("The [bankruptcy] court has inherent power to modify preliminary injunctions if warranted by the facts and circumstances of the case." (citing 19 Fed. Proc. L. Ed. §§ 47:138, 47:139 at 527–528 (1983))); *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1451 (11th Cir. 1994) ("The bankruptcy court has the equitable power to correct, modify, or vacate its own interlocutory orders."), abrogated on other grounds by *Kontrick v. Ryan*, 540 U.S. 443 (2004).

This case now stands in a substantially different posture than it did when the court entered the Order. The court has ordered that a final hearing on confirmation will commence shortly, a schedule the debtor and the Lenders participated in setting. Unlike

14

previously, the outcome of that hearing will definitively resolve the parties' bankruptcy dispute. The court will either confirm the debtor's plan of reorganization or, if the debtor is unsuccessful in confirming its plan, the court will grant Lenders relief from the §362(a) stay to enforce their rights in the debtor's property under nonbankruptcy law.

Given this and the fact that Computershare does not contend that it currently faces any risk that its collateral position is not adequately protected, continuation of the Order's monthly payment term has no ongoing equitable purpose or function beyond the commencement of the May 26 confirmation hearing. The only delay, if any, will be one of adjudication, which the court anticipates will be short, and, in all events, any such delay is not one that should be charged to the debtor in the form of payments that can no longer be justified as adequate protection—that is, as payments calculated to preserve value of Computershare's collateral value through plan confirmation. The court will therefore modify the Order to discontinue all monthly payments after the May 2026 payment.[3]

---

3. The court takes judicial notice that the Lenders have requested that the District Court stay the confirmation proceedings until their appeal of the December 5, 2025 order is complete. As the April 2, 2026 order (ECF No. 957) explains, however, this court has determined that a stay of these proceedings is not justified. If the District Court nonetheless stays the proceedings in a manner that delays the scheduled final hearing on confirmation, that delay will constitute an unforeseen event that, in the context of this case's other circumstances, will independently make continued monthly payments under the cash collateral order inequitable. In the absence of the modification provided by this order, the resulting delay would require in the debtor to make payments that are unnecessary as an adequate protection (or any other) matter because the Lenders elect to eschew the most expeditious resolution of this case—adjudication of plan confirmation at a final confirmation hearing commencing on May 26, which will entitle them to stay relief should the debtor fail to prove that its amended plan of reorganization is confirmable under §1129 of the Bankruptcy Code.

III

For the reasons stated above, IT IS ORDERED:

1. The monthly payments required by the May 2, 2024 cash collateral order terminate upon the debtor's tendering of all such payments through and including the May 2026 payment.

2. The debtor's motion for relief from the May 2, 2024 cash collateral order (ECF No. 829) is granted to the extent provided by this order and is otherwise denied.

# # # # #

16