So Ordered.

Dated: July 7, 2026



G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Wisconsin & Milwaukee Hotel LLC,

Case No. 24-21743-gmh
Chapter 11

Debtor.

## OPINION AND ORDER

Debtor Wisconsin & Milwaukee Hotel, LLC, requests that the court confirm its fourth amended chapter 11 plan; secured creditor Computershare Trust Company, N.A., objects to plan confirmation on several grounds.[1] One of the grounds is that the plan fails to meet §1129(b)(2)(A)(i)(II)'s confirmation requirement that future periodic payments equal the present value of its secured claim on the plan's effective date. Computershare contends that although the plan pays interest on the claim at a rate equal to the five-year Treasury note rate plus 320 basis points, adjusted every five years

---

1. Computershare holds its claim as indenture trustee and acts at the direction of the bondholder, Wisconsin & Milwaukee Hotel Funding LLC (Funding). See ECF No. 1046, at 1. Computershare and Funding have been identified as "Lenders" or "Bond Parties" in other filings and litigate in lockstep. For ease of explication, this opinion and order ignores Funding, though the ruling is equally binding on it.

to account for any changes in the base rate, that interest rate cannot support a finding that the plan pays Computershare the present value of its secured claim. Computershare argues that, as a matter of law, §1129(b)(2)(A)(i)(II) requires the use of a fixed rate. It offers the opinion testimony of Cynthia Nelson that if the appropriate interest rate to calculate present value under §1129(b)(2)(A)(i)(II) must be a fixed rate, then the court "will need to incorporate the duration risk of an 18-year Plan and should apply its 320 basis point risk premium to a currently prevailing risk-free rate of a similar duration", which Ms. Nelson opines is the "yield for a U.S. Treasury maturing in 18 years". ECF No. 1007-19, at 11.

The debtor asks the court to exclude this testimony, arguing that (1) the court's previous adjudication of the appropriate cramdown rate is law of the case, which forecloses Computershare's newly made contention that the plan's adjustable interest rate is legally improper and (2) neither §1129(b)(2)(A)(i)(II) nor anything else in the Bankruptcy Code prevents a debtor from confirming a chapter 11 plan that adjusts the rate of interest paid to a class of secured creditors during the plan term. ECF No. 1040. Computershare contests both arguments. ECF No. 1041.

I

The debtor filed its plan of reorganization and proposed disclosure statement for use in soliciting acceptance of the plan, as required by §1125(b), in February 2025. ECF Nos. 392–93. In April 2025 the debtor filed an amended plan and amended disclosure statements. ECF Nos. 486 & 503-04. A disclosure statement was approved, and, at the court's direction, the debtor served that disclosure statement and the amended plan on all creditors. ECF Nos. 495, 502 & 508. A class of general unsecured creditors all voted to accept the plan, thus making the plan potentially confirmable. ECF No. 545, at 4–5; see also §1129(a)(10) (requiring at least one class of impaired claims to accept the plan) & §1129(b)(1).

Computershare opposed plan confirmation and filed a motion seeking relief from the §362(a) stay, asserting that it was entitled to relief under §362(d)(2) because the debtor lacked equity in the hotel and the hotel was not necessary for an effective reorganization. ECF Nos. 551 & 577. The court held a June 10, 2025 preliminary hearing on the motion and because of the substantial overlap of legal and factual issues, directed that adjudication of the request for stay relief would be held "at the end of the confirmation hearing, scheduled for July 21, 2025, through July 25, 2025." ECF No. 593, at 2; see also ECF No. 587.

The debtor filed a second amended chapter 11 plan on June 27, 2025. Among other changes, the second amended plan modified the payments on Computershare's $26 million secured claim by providing for periodic payments that included interest "based upon a premium over the current prevailing rates for 10-year United States Treasury Securities . . . [to be] adjusted ten years from the Effective Date to reflect a comparable premium to the then-prevailing rates." ECF No. 621, at 10.

At the pretrial conference on confirmation of the second amended plan and the motion for stay relief, the court observed that another one of the plan's modified provisions (allowing existing equity holders to retain their equity interests with certain conditions) appeared to be at odds with precedent applying §1129(b)(2). After additional discussion of that issue at the final pretrial conference, the debtor stated that it would further amend its chapter 11 plan. ECF No. 660, at 2. As a result, instead of proceeding with the planned July 21 chapter 11 confirmation hearing, the court convened "an evidentiary hearing on the valuation of Computershare['s] collateral, and on . . . [the] motion for relief from the automatic stay" beginning on July 22, 2025. *Id.* The court made clear, however, that its findings on valuation and the rate of interest a reorganization plan would have to pay Computershare would presumptively apply to the debtor's effort to confirm its further amended plan. ECF No. 660, at 2 (noting that

the court would "hear evidence and adjudicate issues that may be applicable to confirmation of a future modified plan.").

The court proceeded to conduct a two-stage evidentiary hearing. The court held stage one on July 22–24 to determine the value of the debtor's hotel (the principal determinate of the value of Computershare's secured claim for confirmation purposes). ECF No. 697. The court announced an oral ruling on valuation on July 25, 2025, finding from the evidence presented "that the hotel has a fair market value of $26 million." *Id*. at 2. The court ordered the debtor to "file a final version of its chapter 11 plan by no later than August 4, 2025." *Id*. (emphasis omitted).

The debtor filed a third amended chapter 11 plan by that deadline. ECF Nos. 710–11. The third amended plan changed the interest rate to be paid on Computershare's secured claim and stated that the interest rate would be calculated by adding a 2.7% risk premium to the five-year Treasury note rate (with the total interest rate initially projected at 6.5 percent) and further provided that the plan's payments to Computershare would be adjusted every five years in accordance with then-prevailing market rates. See ECF No. 710, at 9, §3.3.

The second stage of the evidentiary hearing, held on August 6, 11, and 14, 2025, addressed principally the question whether the debtor could show that it would likely have future income sufficient to pay Computershare's secured claim with interest over the 18-year plan term—a question that mattered to plan confirmation (whether the debtor would be able to show the ability confirm a plan that will not likely be followed by a future reorganization or liquidation (§1129(a)(11)) and that would pay Computershare the present value of its secured claim (§1129(b)(2)(A)(i)(II))), as well as to the request for stay relief (whether the debtor could propose a feasible plan of reorganization in a reasonable time, as required by the judicial gloss on §362(d)(2)). At that hearing, the debtor offered testimony from Randall Erkert, a managing member of

Jackson Street Management LLC, the debtor's managing member, and from financial experts, Deborah Friedland and William Pederson, to show principally that the debtor's financial projections establish that it will be able to fund the plan through hotel operating revenue plus equity sale proceeds. ECF Nos. 734, 736, 745 & 750. Computershare offered expert testimony from Cynthia Nelson on the rate of interest necessary to satisfy §1129(b)(2)(A)(i)(II)'s confirmation requirement that the plan's stream of deferred payments to Computershare are at least equal the present value of its secured claim on the plan's effective date. ECF Nos. 734, 736 & 746.

At the close of the evidence, the court ordered briefing. An August 15, 2025 order specifically directed the debtor to file a response to the motion for stay relief that "address[ed] the matters discussed in detail on the record regarding *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), and the methodology to select the base rate to determine the interest rate to be used to calculate the present value of the plan's deferred payments to [Computershare]; i.e., to determine whether the plan's deferred payments total an amount, as of the effective date of the plan, that is at least equal to the value of [Computershare's] interest in the estate's interest in the hotel." ECF No. 734, at 2. The order further directed Computershare to file a reply to the debtor's submission. *Id.* Additionally, after the court reviewed the parties' post-hearing briefs, it requested supplemental submissions concerning the selection of an appropriate interest (discount) rate under §1129(b)(2)(A)(i)(II), stating that the "determination of [this] cramdown rate" seemed "material to the outcome". ECF No. 774 (discussing the application of *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), to the evidence presented in this case). In further describing the matters to be addressed by the parties' supplemental submissions, the court specifically required the debtor to explain how the evidence supported the debtor's rate of "6.5 percent (subject to fluctuation in the five-year treasury rate), based on increasing the five-year treasury rate by 2.7 percent." *Id.* The order requiring the

supplemental submissions observes that Computershare's post-hearing brief contended that Ms. Nelson's "testimony remain[ed] relevant if the court adopts the treasury bill rate as the reference rate" and directed Computershare to explain how her risk-adjustment testimony would apply under that circumstance. *Id.* Computershare's subsequent brief argues that "[c]hanging the base rate [from the prime rate to the five-year Treasury rate] should not alter the Court's conclusion of an appropriate rate of cramdown interest . . . [based in part on] Ms. Nelson's testimony that 'it doesn't matter' what the base rate is . . . ." ECF No. 786, at 2. The debtor's supplemental brief highlights Ms. Nelson's testimony that the plan's proposal to adjust the interest rate every five years was risk-minimizing for purposes of calculating the appropriate interest rate, stating:

> Nelson's core testimony . . . tethered her proposed risk adjustments more specifically to the four factors that the *Till* plurality believed were relevant to determining the risk adjustment in a cramdown loan. She testified about the factors this way: "my initial adjustment was 50 basis points for circumstances of the estate, 200 basis points for loan-to-value, 200 basis points for feasibility, and 59 basis points for the 18-year duration." HT, p. 62. Then, in consideration of the Second Amended Plan's adjustment of interest rates every ten years, which she believed reduced [Computershare's] risks under the "duration" factor, she reduced the cramdown rate by 59 basis points to 12%. **When the Third Plan proposed to adjust rates every five years, she reduced the cramdown rate further under the "duration" factor another 61 basis points to 11.39%.** *Id.*, p. 63. Thus, prior to her summation, her risk adjustment of 389 basis points was comprised of (1) 50 basis points for circumstances of the estate, (2) 200 basis points for [loan-to-value], (3) 200 basis points for feasibility, less (4) 61 basis points for duration.

ECF No. 787, at 9–10 (emphasis added).

After considering the evidence and the extensive post-hearing briefing, the court entered an opinion and order on December 5, 2025, that denied Computershare's motion for stay relief. ECF No. 845 (all subsequent references to this opinion and order

are in the form "Order, at __").[2] In finding that the debtor likely had the means to finance a feasible plan of reorganization that may timely be confirmed, the Order ruled that "based on the evidence presented and considering that the burden of demonstrating upward adjustments is on Computershare, the court finds that the plan's future payments on Computershare's allowed secured claim must be discounted at a rate equal to the prevailing rate for five-year Treasury notes, as referenced in the plan, plus 320 basis points." Order, at 51. The Order expressly recognizes that the "debtor's plan proposes to reset the cramdown rate every five years based on the then-current five-year Treasury note rate" and concludes that "*Till* does not foreclose that approach, at least not when determining an appropriate cramdown rate for purposes of §1129(b)(2)(A)(i)(II)." *Id*. at 36; see also *id*. at 46 ("About the risk of default based on the plan's length, Ms. Nelson testified that after the debtor amended the plan to base the cramdown rate on the five-year Treasury note rate, to be reset every five years, she concluded that an adjustment of 61 basis points *downward* was warranted."). Based on the interest-rate finding, the court rejected Computershare's contention that it was entitled to stay relief because the debtor could not timely confirm a feasible plan, reasoning that, along with the funds from the sale of new equity proposed in the third amended chapter 11 plan, the debtor's financial projections demonstrated that income from the hotel would be adequate to fund the plan, since those projections were based on the third amended plan's materially similar interest rate of 270 basis points over the five-year Treasury note benchmark rate. Order, at 51–54.

After entering the Order, the court entertained the parties' proposals on further proceedings at a December 11 conference and then set a comprehensive confirmation schedule culminating in an evidentiary hearing on confirmation of the debtor's fourth

---

2. Originally docketed at ECF No. 803, redocketed on January 5, 2026, as ECF No. 845, after correcting two nonsubstantive clerical errors. All references here are to the corrected version, ECF No. 845.

amended chapter 11 plan to commence in May 2026. ECF No. 817. Computershare filed a notice of the appeal of the Order on December 17, 2025: The statement of issues to be presented on appeal acknowledged that the Order ruled that the "Debtor had shown a reasonable possibility of a successful reorganization, based" in part "on . . . [the court's] finding of a 6.8% cramdown interest rate". ECF No. 843, at 9; see also ECF No. 824.

On January 12, 2026, the debtor timely filed its fourth amended plan of reorganization and an amended disclosure statement. ECF Nos. 853–855. The fourth amended plan provides for periodic payments to Computershare with interest at the rate the Order found appropriate, "a rate of 320 basis points over the yield reported by the United States Department of the Treasury for five-year Treasury securities on the Effective Date, and adjusted on the 5th, 10th, and 15th anniversaries of the Effective Date (the 'Adjustment Dates') to reflect 320 basis points over the yield reported by the United States Department of the Treasury for the five-year Treasury securities as of each such Adjustment Date." ECF No. 853, at 10, §3.3 (emphasis omitted). The disclosure statement similarly described the cramdown interest rate applicable to Computershare's secured claim. ECF No. 855, at 28–29.

No objections were filed to the amended disclosure statement, and the court entered an order approving it on February 3, 2026. ECF No. 892. The debtor then solicited votes on the fourth amended plan by serving all creditors with the amended disclosure statement and fourth amended plan. ECF No. 907.

On March 2, 2026, Computershare filed its objection to confirmation of the fourth amended plan. ECF No. 933. In part, the objection contends that the plan's "stream of proposed payments does not have a present value equal to the value of the hotel" because "the 4th Amended Plan calls for adjustments to the discount rate on the 5th, 10th and 15th anniversaries of the plan's effective date." ECF No. 933, at 9–10. The objection asserts, "[t]he evidence will show that the five-year Treasury rate is expected

to increase during the life of the plan." *Id.* at 10. "As the interest rate increases," Computershare contends, "the present value decreases", and, adopting as a necessary premise that the cramdown rate must remain constant during the plan term, it concludes that:

> Debtor cannot show that the 4th Amended Plan provides Computershare with a stream of payments having a present value of $26 million. *See, e.g., In re Bugg*, 172 B.R. 781, 785 (E.D. Pa. 1994) ("Courts have consistently required a fixed interest rate to be used under the 'cram down' provisions of § 1129(b)" and "[t]he 'fair and equitable' requirement is not satisfied under this plan because a fixed interest rate is not used to determine the present value of [the secured creditor's] claim") (stating that court knew of no published opinion in which a court approved a variable discount rate) (citing *In re Claeys*, 81 B.R. 985 (Bankr. D.N.D. 1987)); *In re Associated Wood Prods., Inc.*, 323 B.R. 479, 482 (Bankr. D. Minn. 2005) ("Proposed payment of variable interest rates in plans has been determined by the Eighth Circuit Court of Appeals to violate the Code's required present value treatment of allowed secured claims."); *United States v. Neal Pharmacal Co.*, 789 F.2d 1283, 1286 (8th Cir. 1986) (noting that the Bankruptcy Code "contemplates the use of a fixed interest rate" and that use of floating rate would be administratively difficult and "would complicate a determination of the feasibility of the debtor's reorganization plan"); *In re Sunflower Racing, Inc.*, 226 B.R. 673, 685 (D. Kan. 1998) ("[T]he bankruptcy court simply could not use the suggested rate by the Debtor to calculate the present value of its payments because it was not a fixed rate."); *In re Lewis Indus.*, 75 B.R. 862, 870 (Bankr. D. Mont. 1987) (finding that a fixed rate is mandated by the Bankruptcy Code in computing the present value of future payments).

*Id.* at 10.

The debtor timely filed its response to Computershare's objection three days before the final pretrial conference on confirmation. In the response, the debtor contends that Computershare's assertion that "the Debtor is required to use a fixed cramdown interest and discount rate for the term of the Plan" is "an inexplicable change in position from the Lift Stay Hearings when the cramdown rate was being adjudicated, and an improper attempt to relitigate the cramdown rate". ECF No. 1008,

at 49–50. The debtor argues that Computershare's new opposition to the cramdown rate "should be rejected under the law of the case doctrine" because "[i]n the Stay Relief Opinion, the Court approved the general conceptual formula proposed by the Debtor, which adjusts the interest and discount rate on the 5th, 10th and 15th anniversaries of the Effective Date":

> [Computershare's] contention now, that a fixed rate should be required, is not only an attempted relitigation of a judicially settled issue, but it is at odds with the expert testimony [Computershare] presented in the adjudication of the cramdown interest rate in August 2025. Ms. Nelson testified that a fixed rate would require a greater risk adjustment because a fixed rate heightened the risk that [Computershare] would not receive the present value of [its] Claim. This is what she said:
>
>> I specifically am looking at whether or not the plan compensates for the interest rate risk over the time of the plan, which is separate from just the inherent riskiness of cashflows over time. Lenders [i.e., Computershare] need to be compensated for changes in interest rates and if you have a fixed rate and rates go up over that period of time, you're lending at a lower rate than you would otherwise be lending at.

ECF No. 1008, at 50 (quoting August 14, 2025 Hr'g Test., ECF No. 746, at 49–50 (modification added)). The debtor further emphasizes that "[t]he essential terms of the [plan's] treatment [of Computershare's claim] have not changed since the August 2025 hearings, except to conform them to the Court's concluded cramdown interest rate which was based in part on Ms. Nelson's testimony" and contests the persuasiveness of the authorities on which Computershare relies. *Id.* at 51–52.

The debtor made an oral motion at the final pretrial conference to exclude from the confirmation hearing Computershare's submission of new opinion testimony from Ms. Nelson about the appropriate interest rate. In particular, the debtor requested that Ms. Nelson not be permitted to testify about opinion number one in her April 2026 report, in which Ms. Nelson opines as follows: "If the Court determines that the interest

rate on Lender's Secured Claim should be treated as a fixed rate over the life of the Plan[,] it must take into account the duration risks associated with an 18-Year Plan which will increase the balloon payment shown in Debtor's Projections." ECF No. 1007-19, at 5 & 11 (emphasis omitted). Ms. Nelson's report makes clear that this opinion is only relevant if "the Court determine[s] that the interest rate on the Plan should not be variable," in which case Ms. Nelson would opine that the court's calculation of the rate necessary to determine the value of future payments must "incorporate the duration risk of an 18-year Plan and should apply its 320 basis point risk premium to a currently prevailing risk-free rate of a similar duration." *Id.* at 11. And she would further opine that the appropriate risk-free rate was "the yield for a U.S. Treasury bond maturing in 18 years". *Id.*

After hearing argument on the debtor's oral motion in limine on the first day of the confirmation trial, the court elected to receive Ms. Nelson's testimony on the disputed issue subject to the debtor's objection, leaving a ruling on its admissibility to be decided after a more fulsome presentation by the parties on the debtor's contention that the testimony is irrelevant because the court already ruled that the use of a rate adjusted every five years is appropriate and the Bankruptcy Code does not foreclose that approach. ECF No. 1038, at 10–25; see also ECF No. 1037, at 84–85 & 89. Subject to the objection, Ms. Nelson testified that, *if the law requires use of a fixed rate*, she would have a "concern" about the appropriateness of using the five-year Treasury note as the reference rate, even though she otherwise found use of the five-year rate "acceptable":

> **My concern is that the 5-year Treasury rate as proposed in the current plan was going to change every five years, so that was acceptable in my mind as the base rate,** because the Lender would . . . [be] compensated for interest rate risk. You have the risk of changes in the interest rate, because it was going to change every five years. **If the Court concludes that a fixed rate needs to be used and that that fixed rate is the then-5-year Treasury plus 320 basis points, I have concerns**, because the interest rate risk for 18 years is not being compensated, and

> a component of the nominal Treasury yield is compensation for the duration of that Treasury. And if it's only for five years, there is risk for 18 years, and that is something that's not captured. That compensation is not captured in a 5-year Treasury.

ECF No. 1037, at 86 (emphasis added); see also *id.* at 87 ("An investor is going to require compensation for accepting payment over a longer period of time because of the inherent uncertainty of changes in interest rates and potential changes in inflation that are unexpected."). If a fixed rate is required, Ms. Nelson testified, the reference rate should use "a risk-free rate like Treasury or SOFR of comparable duration", here, eighteen years. *Id.* at 87.

After the parties concluded their presentation of confirmation evidence (subject to the court potentially allowing the debtor to present further rebuttal evidence if the court admits Ms. Nelson's "fixed rate" testimony), the court directed the debtor to file a written motion to exclude Ms. Nelson's testimony (in effect a written supplement to its oral motion) and afforded Computershare an opportunity to respond. ECF No. 1035. The parties submitted those filings on June 12 and 19, 2026. ECF Nos. 1040 & 1041.

II

The debtor argues that Ms. Nelson's "fixed rate" testimony is irrelevant because the December 5, 2025 Order ruled that the plan's payment of interest at a rate equal to the five-year Treasury note plus 320 basis points, adjusted every five years for changes in the five-year Treasury note rate, satisfies §1129(b)(2)(A)(i)(II)'s requirement that the plan pay Computershare total payments that have a present value as of the plan's effective date that is at least equal to the value of Computershare's $26 million secured claim. ECF No. 1040. The debtor contends that the fourth amended plan employs the same adjusted discount rate that the Order declared appropriate for §1129(b)(2)(A)(i)(II) purposes—thus, the appropriateness of using that discount rate to adjudicate the fourth amended plan's compliance with §1129(b)(2)(A)(i)(II) is law of the case. ECF No. 1040.

"The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 701 (7th Cir. 2024) (quoting *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)). The doctrine applies presumptively, but the strength of the presumption varies with the circumstances, and the doctrine's application is ultimately discretionary. See *id.* ("The doctrine is discretionary, 'not an inflexible dictate.'" (quoting *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018))). "Generally, however, a party must point to a 'good reason' to abandon the court's earlier ruling." *Id*. (quoting *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004) (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure §4478 (3d ed. Apr. 2023 Update))); see also *id*. ("The standards announced for departing from the law of the case commonly demand strong justification." (quoting Wright, et al., *supra*)). Good reasons for such a "departure from the doctrine include (1) substantial new evidence introduced after the first review, (2) an intervening change in the law, and (3) a clearly erroneous decision." *Id*. (citing *Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014)).

As noted above, the Order ruled "that the plan's future payments on Computershare's allowed secured claim must be discounted at a rate equal to the prevailing rate for five-year Treasury notes, as referenced in the plan, plus 320 basis points." Order, at 51. The rate "referenced in the plan" is a rate adjusted every five years, as the Order made clear: "The debtor's plan proposes to reset the cramdown rate every five years based on the then-current five-year Treasury note rate." Order, at 36. The Order's determination of the appropriate cramdown rate depended substantially on evaluating the persuasiveness of Ms. Nelson's testimony. Ms. Nelson, an expert Computershare offered "in the field of . . . cramdown interest rate analysis" (ECF No. 746, at 16), was both aware of and considered the fact that the plan proposed a rate

adjusted every five years when she testified about the appropriate cramdown rate in August 2025; as the Order states, "About the risk of default based on the plan's length, Ms. Nelson testified that after the debtor amended the plan to base the cramdown rate on the five-year Treasury note rate, **to be reset every five years**, she concluded that an adjustment of 61 basis points *downward* was warranted." Order, at 46 (bold added; citing Nelson Aug. 14, 2025, Hr'g Test., ECF No. 746, at 61). Ms. Nelson, although championing starting with the prime rate, testified that in attempting to determine the duration risk adjustment for the 18-year fixed rate in the debtor's first plan, she considered rate differences between one-month treasuries and those maturing in 18 years. She opined that the 18-year fixed cramdown base rate in the first amended plan would require "a 59 basis point upward adjustment." ECF No. 746, at 60. She next testified about the second amended plan, which adjusted the cramdown rate every ten years, stating, "By the second amended plan, it was now just a 10-year plan and the short-term rate in 10-year treasuries were about equal, so there was not, in my opinion, a need to make a risk adjustment. . . for interest rate risk". *Id.*; see also Second Amended Plan, ECF No. 621, at 10 ("The discount rate is based upon a premium over the current prevailing rates for 10-year United States Treasury Securities, and will be adjusted ten years from the Effective Date to reflect a comparable premium to the then-prevailing rates."). She then explained that the inclusion of a five-year rate adjustment in the third amended plan diminished the inflation risk, leading her to reduce further her proposed adjustment for duration risk:

> And now, with the third amended plan, if it's now based on a five-year treasury, which it is, perhaps not surprising – actually, a lower amount than the 10-year treasury. And the five-year treasury . . . as of a couple of days ago was 3.83 percent and the one-month treasury is 4.44 percent, so you have a case of an inverted yield curve for just this short period of time where short-term rates are actually higher than the five-year rate.

> So I needed to adjust downward for the fact that the five-year rate – rates are expected to be – risk-free rates are expected to be lower in five years. So I needed to – **because the plan proposes to adjust the rate every five years, I needed to take that into account**, and I adjusted my interest rate downward by 61 basis points.

ECF No. 746, at 60–61 (emphasis added). Computershare then elicited testimony from Ms. Nelson that emphasizes her acceptance of a cramdown rate that adjusts every five years when she referred to the third amended plan (which provides for payments to Computershare over eighteen years), as being "only five years" and stating, "because the plan is only five years and interest rates are expected to be lower in five years, the risk-free rate, I further adjusted that minimum" by 61 basis points. *Id*. at 63. The court considered all this in ruling that the cramdown rate proposed by the plan—one that would be adjusted every five years—was equal to the five-year treasury rate plus 320 basis points. Order, at 39–51.

Computershare argues that the court's determination of an adjustable rate is not law of the case because the Order does not discuss whether a fixed cramdown rate is legally required. That's unpersuasive. The Order does not discuss that issue because no party presented it. Computershare did not contest the adjustable nature of the proposed cramdown rate, and Ms. Nelson embraced the debtor's decision to use an adjustable, rather than fixed, cramdown rate. She opined that the adjustable rate *lowered* the risk that the plan's deferred payments would fail to pay the present value of Computershare's $26 million secured claim.

Computershare also contends that allowance of an adjustable cramdown rate is not the law of the case because it lacked a fair opportunity to raise the issue, arguing that although Ms. Nelson's trial testimony and her supplemental report both recognized the debtor's use of an adjustable cramdown rate, she considered the proposed adjustable rate "only in terms of its effect on her risk adjustment for the

duration of the plan." ECF No. 1041, at 3. If a fixed rate is required as a matter of law, says Computershare, her opinion testimony has no bearing on the issue.

Given the effort to resolve the cramdown-rate issue during and following the August 2025 evidentiary hearing, these contentions are also unpersuasive. Ms. Nelson, *Computershare's cramdown-rate expert*, utilized legal precedent in formulating her opinion on an appropriate cramdown rate. She testified that her "process for determining the interest rate in this case" was to "look to the U.S. Supreme Court's opinion in *Till v. SCS Credit* and [she] followed what *Till* sets forth as the appropriate methodology for determining a cramdown interest rate in a matter such as this." ECF No. 746, at 26 (italics added). Almost all of the opinions on which Computershare now relies in arguing that the plan must provide for a fixed cramdown rate were decided several years before *Till* issued in 2004.[3] Ms. Nelson could have contended that the need for a fixed rate is part of "the appropriate methodology for determining a cramdown interest rate", but she didn't. *Id.* She instead viewed positively the debtor's plan amendments in which an adjustable rate superseded a fixed rate, as discussed above.

More importantly, Computershare had ample opportunity to raise this issue in support of its contention that stay relief was required under §362(d)(2) because an appropriate cramdown rate made any plan of reorganization infeasible. The debtor filed the second amended plan, which first introduced an adjustable cramdown rate, on June 27, 2025, and the third amended plan, which changed from a cramdown rate that adjusted in year ten to one that adjusted every five years, on August 4, 2025. ECF Nos. 621 & 710. The hearings at which the parties presented evidence relating to whether the

---

3. The lone outlier, *In re Associated Wood Products, Inc.*, 323 B.R. 479, 482 (Bankr. D. Minn. 2005), was decided in 2005 and its reasoning is based solely on the Eighth Circuit's 1986 opinion in *United States v. Neal Pharmacal Co. Assoc. Wood Prods.*, 323 B.R. at 482 (Bankr. D. Minn. 2005) (The "[p]roposed payment of variable interest rates in plans has been determined by the Eighth Circuit Court of Appeals to violate the Code's required present value treatment of allowed secured claims." (citing *Neal Pharmacal*, 789 F.2d at 1286)).

debtor could confirm a feasible plan or whether an appropriate cramdown rate (among other things) made that unlikely took place on August 6, 11, and 14, 2025. After the conclusion of those hearings, the court ordered further briefing, including on "the methodology to select the base rate to determine the interest rate to be used to calculate the present value of the plan's deferred payments to [Computershare]", with Computershare's brief due September 29, 2025. ECF No. 734, at 2. Computershare's brief made no argument that the proposed adjustable cramdown rate failed as a matter of law because cramdown rates must be fixed. The brief invokes case law to support Ms. Nelson's use of the prime rate as a benchmark (which she did because "because the *Till* [plurality] decision suggested using it") and contended that the prime-rate benchmark "is the most frequently used base rate in *Till* analyses around the country". ECF No. 760 at 24 (first quoting ECF No. 746, at 45). But, rather than citing rulings to argue for the legal necessity of a fixed interest rate (as Computershare does now), Computershare's brief stated, "A downward risk adjustment, or even no adjustment at all, is appropriate when using a variable interest rate." ECF No. 760, at 33.

The debtor's September 15, 2025 post-hearing brief highlighted "the principal issues for litigation in the July and August Hearings" including "the *Till* rate of interest to be applied for cramdown and present value purposes," and "[t]he fair and equitable treatment of secured Class 1B [(Computershare's secured claim) as evaluated] under sections 1129(a)(7)(B) and 1129(b)(2)(A)(i)." ECF No. 752, at 9. The debtor asked the court to "approve the Debtor's Plan cramdown interest rate" (ECF No. 752, at 43) and conclude that its "proposed cramdown rate . . . [makes the plan's] treatment of Class 1B . . . fair and equitable under section 1129(a)(7) and 1129(b)(2)." *Id.* at 24. This echoed the debtor's contention at the conclusion of the evidence that the court should determine the cramdown rate so that the debtor could include that rate in its plan before proceeding to confirmation:

It seems appropriate and conservative of resources in as much of we have the evidence and we've had a contested hearing on the interest rate, the Court can decide. . . . Whatever the base rate is and whatever the adjustment should be. There's testimony on both sides on that, and we'd have to brief it, but I think that could be decided now, and it makes sense to decide it now. And as **I said before, we're going to provide in the plan that whatever the judicially determined base rate is will be the rate we use as of the effective date, and whatever the judicially determined adjustment above that . . . that would be applied to whatever the base rate is at the effective date, and that's what the plan will provide <u>so we don't have to litigate that again before confirmation</u>**.

ECF No. 746, at 168–69 (emphasis added).

Computershare seconded the debtor's desire not to revisit the cramdown-rate issue at a later confirmation hearing, unless factual developments warranted additional evidence, stating in its post-hearing brief:

**The point here is that the Court is called upon to determine an appropriate rate of cramdown interest in deciding [Computershare's stay-relief] Motion.** That determination, which includes risk adjustments, is a necessary component of the Court's conclusion whether Debtor can successfully reorganize in a reasonable period of time. It affects not only the feasibility of any plan but also the determination whether a plan satisfies the requirements of § 1129(b). By leaving the adjustments for another day to determine if Debtor can eliminate risk by the time the next confirmation hearing rolls around, the Court would have to disregard the only expert testimony that has been offered on the appropriate rate of cramdown interest.

It would also require entirely new risk adjustment testimony at a subsequent confirmation hearing. **The far more efficient and appropriate approach is to determine now whether Debtor can confirm a plan based on an "at-a-minimum" rate of interest required for the proposed cramdown loan. If the Court denies the Motion, the parties can later present more limited evidence—should they choose—about whether anything has changed since the Court's decision to warrant an increase or decrease to the Court's concluded, minimum interest rate.** This would also be the approach most consistent with the Court's goal of utilizing overlapping testimony from the Motion hearings.

ECF No. 760, at 39-40 (emphasis added) (footnotes omitted). The parties plainly contemplated that the court's determination of the appropriate cramdown rate, including resolution of disputed legal questions about the methodology for making that determination, would govern future confirmation proceedings, at least in the absence of material *factual* developments.

The cramdown rate that the Order found appropriate was premised on it being adjusted every five years. That ruling, therefore, is law of the case, unless Computershare shows that there is "a 'good reason' to abandon [that] earlier ruling." *Cannon*, 92 F.4th at 701 (quoting *Tice*, 373 F.3d at 853). Good reasons "justifying departure from the doctrine", as explained above, "include (1) substantial new evidence introduced after the first review, (2) an intervening change in the law, and (3) a clearly erroneous decision." *Id*. (citing *Kathrein v. City of Evanston*, 752 F.3d at 685).

Computershare argues that, as a matter of law, the court cannot determine whether the plan's future payments to it have a present value (that is, a value as of the plan's effective date) that at least equals the amount of Computershare's allowed secured claim because the plan provides cramdown interest adjusted every five years. Even if this contention were correct, which, as explained below, it isn't, it is not a good reason to depart from the Order's ruling.

First, as discussed above, Computershare could have raised the fixed-rate issue long before the court ruled on the appropriate cramdown rate or at least before the debtor incorporated that rate into the fourth amended plan, which the court ordered the debtor to file, with a proposed disclosure statement, by January 12, 2026. The Order made clear that the court was affording the debtor a final opportunity to amend the plan to make it confirmable, underscored by the court's modification of "[t]he stay imposed by §362(a) . . . to terminate upon entry of an order by the court denying confirmation of all plans of reorganization filed or last amended no later than [January

12, 2026], *and* [Computershare's] subsequent filing of a request that the court enter an order terminating the stay pursuant to this order, accompanied by a proposed order so providing." Order, at 55. (The Order originally required the debtor to file a final plan by December 31, 2025, but after a December 11, 2025 case management hearing, the court modified the directive to allow the debtor until January 12, 2026 to file a final amended plan. ECF No. 817.) The court's expectation—and presumably that of the debtor and Computershare—was that the fourth amended plan's provisions would be consistent with the December 2025 Order's findings and conclusions, including the adjudicated cramdown rate. The debtor timely filed that fourth amended plan and disclosure statement on January 12, 2026, more than six months after it first proposed an adjustable cramdown rate. The fourth amended plan included the cramdown rate that the Order determined appropriate. Yet Computershare did not raise the fixed-rate issue until it filed an objection to confirmation on March 2, 2026.[4] ECF No. 933, at 9–10. Computershare does not explain whether it only came upon its fixed-rate argument very late in the day, whether it held that argument in reserve to be played if others failed, or whether there was some other reason for the delay in presenting it. Regardless, the delay and the lack of any justification for it leads the court to deem

---

4. On December 17, 2025, Computershare appealed the December 5 Order to the District Court. ECF No. 824. It contests the court's cramdown ruling on appeal. But its appellate brief restates the arguments made in the bankruptcy court and again observes that its expert, Ms. Nelson, "made a downward [risk] adjustment of 0.61 percentage points to account for the reassessment of the proper interest rate every five years". *Computershare Trust Co. NA v. Wisconsin & Milwaukee Hotel LLC*, 25-cv-01984, ECF No. 6, at 51 (E.D. Wis.). Computershare does not argue on appeal that the court's cramdown rate was wrong as a matter of law because it was adjustable rather than fixed. The failure to raise the issue in either court almost certainly prevents the District Court from addressing it in the context of Computershare's appeal. See *Margolin v. Natl. Assn. of Immig. JJ.*, 146 S. Ct. 1285, 1288 (2026) ("Federal courts adhere to the principle of party presentation. That principle—the 'rule that points not argued will not be considered'—distinguishes our adversarial system of justice from an inquisitorial one." (first citing *Clark v. Sweeney*, 607 U.S. 7, 9–10 (2025) (per curiam), then quoting *United States v. Burke*, 504 U.S. 229, 246 (1992))).

Computershare to have waived its proposed fixed-rate argument for challenging the court's previous cramdown-rate ruling. See *Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999) ("But a party's unreasonable delay in advancing a good ground for a change in a previous ruling is normally a compelling ground for deeming even a good ground waived.").

Second, Computershare's argument that, as a matter of law, the cramdown rate must be fixed does not justify departing from the Order's adjudication of the cramdown rate. Computershare's argument is neither based on a change in law that happened since the court issued the Order nor shows that the Order's determination is clearly erroneous. The fixed-rate argument does not arise from a recent legal development. Computershare relies principally on the text of §1129(b)(2)(A)(i)(II), the Eighth Circuit's 1986 opinion in *United States v. Neal Pharmacal Co.* and several lower court decisions, the most recent of which, *In re Associated Wood Products, Inc.*, 323 B.R. 479, was decided in 2005 and, as mentioned above, simply followed *Neal Pharmacal*. ECF No. 933, at 9–10. None of that justifies a departure from the Order's determination of the cramdown rate on grounds of a new legal development.

Third, Computershare does not show that the Order's cramdown rate determination is clearly erroneous. It now argues (following *Neal Pharmacal*'s reasoning) that §1129(b)(2)(A)(i)(II) requires a fixed cramdown rate because the only way the court can determine whether the plan's deferred payments to Computershare have, as §1129(b)(2)(A)(i)(II) states, "a value, as of the effective date of the plan, of at least the value of" Computershare's lien on the $26 million hotel is to use a fixed interest rate:

> One cannot calculate a present value "as of the effective date of the plan" without knowing what the interest rate will be throughout the life of the plan. It is not mathematically possible because one of the inputs to the present value formula is unknown for the vast majority of the plan term.
> . . . The Court is required to determine that the stream of payments proposed in the 4th Amended Plan has a present value equal to, in this case,

at least $26 million. The Court simply cannot make that determination without having the numbers to complete the mathematical calculation.

ECF No. 1041, at 6.

That is incorrect. Section 1129(b)(2)(A)(i)(II) requires the debtor to demonstrate that, as a matter of fact, the present value of the plan's deferred payments to Computershare is at least $26 million. The court determined that an appropriate cramdown rate—i.e., the interest rate necessary to determine the deferred payments' present value—is the five-year Treasury note rate (adjusted every five years to account for changes in the reference rate) plus a risk adjustment of 320 basis points. Computershare contends that the court cannot conduct the §1129(b)(2)(A)(i)(II) inquiry—cannot determine whether the present value of the plan's deferred payments is at least equal to $26 million—because the potential for future changes in the reference rate means that the total amount of the payments is unknown. But one doesn't need to know the total amount of the future payments to make the §1129(b)(2)(A)(i)(II) determination. As precedent dictates, the court must only determine that the plan will pay $26 million plus an appropriate cramdown interest rate:

> When payment is deferred, "a creditor receives the 'present value' of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments." Section 1129(b)(2)(A)(i)(II) thus requires interest if the claim is to be paid over time.

*Airadigm Commc'ns, Inc. v. F.C.C. (In re Airadigm Commc'ns., Inc.)*, 547 F.3d 763, 768–69 (7th Cir. 2008) (quoting *Rake v. Wade*, 508 U.S. 464, 472 n. 8 (1993); then citing *United Sav. Ass'n v. Timbers of Inwood Forest, Assocs., Ltd.*, 484 U.S. 365, 377 (1988)); see also *Till v. SCS Credit Corp.*, 541 U.S. 465, 487 (2004) (Thomas, J., conc.) ("Thus, as we explained in *Rake v. Wade*, '[w]hen a claim is paid off pursuant to a stream of future payments, a creditor receives the 'present value' of its claim only if the total amount of the deferred

payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments." (quoting *Rake*, 508 U.S. at 472, n. 8)). The fourth amended plan, employing the cramdown rate the Order ruled was appropriate, so provides, stating that it pays Computershare "a present value of $26,000,000, based upon its payment in full over a term of 18 years from the Effective Date, at a rate of 320 basis points over the yield reported by the United States Department of the Treasury for five-year Treasury securities on the Effective Date, and adjusted on the 5th, 10th and 15th anniversaries of the Effective Date (the "Adjustment Dates") to reflect 320 basis points over the yield reported by the United States Department of the Treasury for five-year Treasury securities as of each Adjustment Date." ECF No. 853, at 10.

Contrary to Computershare's argument, *Till* does not hold otherwise. *Till*, in fact, does not address whether an appropriate cramdown rate can be variable. As Ms. Nelson wrote soon after *Till* issued, "The Supreme Court [in *Till*] does not say definitively whether the applicable prime rate plus risk adjustment is to be a fixed rate over the 23-month period or if it will vary with changes in prime." Ronald F. Greenspan & Cynthia Nelson, *"UnTill" We Meet Again*, 23-JAN Am. Bankr. Inst. J. 48, 49 (2005). And, although Ms. Nelson proposed using prime as the reference rate because "that was suggested by the [Supreme] Court" in *Till* (ECF No. 746, at 88), she acknowledged that the debtor's proposal to adjust the rate every five years decreased the risk that interest rates would increase in the future (over the rates proposed in the plan). ECF No. 746 at 60–61. By using the five-year Treasury note rate as the reference rate, the cramdown rate approved by the Order incorporates the market's current expectations about inflation and interest rate fluctuations over the next five years; the cramdown rate considers changes in those expectations over the course of the plan term by adjusting the rate every five years to account for changes in the base rate. There likely are other acceptable

approaches to determining a suitable cramdown rate—including, potentially, using a longer-term Treasury note rate (which incorporates the market's current predictions for changes in inflation and interest rates over the entire course of the plan) as a fixed reference rate—but Computershare has not shown the use of a fixed rate to be *legally* required.

In all events, the Seventh Circuit's post-*Till* direction that the present value component of §1129(b)(2)(A)(i)(II) "requires interest if the claim is to be paid over time" easily accommodates interest at a rate that may vary over the plan term. *Airadigm Commun.,* 547 F.3d at 769. If the five-year treasury rate increases, payments will increase to compensate Computershare for the market's changed expectation about inflation or rising interest rates—an adjustment that allows the deferred payments plus interest to have a present value as of the plan's effective date that at least equals $26 million; if the rates decrease, plan payments may be permissibly decreased because the market then perceives the compensable risk that factors into valuing the payments as of the effective date to have lessened. As a result, *Neal Pharmacal* and the other non-precedential opinions on which Computershare relies do not establish that §1129(b)(2)(A)(i)(II) requires use of a fixed cramdown rate or that the Order's approval of a cramdown rate that adjusts every five years is clearly erroneous.

In sum, Computershare presents no good justification for departing from the Order's cramdown-rate determination.

III

For the reasons stated above, IT IS ORDERED that

1. The debtor's motion in limine is granted.
2. The December 5, 2025 Order's determination that the five-year Treasury note rate (as adjusted every five years to account for changes in that rate) plus 320 basis points is an appropriate cramdown rate for determining the value of the

plan's deferred payments as of the effective date for purposes of adjudicating whether the plan satisfies the requirement of §1129(b)(2)(A)(i)(II) is the law of the case;

3. Computershare has not shown a good reason to abandon or depart from the Order's determination about the appropriate cramdown rate;

4. Ms. Nelson's testimony that if the cramdown rate must, as a matter of law, be fixed for the entire plan term, then that rate should be determined using as a reference a Treasury note maturing in 18 years is excluded under Fed. R. Evid. 401–403 because the law of the case makes that testimony irrelevant and a waste of time.

# # # # #